**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| Peer Street, Inc., *et al.*,[1] | Case No. 23-10815 (\_\_\_) |
| Debtors. | (Joint Administration Requested) |

**MOTION OF DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS
(I) AUTHORIZING DEBTORS TO PAY CERTAIN PREPETITION
WAGES, SALARIES, AND OTHER COMPENSATION, (II) AUTHORIZING
CONTINUATION OF EMPLOYEE BENEFIT PROGRAMS, (III) AUTHORIZING
BANKS TO HONOR AND PROCESS CHECKS AND TRANSFERS RELATED
TO SUCH EMPLOYEE OBLIGATIONS, AND (IV) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "**Debtors**") hereby submit this motion (this "**Motion**") for the entry of interim and final orders, substantially in the form attached hereto as **Exhibit A** (the "**Proposed Interim Order**") and **Exhibit B** (the "**Proposed Final Order**," and together with the Proposed Interim Order, the "**Proposed Orders**"), pursuant to sections 105(a), 363(b), 507(a)(4), and 507(a)(5) of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**"), (a) authorizing, but not directing, the Debtors, in accordance with their stated policies and in their discretion, to (i) pay accrued prepetition Employee (as defined below) wages, salaries, commissions, and other compensation, (ii) pay accrued prepetition obligations owed to Independent Contractors (as defined below), (iii) pay prepetition business expenses incurred by the Employees (as defined

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of their respective federal tax identification numbers, are:  Peer Street, Inc. (8584); PS Funding, Inc. (3268); PeerStreet Licensing, Inc. (9435); Peer Street Opportunity Fund GP, LLC (8491); Peer Street Funding LLC (9485); PSF REO LLC (1013); PS Options LLC (8584); PS Warehouse, LLC (5663); PS Warehouse II, LLC (9252); Peer Street Opportunity Investors II, LP (1586); PS Portfolio-ST1, LLC (1868); PSF Ohio, LLC (9485); PSF TX 1, LLC (9485); PSF TX 2, LLC (2415); PSF TX 4 LLC (9485).  The Debtors' service address is c/o Province, LLC 2360 Corporate Circle, Suite 340, Henderson, NV 89074, Attn:  David Dunn, Chief Restructuring Officer.

below), (iv) make contributions to prepetition benefit programs and continue such programs in the ordinary course of their business, (v) honor the Debtors' prepetition retention program for non-insider Employees, (vi) honor workers' compensation obligations, (vii) make payments for which prepetition payroll deductions were made, (viii) pay processing costs and administrative expenses relating to the foregoing payments and contributions, and (ix) make payments to third parties incident to the foregoing payments and contributions, and (b) authorizing banks and other financial institutions (collectively, the "**Banks**") to honor and process check and electronic transfer requests related to the foregoing.  In support of this Motion, the Debtors rely upon and incorporate by reference the *Declaration of David M. Dunn in Support of Chapter 11 Petitions and First Day Pleadings* (the "**First Day Declaration**"),[2] filed contemporaneously herewith.  In further support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION AND VENUE

1.       The United States Bankruptcy Court for the District of Delaware (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012 (the "**Amended Standing Order**").  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution.  Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief sought herein are sections 105(a), 363(b), 507(a)(4), and 507(a)(5) of the Bankruptcy Code and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

## BACKGROUND

### I. General

2.      Today (the "**Petition Date**"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code.  The Debtors are authorized to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No official committees have been appointed in these chapter 11 cases and no request has been made for the appointment of a trustee or an examiner.

3.      Additional information regarding the Debtors' business, their capital structure, and the circumstances leading to the filing of these chapter 11 cases is set forth in the First Day Declaration.

### II. The Debtors' Workforce

4.      As of the Petition Date, the Debtors' workforce comprises of approximately 28 full-time, salaried or hourly employees (the "**Employees**").  The Debtors do not have any part-time employees.  The majority of the Employees are located in California, however the Debtors also have employees in North Carolina and New York.

5.      In addition, the Debtors supplement their workforce by retaining from time to time individuals and vendors with specialized expertise as independent contractors (the "**Independent Contractors**," and together with the Employees, the "**Workforce**").  The number of Independent Contractors employed by the Debtors at any given time fluctuates depending on the Debtors' business needs.  The Independent Contractors fill immediate business needs of the Debtors and allow the Debtors to have a flexible Workforce to meet their operational needs in a cost-effective manner.  As of the Petition Date, the Debtors has retained one individual in Canada through the use of Globalization Partners LLC ("**G-P**") an international staffing agency.

6. The Workforce, as with any business entity, perform a variety of critical functions for the Debtors, and their knowledge, skills, and understanding of the Debtors' infrastructure, business operations, and customer and vendor relations are essential to, among other things, the success of these chapter 11 cases. Without the continued service and dedication of the Workforce, it will be difficult, if not impossible, to operate the Debtors' business without an unexpected or inopportune interruption, and to prosecute these chapter 11 cases in a manner that will maximize the value of the Debtors' estates.

7. To successfully accomplish the foregoing, minimize the personal hardship that the Workforce will suffer if prepetition employee-related obligations are not paid when due or as otherwise expected, and maintain employee morale and a focused Workforce during this critical time, the Debtors believe that it is necessary and in the best interest of their estates and all stakeholders to seek the relief requested herein.

