**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Peer Street, Inc., *et al.*,[1] | Case No. 23-10815 (___) |
| Debtors. | (Joint Administration Requested) |

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (A) AUTHORIZING THE DEBTORS TO PAY CERTAIN PREPETITION CLAIMS OF CRITICAL VENDORS; (B) AUTHORIZING BANKS TO HONOR AND PROCESS CHECK AND ELECTRONIC TRANSFER REQUESTS RELATED THERETO; AND (C) GRANTING RELATED RELIEF**

The above-captioned affiliated debtors and debtors in possession (collectively, the "**Debtors**") hereby submit this motion (this "**Motion**") for the entry of interim and final orders, substantially in the form attached hereto as **Exhibit A** (the "**Proposed Interim Order**") and **Exhibit B** (the "**Proposed Final Order**," and together with the Proposed Interim Order, the "**Proposed Orders**"), pursuant to sections 105(a), 363(b), 1107(a), and 1108 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**"), (a) authorizing, but not directing, the Debtors to pay, in the ordinary course of business, certain prepetition claims of critical vendors and service providers (each, a "**Critical Vendor Claim**," and collectively, the "**Critical Vendor Claims**"); (b) authorizing banks and other financial institutions (collectively, the "**Banks**") to honor and process check and electronic transfer requests related to the foregoing; and (c) granting related relief. In support of this Motion, the Debtors rely upon and

[1] The Debtors in these chapter 11 cases, along with the last four digits of their respective federal tax identification numbers, are: Peer Street, Inc. (8584); PS Funding, Inc. (3268); PeerStreet Licensing, Inc. (9435); Peer Street Opportunity Fund GP, LLC (8491); Peer Street Funding LLC (9485); PSF REO LLC (1013); PS Options LLC (8584); PS Warehouse, LLC (5663); PS Warehouse II, LLC (9252); Peer Street Opportunity Investors II, LP (1586); PS Portfolio-ST1, LLC (1868); PSF Ohio, LLC (9485); PSF TX 1, LLC (9485); PSF TX 2, LLC (2415); PSF TX 4 LLC (9485). The Debtors' service address is c/o Province, LLC 2360 Corporate Circle, Suite 340, Henderson, NV 89074, Attn: David Dunn, Chief Restructuring Officer.

incorporate by reference the *Declaration of David M. Dunn in Support of Chapter 11 Petitions and First Day Pleadings* (the "**First Day Declaration**"),[2] filed contemporaneously herewith. In further support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION AND VENUE

1. The United States Bankruptcy Court for the District of Delaware (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012 (the "**Amended Standing Order**"). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution. Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief sought herein are sections 105(a), 363(b), 1107(a), and 1108 of the Bankruptcy Code and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

## BACKGROUND

### I. General

2. Today (the "**Petition Date**"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code. The Debtors are authorized to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No official committees have been appointed in these chapter 11 cases and no request has been made for the appointment of a trustee or an examiner.

---

[2] Each capitalized term used but not defined herein shall have the meaning ascribed to it in the First Day Declaration.

3.      Additional information regarding the Debtors' business, their capital structure, and the circumstances leading to the filing of these chapter 11 cases is set forth in the First Day Declaration.

## II.     The Critical Vendors

4.      As described more fully in the First Day Declaration, the Debtors operate a web-based marketplace that connects retail and institutional investors to real estate investment loans from a nationwide network of vetted private lenders and brokers.  In the ordinary course of business, the Debtors engage a limited number of providers (each, a "**Critical Vendor**," and collectively, the "**Critical Vendors**") that (i) operate certain unique platforms where the Debtors' offer investments to their customers or (ii) provide specialty services related to the operation of the Debtors' business, such as loan servicing (collectively, the " **Services**"), that the Debtors depend on to operate their business.  Any interruption in these Services—however brief—risks materially disrupting the Debtors' operations and could cause irreparable harm to their business, goodwill, and customer base, and may hinder the Debtors' ability to maximize value for all stakeholders.

5.      Absent the ability to pay the Critical Vendors, the Debtors will suffer immediate and irreparable harm to both their customer and vendor bases.  Further, replacing these Critical Vendors at outset of these chapter 11 cases would be difficult, and with respect to certain popular platforms, impossible.  Even assuming that the Debtors could replace the Critical Vendors, the time and expense required to do so would have a detrimental impact on the Debtors' business, thereby adversely impacting the Debtors' ability to maximize value.

