## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| Peer Street, Inc., *et al.*,[1] | Case No. 23-10815 (___) |
| Debtors. | (Joint Administration Requested) |

**DEBTORS' MOTION FOR INTERIM AND FINAL ORDERS, PURSUANT TO SECTIONS 105(a), 345, 363, 364, 503(b), 1107(a) AND 1108 OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 2015, AND LOCAL RULE 2015-2, (A) AUTHORIZING AND APPROVING CONTINUED USE OF CASH MANAGEMENT SYSTEM, (B) AUTHORIZING USE OF PREPETITION BANK ACCOUNTS AND BUSINESS FORMS, (C) AUTHORIZING CONTINUED PERFORMANCE OF INTERCOMPANY TRANSACTIONS IN THE ORDINARY COURSE OF BUSINESS AND GRANTING ADMINISTRATIVE EXPENSE STATUS FOR POSTPETITION INTERCOMPANY CLAIMS AND INTERCOMPANY LOANS, (D) WAIVING THE REQUIREMENTS OF SECTION 345(b) ON AN INTERIM BASIS, AND (E) GRANTING CERTAIN RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "**Debtors**") hereby submit this motion (this "**Motion**") for the entry of interim and final orders, substantially in the form attached hereto as **Exhibit A** (the "**Proposed Interim Order**") and **Exhibit B** (the "**Proposed Final Order**," and together with the Proposed Interim Order, the "**Proposed Orders**"), pursuant to sections 105(a), 345, 363, 364(b), 503(b), 1107(a), and 1108 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**"), Rule 2015 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 2015-2(a) and (b) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of their respective federal tax identification numbers, are:  Peer Street, Inc. (8584); PS Funding, Inc. (3268); PeerStreet Licensing, Inc. (9435); Peer Street Opportunity Fund GP, LLC (8491); Peer Street Funding LLC (9485); PSF REO LLC (1013); PS Options LLC (8584); PS Warehouse, LLC (5663); PS Warehouse II, LLC (9252); Peer Street Opportunity Investors II, LP (1586); PS Portfolio-ST1, LLC (1868); PSF Ohio, LLC (9485); PSF TX 1, LLC (9485); PSF TX 2, LLC (2415); PSF TX 4 LLC (9485).  The Debtors' service address is c/o Province, LLC 2360 Corporate Circle, Suite 340, Henderson, NV 89074, Attn:  David Dunn, Chief Restructuring Officer.

for the District of Delaware (the "**Local Rules**"), (a) authorizing and approving the Debtors' continued use of their existing cash management system, (b) granting the Debtors a waiver of certain bank account and related requirements of the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") to the extent that such requirements are inconsistent with (i) the Debtors' practices in connection with their existing cash management system or (ii) any action taken by the Debtors in accordance with any order granting the relief requested in this Motion or any other order entered in these chapter 11 cases, (c) authorizing the Debtors to continue Intercompany Transactions(defined below) and granting administrative expenses priority to Intercompany Claims (defined below) and Intercompany Loans (defined below), (d) waiving the requirements of section 345(b) of the Bankruptcy Code with respect to the Debtors' deposit practices on an interim basis, and (e) granting certain related relief.  In support of this Motion, the Debtors rely upon and incorporate by reference the *Declaration of David M. Dunn in Support of Chapter 11 Petitions and First Day Pleadings* (the "**First Day Declaration**"),[2] filed contemporaneously herewith.  In further support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION AND VENUE

1.      The United States Bankruptcy Court for the District of Delaware (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012 (the "**Amended Standing Order**").  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution.  Venue is proper in the Court pursuant to

---

[2]      Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief sought herein are sections 105(a), 345, 363, 503(b), 1107(a), and 1108 of the Bankruptcy Code, Bankruptcy Rule 2015, and Local Rule 2015-2(a) and (b).

## BACKGROUND

### I.    General

2.    Today (the "**Petition Date**"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code.  The Debtors are authorized to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No official committees have been appointed in these chapter 11 cases and no request has been made for the appointment of a trustee or an examiner.

3.    Additional information regarding the Debtors' business, their capital structure, and the circumstances leading to the filing of these chapter 11 cases is set forth in the First Day Declaration.

### II.    Cash Management System[3]

### A.    The Debtors' Bank Accounts

4.    The Debtors consist of affiliated entities and utilize a centralized cash management system, as described in detail below (the "**Cash Management System**").  The Debtors maintain fifty-seven (57) bank accounts (collectively, the "**Bank Accounts**").  Fifty-six of the Bank Accounts are maintained at Wells Fargo Bank, N.A. ("**Wells Fargo**"), which is a party to a Uniform Depository Agreement with the U.S. Trustee.  The one remaining Bank Account is maintained at Pacific Premier Bank ("**PPB**" and, together with Wells Fargo, the "**Banks**"), which is not a party to a Uniform Depository Agreement with the U.S. Trustee.

---

[3]    The description of the Cash Management System as discussed in this Motion is for informational purposes only and nothing described herein shall be deemed an admission or waiver by the Debtors.

5.      The Debtors' Bank Accounts fall into the following four categories, as generally described below and set forth on **Exhibit C** hereto:

a)  **Operating Accounts**.  The Debtors maintain seven (7) Operating Accounts, six (6) of which are maintained at Wells Fargo and one (1) of which is maintained at PPB.  Revenue is deposited into the Operating Accounts, either directly or through the Clearing Accounts (discussed below) and used to pay the Debtors' general operating expenses.

b)  **Clearing Accounts**.  The Debtors maintain three (3) Clearing Accounts at Wells Fargo.  The Clearing Accounts are used to flow cash through the different Bank Accounts and to make transfers to third parties.

c)  **FBO Accounts**. The Debtors maintain forty-three (43) "for the benefit of" or "FBO" Accounts at Wells Fargo.  These Bank Accounts are used to hold cash for the benefit of retail investors, lenders, and institutional buyers (WNBs).  As set forth on Exhibit C, approximately sixteen of the FBO Accounts are dormant.  Prepetition, the Debtors' customers withdrew their own funds directly from the FBO Accounts.  However, the Debtors will discontinue that practice postpetition in order to preserve and protect cash in the FBO Accounts[4]

d)  **Source of Capital Accounts**.  The Debtors maintain four (4) Source of Capital Accounts at Wells Fargo.  The Source of Capital Bank Accounts are used to hold cash and capital that is used to finance purchases and construction draws in connection with the purchase and sale of loans, either internally or externally from third parties.

6.      The Debtors' operations entail four primary types of cash management transactions to facilitate the Debtors' business operations.  These include the purchase of loans, the sale of loans, construction draws, and the receipt of principal and interest from the sub-servicer for loans, as discussed below:

a)  **Loan Purchase**.  When a loan is purchased, capital from the Source of Capital Accounts or the Operating Account for credit lines is transferred to a Clearing Account and then transferred from the Clearing Account to (i) the lender for the purchase of the loan, (ii) Debtor PS Funding, Inc. ("**PSFI**")'s Operating Account for origination fees, and (iii) PSFI's FBO Accounts for interest held for the benefit of investors and construction reserves.

---

[4]    None of the relief requested herein is intended to seek authority to permit customers to withdraw funds from the FBO Accounts.  To the extent the Debtors seek such relief, they will do so by separate motion.

b) **Loan Sale**.  When a loan is sold, capital is transferred from the applicable FBO Account or an external buyer to a Clearing Account.  The gross proceeds, including any interest, are then transferred from the Clearing Account to PSFI's Operating Account for its serving fees and to the Source of Capital Accounts or the Operating Account for credit lines to return the capital.

c) **Construction Draw**.  When funds for construction are needed, they are transferred from FBO Accounts, Source of Capital Accounts or Operating Accounts, as applicable for the specific loan type, and transferred to a Clearing Account.  Funds are then transferred from the Clearing Account to the borrower under the mortgage, the lender and inspection company, and PSFI for its fees.

d) **Principal and Interest from Sub-servicer**.  The Debtors receive principal and interest payments from the sub-servicer for certain loans that is deposited in certain FBO Accounts.   Funds are then transferred from the FBO Accounts to various other FBO Accounts and to PSFI's Operating Account for the payment of its fees.

7.      In the ordinary course of business, the Banks charge, and the Debtors pay, honor or allow the deduction from the appropriate Bank Account, certain service charges and other fees, costs, and expenses in accordance with the applicable agreements governing the Bank Accounts (collectively, the "**Bank Fees**").  The Debtors estimate that the Banks collectively charge the Debtors approximately $26,000.00 in total Bank Fees per month.  The Debtors estimate that approximately $26,000.00 of accrued but unpaid Bank Fees are outstanding as of the Petition Date (collectively, the "**Prepetition Bank Fees**").

