**THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Peer Street, Inc., *et al.*,[1] | Case No. 23-10815 (___) |
| Debtors. | (Joint Administration Requested) |

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS
(A) AUTHORIZING THE DEBTORS' USE OF CASH COLLATERAL;
(B) GRANTING ADEQUATE PROTECTION TO THE PREPETITION
SECURED PARTIES; (C) SCHEDULING A FINAL HEARING;
AND (D) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "**Debtors**") hereby submit this motion (this "**Motion**") for the entry of an interim order, substantially in the form attached hereto as **Exhibit A** (the "**Proposed Interim Order**") and **Exhibit B** (the "**Proposed Final Order**," and together with the Proposed Interim Order, the "**Proposed Orders**"), pursuant to sections 105, 361, 362, 363, 506(c), and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**"), Rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), (a) authorizing Debtors Peer Street, Inc. ("**PSI**"), PS Funding, Inc. ("**PSFI**"), and PeerStreet Licensing, Inc. ("**PSLI**," and collectively with PSI and PSFI, the "**Prepetition Borrowers**") to use Cash Collateral (as defined

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their respective federal tax identification numbers, are: Peer Street, Inc. (8584); PS Funding, Inc. (3268); PeerStreet Licensing, Inc. (9435); Peer Street Opportunity Fund GP, LLC (8491); Peer Street Funding LLC (9485); PSF REO LLC (1013); PS Options LLC (8584); PS Warehouse, LLC (5663); PS Warehouse II, LLC (9252); Peer Street Opportunity Investors II, LP (1586); PS Portfolio-ST1, LLC (1868); PSF Ohio, LLC (9485); PSF TX 1, LLC (9485); PSF TX 2, LLC (2415); PSF TX 4 LLC (9485). The Debtors' service address is c/o Province, LLC 2360 Corporate Circle, Suite 340, Henderson, NV 89074, Attn: David Dunn, Chief Restructuring Officer.

below) and Prepetition Collateral (as defined in the Proposed Interim Order) subject to the terms and conditions set forth in the Proposed Orders, (b) granting adequate protection to the Prepetition Secured Lenders (as defined below) in the form and manner provided for in the Proposed Orders, (c) scheduling a final hearing on this Motion (the "**Final Hearing**"), and (d) granting related relief. In support of this Motion, the Debtors rely upon and incorporate by reference the *Declaration of David M. Dunn in Support of Chapter 11 Petitions and First Day Pleadings* (the "**First Day Declaration**"),[2] filed contemporaneously herewith.  In further support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION

1.     The United States Bankruptcy Court for the District of Delaware (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012 (the "**Amended Standing Order**").  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution.  Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief sought herein are sections 105, 361, 362, 363, 506(c), and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004, and 9014, and Local Rule 4001-2.

## BACKGROUND

2.     Today (the "**Petition Date**"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code.  The Debtors are authorized to operate their

---

[2]    Capitalized terms, including those in the Summary of Material Terms chart below, used but not otherwise defined herein shall have the meanings ascribed to them in the Proposed Orders.  To the extent there are any discrepancies between the Proposed Interim Order and Proposed Final Order, the Proposed Final Order, as approved by the Court, will control.

business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No official committees have been appointed in these chapter 11 cases and no request has been made for the appointment of a trustee or an examiner.

3.     Additional information regarding the Debtors' business, their capital structure, and the circumstances leading to the filing of these chapter 11 cases is set forth in the First Day Declaration.

## **PREPETITION SECURED DEBT OBLIGATIONS**

4.     The Magnetar Credit Agreement.  PSI is party to a Credit Agreement dated October 12, 2021 (as may be amended, restated, supplemented, or otherwise modified from time to time prior to the Petition Date, the "**Prepetition Credit Agreement**"), by and among PSI, as borrower and the other Prepetition Borrowers as guarantors, on the one hand, and Magnetar Financial LLC as the Paying Agent (the "**Agent**"), and certain of Magnetar's affiliates and managed funds party thereto, as lenders (the "**Prepetition Lenders**," and together with the Agent, the "**Prepetition Secured Parties**"), on the other.  The Prepetition Credit Agreement provides for convertible secured term loans in an aggregate principal amount not to exceed $30 million dollars. The loans provided under the Prepetition Credit Agreement are secured by a lien on substantially all of the Prepetition Borrowers' assets, including all cash held at PSI, but expressly excluding, among other things, any asset of a Prepetition Borrower encumbered by a lien securing a permitted debt facility or otherwise pledged to third-party investors in accordance with the Prepetition Borrower's ordinary course of business (the "**Prepetition Collateral**").  For the avoidance of doubt, broadly speaking, the Prepetition Collateral does not include the mortgage loans held by Debtor PSFI.

5.    As of the Petition Date, the Prepetition Borrowers were indebted and liable, to the Prepetition Secured Parties under the Prepetition Financing Documents, for (a) an aggregate amount, including secured PIK interest at a rate of 6%, of $27,239,166.74 and (b) accrued and unpaid interest, fees (including, without limitation, Agency Fees (as defined herein)), and costs, expenses (including any attorneys' and financial advisors' fees), charges, indemnities, and all other obligations incurred or accrued with respect to the foregoing pursuant to, and in accordance with, the Prepetition Financing Documents (collectively, the "**Prepetition Secured Obligations**").

## RELIEF REQUESTED

6.    By this Motion, the Debtors request that the Court enter the Proposed Orders (a) authorizing the Prepetition Borrowers' consensual use of Cash Collateral and Prepetition Collateral, subject to the terms and conditions set forth in the Proposed Orders; (b) granting adequate protection to Prepetition Secured Parties in the form and manner provided for in the Proposed Orders; (c) scheduling a Final Hearing; and (d) granting related relief.

7.    Bankruptcy Rule 4001(d) provides that the Court may fix the time within which objections to the approval of an agreement relating to cash collateral and adequate protection pursuant to section 363 of the Bankruptcy Code must be filed.  In addition, the Court is empowered to conduct an expedited preliminary hearing on the motion and authorize the use of cash collateral to the extent necessary to avoid immediate and irreparable harm to the debtor's estate.

## THE PREPETITION BORROWERS' IMMEDIATE NEED TO USE CASH COLLATERAL

8.    It is essential to the Debtors' efforts to preserve and maximize the value of their assets that the Prepetition Borrowers obtain the authority to use the cash derived from operating the business (the "**Cash Collateral**").  To that end, the Prepetition Borrowers and the

Prepetition Secured Parties have reached an agreement on the consensual use of Cash Collateral and Prepetition Collateral to fund expenses identified in the budget attached as <u>Exhibit A</u> to the Proposed Interim Order (the "**Initial Budget**," and as may be amended, extended, and approved from time to time as set forth in the Proposed Interim Order, the "**Budget**").  Such expenses include, but are not limited to, employee payroll and other benefits, and other expenses related to the Prepetition Borrowers' business operations.  The Budget was prepared by the Debtors, with the assistance of their professionals, and shows the Prepetition Borrowers' projected expenditures during the period from the Petition Date through and including the succeeding thirteen (13) weeks, and estimates the period in which such cash expenditures will need to be paid.

9.    Additionally, the Budget incorporates an allocation model pursuant to which each of the Debtors' expenses and costs are allocated to the specific Debtor. The use of cash collateral requested herein is limited to the three (3) Prepetition Borrowers who will use cash collateral up to the amounts allocated to them.  As described more fully in the *Debtors' Motion for Interim and Final Orders, Pursuant to Sections 105(a), 345, 363, 503(b), 1107(a) and 1108 of the Bankruptcy Code, Bankruptcy Rule 2015, and Local Rule 2015-2, (A) Authorizing and Approving Continued Use of Cash Management System, (B) Authorizing Use of Prepetition Bank Accounts and Business Forms, (C) Authorizing Continued Performance of Intercompany Transactions in the Ordinary Course of Business and Granting Administrative Expense Status for Postpetition Intercompany Claims, (D) Waiving the Requirements of Section 345(b) on an Interim Basis, and (E) Granting Certain Related Relief* filed contemporaneously herewith, the other Debtors will be funding their allocated case costs through the use of unencumbered cash. The Prepetition Borrowers believe that the use of Cash Collateral and Prepetition Collateral will be sufficient to

fund their operations and the costs of these chapter 11 cases without the need for debtor-in-possession financing.

10. The reasons supporting the Prepetition Borrowers' need to use Cash Collateral and Prepetition Collateral during the course of these chapter 11 cases are compelling. The use of Cash Collateral and Prepetition Collateral is required to fund the day-to-day operating expenses, including payments to employees and otherwise sustaining the going concern value of the Debtors' business. Unless the Court authorizes the consensual use of the Cash Collateral and Prepetition Collateral, the Prepetition Borrowers will be unable to pay for services and expenses necessary to preserve and maximize the value of the Debtors' assets. Indeed, absent sufficient funds to support the Debtors' business operations, the value of the Debtors' assets will quickly erode. Therefore, authorization to use Cash Collateral and Prepetition Collateral pending the Final Hearing is in the best interests of the Debtors' estates and creditors.

## BANKRUPTCY RULE 4001 AND LOCAL RULE 4001–2 CONCISE STATEMENT

11. The Prepetition Borrowers and the Prepetition Secured Parties have reached a consensual agreement with respect to the Prepetition Borrowers' use of Cash Collateral and Prepetition Collateral upon the terms and conditions set forth in the Proposed Interim Order and summarized below. Pursuant to Bankruptcy Rules 4001(b)(1) and (d)(1) and Local Rule 4001-2(a), the Debtors submit the following concise statement of the material terms of the Proposed Interim Order:

| SUMMARY OF MATERIAL TERMS | | |
|---|---|---|
| **Entities with an Interest in Cash Collateral**<br><br>Bankruptcy Rule 4001(b)(1)(B)(i) | Magnetar Structuring Credit Fund, L.P., Magnetar Longhorn Fund, LP, Purpose Alternative Credit Fund – F LLC, Purpose Alternative Credit Fund – T LLC and Magnetar Lake Credit Fund, LLC (such financial institutions in such capacities, the "**Prepetition Lenders**"), and Magnetar Financial LLC, as agent (in such | Proposed Interim Order, Prmbl. |

| SUMMARY OF MATERIAL TERMS | | |
|---|---|---|
| | capacity, the "**Agent**," and together with the Prepetition Lenders, the "**Prepetition Secured Parties**") | |
| **Purposes for Use of Cash Collateral**<br><br>Bankruptcy Rule 4001(b)(1)(B)(ii) | The Prepetition Borrowers have an immediate and critical need to use Cash Collateral to, among other things, pay the costs and expenses associated with administering the Chapter 11 Cases of the Prepetition Borrowers, continue the orderly operation of their business, maximize and preserve their going concern value, make payroll and satisfy other working capital and general corporate purposes, in each case, in accordance with the Budget. Without access to the continued use of Cash Collateral to the extent authorized pursuant to the Proposed Interim Order, the Prepetition Borrowers and their estates would suffer immediate and irreparable harm.  The Prepetition Borrowers do not have sufficient available sources of working capital and financing to operate their businesses or maintain their properties in the ordinary course of business without the authorized use of Cash Collateral. The Prepetition Borrowers require the continued use of Cash Collateral under the terms of the Interim Order to satisfy their postpetition liquidity needs. | Proposed Interim Order at ¶ D. |

| SUMMARY OF MATERIAL TERMS | | |
|---|---|---|
| **Budget**<br><br>Bankruptcy Rule 4001(b)(1)(B)(ii)<br><br>Local Rule 4001-2(a)(i)(E) | The use of proceeds of the Prepetition Collateral (including Cash Collateral), is subject to a 13-week operating budget for the Prepetition Borrowers setting forth the projected financial operations of the Debtors,  substantially in the form of the initial budget annexed to the Proposed Interim Order as Exhibit A (the "**Initial Budget**," and as may be amended and extended from time to time as set forth herein, the "**Budget**") subject to the following permitted variances (collectively, the "**Permitted Variances**"): unless waived in writing by the Agent (i) an unfavorable variance of no more than 20% with respect to cumulative cash receipts on a rolling four (4)-week basis, tested weekly based upon the prior Budget, provided that, in the event any cash receipts budgeted to be received in a cumulative period are not actually received during such period, such cash receipts shall be deemed, for purposes of testing, to have been received during such period if received within one (1)-calendar week after the end of such period, and (ii) an unfavorable variance of no more than 20% with respect to cumulative cash disbursements (other than restructuring professional fees and payments to the U.S. Trustee set forth in the Budget), tested weekly based upon the prior Budget, provided that, in any four (4)-week period that cumulative cash disbursements (other than restructuring professional fees and payments to the U.S. Trustee set forth in the Budget) are less than the budgeted amount for such period, the amount by which cumulative cash disbursements (other than restructuring professional fees and payments to the U.S. Trustee set forth in the Budget) are less may be carried forward and added to the subsequent period. | Proposed Interim Order at ¶ 3(a) |

