# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Peer Street, Inc., *et al.*,[1] | Case No. 23-10815 (LSS) |
| Debtors. | (Joint Administration Requested) |
| | ***Proposed*** **Bidding Procedures Objection Deadline: July 11, 2023 at 4:00 p.m. (ET)** |
| | ***Proposed*** **Bidding Procedures Hearing Date: July 18, 2023 at TBD** |

**DEBTORS' MOTION FOR ENTRY OF (A) AN ORDER (I) SCHEDULING A HEARING ON THE APPROVAL OF THE SALE OF ALL OR SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL ENCUMBRANCES, (II) APPROVING CERTAIN BID PROCEDURES, AND THE FORM AND MANNER OF NOTICE THEREOF, AND (III) GRANTING RELATED RELIEF; AND (B) AN ORDER (I) APPROVING ASSET PURCHASE AGREEMENT, (II) AUTHORIZING THE SALE OF ALL OR SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL ENCUMBRANCES, AND (III) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "**Debtors**") hereby submit this motion (this "**Motion**"), pursuant to sections 105, and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**"), for the entry of: (a) an order, substantially in the form attached hereto as **Exhibit A** (the "**Bidding Procedures Order**"), (i) scheduling a hearing (the "**Sale Hearing**") on approval of the proposed sale (the "**Sale**") of all or substantially all of the Debtors' mortgage loan assets, including, but not limited to, any related participations, if any, post-foreclosure real estate owned ("**REO**") property, and the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their respective federal tax identification numbers, are: Peer Street, Inc. (8584); PS Funding, Inc. (3268); PeerStreet Licensing, Inc. (9435); Peer Street Opportunity Fund GP, LLC (8491); Peer Street Funding LLC (9485); PSF REO LLC (1013); PS Options LLC (8584); PS Warehouse, LLC (5663); PS Warehouse II, LLC (9252); Peer Street Opportunity Investors II, LP (1586); PS Portfolio-ST1, LLC (1868); PSF Ohio, LLC (9485); PSF TX 1, LLC (9485); PSF TX 2, LLC (2415); PSF TX 4 LLC (9485). The Debtors' service address is c/o Province, LLC 2360 Corporate Circle, Suite 340, Henderson, NV 89074, Attn: David Dunn, Chief Restructuring Officer.

loan servicing rights related to the foregoing (the "**Assets**"), free and clear of all claims, liens, liabilities, rights, interest, and encumbrances (the "**Encumbrances**") to one or more purchasers (the "**Winning Bidder**"); (ii) authorizing and approving certain bidding procedures for the Sale (collectively, the "**Bid Procedures**," a copy of which is attached as **<u>Exhibit 1</u>** to the Bidding Procedures Order)[2], and the form and manner of notice thereof; and (iii) granting related relief; and (b) an order, substantially in the form attached hereto as **<u>Exhibit B</u>** (the "**Sale Order**"), (i) authorizing and approving the Debtors' entry into the Mortgage Loan Purchase and Interim Servicing Agreement attached to the Sale Order as **<u>Exhibit 1</u>** (an "**Asset Purchase Agreement**" or "**Asset Purchase Agreements**") with the Winning Bidder, as modified by any applicable alternative asset purchase agreement ("**Alternative APA**") submitted by Winning Bidder; (ii) authorizing and approving the Sale, free and clear of all Encumbrances; and (iii) granting related relief.  In support of this Motion, the Debtors respectfully state as follows:

## <u>JURISDICTION AND VENUE</u>

1.      The Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012 (the "**Amended Standing Order**").  This is a core proceeding pursuant to 28 U.S.C. § 157(b), and the Court may enter a final order consistent with Article III of the United States Constitution.  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory and legal predicates for the relief sought herein are sections 105 and 363 of the Bankruptcy Code, Rules 2002 and 6004 of the Federal Rules of Bankruptcy

---

[2]     Capitalized terms used but not otherwise defined herein shall have the definition ascribed to them in the Bid Procedures.

Procedure (the "**Bankruptcy Rules**"), and Rules 2002-1 and 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**").

## BACKGROUND

3.      Today (the "**Petition Date**"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code (collectively, the "**Chapter 11 Cases**").

4.      As set forth in the *Declaration of David M. Dunn. in Support of Chapter 11 Petitions and First Day Pleadings* (the "**First Day Declaration**"), the Debtors commenced the Chapter 11 Cases to conduct a sale process for substantially all of the Assets pursuant to section 363 of the Bankruptcy Code (the "**Sale Process**"), which Sale Process is the subject of this Motion.

5.      Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors are continuing to manage their business and financial affairs as debtors in possession.  No official committees have been appointed in the Chapter 11 Cases to date, and no request has been made for the appointment of a trustee or examiner.

6.      Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of these Chapter 11 Cases is set forth in the First Day Declaration.

## THE SALE PROCESS

7.      The Debtors have a clear strategy for these Chapter 11 Cases for the benefit of all stakeholders — the sale of all or substantially all of their Assets through a robust marketing and sale process.  Among other things, the Sale Process will provide a transparent and comprehensive avenue through which the Debtors will seek bids for the Assets.  Upon completion

of the post-petition Sale Process proposed herein, the Debtors will have fully market tested the value of such Assets.

