**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>Peer Street, Inc., *et al.*,[1]<br><br>                Debtors. | Chapter 11<br><br>Case No. 23-10815 (LSS)<br><br>(Jointly Administered)<br><br>**Hearing Date: July 28, 2023 at 10:00 a.m. (ET)**<br>**Objection Deadline: July 21, 2023 at 4:00 p.m. (ET)** |

**DEBTORS' APPLICATION FOR AN ORDER AUTHORIZING THE RETENTION AND
EMPLOYMENT OF YOUNG CONAWAY STARGATT & TAYLOR, LLP AS
CO-COUNSEL FOR THE DEBTORS, EFFECTIVE AS OF THE PETITION DATE**

The above-captioned debtors and debtors in possession (collectively, the "**Debtors**") hereby submit this application (this "**Application**") for the entry of an order, substantially in the form attached hereto as **Exhibit C** (the "**Proposed Order**"), authorizing the retention and employment of Young Conaway Stargatt & Taylor, LLP ("**Young Conaway**" or the "**Firm**") as co-counsel for the Debtors, effective as of the Petition Date (as defined below). In support of this Application, the Debtors rely upon the declaration of Joseph Barry (the "**Barry Declaration**"), which is attached hereto as **Exhibit A**, and the declaration of David M. Dunn (the "**Dunn Declaration**"), which is attached hereto as **Exhibit B**. In further support of this Application, the Debtors respectfully state as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their respective federal tax identification numbers, are: Peer Street, Inc. (8584); PS Funding, Inc. (3268); PeerStreet Licensing, Inc. (9435); Peer Street Opportunity Fund GP, LLC (8491); Peer Street Funding LLC (9485); PSF REO LLC (1013); PS Options LLC (8584); PS Warehouse, LLC (5663); PS Warehouse II, LLC (9252); Peer Street Opportunity Investors II, LP (1586); PS Portfolio-ST1, LLC (1868); PSF Ohio, LLC (9485); PSF TX 1, LLC (9485); PSF TX 2, LLC (2415); PSF TX 4 LLC (9485). The Debtors' service address is c/o Province, LLC 2360 Corporate Circle, Suite 340, Henderson, NV 89074, Attn: David Dunn, Chief Restructuring Officer.

**JURISDICTION AND VENUE**

1. The United States Bankruptcy Court for the District of Delaware (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012 (the "**Amended Standing Order**"). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution. Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief requested herein are section 327(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 2014 Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 2014-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**").

**BACKGROUND**

2. On June 26, 2023 (the "**Petition Date**"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code. These chapter 11 cases are being jointly administered pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1. The Debtors continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No official committees have been appointed in these chapter 11 cases and no request has been made for the appointment of a trustee or an examiner.

3. Additional information regarding the Debtors' business, their capital structure, and the circumstances leading to the filing of these chapter 11 cases is set forth in the *Declaration of David M. Dunn in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 3] (the "**First Day Declaration**").

30200483.6

**RELIEF REQUESTED**

4. By this Application, the Debtors request entry of an order authorizing the Debtors to retain and employ Young Conaway as co-counsel for the Debtors, effective as of the Petition Date.

**BASIS FOR RELIEF**

### I. Young Conaway's Qualifications

5. The Debtors seek to retain Young Conaway as their bankruptcy co-counsel because of the Firm's extensive knowledge, expertise, and experience in the field of debtors' and creditors' rights and business reorganizations under chapter 11 of the Bankruptcy Code. The Debtors submit that Young Conaway's knowledge, expertise, and experience practicing before the Court will enable the Firm to work in an efficient and cost-effective manner on behalf of the Debtors' estates. Additionally, in preparing for these chapter 11 cases, Young Conaway has become familiar with the Debtors' business and affairs and many of the potential legal issues that may arise in the context of these chapter 11 cases. Accordingly, the Debtors believe that Young Conaway is uniquely qualified to represent them as co-counsel in these chapter 11 cases.

6. In selecting Young Conaway, the Debtors reviewed the Firm's rates, including rates for bankruptcy services, and compared them to other law firms that the Debtors have used in the past to determine that the rates are reasonable. Young Conaway has informed the Debtors that its current hourly rates are the Firm's standard hourly rates for work of the nature proposed herein. Young Conaway further informed the Debtors that they operate in both national and regional marketplaces for legal services in which rates are driven by multiple factors relating to the individual lawyer, his or her area of specialty, the Firm's expertise, performance, reputation, the nature of the work involved, and other factors.

