# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| Peer Street, Inc., *et al.*, | Case No. 23-10815 (LSS) |
| Debtors.[1] | (Jointly Administered) |
| | Hearing Date: July 28 at 10:00 a.m. (ET) |
| | Objection Deadline: July 21, 2023 at 4:00 p.m. (ET) |

## DEBTORS' MOTION TO (I) EMPLOY AND RETAIN PROVINCE, LLC TO PROVIDE THE DEBTORS A CHIEF RESTRUCTURING OFFICER AND CERTAIN ADDIITONAL PERSONNEL, AND (II) DESIGNATE DAVID DUNN AS CHIEF RESTRUCTURING OFFICER EFFECTIVE AS OF THE PETITION DATE

The above-captioned debtors and debtors in possession (collectively, the "**Debtors**") hereby submit this motion (the "**Motion**") for the entry of an order, substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**"), pursuant to section 363 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 2016-2 of the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), authorizing the Debtors to (i) employ and retain Province, LLC ("**Province**") to provide the Debtors with a Chief Restructuring Officer ("**CRO**") and additional personnel, and (ii) designate David Dunn as CRO, effective as of the Petition Date (defined below), pursuant to the engagement agreement by and among the Debtors and Province (the "**Engagement Agreement**"), which is attached hereto as **Exhibit B**. In support of this Motion, the Debtors rely

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their respective federal tax identification numbers, are: Peer Street, Inc. (8584); PS Funding, Inc. (3268); PeerStreet Licensing, Inc. (9435); Peer Street Opportunity Fund GP, LLC (8491); Peer Street Funding LLC (9485); PSF REO LLC (1013); PS Options LLC (8584); PS Warehouse, LLC (5663); PS Warehouse II, LLC (9252); Peer Street Opportunity Investors II, LP (1586); PS Portfolio-ST1, LLC (1868); PSF Ohio, LLC (9485); PSF TX 1, LLC (9485); PSF TX 2, LLC (2415); PSF TX 4 LLC (9485). The Debtors' service address is c/o Province, LLC 2360 Corporate Circle, Suite 340, Henderson, NV 89074, Attn: David Dunn, Chief Restructuring Officer.

30516778.3

upon and incorporate by reference the *Declaration of David Dunn in Support of Debtors' Motion to (I) Employ and Retain Province, LLC to Provide the Debtors a Chief Restructuring Officer and Certain Additional Personnel, and (II) Designate David Dunn as Chief Restructuring Officer, Effective as of the Petition Date*, which is attached hereto as **Exhibit C** (the "**Dunn Declaration**"). In further support of this Motion, the Debtors respectfully represent:

## JURISDICTION

1. The United States Bankruptcy Court for the District of Delaware (the "**Court**") has jurisdiction over these chapter 11 cases and this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of these chapter 11 cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2. Pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final judgment or order with respect to the Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

3. The predicates for the relief requested herein are section 363 of the Bankruptcy Code, Bankruptcy Rule 2016, and Local Rule 2016-2.

## BACKGROUND

4. On June 26, 2023, (the "**Petition Date**"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code. These chapter 11 cases are being jointly administered pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1. The Debtors continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No official committees have been appointed in

30516778.3

2

these chapter 11 cases and no request has been made for the appointment of a trustee or an examiner.

5. Additional information regarding the Debtors' business, their capital structure, and the circumstances leading to the filing of these chapter 11 cases is set forth in the *Declaration of David M. Dunn in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 3] (the "**First Day Declaration**").[2]

## RELIEF REQUESTED

6. By this Motion, the Debtors seek entry of the Proposed Order authorizing the Debtors to (a) employ and retain Province and (b) designate David Dunn as of Chief Restructuring Officer, effective as of the Petition Date.

