## Exhibit B

## Engagement Agreement

**PROVINCE**

**PRIVATE AND CONFIDENTIAL**

April 20, 2023

<u>VIA EMAIL ONLY</u>

Ellen Coleman
PEER STREET, INC.

2121 Park Place
El Segundo, CA 90245

    *In re:  Engagement of Province*

Dear Ms. Coleman:

    This letter sets forth and fully restates the terms and conditions regarding the engagement of Province, LLC ("Province") by Peer Street, Inc. (collectively "Peer Street", "You" or the "Company"), including the scope of the services to be performed and the basis of compensation for those services.

    Pursuant hereto, and, in the event of a bankruptcy filing, subject to approval by the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), Province shall supply the Company with a Chief Restructuring Officer (a "CRO") who shall serve at the direction of the Company's board as directed from time to time, who shall utilize supporting personnel (the "Support Staff") of Province in his role as CRO. Province professional David Dunn is hereby designated by Province to fill the role of CRO during the remainder of the term hereof or until his resignation, whichever first occurs (collectively, the "Services").

    1.    <u>Scope of Services and Company Duties</u>:  Province's responsibilities will be to provide You with the CRO and Support Staff, who will provide the Services as outlined in this Agreement and work collaboratively with other senior management and the Company's professionals. Province will keep You reasonably informed of the progress of the matters we are handling and reasonably respond to Your inquiries. You understand the need for truthful, complete and accurate information. You also understand the need to cooperate and to keep us informed on a timely basis of any developments that may impact the Services.

    The Services to be provided by the CRO and Support Staff at Province during the term hereof shall include, among other things, the following: reviewing and analyzing the value of the Company's non-cash assets and operations; fomulating and advising on strategies to preserve and maximize the value of the Company's assets and operations; formulating a communication strategy with the Company's stakeholders, including creditors and shareholders; communicating and assisting in negotiations with various stakeholders, including creditors and other parties as necessary; preparing financial models for underlying assets and assessment of cash requirements;

DocuSign Envelope ID: D92D7E07-D59E-4A99-BC7D-B6D1E4DFFBCA

**PROVINCE**

Engagement Agreement
Page - 2 -

assisting with the development of a cash flow budget and variance analysis; assisting with the preparation of bankruptcy filings, reports, and schedules, if required; attending meetings with the Company, its counsel, and other stakeholders as required; analyzing any merger, divestiture, joint venture, or investment transaction, including the proposed structure and form thereof; analyzing any new debt or equity capital, including advice on the nature and terms of new securities; assisting the Company in developing, evaluating, structuring, and negotiating the terms and conditions of a restructuring, plan of reorganization, or sale transaction; preparing financial analysis on recovery alternatives to all stakeholders; providing expert testimony and/or litigation support as mutually agreed between Province and the Company; and providing general oversight of any restructuring. The Services, which may be performed by Mr. Dunn and the Support Staff selected by him from time to time, include the following additional nonexhaustive itemization of Services, powers and duties:

- direct all operations of the business of the Company including, without limitation, being designated as the responsible person and/or signatory on all matters, including all bank accounts of the Company;

- direct the preparation of financial information relative to the Company;

- approve all material cash disbursements, including capital expenditures, as and if reasonably needed, in order to maximize, protect and preserve the assets of the Company;

- direct and oversee the sale of assets of the Company, including any marketing process relating thereto, which may be a Material Transaction (as defined below);

- supervise and direct management of vendor, supplier, lender, employee and customer communications, receivables, payables and relationships as needed to maintain Company's value;

- retain or terminate any employees, contractors or professionals relative to the Company, including the retention and/or termination of counsel;

- participate in meetings with third parties and their respective representatives on all material matters related to Company's business;

- communicate with counsel in any pending or future legal matters with the Company as a party in interest and negotiate resolution of any such matters;

- take any and all actions necessary to fulfill the responsibilities set forth above, including executing all necessary documentation on behalf of Company to effectuate same;

- communicate with any steering, *ad hoc* or other creditor/equity committees, investor groups, creditors, lenders, and the like, related to the Company;

- perform any restructuring of the capital stack of the Company;

**PROVINCE**

Engagement Agreement
Page - 3 -

- investigate any claims or potential claims or defenses available to the Company;

- communicate with any governmental bodies relative to the activities of the Company and its affiliates; and

- engage in and consummate any borrowing, lending or other financing or refinancing of the Company or its assets, including the pledging of the assets of the Company relative thereto.

