**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Peer Street, Inc., *et al.*,[1] | Case No. 23-10815 (LSS) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: July 28, 2023 at 10:00 a.m. (ET)**<br>**Objection Deadline: July 21, 2023 at 4:00 p.m. (ET)** |

**DEBTORS' APPLICATION FOR ENTRY OF AN ORDER**
**(I) AUTHORIZING THE EMPLOYMENT AND RETENTION OF**
**PIPER SANDLER LOAN STRATEGIES, LLC AS EXCLUSIVE INTRODUCING**
**BROKER FOR THE DEBTORS, EFFECTIVE AS OF THE PETITION DATE; AND**
**(II) WAIVING THE INFORMATION REQUIREMENTS OF LOCAL RULE 2016-2(d)**

The above-captioned affiliated debtors and debtors in possession (collectively,
the "**Debtors**") in these chapter 11 cases (the "**Chapter 11 Cases**") respectfully submit this
application (the "**Application**") for entry of an order, substantially in the form attached hereto as
**Exhibit A** (the "**Proposed Order**"), pursuant to sections 327(a) and 328(a) of title 11 of the United
States Code, 11 U.S.C. §§ 101–1532 (the "**Bankruptcy Code**"), Rules 2014 and 2016 of the
Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 2014-1 and
2016-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy
Court for the District of Delaware (the "**Local Rules**"), authorizing the Debtors to retain and
employ Piper Sandler Loan Strategies, LLC ("**Piper Sandler**") as their exclusive introducing
broker, effective as of the Petition Date (as defined below) in accordance with the terms and

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of their respective federal tax identification
numbers, are:  Peer Street, Inc. (8584); PS Funding, Inc. (3268); PeerStreet Licensing, Inc. (9435); Peer Street
Opportunity Fund GP, LLC (8491); Peer Street Funding LLC (9485); PSF REO LLC (1013); PS Options LLC
(8584); PS Warehouse, LLC (5663); PS Warehouse II, LLC (9252); Peer Street Opportunity Investors II, LP
(1586); PS Portfolio-ST1, LLC (1868); PSF Ohio, LLC (9485); PSF TX 1, LLC (9485); PSF TX 2, LLC (2415);
PSF TX 4 LLC (9485).  The Debtors' service address is c/o Province, LLC 2360 Corporate Circle, Suite 340,
Henderson, NV 89074, Attn:  David Dunn, Chief Restructuring Officer.

conditions set forth in that certain retention agreement (the "**Retention Agreement** ), dated as of July 7, 2023,[2] a copy of which is attached hereto as **Exhibit C**.  In support of this Application, the Debtors submit the declaration of Charles K. Smith (the "**Smith Declaration**"), attached hereto as **Exhibit B**.  In further support of this Application, the Debtors respectfully state as follows:

## JURISDICTION

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Debtors consent, pursuant to Local Rule 9013-1(f), to the entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.  Venue of these proceedings and the Application in this Court is proper under 28 U.S.C. §§ 1408 and 1409.

2. The statutory and legal predicates for the relief requested herein are sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, and Local Rules 2014-1 and 2016-2.

## BACKGROUND

3. On June 26, 2023 (the "**Petition Date**"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code.  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a)

---

[2] Capitalized terms used, but not otherwise defined herein, shall have the meaning given to them in the Retention Agreement.

and 1108 of the Bankruptcy Code.  No official committees have been appointed in these chapter 11 cases and no request has been made for the appointment of a trustee or examiner.

4.　　Additional information regarding the Debtors' businesses, capital structure, and the circumstances leading to the filing of the Chapter 11 Cases is set forth in the *Declaration of David M. Dunn in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 3] (the "**First Day Declaration**").

### RELIEF REQUESTED

5.　　By this Application, the Debtors request entry of the Proposed Order (i) authorizing them to retain and employ Piper Sandler as exclusive introducing broker to the Debtors, effective as of the Petition Date, pursuant to the Retention Agreement and the Proposed Order, and (ii) waiving the information requirements of Local Rule 2016-2(d).