## RELIEF REQUESTED

8. By this Motion, the Debtors request that the Court enter the Proposed Orders, authorizing, but not directing, the Debtors, in accordance with their stated policies and in their discretion, to: (a) pay accrued prepetition Employee wages, salaries, commissions, and other compensation; (b) pay accrued prepetition Independent Contractor obligations; (c) pay prepetition employee business expenses; (d) make contributions to prepetition benefit programs provided to the Employees, the most significant of which are described below, and continue such programs in the ordinary course of business with respect to the Employees; (e) honor the prepetition retention program for certain non-Insider Eligible Employees (as defined below) in the ordinary course of business; (f) honor workers' compensation obligations; (g) make payments for which prepetition payroll deductions were made; (h) pay processing costs and administrative expenses relating to the

foregoing payments and contributions; and (i) make payments to third parties incident to the foregoing payments and contributions (collectively, and as described in greater detail below, the "**Employee Wages and Benefits**").

9.      The Debtors also request the Court to authorize the Banks to honor and process check and electronic transfer requests related to the Employee Wages and Benefits.

**I.      Obligations on Account of Workforce Wages and Other Compensation, Business Expenses, Deductions, and Payroll Taxes**

**A.      Unpaid Wages and Other Compensation**

10.      Historically, the Debtors' gross aggregate payroll liability is approximately $400,000.00 per month.  Employees are generally paid wages and salaries on a semi-monthly basis, via direct deposit.  Payroll is made on the 15th day and the last day of each month ("**Payroll**"). Independent Contractors, however, are not paid via Payroll.  For the individual who the Debtors retain through G-P (such individual, the "**G-P Employee**"), the Debtors remit compensation for the G-P Employee directly to G-P through the Debtors' accounts payable system.  The historical average monthly payments owing to G-P are approximately $25,000.

11.      The Debtors' last prepetition Payroll (for the period 06/01/2023 through 06/15/2023) was funded on 06/14/2023, in the amount of approximately $190,000.00.   The Debtors' next Payroll (for the period 06/16/2023 through 06/30/2023) will be funded on 06/29/2023, and is expected to be approximately $190,000.00.  Additionally, the Debtors next semi-monthly payment to G-P is due on 06/30/2023 in the amount of approximately $11,000.00.

12.      Based on historical and estimated payroll figures, the Debtors believe that approximately $130,000.00 in the aggregate remains outstanding, as of the Petition Date, on account of unpaid accrued wages, salaries, and other compensation due from the Debtors to the Workforce, including amounts owed to G-P (collectively, the "**Unpaid Wages**").

13.     The Debtors' failure to remit full payment of the amount that the Debtors believe remains outstanding, as of the Petition Date, on account of Unpaid Wages would inflict great financial hardship on the Workforce, and would damage morale and impair the Debtors' chapter 11 efforts.  The Debtors, therefore, request authority from the Court to satisfy any obligations owed to the Workforce on account of Unpaid Wages.

14.     Pending entry of the Proposed Final Order, no individual Employee or Independent Contractor will be paid more than $15,150, in the aggregate, for any Unpaid Wages.

**B.      Payroll Processor**

15.     The Debtors retain Rippling People Center Inc. (the "**Payroll Processor**"), a third-party payroll processor, to administer its payroll.  The Payroll Processor's services are crucial to the smooth functioning of the Debtors' payroll process, and therefore to the Debtors' business operations generally.  The Debtors pay the Payroll Processor approximately $20,000 per year in fees (the "**Payroll Processor Fees**") for its services.  The specific amount owed to the Payroll Processor varies based on the particular services that are provided by the Payroll Processor when running a particular payroll.  The Payroll Processor is paid annually at the beginning of each year for its payroll services based on the number of Employees employed by the Debtors. Additionally, from time to time, the Payroll Processor may provide additional ancillary services to the Debtors which are invoiced to the Debtors by the Payroll Processor on an as-provided basis. The Debtors estimate that, as of the Petition Date, there are no amounts due and owing to the Payroll Processor, but seek authority to pay the Payroll Processor for any amounts that may be owed on account of ancillary services.

**C.      Employee Expenses**

16.     Prior to the Petition Date, the Debtors directly or indirectly reimbursed some Employees for certain expenses incurred in the scope of their employment on behalf of the

Debtors (the "**Employee Expenses**").  The Employee Expenses are incurred in the ordinary course of the Debtors' business operations and include, without limitation, expenses for meals, travel, automobile mileage, and other business-related expenses. All such expenses are incurred with the applicable Employee's understanding that he or she will not be held personally responsible for these costs and that the amounts will be reimbursed or paid by the Debtors in accordance with the Debtors' reimbursement policies. In all cases, reimbursement is contingent on the Debtors' determination that the charges are for legitimate, reimbursable business expenses.

17.    Most Employees initially incur the Employee Expenses using personal credit cards or funds and subsequently seek reimbursement from the Debtors. The Debtors have policies whereby the Employees seek reimbursement, or file expense reports for, the Debtors' payment of Employee Expenses.  In addition, certain Employees incur the Employee Expenses on corporate credit cards (the "**Corporate Cards**") issued by American Express and Wells Fargo (the "**Issuers**").  The Corporate Cards are used for travel and expense costs for executives, office supplies, marketing expenses and materials, and certain monthly recurring subscriptions. Although the Debtors pay the invoices for the Corporate Cards, the accounts are held in the names of the individual Employees.  Therefore, to the extent that the Debtors fail to remit payment to the Issuers for valid and legitimate charges, the Employees may be personally liable for the same.  As of the Petition Date, no fees are owed to the Issuers in connection with the Corporate Cards.

18.    As of the Petition Date, approximately $30,000.00 on account of Employee Expenses is outstanding. These expenses are ordinary course expenses that the Employees incur in performing their job functions.  It is essential to the continued operation of the Debtors' business that the Debtors be permitted to continue reimbursing, or making direct payments on behalf of, Employees for the Employee Expenses.