6.      The Debtors respectfully submit that payment of the Critical Vendor Claims should be authorized by the Court.  The Debtors have determined, in the sound exercise of their business judgment, that the Services provided by the Critical Vendors are vital to the

provision of the Debtors' continuing business operations and their ability to maximize value. If the Critical Vendors are unwilling to provide the Services because of their outstanding prepetition claims, the Debtors' operations would suffer dramatically, hindering the Debtors' restructuring efforts and compromising the value of the Debtors' estates to the detriment of all creditors.

7. As of the Petition Date, the Debtors are aware of approximately $10,000.00 owed to Critical Vendors on account of Critical Vendor Claims, and the Debtors expect that this number will increase as invoices for prepetition services are submitted to the Debtors.

## III. The Debtors' Process for Identifying Critical Vendors

8. To identify the Critical Vendors, the Debtors reviewed their accounts payable and prepetition vendor lists to identify those vendors and suppliers most essential to the Debtors' operations pursuant to the following criteria: (a) which vendors provide unique Services, without whom the Debtors could not continue operations without disruption; (b) the Debtors' ability to find timely alternative platforms, service providers, or vendors, and the potential disruption while sourcing replacements; (c) which platforms, service providers, or vendors would be prohibitively expensive to replace; (d) whether a platform, service provider, or vendor meeting the foregoing criteria is able or likely to refuse to continue to do business with the Debtors postpetition if its prepetition balances are not paid; (e) whether the specific vendor is subject to an existing executory contract requiring ongoing provision of Services despite the Debtors' chapter 11 filing; and (f) the loss of revenue if a Critical Vendor refuses to continue to provide Services.

## RELIEF REQUESTED

9. By this Motion, the Debtors request that the Court enter the Proposed Orders, authorizing, but not directing, the Debtors to pay, in their discretion, the Critical Vendor Claims in an amount up to $125,000.00 (the "**Critical Vendor Claims Cap**"). Specifically, the Debtors seek authority to pay, in their discretion, up to $100,000.00 in Critical Vendor Claims under the Proposed Interim Order and, upon entry of the Proposed Final Order, up to $125,000.00 in Critical Vendor Claims.

10. The Debtors propose to send a letter to the Critical Vendors, along with a copy of the Proposed Interim Order or Proposed Final Order, as applicable, setting forth the following information and proposing the following terms as a basis for the parties' postpetition trade relationship (the "**Trade Agreement**"):

a. The amount of the Critical Vendor's estimated prepetition claim, after accounting for any setoffs, other credits, and discounts thereto), which shall be mutually determined in good faith by the Critical Vendor and the Debtors. Such amount shall be used only for purposes of the Proposed Orders and shall not be deemed a claim allowed by the Court. Further, the rights of all parties in interest to object to a claim of a Critical Vendor shall be fully preserved until further order of the Court;

b. The Critical Vendor's agreement to be bound by the Customary Trade Terms (as defined in the Proposed Interim Order or Proposed Final Order, as applicable) (including, but not limited to, credit limits, pricing, cash discounts, timing of payments, allowances, rebates, coupon reconciliation, normal product mix and availability, and other applicable terms and programs) favorable to the Debtors and in effect between such Critical Vendor and the Debtors on a historical basis within six (6) months of the Petition Date, or such other trade terms as mutually agreed to by the Debtors and such Critical Vendor;

c. The Critical Vendor's agreement to provide the Services to the Debtors based upon Customary Trade Terms, and the Debtors' agreement to pay the Critical Vendor in accordance with such terms;

d. The Critical Vendor's agreement not to file or otherwise assert against any of the Debtors, their estates, or any of their respective assets or property (real or personal) any lien (each, a "**Lien**") (regardless of the statute or other legal authority upon which such Lien is asserted) related in any way to any remaining prepetition amounts allegedly owed to the Critical Vendor by the Debtors arising from the Services provided to the Debtors prior to the Petition Date. To the extent the Critical Vendor has previously obtained such a Lien, the Critical Vendor shall immediately take all necessary actions to release such Lien;

e. The Critical Vendor's acknowledgment that it has reviewed the terms and provisions of the Proposed Interim Order or, if entered, the Proposed Final Order, and consents to be bound thereby;

f. The Critical Vendor's agreement that it will not separately assert or otherwise seek payment of any reclamation claims;

g. The Critical Vendor's agreement that nothing in the Trade Agreement grants an allowed claim with respect to any unpaid amounts, and that the Critical Vendor retains responsibility to file a timely proof of claim with respect to any amounts that are alleged to remain unpaid; and

h. The Critical Vendor's acknowledgement that, if it subsequently refuses to provide the Services to the Debtors on Customary Trade Terms, the Debtors reserve all rights to recover sums paid in excess of postpetition obligations in the event a Trade Agreement is terminated.