8.      The Cash Management System is a mainstay of the Debtors' ordinary, usual, and essential business practices.   The Debtors' system provides numerous benefits, including the ability to:  (a) quickly create status reports on the location and amount of funds, thereby allowing management to track and control corporate funds; (b) ensure cash availability and prompt payment of corporate, employee, and vendor related expenses; and (c) reduce administrative costs by facilitating the efficient movement of funds.

30188560.14

**B.      The Existing Business Forms and Check Stock**

9.      In the ordinary course of business, the Debtors use a variety of checks and business forms.  To minimize expenses to their estates and avoid unnecessary confusion, the Debtors believe it is appropriate to continue to use all checks, correspondence, and other business forms (including, without limitation, letterhead, purchase orders, and invoices) (collectively, the "**Business Forms**") as such forms were in existence immediately before the Petition Date— without reference to the Debtors' status as debtors in possession—rather than requiring the Debtors to incur the expense and delay of ordering entirely new Business Forms.  The Debtors typically print their own checks.  As debtors in possession, the Debtors print checks with a new postpetition sequence number and a reference to the Debtors' status as debtors in possession and bankruptcy case number within ten (10) days of entry of the Interim Order.

**C.      The Intercompany Transactions**

10.      In the ordinary course of their business, the Debtors maintain business relationships between and among themselves.  As part of these business relationships, the Debtors participate in a variety of intercompany transactions (the "**Intercompany Transactions**") that generate intercompany receivables and payables (the "**Intercompany Claims**").

11.      The Debtors maintain strict records of the Intercompany Transactions and can ascertain, trace, and account for all Intercompany Transactions.  The Debtors will continue to maintain such records, including records of all current intercompany accounts receivable and payable and all amounts due and owing from the Borrowing Debtors to the Lending Debtors (as defined below).As set forth more fully in the First Day Declaration, the Debtors offer four principal investment products, each of which involves Intercompany Transactions: (i) Retail; (ii) Pocket; (iii) OppFund; and (iv) Portfolio.

### a) Retail Intercompany Transactions

12.　　Prior to the Petition Date, in the ordinary course of business, Debtor PSFI originated loans itself or purchased loans or participations in loans originated by third-party lenders, using warehouse financing (the "**Underlying Loans**").　Thereafter, through the PeerStreet Platform, Debtor Peer Street Funding LLC ("**PSFLLC**") offered investors the opportunity to purchase unsecured mortgage payment dependent notes ("**MPDNs**").　Once sufficient MDPNs were purchased, PSFLLC transferred funds to PSFI sufficient to repay the warehouse financing on the Underlying Loan.

13.　　In return, PSFI granted PSFLLC a 100% participation interest in the Underlying Loan, entitling PSFLLC to all payments of principal and interest (net of fees, expenses, charges, and other amounts).　Under the terms of the participation agreement, PSFI retained responsibility for servicing the Underlying Loan, including, among other things, collecting payments, making distributions, and enforcing the Lender's rights and remedies.　PSFLLC did not pay PSFI a servicing fee under the participation agreement.

14.　　Historically, the Debtors offered a promotional interest to Retail investors at PFLLC that is reflected as an intercompany liability at PSI and an intercompany receivable at PSFLLC.　The total amount currently outstanding is approximately $600,000.00 and these amounts have not historically been settled.

### b) Pocket Intercompany Transactions

15.　　Debtor PSFLLC is also a party to a warehouse loan agreement with Debtor PS Warehouse, LLC ("**Warehouse**") and a warehouse loan agreement with Debtor PS Warehouse II, LLC ("**Warehouse II**") (together, the "**Warehouse Loan Agreements**").　Under the Warehouse Loan Agreements, PSFLLC advanced funds to Warehouse or Warehouse II, as applicable.　Warehouse or Warehouse II, as applicable, advanced those funds as needed to PSFI

to allow PSFI to close loans PSFI originated or purchased (the "**Pocket Underlying Loans**"). In return, PSFI granted Warehouse or Warehouse II, as applicable, a participation interest (the "**Warehouse Participation Interests**") in the Pocket Underlying Loans. Warehouse and Warehouse II pledged the Warehouse Participation Interests to PSFLLC to secure the amounts PSFLLC advanced to it under the Warehouse Loan Agreements. On January 31, 2023, PSFLLC exercised a "Liquidation Trigger," preventing Warehouse and Warehouse II from using the proceeds of the Warehouse Loan Agreements to fund additional loans or purchase any additional Warehouse Participation Interests.

### c) OppFund Intercompany Transactions

16.     Debtor Peer Street Opportunity Investors II, LP ("**OppFund**") is managed by its general partner, Debtor Peer Street Opportunity Fund GP, LLC (the "**General Partner**"). The General Partner is wholly-owned by Debtor PSI, and receives a quarterly management fee in the amount of approximately $40,000.00.

17.     OppFund makes real estate related investments in accordance with its investment strategy of providing attractive returns on invested capital while maintaining a materially reduced risk profile due to the secured nature of the investments. Individual investors in OppFund receive limited partnership interests (the "**Limited Partnership Interests**"). OppFund, in turn, pursuant to the terms of a promissory note and loan and security agreement, has used the proceeds from Limited Partnership Interests to provide a revolving credit facility for Debtor PSFI to fund the purchase of loans (collectively, "**OppFund Underlying Loans**").

18.     OppFund, as lender, and PSFI, as borrower and servicer, are parties to a Loan and Security Agreement dated October 1, 2019 (as may be amended, restated, supplemented, or otherwise modified from time to time prior to the Petition Date, the "**OppFund Loan Agreement**"). Under the OppFund Loan Agreement, OppFund provides a revolving credit facility

for the benefit of PSFI in an amount up to $25 million (the "**OppFund Loan**").  The OppFund Loan Agreement is secured by the loans acquired or originated by PSFI using the proceeds of the OppFund Loan.  PSFI's obligations under the OppFund Loan Agreement are guaranteed by PSI.

19.     As of May 31, 2023, approximately $24.3 million is outstanding under the OppFund Loan Agreement.  In connection with the OppFund Loan Agreement, PSFI pays OppFund interest expense, which historically has been approximately $150,000.00 per month.  No other fees are paid by PSFI related to the OppFund Loan Agreement.

### d) Portfolio Intercompany Transactions

20.     Debtor PS Portfolio – ST1, LLC ("**Portfolio**") issued payment dependent promissory notes ("**PDNs**") to participating investors on the Peer Street Platform.  Portfolio used the net proceeds from the issuance of PDNs to purchase from PSFI mortgage loans and participations in mortgage loans (collectively, "**Portfolio Underlying Assets**") that met specified credit guidelines.  Portfolio is managed by its sole member, PSFI.  In exchange for its services, PSFI collected a small percentage of the underlying loan, ranging from 1% to 2.25%.

21.     The PDNs are unsecured, special, limited obligations of Portfolio.  Holders of the PDNs are entitled to receive monthly interest payments equal to their pro rata portion of any interest payments *actually received* by Portfolio in respect of its portfolio of Portfolio Underlying Assets during the preceding month, less PSFI's standard fee and other fees, costs and expenses incurred by Portfolio for services in respect of the underlying loans and participations.  Portfolio is obligated to make principal and interest payments on the PDNs only to the extent that it has received payments on the underlying mortgage loans and participations in excess of PSFI's standard fee and other issuer expenses.  Portfolio does not make any cash transfers to PSFI because PSFI receives its fee directly from principal and interest payments before such payments are transferred to Portfolio.

### e)  General Intercompany Transactions

22.     In the ordinary course of business, Debtor PSFI makes cash transfers to Debtor PSI to fund payroll and other corporate expenses, including payments to vendors, totally approximately $1 million per month.  These transfers generate an intercompany claim against PSI in favor of PSFI.

23.     The Cash Management System provides the mechanism for cash to flow through the Debtors so that operations may be maintained.  To lessen the disruption caused by the chapter 11 cases and to maximize the value of the Debtors' estates, it is essential that the Debtors be allowed to continue to the Intercompany Transactions in the ordinary course.