| SUMMARY OF MATERIAL TERMS | | |
|---|---|---|
| **Duration of Use of Cash Collateral/ Termination Events/ Relief from Stay**<br><br>Bankruptcy Rule 4001(b)(1)(B)(iii)<br><br>Local Rule 4001-2(a)(i)(M) | Notwithstanding anything in the Interim Order to the contrary, the Prepetition Borrowers shall be permitted to use the Cash Collateral pursuant to the Interim Order through the date that is the earliest of:  (a) an Event of Default following the applicable EOD Notice Period, if any; or (b) ninety (90) days after the date of consummation of a sale of substantially all of the Prepetition Borrowers' assets;  or (c) twenty-five (25) days following the occurrence of the effective date of any confirmed plan of reorganization or liquidation in the Chapter 11 Cases of the Prepetition Borrowers (the "**Termination Date**").<br><br>Events of Default.  The Prepetition Borrowers' right, and the right of any other representative of the estates, to use Cash Collateral under this Interim Order shall terminate (other than in respect of the Carve-Out), (i) following ten (10) business days' notice (the "**EOD Notice Period**") from the Prepetition Secured Parties of (a) the Debtors' failure to meet or satisfy any Milestone (as defined herein), unless extended by agreement of the Prepetition Secured Parties or order of this Court, or (b) a final determination by this Court that a material violation or breach (other than by the Prepetition Secured Parties), of any of the provisions of this Interim Order has occurred; or (ii) automatically without further notice or court proceeding following that the occurrence of one or more of the following: (a) the appointment of a chapter 11 trustee or of an examiner with expanded powers in the Chapter 11 Case (having powers beyond those set forth in sections 1106(a)(3) and (4) of the Bankruptcy Code); (b) the conversion of the Chapter 11 Cases of the Prepetition Borrowers to cases under chapter 7 of the Bankruptcy Code; (c) the dismissal of the Chapter 11 Cases of the Prepetition Borrowers; (d) filing of a motion, application or other pleading to obtain postpetition financing that has not been consented to by the Prepetition Secured Parties; (e) entry of an order or a judgment by this Court or any other court staying, reversing, vacating, amending, rescinding or otherwise modifying any of the terms of this Interim Order, or filing of a motion, application or other pleading by the Prepetition Borrowers seeking such entry, in each case without the consent of the Prepetition Secured Parties (each of the items in 13(i) and (ii), an "**Event of Default**," collectively, the "**Events of Default**"). | Proposed Interim Order at ¶ 13, 14 |
| **Carve-Out**<br><br>Bankruptcy Rule 4001(b)(1)(B)(iii)<br><br>Local Rule | Generally.  The Prepetition Secured Liens, the Adequate Protection Liens, and the Section 507(b) Claims (as defined in the Interim Order) of the Prepetition Secured Parties, shall be subject to the payment in full, without duplication, of the following fees and expenses (the | Proposed Interim Order at ¶ 6. |

| SUMMARY OF MATERIAL TERMS | |
|---|---|
| 4001-2(a)(i)(F) | amounts set forth below, together with the limitations set forth therein, as well as any funds in the Professional Fee Reserve (as defined in the Interim Order), collectively, the "**Carve-Out**") from, at the Prepetition Borrowers' discretion, the Cash Collateral or proceeds resulting from liquidation of Prepetition Collateral or Postpetition Collateral:

i.     the fee and expense claims of the respective retained professionals of the Prepetition Borrowers and the Committee, if any, as to matters pertinent to the Prepetition Borrowers, that have been approved by this Court at any time during the Chapter 11 Cases pursuant to sections 330 and 331 of the Bankruptcy Code including any interim approval as set forth in any procedures approved by this Court relating to the interim approval of fees and expenses of the Retained Professionals (this Court approved professionals of the Prepetition Borrowers and any Committee are collectively referred to as the "**Retained Professionals**"), the reasonable expenses of members of the Committee, if any (the "**Committee Member Expenses**," which shall not include legal fees and expenses of Committee members) which were incurred in connection with matters pertinent to the Prepetition Borrowers (A) on and after the Petition Date and before the Carve-Out Trigger Date (defined below), provided that the Carve-Out shall be reduced dollar-for-dollar by any payments of fees and expenses to the applicable Retained Professional, and (B) on and after the Carve-Out Trigger Date in an aggregate amount not exceeding $200,000.00 for all Retained Professionals, to the extent allowed at any time, whether by final order, interim order, procedural order, or otherwise.  On the last business day of each week, the Prepetition Borrowers shall fund a professional fee reserve (the "**Professional Fee Reserve**") in an amount equal to the professional fees for the Retained Professionals as set forth in the Budget for the week then ended that relates solely to the Prepetition Borrowers.   All funds in the Professional Fee Reserve shall be used first to pay the Carve-Out (whether such fees are allowed on an interim or final basis) for allowed fees and expenses of the Retained Professionals, and all Retained Professionals shall have all professional fees and expenses paid from the Professional Fee Reserve prior to seeking payment from any other |

| | | |
|---|---|---|
| **SUMMARY OF MATERIAL TERMS** | | |

| | | |
|---|---|---|
| | Cash Collateral.  If, after payment in full of the Carve-Out for allowed fees and expenses of the Retained Professionals, the Professional Fee Reserve has not been reduced to zero, all remaining funds shall be returned to the Agent on behalf of the Prepetition Secured Parties; | |
| | ii.    the unpaid fees payable to the U.S. Trustee and Clerk of the Bankruptcy Court pursuant to section 1930 of Title 28 of the United States Code plus statutory interest, if any, imposed under 31 U.S.C. § 3717 that relate to the Prepetition Borrowers. There is no limitation on the obligations of the Prepetition Borrowers and their estates with respect to unpaid fees payable to the U.S. Trustee and Clerk of the Bankruptcy Court pursuant to section 1930 of Title 28 of the United States Code. | |
| | iii.    <u>Carve-Out Trigger Date</u>.  As used herein, the term "**Carve-Out Trigger Date**" means the date on which the Prepetition Secured Parties provide written notice to the Prepetition Borrowers, the U.S. Trustee, and counsel to the Committee, if any, that the Carve-Out is invoked, which notice may be delivered only on or after the expiration of the EOD Notice Period (as defined herein) under the Interim Order or upon the Termination Date. | |
| **Proposed Adequate Protection**<br><br>Bankruptcy Rule 4001(b)(1)(B)(iv)<br><br>Local Rules 4001-2(a)(i)(F) 4001-2(a)(i)(G) 4001-2(a)(i)(J) 4001-2(a)(i)(K) 4001-2(a)(i)(N) 4001-2(a)(i)(P) 4001-2(a)(i)(U) | As adequate protection against, and limited to the extent of, any diminution in value of the Prepetition Collateral, the Prepetition Lender and Agent are granted the following under the Proposed Interim Order<br><br><u>Prepetition Secured Party Adequate Protection Liens</u>.  As adequate protection for the Prepetition Secured Parties for the Prepetition Secured Liens, the Agent, in accordance with sections 361 and 363(e) of the Bankruptcy Code, is granted, for the benefit of the Prepetition Secured Parties, additional and replacement valid, binding, enforceable, non-avoidable, and perfected postpetition security interests and liens (the "**Adequate Protection Liens**") upon any and all repaid Servicing Advances (as defined in the Prepetition Credit Agreement)[3](collectively, the "**Postpetition Collateral**"), in each case to secure the Prepetition Secured Obligations against, without duplication, the aggregate Diminution in Value, if any, subsequent to the Petition Date, in the value of the | Proposed Interim Order at ¶ 11. |

---

[3]    "**Servicing Advances**" are defined in the Prepetition Credit Agreement as "the right of any [of the Prepetition Borrowers] to payment, reimbursement or indemnity in respect of any advances made or funded by such [Prepetition Borrower] in respect of Mortgage Loans with respect to which such [Prepetition Borrower] owns the Servicing Rights, whether such advances are made for out of pocket expenses incurred by a servicer, taxes, delinquent payments of principal or interest or other purposes."

| SUMMARY OF MATERIAL TERMS |
| --- |

Prepetition Collateral. The Adequate Protection Liens are subject and subordinate only to (A) the Carve-Out and (B) the Permitted Prior Liens. The Adequate Protection Liens shall not (x) be subject to any lien or security interest that is avoided and preserved for the benefit of the Prepetition Borrowers' estates under section 551 of the Bankruptcy Code, (y) subject to any inter-company claim, whether secured or unsecured, of any Prepetition Borrower or any domestic or foreign subsidiary or affiliate of any Prepetition Borrower, or (z) hereafter be subordinated to or made *pari passu* with any other lien or security interest under sections 361 or 363 of the Bankruptcy Code or otherwise except as expressly provided in the Proposed Interim Order, including, without limitation, with respect to the Carve-Out and Permitted Prior Liens. The Adequate Protection Liens shall be enforceable against and binding upon the Prepetition Borrowers, their estates, and any successors thereto, including, without limitation, any trustee or other estate representative appointed in the Chapter 11 Cases of the Prepetition Borrowers, or any successor cases.

Section 507(b) Claims. Notwithstanding the provision of Adequate Protection under the Proposed Interim Order, the Prepetition Secured Parties and the Agent, for the benefit of the Prepetition Secured Parties, are each granted an allowed administrative expense claim pursuant to section 507(b) of the Bankruptcy Code (each, a "**Section 507(b) Claim**") with super-priority over all other administrative expenses and all other claims against the Prepetition Borrowers or their estates or any kind or nature whatsoever, but in all cases subject and subordinate to the Carve-Out and the Permitted Prior Liens. The Section 507(b) Claims shall be against each Prepetition Borrower on a joint and several basis, and shall be payable from and have recourse to all Prepetition Collateral.

Adequate Protection Payments. The Prepetition Borrowers shall pay in cash (i) upon entry of the Proposed Interim Order, the reasonable and documented fees and expenses of the attorneys and advisors of the Agent (the "**Agent Advisors**") arising under the Prepetition Financing Documents prior to the Petition Date and (ii) the reasonable and documented fees and expenses of the Agent Advisors arising under the Prepetition Financing Documents subsequent to the Petition Date, in all instances subject to the amounts allocated therefor in the Budget (payments under clauses (i) and (ii), collectively, the "**Adequate Protection Payments**"). The Agent Advisors shall not be required to file an application seeking compensation for services or reimbursement of expenses with this Court. The Agent Advisors seeking

| SUMMARY OF MATERIAL TERMS | | |
|---|---|---|
| | compensation for services or reimbursement of expenses under the Prepetition Financing Documents, the Proposed Interim Order or the Final Order shall transmit every two (2) weeks a reasonably detailed invoice (which shall include the total number of hours billed by attorney or other professional but shall not be required to comply with any particular format, and may be in summary form only) to counsel to the Prepetition Borrowers, the U.S. Trustee, and the Committee, if any; *provided* that any such invoice may be reasonably redacted to protect from disclosure any confidential information or information otherwise subject to a protective privilege such as attorney-client privilege or attorney work-product privilege.    The Prepetition Borrowers, U.S. Trustee, and the Committee, if any, shall have ten (10) days in which to raise an objection to the payment of any fees and expenses of such Agent Advisors. Upon the expiration of such ten (10) day period, the Prepetition Borrowers may pay any portion of such fees and expenses to which no objection has been interposed. To the extent any objection has been interposed and cannot be consensually resolved, the dispute will be scheduled for adjudication at the next regularly-scheduled omnibus hearing in the Chapter 11 Cases.  Any and all amounts paid by the Prepetition Borrowers under Paragraph of the Proposed Interim Order are deemed permitted uses of Cash Collateral thereunder.<br><br>Agency Fees.  The Agent shall receive from the Prepetition Borrowers current cash payments of all reasonable and documented prepetition and postpetition fees, including agency fees and administrative fees, and out-of-pocket expenses incurred by and payable to the Agent under the Prepetition Financing Documents (the "**Agency Fees**") as disclosed in the Budget. | |
| **Modification of Stay**<br><br>Bankruptcy Rule 4001(d)(1)(iii) | Modification of Automatic Stay.  The automatic stay under section 362(a) of the Bankruptcy Code is modified as necessary to effectuate all of the terms and provisions of the Proposed Interim Order, including, without limitation, to:  (a) permit the Prepetition Borrowers to grant Adequate Protection as set forth herein; (b) permit the Prepetition Borrowers to perform such acts as reasonably requested by the Prepetition Secured Parties to assure the perfection and priority of the Adequate Protection Liens granted by the Proposed Interim Order; and (c) authorize the Prepetition Borrowers to make, and the Agent to retain and apply, payments in accordance with the terms of the Proposed Interim Order. | Proposed Interim Order at ¶ 12. |
| **Milestones**<br><br>Local Rule | As a condition to the use of Cash Collateral, the Prepetition Borrowers shall comply with the milestones attached hereto as Exhibit B (the "**Milestones**").  For the avoidance | Proposed Interim Order at ¶ 16; Ex. B. |