8.      As part of the Debtors' efforts to ensure that they secure a value-maximizing transaction for their Assets, in March of 2023 the Debtors retained Piper Sandler Loan Strategies, LLC ("**Piper**"), an experienced broker in the Debtors' industry, to canvass the market for interested buyers.  Through its mortgage industry experience, Piper has executed non-disclosure agreements ("**NDAs**") with approximately 1,000 investor parties with interest in acquiring mortgage loan assets such as the Assets.  Following its engagement, Piper has committed significant resources to ensure the sale process for the Assets will maximize value, including data and loan file analysis, development of a transaction strategy and preparation of a bid package, which includes preparation of highly detailed loan-level data and establishment of a comprehensive virtual data room (the "**Data Room**").  Working with the Debtors, Piper has pooled the Assets based on their characteristics, features and similarities (*e.g.*, "residential," "commercial," "multi-family," "performing, current, non-mature," "sub-performing, non-performing or matured", REO, etc.) (each, an "**Asset Pool**" and collectively, the "**Asset Pools**") in order to maximize the value for the Assets and the likelihood that purchaser interest will be significant.  It is currently contemplated that there will be six (6) Asset Pools as follows:

| Investor NOO[3] Residential Loans & REO | Commercial Loans and REO |
|---|---|
| *Pool 1*:  Active/Performing | *Pool 4*:  Active/Performing |
| *Pool 2*:  Sub-Performing/Non-Performing | *Pool 5*:  Sub-Performing/Non-Performing |
| *Pool 3*:  REO | *Pool 6*:  REO |

---

[3]      Non-Owner Occupied.

9.      Through the Sale Process, the Debtors and Piper will utilize Piper's existing network of potential buyers – along with others not currently under and NDA – to fetch top dollar for the Assets.

10.      In furtherance of Piper's ongoing efforts to actively market the Assets for sale, the Debtors have filed this Motion seeking authority to proceed with a bidding process to consummate a sale (or series of sales) that the Debtors expect will generate maximum value for their Assets.  To facilitate the Sale, the Debtors, in consultation with Piper and their other professional advisors, have developed certain bidding procedures (the "**Bid Procedures**") to preserve flexibility in the Sale Process, generate the greatest level of interest in the Assets, and result in the highest or otherwise best value for those Assets.  Among other things, these procedures, in the Debtors' business judgment, create an appropriate timeline for the Sale Process.

## **BID PROCEDURES**[4]

11.      The Bid Procedures reflect the Debtors' objective of conducting the Sale Process in an orderly, fair and open manner, while ensuring that the highest or best bid is generated for the Assets.

12.      Certain of the key terms of the Bid Procedures, which shall apply to Potential Bidders, Qualifying Bidders, the submission, receipt, and analysis of all bids relating to the Sale, and the conduct of the Sale, are included below:

(a)      **Qualification as Bidder**:  Any person or entity that wishes to participate in the bidding process for the Assets (each, a "**Potential Bidder**") must first become a "**Qualifying Bidder**".  To become a Qualifying Bidder, and thus being able to conduct due diligence and gain access to the Data Room, a Potential Bidder must

---

[4]      Any summary of the Bid Procedures contained herein is qualified in its entirety by the actual terms and conditions of the Bid Procedures as provided for in the Bidding Procedures Order.  To the extent that there is any conflict between any summary contained herein and the actual terms and conditions of the Bid Procedures as provided for in the Bidding Procedures Order, the actual terms and conditions of the Bid Procedures as provided for in the Bid Procedures Order shall control.

submit to the Debtors, the Committee, and their advisors:

(i) documentation identifying the interested party, its principals, and the representatives thereof who are authorized to appear and act on their behalf for all purposes regarding the contemplated transaction;

(ii) an executed NDA, unless one has been previously executed with Piper; and

(iii) sufficient information, as determined by the Debtors, after consultation with counsel for Magnetar Financial LLC, as agent for the prepetition secured lenders (the "**Prepetition Lender**"), and any official committee of unsecured creditors appointed in the Chapter 11 Cases (the "**Committee**" and together with the Debtors and the Prepetition Lender, the "**Consultation Parties**"), to allow the Debtors to determine that the interested party has, or can obtain, the financial wherewithal and any required internal corporate, legal or other authorizations to close a sale transaction.

Notwithstanding anything to the contrary herein, and for the avoidance of doubt, for all purposes under the Bid Procedures, in determining whether the Potential Bidders constitute Qualifying Bidders, the Debtors may consider a combination of bids for the Assets.

(b)      **Due Diligence**: The Debtors will provide any Qualifying Bidder with reasonable access to the Data Room and any other additional information that the Debtors believe to be reasonable and appropriate under the circumstances. All additional due diligence requests shall be directed to: (a) the proposed broker for the Debtors, Piper Sandler, Stephen Joseph (steve.joseph@psc.com), CK Smith (ck.smith@psc.com), Bernie Rechtman (bernie.rechtman@psc.com) and Stacy Zimring (stacy.zimring@psc.com); and/or (b) proposed counsel for the Debtors, Joseph Barry (jbarry@ycst.com), Ryan M. Bartley (rbartley@ycst.com), and P. Bradley O'Neill (boneill@kramerlevin.com). The due diligence period shall extend through and including the First Round Bid Deadline for all Qualified Bidders and the Second Round Bid Deadline for Qualified Round Two Bidders. The Debtors may, but shall not be obligated to, in their business judgment, furnish any due diligence information after the Bid Deadlines. The Debtors reserve the right, in their reasonable discretion, to withhold or limit access to any due diligence information that the Debtors determine is business-sensitive or otherwise not appropriate for disclosure to a Qualifying Bidder. Notwithstanding any prepetition limitations, including, without limitation, any non-disclosure, confidentiality or similar provisions relating to any due diligence information, the Debtors and their estates shall be authorized to provide due diligence information to Qualifying Bidders provided that such Qualifying Bidders have delivered an executed confidentiality agreement in form and substance acceptable to the Debtors. The Debtors and their estates are not responsible for, and shall have no liability with respect to, any information obtained by, or provided to, any Qualifying Bidders in connection with the Bid Procedures and the Sale.