7.      The Debtors supervise all legal fees and expenses to reasonably manage costs.  The Debtors have procedures and policies for reviewing fees of outside counsel, and the Debtors intend to review fees in these chapter 11 cases in accordance with such procedures and policies.  The rates Young Conaway charged the Debtors as of the Petition Date are the same as the rates Young Conaway will charge the Debtors post-petition.  Young Conaway has informed the Debtors (and discloses herein) that the Firm's hourly rates are subject to periodic adjustments to reflect economic and other conditions.

8.      The Debtors recognize that it is their responsibility to closely monitor the billing practices of their counsel to ensure that the fees and expenses paid by the Debtors' estates remain consistent with the Debtors' expectations and the exigencies of these cases.  As they did prepetition, the Debtors will continue to review and monitor professional fees and expense reimbursement requests for reasonableness.

**II.    Payment of Fees and Expenses**

9.      Young Conaway will seek Court approval of its compensation and reimbursement of its actual, necessary expenses and other charges incurred by the Firm upon the filing of appropriate applications for interim and final compensation and reimbursement pursuant to sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable orders of the Court.  The principal attorneys and paralegal presently designated to represent the Debtors, and their current standard hourly rates, are:

| Timekeeper | Title | Hourly Rate |
|---|---|---|
| Joseph Barry | Partner | $1,070.00 |
| Ryan M. Bartley | Partner | $890.00 |
| S. Alexander Faris | Associate | $600.00 |
| Shella Borovinskaya | Associate | $505.00 |

30200483.6

4

| Timekeeper | Title | Hourly Rate |
|---|---|---|
| Delali H. Agblevor | Law Clerk | $400.00 |
| Beth Olivere | Paralegal | $355.00 |

10. The hourly rates set forth above are subject to periodic adjustments to reflect economic and other conditions. Other attorneys and paralegals from Young Conaway may from time to time also serve the Debtors in connection with the matters described herein.

11. The hourly rates set forth above are the Firm's standard hourly rates for work of this nature. These rates are set at a level designed to fairly compensate the Firm for the work of its attorneys and paralegals and to cover fixed and routine overhead expenses. It is the Firm's policy to charge its clients in all areas of practice for all other expenses incurred in connection with the client's case. The expenses charged to clients include, among other things, mail and express mail charges, special or hand delivery charges, document processing, photocopying charges, charges for mailing supplies (including, without limitation, envelopes and labels) provided by the Firm to outside copying services for use in mass mailings, travel expenses, expenses for "working meals," computerized research, transcription costs, as well as non-ordinary overhead expenses approved by the client such as secretarial and other overtime. The Firm will charge the Debtors for these expenses in a manner and at rates consistent with charges made generally to the Firm's other clients. The Firm believes that it is fairer to charge these expenses to the clients incurring them than to increase the hourly rates and spread the expenses among all clients.

12. Young Conaway was retained by the Debtors pursuant to an engagement agreement dated March 7, 2023 (the "**Engagement Agreement**"). On March 8, 2023, Young Conaway received a retainer of $75,000.00 (the "**Initial Retainer**") in connection with the planning and preparation of initial documents and the Firm's proposed postpetition representation

of the Debtors. On May 19, 2023, Young Conaway received a supplemental retainer of $75,000.00 (the "**Supplemental Retainer**" and together with the Initial Retainer, the "**Retainer**"). A detailed statement of Young Conaway's invoicing and payment by the Debtors is included in the Barry Declaration. Following a final reconciliation, the Firm is holding approximately $89,156.60 as a Retainer, which will constitute a general security retainer for postpetition services and expenses.