## RETENTION OF PROVINCE

### I. Province's Qualifications

7. Province has extensive experience representing debtors, official creditors' committees, creditors, trustees, and others in a wide variety of bankruptcy cases, including, as (i) financial advisor to the debtors in 4E Brands, Basic Energy Services, Cherry Man Industries, Cinemex Holdings USA, Codiak BioSciences, Coin Cloud, Frontsight Management, Penthouse Global Media, Superior Linen, True Religion Apparel, Vesta Holdings, and Woodbridge Group of Companies; (ii) financial advisor to the official committees of unsecured creditors in the bankruptcy cases of A.B.C. Carpet, Alex and Ani, Armstrong Flooring, Aruze Gaming, Ascena Group, Avadim Health, BL Restaurants Holding, Carbonlite Holdings, Cherry Man Industries, Cyprus Mines, David's Bridal, DCL Holdings (USA), Destination Maternity, Eastern Outfitters,

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the First Day Declaration.

30516778.3

EHT US1 (Eagle Hospitality), Endo International, Francesca's Holding Corporation, Honx, Insys Therapeutics, Independent Pet Partners, Invacare, J Crew, Lucky's Market, L'Occitane, Mallinckrodt, Mountain Express Oil Company, Nielsen & Bainbridge (NBD Home), Neopharma, One Web, Papyrus, Path Medical, Pier 1, PBS Brand Co. (Punch Bowl), Purdue Pharma, Reverse Mortgage, Revlon, SiO2 Medical Products, Stimwave Technologies, TECT Aerospace Group, True Religion Apparel, Tuesday Morning, Virgin Orbit and White Stallion Energy matters; and (iii) the trustee in Aegean Marine Petroleum, Advance Watch, American Apparel, Borden Dairy, CS Mining, Cycle Force, DCL, EBH Topco, Eclipse Berry Farms, Energy & Exploration (ENXP), Fieldwood, Gump's, Invacare, La Paloma Generating Company, Limetree Bay Services, Mallinckrodt, Maxus Energy, Neogenix, PBS Brand Co. (Punch Bowl), Promise Healthcare Group, RadioShack Corporation, RMIT (Reverse Mortgage), and Samson Resources, Stimwave Technologies, among others.

## II.    Province's History with the Debtors

8.    Province was retained by the Debtors pursuant to the Engagement Agreement, when the Debtors retained David Dunn and additional Province professionals (the "**Province Professionals**") to assist the Debtors with seeking strategic alternatives for their business, including a possible chapter 11 filing. As set forth in the Engagement Agreement, since that time, Province has provided extensive prepetition services in connection with the Debtors' restructuring efforts. The Debtors seek to continue Province's engagement because Province and Mr. Dunn have substantial knowledge of the Debtors' financial and operational conditions, and vast experience with insolvency proceedings, as detailed above. Given this history, the Debtors believe that Mr. Dunn and the Province Professionals are well qualified to represent the Debtors' interests in a cost-effective and efficient manner.

30516778.3

4

**III.     Scope of Services**

9. Subject to the Court's approval, the Debtors propose to retain Province to provide the Debtors with a CRO and the Province Professionals on the terms and conditions set forth in the Engagement Agreement. Generally, the Engagement Agreement contemplates that Province will (i) provide restructuring and advisory services and executive leadership to the Debtors, and (ii) cause Mr. Dunn to serve as CRO. In such capacity, Province, Mr. Dunn, and the Province Professionals will provide various services, which may include, but are not necessarily limited to, the following (collectively, the "**Services**"):

   a. direct all operations of the business of the Debtors including, without limitation, being designated as the responsible person and/or signatory on matters including all bank accounts of the Debtors

   b. direct the preparation of financial information relative to the Debtors;

   c. approve all material cash disbursements, including capital expenditures, as and if reasonably needed, in order to maximize, protect and preserve the assets of the Debtors;

   d. oversee the sale of assets of the Debtors, including any marketing process relating thereto, which may be a Material Transaction (as defined below);

   e. supervise and direct management of vendor, supplier, lender, employee and customer communications, receivables, payables and relationships as needed to maintain the Debtors' value;