2.    <u>Initial Retainer; Fees and Billing Practices</u>:  The Company will make an initial advance payment to Province in the amount of $150,000 upon execution of this letter.  This advance payment, and all future payments as described in this letter, shall be made via wire transfer or via check and become the property of Province immediately upon receipt by Province and may be used by Province at any time without restriction.  Advance payments will not be put into a trust, escrow, or other segregated account and shall be applied to any invoice as issued for the Services.  To the extent that the amount of any of our invoices or other charges hereunder, when applied against any remaining advance payment amount, would make the advance payment amount less than $150,000, the Company will pay to Province an additional advance payment in an amount necessary such that after the payment of all outstanding invoices Province shall have not less than $150,000 in advance payments on hand. When we have completed our Services to the Company or this agreement is terminated, our final statement will be given to Company and shall reflect the amount, if any, by which the accumulated advance payments have exceeded accumulated charges for all of our Services, and we shall remit that amount forthwith to the Company.

For this engagement, the Company will compensate Province for its Services as follows:

a.    *Hourly Fees.*  Province will receive fees for the Services rendered based on the following hourly compensation structure (the "Hourly Fees"), which reflect Province's current market rates for similar services:

| **Professional Level** | **Per Hour (USD)** |
|---|---|
| Principal and Managing Directors | $860-$1,350 |
| Senior Directors, Directors and Vice Presidents | $580-$950 |
| Senior Associates, Associates and Analysts | $300-$650 |
| Paraprofessionals | $220-$300 |

Mr. Dunn's current hourly rate is $1,250 per hour.  Province may, on a periodic basis, adjust its current rates to reflect the market for its services, and any such rate adjustments shall become effective upon Province providing not less than ten (10) days prior written notice of such rate adjustment to the Company.  Any invoices from Province shall indicate the billable time spent in no more than six (6) minute increments (including a description of the services provided) on any given calendar day by each Province person whose time is being charged to the Company on such invoice.  Province will provide detailed billing statements to the Company, care of the Company's counsel.

**PROVINCE**

Engagement Agreement
Page - 4 -

1. <u>Insurance</u>:  The Company agrees to have in effect at its expense and no cost to any Indemnified Party (defined below), one or more directors and officers liability indemnification insurance policies materially similar to a Broad Form Side-A DIC ("D&O Policies") that shall cover liabilities which may have accrued or that may be incurred by Mr. Dunn in relation to the Services to be provided under this Agreement.

4. <u>Costs and Other Charges</u>:  In general, Province will incur various costs and expenses in the normal course of performing under this Agreement. Costs and expenses commonly include, but are not limited to: reasonable lodging, travel costs, postage, meals, parking, research service fees, legal fees, photocopying and other reproduction and binding costs, messenger and other delivery fees, express mail, information retrieval services, temporary clerical assistance and other similar items. All such costs and expenses will be itemized and charged to the Company at Province's actual cost.

5. <u>Conflicts</u>:  Because Province and its affiliates and subsidiaries comprise a consulting firm that serves clients on an international basis in numerous cases, both in and out of court, it is possible that Province may have rendered or will render services to, or have business associations with, other entities or people which had or have or may have relationships with the Company, including creditors of the Company. Province shall not represent the interests of any person disclosed by the You as being adverse to the You and will otherwise comply with appliaclbe law and any applicable Bankruptcy Code and local rules and procedures regarding the disclosure of conflicts and connections to You.

6. <u>Discharge, Withdrawal, Termination</u>:  Province has the right to withdraw from this engagement, in whole or in part, with ten (10) days written notice for any reason or no reason at all. Reasons for Province's withdrawal may include, but are not limited to, Your breach of this Agreement, Your refusal to cooperate with or to follow advice or a representation of You that is unlawful or unethical. You shall have the right to terminate this engagement at any time by providing Province, care of David Dunn, with (10) days written notice of same.

7. <u>Disclaimer of Guarantee</u>:  Nothing in this Agreement should be construed as a promise or guarantee about the outcome of any of our efforts. Our comments about the outcome or likely results of any effort are expressions of personal opinion only and are not representations or warranties and do not otherwise bind us.

8. <u>Indemnification</u>:

i. The Company agrees to indemnify and hold the Province, along with each of its direct and indirect parents and subsidiaries, along with each of their officers, managers, directors, employees and agents harmless (each, an "Indemnified Party" and collectively, the "Indemnified Parties") against any and all losses, claims, damages, liabilities, penalties, obligations, disbursements and expenses, including the cost (fees and disbursements) for counsel or others (including employees or consultants of Province, based on their then current hourly billing rates) in investigating, preparing or defending any action or claim, whether or not in connection with litigation in which any Indemnified Party is a party, or enforcing the Agreement (including these

indemnity provisions), as and when incurred, caused by, relating to, based upon or arising out of (directly or indirectly) the Indemnified Parties' acceptance of or the performance or nonperformance of their obligations under the Agreement; provided, however, such indemnity shall not apply to any such loss, claim, damage, liability or expense to the extent it is found by a court of competent jurisdiction to have resulted from such Indemnified Party's bad faith, gross negligence or willful misconduct.