### SERVICES TO BE PROVIDED

6.　　Piper Sandler serves as the Debtors' exclusive introducing broker in connection with the sale of substantially all of the Debtors' loan portfolio, with the specific loans identified on Exhibit A to the Retention Agreement and being referred to as the "**Assets**" therein and herein.  As outlined in the Retention Agreement, the Debtors propose to continue to retain Piper Sandler to render, among other things, the following services (the "**Services**"):

a. coordinating with the Debtors in the preparation of the information required for the portfolio analysis and Asset selection;

b. assisting the Debtors in determining the universe of Assets to be sold, assigned or transferred and advising as to the marketability and sale price targets of the Assets;

c. assisting the Debtors in qualifying any Third Party;

d. assisting the Debtors in the coordination and oversight of due diligence by the Third Parties;

e. assisting the Debtors with marketing, arranging, negotiating and closing the execution of the Definitive Agreement(s) and the sale, assignment or other transfer of the Assets; and

30228045.10

f.   if requested by the Debtors, participating in hearings before the Bankruptcy Court and providing relevant testimony with respect to the Services.

7.    In connection with Piper Sandler providing the Services, the Debtors will ensure Piper Sandler and any Third Party the following forms of timely, direct or indirect, assistance:

a.   a designated representative from the Debtors will be available to authorize certain representations and warranties regarding the Assets; *provided*, that the decision as to whether or not to make such representation or warranty shall be solely at the discretion of the Debtors;

b.   loan files and all documentation regarding the Assets as is necessary to complete a sale, assignment or other transfer of the Assets as contemplated in the Retention Agreement; and

c.   designated representatives to address and resolve missing/incomplete Asset documentation, promptly providing updated documentation and payment/resolution activity for the Assets, and promptly addressing questions generated by Piper Sandler, any Third Party and, if applicable, the third party Asset due diligence provider.

## PIPER SANDLER'S QUALIFICATIONS

8.    Piper Sandler is an industry leading broker specializing in performing and classified asset portfolio transactions. The firm executes asset sales across sectors and has extensive relationships with banks and non-bank asset buyers. Piper Sandler has offices in New York, Connecticut and Tennessee and employs 16 full time individuals with an average tenure of more than 18 years and average mortgage finance experience of more than 30 years. In 2022, Piper Sandler acted as broker in 372 closed transactions, representing approximately $5.9 billion in aggregate unpaid principal balance.  From 1996 through May 2023, Piper Sandler acted as broker in 2,393 loan portfolio transactions representing approximately $70.4 billion in aggregate unpaid principal balance.  Piper Sandler is an affiliate of Piper Sandler & Co. ("PSC"), an independent and full-service global investment banking firm with a leading financial services practice.

Through its affiliation with PSC, Piper Sandler has a strong nexus to community, regional and super-regional banks and credit unions throughout the U.S.

9.      The Debtors selected Piper Sandler because Piper Sandler's professionals have considerable expertise and experience in sales of distressed mortgage assets.  Since 2006, Piper Sandler has closed 85 transactions in Sub/Non-Performing loans, representing approximately $4.9 billion in aggregate unpaid principal balance. Notably, in 2018, Piper Sandler acted as broker for one of the largest national insurance companies in connection with the liquidation of all the deposits and assets of their bank. Over an eight-month period, Piper Sandler successfully placed $3.0 billion of deposits and $3.6 billion of Performing and Sub/Non-Performing loans and mortgage servicing rights.

10.      Piper Sandler was engaged prior to the Petition Date to provide the above-mentioned brokerage services to the Debtors, initially pursuant to the Original Engagement Letter dated April 14, 2023, and now pursuant to the Retention Agreement.  Once it became apparent that it may be necessary for the Debtors to commence the Chapter 11 Cases, the expected scope of services to be provided by Piper Sandler crystallized, and the Debtors amended the Original Engagement Letter to reflect Piper Sandler's provision of services in connection with the Chapter 11 Cases.  As a result of rendering prepetition services to the Debtors, including preparation of due diligence and marketing materials prior to the Petition Date, Piper Sandler is intimately familiar with the Debtors' corporate and capital structure, management, operations, and various other aspects of their business.  Piper Sandler has a well-developed knowledge of the Debtors' financial history and business operations and is well-suited to provide the Debtors with the brokerage services contemplated by the Retention Agreement.

30228045.10

**NO DUPLICATION OF SERVICES**

11.     The Debtors believe that the services provided by Piper Sandler will not be duplicative of the services rendered by other professionals to the Debtors during the pendency of the Chapter 11 Cases.  Specifically, Piper Sandler will carry out unique functions directly related to a potential loan sale transaction and will use reasonable efforts to coordinate with the Debtors and their professionals retained in the Chapter 11 Cases to avoid the unnecessary duplication of services.