### D.    Wage Deductions, Trust Fund Taxes, and Payroll Taxes

19.    During each applicable pay period, the Debtors routinely deduct certain amounts from the Workforce's compensation that represent earnings that judicial or government authorities, or the Workforce, have designated for deduction, including, but not limited to:  (a) garnishments, child support, and similar deductions, and (b) other pre-tax and after-tax deductions payable pursuant to certain of the Workforce benefit plans discussed herein, such as health care, dental, and vision benefits, insurance premiums, 401(k) contributions, legally ordered deductions, and other miscellaneous deductions (collectively, the "**Wage Deductions**"), and forward those amounts to various third-party recipients.  On average, the Debtors have historically deducted, in the aggregate, approximately $25,000.00 semi-monthly in Wage Deductions from the Workforce's pay.  The Debtors believe that, as of the Petition Date, approximately $15,000.00 has not been remitted to the various third-party recipients on account of the Wage Deductions.

20.    Accordingly, the Debtors seek authority to continue to forward prepetition Wage Deductions to the applicable third-party recipients on a postpetition basis in the ordinary course of their business, as routinely done prior to the Petition Date.

21.    Furthermore, the Debtors are required by law to withhold from the Workforce's pay certain amounts related to, among other things, federal, state, and local income taxes and social security and Medicare taxes (collectively, the "**Trust Fund Taxes**") for remittance to the appropriate federal, state, or local taxing authorities.  The Debtors must then match from their own funds for social security and Medicare taxes and pay, based upon a percentage of gross payroll, additional amounts for state and federal unemployment insurance (the "**Payroll Taxes**").  In May 2023, the Debtors remitted approximately $390,000.00[3] in Trust Fund Taxes and Payroll

---

[3]    The Payroll Taxes and Trust Fund Taxes paid in May reflect a higher amount than go-forward expectations due to the payment of bonuses under the Retention Plan (defined below).  On a go-forward basis, the Debtors expect

Taxes.  The Debtors remit Trust Fund Taxes and Payroll Taxes to the Payroll Processor after each

payroll, and the Payroll Processor holds such amounts until they are paid to the appropriate

authority.

22.     The Debtors believe that, as of the Petition Date, approximately $52,500.00

is outstanding on account of the Trust Fund Taxes and the Payroll Taxes.  The Debtors seek to

remit and pay such amounts in the ordinary course of business, for the reasons set forth herein.

23.     By this Motion, the Debtors seek authority, but not the direction, to remit

Wage Deductions, Trust Fund Taxes, and Payroll Taxes in the ordinary course of business,

including, without limitation, amounts determined to be related to the period prior to the Petition

Date.

## II.     Employee Benefits

24.     In the ordinary course of business, the Debtors provide their eligible

Employees, directly or indirectly, a number of benefits, including, but not limited to:  (a) medical,

dental, and vision insurance; (b) paid sick days, vacation days, pregnancy and parental leave, and

other paid time off; (c) a 401(k) retirement plan; (d) certain other miscellaneous employee benefits,

including, but not limited to, life and accidental death & dismemberment insurance, short-term

and long-term disability insurance, and certain benefits to certain former Employees after their

termination, retirement, or disability leave, including, but not limited to, benefits provided under

the Consolidated Omnibus Budget Reconciliation Act of 1985  ("**COBRA**"); and (e) certain state

specific benefits (collectively, the "**Employee Benefits**").

25.     By this Motion, the Debtors seek authority, but not direction, to:

(a) continue to provide the Employee Benefits for their Employees in the ordinary course of

---

the aggregate amount of Payroll Taxes and Trust Fund Taxes to be approximately $190,000.00 per month.

business; (b) continue to honor obligations related to the Employee Benefits, including, but not limited to, any premiums and administrative fees; and (c) pay amounts owed related to the Employee Benefits to the extent that they remain unpaid as of the Petition Date.  Certain of the Employee Benefits are discussed below.

A.    **Health Benefits**

26.    *Medical and Dental Insurance Programs*. The Debtors offer a medical and prescription drug program (the "**Health Plan**") to Employees, which is provided by Anthem Blue Cross Blue Shield ("**Anthem**").  Participating Employees can choose from three different Health Plans, which have different premiums and coverage limits, and can choose to enroll a spouse and/or dependents.  In addition, the Debtors offer a dental insurance program (the "**Dental Plan**") to Employees, which is administered by Anthem.  The Debtors also offer a vision plan (the "**Vision Plan**"), for which employees pay 100% of the premiums.  The Debtors purchase the Health Plans and the Dental Plan through Burnham Benefits, a partner of Baldwin Risk Partners, LLC (the "**Broker**").  The average monthly cost of maintaining the Health Plan, the Dental Plan, and the Vision Plan (accounting for employee-contributions), including administrative costs and fees owing to the Broker, has been approximately $50,000.00 per month.[4]  As of the Petition Date, no amounts are owed on account of the Health Plan, the Dental Plan, or the Vision Plan, and no amounts are owed to the Broker.

27.    By this Motion, the Debtors seek authority to:  (a) continue to provide the benefits under the Health Plan, Dental Plan, and Vision Plan, along with and COBRA coverage to the Employees in the ordinary course of business; (b) continue making contributions and payments to such Employee Benefit programs; (c) continue to pay amounts related thereto, including

---

[4]    This amount includes approximately $16,000 per month in COBRA payments.

administrative costs (including, without limitation, those of third party insurance administrators); and (d) pay such amounts to the extent that they remain unpaid on the Petition Date.

**B.**     **Paid Time Off**

28.     The Debtors maintain a Flexible Time Off policy (the "**FTO Policy**") to provide eligible Employees with paid time off.  Time off under the FTO Policy can be used to cover planned vacations, sick days, or any other personal reasons.  Instead of accruing vacation or sick time, Employees and their supervisors have discretion to plan the time that each Employees would need to take off for vacation, sick, or personal reasons.  As a result of this structure of the FTO Policy, time off does not accrue and, therefore, except as otherwise required by state law, is not paid out upon an employee's termination of employment.