Once agreed to and accepted by a Critical Vendor, the Trade Agreement shall govern the parties' postpetition trade relationship.

11. The Debtors hereby seek authority to enter into Trade Agreements with the Critical Vendors to the extent that the Debtors determine, in their discretion, that such agreements are necessary to their postpetition operations. In the event that the Debtors do not or are unable to enter into a Trade Agreement with any Critical Vendor, however, the Debtors nevertheless seek authority to pay such Critical Vendor's claim if the Debtors determine, in their sole discretion, that such payment is necessary to prevent irreparable harm to the Debtors' business operations.

12. Finally, the Debtors seek relief authorizing banks and other financial institutions to receive, process, honor, and pay checks or electronic transfers used by the Debtors to pay the foregoing and to rely on the representations of such Debtors as to which checks are issued and authorized to be paid in accordance with any relief granted in connection with this Motion.

## BASIS FOR RELIEF

### I. The Court Should Authorize, But Not Direct, the Debtors, in Their Discretion, to Pay the Critical Vendor Claims

13. The Services provided by the Critical Vendors are necessary to ensure the Debtors' continued operations and the success of these chapter 11 cases. The Critical Vendors are the most efficient and, in many cases, the only practical source from which the Debtors can procure critical Services within a timeframe that would permit the Debtors to avoid delays or shutdowns in their operations. As explained above, a mainstay of the Debtors' business is the technology platform through which their customers can take advantage of the Debtors' offerings. Any failure to pay the Critical Vendor Claims would, in the Debtors' business judgment, result in the Critical Vendors refusing to provide necessary Services to the Debtors. Any refusal by the Critical Vendors to do business with the Debtors on a postpetition basis would have significant deleterious effects on the Debtors' business, and undermine the Debtors' restructuring efforts and the ability to preserve and maximize the value of their estates.

14. With respect to the Critical Vendor Claims, the Debtors have reviewed their accounts payable and undertaken a process to identify those vendors that are essential to avoid any disruption to their operations. The Debtors have further developed certain procedures that, if and when implemented, in their discretion and business judgment, will ensure that the Critical Vendors receiving payment of their Critical Vendor Claims will continue to provide the

Services to the Debtors based upon the Customary Trade Terms, or such other trade terms as are agreed to by the Debtors and the Critical Vendors.

15.     The authority to pay the Critical Vendor Claims is vital to the Debtors' efforts to preserve and maximize the value of their estates.  If the Proposed Orders are not entered, many of the Critical Vendors will likely refuse to do business with the Debtors.  Such a result would be damaging to the Debtors' restructuring efforts to the detriment of the Debtors' estate and creditors.  Moreover, the continued availability of trade credit in amounts and on terms consistent with the Debtors' prepetition trade terms is important to the Debtors stabilizing their liquidity.  The retention or reinstatement of the Customary Trade Terms will enable the Debtors to maximize the value of their business.  Conversely, a deterioration in postpetition trade credit available to the Debtors, together with a disruption in the Debtors' receipt of the necessary Services, would, among other things, increase the amount of liquidity needed by the Debtors postpetition, and impede the Debtors' chapter 11 efforts.

16.     For the foregoing reasons, the Debtors respectfully submit that entry of the Proposed Orders is in the best interests of the Debtors, their estates, and creditors.

## II.     The Court Should Authorize Payment of the Critical Vendor Claims Under the "Doctrine of Necessity"

17.     Section 363(b)(1) of the Bankruptcy Code provides that, after notice and a hearing, the trustee "may use, sell, or lease, other than in the ordinary course of business. property of the estate . . . ." 11 U.S.C. § 363(b)(1).

18.     Section 105(a) of the Bankruptcy Code empowers a bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  Bankruptcy courts have invoked the equitable power of section 105 of the Bankruptcy Code to authorize the postpetition payment of prepetition claims

where such payment is necessary to preserve the value of a debtor's estate.  *See, e.g.*, *Tropical Sportswear Int'l Corp.*, 320 B.R. 15, 20 (Bankr. M.D. Fla. 2005) ("Bankruptcy courts recognize that section 363 is a source for authority to make critical vendor payments, and section 105 is used to fill in the blanks.").  Courts have likewise acknowledged that "[u]nder [section] 105, the court can permit pre-plan payment of a prepetition obligation[s] when essential to the continued operation of the debtor." *In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (citing *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 177 (Bankr. S.D.N.Y. 1989)); *see In re Just for Feet, Inc.*, 242 B.R. 821, 825 (D. Del. 1999) (citing *In re Penn Cent. Transp. Co.*, 467 F.2d 100, 102 n.1 (3d Cir. 1972)) (holding that the court is authorized under section 105(a) of the Bankruptcy Code to allow immediate payment of prepetition claims of vendors found to be critical to the debtor's continued operation).