### f)  The Intercompany Loans

24.     Funding for the Debtors' chapter 11 cases will come from two (2) sources. For the Debtors that are obligors on the Debtors' credit facility with Magnetar Financial, LLC, as agent (the "**Agent**") – Peer Street, Inc., PeerStreet Licensing, Inc. and PS Funding, Inc. – their cases will be funded through the consensual use of cash collateral that is subject to a separate cash collateral order.  For the remaining Debtors, those that possess cash will fund their own chapter 11 cases and, where applicable, such Debtors (the "**Lending Debtors**") will fund the chapter 11 cases of those Debtors that do not currently have cash holdings (the "**Borrowing Debtors**") in exchange for an administrative expense claim under sections 364(b), 503(b)(1), and 507(b) of the Bankruptcy Code that will be paid when the Borrowing Debtors liquidate their assets during the chapter 11 cases.  The Intercompany Loans will be made on a periodic basis and settled through book entries maintaining the balance(s) on the Intercompany Loans.  Within fifteen (15) days of a Borrowing Debtor receiving cash, including through a sale of its assets, the Borrowing Debtor pays down the balance or repays the Intercompany Loan(s) provided by the Lending Debtor.  The Borrowing Debtors will need the Intercompany Loans to operate, and their businesses would falter

in the event they were not able to access the funds provided to them through the Intercompany Loans. Moreover, the lack of authority to continue the Intercompany Loans would threaten the viability of the Borrowing Debtors.[5]

25. Through this Motion, and as discussed more fully below, the Debtors seek authority to make and receive payments on the Intercompany Loans consistent with the foregoing, and request that all postpetition Intercompany Loans be granted administrative expense status under sections 364(b), 503(b)(1), and 507(b) of the Bankruptcy Code. If the Intercompany Transactions, including the Intercompany Loans, were discontinued, the Cash Management System and related administrative controls would be disrupted to the detriment of the Debtors and their estates. Further, the Borrowing Debtors require the Intercompany Loans to operate efficiently. Not permitting the Intercompany Loans on a postpetition basis would threaten the continued viability of the Borrowing Debtors and would disrupt the Debtors' business operations, harming creditors and other parties in interest. Accordingly, the Debtors seek authority to make the Intercompany Loans and request, pursuant to sections 364(b), 503(b)(1), and 507(b) of the Bankruptcy Code, that postpetition Intercompany Loans be accorded administrative expense status.

---

[5] Contemporaneously herewith, the Debtors filed the *Debtors' Motion for Entry of Interim and Final Orders (A) Authorizing the Debtors' Use of Cash Collateral; (B) Granting Adequate Protection to the Prepetition Secured Parties; (C) Scheduling a Final Hearing; and (D) Granting Related Relief* (the "**Cash Collateral Motion**"). Pursuant to the Cash Collateral Motion, the Debtors seek authority for Debtors Peer Street, Inc., Peerstreet Licensing, Inc., and PSFI (the "**Cash Collateral Debtors**") to use Cash Collateral (as defined in the Cash Collateral Motion) belonging to the Prepetition Secured Parties (as defined in the Cash Collateral Motion) on a consensual basis. For the avoidance of doubt, under no circumstances will the Cash Collateral Debtors provide the Borrowing Debtors with Intercompany Loans consisting of Cash Collateral belonging to the Prepetition Secured Parties. The Lending Debtors (who are not comprised of the Cash Collateral Debtors) will use unencumbered cash to make the Intercompany Loans to the Borrowing Debtors. As set forth more fully herein, in exchange for the Intercompany Loans, the Debtors seek approval to provide the Lending Debtors with an administrative claim totaling the amount of the Intercompany Loan(s) pursuant to sections 364(b), 503(b)(1), and 507(b) of the Bankruptcy Code.

**RELIEF REQUESTED**

26.     By this Motion, the Debtors request entry of the Proposed Orders: (a) authorizing and approving the continued use of their existing Cash Management System; (b) granting the Debtors a waiver of certain bank account and related requirements of the U.S. Trustee (including, without limitation, the operating guidelines established by the U.S. Trustee that require debtors to close all prepetition bank accounts, open new accounts designated as debtor-in-possession accounts, and to provide new business forms and stationery) to the extent that such requirements are inconsistent with (i) the Debtors' practices in connection with their Cash Management System, or (ii) any action taken by the Debtors in accordance with any order granting the relief requested in this Motion or any other order entered in these chapter 11 cases; (c) authorizing the Debtors to continue Intercompany Transactions and granting administrative expenses priority to Intercompany Claims; and Intercompany Loans (d) authorizing the Debtors' deposit practices and waiving the requirements of section 345(b) of the Bankruptcy Code in connection therewith on an interim basis; and (e) granting certain related relief.

**BASIS FOR RELIEF**

I.      **The Court Should Authorize the Debtors' Uninterrupted Use of Their Existing Cash Management System**

27.     The Debtors seek authority to continue utilizing their current Cash Management System, as described above.  It is critical that the Debtors be able to consolidate management of cash and centrally coordinate transfers of such funds to operate their business efficiently and effectively.  Any disruption to the Cash Management System would seriously harm the Debtors.  Maintenance of the existing Cash Management System will prevent any unexpected or inopportune interruption to the Debtors' business operations while protecting the Debtors' cash for the benefit of their estates.  Requiring the Debtors to change their Cash Management System

at this critical time would cause, among other things, unnecessary disruption to the Debtors and their business affairs.

28.     The Cash Management System utilizes the Bank Accounts to effectively and efficiently collect, transfer, and disburse funds, as needed in the Debtors' general business operations.  The Cash Management System provides significant benefits to the Debtors, including the ability to:  (a) closely track, and thus control, all corporate funds; (b) ensure cash availability; and (c) reduce administrative expenses by facilitating the movement of funds and the development of timely and accurate account balance and presentment information.  A disruption in the Cash Management System could cause delays in the collection and disbursement of funds, thus impeding the Debtors' ability to avoid an unexpected or inopportune interruption in their operations during the pendency of these chapter 11 cases.  Furthermore, the Debtors' chapter 11 cases will be facilitated by preserving the "business as usual" atmosphere, and avoiding the distractions that would inevitably be associated with a substantial disruption in the Cash Management System.

29.     The Debtors believe that they can only proceed through the chapter 11 process in an efficient and cost-effective manner if the Bank Accounts are continued in their current form.  The Debtors will ensure that appropriate procedures are in place so that checks issued prior to the Petition Date, but presented after the Petition Date, will not be honored absent approval from the Court.  The Debtors will also maintain records of postpetition transfers within the Cash Management System, so that transfers and transactions will be documented in their books and records to the same extent such information was maintained by the Debtors prior to the Petition Date.

30.     Accordingly, the Debtors respectfully request that the Court authorize the continued use of the Cash Management System, provided that no prepetition checks, drafts, wire

transfers, or other forms of tender that have not yet cleared the relevant drawee bank as of the Petition Date will be honored unless authorized by separate order of the Court.

31.     The Debtors also request that no bank participating in the Cash Management System (each, a "**Cash Management Bank**," and collectively, the "**Cash Management Banks**") that honors a prepetition check or other item drawn on any account that is the subject of this Motion (a) at the direction of the Debtors, (b) in a good faith belief that the Court has authorized such prepetition check or item to be honored, or (c) as a result of an innocent mistake made despite implementation of reasonable item handling procedures, be deemed to be liable to the Debtors or to their estates on account of such prepetition check or other item being honored postpetition. The Debtors believe that according such flexibility to the Cash Management Banks is necessary to induce the Cash Management Banks to continue providing cash management services during these chapter 11 cases without incurring additional credit exposure.

## III.    The Court Should Grant the Debtors a Waiver of the U.S. Trustee Guidelines

32.     The Debtors further request a waiver of certain bank account and related requirements of the U.S. Trustee (including, without limitation, the operating guidelines established by the U.S. Trustee that require debtors to close all prepetition bank accounts, open new accounts designated as debtor-in-possession accounts, and to provide new business forms and stationery) to the extent that such requirements are inconsistent with (a) the Debtors' practices in connection with their Cash Management System, or (b) any action taken by the Debtors in accordance with any order granting the relief requested in this Motion or any other order entered in these chapter 11 cases.

33.     The U.S. Trustee has issued certain chapter 11 operating guidelines pursuant to 28 U.S.C. § 586 (the "**U.S. Trustee Guidelines**"). These guidelines require that a chapter 11 debtor, among other things:

30188560.14

14

a.     close all existing bank accounts;

b.     open new bank accounts in a depository approved by the U.S. Trustee that are designated as debtor-in-possession accounts ("**DIP Accounts**"), with separate DIP Accounts established for an operating account, a tax account (to the extent that payroll or other taxes are an issue for the debtor), and a payroll account (to the extent that the debtor had a separate payroll account prepetition);

c.     obtain and utilize new checks for all DIP Accounts that bear the designation "Debtor-in-Possession" and contain other information about the debtor's chapter 11 case, and insure that the signature cards for all DIP Accounts clearly indicate that the debtor is a "Debtor-in-Possession";

d.     deposit all receipts and make all disbursements only through the approved DIP Accounts, with any funds in excess of those required for current operations being maintained in an interest-bearing account;

e.     deposit to the tax DIP Account sufficient funds to pay any tax liability (when incurred) associated with the debtor's payroll; and

f.     deposit all estate funds into DIP Accounts with a financial institution that agrees to comply with the requirements of the U.S. Trustee (which will be monitored by the U.S. Trustee), with no DIP Account exceeding the insured or collateralized limits of that approved depository.