| SUMMARY OF MATERIAL TERMS | | |
|---|---|---|
| 4001-2(a)(i)(H) | of doubt, the failure of the Debtors to comply with any of the Milestones (a) shall constitute an Event of Default under the Interim Order, (b) subject to the expiration of the Remedies Notice Period, result in the automatic termination of the Debtors' authority to use Cash Collateral under the Interim Order, and (c) permit the Prepetition Secured Parties, subject to the terms of the Interim Order, to exercise the rights and remedies provided for in the Interim Order.<br><br>(i)    On the Petition Date, the Debtors shall have filed a motion seeking approval of the Debtors' use of Cash Collateral.<br><br>(ii)    Within three (3) days of the Petition Date, the Debtors shall have filed a motion (the "**Bid Procedures Motion**") with the Bankruptcy Court to approve bid procedures to determine a winning bidder or bidders for the Debtors' mortgage assets.<br><br>(iii)    Within three (3) days after the Petition Date, the Interim Order authorizing and approving the use of Cash Collateral and the transactions contemplated thereby on an interim basis, shall have been entered by the Bankruptcy Court.<br><br>(iv)    On or before thirty (30) days following the Petition Date, or the first business day thereafter that the Bankruptcy Court is available, an order approving the Bid Procedures Motion (the "**Bid Procedures Order**") shall have been entered by the Bankruptcy Court.<br><br>(v)    On or before thirty (30) days following the Petition Date, or the first business day thereafter that the Bankruptcy Court is available, the Final Order authorizing and approving the use of Cash Collateral and the transactions contemplated thereby on a final basis shall have been entered by the Bankruptcy Court. | |
| **Limitation on Use of Proceeds**<br><br>Local Rule 4001-2(a)(i)(L) | Limitation on Use of Proceeds. Notwithstanding anything in the Proposed Interim Order to the contrary, no portion or proceeds of the Prepetition Collateral, the Cash Collateral, or the Carve-Out, and no disbursements set forth in the Budget shall be used for the payment of professional fees, disbursements, costs, or expenses incurred in connection with:  (a) objecting, contesting or raising any defense to the validity, perfection, priority, or enforceability of, or any amount due under, the Prepetition | Proposed Interim Order at ¶ 10. |

| SUMMARY OF MATERIAL TERMS | | |
|---|---|---|
| | Financing Documents or any security interests, liens or claims granted under the Proposed Interim Order or the Prepetition Financing Documents to secure such amounts; (b) asserting any Challenges, claims, actions, or causes of action, including any Avoidance Actions, against any of the Prepetition Secured Parties or any of their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys, or advisors; or (c) contesting the Prepetition Lien and Claim Matters; *provided* that no more than $25,000 in the aggregate of the proceeds of the Postpetition Collateral, Prepetition Collateral, the Cash Collateral, and the Carve-Out may be used by the Committee, if any, solely to investigate (but not prosecute or Challenge) Prepetition Lien and Claim Matters | |
| **Stipulations**<br><br>Local Rule 4001-2(a)(i)(Q) | *Prepetition Secured Obligations.* As of the Petition Date, the Prepetition Borrowers were indebted and liable, to the Prepetition Secured Parties under the Prepetition Financing Documents, for (a) an aggregate amount, including secured PIK interest at a rate of 6%, of $27,239,166.74 and (b) accrued and unpaid interest, fees (including, without limitation, Agency Fees (as defined herein)), and costs, expenses (including any attorneys' and financial advisors' fees), charges, indemnities, and all other obligations incurred or accrued with respect to the foregoing pursuant to, and in accordance with, the Prepetition Financing Documents (collectively, the "**Prepetition Secured Obligations**.")<br><br>*Liens and Collateral.* Each Prepetition Borrower granted to the benefit of the Prepetition Secured Parties, to secure the Prepetition Secured Obligations, Prepetition Secured Liens on the Collateral (as defined in the Prepetition Credit Agreement), including assets of the Prepetition Borrowers as more fully described in the Prepetition Financing Documents, including all of the Prepetition Borrowers' right, title, and interest in the Collateral (such collateral, collectively, the "**Prepetition Collateral**"), and, as of the Petition Date, such Prepetition Secured Liens were senior in priority over any and all other liens on the Prepetition Collateral, subject only to liens senior by operation of law or otherwise permitted by the Prepetition Financing Documents (solely to the extent any such permitted liens were valid, properly perfected, non-avoidable, and senior in priority to the Prepetition Secured Liens as of the Petition Date, or valid, non-avoidable, senior priority liens in existence as of the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code, collectively, the "**Permitted Prior Liens**"). For the avoidance of doubt, any and all of the Prepetition Borrowers' cash, whether existing as of the Petition Date or thereafter, wherever | Proposed Interim Order at ¶ C. |

| SUMMARY OF MATERIAL TERMS | | |
|---|---|---|
| | located, constitutes Cash Collateral of the Prepetition Secured Parties within the meaning of section 363(a) of the Bankruptcy Code (including, without limitation, cash or cash equivalents generated by the sale or other disposition of Prepetition Collateral or on deposit or maintained by the Prepetition Borrowers in any account or accounts over which the Prepetition Secured Parties have control, and all income, proceeds, products, rents, or profits of any Prepetition Collateral). | |
| | *Validity of Prepetition Secured Liens and Prepetition Secured Obligations.*  The Prepetition Secured Liens are (a) valid, binding, perfected, duly recorded, and enforceable liens on, and security interests in, the Prepetition Collateral, and (b) not subject to, pursuant to the Bankruptcy Code or other applicable law (foreign or domestic), avoidance, disallowance, reduction, recharacterization, recovery, subordination (whether equitable, contractual, or otherwise), attachment, set-off, offset, recoupment, counterclaim, defense, "claim" (as defined in the Bankruptcy Code), impairment, or any other challenge of any kind by any person or entity. | |
| | *Adequate Protection for the Prepetition Secured Parties.*  The Prepetition Secured Parties are entitled to receive adequate protection pursuant to sections 361, 362, and 363 of the Bankruptcy Code for any diminution in the value, from and after the Petition Date, of their interests in the Prepetition Collateral (including the Cash Collateral) to the fullest extent permitted under the Bankruptcy Code (each such diminution value, a "**Diminution in Value**"). | |
| **Challenge Period**  Local Rule 4001-2(a)(i)(Q) | The admissions and stipulations set forth in Paragraph C of the Interim Order (collectively, the "**Prepetition Lien and Claim Matters**") are and shall be binding on the Prepetition Borrowers, their estates, and any successors thereto, any subsequent trustee (including any chapter 7 trustee), responsible person, examiner with expanded powers, any other estate representative, and all parties-in-interest and all of their successors-in-interest and assigns, including, without limitation, the Committee, if any, *unless*, and solely to the extent that, a party-in-interest with standing and requisite authority (i) has timely filed the appropriate pleadings, and timely commenced the appropriate proceeding required under the Bankruptcy Code and Bankruptcy Rules, including, without limitation, as required pursuant to Part VII of the Bankruptcy Rules challenging the Prepetition Lien and Claim Matters (each such proceeding or appropriate pleading commencing a proceeding or other contested matter, a "**Challenge**") within 75 days from entry of the Interim Order (the | Proposed Interim Order at ¶ 9. |

| SUMMARY OF MATERIAL TERMS | | |
|---|---|---|
| | "**Challenge Deadline**"), as such date may be extended in writing from time to time in the reasonable discretion of the Prepetition Secured Parties or by this Court for good cause shown pursuant to an application filed by a party in interest prior to the expiration of the Challenge Deadline, and (ii) this Court enters judgment in favor of the plaintiff or movant in any such timely and properly commenced Challenge proceeding and any such judgment has become a final judgment that is not subject to any further review or appeal; provided, that the timely filing of a motion seeking standing to file a Challenge before the Challenge Deadline, which attaches a draft complaint setting forth the legal and factual bases of the proposed Challenge, shall toll the Challenge Deadline only as to the party that timely filed such standing motion until such motion is resolved or adjudicated by the Court.  If a chapter 7 trustee or a chapter 11 trustee is appointed or elected prior to the expiration of the Challenge Deadline, then the Challenge Deadline with respect to such trustee only, shall be the later of (i) the Challenge Deadline and (ii) the date that is twenty (20) calendar days after the date on which such trustee is appointed or elected. | |
| **Waiver of 506(c) surcharge**<br><br>Local Rule 4001-2(a)(i)(V) | Waiver of Right to Surcharge.  Subject to entry of the Final Order, in light of (a) the consent of the Prepetition Secured Parties to the current payment of administrative expenses of the Prepetition Borrowers' estates in accordance with the Budget, (b) the agreement of the Prepetition Secured Parties to permit the Prepetition Secured Liens, the Adequate Protection Liens, and Section 507(b) Claims to be subordinated to the Carve-Out to the extent related to the Prepetition Borrowers' proportionate share of the Carve-Out, and (c) the agreement of the Prepetition Secured Parties to permit the use of Cash Collateral for payments made in accordance with the Budget as it related to the Prepetition Borrowers only, the Prepetition Secured Parties are, subject to entry of the Final Order, entitled to a waiver of (i) the provisions of section 506(c) of the Bankruptcy Code and (ii) any "equities of the case" claims or other claims under sections 105(a) or 552(b) of the Bankruptcy Code.  Upon entry of the Final Order, no costs or expenses of administration or other charge, lien, assessment, or claim incurred at any time (including, without limitation, any expenses set forth in the Budget) by any Prepetition Borrower or any other person or entity shall be imposed or charged against any or all of the Postpetition Collateral, the Prepetition Collateral, and the Prepetition Secured Parties or their claims or recoveries under the Bankruptcy Code, including sections 506(c) or 552(b) thereof, otherwise, and the Prepetition Borrowers, on behalf of their estates, waive any such rights. | Proposed Interim Order at ¶ 7. |

| SUMMARY OF MATERIAL TERMS | | |
|---|---|---|
| **Waiver of "equities of the case" doctrine** <br><br> Local Rule 4001-2(a)(i)(W) | See "Waiver of 506(c) surcharge" above. | Proposed Interim Order at ¶ 7. |
| **Waiver of Marshalling** <br><br> Local Rule 4001-2(a)(i)(X) | N.A. | N/A |

## BASIS FOR RELIEF

**I.      The Prepetition Borrowers' Use of Cash Collateral and Prepetition Collateral Is Necessary**

12.      Section 363(c)(2) of the Bankruptcy Code provides that a debtor may not use cash collateral unless "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2).  Further, section 363(e) of the Bankruptcy Code provides, in pertinent part, that "on request of an entity that has an interest in property . . . proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e).  Examples of adequate protection are provided in section 361 of the Bankruptcy Code and include, but are not limited to:  (a) lump sum or periodic cash payments to the extent that such use will result in a decrease in value of such entity's interest in the property; (b) provisions for an additional or replacement lien to the extent that the use of the property will cause a decrease in the value of such entity's interest in the property; and (c) such other relief as will result in the realization by the entity of the indubitable equivalent of such entity's interest in the property.  11 U.S.C. § 361.

13.      It is well-established that a bankruptcy court should, whenever possible, resolve issues in favor of allowing a debtor to continue its business as a going concern.  Courts

have recognized that "[a] debtor, attempting to reorganize a business under Chapter 11, clearly has a compelling need to use 'cash collateral' in its effort to rebuild. Without the availability of cash to meet daily operating expenses . . . the congressional policy favoring rehabilitation over economic failure would be frustrated." *Chrysler Credit Corp. v. Ruggiere* (*In re George Ruggiere Chrysler-Plymouth, Inc.*), 727 F.2d 1017, 1019 (11th Cir. 1984); *see also N.L.R.B. v. Bildisco and Bildisco*, 465 U.S. 513, 528 (1984) ("The fundamental purpose of reorganization is to prevent a debtor from going into liquidation, with an attendant loss of jobs and possible misuse of economic resources.").

14.     Accordingly, courts regularly authorize the use of cash collateral to enhance or preserve the debtor's going concern value. *See, e.g.*, *In re 495 Cent. Park Ave. Corp.*, 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992) ("[T]here is no question that the property would be improved by the proposed renovations and that an increase in value will result. In effect, a substitution occurs in that the money spent for improvements will be transferred into value. This value will serve as adequate protection for [the creditor's] secured claim.").