(c)     **Bid Requirements**:

i.      To be deemed a "**Qualifying Bid**," a bid must be delivered to the Debtors and Consultation Parties by a Qualifying Bidder on or before the First Round Bid Deadline and satisfy each of the following requirements (each, a "**Bid Requirement**"):

        a.      be in writing and conform to the letter of intent form provided to Potential Bidders by the Debtors and Piper Sandler and be accompanied by an Alternative APA that reflects any variations from the Asset Purchase Agreement;

        b.      fully disclose the identity of the Qualifying Bidder (and to the extent that the Qualifying Bidder is a newly formed acquisition entity or the like, the identity of the Qualifying Bidder's parent company or sponsor), and provide the contact information of the specific person(s) whom the Debtors or their advisors should contact in the event that the Debtors have any questions or wishes to discuss the bid submitted by the Qualifying Bidder;

        c.      be on the specified Asset Pools or all Asset Pools (and not individual Assets), set forth the purchase price to be paid by such Qualifying Bidder;

        d.      not propose payment in any form other than cash;

        e.      state the liabilities proposed to be paid or assumed by such Qualifying Bidder;

        f.      confirm that the bid is "as-is, where-is" and for a serviced-released sale, subject to the provisions of the Asset Purchase Agreement;

        g.      confirm that if the Qualifying Bidder is selected for the Second Bid Round, such bidder will be required and able to complete any further diligence by the Second Round Bid Deadline;

        h.      state that such Qualifying Bidder's offer is formal, binding and unconditional and is irrevocable until two (2) business days after the closing of the Sale, subject only to the diligence permitted in Second Bid Round;

        i.      state that such Qualifying Bidder is financially capable of consummating the transactions contemplated by the Alternative APA and provide written evidence in support thereof;

        j.      contain such financial and other information to allow the Debtors to make a reasonable determination, after consultation with the Consultation Parties, as to the Qualifying Bidder's financial and

other capabilities to close the transactions contemplated by the Alternative APA;

k.    include a commitment to close the transactions contemplated by the Alternative APA by no later than five (5) days after the Second Round Bid Deadline or as otherwise mutually agreed by the parties;

l.    not request or entitle such Qualifying Bidder to any break-up fee, termination fee, expense reimbursement, or similar type of fee or payment as a condition to such Qualifying Bidder's First Round Qualifying Bid;

m.    confirm that should such Qualifying Bidder be selected for the Second Round Bid, such Qualifying Bidder understands that price fading after submission of a First Round Qualifying Bid that is not supported by a material dollar amount of the Asset Pool to have incorrect information will disqualify you from further participation in the sale process;

n.    contain a list of documents relating to the Asset Pool(s) required by the Qualifying Bidder;

o.    aside from due diligence to be conducted between the First Round Bid Deadline and Second Round Bid Deadline, not otherwise contain any contingencies of any kind, including, without limitation, contingencies related to financing, internal approval or due diligence;

p.    contain written evidence satisfactory to the Debtors that the Qualifying Bidder has a commitment for financing or other evidence of the ability to close the transactions contemplated by the Alternative APA, with appropriate contact information for such financing sources;

q.    contain a written acknowledgement and representation that the Qualifying Bidder (i) has relied solely upon its own independent review, investigation and/or inspection of any documents and other information in making its Qualifying Bid, and (ii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Assets, or the completeness of any documents or other information provided in connection with the Bid Procedures and the Sale;

r.    sets forth (i) a statement or evidence that the Qualifying Bidder has made or will make in a timely manner all necessary filings under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, if applicable, and pay the fees associated with such filings,

-8-

and (ii) any regulatory and third-party approvals required for the Qualifying Bidder to close the transactions contemplated by the Alternative APA, and the time period within which the Qualifying Bidder expects to receive such regulatory and third-party approvals (and in the case that receipt of any such regulatory or third-party approval is expected to take more than five (5) days following execution and delivery of such Qualifying Bidder's Alternative APA, those actions the bidder will take to ensure receipt of such approval(s) as promptly as possible); provided that a Qualifying Bidder agrees that its legal counsel will coordinate in good faith with the Debtors' legal counsel to discuss and explain Qualifying Bidder's regulatory analysis, strategy, and timeline for securing all such approvals as soon as reasonably practicable, and in no event later than the time period contemplated in the Alternative APA; provided, further that the offer contains a covenant to cooperate with the Debtors to provide pertinent factual information regarding the bidder's operations reasonably required to analyze issues arising with respect to any applicable antitrust laws and other applicable regulatory requirements;

s.      provides for the Qualifying Bidder to serve as a backup bidder (the "**Back-Up Bidder**") if the Qualifying Bidder's bid is the next highest and best bid (the "**Back-Up Bid**") after the Winning Bid, in accordance with the terms of the Alternative APA;

t.      includes written evidence of authorization and approval from the Qualifying Bidder's board of directors (or comparable governing body) with respect to the submission, execution, and delivery of the Alternative APA; and

u.      provides that in the event of the Qualifying Bidder's breach of, or failure to perform under, the Alternative APA, the Debtors and their estates shall be entitled to retain the Deposit as part of the damages resulting to the Debtors and their estates for such breach or failure to perform.