    13. In this instance, the general security retainer is appropriate for several reasons. *See In re Insilco Techs., Inc.*, 291 B.R. 628, 634 (Bankr. D. Del. 2003) ("Factors to be considered, include, but are not necessarily limited to (1) whether terms of an engagement agreement reflect normal business terms in the marketplace; (2) the relationship between the Debtor and the professionals, i.e., whether the parties involved are sophisticated business entities with equal bargaining power who engaged in an arms-length negotiation; [and] (3) whether the retention, as proposed, is in the best interests of the estate . . . ."); *see also In re CTC Commc'ns Grp., Inc.*, Case No. 02-12873 (PJW) (Bankr. D. Del. May 22, 2003), Hr'g Tr. 43:14–15 ("I agree and adopt wholeheartedly Judge Carey's decision in the *Insilco* case."). First, these types of retainer agreements reflect normal business terms in the marketplace. *See Insilco.*, 291 B.R. at 634 ("[I]t is not disputed that the taking of [security] retainers is a practice now common in the market place."). Second, both Young Conaway and the Debtors are sophisticated business entities that have negotiated the Retainer at arm's length. Third, the retention of Young Conaway is in the best interests of the Debtors' estates because the retention agreement and Retainer allow the Debtors to maintain the prepetition relationship established with Young Conaway. Thus, under the standards articulated in *In re Insilco Technologies, Inc.*, and adopted *In re CTC Communications Group, Inc.*, the facts and circumstances of these Chapter 11 Cases support the approval of the security retainer.

14. As set forth in the Barry Declaration, Young Conaway has not shared or agreed to share any of its compensation from the Debtors with any other person, other than as permitted by section 504 of the Bankruptcy Code.

### III. Services to be Provided

15. The professional services that Young Conaway will render to the Debtors include, but shall not be limited to, the following:

   a. providing legal advice and services with respect to the Debtors' powers and duties as debtors in possession in the continued operation of their business, management of their property, the Local Rules, practices, and procedures, and providing substantive and strategic advice on how to accomplish the Debtors' goals in connection with the prosecution of these cases;

   b. pursuing the sale of the Debtors' assets and approval of bid procedures related thereto;

   c. preparing, on behalf of the Debtors, necessary applications, motions, answers, orders, reports, and other legal papers;

   d. appearing in Court and protecting the interests of the Debtors before the Court; and

   e. performing all other legal services for the Debtors that may be necessary and proper in these proceedings as counsel to the Debtors in these chapter 11 cases.

16. By separate applications, the Debtors are seeking Court approval to retain Kramer Levin Naftalis & Frankel LLP as co-counsel and Piper Sandler Loan Strategies LLC as broker. The Debtors also may file motions or applications to employ additional professionals throughout the duration of the case.

17. These professionals will work under the direction of the Debtors' management. The Debtors' directors and management are committed to minimizing duplication of services to reduce professional costs. To that end, the Debtors understand that Young Conaway

is prepared to work closely with each professional to ensure that there is no unnecessary duplication of effort or cost.

### IV. Bankruptcy Rule 2014 Disclosure

18. To the best of the Debtors' knowledge, except as disclosed herein and in the Barry Declaration, Young Conaway has not previously represented the Debtors in litigation and advisory matters. In addition, Young Conaway has not represented the Debtors' creditors, or any other parties-in-interest, or their respective attorneys, in any matter relating to the Debtors or their estates. Young Conaway is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code in that the Firm, its partners, counsel, and associates:

   a. are not creditors, equity security holders, or insiders of the Debtors;

   b. are not and were not, within two (2) years before the Petition Date, directors, officers, or employees of the Debtors; and

   c. do not have an interest materially adverse to the interests of the Debtors' estates or of any class of the Debtors' creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, any of the Debtors, or for any other reason.

19. For the above reasons, the Debtors submit that Young Conaway's employment is necessary and in the best interests of the Debtors and their estates.

### NOTICE

20. Notice of this Application has been provided to: (a) the Office of the United States Trustee for the District of Delaware; (b) the Debtors' twenty (20) largest unsecured creditors; (c) counsel to Magnetar Financial LLC, as agent for the prepetition secured lenders; and (d) all parties that, as of the filing of this Application, have requested notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

30200483.6

## **CONCLUSION**

WHEREFORE, the Debtors request entry of the Proposed Order, granting the relief requested herein and such other and further relief as is just and proper.

Dated: July 7 2023  
        Wilmington, DE

Peer Street, Inc., *et al.*

*/s/ David M. Dunn*  
David M. Dunn  
Chief Restructuring Officer