   f. retain or terminate any employees, contractors or professionals relative to the Debtors, including the retention and/or termination of counsel;

   g. participate in meetings with third parties and their respective representatives on all material matters related to the Debtors' business;

   h. communicate with counsel in any pending or future legal matters with the Debtors as a party in interest and negotiate resolution of any such matters;

   i. take any and all actions necessary to fulfill the responsibilities set forth above, including executing all necessary documentation on behalf of the Debtors to effectuate same;

   j. communicate with any steering, *ad hoc* or other creditor/equity committees, investor groups, creditors, lenders, and the like, related to the Debtors;

k. perform any restructuring of the capital stack of the Debtors;

l. investigate any claims or potential claims or defenses available to the Debtors;

m. communicate with any governmental bodies relative to the activities of the Debtors and its affiliates; and

n. engage in and consummate any borrowing, lending or other financing or refinancing of the Debtors or their assets, including the pledging of the assets of the Debtors relative thereto.

10. Province will coordinate with the Debtors' other professionals to provide the Debtors with the highest level of service while minimizing duplication of efforts.

### IV. Terms of Compensation

11. As set forth more fully in the Engagement Agreement, and subject to the terms thereof, the Debtors intend to compensate Province for the services of Mr. Dunn and the Province Professionals at their customary hourly billing rates, subject to periodic adjustments, which are as follows:

| **Professional Level** | **Per Hour (USD)** |
|---|---|
| Managing Directors and Principals | $860-$1,350 |
| Vice Presidents, Directors, and Senior Directors | $580-$950 |
| Analysts, Associates, and Senior Associates | $300-$650 |
| Other / Para-Professional | $220-$300 |

12. Prior to the Petition Date, Province received an initial retainer for $150,000 (the "**Initial Retainer**"), which was supplemented several times, totaling $1,037,760 (together with the Initial Retainer, the "**Retaine**r"). In the ninety (90) day period prior to the Petition Date, Province issued invoices totaling $922,279. Province applied each invoice against the Retainer. Accordingly, as of the Petition Date, the Debtors did not owe Province any fees or expenses incurred prior to the Petition Date. After a final reconciliation, Province is holding $115,481 as a

30516778.3

balance of the Retainer, which will constitute a general security retainer for postpetition services and expenses.

13. In this instance, the general security retainer is appropriate for several reasons. *See In re Insilco Techs., Inc.*, 291 B.R. 628, 634 (Bankr. D. Del. 2003) ("Factors to be considered, include, but are not necessarily limited to (1) whether terms of an engagement agreement reflect normal business terms in the marketplace; (2) the relationship between the Debtor and the professionals, i.e., whether the parties involved are sophisticated business entities with equal bargaining power who engaged in an arms-length negotiation; [and] (3) whether the retention, as proposed, is in the best interests of the estate . . . ."); *see also In re CTC Commc'ns Grp., Inc.*, Case No. 02-12873 (PJW) (Bankr. D. Del. May 22, 2003), Hr'g Tr. 43:14–15 ("I agree and adopt wholeheartedly Judge Carey's decision in the *Insilco* case."). First, these types of retainer agreements reflect normal business terms in the marketplace. *See Insilco.*, 291 B.R. at 634 ("[I]t is not disputed that the taking of [security] retainers is a practice now common in the market place."). Second, both Province and the Debtors are sophisticated business entities that have negotiated the Retainer at arm's length. Third, the retention of Province is in the best interests of the Debtors' estates because the Engagement Agreement and Retainer allow the Debtors to maintain the prepetition relationship established with Province. Thus, under the standards articulated in *In re Insilco Technologies, Inc.*, and adopted *In re CTC Communications Group, Inc.*, the facts and circumstances of these chapter 11 cases support the approval of the security retainer.