ii. The Company also agrees that no Indemnified Party shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company for or in connection with the Agreement of Province, except to the extent that any such liability for losses, claims, damages, liabilities or expenses that are found by a court of competent jurisdiction, pursuant to a final, non-appealable order or judgment, to have resulted from such Indemnified Party's bad faith, gross negligence or willful misconduct. The Company further agrees that it will not, without the prior consent of an Indemnified Party, settle or compromise or consent to the entry of any judgment in any pending or threatened claim, action, suit or proceeding in respect of which such Indemnified Party seeks indemnification hereunder (whether or not such Indemnified Party is an actual party to such claim, action, suit or proceeding) unless such settlement, compromise or consent includes an unconditional release of such Indemnified Party from all liabilities arising out of such claim, action, suit or proceeding.

iii. In the event that, at any time whether before or after termination of the Agreement, as a result of or in connection with the Agreement or Province's and its personnel's role under the Agreement, Province or any Indemnified Party is required to produce any of its personnel (including former employees or consultants) or is required to produce, review or organize any material within such Indemnified Party's possession or control pursuant to a subpoena or other legal process, the Company will reimburse the Indemnified Party for its reasonable and properly documented out-of-pocket expenses, including the reasonable fees and expenses of its counsel, and will compensate the Indemnified Party for the time expended by its personnel based on such personnel's then current hourly rate.

iv. The Indemnified Party will promptly provide notice to the Company of any pending action or proceeding that they become aware of, provided however, that any failure by such Indemnified Party to notify the Company will not relieve the Company from its obligations hereunder, except to the extent that such failure shall have actually prejudiced the defense of such action.

v. The Company shall promptly pay expenses reasonably incurred by any Indemnified Party in defending, participating in, or settling any action, proceeding or investigation in which such Indemnified Party is a party or is threatened to be made a party or otherwise is participating in by reason of the Engagement under the Agreement, and which action, proceeding or investigation would otherwise be subject to the indemnification under this Agreement, upon submission of invoices thereof.

vi. The Company will be liable to pay the amount of any settlement of any claim against an Indemnified Party, when such settlement is made with the Company's written consent.

vii. Neither termination of the Agreement nor termination of Province's engagement shall affect these indemnification provisions, which shall hereafter survive in full force and effect.

9. <u>Information</u>. Company's management shall be responsible for providing the information necessary for our review and analysis. The accuracy and completeness of such information, upon which we rely and which will form the basis of any plan that we help prepare, are the responsibility of Company.

10. <u>Governing Law; Venue</u>: Unless and until a Bankruptcy Case is filed, it is agreed and understood that in any action or proceeding related to this engagement agreement shall be exclusively brought before the courts of competent jurisdiction located within the State of Delaware and that in any action or proceeding between the parties, Delaware law shall govern without further application of its internal choice of law doctrines. During the pendency of any Bankruptcy, the court presiding over same shall have exclusive jurisdiction of any proceedings relating to this Agreement by and between the parties.

11. <u>This is Not an Audit</u>: Company acknowledges and agrees that Province is not being requested to perform an audit, review or compilation, or any other type of financial statement reporting engagement that is subject to the rules of the AICPA, SEC or other state or national professional or regulatory body.

12. <u>No Third-Party Beneficiary</u>: Company acknowledges that all advice (written or oral) provided by Province in connection with this engagement is intended solely for the benefit and use of Company in considering the matters to which this engagement relates. No such advice shall be used for any other purpose or reproduced, disseminated, quoted or referred to at any time in any manner or for any purpose other than accomplishing the tasks referred to herein without Province's prior approval (which shall not be unreasonably withheld), except as required by law.

13. <u>Confidentiality:</u> Province agrees to keep confidential all information obtained from the Company and not to disclose to any other person or entity (other than Province employees providing Services for Company), or use for any purpose other than specified herein, any information pertaining to the Company or any affiliate thereof which is either non-public, confidential or proprietary in nature ("Information") that it obtains or is given access to during the performance of the Services provided hereunder. The foregoing is not intended to nor shall be construed as prohibiting Province from disclosure pursuant to a valid subpoena or court order. Furthermore, Province may make reasonable and customary disclosures of Information in connection with discharging the responsibilities of a financial advisor or Chief Restructuring Officer, as applicable. In addition, Province will have the right to disclose to others in the normal course of business its involvement with the Company.

The Company acknowledges that all information (written or oral) generated by Province in connection herewith is intended solely for the benefit and use of the Company. The Company agrees that no such information shall be used for any other purpose or reproduced, disseminated,

DocuSign Envelope ID: D92D7E07-D59E-4A99-BC7D-B6D1E4DFFBCA

quoted or referred to with attribution to Province at any time in any manner or for any purpose other than accomplishing the tasks referred to herein, without Province's prior approval (which shall not be unreasonably withheld) except as required by law.