**PROFESSIONAL COMPENSATION**

12.     Piper Sandler will seek the Court's approval of its compensation for professional services rendered and reimbursement of expenses incurred in connection with the Chapter 11 Cases in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the guidelines established by the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee Guidelines**"), and any other applicable procedures and orders of the Court, and consistent with the proposed compensation set forth in the Retention Agreement.

13.     Brokers such as Piper Sandler do not charge for their services on an hourly basis.  Instead, they customarily charge fees that are contingent upon the occurrence of a specified type of transaction.  The Retention Agreement sets forth the transaction-based fees that are to be payable to Piper Sandler.

14.     As set forth more fully in the Retention Agreement,[3] and subject thereto, Piper Sandler will be compensated as follows (the "**Fee Structure**"):

---

[3]     The Original Engagement Letter provided for the Debtors to pay Piper Sandler a non-refundable retainer fee in the amount of $100,000 (the "**Retainer Fee**"), which will be credited against any Broker Fee or Restructuring Fee accrued.  The Retainer Fee was paid on June 8, 2023.

30228045.10

a. Monthly Fees.  The Debtors shall pay a monthly cash fee in the amount of $100,000 in advance of each month (the "**Monthly Fee**"), which shall be due and payable thirty (30) days from the date the Chapter 11 Cases are commenced and each month thereafter until such time as Piper Sandler's engagement is completed.  One hundred percent (100%) of the Monthly Fees actually paid to Piper Sandler shall be credited to any Broker Fee or Restructuring Fee (each as defined below) becoming due and payable to Piper Sandler.

b. Broker Fee.  The Broker Fee is due and payable in immediately payable funds upon closing of the sale, assignment, or other transfer of Assets from the Debtors to the Third Party, subject to the following conditions. If (i) during the period Piper Sandler is retained by the Debtors, the Debtors enter into a Definitive Agreement with a Third Party or (ii) within eighteen (18) months after the termination of the Retention Agreement (the "**Tail Period**"), the Debtors enter into a Definitive Agreement with a Third Party identified by Piper Sandler on a schedule to be provided by Piper Sandler to the Debtors on a rolling basis through the completion of the first round bid process (and, to the extent this Agreement is terminated before the completion of such first round bid process, any additional parties identified within five business days of such termination), in each case, regarding a sale, assignment or other transfer of any Assets (pursuant to section 363 of the Bankruptcy Code, a chapter 11 plan, or otherwise), the Debtors agree to pay Piper Sandler a fee (the "**Broker Fee**") in an amount equal to (x) in the case of Assets that are loans that are performing, current, non-matured or delinquent thirty (30) days or less, 37.5 basis points (0.375%) multiplied by the aggregate unpaid principal balance of such Assets sold, assigned or otherwise transferred as of the cutoff date specified in the Definitive Agreement, (y) in the case of Assets that are scratch and dent loans or loans that are delinquent more than thirty (30) days, sub-performing, non-performing or matured, 150 basis points (1.50%) multiplied by the aggregate gross proceeds of such Assets sold, assigned or otherwise transferred as of the cutoff date specified in the Definitive Agreement and (z) in the case of Assets that are real property, 300 basis points (3.00%) multiplied by the aggregate sale value of such Assets sold, assigned or otherwise transferred.[4]

c. Restructuring Fee.  If during the term of this Agreement or during the Tail Period, the Debtors pursue a transaction under a chapter 11 plan that results in the Debtors (or a successor to the Debtors created under a chapter 11 plan, such as a liquidating trust) owning all or substantially all of the Assets, the Debtors shall pay Piper Sandler a "**Restructuring**

---

[4]    In addition, if an Asset is sold, assigned or otherwise transferred to a Third Party identified by Piper Sandler during the period specified above, the Debtors agree to pay Piper Sandler the Broker Fee with respect to any additional Assets sold, assigned or otherwise transferred to such Third Party within eighteen (18) months from the closing of the first sale, assignment or other transfer of Assets to such Third Party.