29.     Subject to the Court's approval of the requested relief, the Debtors intend to comply with their policies and applicable local, state, and federal law related to time off. Through this Motion, the Debtors request authority, but not direction, to continue to honor their FTO policies, to comply with applicable local, state, and federal law in the ordinary course of business, and to honor and pay, in their discretion, prepetition amounts related thereto.  The Debtors will not pay prepetition obligations in excess of the section 507(a)(4) cap, including on account of paid time off in excess of $15,150 in the aggregate, unless required by applicable local, state, or federal law.

**C.**     **Life, Disability, and Related Insurance Coverage**

30.     *Life, Disability, and Related Insurance Coverage*. The Debtors provide Employees with life insurance, voluntary supplemental life insurance, short-term and long-term disability insurance, and accidental death and dismemberment insurance through Standard Insurance Company.  Additionally, the Debtors provide Employees with critical illness, accident, and hospital indemnity coverage through MetLife, Inc. (collectively, the "**Life and Disability**

**Plan**").  The Debtors pay 100% of the costs for these benefits.  The average monthly cost of maintaining the Life and Disability Plan has been approximately $2,200.00 per month. The Debtors seek authority to continue to pay prepetition costs, in an amount not to exceed $2,200.00, and postpetition costs of the Life and Disability Plan during the pendency of the Chapter 11 Cases.

31.    As of the Petition Date, no amounts are owed on account of the Life and AD&D Insurance and the Disability Benefits.  The Debtors seek authorization, but not direction, to continue to pay in the ordinary course of business amounts associated with the Life and AD&D Insurance and the Disability Benefits, including prepetition amounts determined to be owed.

D.    **Flexible Spending Accounts**

32.    The Debtors also provide Employees who participate in certain of the Employee Benefits with access to a flexible spending accounts (the "**FSA**") administered by Igoe Administrative Services.  The FSA can be used to cover, among other things, qualified medical, dental, and vision expenses.  The Debtors do not make any contributions to any Employee's FSA, and, as of the Petition Date, hold no accrued but unremitted Employee contributions on account of the FSA.

III.    **Non-Insider Employee Retention Program**

33.    Subject to entry of the Final Order, the Debtors seek approval of their prepetition retention program for non-Insiders (the "**Retention Plan**").[5]  Before the Petition Date, the Debtors designed the Retention Plan to retain certain key employees with knowledge necessary for a smooth transition into chapter 11 and to assist the Debtors through their Chapter 11 Cases—which will include assisting a sale of the Debtors' assets and a strategic wind down of the Debtors' operations in a manner that will maximize the value for their assets.

---

[5]    The Debtors are not seeking interim approval of the Retention Plan.

34.     The Retention Plan contemplated the continued employment of twenty-six (26) rank-and-file employees (the "**Eligible Employees**") whose positions were imperative to the preservation of the Debtors' business platform in these chapter 11 cases.  To remain eligible for payments under the Retention Plan, the Eligible Employees will be required to stay until a certain date, but in no event later than November 30, 2023.[6]  Most of the Eligible Employees will receive payment equal to one additional pay period for each month the Eligible Employee is retained after March 15, 2023.  The Retention Plan payments contemplates two installments: (i) 33.3% of their anticipated total retention payment was paid prepetition, and (ii) 66.7% of their anticipated total retention payment will be paid on their final day of employment.

35.     Payments under the Retention Plan are subject to clawback or forfeiture if an Eligible Employee terminates his or her employment early.  If an Eligible Employee resigns from his or her position within thirty (30) days of the Retention Plan's commencement, then the first installment must be repaid to the Debtors within thirty (30) days of resignation.  If an Eligible Employee resigns from his or her position more than thirty (30) days before the anticipated retention end date, then he or she forfeits the right to the second installment.  However, if the Eligible Employee resigns from his or her position within thirty (30) days from the anticipated retention end date, the Eligible Employee is entitled to a partial payout of the second installment.[7] None of the Eligible Employees are Insiders of the Debtors.  The Debtors estimate that the maximum postpetition amounts that would be owing under the Retention Plan if all payments are

---

[6]     To the extent the Debtors require any of the Eligible Employees selected for the Retention Plan to remain with the Debtors beyond November 30, 2023, and to the extent the Debtors seek to make additional retention bonus payments to such employees, the Debtors will seek further Court approval.

[7]     The partial payout amount will be a discretionary amount determined by a member of the Debtors' senior leadership team and approval by human resources after reviewing the following factors: portion of retention period completed, key performance metrics accomplished, and if the employee gave at least two weeks' notice.

made is approximately $880,000.[8]  To remain eligible for the payments under the Retention Plan, the Eligible Employee will be required to stay until varying specified dates depending on the anticipated needs of the Debtors, the last of such dates being November 30, 2023.

## IV.    Workers' Compensation Program

36.    Under applicable state law, the Debtors are required to maintain worker's compensation insurance programs to provide their Employees with workers' compensation insurance coverage for claims arising from or related to their employment with the Debtors (the "**Workers' Compensation Program**").  To implement the Workers' Compensation Program, the Debtors maintain a workers' compensation policy through The Hartford (the "**WC Policy**").  While the premiums for the WC Policy can and will fluctuate with changing payroll, the Debtors do not anticipate any material cost changes.  The Workers' Compensation Program premiums are reported and paid on a semi-monthly basis, and are approximately $600.00 per month.  The Debtors estimate that approximately $400.00 will become due and owing under the Workers' Compensation Program during the first twenty-one (21) days of these chapter 11 cases.