19.     In a long line of well-established cases, federal courts consistently have permitted postpetition payment of prepetition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors.  *See, e.g.*, *Miltenberger v. Logansport, C. & S. W. Ry. Co.*, 106 U.S. 286, 312 (1882) (holding that payment of pre-receivership claim permitted to prevent "stoppage of [crucial] business relations"); *In re Lehigh & New Eng. Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that "if payment of a claim which arose prior to [the commencement of the bankruptcy case] is essential to the continued operation of the . . . [business] during [the bankruptcy case], payment may be authorized even if it is made out of [the] corpus"); *Dudley v. Mealey*, 147 F.2d 268, 271 (2d Cir. 1945) (extending the doctrine for payment of prepetition claims beyond railroad reorganization cases).

20.     This legal principle—known as the "doctrine of necessity"—functions in chapter 11 cases as a mechanism by which a bankruptcy court can exercise its equitable power to

allow payment of critical prepetition claims not explicitly authorized by the Bankruptcy Code. *Just for Feet*, 242 B.R. at 826 (finding that "to invoke the necessity of payment doctrine, a debtor must show that payment of the pre-petition claims is critical to the debtor's [continued operation]."); *In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 939 (Bankr. D. Del. 1992) (recognizing that "[i]f payment of a pre-petition claim is essential to the continued operation of [the debtor], payment may be authorized"); *In re Boston & Me. Corp.*, 634 F.2d 1359, 1382 (1st Cir. 1980) (recognizing the existence of a judicial power to authorize trustees to pay claims for goods and services that are indispensably necessary to a debtor's continued operation). The doctrine is frequently invoked early in a bankruptcy case, particularly in connection with those Bankruptcy Code sections that relate to payment of prepetition claims. In one case, the court indicated its accord with "the principle that a bankruptcy court may exercise its equity powers under section 105(a) to authorize payment of pre-petition claims where such payment is necessary 'to permit the greatest likelihood of . . . payment of creditors in full or at least proportionately.'" *In re Structurelite Plastics Corp.*, 86 B.R. 922, 931 (Bankr. S. D. Ohio 1988).

21. As explained above, the Services provided by the Critical Vendors are essential to ensure that there is no delay or disruption to the operation of the Debtors' business. The Debtors submit that the total amount to be paid to the Critical Vendors is minimal compared to the importance and necessity of the Debtors' uninterrupted receipt of the necessary Services and revenue generated from those Services. Moreover, the Debtors' analysis indicates that there are no cost-effective or readily accessible alternatives to paying the Critical Vendors. And, with respect to Vendor Claims that satisfy the requirements of section 503(b)(9) of the Bankruptcy Code (if any), the Debtors submit that the relief requested herein will only affect the payment timing of such claims, thereby not prejudicing general unsecured creditors.

22. Accordingly, the Debtors submit that the Court should exercise its equitable power to grant the relief requested herein.

**III. The Court Should Authorize Payment of the Critical Vendor Claims as a Valid Exercise of the Debtors' Fiduciary Duties**

23. Authority for satisfying the Critical Vendor Claims also may be found in sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors, operating their business as debtors in possession under sections 1107(a) and 1108, is a fiduciary "holding the bankruptcy estate and operating the business for the benefit of creditors and (if the value justifies) equity owners." *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). Implicit in the duties of a chapter 11 debtor in possession is the duty "to protect and preserve the estate, including an operating business's going-concern value." *Id.*

24. Courts have noted that there are instances in which a debtor in possession can fulfill its fiduciary duty "only . . . by the preplan satisfaction of a prepetition claim." *Id.* The *CoServ* court specifically noted that preplan satisfaction of prepetition claims would be a valid exercise of a debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate," *id.*, and also when the payment was to "sole suppliers of a given product." *Id.* at 498. The court provided a three-pronged test for determining whether a preplan payment on account of a prepetition claim was a valid exercise of a debtor's fiduciary duty:

> First, it must be critical that the debtor deal with the claimant. Second, unless it deals with the claimant, the debtor risks the probability of harm, or, alternatively, loss of economic advantage to the estate or the debtor's going concern value, which is disproportionate to the amount of the claimant's prepetition claim. Third, there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim.