34.     If enforced in these chapter 11 cases, given the nature of the Debtors' business, such requirements would cause disruption to the Debtors' business and would impair the Debtors' chapter 11 efforts. The Bank Accounts represent an established Cash Management System that the Debtors need to maintain to ensure smooth collections and disbursements in the ordinary course of their business. Therefore, to avoid delays in paying debts incurred postpetition, and to ensure as smooth a transition into chapter 11 as possible, the Debtors should be permitted to continue to maintain their Bank Accounts and, if necessary, open new accounts and close existing accounts, in the ordinary course of business. Otherwise, transferring their Bank Accounts will be disruptive, time consuming, and expensive.

35. The Court has the authority to grant the requested relief pursuant to its equitable powers under section 105(a) of the Bankruptcy Code. Section 105(a) provides, in relevant part, that the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). The relief requested herein is both necessary and appropriate to allow the Debtors to administer these chapter 11 cases successfully, to optimize their postpetition business performance, and to maximize the value of their estates.

36. Accordingly, the Debtors request that the Court waive the strict enforcement of the requirement that the Debtors open new bank accounts. The Debtors further request that their existing Bank Accounts be deemed debtor-in-possession accounts, and that the Debtors be authorized to maintain and continue using these accounts in the same manner and with the same account numbers, styles, and document forms as those employed during the prepetition period.

37. A centralized cash management system "allows efficient utilization of cash resources and recognizes the impracticability of maintaining separate cash accounts for the many different purposes that require cash." *In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1992), *aff'd in part, rev'd in part on other grounds*, 997 F.2d 1039 (3d Cir. 1993). The Third Circuit agreed, emphasizing that requiring the maintenance of all accounts separately "would be a huge administrative burden and economically inefficient." *In re Columbia Gas Sys, Inc.*, 997 F.2d at 1061; *see also In re Southmark Corp.*, 49 F.3d 1111, 1114 (5th Cir. 1995) (cash management system allows debtor "to administer more efficiently and effectively its financial operation and assets").

38. Accordingly, bankruptcy courts routinely grant debtors authority to continue utilizing existing cash management systems and treat requests for such authority as a

relatively "simple matter." *In re Baldwin-United Corp.*, 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987); *see Charter Co. v. Prudential Ins. Co. of Am.* (*In re Charter Co.*), 778 F.2d 617, 621 (11th Cir. 1985) (holding that allowing the debtors to use their prepetition "routine cash management system" was entirely consistent with applicable provisions of the Bankruptcy Code). Courts in this circuit have recognized that allowing a debtor to maintain existing cash management systems is often appropriate. *See, e.g.*, *In re Genesis Health Ventures, Inc.*, 402 F.3d 416, 424 (3d Cir. 2005); *In re Kindred Healthcare, Inc.*, 2003 WL 22327933, at *1 (Bankr. D. Del, Oct. 9, 2003); *In re Columbia Gas Sys.*, 997 F.2d at 1061 (recognizing that a requirement to maintain all accounts separately "would be a huge administrative burden and economically inefficient").

39.    The Debtors represent that if the relief requested is granted, they will implement appropriate mechanisms to ensure that no payments will be made on any debts incurred by them prior to the Petition Date, other than those authorized by the Court. To prevent the possible inadvertent payment of prepetition claims, except for those otherwise authorized by the Court, the Debtors will work closely with the Cash Management Banks to ensure appropriate procedures are in place to prevent checks issued prepetition from being honored absent the Court's approval.

40.    The Debtors also request authorization to continue to use all correspondence and business forms existing immediately before the Petition Date without reference to the Debtors' status as debtors in possession. The Debtors, in the ordinary course of their business, use many checks, invoices, letterhead, stationery, purchase orders, and other correspondence and business forms. To operate in an orderly fashion, the Debtors need to be permitted to use their existing forms without alteration or change. Parties doing business with the Debtors undoubtedly will be aware of the Debtors' status as debtors in possession as a result of the size and publicity surrounding these chapter 11 cases.

30188560.14

41.     If the Debtors were required to change their forms, they would be forced to choose standard forms rather than use their current forms, with which the Debtors' employees, customers, and vendors are familiar.  Such a change in operations would create a sense of disruption and potential confusion within the Debtors' organization and for the Debtors' employees, customers, and vendors.  Further, the Debtors use a significant number and a wide variety of business forms in the ordinary course of their business operations.  The Debtors therefore believe that it would be costly and disruptive to cease using all existing forms and to purchase and begin using new stationery and business forms.  The Debtors respectfully submit that to do so would be unnecessary and that appropriate care can be taken to assure the proper use of the existing forms.

42.     Notwithstanding the foregoing, upon the depletion of any pre-printed check stock and other business forms, the Debtors will obtain new check stock and business forms reflecting their status as debtors-in-possession, and with respect to checks which the Debtors or their agents print themselves, the Debtors will begin printing "Debtor-in-Possession" or "DIP" and the case number for these chapter 11 cases on such items within ten (10) days of the date of the entry of the Interim Order.

## IV.    Cause Exists to Permit Continued Use of Intercompany Transactions, and Postpetition Intercompany Claims and Intercompany Loans Should Be Given Administrative Expense Status

### A.    Continuation of Intercompany Transactions Should be Permitted and Intercompany Claims Should be Afforded Administrative Expense Status

43.     As described above, the Debtors enter into certain Intercompany Transactions with each other in the ordinary course of business.  The Intercompany Transactions reduce the Debtors' cash needs from external sources and the administrative costs incurred by the Debtors, and these transactions are essential to the operations of the Debtors' businesses.  If the

Intercompany Transactions were to be discontinued, the Debtors' operations and Cash Management System and related administrative controls would be disrupted causing irreparable harm to the Debtors.

44.     The continuation of the Intercompany Transactions will not prejudice the Debtors' estates or their creditors.  As noted above, the Debtors maintain strict records of other transfers of cash and can ascertain, trace, and account for all such Intercompany Transactions. Accordingly, the Debtors believe that continuation of the Intercompany Transactions is in the best interests of the Debtors' estates and creditors.

45.     Because the Debtors engage in Intercompany Transactions on a regular basis and such transactions are common among similar enterprises, the Debtors believe the Intercompany Transactions are ordinary course transactions within the meaning of section 363(c)(1) of the Bankruptcy Code and, therefore, do not require the Court's approval.  Yet, precisely because of their routine nature, the continuation of such transactions is integral to the Debtors' ability to operate their business and successfully emerge from chapter 11.  Accordingly, out of an abundance of caution, the Debtors are seeking express authority to engage Intercompany Transactions postpetition

46.     If the Intercompany Transactions among the Debtors are discontinued, a number of services provided by and among such entities would be disrupted.  Accordingly, the Debtors believe that the continuation of the Intercompany Transactions is in the best interests of the Debtors' estates and their creditors, and seek authority to continue such Intercompany Transactions in the ordinary course of business.

B.      **Postpetition Intercompany Loans Should be Permitted and Afforded Administrative Expense Status**

47.     As discussed herein, funding for the Borrowing Debtors' chapter 11 cases will come from funds in the form of Intercompany Loans provided by the Lending Debtors.  The Intercompany Loans, like other Intercompany Transactions, will reduce the Debtors' cash needs from external sources and are necessary to preserve and maximize the value of the Borrowing Debtors.  If the Intercompany Loans were not permitted, the Borrowing Debtors' operations would halt, thereby causing immediate and irreparable harm to the Debtors' estates.

48.     The ability to make Intercompany Loans will not prejudice the Debtors' estates or their creditors because, as noted previously, the Debtors will maintain the balance(s) on the Intercompany Loans and will settle the Intercompany Loans through book entries.  The Borrowing Debtors will pay down the balance(s) on the Intercompany Loans within fifteen (15) days of receipt of cash.  Accordingly, the Debtors believe that the ability to make postpetition Intercompany Loans is in the best interests of the Debtors' estates and creditors.

49.     Additionally, the Debtors respectfully request that, pursuant to sections 364(b), 503(b)(1), and 507(b) of the Bankruptcy Code, all Intercompany Claims and Intercompany Loans arising from Intercompany Transactions be granted administrative expense status.  This relief will ensure that each individual Debtor will not fund, at the expense of its own creditors, the operations of another entity.  The Debtors seek authority to enter into Intercompany Transactions and Intercompany Loans amongst themselves on a postpetition basis, *provided*, *however*, that the Debtors are not seeking to make cash payments on account of prepetition Intercompany Claims or Intercompany Loans absent further Court order.