15.     It is essential to the Debtors' sale and chapter 11 efforts and the preservation of going concern value that they have sufficient funds to operate in the ordinary course and at a level that is on par or as close as possible to prepetition performance. Absent the use of Cash Collateral and Prepetition Collateral, the Prepetition Borrowers will not have sufficient working capital to: (a) make payments to employees, vendors, or publishers; (b) satisfy operating costs; and (c) fund the administrative costs of these chapter 11 cases. The ability to satisfy these expenses when due is essential to avoid immediate and irreparable harm to the Debtors' estates. In the normal course of business, the Prepetition Borrowers use cash on hand and cash flow from operations and other sources to fund working capital and capital expenditures, and operate and

maintain their business.  Absent immediate access, the Prepetition Borrowers will not have adequate unencumbered cash on hand to pay these critical expenses.

16.     The Prepetition Secured Parties assert that the cash received by the Prepetition Borrowers generated from the operation of their business in the ordinary course constitutes Cash Collateral and Prepetition Collateral.  The Prepetition Borrowers' use of the Cash Collateral and Prepetition Collateral is necessary to maintain and maximize the value of the Debtors' assets during the pendency of these chapter 11 cases.  To that end, the Prepetition Borrowers and the Prepetition Secured Parties have negotiated the Proposed Interim Order to provide the Prepetition Borrowers with the consensual use of Cash Collateral and Prepetition Collateral.  Absent the use of Cash Collateral and Prepetition Collateral, the Prepetition Borrowers will be unable to operate their business in a manner necessary to maintain and maximize the value of their assets pending the anticipated sale process.  Simply stated, without the use of the Cash Collateral and Prepetition Collateral as requested by this Motion, the Debtors will suffer immediate and irreparable harm, their business operations will cease, and the operational value of the business will not be realized.

## II.      The Proposed Adequate Protection Is Reasonable and Appropriate

17.     Courts have found a secured creditor adequately protected where either a sufficient equity cushion in the collateral exists to protect the secured creditor, or the level of the secured creditor's collateral is not decreasing over time.  *In re Dynaco Corp.*, 162 B.R. 389, 394 (Bankr. D. N.H. 1993) (secured creditor was adequately protected and debtor was authorized to use cash collateral where level of collateral was not declining).  *In re May*, 169 B.R. 462 (Bankr. S.D. Ga. 1994) (equity cushion in property may provide creditor with adequate protection of its interest, sufficient to permit the debtor to use cash collateral).  *In re Southwest Assocs.*, 140 B.R.

360 (Bankr. S.D.N.Y. 1992) (same).    Even in those instances where its equity cushion is fluctuating, a secured creditor is adequately protected so long as an adequate cushion remains over and above its secured claim.  *Dynaco Corp.*, 162 B.R. at 394 (Bankr. D. N.H. 1993).

18.    In *Swedeland*, the Third Circuit pointedly noted that the purpose of adequate protection "is to insure that the creditor receives the value for which he bargained prebankruptcy." *In re Swedeland Dev. Grp., Inc.*, 16 F.3d at 564 (quoting *In re O'Connor*, 808 F.2d 1393, 1396 (10th Cir. 1987)); *see also Shaw Indus., Inc. v. First Nat'l Bank of Pa.* (*In re Shaw Indus., Inc.*), 300 B.R. 861, 865 (Bankr. W.D. Pa. 2003) ("The purpose of providing 'adequate protection' is to insure that a secured creditor receives in value essentially what he bargained for."); *In re Beker Indus. Corp.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986) (noting that the application of adequate protection "is left to the vagaries of each case, but its focus is protection of the secured creditor from diminution in the value of its collateral during the reorganization process") (citation omitted), *rev'd on other grounds*, 89 B.R. 336 (S.D.N.Y. 1988).  The Third Circuit has held that adequacy, "depends directly on how effectively it compensates the secured creditor for loss of value" caused by the priming lien granted to the new lender.  *In re Swedeland Dev. Grp., Inc.*, 16 F.3d at 564 (quoting *In re Am. Mariner Inds., Inc.*, 734 F.2d 426, 432 (9th Cir. 1984)).

19.    Nevertheless, adequate protection must be determined on a case-by-case basis, in light of the particular facts and circumstances presented, the focus being that which is required to protect a secured creditor from diminution in the value of its interest in the particular collateral during the use period.  *See In re Ledgmere Land Corp.*,116 B.R. 338, 343 (Bankr. D. Mass. 1990); *Delbridge v. Production Credit Assoc. & Federal Land Bank*, 104 B.R. 824, 827 (E.D. Mich. 1989); *In re Kain*, 86 B.R. 506, 513 (Bankr. W.D. Mich. 1988); *In re Beker Indus. Corp.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986).

20.     As more fully set forth in the Proposed Interim Order, as adequate protection for the use of Cash Collateral and Prepetition Collateral, the Prepetition Borrowers propose providing the Prepetition Secured Parties with, among other things: (a) perfected security interests, replacement liens, and superpriority administrative claims, upon all Prepetition Collateral and Postpetition Collateral, for any diminution in value of the Prepetition Collateral; (b) payment of certain reasonable and necessary pre and postpetition Agent Advisors' fees and expenses incurred by the Prepetition Secured Parties; and (c) payment of certain reasonable and necessary pre and postpetition fees and expenses incurred by the Agent.  The terms and conditions on which the Prepetition Borrowers may use Cash Collateral and Prepetition Collateral have been carefully designed to meet the dual goals of sections 361 and 363 of the Bankruptcy Code.  If the Proposed Interim Order is entered, the Prepetition Borrowers will have working capital to operate their business and thus, maximize the value of the assets for the benefit of their stakeholders.  At the same time, the Prepetition Secured Parties will be adequately protected in a manner that it has agreed to for consenting to Prepetition Borrowers' use of Cash Collateral and Prepetition Collateral.  Therefore, the Debtors respectfully submit that the use of Cash Collateral and Prepetition Collateral on the terms set forth in the attached Proposed Interim Order provides the Prepetition Secured Parties with adequate protection and is in the best interest of the Debtors, their estates, their creditors, and all parties in interest and therefore should be authorized by the Court.

## III.     The Scope of the Proposed Carve-Out Is Reasonable and Appropriate

21.     The adequate protections are subject to the Carve-Out.  Without the Carve-Out, the Debtors and other parties in interest may be deprived of certain rights and powers because the services for which such professionals may be paid in these chapter 11 cases would be restricted.  *See, e.g.*, *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) (observing that

courts insist on carve-outs for professionals representing parties in interest because "[a]bsent such protection, the collective rights and expectations of all parties-in-interest are sorely prejudiced"). The Carve-Out does not directly or indirectly deprive the Debtors' estates or other parties in interest of possible rights and powers.  Additionally, the Carve-Out protects against administrative insolvency during the course of these chapter 11 cases by ensuring that assets remain for payment of the Clerk of the Court, U.S. Trustee fees, and professional fees of the Debtors and any statutory committee.

## IV.    Interim Relief Should Be Granted

22.    Bankruptcy Rule 4001(b) permits a court to approve a debtor's request for use of cash collateral during the 14-day period following the filing of a motion requesting authorization to use cash collateral, "only . . . as is necessary to avoid immediate and irreparable harm to the estate pending a final hearing."  Bankruptcy Rule 4001(b)(2).  In examining requests for interim relief under this rule, courts apply the same business judgment standard applicable to other business decisions.  *See, e.g., In re Simasko Production Co.*, 47 B.R. 444, 449 (D. Co. 1985), 47 B.R. at 449; *see also In re Ames Dep't Stores Inc.*, 115 B.R. 34, 38 (Bank S.D.N.Y. 1990) 115 B.R. at 38.  After the 14-day period, the request for use of cash collateral is not limited to those amounts necessary to prevent destruction of the debtor's business.  A debtor is entitled to use cash collateral that it believes prudent in the operation of its business.  *See, e.g., Simasko*, 47 B.R. at 449; *Ames Dep't Stores*, 115 B.R. at 36.

23.    As set forth above, pending the Final Hearing, the Prepetition Borrowers require immediate access to Cash Collateral and Prepetition Collateral to satisfy the day-to-day needs of the Prepetition Borrowers' business operations.  Access to liquidity will address any concerns regarding the Debtors' financial health and ability to continue operations in light of these

chapter 11 cases.  The Prepetition Borrowers have an immediate need for liquidity to, among other things, maintain business relationships with their vendors and suppliers, pay payroll and certain benefits, and satisfy other essential working capital and operational needs, all of which are required to preserve and maintain the Debtors' going concern value for the benefit of all parties in interest. In addition, the Budget establishes that the Prepetition Borrowers' use of Cash Collateral and Prepetition Collateral will not prejudice the Prepetition Secured Parties.

**V.       The Automatic Stay Should Be Modified on a Limited Basis**

24.     The relief requested herein contemplates a modification of the automatic stay solely to permit the Prepetition Secured Parties to deliver written notice by electronic mail stating that the Prepetition Secured Parties elect to commence the exercise of rights and remedies with respect of the Proposed Interim Order and the Prepetition Financing Documents, and under applicable bankruptcy and non-bankruptcy law, including, without limitation, in respect of its Prepetition Collateral and its Adequate Protection Liens.  Stay modifications of this kind are ordinary and standard features for the use of cash collateral, and in the Debtors' business judgment, are reasonable and fair under the circumstances.

**BANKRUPTCY RULE 4001(a)(3) SHOULD BE WAIVED**

25.     The Debtors request a waiver of the stay of the effectiveness of the order approving this Motion under Bankruptcy Rule 4001(a)(3). Bankruptcy Rule 4001(a)(3) provides, "[a]n order granting a motion for relief from an automatic stay made in accordance with Rule 4001(a)(1) is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  As explained above and in the First Day Declaration, the use of Cash Collateral and Prepetition Collateral is essential to prevent irreparable damage to the Debtor's operations. Accordingly, ample cause exists to justify the waiver of the fourteen-day stay imposed by Bankruptcy Rule 4001(a)(3), to the extent such stay applies.

## REQUEST FOR FINAL HEARING

26.    Pursuant to Bankruptcy Rule 4001(b)(2), the Debtors request the Court to set a date for the Final Hearing.

## IMMEDIATE RELIEF IS NECESSARY

27.    Pursuant to Bankruptcy Rule 6003(b), any motion seeking to use property of the estate pursuant to section 363 of the Bankruptcy Code or to satisfy prepetition claims within twenty-one (21) days of the Petition Date requires the Debtors to demonstrate that such relief "is necessary to avoid immediate and irreparable harm."  Fed. R. Bankr. P. 6003.  As described above, without access to Cash Collateral and Prepetition Collateral, the Prepetition Borrowers would be unable to operate their business and fund these chapter 11 cases.

28.    For this reason and those set forth above, the Debtors respectfully submit that Bankruptcy Rule 6003(b) has been satisfied, and the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates.

## WAIVER OF STAY UNDER BANKRUPTCY RULE 6004(h)

29.    Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 6004(h).  As provided herein, and to implement the foregoing successfully, the Debtors request that the Proposed Interim Order include a finding that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

30.    For this reason and those set forth above, the Debtors submit that ample cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent applicable to the Proposed Interim Order.

## **RESERVATION OF RIGHTS**

31.     Nothing in the Proposed Orders or this Motion:  (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors and their estates; (b) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors and their estates with respect to the validity, priority, or amount of any claim against the Debtors and their estates; or (c) shall be construed as a promise to pay a claim.

## **NOTICE**

32.     Notice of this Motion has been provided to:  (a) the Office of the United States Trustee for the District of Delaware; (b) the Debtors' thirty (30) largest unsecured creditors; (c) counsel to the Agent; (e) the Internal Revenue Service; (f) the Securities and Exchange Commission; (g) the Office of the United States Attorney for the District of Delaware; (h) all other known parties with liens of record on assets of the Debtors as of the Petition Date; and (i) all parties that have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002.  Notice of this Motion and any order entered hereon will be served in accordance with Local Rule 9013-1(m).  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.


[*Remainder of Page Intentionally Left Blank*]

## CONCLUSION

WHEREFORE, the Debtors request entry of the Proposed Orders, granting the

relief requested herein and such other and further relief as is just and proper.