A bid from a Qualifying Bidder satisfying all of the above requirements, as determined by the Debtors, in consultation with the Consultation Parties, shall constitute a Qualifying Bid. The Debtors reserve the right to work with any Qualifying Bidder to cure any deficiencies in a bid that is not initially deemed a Qualifying Bid.

Each Qualifying Bidder submitting a bid shall be deemed to: (a) acknowledge and represent that it is bound by all of the terms and conditions of the Bid Procedures; and (b) have waived the right to pursue a substantial contribution claim under section 503 of the Bankruptcy Code

related in any way to the submission of its bid, the Bid Procedures, and the Sale.

ii.    *First Round Bid Deadline*

A Qualifying Bidder that desires to make a bid shall deliver a written and electronic copy of its bid in <u>both</u> PDF and MS-WORD format to the Bidding Procedures Notice Parties (as defined in the Bid Procedures) so as to be received on or before **July 25, 2023 at 1:00 p.m. (ET)** (the "**First Round Bid Deadline**"); provided that the Debtors may extend the First Round Bid Deadline without further order of the Court, after consultation with the Consultation Parties.  To the extent that the First Round Bid Deadline is extended for all parties, the Debtors shall file a notice on the docket of these Chapter 11 Cases indicating the same.  **Any party that does not submit a First Round Bid by the First Round Bid Deadline will not be allowed to (a) submit any offer after the First Round Bid Deadline, or (b) participate in the sale process further.**

iii.    *Evaluation of Qualifying Bids and Bids for Second Round*.  The Debtors, in consultation with the Consultation Parties, shall make a determination regarding whether a timely submitted bid from a Qualifying Bidder is a Qualifying Bid.  No later than five (5) days from the First Round Bid Deadline, the Debtors shall:  (i) notify all Qualifying Bidders whether their bids have been determined to be a Qualifying Bid; and (ii) determine, in consultation with the Consultation Parties, which of the Qualifying Bids, at such time, are the three (3) highest or best bid for purposes of qualifying for round two bidding (the "**Qualified Round Two Bidders**") and shall promptly notify all Qualifying Bidders with Qualifying Bids whether they shall be permitted to participate in the second round of bidding (the "**Second Bid Round**").

iv.    *Second Round Bid Deadline*

A Qualifying Second Round Bidder that desires to make a bid shall deliver a written and electronic copy of its bid in <u>both</u> PDF and MS-WORD format to the Bidding Procedures Notice Parties (as defined in the Bid Procedures) and the Consultation Parties so as to be received on or before **September 7, 2023 at 1:00 p.m. (ET)** (the "**Second Round Bid Deadline**" and, together with the First Round Bid Deadline, the "**Bid Deadlines**"); provided that the Debtors may extend the Second Round Bid Deadline without further order of the Court, after consultation with the Consultation Parties.  To the extent that the Second Round Bid Deadline is extended for all parties, the Debtors shall file a notice on the docket of these Chapter 11 Cases indicating the same.  **Any party that does not submit a Second Round Bid by the Second Round Bid Deadline will not be allowed to (a) submit any offer after the Second Round Bid Deadline, or (b) participate in the sale process further.**

(b)    **<u>Declaration of Winning Bidder</u>**:

Within five (5) days of the Second Round Bid Deadline, the Debtors will determine, in consultation with the Consultation Parties, which Second Round Qualifying Bid or combination of Second Round Qualifying Bids is the highest or best bid for the Assets (the "**Winning Bid**" and the "**Winning Bidder**"), which will be determined by considering, among other things, the following non-binding factors:  (a) the extent to which such modifications are likely to delay closing of the Sale and the cost to the Debtors and their estates of such modifications or delay; (b) the total consideration to be received by the Debtors and their estates; (c) the transaction structure and execution risk, including conditions to, timing of and certainty of closing, termination provisions, availability of financing and financial wherewithal to meet all commitments, and required governmental or other approval; (d) the net benefit to the Debtors' estates; and (e) any other factors the Debtors may reasonably deem relevant.  Prior to making such determination:

i.    the Debtors and their professional advisors, in consultation with the Consultation Parties, may engage in individual negotiations with any of the Second Round Qualified Bidders;

ii.    the Debtors and their professional advisors, in consultation with the Consultation Parties, may employ and announce additional procedural rules that are reasonable under the circumstances (provided that such rules are (i) not inconsistent with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Rules, or any applicable order of the Court entered in connection with these Chapter 11 Cases, including, without limitation, the Bidding Procedures Order, and (ii) disclosed to the Second Round Qualified Bidders);

Within one (1) business day of being declared a Winning Bidder, the Winning Bidder shall provide a good faith cash deposit (the "**Deposit**") in an amount equal to ten percent (10%) of the purchase price provided for in the Second Round Qualifying Bid (or such additional amount as may be determined by the Debtors in their reasonable discretion, in consultation with the Consultation Parties); and

Prior to the Sale Hearing, the Winning Bidder(s) shall complete and execute all agreements, contracts, instruments and other documents evidencing and containing the terms and conditions upon which the Winning Bid was made.

**THE WINNING BID AND ANY BACK-UP BID AND THEIR RELATED PURCHASE AGREEMENTS SHALL CONSTITUTE AN IRREVOCABLE OFFER AND BE BINDING ON THE WINNING BIDDER AND THE BACK-UP BIDDER, RESPECTIVELY, FROM THE TIME THE BID IS SUBMITTED UNTIL TWO (2) BUSINESS DAYS AFTER THE SALE HAS CLOSED.  EACH QUALIFYING BID THAT IS NOT THE WINNING BID OR THE BACK-UP BID**

**SHALL BE DEEMED WITHDRAWN AND TERMINATED AT THE CONCLUSION OF THE SALE HEARING.**

(c)    **Sale Hearing**:  The Winning Bids and any Back-Up Bids will be subject to approval by the Court.  The Sale Hearing to approve the Winning Bids and any Back-Up Bids shall take place on **September 18, 2023 at a time to be determined by the Court**.  The Sale Hearing may be adjourned by the Debtors, in consultation with the Consultation Parties, from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing, or by filing a hearing agenda or notice on the docket of these Chapter 11 Cases.