14. The fees described above are consistent with Province's normal and customary billing practices for cases of this size and complexity, which requires the level and scope of services outlined in the Engagement Agreement. The Debtors believe that the fee

30516778.3

7

arrangement, the security retainer, and other terms and conditions of the Engagement Agreement, including the indemnification provisions, are reasonable terms and conditions of employment in light of (i) industry practice; (ii) market rates charged for comparable services in and out of the chapter 11 context; (iii) Province's substantial experience; and (iv) nature and scope of the work performed by Province prior to the Petition Date and to be performed by Province in these chapter 11 cases.

V.   **Fees and Reporting Requirements**

15.   Upon approval of the relief requested, Province will not be employed as a professional under section 327 of the Bankruptcy Code, and it will not submit fee applications pursuant to Bankruptcy Code sections 330 and 331. Province will, however, file reports of compensation earned, expenses incurred, and current personnel staffed on a monthly basis ("**Compensation Reports**"), and provide notice of the same to the U.S. Trustee and counsel to any official committee appointed in the chapter 11 cases (together, the "**Notice Parties**").  Such Compensation Reports will summarize the services provided and identify the expenses incurred by Province.  Time records will (a) be attached to the Compensation Reports, (b) contained detailed time entries describing the task(s) performed, and (c) be organized by project category. The Compensation Reports will be subject to review by the Court if an objection is filed by any of the Notice Parties and served on the Debtors, the Debtors' bankruptcy co-counsel, and Province within fourteen (14) days after the date each Compensation Report is filed and served (the "**Objection Period**").

16.   As set forth in the Dunn Declaration, no promises have been received by Province or by any member or associate thereof as to compensation in connection with this case. Furthermore, Province has not shared or agreed to share any of its compensation from the Debtors with any other persons, other than employees of Province.

30516778.3

8

17. The Debtors believe that Province is qualified to act as financial advisor to the Debtors, that the terms and conditions of the Engagement Letter are reasonable and, therefore should be authorized and approved by this Court.

**VI.   Indemnification**

18. As more fully set forth in the Engagement Agreement and as a material part of the consideration for Province's agreement to provide services to the Debtors, the Debtors have agreed to indemnify, defend and hold harmless the Indemnified Persons (as defined in the Engagement Agreement). Notwithstanding the language in the Engagement Agreement, however, and as set forth in the Proposed Order, for purposes of the chapter 11 cases, the Debtors will indemnify only those persons serving as executive officers on the same terms as provided to the Debtors' or other officers and directors under the corporate bylaws and applicable state law.

19. The Debtors and Province believe that the indemnification provisions included in the Engagement Agreement are customary and reasonable for Province and comparable firms providing similar services, both in and out of court, and reflect the qualifications and limitations on indemnification provisions that are customary in this district. Moreover, the terms and conditions of the indemnification provisions were negotiated by the Debtors and Province at arms'-length and in good faith.

20. Accordingly, the Debtors submit that the indemnification provisions, viewed in conjunction with the terms of the Proposed Order, are reasonable and in the best interests of the Debtors, their estates, and creditors in light of the fact that the Debtors require Province's services.

**VII.   No Duplication of Services**

21. The Debtors submit that Province's services will complement, and not duplicate, the services rendered by other professionals retained in these chapter 11 cases.

30516778.3

9

**VIII.    Disinterestedness of Province Professionals**

22.    In connection with its proposed retention by the Debtors, Province has conducted a "conflict check" in which Province reviewed the names of the most significant parties in interest in these chapter 11 cases, a list of which is attached as **Schedule 1** to the Dunn Declaration.  A summary of the relationships that Province identified during this process is set forth in the Dunn Declaration.

23.    Province (a) holds no interest materially adverse to the Debtors or their estates or that otherwise creates a conflict of interest regarding the Debtors or the chapter 11 cases, and (b) has no other connection to the Debtors, their creditors, equity holders or related parties except as disclosed herein and in the Dunn Declaration.  Accordingly, although the retention of Province is not governed by section 327 of the Bankruptcy Code, Province is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code.