14. <u>Bankruptcy Court Approvals</u>:   Within a reasonable time following the filing of any Bankruptcy Case, the Company shall apply to the Bankruptcy Court for approval, pursuant to Section 363 of Title 11 of the United States Code (the "Bankruptcy Code"), of this retention Agreement, including the compensation, and expense provisions hereof and will use commercially reasonable efforts to obtain a final order of the bankruptcy court overseeing the Bankruptcy Case (the "Bankruptcy Court") for authorization thereof.

The Company shall supply Province with a draft of such retention application and any proposed order authorizing Province's retention sufficiently in advance of the filing of such application and proposed order to enable Province and its counsel to review and comment thereon. The retention application and the proposed final order authorizing Province's retention must be acceptable to Province in its sole discretion.  Province shall have no obligation to provide any Services under this Agreement unless the Company's retention of Province under the terms set forth in this Agreement is approved under the Bankruptcy Code by a final order of the Bankruptcy Court no longer subject to appeal, rehearing or reconsideration, and which order is acceptable to Province in all respects.

The Company will work with Province to file staffing reports regarding the approval and the payment of Province's fees and expenses with the Bankruptcy Court as promptly as reasonably practicable.  In the event that this Agreement is terminated (other than for cause) following the Bankruptcy Court's approval of the Company's retention of Province, the Company shall reimburse Province for all fees and expenses earned and reasonably incurred by Province prior to the date of termination, subject to the terms of this Agreement, the order approving the Company's retention of Province, and all other requirements of the Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and applicable local rules and orders (including, for the avoidance of doubt, the requirement to obtain the Bankruptcy Court's approval of the payment of such fees and expenses).

The Company agrees that Province's fees incurred during the course of any Bankruptcy Case as set forth herein, and any payments made during the course of any Bankruptcy Case pursuant to the expense reimbursement provisions of this Agreement will be entitled to priority as expenses of administration under Sections 503(b)(1)(A), 503(b)(2) and 507(a)(2) of the Bankruptcy Code, and will be entitled to the benefits of any "carve-outs" for professional fees and expenses in effect pursuant to one or more debtor-in-possession financing orders entered by the Bankruptcy Court. The Company will use its best efforts to ensure that any cash collateral order, debtor-in-possession financing order and/or similar order entered by the Bankruptcy Court permits the use of cash collateral and financing proceeds for the full and prompt payment of all of Province's fees and expenses contained in this Agreement.

The Company will use commercially reasonable efforts to ensure that, to the fullest extent permitted by law and consistent with the terms of this Agreement, any confirmed Plan in any

Bankruptcy Case contains typical and customary release provisions (both from the Company and from third parties) and exculpation provisions releasing, waiving and forever discharging Province and any of its affiliates and related entities, along with any of their past or current directors, managers, officers, partners, members, shareholders, agents and employees from any claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, and liabilities related to the Company or the engagement described in this Agreement.

15. <u>Entire Agreement</u>:  Unless otherwise agreed in writing between us, all other matters referred to us by the Company for representation shall be governed by the terms of this Agreement, and any other attached scheduled or amendments. This Agreement contains all terms of the agreement between the parties and may not be modified except in writing signed by both of us.

16. <u>Liability Limitation</u>.  No party hereunder shall be liable to the other for any special, consequential or punitive damages.  Notwithstanding any other provision of this Agreement, no Indemnified Party shall be liable for any consequential damages resulting from any management decisions by Company.

If this letter accurately reflects our Agreement, please sign and return it to us.  If you have any questions concerning the provisions of this Agreement, we invite your inquiries. We look forward to working with you.

Very truly yours,

*David Dunn*, solely in his capacity as
Principal of Province

Accepted and Agreed by the Company:

**PEER STREET, INC.**

By:  *Ellen Coleman*
Ellen Coleman
CFO

 Audit trail

| | |
|---|---|
| Title | Province CRO Engagement Letter for Execution |
| File name | PS-Province Engag...ean 4.20.2023.pdf |
| Document ID | b937f8d2ba66c5a938fb87cc7afbbddef026ccdc |
| Audit trail date format | MM / DD / YYYY |
| Status | ● Signed |

## Document History

**SENT** — **04 / 20 / 2023** 17:26:31 UTC-7 — Sent for signature to Ellen Coleman (ecoleman@peerstreet.com) from mjblack@peerstreet.com
IP: 47.152.120.22

**VIEWED** — **04 / 20 / 2023** 17:31:20 UTC-7 — Viewed by Ellen Coleman (ecoleman@peerstreet.com)
IP: 70.187.225.168

**SIGNED** — **04 / 20 / 2023** 17:31:48 UTC-7 — Signed by Ellen Coleman (ecoleman@peerstreet.com)
IP: 70.187.225.168

**COMPLETED** — **04 / 20 / 2023** 17:31:48 UTC-7 — The document has been completed.