30228045.10

**Fee**" (in lieu of any Broker Fee) equal to $1 million upon the consummation of such transaction.

Further, subject to the Retention Agreement, the Debtors shall reimburse Piper Sandler, upon its request from time to time, for all reasonable and documented expenses arising out of the Retention Agreement, including expenses related to a virtual data room, and the reasonable fees, disbursements and other charges of Piper Sandler's counsel, Paul, Weiss, Rifkind, Wharton & Garrison LLP (without the requirement that the retention of such counsel be, or such counsel's fees, disbursement or other charges be, approved by the Bankruptcy Court) incurred in connection with Piper Sandler's activities under the Retention Agreement, provided such expenses are pre-approved by the Debtors, in writing (such approval not to be unreasonably withheld), before such out-of-pocket expenses become reimbursable.  The Debtors acknowledge such limitations on expense reimbursement in no way limit or impair the provisions contained in the Indemnification Provisions (defined below).

15.     Consistent with and subject to any applicable orders of the Bankruptcy Court, the Debtors shall promptly reimburse Piper Sandler for such expenses as described in the section of the Retention Agreement entitled "Retention of Piper Sandler" upon presentation of an invoice or other similar documentation with reasonable detail.  It is understood that Piper Sandler's reimbursable expenses may include, without limitation, reasonable and documented fees incurred in representing the Debtors' interests during the pendency and following the conclusion of the Chapter 11 Cases, including, without limitation, counsel fees incurred in connection with Piper Sandler's retention and payment under the Retention Agreement.

16.     Piper Sandler's expertise and experience in sales of distressed mortgage assets, particularly its reputation for conducting efficient, fair and balanced marketing/transaction processes that maximize bidder participation, as well its relationships with an extensive number of

depository and non-depository asset buyers, were important factors in determining the Fee Structure. The ultimate benefit to the Debtors of Piper Sandler's services could not be measured merely by reference to the number of hours to be expended by Piper Sandler's professionals in the performance of such services. Moreover, the Fee Structure takes into consideration Piper Sandler's anticipation that it will need to provide a substantial commitment of professional time and effort in order to perform its duties under the Retention Agreement, and in light of the fact that such commitment may foreclose other opportunities for Piper Sandler. Further, the actual time and commitment required of Piper Sandler and its professionals to render services to the Debtors may vary substantially from week to week or month to month, creating "peak load" issues for the firm.

17.     Thus, because of Piper Sandler's expertise, commitment of resources to this engagement to the exclusion of other possible employment, and the time that Piper Sandler has devoted and will continue to devote to this engagement, the Debtors request that the Court approve the Fee Structure pursuant to section 328(a) of the Bankruptcy Code and that the Court evaluate Piper Sandler's final compensation and reimbursement of expenses in the Chapter 11 Cases under the standards of section 328(a) of the Bankruptcy Code rather than under those of section 330 of the Bankruptcy Code, subject to Piper Sandler filing a final fee application seeking approval of the payment of its fees and expenses.

## PIPER SANDLER'S DISINTERESTEDNESS

18.     To the best of the Debtors' knowledge, information, and belief, and except to the extent disclosed herein and in the Smith Declaration, Piper Sandler: (a) is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code; (b) does not hold or represent an interest materially

adverse to the Debtors, their creditors, and shareholders for the matters for which Piper Sandler is to be employed; and (c) has no connection to the Debtors, their creditors, shareholders, or related parties herein except as disclosed in the Smith Declaration.

19.     As of the Petition Date, Piper Sandler does not hold a prepetition claim against the Debtors for services rendered.

20.     To the extent that any new relevant facts or relationships bearing on the matters described herein during the period of Piper Sandler's retention are discovered or arise, Piper Sandler will use reasonable efforts to promptly file a supplemental declaration, as required by Bankruptcy Rule 2014(a).

**RECORDKEEPING**

21.     It is not the general practice of brokerage firms, including Piper Sandler, to keep detailed time records similar to those customarily kept by attorneys.  Because Piper Sandler does not maintain contemporaneous time records in one-tenth hour (0.1) increments or provide or conform to a schedule of hourly rates for its professionals, Piper Sandler respectfully requests, pursuant to Local Rule 2016-2(h), that it be excused from compliance with such requirements. Instead, Piper Sandler requests that it be required only to maintain time records in one hour (1.0) increments setting forth, in a summary format, a description of the services rendered by each professional and the amount of time spent on each date by each such individual in rendering services on behalf of the Debtors.

22.     Piper Sandler will also maintain detailed records of any actual and necessary costs and expenses incurred in connection with the aforementioned services.  Piper Sandler's application for compensation and expenses will be paid by the Debtors pursuant to the terms of

30228045.10

the Retention Agreement, in accordance with Local Rule 2016-2(e) and any procedures established by the Court.