37.    To ensure that claims incurred under the Workers' Compensation Program are resolved, the Debtors must pay outstanding prepetition liabilities associated with the Workers' Compensation Program, as well as outstanding WC Policy premiums, as such amounts become due and owing.  For the claims administration process in these chapter 11 cases to operate as efficiently as is possible, and to ensure that the Debtors comply with state law requirements, the Workers' Compensation Program must continue in the ordinary course of business.

---

[8]    For the avoidance of doubt, the Debtors are not seeking approval to pay retention payments to any Insiders of the Debtors, or make any payments that would violate section 503(c) of the Bankruptcy Code.

30188782.11

14

38. Accordingly, the Debtors request authority, but not direction, in their discretion, to continue to maintain the Workers' Compensation Program in the ordinary course of business, and to pay prepetition amounts related thereto, including, without limitation, outstanding premiums, deductibles, and fees owed for administrative costs and other amounts required in connection with the program, as such amounts become due in the ordinary course of the Debtors' business.

## BASIS FOR RELIEF

**I.     The Court Should Authorize, but Not Direct, the Debtors, in Their Discretion, to Pay or Otherwise Honor the Employee Wages and Benefits**

39. The Debtors seek the relief requested herein because any delay in paying or otherwise honoring the Employee Wages and Benefits could severely disrupt the Debtors' relationship with the Workforce and irreparably impair the Workforce's morale at a time when their continued dedication, confidence, and cooperation are most critical to the Debtors and the success of these chapter 11 cases. The Debtors face the risk that the success of these cases and their ability to operate their business without any unexpected or inopportune interruption may be severely jeopardized if the Debtors are not immediately granted authority to pay the Employee Wages and Benefits.

40. The Workforce is crucial to the operation of a company's business and it is crucial to the success of a chapter 11 case. The Debtors simply cannot risk the substantial disruption of their business and affairs that would, in all likelihood, accompany any decline in Workforce morale attributable to the Debtors' failure to pay the Employee Wages and Benefits in the ordinary course of business. Absent the requested relief, the Workforce would suffer great hardship and, in many instances, financial difficulties, since these monies are needed to enable them to meet their personal obligations. Additionally, without the requested relief, the Debtors'

stability would be undermined by the potential threat that the otherwise loyal Workforce at all levels would seek other employment.

41.     Pursuant to section 507(a)(4) of the Bankruptcy Code, each Employee may be granted a priority claim for:

> allowed unsecured claims, but only to the extent of $15,150 for each individual or corporation, as the case may be, earned within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first, for–
>
> (A)     wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual; or
>
> (B)     sales commissions earned by an individual or by a corporation with only 1 employee, acting as an independent contractor in the sale of goods or services for the debtor in the ordinary course of the debtor's business if, and only if, during the 12 months preceding that date, at least 75 percent of the amount that the individual or corporation earned by acting as an independent contractor in the sale of goods or services was earned from the debtor.

11 U.S.C. § 507(a)(4).

42.     Likewise, under section 507(a)(5) of the Bankruptcy Code, the Workforce may ultimately be granted priority claims for:

> allowed unsecured claims for contributions to an employee benefit plan–
>
> (A)     arising from services rendered within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first; but only
>
> (B)     for each such plan, to the extent of–
>
>> (i)     the number of employees covered by each such plan multiplied by $15,150; less
>>
>> (ii)     the aggregate amount paid to such employees under paragraph (4) of this subsection, plus the aggregate amount paid by the estate on behalf of such employees to any other employee benefit plan.

11 U.S.C § 507(a)(5).

43.     The Debtors believe that the Unpaid Wages are entitled to priority status under section 507(a)(4) of the Bankruptcy Code, to the extent such wages do not exceed $15,150.00 per Employee.  The Debtors would therefore be required to pay these claims in full to confirm any chapter 11 plan.  *See* 11 U.S.C. § 1129(a)(9)(B) (requiring payment of certain allowed unsecured claims for wages, salaries, and commissions, and certain allowed unsecured claims for contributions to an employee benefit plan).  Thus, granting the relief requested herein would only affect the timing, and not the amount, of the payment of such amounts to the extent that they constitute priority claims.

44.     Moreover, the vast majority of the Workforce rely exclusively on their full compensation or reimbursement of their wages or expenses to continue to pay their daily living expenses, and these Employees will be exposed to significant financial difficulties if the Debtors are not permitted to pay Unpaid Wages.  Additionally, the Debtors believe that if they are unable to honor such obligations, the morale and loyalty of the Workforce will be jeopardized at a time when such support is critical to, among other things, their chapter 11 efforts and their ability to effectively prosecute these chapter 11 cases.

45.     Additionally, the Wage Deductions, Trust Fund Taxes, and Payroll Taxes principally represent portions of the Employees' pay that governments (in the case of the Trust Fund Taxes and Payroll Taxes), the Employees (in the case of the voluntary Wage Deductions), and certain authorities (in the case of the involuntarily Wage Deductions) have designated for deduction from the Employees' pay.  The Debtors' failure to pay these amounts could result in hardship to certain Employees and an administrative burden for the Debtors.  Indeed, the Debtors would expect inquiries from garnishors regarding any failure by the Debtors to submit, among

other things, child support and alimony payments that are not the Debtors' property but, rather, have been withheld from the Employees' pay on such parties' behalf. Moreover, if the Debtors cannot remit these amounts, the Employees may face legal action due to the Debtors' failure to submit such payments.

46.     The Workforce is essential, among other things, to the orderly and successful prosecution of these chapter 11 cases and to avoid any unexpected or inopportune interruption of the Debtors' business operations. They have an intimate knowledge of the Debtors' infrastructure and operations, and any deterioration in the Workforce's morale and welfare at this critical time undoubtedly would adversely impact the Debtors and the success of these chapter 11 cases.