*Id.*

25.     Payment of the Critical Vendor Claims meets each element of the *CoServ* court's standard.  As described above, the Critical Vendor Claims encompass the claims of those Critical Vendors that would otherwise refuse, or would be unable to, provide the Services to the Debtors on a postpetition basis if their prepetition balances are not paid, thereby creating significant risk that the Debtors will experience delay and disruption to their operations.  Any such disruption would diminish estate value and frustrate the Debtors' chapter 11 efforts.  The harm and economic disadvantage that would stem from the failure of any of the Critical Vendors to perform is disproportionate to the amount of the Critical Vendor Claims.

26.     Finally, the Debtors have examined other options short of payment of the Critical Vendor Claims and have determined that, to avoid an unexpected or inopportune interruption to their business operations, there exists no practical alternative to their payment of the Critical Vendor Claims.  Therefore, the Debtors can only meet their fiduciary duties as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code by payment of the Critical Vendor Claims.

27.     As explained above, it is critical to the Debtors' chapter 11 efforts that they continue to receive the Services, as applicable, from the Critical Vendors on an uninterrupted basis throughout the chapter 11 process.  Without the relief requested herein, many of the Critical Vendors may cease providing the Services to the Debtors, which would prevent the Debtors from operating, complicate the Debtors' restructuring efforts, and could have devastating consequences for the Debtors, their estates, and stakeholders.

28.     Accordingly, for all of the foregoing reasons, the Debtors submit that cause exists for granting the relief requested herein.

**IV. The Court Should Authorize the Banks to Honor and Process the Debtors' Payments in Accordance with This Motion**

29. In connection with the foregoing, the Debtors respectfully request that the Court (a) authorize all applicable Banks to receive, process, honor, and pay all checks and transfers issued by the Debtors in accordance with any relief granted in connection with this Motion, without regard to whether any checks or transfers were issued before or after the Petition Date; (b) provide that all Banks may rely on the representations of the Debtors with respect to whether any check or transfer issued or made by the Debtors before the Petition Date should be honored pursuant to this Motion (such banks and other financial institutions having no liability to any party for relying on such representations by the Debtors provided for herein); and (c) authorize the Debtors to issue replacement checks or transfers to the extent any checks or transfers that are issued and authorized to be paid in accordance with this Motion are dishonored or rejected by the Banks.

**SATISFACTION OF BANKRUPTCY RULE 6003(b)**

30. Pursuant to Bankruptcy Rule 6003(b), any motion seeking to use property of the estate pursuant to section 363 of the Bankruptcy Code or to satisfy prepetition claims within twenty-one (21) days of the Petition Date requires the Debtors to demonstrate that such relief "is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003. For the reasons discussed above and in the First Day Declaration, authorizing the Debtors to pay the Critical Vendor Claims and granting the other relief requested herein is critical to the Debtors' ability to continue operating with the least amount of disruption as possible following the Petition Date. Failure to receive such authorization and other relief during the first twenty-one (21) days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture and imperil the Debtors' chapter 11 efforts. The relief requested is necessary for the

Debtors to operate their businesses in the ordinary course, preserve the ongoing value of the Debtors' operations, and maximize the value of their estates for the benefit of all stakeholders. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

**WAIVER OF STAY UNDER BANKRUPTCY RULE 6004(h)**

31. Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As provided herein, and to implement the foregoing successfully, the Debtors request that the Proposed Orders include a finding that the Debtors have established cause to exclude such relief from the fourteen (14)-day stay period under Bankruptcy Rule 6004(h).

32. For this reason and those set forth above, the Debtors submit that ample cause exists to justify a waiver of the fourteen (14)-day stay imposed by Bankruptcy Rule 6004(h), to the extent applicable to the Proposed Orders.

**RESERVATION OF RIGHTS**

33. Nothing in the Proposed Orders or this Motion: (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors and their estates; (b) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors and their estates with respect to the validity, priority, or amount of any claim against the Debtors and their estates; or (c) shall be construed as a promise to pay a claim.