50.     Out of an abundance of caution, the Debtors request that the Court clarify that this relief will not limit the Debtors' ability to reconcile amounts owed between and among

any Debtor and any affiliate, including netting and setting off obligations arising from Intercompany Transactions, whether arising prepetition or postpetition, in the ordinary course of business, as determined by the applicable Debtor in its sole discretion.

## V.    The Court Should Waive the Deposit Requirements of Section 345(b) of the Bankruptcy Code on an Interim Basis

51.    The Debtors request that the Court waive the requirements of section 345(b) of the Bankruptcy Code on an interim basis and permit them to maintain their deposits in their accounts in accordance with their existing deposit practices until such time as the Debtors obtain the Court's approval to deviate from the guidelines imposed under section 345(b) of the Bankruptcy Code on a final basis, to the extent necessary.

52.    Section 345(a) of the Bankruptcy Code authorizes deposits or investments of money of a bankruptcy estate, such as cash, in a manner that will "yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment." 11 U.S.C. § 345(a).  For deposits or investments that are not "insured or guaranteed by the United States or by a department agent or instrumentality of the United States or backed by the full faith and credit of the United States," section 345(b) of the Bankruptcy Code provides that the estate must require from the entity with which the money is deposited or invested a bond in favor of the United States secured by the undertaking of an adequate corporate surety.  11 U.S.C. § 345(b).

53.    However, a court may relieve a debtor in possession of the restrictions imposed by section 345(b) of the Bankruptcy Code for "cause."  11 U.S.C. § 345(b).  Local Rule 2015-2(b) provides that if a motion for a waiver of the restrictions imposed by section 345(b) "is filed on the first day of a chapter 11 case in which there are more than 200 creditors, the Court may grant an interim waiver until a hearing on the debtor's motion can be held."  Del. Bankr. L.R. 2015-2(b).  As this Motion is being filed on the Petition Date and the Debtors have in excess

of 200 potential creditors, the Debtors request that the Court enter an order waiving, on an interim

basis, for a period of thirty (30) days from the entry of the Proposed Orders, the requirements of

section 345(b) of the Bankruptcy Code.

54.     The vast majority of the Debtors' Bank Accounts are maintained at Wells

Fargo, which is a U.S. Trustee-approved depository institution.  As discussed above, the Debtors

maintain one Bank Account at PPB, which is not a U.S. Trustee-approved depository institution.

However, PPB but has been consistently ranked by various organization as one of the best banks

in America and has some of the highest levels of capital and liquidity compared to its competitor

banks.

55.     Accordingly, out of an abundance of caution, the Debtors request an interim

waiver of the requirements of section 345(b) of the Bankruptcy Code to provide them with the

required time to come into compliance with section 345(b).  Given the complexity of the Debtors'

Cash Management System and the relative security of the Cash Management System, the Debtors

submit that cause exists to grant an interim waiver of the requirements of section 345(b) in the

manner requested herein.

**<u>SATISFACTION OF BANKRUPTCY RULE 6003</u>**

56.     Pursuant to Bankruptcy Rule 6003(b), any motion seeking to use property

of the estate pursuant to section 363 of the Bankruptcy Code or to satisfy prepetition claims within

twenty-one (21) days of the Petition Date requires the Debtors to demonstrate that such relief "is

necessary to avoid immediate and irreparable harm."  Fed. R. Bankr. P. 6003.  As set forth

throughout this Motion, any disruption of the current Cash Management System would

substantially diminish or impair the Debtors' efforts in these chapter 11 cases to preserve and

maximize the value of their estates.  Furthermore, there is no question that the Debtors' failure to

pay or otherwise satisfy any outstanding fees on account of the Cash Management System would likely result in immediate and irreparable harm to the Debtors' business operations.

57.    For this reason and those set forth above, the Debtors respectfully submit that Bankruptcy Rule 6003(b) has been satisfied, and the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates.

## WAIVER OF STAY UNDER BANKRUPTCY RULE 6004(h)

58.    Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As provided herein, and to implement the foregoing successfully, the Debtors request that the Proposed Orders include a finding that the Debtors have established cause to exclude such relief from the fourteen (14)-day stay period under Bankruptcy Rule 6004(h).

59.    For this reason and those set forth above, the Debtors submit that ample cause exists to justify a waiver of the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h), to the extent applicable to the Proposed Orders.

## RESERVATION OF RIGHTS

60.    Nothing in the Proposed Orders or this Motion:  (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors and their estates; (b) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors and their estates with respect to the validity, priority, or amount of any claim against the Debtors and their estates; or (c) shall be construed as a promise to pay a claim.

## NOTICE

61.    Notice of this Motion has been provided to: (a) the U.S. Trustee (Attn:  Joseph Cudia (joseph.cudia@usdoj.gov)); (b) the Debtors' thirty (30) largest unsecured creditors; (c) counsel to Magnetar Financial LLC, (i) Royer Cooper Cohen Braunfeld LLC, 1120 Avenue of the Americas, 4th Floor, New York, NY 10036, (Attn:  Marc E. Hirschfield (mhirschfield@rccblaw.com)) and (ii) Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, DE 19801 (Attn:  Russell C. Silberglied (silberglied@rlf.com)), as agent for the prepetition secured lenders; (d) the Internal Revenue Service; (e) the Securities and Exchange Commission; (f) the Office of the United States Attorney for the District of Delaware; (g) the Banks; and (h) all parties that have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002.  Notice of this Motion and any order entered hereon will be served in accordance with Rule 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware.  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

*[Remainder of Page Intentionally Left Blank]*

## CONCLUSION

WHEREFORE, the Debtors request entry of the Proposed Orders, granting the

relief requested herein and such other and further relief as is just and proper.

Dated: June 26, 2023

**YOUNG CONAWAY STARGATT &**
**TAYLOR, LLP**

*/s/ Shella Borovinskaya*
Joseph Barry (Del. Bar No. 4221)
Ryan M. Bartley (Del. Bar No. 4985)
S. Alexander Faris (Del. Bar No. 6278)
Shella Borovinskaya (Del. Bar No. 6758)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253
Email:  jbarry@ycst.com
          rbartley@ycst.com
          afaris@ycst.com
          sborovinskaya@ycst.com

*Proposed Co-Counsel to the Debtors and*
*Debtors in Possession*

**KRAMER LEVIN NAFTALIS &**
**FRANKEL LLP**

P. Bradley O'Neill (*pro hac vice* pending)
Caroline Gange (*pro hac vice* pending)
1177 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 715-9511
Facsimile:  (212) 715-8000
Email:  boneill@kramerlevin.com
          cgange@kramerlevin.com

*Proposed Co-Counsel to the Debtors and*
*Debtors in Possession*

**EXHIBIT A**

**Proposed Interim Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| PeerStreet, Inc., *et al.*,[1] | Case No. 23-10815 (   ) |
| Debtors. | (Jointly Administered) |
| | **Re: Docket No. ___** |

**INTERIM ORDER, PURSUANT TO SECTIONS 105(a), 345, 363, 364, 1107(a), AND 1108 OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 2015, AND LOCAL RULE 2015-2, (A) AUTHORIZING AND APPROVING CONTINUED USE OF CASH MANAGEMENT SYSTEM, (B) AUTHORIZING USE OF PREPETITION BANK ACCOUNTS AND BUSINESS FORMS, (C) AUTHORIZING CONTINUED PERFORMANCE OF INTERCOMPANY TRANSACTIONS IN THE ORDINARY COURSE OF BUSINESS AND GRANTING ADMINISTRATIVE EXPENSE STATUS FOR POSTPETITION INTERCOMPANY CLAIMS AND INTERCOMPANY LOANS, (D) WAIVING THE REQUIREMENTS OF SECTION 345(b) ON AN INTERIM BASIS, AND (E) GRANTING CERTAIN RELATED RELIEF**

Upon consideration of the motion (the "**Motion**")[2] of the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") for the entry of interim and final orders, pursuant to sections 105(a), 345, 363, 364(b), 1107(a), and 1108 of the Bankruptcy Code, Bankruptcy Rule 2015, and Local Rule 2015-2, (a) authorizing and approving the Debtors' continued use of their Cash Management System, (b) granting the Debtors a waiver of the U.S. Trustee Guidelines, (c) authorizing the Debtors to continue Intercompany Transactions with each other and granting administrative expenses priority to Intercompany Claims and Intercompany

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of their respective federal tax identification numbers, are:  Peer Street, Inc. (8584); PS Funding, Inc. (3268); PeerStreet Licensing, Inc. (9435); Peer Street Opportunity Fund GP, LLC (8491); Peer Street Funding LLC (9485); PSF REO LLC (1013); PS Options LLC (8584); PS Warehouse, LLC (5663); PS Warehouse II, LLC (9252); Peer Street Opportunity Investors II, LP (1586); PS Portfolio-ST1, LLC (1868); PSF Ohio, LLC (9485); PSF TX 1, LLC (9485); PSF TX 2, LLC (2415); PSF TX 4 LLC (9485).  The Debtors' service address is c/o Province, LLC 2360 Corporate Circle, Suite 340, Henderson, NV 89074, Attn:  David Dunn, Chief Restructuring Officer.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