Dated: June 26, 2023

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ Joseph Barry*
Joseph Barry (Del. Bar No. 4221)
Ryan M. Bartley (Del. Bar No. 4985)
S. Alexander Faris (Del. Bar No. 6278)
Shella Borovinskaya (Del. Bar No. 6758)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253
Email:  jbarry@ycst.com
          rbartley@ycst.com
          ejustison@ycst.com
          afaris@ycst.com
          sborovinskaya@ycst.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

**KRAMER LEVIN NAFTALIS & FRANKEL LLP**
P. Bradley O'Neill (*pro hac vice* pending)
Caroline Gange (*pro hac vice* pending)
1177 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 715-9511
Facsimile:  (212) 715-8000
Email:  boneill@kramerlevin.com
          cgange@kramerlevin.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

**EXHIBIT A**

**Proposed Interim Order**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Peer Street, Inc., *et al.*,[1] | Case No. 23-10815 (___) |
| Debtors. | (Jointly Administered) |

## INTERIM ORDER (A) AUTHORIZING THE
## PREPETITION BORROWERS' USE OF CASH COLLATERAL; (B) GRANTING
## ADEQUATE PROTECTION TO THE PREPETITION SECURED PARTIES;
## (C) SCHEDULING A FINAL HEARING; AND (D) GRANTING RELATED RELIEF

Upon consideration of the motion (the "**Motion**") of the above-captioned debtors and debtors-in-possession Peer Street, Inc., PS Funding, Inc. and PeerStreet Licensing, Inc. (collectively, the "**Prepetition Borrowers**," and together with the other above-captioned debtors and debtors-in-possession, the "**Debtors**")[2] in the above-referenced chapter 11 cases (the "**Chapter 11 Cases**"), for entry of an interim order (this "**Interim Order**") and a final order ("**Final Order**"), pursuant to sections 105, 361, 362, 363, 506(c), and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (as amended, the "**Bankruptcy Code**"), Rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "**Bankruptcy Rules**"), and Rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), seeking, *inter alia*:

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of their respective federal tax identification numbers, are:  Peer Street, Inc. (8584); PS Funding, Inc. (3268); PeerStreet Licensing, Inc. (9435); Peer Street Opportunity Fund GP, LLC (8491); Peer Street Funding LLC (9485); PSF REO LLC (1013); PS Options LLC (8584); PS Warehouse, LLC (5663); PS Warehouse II, LLC (9252); Peer Street Opportunity Investors II, LP (1586); PS Portfolio-ST1, LLC (1868); PSF Ohio, LLC (9485); PSF TX 1, LLC (9485); PSF TX 2, LLC (2415); PSF TX 4 LLC (9485).  The Debtors' service address is c/o Province, LLC 2360 Corporate Circle, Suite 340, Henderson, NV 89074, Attn:  David Dunn, Chief Restructuring Officer.

[2]    The use of Cash Collateral pursuant to this Interim Order is limited to Debtors Peer Street, Inc., PS Funding, Inc. and PeerStreet Licensing, Inc.

{01435726.v3 }

a. authorization for Prepetition Borrowers, pursuant to sections 105, 361, 362, 363, and 507 of the Bankruptcy Code to use cash collateral, as such term is defined in section 363(a) of the Bankruptcy Code ("**Cash Collateral**"), and all other Prepetition Collateral (as defined herein), in accordance with the terms of this Interim Order and the Budget (as defined herein), as provided herein;

b. to, subject to the Carve-Out (as defined herein) and any Permitted Prior Liens (as defined herein), provide Adequate Protection (as defined herein) of the liens and security interests (such liens and security interests, the "**Prepetition Secured Liens**") of the Prepetition Lenders (as defined below) under that certain Credit Agreement, dated as of October 12, 2021 (and as the same may be further amended, restated, amended and restated, supplemented or otherwise modified from time to time, the "**Prepetition Credit Agreement**," and together with all other related documents, guarantees, and agreements, including, without limitation, security agreements, mortgages, pledge agreements, assignments, financing statements, and other agreements, documents, instruments or certificates executed in connection with the Prepetition Credit Agreement, including, but not limited to, those certain Promissory Notes dated October 12, 2021 and that certain Pledge and Security Agreement dated October 12, 2021, collectively, the "**Prepetition Financing Documents**"), by and among the Prepetition Borrowers, Magnetar Structuring Credit Fund, L.P., Magnetar Longhorn Fund, LP, Purpose Alternative Credit Fund – F LLC, Purpose Alternative Credit Fund – T LLC and Magnetar Lake Credit Fund, LLC (such financial institutions in such capacities, the "**Prepetition Lenders**"), and Magnetar Financial LLC, as agent (in such capacity, the "**Agent**," and together with the Prepetition Lenders, the "**Prepetition Secured Parties**"), on the terms as more fully set forth in this Interim Order;

c. that this Court hold an interim hearing (the "**Interim Hearing**") to consider the relief sought in the Motion and entry of this Interim Order;

d. that this Court schedule a final hearing (the "**Final Hearing**") to consider entry of the Final Order granting the relief requested in the Motion on a final basis; and

e. waiver of any applicable stay with respect to the effectiveness and enforceability of this Interim Order or the Final Order (including a waiver pursuant to Bankruptcy Rule 6004(h)).

and the Interim Hearing having been held by this Court on June [___], 2023; and pursuant to

Bankruptcy Rule 4001 and Local Rule 4001-2, due and sufficient notice of the Motion and the

relief sought at the Interim Hearing having been given under the particular circumstances by the Debtors; this Court having considered the Motion and all pleadings related thereto, including the record made by the Debtors at the Interim Hearing; and all objections, if any, to the relief requested in the Motion on an interim basis having been withdrawn, resolved, or overruled by this Court; and after due deliberation and consideration, and good and sufficient cause appearing therefor:

**THIS COURT HEREBY FINDS AS FOLLOWS:**

A.  On June 26, 2023 (the "**Petition Date**"), each Debtor filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are continuing to operate their respective businesses and manage their respective properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

B.  No official committee of unsecured creditors ("**Committee**"), as provided for under section 1102 of the Bankruptcy Code, has been appointed in the Chapter 11 Cases.

C.  In requesting the use of Cash Collateral, and in exchange for and as a material inducement to the consent of the Prepetition Secured Parties to the use of their Cash Collateral, subject to Paragraph 9 below, the Prepetition Borrowers, for themselves, their estates, and all representatives of such estates, acknowledge, admit, stipulate, and agree that:

(1)     *Prepetition Secured Obligations*.  As of the Petition Date, the Prepetition Borrowers were indebted and liable, to the Prepetition Secured Parties under the Prepetition Financing Documents, for (a) an aggregate amount, including secured PIK interest at a rate of 6%, of $27,239,166.74 and (b) accrued and unpaid interest, fees (including, without limitation, Agency Fees (as defined herein)), and costs, expenses (including any attorneys' and financial advisors' fees), charges, indemnities, and all other obligations incurred or accrued with

respect to the foregoing pursuant to, and in accordance with, the Prepetition Financing Documents (collectively, the "**Prepetition Secured Obligations**.")

(2)      *Liens and Collateral*.  Each Prepetition Borrower granted to the Agent, for the benefit of the Prepetition Secured Parties, to secure the Prepetition Secured Obligations, Prepetition Secured Liens on the Collateral (as defined in the Prepetition Credit Agreement), including assets of the Prepetition Borrowers as more fully described in the Prepetition Financing Documents, including all of the Prepetition Borrowers' right, title, and interest in the Collateral (such collateral, collectively, the "**Prepetition Collateral**"), and, as of the Petition Date, such Prepetition Secured Liens were senior in priority over any and all other liens on the Prepetition Collateral, subject only to liens senior by operation of law or otherwise permitted by the Prepetition Financing Documents (solely to the extent any such permitted liens were valid, properly perfected, non-avoidable, and senior in priority to the Prepetition Secured Liens as of the Petition Date, or valid, non-avoidable, senior priority liens in existence as of the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code, collectively, the "**Permitted Prior Liens**").  For the avoidance of doubt, any and all of the Prepetition Borrowers' cash, whether existing as of the Petition Date or thereafter, wherever located, constitutes Cash Collateral of the Prepetition Secured Parties within the meaning of section 363(a) of the Bankruptcy Code (including, without limitation, cash or cash equivalents generated by the sale or other disposition of Prepetition Collateral or on deposit or maintained by the Prepetition Borrowers in any account or accounts over which the Prepetition Secured Parties have control, and all income, proceeds, products, rents, or profits of any Prepetition Collateral).

(3)      *Validity of Prepetition Secured Liens and Prepetition Secured Obligations*.  The Prepetition Secured Liens are (a) valid, binding, perfected, duly recorded, and

30192987.8

enforceable liens on, and security interests in, the Prepetition Collateral, and (b) not subject to, pursuant to the Bankruptcy Code or other applicable law (foreign or domestic), avoidance, disallowance, reduction, recharacterization, recovery, subordination (whether equitable, contractual, or otherwise), attachment, set-off, offset, recoupment, counterclaim, defense, "claim" (as defined in the Bankruptcy Code), impairment, or any other challenge of any kind by any person or entity.

(4)    *Adequate Protection for the Prepetition Secured Parties*.    The Prepetition Secured Parties are entitled to receive adequate protection pursuant to sections 361, 362, and 363 of the Bankruptcy Code for any diminution in the value, from and after the Petition Date, of their interests in the Prepetition Collateral (including the Cash Collateral) to the fullest extent permitted under the Bankruptcy Code (each such diminution value, a "**Diminution in Value**").

D. The Prepetition Borrowers have an immediate and critical need to use Cash Collateral to, among other things, pay the costs and expenses associated with administering the Chapter 11 Cases of the Prepetition Borrowers, continue the orderly operation of their business, maximize and preserve their going concern value, make payroll and satisfy other working capital and general corporate purposes, in each case, in accordance with the Budget.  Without access to the continued use of Cash Collateral to the extent authorized pursuant to this Interim Order, the Prepetition Borrowers and their estates would suffer immediate and irreparable harm.  The Prepetition Borrowers do not have sufficient available sources of working capital and financing to operate their businesses or maintain their properties in the ordinary course of business without the authorized use of Cash Collateral.  The Prepetition Borrowers require the continued use of Cash Collateral under the terms of this Interim Order to satisfy their postpetition liquidity needs.

E.  The Prepetition Secured Parties have consented to the Prepetition Borrowers' use of Cash Collateral solely on the terms and conditions set forth in this Interim Order. Accordingly, after considering all of their practical alternatives, the Prepetition Borrowers have concluded, in an exercise of their sound business judgment, that the consensual use of Cash Collateral represents the best source of funding currently available to the Prepetition Borrowers.

F.  Furthermore, the Prepetition Secured Parties agree that the Adequate Protection granted to the Prepetition Secured Parties in this Interim Order is reasonable and calculated to protect the interests of the Prepetition Secured Parties.

G.  Good cause has been shown for immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2) and Local Rule 4001-2(b).   In particular, the authorization granted herein for the Prepetition Borrowers to continue using the Prepetition Collateral, including Cash Collateral, is necessary to avoid immediate and irreparable harm to the Debtors and their estates.  Entry of this Interim Order is in the best interest of the Debtors, their estates, and their creditors.  The terms of the Prepetition Borrowers' continued use of the Prepetition Collateral (including Cash Collateral), the terms of Adequate Protection to be granted to the Prepetition Secured Parties hereunder, and the Cash Collateral arrangements described herein pursuant to this Interim Order are fair and reasonable under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration for the Prepetition Secured Parties' consent thereto.

H.  The Prepetition Borrowers and the Prepetition Secured Parties have negotiated the terms and conditions of the Prepetition Borrowers' continued use of the Prepetition Collateral (including Cash Collateral) as contemplated by this Interim Order in good faith and at arm's length,

30192987.8

and the Prepetition Secured Parties' consent to the Prepetition Borrowers' use of Cash Collateral shall be deemed to have been made in "good faith" within the meaning of section 364(e) of the Bankruptcy Code.

I.    Based on the foregoing, and upon the record made before this Court at the Interim Hearing, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**[3]

1.    <u>Jurisdiction and Venue</u>.  Consideration of the Motion constitutes a "core-proceeding" as defined in 28 U.S.C. § 157(b)(2).  This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334.  Venue for the Chapter 11 Cases and the proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2.    <u>Notice</u>.  On the Petition Date, the Prepetition Borrowers filed the Motion with this Court and pursuant to Bankruptcy Rules 2002, 4001, and 9014, and the Local Bankruptcy Rules of this Court, the Debtors provided notice of the Motion and the Interim Hearing by electronic mail, facsimile, hand delivery, or overnight delivery to the following parties and/or to their counsel as indicated below:  (a) the Office of the United States Trustee for this District (the "**U.S. Trustee**"); (b) the Debtors' thirty (30) largest unsecured creditors on a consolidated basis; (c) counsel to the Agent; (d) all other known parties with liens of record on assets of the Debtors as of the Petition Date; (e) the local office for the Internal Revenue Service; and (f) any party having filed requests for notice in the Chapter 11 Cases (collectively, the "**Notice Parties**").  Given

---

[3]    Pursuant to Bankruptcy Rule 7052, findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact.

30192987.8

the nature of the relief sought in the Motion, the form, scope, and timing of the foregoing notice was sufficient and adequate under the circumstances and complies with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable law, and no further notice relating to the Interim Hearing or Motion is necessary or required.

    3. <u>The Budget</u>.