At the Sale Hearing, the Debtors will seek entry of the Sale Order that, among other things authorizes and approves the Sale to the Winning Bidder(s), pursuant to the terms and conditions set forth in the Alternative APA submitted by the Winning Bidder, as applicable.

(d)    **Backup Bidder**:  Notwithstanding any of the foregoing, in the event that the Winning Bidder fails to close the Sale on or before **September 22, 2023** (or such date as may be extended by the Debtors), the Back- Up Bid will be deemed to be the Winning Bid on that Asset Pool, the Back-Up Bidder will be deemed to be the Winning Bidder, and the Debtors shall be authorized, but not directed, to close the Sale to the Back-Up Bidder subject to the terms of the Back- Up Bid without the need for further order of the Court and without the need for further notice to any interested parties.  Within one (1) business day of being declared a Winning Bidder, the Back-Up Bidder shall provide a good faith cash Deposit in an amount equal to a ten percent (10%) of the purchase price provided for in the Back-Up Bid (or such additional amount as may be determined by the Debtors in their reasonable discretion, in consultation with the Consultation Parties).

**Return of Deposits and Expense Reimbursements**:  The Deposit of the Winning Bidder or, if the Sale is closed with the Back-Up Bidder, the Deposit of the Back- Up Bidder, shall be applied to the purchase price for the Sale.  If the Winning Bidder (or, if the Sale is to be closed with the Back-Up Bidder, then the Back-Up Bidder) fails to consummate the Sale because of a breach or failure to perform on the part of such bidder, then the Debtors and their estates shall be entitled to retain the Deposit of the Winning Bidder (or, if the Sale is to be closed with the Back-Up Bidder, then the Back-Up Bidder) as part of the damages resulting to the Debtors and their estates for such breach or failure to perform.  For the avoidance of doubt, the Debtors' retention of a Deposit shall not constitute a waiver of any of the Debtors' legal or equitable rights relating to a Winning Bidder's or Back-Up Bidder's breach or failure to perform, and all such rights and remedies are preserved.  Within fourteen (14) days of the closing of the Sale of an Asset Pool, the Debtors shall pay any Qualified Round Two Bidder that submitted a reasonable, good faith (as determined by the Debtors in their sole discretion) Second Round Qualifying Bid by the Second Round Bid Deadline and is not a Winning Bidder, an expense reimbursement in an amount not to exceed the Allocated Expense

-12-

Reimbursement Pool for the Asset Pool on which such Qualified Round Two Bidder bid in its Second Round Qualifying Bid.[5]

(e)  **Reservation of Rights**.  Notwithstanding any of the foregoing, the Debtors and their estates reserve the right to, after consultation with the Consultation Parties, modify the Bid Procedures at any time, including, without limitation, to extend the deadlines set forth herein, modify bidding increments, waive terms and conditions set forth herein with respect to any or all potential bidders (including, without limitation, the Bid Requirements), impose additional terms and conditions with respect to any or all Potential Bidders, and adjourn the Sale Hearing.

13.    The following is a summary of the key dates established by the Bid Procedures:

| DATE | DEADLINE/EVENT |
|---|---|
| **July 18, 2023** | Hearing to Consider Approval of Bid Procedures |
| **July 21, 2023** | Service of Sale Notice (defined below) |
| **July 25, 2023** | First Round Bid Deadline |
| **July 31, 2023** | Deadline for Debtors to Designate Qualified Round Two Bidders |
| **August 3, 2023** | Deadline for Qualified Round Two Bidders to Submit Loan Level Pricing |
| **September 4, 2023** | Sale Objection Deadline |
| **September 7, 2023** | Second Round Bid Deadline |
| **September 12, 2023** | Deadline to Declare Winning Bidder |
| **Within One (1) Day of Declaring Winning Bidder** | Deadline to File and Serve Notice of Winning Bidder and to Designate Back Up Bidder |
| **Two Days Prior to Sale Hearing (including any adjournment thereof)** | Debtors' Deadline to Reply to Sale Objections |

---

[5]    As noted, the Debtors seek authority to pay Qualified Round Two Bidders that submitted a reasonable, good faith (as determined by the Debtors in their sole discretion) Second Round Qualifying Bid by the Second Round Bid Deadline and is not a Winning Bidder, an Expense Reimbursement (as defined below)..  Such Expense Reimbursement will be calculated on a per-loan rate, supported by documentation showing the actual invoicing and/or cost associated with diligence.

| September 18, 2023 | Sale Hearing |
|---|---|
| September 22, 2023 | Sale Closing |

14.     The Debtors respectfully submit that the timeline set forth in the Bid Procedures is reasonable and necessary under the circumstances of these Chapter 11 Cases.  Such timeline provides an approximately 4-week period between the filing of this Motion and the First Round Bid Deadline, and approximately an 8-week period between the filing of this Motion and the Second Round Bid Deadline, which will allow parties in interest sufficient time to formulate bids for the Asset Pool or Asset Pools.  Moreover, relevant information regarding the Debtors' Assets has been made available in the Data Room, allowing potential bidders (subject to the execution of an NDA) to immediately conduct diligence on the Debtors' Assets, and the Debtors and their advisors began marketing the Assets prior to the filing of this Motion.