24.    While Province has undertaken, and continues to undertake, efforts to identify connections with the Debtors and other parties-in-interest, it is possible that connections with some parties-in-interest have not yet been identified.  Should Province, through its continuing efforts, learn of any new connections of the nature described above, Province will promptly file supplemental declarations, as required by Bankruptcy Rule 2014(a).

25.    Province represents many debtors, trustees, and committees in other bankruptcy cases, and the debtors, the members of those committees, or those estates may be creditors of the Debtors.  However, Province will not represent those debtors, committees, or their members with respect to any claims that they may collectively or individually have against the Debtors.

**BASIS FOR RELIEF**

26. The Debtors seek authorization to employ and retain Province to provide the CRO and the additional personnel pursuant to section 363 of the Bankruptcy Code, in each case effective as of the Petition Date. Section 363(b)(1) of the Bankruptcy Code provides in relevant part that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).

27. Under applicable case law in this and other circuits, if a debtor's proposed use of property pursuant to section 363(b) of the Bankruptcy Code represents a reasonable business judgment on the part of the debtor, such use should be approved. *See, e.g., Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983) ("The rule we adopt requires that a judge determining a § 363(b) application expressly find from the evidence presented before him at the hearing a good business reason to grant such an application."); *Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999) ("In determining whether to authorize the use, sale or lease of property of the estate under [section 363(b)], courts require the debtor to show that a sound business purpose justifies such actions."); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (section 363(b) gives the court "broad flexibility" to make payments outside of ordinary course of business as long as the debtor articulates a business justification); *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct").

28. The retention of the CRO and the additional personnel represents a sound exercise of the Debtors' business judgment. As discussed above, Province has extensive experience as advisors for many troubled companies and institutional knowledge that will be valuable to the Debtors during the chapter 11 cases. The services that Province will provide are necessary, appropriate, and in the best interest of the Debtors' estates and creditors, and, therefore, should be approved.

## NOTICE

29. Notice of this Motion has been provided to: (a) the Office of the United States Trustee for the District of Delaware; (b) the Debtors' twenty (20) largest unsecured creditors; (c) counsel to Magnetar Financial LLC, as agent for the prepetition secured lenders; and (d) all parties that, as of the filing of this Motion, have requested notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

*[Remainder of Page Intentionally Left Blank]*

30516778.3

**CONCLUSION**

WHEREFORE, the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and granting such other relief as is just and proper.

Dated: July 7, 2023

| | |
|---|---|
| **YOUNG CONAWAY STARGATT & TAYLOR, LLP** | **KRAMER LEVIN NAFTALIS & FRANKEL LLP** |
| */s/ Shella Borovinskaya* | P. Bradley O'Neill (admitted *pro hac vice*) |
| | Caroline Gange (admitted *pro hac vice*) |
| Joseph Barry (Del. Bar No. 4221) | 1177 Avenue of the Americas |
| Ryan M. Bartley (Del. Bar No. 4985) | New York, New York 10036 |
| Elizabeth S. Justison (Del. Bar No. 5911) | Telephone:  (212) 715-9511 |
| S. Alexander Faris (Del. Bar No. 6278) | Facsimile:  (212) 715-8000 |
| Shella Borovinskaya (Del. Bar No. 6758) | Email:  boneill@kramerlevin.com |
| Rodney Square |         cgange@kramerlevin.com |
| 1000 North King Street | |
| Wilmington, Delaware 19801 | |
| Telephone:  (302) 571-6600 | *Proposed Co-Counsel to the Debtors and Debtors in Possession* |
| Facsimile:  (302) 571-1253 | |
| Email:  jbarry@ycst.com | |
|         rbartley@ycst.com | |
|         ejustison@ycst.com | |
|         afaris@ycst.com | |
|         sborovinskaya@ycst.com | |
| | |
| *Proposed Co-Counsel to the Debtors and Debtors in Possession* | |