## INDEMNIFICATION AND CONTRIBUTION PROVISIONS

23.     The Debtors have agreed, among other things, to indemnify, and provide contribution and reimbursement to, Piper Sandler and certain related parties in accordance with the indemnification provisions attached as <u>Annex A</u> to the Retention Agreement (the "**Indemnification Provisions**").

24.     The Debtors believe such provisions are customary and reasonable for Piper Sandler's engagement.  Piper Sandler and the Debtors believe that such provisions are comparable to those generally obtained by brokerage, investment banking, and financial advisory firms of similar stature to Piper Sandler and for comparable engagements, both in and out of court.

25.     Accordingly, as part of this Application, the Debtors request that the Court approve the Indemnification Provisions subject to the modifications set forth in the Proposed Order.

## BASIS FOR RELIEF

26.     Section 327(a) of the Bankruptcy Code provides that a debtor is authorized to employ professional persons "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtors] in carrying out their duties under this title." 11 U.S.C. § 327(a).  Additionally, section 328(a) of the Bankruptcy Code provides, in relevant part, that the Debtors "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis . . . ." 11 U.S.C. § 328(a).  Accordingly, section 328(a) of the Bankruptcy

30228045.10

Code permits the compensation of brokers on more flexible terms that reflect the nature of their services and market conditions.

27.     The Debtors submit that approval of the Debtors' retention of Piper Sandler in accordance with the terms and conditions of the Retention Agreement is warranted.  First, the requirements of section 327 of the Bankruptcy Code are satisfied.  Piper Sandler is needed post-petition to assist with marketing, due diligence, negotiations and, as necessary, provide expert advice and testimony regarding the Debtors' chapter 11 sale process and related to transactions to enable the Debtors to discharge their duties as debtors and debtors in possession.  Piper Sandler has extensive experience and an excellent reputation in providing high-quality brokerage services. The Debtors submit that Piper Sandler is well qualified to provide its services to the Debtors in an efficient and timely manner.

28.     Second, the Debtors believe that, based on the work performed, and to be performed, by Piper Sandler over the course of the engagement, the Fee Structure is market-based, fair, and reasonable under the standards set forth in section 328(a) of the Bankruptcy Code.  The Fee Structure reflects Piper Sandler's commitment to the variable level of time and effort necessary to perform the services to be provided, its particular expertise, and the market prices for its services for engagements of this nature both out of court and in the chapter 11 context.

29.     Third, the Indemnification Provisions are reasonable under the circumstances and reflect market conditions, and accordingly should be approved under section 328 of the Bankruptcy Code.  *See, e.g., In re United Artists Theatre Co. v. Walton*, No. 01-1351, 315 F.3d 217 (3rd Cir. 2003) (approving indemnification for investment banker and financial advisor where the indemnity clause, including a carve out for gross negligence, was "reasonable" and therefore, permissible under the Bankruptcy Code).  Courts in this jurisdiction have approved

similar provisions to the Indemnification Provisions in other chapter 11 cases. *See, e.g., In re Hipcricket, Inc.*, Case No. 15-10104 (LSS) (Bankr. D. Del. Feb. 11, 2015) (approving an indemnification provision the court deemed reasonable and reflective of market conditions); *In re Vertis Holdings, Inc.*, No. 12-12821 (CSS) (Bankr. D. Del. Nov. 20, 2012) (same); *In re Neb. Book Co.*, No. 11-12005 (PJW); (Bankr. D. Del. Aug. 10, 2011) (same).

## NOTICE

30.     Notice of this Motion has been provided to: (a) the Office of the United States Trustee for the District of Delaware (Attn:  Joseph Cudia (joseph.cudia@usdoj.gov)); (b) the Debtors' twenty (20) largest unsecured creditors; (c) counsel to Magnetar Financial LLC, (i) Royer Cooper Cohen Braunfeld LLC, 1120 Avenue of the Americas, 4th Floor, New York, NY 10036, (Attn:  Marc E. Hirschfield (mhirschfield@rccblaw.com)) and (ii) Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, DE 19801 (Attn:  Russell C. Silberglied (silberglied@rlf.com)), as agent for the prepetition secured lenders; (d) the Office of the United States Attorney for the District of Delaware; and (e) all parties that have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## CONCLUSION

WHEREFORE, the Debtors request entry of the Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other relief as is just and proper.

Dated: July 7, 2023

By: */s/ David M. Dunn*
        David M. Dunn
        Chief Restructuring Officer

30228045.10

13