47.     Further, maintaining the Workers' Compensation Program is justified because applicable state law mandates this coverage. Furthermore, with respect to any claims related to the Workers' Compensation Program, the risk that eligible claimants will not receive timely payments with respect to employment-related injuries could have a devastating effect on the financial well-being and morale of the Employees and their willingness to remain in the Debtors' employ. Entry of the Proposed Orders will alleviate any such concerns, as it will allow the Debtors to avoid any unexpected or inopportune interruptions to their business operations and enable them to maximize the value of the estates for the benefit of all stakeholders.

48.     Finally, approval to continue the Retention Plan in the ordinary course of business (subject to entry of the Final Order) is essential to the Debtors' continued operations and their ability to maximize the value of their estates for the benefit of creditors and other stakeholders. In addition to their usual responsibilities, including leading the Debtors' business and managing employees and vendor relationships, the Eligible Employees have taken on

considerable additional responsibilities since the outset of the Debtors' prepetition restructuring and sale efforts, which will continue through the consummation of a sale or chapter 11 plan process. The Eligible Employees were offered these awards as compensation for these enhanced responsibilities.  The amounts of the payments under the Retention Plan are reasonable in light of the size of the Debtors' estates and the benefit to be gained from a successful sale and plan. These amounts were calculated by the Debtors' management as necessary to retain the Eligible Employees through the relevant periods of these chapter 11 cases. As a result, the Debtors, in their sound business judgment, believe that the continued maintenance of the Retention Plan in the ordinary course is well justified under the circumstances and will benefit all parties in interest in these chapter 11 case.

49.    For these reasons, the Debtors submit that the relief requested herein is necessary, prudent, and in the best interests of the Debtors, their estates, and creditors, and should therefore be granted.

## II.    The Court Should Authorize the Banks to Honor and Process the Debtors' Payments on Account of the Employee Wages and Benefits

50.    The Debtors also request the Court to authorize the Banks, when requested by the Debtors, in their discretion, to honor and process checks or electronic fund transfers drawn on the Debtors' bank accounts to pay prepetition obligations described herein, whether such checks or other requests were submitted prior to, or after, the Petition Date, provided that sufficient funds are available in the applicable bank accounts to make such payments.  The Debtors further request that all of the Banks be authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved pursuant to this Motion.

## **SATISFACTION OF BANKRUPTCY RULE 6003(b)**

51.     Pursuant to Bankruptcy Rule 6003(b), any motion seeking to use property of the estate pursuant to section 363 of the Bankruptcy Code or to satisfy prepetition claims within twenty-one (21) days of the Petition Date requires the Debtors to demonstrate that such relief "is necessary to avoid immediate and irreparable harm."  Fed. R. Bankr. P. 6003.  The Debtors believe that, among other things, the success of their chapter 11 efforts will require the continued focus and dedication of the Workforce, as any deterioration in employee morale or significant loss in workforce will have an adverse impact on the Debtors' ability, among other things, to continue to operate their business without any unexpected or inopportune interruption and to successfully prosecute these chapter 11 cases.  Thus, if the relief requested herein is not granted, the failure to satisfy the Employee Wages and Benefits would cause the Debtors' estates immediate and irreparable harm by detracting from, and potentially derailing, the Debtors' chapter 11 efforts.

52.     For this reason and those set forth above, the Debtors respectfully submit that Bankruptcy Rule 6003(b) has been satisfied, and the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates.

## **WAIVER OF STAY UNDER BANKRUPTCY RULE 6004(h)**

53.     Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 6004(h).  As provided herein, and to implement the foregoing successfully, the Debtors request that the Proposed Orders include a finding that the Debtors have established cause to exclude such relief from the fourteen (14)-day stay period under Bankruptcy Rule 6004(h).

54. For this reason and those set forth above, the Debtors submit that ample cause exists to justify a waiver of the fourteen (14)-day stay imposed by Bankruptcy Rule 6004(h), to the extent applicable to the Proposed Orders.

## RESERVATION OF RIGHTS

55. Nothing in the Proposed Orders or this Motion: (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors and their estates; (b) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors and their estates with respect to the validity, priority, or amount of any claim against the Debtors and their estates; or (c) shall be construed as a promise to pay a claim.

## NOTICE

56. Notice of this Motion has been provided to: (a) the Office of the United States Trustee for the District of Delaware (Attn: Joseph Cudia (joseph.cudia@usdoj.gov)); (b) the Debtors' thirty (30) largest unsecured creditors; (c) counsel to Magnetar Financial LLC, (i) Royer Cooper Cohen Braunfeld LLC, 1120 Avenue of the Americas, 4th Floor, New York, NY 10036, (Attn: Marc E. Hirschfield (mhirschfield@rccblaw.com)) and (ii) Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, DE 19801 (Attn: Russell C. Silberglied (silberglied@rlf.com)), as agent for the prepetition secured lenders; (d) the Internal Revenue Service; (e) the Securities and Exchange Commission; (f) the Office of the United States Attorney for the District of Delaware; (g) the Banks; and (h) all parties that have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002. Notice of this Motion and any order entered hereon will be served in accordance with Rule 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the

District of Delaware.  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

<div align="center">[<em>Remainder of Page Intentionally Left Blank</em>]</div>

## CONCLUSION

WHEREFORE, the Debtors request entry of the Proposed Orders, granting the

relief requested herein and such other and further relief as is just and proper.