**NOTICE**

34. Notice of this Motion has been provided to: (a) the Office of the United States Trustee for the District of Delaware; (b) the Debtors' thirty (30) largest unsecured

creditors; (c) counsel to Magnetar Financial LLC, as agent for the prepetition secured lenders; (d) the Internal Revenue Service; (e) the Securities and Exchange Commission; (f) the Office of the United States Attorney for the District of Delaware; (g) the Banks; and (h) all parties that have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002.  Notice of this Motion and any order entered hereon will be served in accordance with Rule 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware.  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

[*Remainder of Page Intentionally Left Blank*]

**CONCLUSION**

WHEREFORE, the Debtors request entry of the Proposed Orders, granting the relief requested herein and such other and further relief as is just and proper.

Dated: June 26, 2023

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ S. Alexander Faris*
Joseph Barry (Del. Bar No. 4221)
Ryan M. Bartley (Del. Bar No. 4985)
S. Alexander Faris (Del. Bar No. 6278)
Shella Borovinskaya (Del. Bar No. 6758)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email: jbarry@ycst.com
rbartley@ycst.com
afaris@ycst.com
sborovinskaya@ycst.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

**KRAMER LEVIN NAFTALIS & FRANKEL LLP**

P. Bradley O'Neill (*pro hac vice* pending)
Caroline Gange (*pro hac vice* pending)
1177 Avenue of the Americas
New York, New York 10036 Telephone:
(212) 715-9511
Facsimile: (212) 715-8000
Email: boneill@kramerlevin.com
cgange@kramerlevin.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

# EXHIBIT A

## Proposed Interim Order

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| In re:<br><br>Peer Street, Inc., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 23-10815 (___)<br><br>(Joint Administration Requested) |
|---|---|

**INTERIM ORDER (A) AUTHORIZING THE DEBTORS TO PAY CERTAIN PREPETITION CLAIMS OF CRITICAL VENDORS; (B) AUTHORIZING BANKS TO HONOR AND PROCESS CHECK AND ELECTRONIC TRANSFER REQUESTS RELATED THERETO; AND (C) GRANTING RELATED RELIEF**

Upon consideration of the motion (the "**Motion**")[2] of the above-captioned debtors and debtors in possession (the "**Debtors**") for the entry of interim and final orders, pursuant to sections 105(a), 363(b), 1107(a), and 1108 of the Bankruptcy Code, (a) authorizing, but not directing, the Debtors, in their discretion, to pay Critical Vendor Claims in the ordinary course of business, and (b) authorizing the Banks to honor and process check and electronic transfer requests related to the foregoing; and upon consideration of the First Day Declaration; and due and proper notice of the Motion having been given; and it appearing that no other or further notice of the Motion is required except as otherwise provided herein; and it appearing that this Court has jurisdiction to consider the Motion in accordance with 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order; and it appearing that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and it appearing that venue of this proceeding and the Motion is proper

[1] The Debtors in these chapter 11 cases, along with the last four digits of their respective federal tax identification numbers, are: Peer Street, Inc. (8584); PS Funding, Inc. (3268); PeerStreet Licensing, Inc. (9435); Peer Street Opportunity Fund GP, LLC (8491); Peer Street Funding LLC (9485); PSF REO LLC (1013); PS Options LLC (8584); PS Warehouse, LLC (5663); PS Warehouse II, LLC (9252); Peer Street Opportunity Investors II, LP (1586); PS Portfolio-ST1, LLC (1868); PSF Ohio, LLC (9485); PSF TX 1, LLC (9485); PSF TX 2, LLC (2415); PSF TX 4 LLC (9485). The Debtors' service address is c/o Province, LLC 2360 Corporate Circle, Suite 340, Henderson, NV 89074, Attn: David Dunn, Chief Restructuring Officer..

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that the relief requested in the Motion and provided for herein is in the best interest of the Debtors, their estates, and their creditors; and after due deliberation and sufficient cause appearing therefor, **IT IS HEREBY ORDERED THAT**:

1. The Motion is GRANTED on an interim basis as set forth herein.

2. A final hearing on the relief sought in the Motion shall be conducted on __________________, 2023 at [_____] (ET) (the "**Final Hearing**"). Any party objecting to the relief sought at the Final Hearing or the Proposed Final Order shall file and serve a written objection, which objection shall be served upon proposed counsel for the Debtors so as to be received no later than _______________________, 2023 at 4:00 p.m. (ET). If no objections to the entry of the Proposed Final Order are timely filed, this Court may enter the Proposed Final Order without further notice or a hearing.

3. The Debtors are authorized, but not directed, in the exercise of their reasonable business judgment, to pay Critical Vendor Claims in an amount not to exceed $100,000.00 during the interim period from the date of the entry of this Order until the date that a final order is entered in this matter, unless otherwise ordered by this Court.