Loans, (d) waiving the requirements of section 345(b) of the Bankruptcy Code with respect to the Debtors' deposit practices on an interim basis, and (e) granting certain related relief; and upon consideration of the First Day Declaration; and due and proper notice of the Motion having been given; and it appearing that no other or further notice of the Motion is required except as otherwise provided herein; and it appearing that this Court has jurisdiction to consider the Motion in accordance with 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order; and it appearing that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and it appearing that venue of this proceeding and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that the relief requested in the Motion and provided for herein is in the best interest of the Debtors, their estates, and their creditors; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**:

1.      The Motion is GRANTED on an interim basis as set forth herein.

2.      A final hearing on the relief sought in the Motion shall be conducted on _____, 2023 at _____ (ET) (the "**Final Hearing**").  Any party objecting to the relief sought at the Final Hearing or the Proposed Final Order shall file and serve a written objection, which objection shall be served upon proposed counsel for the Debtors, so as to be received no later than _____, 2023 at 4:00 p.m. (ET).  If no objections to the entry of the Proposed Final Order are timely filed, this Court may enter the Proposed Final Order without further notice or a hearing.

3.      The Debtors are authorized, in their discretion, to: (a) designate, maintain, and continue to use, with the same account numbers, all of their bank accounts in existence on the Petition Date (collectively, the "**Bank Accounts**"), including, without limitation, those bank accounts identified in the Motion; (b) use, in their present form, any and all checks and other documents related to the Bank Accounts; (c) treat the Bank Accounts for all purposes as accounts

of the Debtors as debtors-in-possession and to maintain and continue using these accounts in the same manner and with the same account numbers, styles, and document forms as used prior to the Petition Date; and (d) pay the Prepetition Bank Fees up to a total of $26,000 pending entry of the Final Order.

4.      The Cash Management Banks participating in the Cash Management System are hereby authorized to continue to service and administer all of the Bank Accounts as accounts of the Debtors as debtors-in-possession without interruption and in the ordinary course in a manner consistent with any agreements between the Cash Management Banks and the Debtors that existed prior to the Petition Date, and to receive, process, honor, and pay any and all checks, drafts, wires, or other electronic transfer requests issued, payable through, or drawn on, such Bank Accounts after the Petition Date by the holders or makers thereof or other parties entitled to issue instructions with respect thereto, as the case may be; *provided, however*, that any such checks, drafts, wires, or other electronic transfer requests issued by the Debtors before the Petition Date may be honored by any Cash Management Bank only if specifically authorized by order of this Court.

5.      Except for those that comply with an order of this Court authorizing payment of certain prepetition claims, no checks, drafts, wires, or other electronic transfer requests drawn, issued, or requested on the Bank Accounts before the Petition Date, but presented for payment after the Petition Date, shall be honored or paid.

6.      The operation of the Cash Management System in accordance with the Debtors' normal and customary practice is adequate and sufficient and may be continued on and after the Petition Date.

7.      The Cash Management Banks participating in the Cash Management System shall not be liable to the Debtors or to their estates and shall not be deemed to be in

30188560.14

3

violation of this Order for honoring a prepetition check or other item drawn on any account that is the subject of this Order:  (a) at the direction of the Debtors; (b) in a good faith belief that this Court has authorized such prepetition check or item to be honored; or (c) as a result of an innocent mistake made despite implementation of reasonable item handling procedures.

8.      The Debtors are authorized to continue to use all of their correspondence and business forms (including, without limitation, checks, invoices, letterhead, stationery, and purchase orders) existing immediately before the Petition Date without reference to the Debtors' status as debtors-in-possession; *provided, however*, that upon the depletion of any pre-printed check stock and other business forms, the Debtors will obtain new check stock and business forms reflecting their status as debtors-in-possession; *provided further, however*, that with respect to checks which the Debtors or their agents print themselves, the Debtors shall begin printing "Debtor-in-Possession" or "DIP" and the jointly administered case number for these chapter 11 cases on such items within ten (10) days of the date of the entry of this Order.

9.      The Debtors, in consultation with the Agent, are authorized to open any new bank accounts and close any of the Bank Accounts as the Debtors may deem necessary and appropriate; *provided, however*, that prior to opening any new bank accounts or closing any of the Bank Accounts, the Debtors give notice within fifteen (15) days to the Office of the United States Trustee for the District of Delaware, the Agent, and any statutory committees appointed in these chapter 11 cases; *provided, further, however*, that the Debtors shall open any such new Bank Account at banks that have executed a Uniform Depository Agreement with the Office of the United States Trustee for the District of Delaware, or at such banks that are willing to immediately execute such an agreement.

10.     The relief granted herein is extended to any new bank accounts opened by the Debtors after the date hereof in accordance with this Order, and any such new accounts shall

30188560.14

be deemed a Bank Account for purposes of this Order, and any banks at which any such new accounts are opened shall be deemed a Cash Management Bank, and a part of the Cash Management System, for purposes of this Order.

11.     With regard to the Cash Management Banks that are party to an UDA with the U.S. Trustee, as soon as possible after the entry of this Order, the Debtors shall (a) contact each bank, (b) provide each bank with each of the Debtors' employer identification numbers, and (c) identify each of their Bank Accounts held at such banks as being held by a debtor-in-possession.

12.     With regard to the Cash Management Banks that are not a party to an UDA with the U.S. Trustee, within thirty (30) days of the date of the entry of this Order, the Debtors shall use their good-faith efforts to cause the bank to execute an UDA in a form prescribed by the U.S. Trustee.  The U.S. Trustee's rights to seek further relief from this Court on notice in the event that the aforementioned banks are unwilling to execute an UDA in a form prescribed by the U.S. Trustee are fully reserved.

13.     The Debtors are authorized to continue engaging in Intercompany Transactions in the ordinary course of business, to continue performing under the terms of existing Intercompany Loans, and to enter into new Intercompany Loans between the Lending Debtors and the Borrowing Debtors; *provided, however*, that the Cash Collateral Debtors will not use the Prepetition Secured Parties' Cash Collateral to make Intercompany Loans to the Borrowing Debtors..

14.     The Debtors shall maintain accurate and detailed records of all transfers, including any Intercompany Transactions and Intercompany Loans, so that all transactions may be readily ascertained, traced, recorded properly, and distinguished between prepetition and

postpetition transactions, and the Debtors shall make such records available to the Debtors' Prepetition Secured Parties upon request.

15.    The Lending Debtors will be granted an administrative expense claim under sections 364(b), 503(b)(1), and 507(b) for amounts lent to the Borrowing Debtors, and the Borrowing Debtors are authorized to repay the Lending Debtors on account of Intercompany Loans within fifteen (15) days of receipt of cash, including through a sale of their assets.

16.    Notwithstanding anything to the contrary set forth in the Motion, nothing set forth in this Order authorizes the Debtors to permit customers to withdraw funds from the FBO Accounts without a further order from this Court.

17.    The requirements of section 345(b) of the Bankruptcy Code are suspended on an interim basis for a period of thirty (30) days from the entry of this Order, such that the Debtors are hereby permitted to maintain their deposits in their Bank Accounts in accordance with their existing deposit practices.  This Order shall be without prejudice to the Debtors' rights to seek further relief from this Court with respect to such requirements or to seek approval from this Court to deviate from such requirements on a final basis.

18.    The Cash Management Banks are hereby authorized to debit from the Bank Accounts ordinary course of business bank fees and charges without further order of this Court, provided that such fees and charges are authorized under the applicable account agreement with the Debtors, and provided further that nothing set forth herein shall authorize any of the Cash Management Banks to debit any claim or charges not in the ordinary course of business and not permitted under the applicable account agreements.

19.    Within five (5) business days of the date of the entry of this Order, the Debtors shall (a) serve a copy of this Order on each Cash Management Bank and (b) request that

each Cash Management Bank internally code each of the Bank Accounts as "debtor-in-possession" accounts.

20.     Notwithstanding the Debtors' authorized use of a consolidated cash management system, the Debtors shall calculate quarterly fees under 28 U.S.C. § 1930(a)(6) based on the disbursements of each particular Debtor, regardless of which Debtor remits payment for those disbursements.

21.     Nothing in this Order:  (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors and their estates; (b) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors and their estates with respect to the validity, priority, or amount of any claim against the Debtors and their estates; or (c) shall be construed as a promise to pay any claim.