    (a) The use of proceeds of the Prepetition Collateral (including Cash Collateral), is subject to a 13-week operating budget for the Prepetition Borrowers setting forth the projected financial operations of the Debtors,[4] substantially in the form of the initial budget annexed hereto as <u>Exhibit A</u> (the "**Initial Budget**," and as may be amended and extended from time to time as set forth herein, the "**Budget**") subject to the following permitted variances (collectively, the "**Permitted Variances**"):  unless waived in writing by the Agent (i) an unfavorable variance of no more than 20% with respect to cumulative cash receipts on a rolling four (4)-week basis, tested weekly based upon the prior Budget, provided that, in the event any cash receipts budgeted to be received in a cumulative period are not actually received during such period, such cash receipts shall be deemed, for purposes of testing, to have been received during such period if received within one (1)-calendar week after the end of such period, and (ii) an unfavorable variance of no more than 20% with respect to cumulative cash disbursements (other than restructuring professional fees and payments to the U.S. Trustee set forth in the Budget), tested weekly based upon the prior Budget, provided that, in any four (4)-week period that cumulative cash disbursements (other than restructuring professional fees and payments to the U.S.

---

[4] While the Initial Budget, Budget and Updated Budget will reflect the cash sources and uses for all of the Debtors for illustrative and informational purposes, the use of Cash Collateral approved herein is limited to those portions of the Initial Budget, Budget and/or Updated Budget relating solely to the Prepetition Borrowers and not the other Debtors.

30192987.8

Trustee set forth in the Budget) are less than the budgeted amount for such period, the amount by which cumulative cash disbursements (other than restructuring professional fees and payments to the U.S. Trustee set forth in the Budget) are less may be carried forward and added to the subsequent period.

(b)    The Prepetition Borrowers shall provide the Prepetition Secured Parties with an updated budget not less than every four (4)-calendar weeks (the "**Updated Budget**").  As soon as practicable, and in any event within three (3) business days of receiving such Updated Budget, the Agent shall notify the Prepetition Borrowers in writing whether or not such Updated Budget is objectionable.  If the Agent does not object to such Updated Budget in writing within such time, such Updated Budget shall be the Budget.  If, within such time the Agent objects to such Updated Budget, the Budget that is then in effect shall remain in place.

(c)    The Prepetition Borrowers will provide the Prepetition Secured Parties with a variance report no more than one (1) calendar week after the entry of this Interim Order, and will provide a subsequent variance report every Friday thereafter (each such report, the "**Variance Report**").

4.    <u>Use of Prepetition Collateral (including Cash Collateral)</u>.  Immediately upon entry of this Interim Order, the Prepetition Borrowers are authorized to use Cash Collateral to fund working capital requirements and operating and administrative expenses of the Prepetition Borrowers, including the fees and expenses of the Retained Professionals (as defined herein), during the Chapter 11 Cases of the Prepetition Borrowers.  The Prepetition Borrowers are further authorized to use the Prepetition Collateral during the period from the Petition Date through and including the Termination Date (as defined herein) in accordance with the terms and conditions of this Interim Order.

5.      <u>Amendments</u>.  Each of the Prepetition Borrowers is expressly authorized and empowered to enter into amendments, supplements, extensions, or other modifications from time to time in any manner as to which Prepetition Borrowers and the Prepetition Secured Parties mutually agree in writing without further order of this Court; *provided*, that notice of any material modification or amendment shall be provided by the Prepetition Borrowers to the U.S. Trustee and counsel to the Committee, if any, which parties may object to such modification or amendment, in writing, within five (5) business days from the date of the transmittal of such notice (which, to the extent such contact information for such parties is known to the Prepetition Borrowers, shall be transmitted by fax or e-mail, and, if not known, by overnight mail); *provided, further*, that if such objection is timely provided, then such modification or amendment shall be permitted only pursuant to an order of this Court, the entry of which may be sought on an expedited basis.

6.      <u>Carve-Out</u>.

(a)      <u>Generally</u>.  The Prepetition Secured Liens, the Adequate Protection Liens, and the Section 507(b) Claims (as defined herein) of the Prepetition Secured Parties, shall be subject to the payment in full, without duplication, of the following fees and expenses (the amounts set forth below, together with the limitations set forth therein, as well as any funds in the Professional Fee Reserve (as defined below), collectively, the "**Carve-Out**") from, at the Prepetition Borrowers' discretion, the Cash Collateral or proceeds resulting from liquidation of Prepetition Collateral or Postpetition Collateral:

(i)      the fee and expense claims of the respective retained professionals of the Prepetition Borrowers and the Committee, if any, as to matters pertinent to the Prepetition Borrowers, that have been approved by this Court at any time during the Chapter 11 Cases pursuant to sections 330 and 331 of the Bankruptcy Code including any interim approval as

set forth in any procedures approved by this Court relating to the interim approval of fees and expenses of the Retained Professionals (this Court approved professionals of the Prepetition Borrowers and any Committee are collectively referred to as the "**Retained Professionals**"), the reasonable expenses of members of the Committee, if any (the "**Committee Member Expenses**," which shall not include legal fees and expenses of Committee members) which were incurred in connection with matters pertinent to the Prepetition Borrowers (A) on and after the Petition Date and before the Carve-Out Trigger Date (as defined herein), provided that the Carve-Out shall be reduced dollar-for-dollar by any payments of fees and expenses to the applicable Retained Professional, and (B) on and after the Carve-Out Trigger Date in an aggregate amount not exceeding $200,000.00 for all Retained Professionals, to the extent allowed at any time, whether by final order, interim order, procedural order, or otherwise.  On the last business day of each week, the Prepetition Borrowers shall fund a professional fee reserve (the "**Professional Fee Reserve**") in an amount equal to the professional fees for the Retained Professionals as set forth in the Budget for the week then ended that relates solely to the Prepetition Borrowers.  All funds in the Professional Fee Reserve shall be used first to pay the Carve-Out (whether such fees are allowed on an interim or final basis) for allowed fees and expenses of the Retained Professionals, and all Retained Professionals shall have all professional fees and expenses paid from the Professional Fee Reserve prior to seeking payment from any other Cash Collateral.  If, after payment in full of the Carve-Out for allowed fees and expenses of the Retained Professionals, the Professional Fee Reserve has not been reduced to zero, all remaining funds shall be returned to the

Agent on behalf of the Prepetition Secured Parties;[5]

      (ii) the unpaid fees payable to the U.S. Trustee and Clerk of the Bankruptcy Court pursuant to section 1930 of Title 28 of the United States Code plus statutory interest, if any, imposed under 31 U.S.C. § 3717 that relate to the Prepetition Borrowers.  There is no limitation on the obligations of the Prepetition Borrowers and their estates with respect to unpaid fees payable to the U.S. Trustee and Clerk of the Bankruptcy Court pursuant to section 1930 of Title 28 of the United States Code.

      (b) Carve-Out Trigger Date.  As used herein, the term "**Carve-Out Trigger Date**" means the date on which the Prepetition Secured Parties provide written notice to the Prepetition Borrowers, the U.S. Trustee, and counsel to the Committee, if any, that the Carve-Out is invoked, which notice may be delivered only on or after the expiration of the EOD Notice Period (as defined herein) under this Interim Order or upon the Termination Date.

      7. Waiver of Right to Surcharge.  Subject to entry of the Final Order, in light of (a) the consent of the Prepetition Secured Parties to the current payment of administrative expenses of the Prepetition Borrowers' estates in accordance with the Budget, (b) the agreement of the Prepetition Secured Parties to permit the Prepetition Secured Liens, the Adequate Protection Liens, and Section 507(b) Claims to be subordinated to the Carve-Out to the extent related to the Prepetition Borrowers' proportionate share of the Carve-Out, and (c) the agreement of the Prepetition Secured Parties to permit the use of Cash Collateral for payments made in accordance with the Budget as it related to the Prepetition Borrowers only, the Prepetition Secured Parties are,

---

[5] For the avoidance of doubt, the use of the Prepetition Secured Parties' Cash Collateral to fund and pay Retained Professionals shall be limited solely to the fees and expenses of such Retained Professionals that relate directly to the Prepetition Borrowers and no other debtors in these Chapter 11 Cases.

subject to entry of the Final Order, entitled to a waiver of (i) the provisions of section 506(c) of the Bankruptcy Code and (ii) any "equities of the case" claims or other claims under sections 105(a) or 552(b) of the Bankruptcy Code.  Upon entry of the Final Order, no costs or expenses of administration or other charge, lien, assessment, or claim incurred at any time (including, without limitation, any expenses set forth in the Budget) by any Prepetition Borrower or any other person or entity shall be imposed or charged against any or all of the Postpetition Collateral, the Prepetition Collateral, and the Prepetition Secured Parties or their claims or recoveries under the Bankruptcy Code, including sections 506(c) or 552(b) thereof, otherwise, and the Prepetition Borrowers, on behalf of their estates, waive any such rights.

        8.    <u>Automatic Perfection</u>.

        (a)    The Adequate Protection Liens granted pursuant to this Interim Order to the Prepetition Secured Parties shall be valid, enforceable, and perfected by operation of law upon entry of this Interim Order by this Court without any further action by any party.  The Prepetition Secured Parties in respect of the Adequate Protection Liens shall not be required to enter into or to obtain any control agreements, landlord waivers (unless required by law or contract), mortgagee waivers, bailee waivers, or warehouseman waivers or to give, file, or record any UCC-1 financing statements, mortgages, deeds of trust, leasehold mortgages, notices to account debtors or other third parties, notices of lien or similar instruments in any jurisdiction (including filings with the United States Patent and Trademark Office, the United States Copyright Office, or any similar agency in respect of trademarks, copyrights, trade names, or patents with respect to intellectual property) (collectively, the "**Perfection Documents**"), or obtain consents from any licensor or similarly situated party in interest, or take any other action to validate, record, or perfect the Adequate Protection Liens granted under this Interim Order and approved hereby,

30192987.8

all of which are automatically and immediately perfected by the entry of this Interim Order. If the Prepetition Secured Parties, in their reasonable discretion, choose to obtain, enter into, give, record, or file any Perfection Documents, (x) all such Perfection Documents shall be deemed to have been obtained, entered into, given, recorded, or filed, as the case may be, as of the Petition Date, (y) no defect in any such act shall affect or impair the validity, perfection, priority, or enforceability of the Adequate Protection Liens, and (z) such liens shall have the relative priority set forth herein notwithstanding the timing of filing of any such Perfection Documents. In lieu of optional recording or filing any Perfection Documents, the Agent and the Prepetition Secured Parties may, in each of their reasonable discretion, choose to record or file a true and complete copy of this Interim Order in any place that any Perfection Document would or could be recorded or filed (which may include a description of the collateral appropriate to be indicated in a recording or filing at such place of recording or filing), and such recording or filing by the Agent or the Prepetition Secured Parties shall have the same effect as if such Perfection Document had been filed or recorded as of the Petition Date.

9. <u>Effect of Stipulations on Third Parties</u>.

(a) <u>Generally</u>. The admissions and stipulations set forth in Paragraph C above of this Interim Order (collectively, the "**Prepetition Lien and Claim Matters**") are and shall be binding on the Prepetition Borrowers, their estates, and any successors thereto, any subsequent trustee (including any chapter 7 trustee), responsible person, examiner with expanded powers, any other estate representative, and all parties-in-interest and all of their successors-in-interest and assigns, including, without limitation, the Committee, if any, *unless*, and solely to the extent that, a party-in-interest with standing and requisite authority (i) has timely filed the appropriate pleadings, and timely commenced the appropriate proceeding required under the

30192987.8

Bankruptcy Code and Bankruptcy Rules, including, without limitation, as required pursuant to Part VII of the Bankruptcy Rules challenging the Prepetition Lien and Claim Matters (each such proceeding or appropriate pleading commencing a proceeding or other contested matter, a "**Challenge**") within 75 days from entry of this Interim Order (the "**Challenge Deadline**"), as such date may be extended in writing from time to time in the reasonable discretion of the Prepetition Secured Parties or by this Court for good cause shown pursuant to an application filed by a party in interest prior to the expiration of the Challenge Deadline, and (ii) this Court enters judgment in favor of the plaintiff or movant in any such timely and properly commenced Challenge proceeding and any such judgment has become a final judgment that is not subject to any further review or appeal; provided, that the timely filing of a motion seeking standing to file a Challenge before the Challenge Deadline, which attaches a draft complaint setting forth the legal and factual bases of the proposed Challenge, shall toll the Challenge Deadline only as to the party that timely filed such standing motion until such motion is resolved or adjudicated by the Court.  If a chapter 7 trustee or a chapter 11 trustee is appointed or elected prior to the expiration of the Challenge Deadline, then the Challenge Deadline with respect to such trustee only, shall be the later of (i) the Challenge Deadline and (ii) the date that is twenty (20) calendar days after the date on which such trustee is appointed or elected.