**NOTICE PROCEDURES FOR THE SALE,**
**BID PROCEDURES, AND SALE HEARING**

15.     The Debtors also request approval of the sale notice (the "**Sale Notice**"), substantially in the form attached to the Bidding Procedures Order as **Exhibit 2**.

16.     Upon entry of the Bidding Procedures Order, the Debtors will serve the Sale Notice by regular mail on:  (1) the Office of the United States Trustee for the District of Delaware; (2) all parties known by the Debtors to assert a lien or encumbrances on any of the Assets; (3) all persons known or reasonably believed to have asserted an interest in or claim to any of the Assets; (4) all persons known or reasonably believed to have expressed an interest in acquiring all or a substantial portion of the Assets within the one (1) year prior to the Petition Date; (5) the Office of the United States Attorney for the District of Delaware; (6) the Office of the Attorney General in each state in which the Debtors have operated; (7) the Office of the Secretary of State in each

state in which the Debtors have operated; (8) the Internal Revenue Service and all state and local taxing authorities in the states in which the Debtors have or may have any tax liability; (9) the Federal Trade Commission; (10) the United States Attorney General/Antitrust Division of Department of Justice; (11) all non-Debtor parties to any of the Debtors' contracts; (12) all of the Debtors' other known creditors and equity security holders; and (13) all other parties that have filed a notice of appearance and demand for service of papers in these Chapter 11 Cases as of the service date (collectively, the "**Sale Notice Parties**").

17.    The Debtors will also cause the Sale Notice to be published once in the national edition of *USA Today*, and post the Sale Notice and the Bidding Procedures Order on the website of the Debtors' claims and noticing agent, Stretto, Inc. at https://cases.stretto.com/PeerStreet.

## RELIEF REQUESTED

18.    By this Motion, the Debtors seek entry of: (a) the Bidding Procedures Order, (i) scheduling a date for the Sale Hearing, (ii) authorizing and approving the Bid Procedures and the form and manner of notice thereof, and (iii) granting related relief; and (b) the Sale Order, (i) authorizing and approving the Debtors' entry into an Asset Purchase Agreement, (ii) authorizing and approving the Sale, free and clear of all Encumbrances, and (iii)  granting related relief.

## BASIS FOR RELIEF

**A.**    **Sufficient Business Justification Exists for Consummation of the Sale Under Sections 105(a) and 363(b) of the Bankruptcy Code**

19.    Pursuant to section 105(a) of the Bankruptcy Code, a "[c]ourt may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  Section 363(b) of the Bankruptcy Code provides that a debtor, "after notice

and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b).  Although section 363(b) does not specify a standard for determining when it is appropriate for a court to authorize the use, sale or lease of property of the estate, courts have required that such use, sale or lease be based upon the sound business judgment of the debtor. *See, e.g., Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (internal citation omitted); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070–71 (2d Cir. 1983); *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 147–48 (3d Cir. 1986) (implicitly adopting the "sound business judgment" test of *In re Lionel Corp.*); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 175–76 (D. Del. 1991) (holding that the Third Circuit adopted the "sound business judgment" test in *Abbotts Dairies*); *Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999) (same).

20.    The demonstration of a valid business justification by the debtor leads to a strong presumption "that in making [the] business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company."  *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).

21.    The Debtors submit that their decision to consummate the Sale represents a reasonable exercise of the Debtors' business judgment, and accordingly the Sale should be approved under sections 105(a) and 363(b) of the Bankruptcy Code.  The Debtors will continue to conduct an extensive and fulsome process to market the Assets.  The Sale Process contemplated by the Bid Procedures will ensure that the Debtors' estates receive the highest or best value

available for the Assets by allowing the market to dictate the value of the Asset Pool or Asset Pools, and will provide a greater recovery than would be provided by any other available alternative. Furthermore, compliance with the Bid Procedures will ensure the fairness and reasonableness of the consideration to be paid by the Winning Bidder, and establish that the Debtors and such bidder have proceeded in good faith.

22.    Additionally, the Debtors believe that the notice procedures described above are reasonable and adequate under the circumstances. Bankruptcy Rules 2002(a) and (c) require the Debtors to notify creditors of the Sale, the terms and conditions of the Sale, the time and the deadline for filing any objections. The Debtors believe that the proposed notice procedures fully comply with Bankruptcy Rule 2002, and are reasonably calculated to provide timely and adequate notice of the Asset Purchase Agreement, as modified by any applicable Alternative APA submitted by a Winning Bidder, the Bid Procedures, the Sale Hearing, and the Sale to the Debtors' creditors and all other parties in interest that are entitled to notice, as well as those parties that have expressed a *bona fide* interest in acquiring the Assets.

23.    The Sale, conducted in accordance with the Bid Procedures, will generate significant value for the Debtors' estates, and represents the best path forward for maximizing recoveries in connection with these Chapter 11 Cases. The Debtors submit that ample business justification exists for the consummation of the Sale, and therefore request that this Court approve such Sale.