Dated: June 26, 2023

<div style="display:flex">

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ S. Alexander Faris*
Joseph Barry (Del. Bar No. 4221)
Ryan M. Bartley (Del. Bar No. 4985)
S. Alexander Faris (Del. Bar No. 6278)
Shella Borovinskaya (Del. Bar No. 6758)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253
Email:  jbarry@ycst.com
            rbartley@ycst.com
            afaris@ycst.com
            sborovinskaya@ycst.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

**KRAMER LEVIN NAFTALIS & FRANKEL LLP**
P. Bradley O'Neill (*pro hac vice* pending)
Caroline Gange (*pro hac vice* pending)
1177 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 715-9511
Facsimile:  (212) 715-8000
Email:  boneill@kramerlevin.com
            cgange@kramerlevin.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

</div>

# EXHIBIT A

## Proposed Interim Order

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Peer Street, Inc., *et al.*,[1] | Case No. 23-10815 (___) |
| Debtors. | (Jointly Administered) |

## INTERIM ORDER (I) AUTHORIZING DEBTORS TO PAY CERTAIN PREPETITION WAGES, SALARIES, AND OTHER COMPENSATION, (II) AUTHORIZING CONTINUATION OF EMPLOYEE BENEFIT PROGRAMS, (III) AUTHORIZING BANKS TO HONOR AND PROCESS CHECKS AND TRANSFERS RELATED TO SUCH EMPLOYEE OBLIGATIONS, AND (IV) GRANTING RELATED RELIEF

Upon consideration of the motion (the "**Motion**")[2] of the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") for the entry of interim and final orders, pursuant to sections 105(a), 363(b), 507(a)(4), and 507(a)(5) of the Bankruptcy Code, (a) authorizing, but not directing, the Debtors, in accordance with their stated policies and in their discretion, to pay, honor or otherwise satisfy the Employee Wages and Benefits, including amounts and obligations related to the period prior to the Petition Date, and (b) authorizing the Banks to honor and process check and electronic transfer requests related to the foregoing; and upon consideration of the First Day Declaration; and due and proper notice of the Motion having been given; and it appearing that no other or further notice of the Motion is required except as otherwise provided

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their respective federal tax identification numbers, are: Peer Street, Inc. (8584); PS Funding, Inc. (3268); PeerStreet Licensing, Inc. (9435); Peer Street Opportunity Fund GP, LLC (8491); Peer Street Funding LLC (9485); PSF REO LLC (1013); PS Options LLC (8584); PS Warehouse, LLC (5663); PS Warehouse II, LLC (9252); Peer Street Opportunity Investors II, LP (1586); PS Portfolio-ST1, LLC (1868); PSF Ohio, LLC (9485); PSF TX 1, LLC (9485); PSF TX 2, LLC (2415); PSF TX 4 LLC (9485). The Debtors' service address is c/o Province, LLC 2360 Corporate Circle, Suite 340, Henderson, NV 89074, Attn: David Dunn, Chief Restructuring Officer.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

herein; and it appearing that this Court has jurisdiction to consider the Motion in accordance with 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order; and it appearing that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and it appearing that venue of this proceeding and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that the relief requested in the Motion and provided for herein is in the best interest of the Debtors, their estates, and their creditors; and after due deliberation and sufficient cause appearing therefor, **IT IS HEREBY ORDERED THAT**:

1.      The Motion is GRANTED on an interim basis as set forth herein.

2.      A final hearing on the relief sought in the Motion shall be conducted on _____, 2023 at [*] (ET) (the "**Final Hearing**").  Any party objecting to the relief sought at the Final Hearing or the Proposed Final Order shall file and serve a written objection, which objection shall be served upon proposed counsel for the Debtors, in each case so as to be received no later than _____, 2023 at 4:00 p.m. (ET).  If no objections to the entry of the Proposed Final Order are timely filed, this Court may enter the Proposed Final Order without further notice or a hearing.

3.      The Debtors are authorized, in their discretion, to pay, honor, or otherwise satisfy amounts and obligations on account of the Employee Wages and Benefits in the ordinary course of their business, including, without limitation, any amounts and obligations related to the period prior to the Petition Date; *provided, however*, that:  (a) no payment to any Employee or Independent Contractor on account of Unpaid Wages shall exceed, in the aggregate, the $15,150.00 statutory cap provided for under section 507(a)(4) of the Bankruptcy Code; (b) with respect to the Employee Wages and Benefits set forth in the table immediately below, the Debtors shall not pay any prepetition obligations on account of such Employee Wages and Benefits in

excess of the applicable amounts set forth therein, unless required by applicable state law; and (c) the Debtors shall not cash out any prepetition obligations on account of Paid Time Off unless applicable state law requires such cash-out payment.

| **Employee Wages and Benefits** | **Aggregate Amount** |
|---|---|
| Unpaid Wages | $130,000.00 |
| Employee Expenses | $30,000.00 |
| Wage Deductions | $15,000.00 |
| Trust Fund Taxes and Payroll Taxes | $52,500.00 |
| Workers' Compensation Program | $400.00 |

4.      Subject to Paragraph 3 of this Order, the Debtors are authorized, in their discretion, in the ordinary course of their business, to (a) continue to pay, honor, or otherwise satisfy Unpaid Wages, Payroll Processor Fees, Employee Expenses, and Paid Time Off obligations, (b) withhold, and remit to the applicable third-parties, Wage Deductions, Trust Fund Taxes, and Payroll Taxes; and (c) administer the Employee Benefits and the Workers' Compensation Program.

5.      Nothing in this Interim Order shall be deemed to authorize the payment of any amounts subject to section 503(c) of the Bankruptcy Code.  Additionally, this Interim Order is not intended to, nor shall it, approve the Retention Plan, and notice of the hearing to consider approval of the Retention Plan shall be provided by the Debtors consistent with paragraph 2 hereof.