4. The Debtors are authorized, but not directed, to pay the Critical Vendor Claims in the ordinary course of business when due, not on an accelerated basis; *provided, however*, that any Critical Vendor that accepts payment pursuant to the authority granted in this Order must agree to supply the Services to the Debtors postpetition on Customary Trade Terms (as defined below) or on such other favorable terms as are acceptable to the Debtors.

5. Any Critical Vendor that accepts payment pursuant to the authority granted in this Order shall be deemed to agree to the terms and provisions of this Order. The

Debtors shall provide a copy of this Order to any Critical Vendor to whom a payment is made pursuant to this Order.

6.      Neither the Debtors nor any other party in interest concedes that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Order are valid, and the Debtors expressly reserve the right to contest the extent, validity, or perfection or seek the avoidance of all such liens.

7.      The Debtors shall condition the payment of Critical Vendor Claims on the agreement of a Critical Vendor to continue supplying the Services to the Debtors on terms that are as or more favorable to the Debtors as the most favorable trade terms, practices, and programs in effect between the Critical Vendor and the Debtors in the six (6) months period preceding the Petition Date (the "**Customary Trade Terms**"), or such other trade terms as are agreed to by the Debtors and the Critical Vendor.

8.      The Debtors may, in their sole discretion, declare a Trade Agreement with an individual Critical Vendor terminated, together with the other benefits to the Critical Vendor as contained in this Order, on the date the Debtors deliver notice to the Critical Vendor that the Critical Vendor (a) has not complied with the terms and provisions of the Trade Agreement or (b) has failed to continue to provide Customary Trade Terms to the Debtors.

9.      If a Trade Agreement is terminated as set forth above or a Critical Vendor who has received payment of a prepetition claim later refuses to continue to supply the Services to the Debtors on Customary Trade Terms during the pendency of these chapter 11 cases, the Debtors may declare (a) that the payment of such Critical Vendor Claim is a voidable postpetition transfer pursuant to section 549(a) of the Bankruptcy Code that the Debtors may recover in cash from such Critical Vendor (including by setoff against postpetition obligations),

or (b) that the Critical Vendor shall immediately return the payment of its Critical Vendor Claim without giving effect to alleged setoff rights, recoupment rights, adjustments, or offsets or any type whatsoever, it being the explicit intention of this Court to return the parties to their position immediately prior to entry of this Order with respect to all prepetition claims.

10. The execution of a Trade Agreement by the Debtors shall not constitute a waiver of any other cause of action, including any avoidance action that may be held by the Debtors.

11. Nothing herein shall prejudice the Debtors' rights to request additional authority to pay Critical Vendor Claims.

12. The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests in connection with any Critical Vendor Claims that are dishonored or rejected.

13. Nothing in this Order: (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors and their estates; (b) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors and their estates with respect to the validity, priority, or amount of any claim against the Debtors and their estates; or (c) shall be construed as a promise to pay any claim.

14. The Debtors are authorized to take any and all actions necessary to effectuate the relief granted herein.

15. The requirements of Bankruptcy Rule 6003(b) are satisfied.

16. Notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be effective and enforceable immediately upon its entry.

17.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

# **EXHIBIT B**

**Proposed Final Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>Peer Street, Inc., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 23-10815 (___)<br><br>(Joint Administration Requested) |

**FINAL ORDER (A) AUTHORIZING THE DEBTORS TO PAY CERTAIN PREPETITION CLAIMS OF CRITICAL VENDORS; (B) AUTHORIZING BANKS TO HONOR AND PROCESS CHECK AND ELECTRONIC TRANSFER REQUESTS RELATED THERETO; AND (C) GRANTING RELATED RELIEF**

Upon consideration of the motion (the "**Motion**")[2] of the above-captioned debtors and debtors in possession (the "**Debtors**") for the entry of interim and final orders, pursuant to sections 105(a), 363(b), 1107(a), and 1108 of the Bankruptcy Code, (a) authorizing, but not directing, the Debtors, in their discretion, to pay, in the ordinary course of business, Critical Vendor Claims; and (b) authorizing the Banks to honor and process check and electronic transfer requests related to the foregoing; and upon consideration of the First Day Declaration; and due and proper notice of the Motion having been given; and it appearing that no other or further notice of the Motion is required except as otherwise provided herein; and it appearing that this Court has jurisdiction to consider the Motion in accordance with 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order; and it appearing that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and it appearing that venue of this proceeding and the Motion is proper