22.     The Debtors are authorized to take any and all actions necessary to effectuate the relief granted herein.

23.     The requirements of Bankruptcy Rule 6003(b) are satisfied.

24.     Notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be effective and enforceable immediately upon its entry.

25.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

**<u>EXHIBIT B</u>**

**Proposed Final Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| PeerStreet, Inc., *et al.*,[1] | Case No. 23-10815 (   ) |
| Debtors. | (Jointly Administered) |
|  | **Re: Docket Nos. ___ & ___** |

**FINAL ORDER, PURSUANT TO SECTIONS 105(a), 345, 363, 364, 1107(a), AND
1108 OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 2015, AND LOCAL
RULE 2015-2, (A) AUTHORIZING AND APPROVING CONTINUED USE OF
CASH MANAGEMENT SYSTEM, (B) AUTHORIZING USE OF PREPETITION
BANK ACCOUNTS AND BUSINESS FORMS, (C) AUTHORIZING CONTINUED
PERFORMANCE OF INTERCOMPANY TRANSACTIONS IN THE ORDINARY
COURSE OF BUSINESS AND GRANTING ADMINISTRATIVE EXPENSE STATUS
FOR POSTPETITION INTERCOMPANY CLAIMS AND INTERCOMPANY LOANS,
(D) WAIVING THE REQUIREMENTS OF SECTION 345(b) ON AN INTERIM BASIS,
AND (E) GRANTING CERTAIN RELATED RELIEF**

Upon consideration of the motion (the "**Motion**")[2] of the above-captioned debtors

and debtors in possession (collectively, the "**Debtors**") for the entry of interim and final orders,

pursuant to sections 105(a), 345, 363, 364(b), 1107(a), and 1108 of the Bankruptcy Code,

Bankruptcy Rule 2015, and Local Rule 2015-2, (a) authorizing and approving the Debtors'

continued use of their Cash Management System, (b) granting the Debtors a waiver of the U.S.

Trustee Guidelines, (c) authorizing the Debtors to continue Intercompany Transactions with each

other and granting administrative expenses priority to Intercompany Claims and Intercompany

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of their respective federal tax identification numbers, are:  Peer Street, Inc. (8584); PS Funding, Inc. (3268); PeerStreet Licensing, Inc. (9435); Peer Street Opportunity Fund GP, LLC (8491); Peer Street Funding LLC (9485); PSF REO LLC (1013); PS Options LLC (8584); PS Warehouse, LLC (5663); PS Warehouse II, LLC (9252); Peer Street Opportunity Investors II, LP (1586); PS Portfolio-ST1, LLC (1868); PSF Ohio, LLC (9485); PSF TX 1, LLC (9485); PSF TX 2, LLC (2415); PSF TX 4 LLC (9485).  The Debtors' service address is c/o Province, LLC 2360 Corporate Circle, Suite 340, Henderson, NV 89074, Attn:  David Dunn, Chief Restructuring Officer.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

Loans, (d) waiving the requirements of section 345(b) of the Bankruptcy Code with respect to the Debtors' deposit practices on an interim basis, and (e)  granting certain related relief; and upon consideration of the First Day Declaration; and due and proper notice of the Motion having been given; and it appearing that no other or further notice of the Motion is required except as otherwise provided herein; and it appearing that this Court has jurisdiction to consider the Motion in accordance with 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order; and it appearing that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and it appearing that venue of this proceeding and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that the relief requested in the Motion and provided for herein is in the best interest of the Debtors, their estates, and their creditors; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**:

1.       The Motion is GRANTED on a final basis as set forth herein.

2.       The Debtors are authorized, in their discretion, to:  (a) designate, maintain, and continue to use, with the same account numbers, all of their bank accounts in existence on the Petition Date (collectively, the "**Bank Accounts**"), including, without limitation, those bank accounts identified in the Motion; (b) use, in their present form, any and all checks and other documents related to the Bank Accounts; (c) treat the Bank Accounts for all purposes as accounts of the Debtors as debtors-in-possession and to maintain and continue using these accounts in the same manner and with the same account numbers, styles, and document forms as used prior to the Petition Date; and (d) pay the Prepetition Bank Fees up to a total of $26,000.

3.       The Cash Management Banks participating in the Cash Management System are hereby authorized to continue to service and administer all of the Bank Accounts as accounts of the Debtors as debtors-in-possession without interruption and in the ordinary course in a manner consistent with any agreements between the Cash Management Banks and the Debtors

that existed prior to the Petition Date, and to receive, process, honor, and pay any and all checks, drafts, wires, or other electronic transfer requests issued, payable through, or drawn on, such Bank Accounts after the Petition Date by the holders or makers thereof or other parties entitled to issue instructions with respect thereto, as the case may be; *provided, however*, that any such checks, drafts, wires, or other electronic transfer requests issued by the Debtors before the Petition Date may be honored by any Cash Management Bank only if specifically authorized by order of this Court.

4.      Except for those that comply with an order of this Court authorizing payment of certain prepetition claims, no checks, drafts, wires, or other electronic transfer requests drawn, issued, or requested on the Bank Accounts before the Petition Date, but presented for payment after the Petition Date, shall be honored or paid.

5.      The operation of the Cash Management System in accordance with the Debtors' normal and customary practice is adequate and sufficient and may be continued on and after the Petition Date.

6.      The Cash Management Banks participating in the Cash Management System shall not be liable to the Debtors or to their estates and shall not be deemed to be in violation of this Order for honoring a prepetition check or other item drawn on any account that is the subject of this Order:  (a) at the direction of the Debtors; (b) in a good faith belief that this Court has authorized such prepetition check or item to be honored; or (c) as a result of an innocent mistake made despite implementation of reasonable item handling procedures.

7.      The Debtors are authorized to continue to use all of their correspondence and business forms (including, without limitation, checks, invoices, letterhead, stationery, and purchase orders) existing immediately before the Petition Date without reference to the Debtors' status as debtors-in-possession; *provided, however*, that upon the depletion of any pre-printed

check stock and other business forms, the Debtors will obtain new check stock and business forms reflecting their status as debtors-in-possession; *provided further, however*, that, to the extent not already done, with respect to checks which the Debtors or their agents print themselves, the Debtors shall begin printing "Debtor-in-Possession" or "DIP" and the jointly administered case number for these chapter 11 cases on such items within ten (10) days of the date of the entry of this Order.

8.      The Debtors, in consultation with the Agent, are authorized to open any new bank accounts and close any of the Bank Accounts as the Debtors may deem necessary and appropriate; *provided, however*, that prior to opening any new bank accounts or closing any of the Bank Accounts, the Debtors give notice within fifteen (15) days to the Office of the United States Trustee for the District of Delaware, the Agent, and any statutory committees appointed in these chapter 11 cases; *provided, further, however*, that the Debtors shall open any such new Bank Account at banks that have executed a Uniform Depository Agreement with the Office of the United States Trustee for the District of Delaware, or at such banks that are willing to immediately execute such an agreement

9.      The relief granted herein is extended to any new bank accounts opened by the Debtors after the date hereof in accordance with this Order, and any such new accounts shall be deemed a Bank Account for purposes of this Order, and any banks at which any such new accounts are opened shall be deemed a Cash Management Bank, and a part of the Cash Management System, for purposes of this Order.

10.     With regard to the Cash Management Banks that are not a party to an UDA with the U.S. Trustee, within thirty (30) days  of the date of the entry of this Order, the Debtors shall use their good-faith efforts to cause the bank to execute an UDA in a form prescribed by the U.S. Trustee.  The U.S. Trustee's rights to seek further relief from this Court on notice in the event

that the aforementioned banks are unwilling to execute an UDA in a form prescribed by the U.S. Trustee are fully reserved.

11.     The requirements of section 345(b) of the Bankruptcy Code are hereby suspended as to the Cash Management Accounts on a final basis, such that the Debtors are hereby permitted to maintain their deposits in their Bank Accounts in accordance with their existing deposit practices.  This Order shall be without prejudice to the Debtors' rights to seek further relief from this Court with respect to such requirements or to seek approval from this Court to deviate from such requirements on a final basis.

12.     The Cash Management Banks are hereby authorized to debit from the Bank Accounts ordinary course of business bank fees and charges without further order of this Court, provided that such fees and charges are authorized under the applicable account agreement with the Debtors, and provided further that nothing set forth herein shall authorize any of the Cash Management Banks to debit any claim or charges not in the ordinary course of business and not permitted under the applicable account agreements.

13.     The Debtors are authorized to continue engaging in Intercompany Transactions in the ordinary course of business, to continue performing under the terms of existing Intercompany Loans, and to enter into new Intercompany Loans between the Lending Debtors and the Borrowing Debtors; *provided, however*, that the Cash Collateral Debtors will not use the Prepetition Secured Parties' Cash Collateral to make Intercompany Loans to the Borrowing Debtors..