(b)      <u>Binding Effect</u>.   To the extent any Prepetition Lien and Claim Matters are not subject to a Challenge timely and properly commenced by the Challenge Deadline, or to the extent any Challenge does not result in a final and non-appealable judgment or order of this Court that is inconsistent with the Prepetition Lien and Claim Matters, then, without further notice, motion, or application to, order of, or hearing before, this Court and without the need or requirement to file any proof of claim, the Prepetition Lien and Claim Matters shall pursuant to

this Interim Order become binding, conclusive and final on the Prepetition Borrowers, their estates, all creditors, any person, entity, or party-in-interest in the Chapter 11 Cases of the Prepetition Borrowers, and their successors and assigns, and in any successor case for all purposes and shall not be subject to challenge or objection by any party-in-interest, including, without limitation, a trustee, responsible individual, examiner with expanded powers or other representative of the Prepetition Borrowers' estates.  More specifically, as to (i) any parties in interest, including the Committee, if any, who fails to file a Challenge within the Challenge Deadline, or if any such Challenge is filed and overruled, or (ii) any and all Prepetition Lien and Claim Matters that are not expressly the subject of a timely Challenge:  (A) any and all such Challenges by any party (including, without limitation, any Committee, any chapter 11 trustee, any examiner, or any other estate representative appointed in the Chapter 11 Cases of the Prepetition Borrowers, or any chapter 7 trustee, any examiner or any other estate representative appointed in any successor cases), shall be deemed to be forever waived and barred, and (B) all of the findings, Prepetition Borrowers' stipulations and admissions hereunder with respect to the Prepetition Liens and Claim Matters, shall be of full force and effect and forever binding upon the Prepetition Borrowers' estates and all creditors, interest holders, and other parties in interest in the Chapter 11 Cases of the Prepetition Borrowers and any successor cases.  Notwithstanding anything to the contrary herein, if any such proceeding is properly and timely commenced, the Prepetition Lien and Claim Matters shall nonetheless remain binding unless such Challenge is successful pursuant to an order or judgment that is final and no longer subject to appeal or further review.

(c)      No Standing.  Nothing in this Interim Order vests or confers on any person (as defined in the Bankruptcy Code), including any Committee, standing or authority to pursue any claim or cause of action belonging to the Prepetition Borrowers and/or their estates,

including, without limitation, any Challenge with respect to the Prepetition Financing Documents, the Prepetition Secured Liens, and/or the Prepetition Secured Obligations.

10.    <u>Limitation on Use of Proceeds</u>.  Notwithstanding anything in this Interim Order to the contrary, no portion or proceeds of the Prepetition Collateral, the Cash Collateral, or the Carve-Out, and no disbursements set forth in the Budget shall be used for the payment of professional fees, disbursements, costs, or expenses incurred in connection with:  (a) objecting, contesting or raising any defense to the validity, perfection, priority, or enforceability of, or any amount due under, the Prepetition Financing Documents or any security interests, liens or claims granted under this Interim Order or the Prepetition Financing Documents to secure such amounts; (b) asserting any Challenges, claims, actions, or causes of action, including any Avoidance Actions, against any of the Prepetition Secured Parties or any of their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys, or advisors; or (c) contesting the Prepetition Lien and Claim Matters; *provided* that no more than $25,000 in the aggregate of the proceeds of the Postpetition Collateral, Prepetition Collateral, the Cash Collateral, and the Carve-Out may be used by the Committee, if any, solely to investigate (but not prosecute or Challenge) Prepetition Lien and Claim Matters.

11.    <u>Adequate Protection</u>.  The Prepetition Secured Parties agree, and this Court finds, that the adequate protection provided in this Interim Order (the "**Adequate Protection**"), including, without limitation, in this Paragraph 11, is reasonable and calculated to protect the interests of the Prepetition Secured Parties.  Notwithstanding any other provision hereof, the grant of Adequate Protection to the Prepetition Secured Parties pursuant hereto is without prejudice to the right of the Prepetition Secured Parties to seek adequate protection or to seek modification of a grant of Adequate Protection provided in this Interim Order so as to provide different or

additional adequate protection, and without prejudice to the right of the Prepetition Borrowers or any other party in interest to contest any such request.

(a)      Prepetition Secured Party Adequate Protection Liens.  As adequate protection for the Prepetition Secured Parties for the Prepetition Secured Liens, the Agent, in accordance with sections 361 and 363(e) of the Bankruptcy Code, is hereby granted, for the benefit of the Prepetition Secured Parties, additional and replacement valid, binding, enforceable, non-avoidable, and perfected postpetition security interests and liens (the "**Adequate Protection Liens**") upon any and all repaid Servicing Advances (as defined in the Prepetition Credit Agreement)[6](collectively, the "**Postpetition Collateral**"), in each case to secure the Prepetition Secured Obligations against, without duplication, the aggregate Diminution in Value, if any, subsequent to the Petition Date, in the value of the Prepetition Collateral.  The Adequate Protection Liens are subject and subordinate only to (A) the Carve-Out and (B) the Permitted Prior Liens. The Adequate Protection Liens shall not (x) be subject to any lien or security interest that is avoided and preserved for the benefit of the Prepetition Borrowers' estates under section 551 of the Bankruptcy Code, (y) subject to any inter-company claim, whether secured or unsecured, of any Prepetition Borrower or any domestic or foreign subsidiary or affiliate of any Prepetition Borrower, or (z) hereafter be subordinated to or made *pari passu* with any other lien or security interest under sections 361 or 363 of the Bankruptcy Code or otherwise except as expressly provided in this Interim Order, including, without limitation, with respect to the Carve-Out and Permitted Prior Liens.  The Adequate Protection Liens shall be enforceable against and binding

---

[6]    "**Servicing Advances**" are defined in the Prepetition Credit Agreement as "the right of any [of the Prepetition Borrowers] to payment, reimbursement or indemnity in respect of any advances made or funded by such [Prepetition Borrower] in respect of Mortgage Loans with respect to which such [Prepetition Borrower] owns the Servicing Rights, whether such advances are made for out of pocket expenses incurred by a servicer, taxes, delinquent payments of principal or interest or other purposes."

upon the Prepetition Borrowers, their estates, and any successors thereto, including, without limitation, any trustee or other estate representative appointed in the Chapter 11 Cases of the Prepetition Borrowers, or any successor cases.

(b)      Section 507(b) Claims.  Notwithstanding the provision of Adequate Protection hereunder, the Prepetition Secured Parties and the Agent, for the benefit of the Prepetition Secured Parties, are hereby each granted an allowed administrative expense claim pursuant to section 507(b) of the Bankruptcy Code (each, a "**Section 507(b) Claim**") with super-priority over all other administrative expenses and all other claims against the Prepetition Borrowers or their estates or any kind or nature whatsoever, but in all cases subject and subordinate to the Carve-Out and the Permitted Prior Liens.  The Section 507(b) Claims shall be against each Prepetition Borrower on a joint and several basis, and shall be payable from and have recourse to all Prepetition Collateral.

(c)      Adequate Protection Payments.  The Prepetition Borrowers shall pay in cash (i) upon entry of this Interim Order, the reasonable and documented fees and expenses of the attorneys and advisors of the Agent (the "**Agent Advisors**") arising under the Prepetition Financing Documents prior to the Petition Date and (ii) the reasonable and documented fees and expenses of the Agent Advisors arising under the Prepetition Financing Documents subsequent to the Petition Date, in all instances subject to the amounts allocated therefor in the Budget (payments under clauses (i) and (ii), collectively, the "**Adequate Protection Payments**").  The Agent Advisors shall not be required to file an application seeking compensation for services or reimbursement of expenses with this Court.  The Agent Advisors seeking compensation for services or reimbursement of expenses under the Prepetition Financing Documents, this Interim Order or the Final Order shall transmit every two (2) weeks a reasonably detailed invoice (which

shall include the total number of hours billed by attorney or other professional but shall not be required to comply with any particular format, and may be in summary form only) to counsel to the Prepetition Borrowers, the U.S. Trustee, and the Committee, if any; *provided* that any such invoice may be reasonably redacted to protect from disclosure any confidential information or information otherwise subject to a protective privilege such as attorney-client privilege or attorney work-product privilege.  The Prepetition Borrowers, U.S. Trustee, and the Committee, if any, shall have ten (10) days in which to raise an objection to the payment of any fees and expenses of such Agent Advisors.  Upon the expiration of such ten (10) day period, the Prepetition Borrowers may pay any portion of such fees and expenses to which no objection has been interposed.  To the extent any objection has been interposed and cannot be consensually resolved, the dispute will be scheduled for adjudication at the next regularly-scheduled omnibus hearing in the Chapter 11 Cases.  Any and all amounts paid by the Prepetition Borrowers under this Paragraph 11 are deemed permitted uses of Cash Collateral hereunder.

(d)    <u>Agency Fees</u>.   The  Agent  shall  receive  from  the  Prepetition Borrowers current cash payments of all reasonable and documented prepetition and postpetition fees, including agency fees and administrative fees, and out-of-pocket expenses incurred by and payable to the Agent under the Prepetition Financing Documents (the "**Agency Fees**") as disclosed in the Budget.

(e)    <u>Adequate Protection Reservation</u>.  The receipt by the Prepetition Secured Parties of the Adequate Protection provided herein shall not be deemed an admission that the interests of the Prepetition Secured Parties are adequately protected.  Each of the Prepetition Borrowers shall be jointly and severally liable for the Adequate Protection provided for herein,

and any amendment or modification to the Adequate Protection shall require the prior written consent of the Prepetition Secured Parties.

12.    <u>Modification of Automatic Stay</u>.  The automatic stay under section 362(a) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms and provisions of this Interim Order, including, without limitation, to:  (a) permit the Prepetition Borrowers to grant Adequate Protection as set forth herein; (b) permit the Prepetition Borrowers to perform such acts as reasonably requested by the Prepetition Secured Parties to assure the perfection and priority of the Adequate Protection Liens granted herein; and (c) authorize the Prepetition Borrowers to make, and the Agent to retain and apply, payments in accordance with the terms of this Interim Order.

13.    <u>Events of Default</u>.  The Prepetition Borrowers' right, and the right of any other representative of the estates, to use Cash Collateral under this Interim Order shall terminate (other than in respect of the Carve-Out), (i) following ten (10) business days' notice (the "**EOD Notice Period**") from the Prepetition Secured Parties of (a) the Debtors' failure to meet or satisfy any Milestone (as defined herein), unless extended by agreement of the Prepetition Secured Parties or order of this Court, or (b) a final determination by this Court that a material violation or breach (other than by the Prepetition Secured Parties), of any of the provisions of this Interim Order has occurred; or (ii) automatically without further notice or court proceeding following that the occurrence of one or more of the following: (a) the appointment of a chapter 11 trustee or of an examiner with expanded powers in the Chapter 11 Case (having powers beyond those set forth in sections 1106(a)(3) and (4) of the Bankruptcy Code); (b) the conversion of the Chapter 11 Cases of the Prepetition Borrowers to cases under chapter 7 of the Bankruptcy Code; (c) the dismissal of the Chapter 11 Cases of the Prepetition Borrowers; (d) filing of a motion, application or other

pleading to obtain postpetition financing that has not been consented to by the Prepetition Secured Parties; (e) entry of an order or a judgment by this Court or any other court staying, reversing, vacating, amending, rescinding or otherwise modifying any of the terms of this Interim Order, or filing of a motion, application or other pleading by the Prepetition Borrowers seeking such entry, in each case without the consent of the Prepetition Secured Parties (each of the items in 13(i) and (ii), an "**Event of Default**," collectively, the "**Events of Default**").

14.     _Termination of Use of Cash Collateral_.  Notwithstanding anything in this Interim Order to the contrary, the Prepetition Borrowers shall be permitted to use the Cash Collateral pursuant to this Interim Order through the date that is the earliest of:  (a) an Event of Default following the applicable EOD Notice Period, if any; or (b) ninety (90) days after the date of consummation of a sale of substantially all of the Prepetition Borrowers' assets; or (c) twenty-five (25) days following the occurrence of the effective date of any confirmed plan of reorganization or liquidation in the Chapter 11 Cases of the Prepetition Borrowers (the "**Termination Date**").

15.     _Prepetition Secured Parties Remedies_.  Upon the occurrence of an Event of Default, and following the EOD Notice Period, if any, in each case without further notice, motion or application to, order of, or hearing before, this Court, subject to the full funding of the Carve-Out and the then-budgeted and incurred administrative expenses of the Prepetition Borrowers' estates, the Prepetition Secured Parties are granted leave to, including without limitation, cease making financial accommodations to the Prepetition Borrowers, accelerate any or all of the Prepetition Secured Obligations, and declare such Prepetition Secured Obligations to be immediately due and payable in full, in cash.  Upon the Termination Date, and after providing five (5) business days' prior notice (the "**Remedies Notice Period**") to this Court, the U.S. Trustee,

and counsel to the Committee, if any, the Prepetition Secured Parties shall be entitled to exercise

all of its rights and remedies under this Interim Order and the Prepetition Financing Documents,

including, without limitation, foreclose upon the Prepetition Collateral or Postpetition Collateral

or otherwise enforce the Prepetition Secured Obligations, the Adequate Protection Liens, and any

or all of the Prepetition Collateral, and/or to exercise any other default-related remedies under the

Prepetition Financing Documents, this Interim Order, or applicable law in seeking to recover

payment of the Prepetition Secured Obligations.