**B.    The Sale of the Assets Free and Clear of All Encumbrances Is Authorized Under Section 363(f) of the Bankruptcy Code**

24.    Section 363(f) of the Bankruptcy Code authorizes a debtor to sell assets free and clear of liens, claims, interests and encumbrances if:

i.    (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest; (2) such entity consents; (3) such interest is a lien and

> the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (4) such interest is in bona fide dispute; or (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). This provision is supplemented by section 105(a) of the Bankruptcy Code, which provides that "[t]he court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

25.     Because section 363(f) of the Bankruptcy Code is drafted in the disjunctive, satisfaction of any one of its five requirements will suffice to permit the sale of the Assets "free and clear" of liens and interests. *See Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988) (noting that because section 363(f) is written in the disjunctive, a court may approve a sale free and clear if any one subsection is met); *see also Mich. Emp't Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.)*, 930 F.2d 1132, 1147 n.24 (6th Cir. 1991) (same); *In re Bygaph, Inc.*, 56 B.R. 596, 606 n.8 (Bankr. S.D.N.Y. 1986) (same). Furthermore, a debtor possesses broad authority to sell assets free and clear of liens. *See In re Trans World Airlines, Inc.*, 322 F.3d 283, 289 (3d Cir. 2003).

26.     The Debtors submit that, in the interest of attracting the best offers, it is appropriate to sell the Assets on a final "as is" basis, free and clear of any and all Encumbrances (except as otherwise expressly set forth in the Sale Order), in accordance with section 363(f) of the Bankruptcy Code because one or more of the tests of section 363(f) are satisfied with respect to such Sale.

27.     With respect to any other party asserting a lien, claim, encumbrance or the like against the Assets, the Debtors anticipate that they will be able to satisfy one or more of the conditions set forth in section 363(f) of the Bankruptcy Code. In particular, known lienholders will receive notice and will be given sufficient opportunity to object to the relief requested. Such

lienholders that do not object to the Sale should be deemed to have consented. *See FutureSource LLC v. Reuters Ltd.*, 312 F.3d 281, 285-86 (7th Cir. 2002) ("[L]ack of objection (provided of course there is notice) counts as consent. It could not be otherwise; transaction costs would be prohibitive if everyone who might have an interest in the bankrupt's assets had to execute a formal consent before they could be sold.") (internal citations omitted); *Hargrave v. Twp. of Pemberton (In re Tabone, Inc.)*, 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (holding that creditor's failure to object to sale free and clear of liens, claims and encumbrances satisfies section 363(f)(2)); *In re Elliot*, 94 B.R. at 345 (same). Consistent with the foregoing, the Bidding Procedures Order provides that the absence of a timely objection to the Sale of the Assets in accordance therewith shall be "consent" to such Sale within the meaning of section 363(f)(2) of the Bankruptcy Code. Furthermore, the Debtors propose that any Encumbrances asserted against the Assets be transferred to, and attach to, the proceeds of the Sale.

**C. The Sale Should Be Subject to the Protections of Section 363(m) of the Bankruptcy Code**

28. Section 363(m) of the Bankruptcy Code provides, in part, that the reversal or modification on appeal of an authorization of a sale pursuant to section 363(b) or section 363(c) of the Bankruptcy Code does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal. *See* 11 U.S.C. § 363(m). In approving the Sale free and clear of Encumbrances, the Debtors request that the Court find and hold that all purchasers of Assets purchased in accordance with the Bid Procedures are entitled to the protections afforded by section 363(m) of the Bankruptcy Code. Such relief is appropriate in that selection of the Winning Bidder will be the result of a competitive bidding process and arm's-length, good-faith negotiations, and parties in

interest will have the opportunity to review and object to a proposed transaction. *See Esposito v. Title Ins. Co. of Pa. (In re Fernwood Mkts.)*, 73 B.R. 616, 620 (Bankr. E.D. Pa. 1987) (good faith purchasers are protected under section 363(m) where notice is provided to lienholders).

### D.    The Court Should Approve the Bid Procedures

29.    The key objective in any sale of property of a debtor's estate is to maximize the value received by the estate. *See In re Mushroom Transp. Co.*, 382 F.3d 325, 339 (3d Cir. 2004) (finding that debtor "had a fiduciary duty to protect and maximize the estate's assets"); *Official Comm. of Unsecured Creditors of Cybergenics, Corp v. Chinery*, 330 F.3d 548, 573 (3d Cir. 2003) (same). Procedures used to enhance competitive bidding support this objective and, therefore, are appropriate in the context of bankruptcy sales. *See In re O'Brien Envtl. Energy, Inc.*, 181 F.3d 527, 537 (3d Cir. 1999); *see also Integrated Res. Inc.*, 147 B.R. at 659 (stating that bidding procedures "encourage bidding and . . . maximize the value of the debtor's assets").

30.    The Debtors and their professional advisors, including Piper, have designed the Bid Procedures to promote a competitive and fair bidding process and, thus, to maximize value for the Debtors estates and creditors. The Bid Procedures are in line with sale processes in the Debtors' market and will allow the Debtors to conduct the Sale in an orderly, fair and open fashion, which will encourage participation by financially capable bidders, thereby increasing the likelihood that the Debtors will receive the highest or best possible consideration for the Assets. Furthermore, the Bid Procedures provide an appropriate framework for the Debtors and their fiduciaries and professional advisors to review, analyze and compare any bids received to determine which bids are in the best interests of the Debtors' estates and their creditors. Piper, the Debtors' broker in connection with the Sale Process, believes that the Bid Procedures are appropriately crafted to, and will maximize, the value of the Assets.

31.     The Debtors submit that the Bid Procedures are necessary and transparent and will derive the highest or best bids for the Assets.  Therefore, the Debtors request the Court to approve the Bid Procedures.