6.      Nothing in this Order:  (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors and their estates; (b) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors and their estates with respect to the validity, priority,

or amount of any claim against the Debtors and their estates; or (c) shall be construed as a promise to pay any claim.

7.      The Debtors are authorized to take any and all actions necessary to effectuate the relief granted herein.

8.      The requirements of Bankruptcy Rule 6003(b) are satisfied.

9.      Notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be effective and enforceable immediately upon its entry.

10.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

## **EXHIBIT B**

## **Proposed Final Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Peer Street, Inc., *et al.*,[1] | Case No. 23-10815 (___) |
| Debtors. | (Jointly Administered) |

**FINAL ORDER (I) AUTHORIZING DEBTORS TO PAY CERTAIN PREPETITION
WAGES, SALARIES, AND OTHER COMPENSATION, (II) AUTHORIZING
CONTINUATION OF EMPLOYEE BENEFIT PROGRAMS, (III) AUTHORIZING
BANKS TO HONOR AND PROCESS CHECKS AND TRANSFERS RELATED
TO SUCH EMPLOYEE OBLIGATIONS, AND (IV) GRANTING RELATED RELIEF**

Upon consideration of the motion (the "**Motion**")[2] of the above-captioned debtors

and debtors in possession (collectively, the "**Debtors**") for the entry of interim and final orders,

pursuant to sections 105(a), 363(b), 507(a)(4), and 507(a)(5) of the Bankruptcy Code,

(a) authorizing, but not directing, the Debtors, in accordance with their stated policies and in their

discretion, to pay, honor, or otherwise satisfy the Employee Wages and Benefits, including

amounts and obligations related to the period prior to the Petition Date, and (b) authorizing the Banks

to honor and process check and electronic transfer requests related to the foregoing; and upon

consideration of the First Day Declaration; and due and proper notice of the Motion having been

given; and it appearing that no other or further notice of the Motion is required except as otherwise

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their respective federal tax identification numbers, are:  Peer Street, Inc. (8584); PS Funding, Inc. (3268); PeerStreet Licensing, Inc. (9435); Peer Street Opportunity Fund GP, LLC (8491); Peer Street Funding LLC (9485); PSF REO LLC (1013); PS Options LLC (8584); PS Warehouse, LLC (5663); PS Warehouse II, LLC (9252); Peer Street Opportunity Investors II, LP (1586); PS Portfolio-ST1, LLC (1868); PSF Ohio, LLC (9485); PSF TX 1, LLC (9485); PSF TX 2, LLC (2415); PSF TX 4 LLC (9485).  The Debtors' service address is c/o Province, LLC 2360 Corporate Circle, Suite 340, Henderson, NV 89074, Attn:  David Dunn, Chief Restructuring Officer.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

provided herein; and it appearing that this Court has jurisdiction to consider the Motion in accordance with 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order; and it appearing that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and it appearing that venue of this proceeding and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that the relief requested in the Motion and provided for herein is in the best interest of the Debtors, their estates, and their creditors; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**:

1.      The Motion is GRANTED on a final basis as set forth herein.

2.      The Debtors are authorized, in their discretion, to pay, honor, or otherwise satisfy amounts and obligations on account of the Employee Wages and Benefits in the ordinary course of their business, including, without limitation, any amounts and obligations related to the period prior to the Petition Date; *provided, however*, that: (a) no payment to any Employee or Independent Contractor on account of Unpaid Wages shall exceed, in the aggregate, the $15,150.00 statutory cap provided for under section 507(a)(4) of the Bankruptcy Code; and (b) with respect to the Employee Wages and Benefits set forth in the table immediately below, the Debtors shall not pay any prepetition obligations on account of such Employee Wages and Benefits in excess of the applicable amounts set forth therein, unless required by applicable state law; and (c) the Debtors shall not cash out any prepetition obligations on account of Paid Time Off, unless applicable state law requires such cash-out payment.

| **Employee Wages and Benefits** | **Aggregate Amount** |
|---|---|
| Unpaid Wages | $130,000.00 |
| Payroll Processor Fees | $1,000.00 |
| Employee Expenses | $30,000.00 |

| Wage Deductions | $15,000.00 |
| Trust Fund Taxes and Payroll Taxes | $52,500.00 |
| Retention Plan | $880,000.00 |
| Workers' Compensation Program | $600.00 |

3.     Subject to Paragraph 2 of this Order, the Debtors are authorized, in their discretion, in the ordinary course of their business, to (a) continue to pay, honor, or otherwise satisfy Unpaid Wages, Payroll Processor Fees, Employee Expenses, and FTO obligations; (b) withhold, and remit to the applicable third-parties, Wage Deductions, Trust Fund Taxes, and Payroll Taxes; and (c) administer the Employee Benefits and the Workers' Compensation Program.

4.     The Debtors are authorized, but not directed, to continue the Retention Plan with respect to Eligible Employees who are not Insiders on a postpetition basis in the ordinary course of business; *provided that* nothing in this Final Order shall authorize the Debtors to make any payments prohibited under section 503(c) of the Bankruptcy Code, including, for the avoidance of doubt, payment of any bonus or severance obligations to or on behalf of any Insider or violate or permit a violation of section 503(c) of the Bankruptcy Code.

5.     Nothing in this Order shall be deemed to authorize the payment of any amounts subject to section 503(c) of the Bankruptcy Code.

6.     Nothing in this Order:  (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors and their estates; (b) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors and their estates with respect to the validity, priority,

or amount of any claim against the Debtors and their estates; or (c) shall be construed as a promise to pay a claim.

7.      The Debtors are authorized to take any and all actions necessary to effectuate the relief granted herein.

8.      Notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be effective and enforceable immediately upon its entry.

9.      This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.