1 The Debtors in these chapter 11 cases, along with the last four digits of their respective federal tax identification numbers, are: Peer Street, Inc. (8584); PS Funding, Inc. (3268); PeerStreet Licensing, Inc. (9435); Peer Street Opportunity Fund GP, LLC (8491); Peer Street Funding LLC (9485); PSF REO LLC (1013); PS Options LLC (8584); PS Warehouse, LLC (5663); PS Warehouse II, LLC (9252); Peer Street Opportunity Investors II, LP (1586); PS Portfolio-ST1, LLC (1868); PSF Ohio, LLC (9485); PSF TX 1, LLC (9485); PSF TX 2, LLC (2415); PSF TX 4 LLC (9485). The Debtors' service address is c/o Province, LLC 2360 Corporate Circle, Suite 340, Henderson, NV 89074, Attn: David Dunn, Chief Restructuring Officer.

2 Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that the relief requested in the Motion and provided for herein is in the best interest of the Debtors, their estates, and their creditors; and after due deliberation and sufficient cause appearing therefor, **IT IS HEREBY ORDERED THAT**:

1. The Motion is GRANTED on a final basis as set forth herein.

2. The Debtors are authorized, but not directed, in the exercise of their reasonable business judgment, to pay Critical Vendor Claims in an amount not to exceed $125,000.00 in the aggregate (including amounts paid pursuant to the Interim Order), respectively, unless otherwise ordered by this Court.

3. The Debtors are authorized, but not directed, to pay the Critical Vendor Claims in the ordinary course of business when due, not on an accelerated basis; *provided*, *however*, that any Critical Vendor that accepts payment pursuant to the authority granted in this Order must agree to supply the Services to the Debtors post-petition on Customary Trade Terms (as defined below) or on such other favorable terms as are acceptable to the Debtors.

4. Any Critical Vendor that accepts payment pursuant to the authority granted in this Order shall be deemed to agree to the terms and provisions of this Order. The Debtors shall provide a copy of this Order to any Critical Vendor to whom a payment is made pursuant to this Order.

5. Neither the Debtors nor any other party in interest concedes that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Order are valid, and the Debtors expressly reserve the right to contest the extent, validity, or perfection or seek the avoidance of all such liens.

6. The Debtors shall condition the payment of Critical Vendor Claims on the agreement of a Critical Vendor to continue supplying the Services to the Debtors on terms that are as or more favorable to the Debtors as the most favorable trade terms, practices, and programs in effect between the Critical Vendor and the Debtors in the six (6) month period preceding the Petition Date (the "**Customary Trade Terms**"), or such other trade terms as are agreed to by the Debtors and the Critical Vendor.

7. The Debtors may, in their sole discretion, declare a Trade Agreement with an individual Critical Vendor terminated, together with the other benefits to the Critical Vendor as contained in this Order, on the date the Debtors deliver notice to the Critical Vendor that the Critical Vendor (a) has not complied with the terms and provisions of the Trade Agreement or (b) has failed to continue to provide Customary Trade Terms to the Debtors.

8. If a Trade Agreement is terminated as set forth above or a Critical Vendor who has received payment of a prepetition claim later refuses to continue to supply the Services to the Debtors on Customary Trade Terms during the pendency of these chapter 11 cases, the Debtors may declare (a) that the payment of such Critical Vendor Claim is a voidable postpetition transfer pursuant to section 549(a) of the Bankruptcy Code that the Debtors may recover in cash from such Critical Vendor (including by setoff against postpetition obligations), or (b) that the Critical Vendor shall immediately return the payment of its Critical Vendor Claim without giving effect to alleged setoff rights, recoupment rights, adjustments, or offsets or any type whatsoever , it being the explicit intention of this Court to return the parties to their position immediately prior to entry of this Order with respect to all prepetition claims.

9.      The execution of a Trade Agreement by the Debtors shall not constitute a waiver of any other cause of action, including any avoidance action that may be held by the Debtors.

10.     Nothing herein shall prejudice the Debtors' rights to request additional authority to pay Critical Vendor Claims.

11.     The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests in connection with any Critical Vendor Claims that are dishonored or rejected.

12.     Nothing in this Order:  (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors and their estates; (b) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors and their estates with respect to the validity, priority, or amount of any claim against the Debtors and their estates; or (c) shall be construed as a promise to pay a claim.

13.     The Debtors are authorized to take any and all actions necessary to effectuate the relief granted herein.

14.     Notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be effective and enforceable immediately upon its entry.

15.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.