14.     The Lending Debtors will be granted an administrative expense claim under sections 364(b), 503(b)(1), and 507(b) for amounts lent to the Borrowing Debtors and the Borrowing Debtors are authorized to repay the Lending Debtors on account of Intercompany Loans within fifteen (15) days of receipt of cash, including through a sale of their assets.

30188560.14

15.     The Debtors shall maintain accurate and detailed records of all transfers, including any Intercompany Transactions, so that all transactions may be readily ascertained, traced, recorded properly and distinguished between prepetition and postpetition transactions, and the Debtors shall make such records available to the Debtors' Prepetition Secured Parties upon request.

16.     Notwithstanding anything to the contrary in the Motion, nothing set forth in this Order authorizes the Debtors to permit customers to withdraw funds from the FBO Accounts without a further order from this Court.

17.     Notwithstanding the Debtors' authorized use of a consolidated cash management system, the Debtors shall calculate quarterly fees under 28 U.S.C. § 1930(a)(6) based on the disbursements of each particular Debtor, regardless of which Debtor remits payment for those disbursements.

18.     Nothing in this Order:  (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors and their estates; (b) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors and their estates with respect to the validity, priority, or amount of any claim against the Debtors and their estates; or (c) shall be construed as a promise to pay a claim.

19.     The Debtors are authorized to take any and all actions necessary to effectuate the relief granted herein.

20.     Notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be effective and enforceable immediately upon its entry.

21.    This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

## **EXHIBIT C**

**Schedule of Bank Accounts**

**OPERATING ACCOUNTS**

| Debtor | Bank | Last Four Digits of Account No. | Account Description |
|--------|------|-------------------------------|---------------------|
| Peer Street, Inc. | Pacific Premier Bank | 7581 | Peer Street, Inc. - Operating |
| PS Funding, Inc. | Wells Fargo Bank, N.A. | 4910 | PS Funding, Inc. - Operating |
| Peer Street Funding LLC | Wells Fargo Bank, N.A. | 4902 | Peer Street Funding LLC - Operating |
| Peer Street, Inc. | Wells Fargo Bank, N.A. | 4886 | Peer Street, Inc. - Credit Lines |
| Peer Street, Inc. | Wells Fargo Bank, N.A. | 4878 | Peer Street, Inc. - Payroll |
| Peer Street, Inc. | Wells Fargo Bank, N.A. | 4860 | Peer Street, Inc. - Operating |
| PSF REO LLC | Wells Fargo Bank, N.A. | 9968 | PSF REO LLC - Operating |

**CLEARING ACCOUNTS**

| Debtor | Bank | Last Four Digits of Account No. | Account Description |
|---|---|---|---|
| PS Funding, Inc. | Wells Fargo Bank, N.A. | 4944 | Loan Purchases |
| PS Funding, Inc. | Wells Fargo Bank, N.A. | 1840 | Holdbacks Clearing |
| PS Funding, Inc. | Wells Fargo Bank, N.A. | 8248 | Sales Clearing Account |

30188560.14

## SOURCE OF CAPITAL ACCOUNTS

| Debtor | Bank | Last Four Digits of Account No. | Description |
|---|---|---|---|
| PS Warehouse, LLC | Wells Fargo Bank, N.A. | 6306 | PS Warehouse, LLC (Pocket 1 month) |
| Peer Street Opportunity Investors II, LP | Wells Fargo Bank, N.A. | 3505 | PS Opportunity Fund II |
| PS Warehouse II, LLC | Wells Fargo Bank, N.A. | 6433 | PS Warehouse II, LLC (Pocket 3 month) |
| PS Portfolio – ST1, LLC | Wells Fargo Bank, N.A. | 6383 | PS Portfolio – ST1, LLC – Operating |

**FBO ACCOUNTS**

| Debtor | Bank | Last Four Digits of Account No. | Description |
|---|---|---|---|
| Peer Street, Inc. | Wells Fargo Bank, N.A. | 7641 | NP-BPI Owner Trust - Collections |
| PS Funding, Inc. | Wells Fargo Bank, N.A. | 9287 | Servicer P&I Collections |
| PS Funding, Inc. | Wells Fargo Bank, N.A. | 7082 | Dormant Account |
| PS Funding, Inc. | Wells Fargo Bank, N.A. | 7090 | Dormant Account |
| PSF Sub 1 LLC | Wells Fargo Bank, N.A. | 0958 | Dormant Account |
| PSF Sub 1 LLC | Wells Fargo Bank, N.A. | 0941 | Dormant Account |
| PS Funding, Inc. | Wells Fargo Bank, N.A. | 9930 | BAWAG Collections |
| PS Funding, Inc. | Wells Fargo Bank, N.A. | 9948 | Dormant Account |
| PS Funding, Inc. | Wells Fargo Bank, N.A. | 0368 | NP Master Trust Reserves |
| PS Funding, Inc. | Wells Fargo Bank, N.A. | 0384 | NP Master Trust Collections |
| PS Funding, Inc. | Wells Fargo Bank, N.A. | 0925 | Colchis |
| PS Funding, Inc. | Wells Fargo Bank, N.A. | 0909 | Napier 2 Delaware Owner |
| PS Funding, Inc. | Wells Fargo Bank, N.A. | 2161 | Dormant Account |
| PS Funding, Inc. | Wells Fargo Bank, N.A. | 1687 | Dormant Account |
| PS Funding, Inc. | Wells Fargo Bank, N.A. | 0891 | Napier 1 ABS Income |
| PS Funding, Inc. | Wells Fargo Bank, N.A. | 2023 | Dormant Account |
| PS Funding, Inc. | Wells Fargo Bank, N.A. | 3023 | VC RTL 2018-1/VC RTL 2018-1 WNB |
| PS Funding, Inc. | Wells Fargo Bank, N.A. | 3031 | VC RTL Holdings/VC RTL Holdings WNB |

30188560.14

| Debtor | Bank | Last Four Digits of Account No. | Description |
|---|---|---|---|
| PS Funding, Inc. | Wells Fargo Bank, N.A. | 0883 | MFRA 2016 |
| PS Funding, Inc. | Wells Fargo Bank, N.A. | 0875 | MFRA 2015 |
| PS Funding, Inc. | Wells Fargo Bank, N.A. | 8222 | Dormant Account |
| PS Funding, Inc. | Wells Fargo Bank, N.A. | 8230 | Dormant Account |
| PS Funding, Inc. | Wells Fargo Bank, N.A. | 0867 | MFRA 2020 |
| PS Funding, Inc. | Wells Fargo Bank, N.A. | 1691 | MFA CS Collections |
| PS Funding, Inc. | Wells Fargo Bank, N.A. | 1709 | MFA CS Escrow |
| PS Funding, Inc. | Wells Fargo Bank, N.A. | 1519 | Napier Master Trust II-Reserves |
| PS Funding, Inc. | Wells Fargo Bank, N.A. | 1527 | Napier Master Trust II-Collections |
| PS Funding, Inc. | Wells Fargo Bank, N.A. | 0859 | Principal & Interest |
| PS Funding, Inc. | Wells Fargo Bank, N.A. | 4001 | Blackstone FBO Fidelity |
| PS Funding, Inc. | Wells Fargo Bank, N.A. | 2526 | Dormant Account |
| PS Funding, Inc. | Wells Fargo Bank, N.A. | 2534 | Dormant Account |
| PS Funding, Inc. | Wells Fargo Bank, N.A. | 9225 | FBO Residual DPV Meeting Trust Collect |
| PS Funding, Inc. | Wells Fargo Bank, N.A. | 9233 | FBO Residual DPV Meeting Trust Esc Find |
| PS Funding, Inc. | Wells Fargo Bank, N.A. | 2477 | FBO Lenders |
| PS Funding, Inc. | Wells Fargo Bank, N.A. | 2915 | Dormant Account |
| PS Funding, Inc. | Wells Fargo Bank, N.A. | 2923 | Dormant Account |
| PS Funding, Inc. | Wells Fargo Bank, N.A. | 4985 | 1Sharpe WNB |

| Debtor | Bank | Last Four Digits of Account No. | Description |
|---|---|---|---|
| PS Funding, Inc. | Wells Fargo Bank, N.A. | 4977 | LibreMax VF Trust |
| PS Funding, Inc. | Wells Fargo Bank, N.A. | 4969 | LibreMax MF Trust |
| Peer Street Funding LLC | Wells Fargo Bank, N.A. | 4894 | FBO Retail Clients |
| PS Funding, Inc. | Wells Fargo Bank, N.A. | 4951 | Dormant Account |
| PS Funding, Inc. | Wells Fargo Bank, N.A. | 4936 | Construction Holdbacks |
| PS Funding, Inc. | Wells Fargo Bank, N.A. | 4928 | Dormant Account |