16.     Milestones.  As a condition to the use of Cash Collateral, the Prepetition

Borrowers shall comply with the milestones attached hereto as Exhibit B (the "**Milestones**").  For

the avoidance of doubt, the failure of the Debtors to comply with any of the Milestones (a) shall

constitute an Event of Default under this Interim Order, (b) subject to the expiration of the

Remedies Notice Period, result in the automatic termination of the Debtors' authority to use Cash

Collateral under this Interim Order, and (c) permit the Prepetition Secured Parties, subject to the

terms of this Interim Order, to exercise the rights and remedies provided for in this Interim Order.

17.     Successors and Assigns.  This Interim Order shall be binding upon all

parties in interest in the Chapter 11 Cases of the Prepetition Borrowers, including any subsequently

appointed trustee, responsible individual, examiner with expanded powers, or other estate

representative.

18.     Survival.  The provisions of this Interim Order and any actions taken

pursuant hereto shall survive the entry of any subsequent order (other than entry of any subsequent

Final Order which shall supersede this Interim Order), and the rights, remedies, powers, privileges,

liens and priorities of the Prepetition Secured Parties provided for in this Interim Order and any

Prepetition Financing Document shall not be modified, altered or impaired in any manner without

their consent (which consent shall not be unreasonably withheld) by any order, including any order (a) confirming any plan of reorganization or liquidation in any of the Chapter 11 Cases of the Prepetition Borrowers, (b) converting any of the Chapter 11 Cases of the Prepetition Borrowers to a chapter 7 case, (c) dismissing any of the Chapter 11 Cases of the Prepetition Borrowers, or (d) any superseding cases under the Bankruptcy Code.  The terms and provisions of this Interim Order as well as the Adequate Protection granted pursuant to this Interim Order shall continue in full force and effect notwithstanding the entry of any such order, and such rights, claims and liens shall maintain their priority as provided by this Interim Order and the Prepetition Financing Documents and to the maximum extent permitted by law until all of the Prepetition Secured Obligations are indefeasibly paid in full, in cash.

19.    <u>Subsequent Reversal or Modification</u>.  If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, that action will not affect (a) the validity of any obligation, indebtedness or liability under this Interim Order by the Prepetition Borrowers prior to the date of receipt of written notice to the Prepetition Secured Parties and Agent of the effective date of such action, or (b) the validity and enforceability of any lien, administrative expense, right, or priority authorized or created hereby or pursuant to this Interim Order, including, without limitation, the Prepetition Secured Obligations, the Prepetition Secured Liens, the Adequate Protection Liens, the Adequate Protection Payments and the Section 507(b) Claims.

20.    <u>Order Governs</u>.  In the event of any conflict between the provisions of this Interim Order and the Motion, or any supporting documents, the provisions of this Interim Order shall control and govern to the extent of such conflicts.

21.    <u>No Marshaling</u>.  Subject to entry of the Final Order, none of the Prepetition Secured Parties or Prepetition Collateral shall be subject to the doctrine of marshaling or any

similar doctrine or law of any jurisdiction requiring the recovery upon or application to any

indebtedness of any collateral or proceeds in any particular order or action.

22.    <u>Master Proof of Claim</u>.  The Prepetition Secured Parties will not be required

to file proofs of claim in any of the Chapter 11 Cases of the Prepetition Borrowers or any successor

cases, and the terms and provisions of this Interim Order shall be deemed to constitute a timely

filed proof of claim against the applicable Prepetition Borrowers; *provided, however*, that the

Agent (on behalf of itself and the other Prepetition Secured Parties) is hereby authorized in its

reasonable discretion to file (and amend and/or supplement, as it sees fit) a master proof of claim

for the claims of the Prepetition Secured Parties arising from the applicable Prepetition Financing

Documents in accordance with any order entered by this Court in relation to the establishment of

a bar date in the Chapter 11 Cases of the Prepetition Borrowers; *provided further* that nothing

herein shall waive the right of any Prepetition Secured Party to file its own proofs of claim against

the Prepetition Borrowers.

23.    <u>Immediate Effect of Order</u>.    This Interim Order shall take effect

immediately upon execution hereof, and, notwithstanding anything to the contrary contained in

Bankruptcy Rules, including Bankruptcy Rule 4001(a)(3), there shall be no stay of execution of

effectiveness of this Order.  All objections to the entry of this Interim Order have been withdrawn

or overruled, and the Motion is approved on an interim basis on the terms and conditions set forth

herein.  The Prepetition Borrowers shall promptly mail copies of this Interim Order to the Notice

Parties and to counsel to the Committee, if any.

24.    <u>Final Hearing</u>.  The Final Hearing is scheduled for ____, 2023, at [__:__

_].m. (prevailing Eastern Time) before this Court.  Any objections by creditors or other parties in

interest to any provisions of this Interim Order shall be deemed waived unless timely filed and

{01435726.v3 }                                   25

served in accordance with this Paragraph 24. The Debtors shall promptly serve a notice of entry of this Interim Order and the Final Hearing, together with a copy of this Interim Order, by first class mail, postage prepaid, facsimile, electronic mail or overnight mail upon the Notice Parties. The notice of the entry of this Interim Order and the Final Hearing shall state that objections to the entry of the Final Order shall be filed with this Court by no later than 4:00 p.m. (prevailing Eastern Time) on [_____ __], 2023 (the "**Objection Deadline**"), with copies to: (a) co-counsel for the Debtors, Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, NY 10036, Attn: P. Bradley O'Neill and Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Wilmington, Delaware 19801, Attn: Joseph Barry, (b) counsel for the Agent; (c) the U.S. Trustee, J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Wilmington, DE 19801, Attn: Joseph F. Cudia; and (d) counsel to the Committee, if any.

# EXHIBIT A

**Budget**

**Peer Street, Inc., et al.**
**Cash Collateral Budget - Magnetar Only**
*$000s*

| Week Ending | 1 06/25/23 | 2 07/02/23 | 3 07/09/23 | 4 07/16/23 | 5 07/23/23 | 6 07/30/23 | 7 08/06/23 | 8 08/13/23 | 9 08/20/23 | 10 08/27/23 | 11 09/03/23 | 12 09/10/23 | 13 09/17/23 | 14 09/24/23 | 15 10/01/23 | 16 10/08/23 | 17 10/15/23 | 18 10/22/23 | 19 10/29/23 | 20 11/05/23 | Weeks 1-13 Forecast Total | Weeks 14-20 Forecast | Total Forecast |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Cash Receipts** | | | | | | | | | | | | | | | | | | | | | | | |
| PeerStreet Spread | 47 | 47 | 47 | 47 | 47 | 47 | 47 | 47 | 47 | 47 | 47 | 47 | 47 | 31 | 15 | - | - | - | - | - | 607 | 46 | 654 |
| DocGen | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 61 | 33 | 94 |
| Draw & Other Receipts | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | - | - | - | - | - | 14 | 2 | 17 |
| Interest on Bank Balance | - | - | - | 220 | - | - | - | 176 | - | - | - | 175 | - | - | - | - | 224 | - | - | 142 | 572 | 366 | 937 |
| Servicing Recoveries | 143 | 143 | 143 | 143 | 143 | 2,897 | 143 | 143 | 143 | 143 | 143 | 143 | 143 | 3,698 | 3,766 | 3,791 | - | - | - | - | 4,612 | 11,255 | 15,867 |
| Total Other Receipts | - | 50 | - | - | 400 | - | - | - | 93 | - | - | - | 34 | - | - | 1,030 | 6 | - | 125 | - | 577 | 1,161 | 1,738 |
| **Total Cash Receipts** | 195 | 245 | 195 | 416 | 595 | 2,949 | 195 | 372 | 288 | 195 | 195 | 371 | 229 | 3,735 | 3,788 | 4,825 | 235 | 5 | 130 | 147 | 6,443 | 12,863 | 19,307 |
| **Operating Disbursements** | | | | | | | | | | | | | | | | | | | | | | | |
| Total Payroll | - | (82) | - | (92) | - | (82) | - | - | (101) | - | (67) | - | (67) | - | (128) | - | (91) | - | - | (239) | (492) | (458) | (950) |
| Rent & Occupancy | - | (10) | - | - | - | - | (10) | - | - | - | (10) | - | - | - | (10) | - | - | - | - | (10) | (30) | (20) | (50) |
| Insurance | - | (39) | - | - | - | - | (39) | - | - | - | (39) | - | - | - | (39) | - | - | - | - | (39) | (118) | (78) | (196) |
| Servicing Advances | (172) | (172) | (172) | (172) | (172) | (172) | (172) | (172) | (172) | (172) | (172) | (172) | (172) | (172) | (172) | (172) | - | - | - | - | (2,231) | (515) | (2,746) |
| Vendors | (61) | (49) | (49) | (49) | (49) | (49) | (61) | (61) | (61) | (61) | (61) | (61) | (61) | (61) | (49) | (49) | (49) | (49) | (49) | (61) | (732) | (366) | (1,099) |
| **Total Operating Disbursements** | (233) | (352) | (220) | (312) | (220) | (303) | (282) | (233) | (334) | (233) | (349) | (233) | (300) | (233) | (397) | (220) | (140) | (49) | (49) | (349) | (3,603) | (1,437) | (5,040) |
| **Restructuring Disbursements** | | | | | | | | | | | | | | | | | | | | | | | |
| Restructuring Fees | (81) | (137) | (67) | (67) | (67) | (72) | (155) | (83) | (83) | (83) | (180) | (83) | (83) | (83) | (154) | (66) | (66) | (66) | (76) | (170) | (1,240) | (683) | (1,922) |
| Post-Effective Date Wind-Down Costs | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | (227) | - | (227) | (227) |
| **Total Restructuring Disbursements** | (81) | (137) | (67) | (67) | (67) | (72) | (155) | (83) | (83) | (83) | (180) | (83) | (83) | (83) | (154) | (66) | (66) | (66) | (76) | (397) | (1,240) | (910) | (2,149) |
| **Net Cash Flow** | (118) | (244) | (91) | 37 | 309 | 2,574 | (242) | 56 | (129) | (120) | (334) | 55 | (154) | 3,419 | 3,236 | 4,539 | 29 | (110) | 5 | (600) | 1,600 | 10,517 | 12,117 |
| **Cash (Magnetar)** | | | | | | | | | | | | | | | | | | | | | | | |
| Beginning Balance | 8,792 | 8,674 | 8,431 | 8,339 | 8,376 | 8,685 | 11,259 | 11,017 | 11,073 | 10,945 | 10,825 | 10,491 | 10,546 | 10,392 | 13,812 | 17,048 | 21,586 | 21,615 | 21,505 | 21,509 | 8,792 | 10,392 | 8,792 |
| (+) Net Cash Flow | (118) | (244) | (91) | 37 | 309 | 2,574 | (242) | 56 | (129) | (120) | (334) | 55 | (154) | 3,419 | 3,236 | 4,539 | 29 | (110) | 5 | (600) | 1,600 | 10,517 | 12,117 |
| **Ending Unrestricted Cash Balance** | 8,674 | 8,431 | 8,339 | 8,376 | 8,685 | 11,259 | 11,017 | 11,073 | 10,945 | 10,825 | 10,491 | 10,546 | 10,392 | 13,812 | 17,048 | 21,586 | 21,615 | 21,505 | 21,509 | 20,909 | 10,392 | 20,909 | 20,909 |

## __EXHIBIT B__

### Milestones

(i)        On the Petition Date, the Debtors shall have filed a motion seeking approval of the Debtors' use of Cash Collateral.

(ii)       Within three (3) days of the Petition Date, the Debtors shall have filed a motion (the "**Bid Procedures Motion**") with the Bankruptcy Court to approve bid procedures to determine a winning bidder or bidders for the Debtors' mortgage assets.

(iii)      Within three (3) days after the Petition Date, the Interim Order authorizing and approving the use of Cash Collateral and the transactions contemplated thereby on an interim basis, shall have been entered by the Bankruptcy Court.

(iv)      On or before thirty (30) days following the Petition Date, or the first business day thereafter that the Bankruptcy Court is available, an order approving the Bid Procedures Motion (the "**Bid Procedures Order**") shall have been entered by the Bankruptcy Court.

(v)       On or before thirty (30) days following the Petition Date, or the first business day thereafter that the Bankruptcy Court is available, the Final Order (in form an substance acceptable to the Prepetition Secured Parties in their sole discretion) authorizing and approving the use of Cash Collateral and the transactions contemplated thereby on a final basis shall have been entered by the Bankruptcy Court.