**E.      The Expense Reimbursement Has a Sound Purpose and Should Be Approved**

32.     As set forth above, the Bid Procedures contemplate that Qualified Bidders that submit good faith Second Round Qualifying Bids by the Second Round Bid Deadline will be entitled to a per-loan expense reimbursement.  Given the nature of the Assets, prospective buyers will be reluctant to invest resources after the First Bid Round without some assurances that, if they are not the Winning Bidder, their out-of-pocket costs will be partially reimbursed.  Without such reimbursement, prospective bidders will either not participate at all, or will offer depressed bid values reflecting their unwillingness to conduct proper due diligence.  In either circumstance, the overall values that could be achieved for the Assets will be suboptimal and the overall goals of the Bid Procedures will be frustrated.

33.     Working with their advisors at Piper, the Debtors expect to offer each non- Winning Bidder that submitted a good faith Second Round Qualifying Bid an expense reimbursement (the "**Expense Reimbursement**") of up to $350 per residential loan bid on and up to $800 per commercial loan bid.  Prior to receiving any Expense Reimbursement, the recipient thereof will be required to submit documentation of actual out-of-pocket costs relating to the Second Bid Round due diligence and, upon the Debtors' satisfaction, in their sole discretion, that the costs are related to the diligence in question, the Debtors will reimburse the non-Winning Bidder up to the amounts per loan as noted above.  As set forth in the Bid Procedures, the Qualified Round Two Bid must be made in good faith to qualify for the Expense Reimbursement and the Debtors retain discretion to pay any such Expense Reimbursement.

34.     The use of bid protections, like the Expense Reimbursement, has become an established practice in chapter 11 cases, and protections in the form of break-up fees and other forms are a normal and, in many cases, necessary component of sale processes conducted under section 363 of the Bankruptcy Code.  *Integrated Res., Inc.*, 147 B.R. at 659-60 ("Break- up fees are important tools to encourage bidding and to maximize the value of the debtor's assets . . . In fact, because the . . . corporation has a duty to encourage bidding, break-up fees can be necessary to discharge [such] duties to maximize value.").  Courts generally recognize that bid protections may be necessary to convince a bidder to make a public bid and set a floor, in that they provide compensation for the risks that the bidder is undertaking.  *In re Hupp Int'l Indus., Inc.*, 140 B.R. 191, 194 (Bankr. N.D. Ohio 1992) ("[W]ithout such fees, bidders would be reluctant to make an initial bid for fear that their first bid would be shopped around for a higher bid from another bidder who would capitalize on the initial bidder's . . . due diligence.").

35.     The Expense Reimbursement will encourage prospective buyers to invest the resources necessary to conduct due diligence with respect to the Assets, thereby prompting such buyers to participate in the bidding process and to submit bids reflecting bid values that will maximize the value of the Assets for the benefit of the estates and creditors.  The decision to pay any such Expense Reimbursement will be solely within the Debtors' discretion and the Debtors will not pay any Expense Reimbursement without first being assured that the out-of-pocket expenses incurred by the prospective buyer are related to the diligence in question through supporting documentation.  The Debtors submit that the Expense Reimbursement will only bolster the goals of the Bid Procedures and is necessary to ensure a fulsome Sale Process.  Accordingly, the Debtors believe that the Expense Reimbursement is fair and appropriate under the circumstances and should be approved.

### **WAIVER OF STAY UNDER BANKRUPTCY RULE 6004(h)**

36.     Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h).  As set forth throughout this Motion, any delay in the Debtors' ability to consummate the Sale on the timeline contemplated by the Bid Procedures would be detrimental to the Debtors, their creditors and estates.

37.     For this reason and those set forth above, the Debtors submit that ample cause exists to justify a waiver of the fourteen day stay imposed by Bankruptcy Rule 6004(h), to the extent applicable.

### **NOTICE**

38.     Notice of this Motion has been provided to: (a) the U.S. Trustee (Attn:  Joseph Cudia (joseph.cudia@usdoj.gov)); (b) the Debtors' thirty (30) largest unsecured creditors; (c) counsel to Magnetar Financial LLC, (i) Royer Cooper Cohen Braunfeld LLC, 1120 Avenue of the Americas, 4th Floor, New York, NY 10036, (Attn:  Marc E. Hirschfield (mhirschfield@rccblaw.com)) and (ii) Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, DE 19801 (Attn:  Russell C. Silberglied (silberglied@rlf.com)), as agent for the prepetition secured lenders; (d) the Internal Revenue Service; (e) the Securities and Exchange Commission; (f) the Office of the United States Attorney for the District of Delaware; (g) the Banks; and (h) all parties that have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002.  Notice of this Motion and any order entered hereon will be served in accordance with Rule 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware.  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary..

## **CONCLUSION**

WHEREFORE, the Debtors request entry of the Bidding Procedures Order and the Sale Order, granting the relief requested herein and such other and further relief as is just and proper.

Dated: June 27, 2023

**YOUNG CONAWAY STARGATT &
TAYLOR, LLP**

*/s/ Shella Borovinskaya*
Joseph Barry (Del. Bar No. 4221)
Ryan M. Bartley (Del. Bar No. 4985)
S. Alexander Faris (Del. Bar No. 6278)
Shella Borovinskaya (Del. Bar No. 6758)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253
Email:   jbarry@ycst.com
          rbartley@ycst.com
          afaris@ycst.com
          sborovinskaya@ycst.com

*Proposed Co-Counsel to the Debtors and
Debtors in Possession*

**KRAMER LEVIN NAFTALIS &
FRANKEL LLP**
P. Bradley O'Neill (*pro hac vice* pending)
Caroline Gange (*pro hac vice* pending)
1177 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 715-9511
Facsimile:  (212) 715-8000
Email:  boneill@kramerlevin.com
          cgange@kramerlevin.com

*Proposed Co-Counsel to the Debtors and
Debtors in Possession*