# EXHIBIT B

**Smith Declaration**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>Peer Street, Inc., *et al.*,[9]<br><br>　　　　　　　　　Debtors. | Chapter 11<br><br>Case No. 23-10815 (LSS)<br><br>(Jointly Administered) |

**DECLARATION OF CHARLES K. SMITH IN SUPPORT OF THE
DEBTORS' APPLICATION FOR ENTRY OF AN ORDER
(I) AUTHORIZING THE EMPLOYMENT AND RETENTION OF PIPER SANDLER
LOAN STRATEGIES, LLC AS EXCLUSIVE INTRODUCING BROKER FOR THE
DEBTORS, EFFECTIVE AS OF THE PETITION DATE; AND
<u>(II) WAIVING THE INFORMATION REQUIREMENTS OF LOCAL RULE 2016-2(d)</u>**

I, Charles K. Smith being duly sworn, state the following under penalty of perjury.

1.  I am a Managing Director of Piper Sander Loan Strategies, LLC ("**Piper Sandler**") and am duly authorized to make this declaration (the "**Declaration**") on behalf of Piper Sandler. I submit this declaration in support of the *Debtors' Application for Entry an Order (I) Authorizing the Employment and Retention of Piper Sandler Loan Strategies, LLC as Exclusive Introducing Broker for the Debtors, Effective as of the Petition Date; and (II) Waiving the Information Requirements of Local Rule 2016-2(d)* (the "**Application**").[10]

2.  I submit this Declaration in accordance with sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rule 2014, and Local Rule 2014-1 in connection with the

---

[9] The Debtors in these chapter 11 cases, along with the last four digits of their respective federal tax identification numbers, are: Peer Street, Inc. (8584); PS Funding, Inc. (3268); PeerStreet Licensing, Inc. (9435); Peer Street Opportunity Fund GP, LLC (8491); Peer Street Funding LLC (9485); PSF REO LLC (1013); PS Options LLC (8584); PS Warehouse, LLC (5663); PS Warehouse II, LLC (9252); Peer Street Opportunity Investors II, LP (1586); PS Portfolio-ST1, LLC (1868); PSF Ohio, LLC (9485); PSF TX 1, LLC (9485); PSF TX 2, LLC (2415); PSF TX 4 LLC (9485). The Debtors' service address is c/o Province, LLC 2360 Corporate Circle, Suite 340, Henderson, NV 89074, Attn: David Dunn, Chief Restructuring Officer.

[10] Capitalized terms used, but not otherwise defined, herein have the meanings given to them in the Application.

Application.  Unless otherwise stated in this Declaration, I have personal knowledge of the facts set forth herein and, if called as a witness, I would testify thereto.  To the extent that any information disclosed herein requires subsequent amendment or modification upon Piper Sandler's completion of further analysis or as additional creditor information becomes available to it, one or more supplemental declarations will be submitted to the court reflecting the same.

## SERVICES TO BE PROVIDED

3.     Piper Sandler serves as the Debtors' exclusive introducing broker in connection with the sale of substantially all of the Debtors' loan portfolio, with the specific loans identified on <u>Exhibit A</u> to the Retention Agreement and being referred to as the "**Assets**" therein and herein.  As outlined in the Retention Agreement, the Debtors propose to continue to retain Piper Sandler to render, among other things, the following services (the "**Services**"):

   a. coordinating with the Debtors in the preparation of the information required for the portfolio analysis and Asset selection;
   b. assisting the Debtors in determining the universe of Assets to be sold, assigned or transferred and advising as to the marketability and sale price targets of the Assets;
   c. assisting the Debtors in qualifying any Third Party;
   d. assisting the Debtors in the coordination and oversight of due diligence by the Third Parties;
   e. assisting the Debtors with marketing, arranging, negotiating and closing the execution of the Definitive Agreement(s) and the sale, assignment or other transfer of the Assets; and
   f. if requested by the Debtors, participating in hearings before the Bankruptcy Court and providing relevant testimony with respect to the Services.

4.     In connection with Piper Sandler providing the Services, the Debtors will ensure Piper Sandler and any Third Party the following forms of timely, direct or indirect, assistance:

   a. a designated representative from the Debtors will be available to authorize certain representations and warranties regarding the Assets;

30228045.10                                            3

  *provided*, that the decision as to whether or not to make such representation or warranty shall be solely at the discretion of the Debtors;

b. loan files and all documentation regarding the Assets as is necessary to complete a sale, assignment or other transfer of the Assets as contemplated in the Retention Agreement; and

c. designated representatives to address and resolve missing/incomplete Asset documentation, promptly providing updated documentation and payment/resolution activity for the Assets, and promptly addressing questions generated by Piper Sandler, any Third Party and, if applicable, the third party Asset due diligence provider.

## PIPER SANDLER'S QUALIFICATIONS

5. Piper Sandler is an industry leading broker specializing in performing and classified asset portfolio transactions. The firm executes asset sales across sectors and has extensive relationships with banks and non-bank asset buyers. Piper Sandler has offices in New York, Connecticut and Tennessee and employs 16 full time individuals with an average tenure of more than 18 years and average mortgage finance experience of more than 30 years. In 2022, Piper Sandler acted as broker in 372 closed transactions, representing approximately $5.9 billion in aggregate unpaid principal balance. From 1996 through May 2023, Piper Sandler acted as broker in 2,393 loan portfolio transactions representing approximately $70.4 billion in aggregate unpaid principal balance. Piper Sandler is an affiliate of Piper Sandler & Co. ("PSC"), an independent and full-service global investment banking firm with a leading financial services practice. Through its affiliation with PSC, Piper Sandler has a strong nexus to community, regional and super-regional banks and credit unions throughout the U.S.

6. The Debtors selected Piper Sandler because Piper Sandler's professionals have considerable expertise and experience in sales of distressed mortgage assets. Since 2006, Piper Sandler has closed 85 transactions in Sub/Non-Performing loans, representing approximately $4.9 billion in aggregate unpaid principal balance. Notably, in 2018, Piper Sandler

acted as broker for one of the largest national insurance companies in connection with the liquidation of all the deposits and assets of their bank. Over an eight-month period, Piper Sandler successfully placed $3.0 billion of deposits and $3.6 billion of Performing and Sub/Non-Performing loans and mortgage servicing rights.

7.  Piper Sandler was engaged prior to the Petition Date to provide the above-mentioned brokerage services to the Debtors, initially pursuant to the Original Engagement Letter dated April 14, 2023, and now pursuant to the Retention Agreement. Once it became apparent that it may be necessary for the Debtors to commence the Chapter 11 Cases, the expected scope of services to be provided by Piper Sandler crystallized, and the Debtors amended the Original Engagement Letter to reflect Piper Sandler's provision of services in connection with the Chapter 11 Cases. As a result of rendering prepetition services to the Debtors, including preparation of due diligence and marketing materials with regard to the loan and REO portfolio of the Debtors prior to the Petition Date, Piper Sandler is intimately familiar with the Debtors' loan and REO portfolio, and is well-suited to provide the Debtors with the brokerage services contemplated by the Retention Agreement.

## NO DUPLICATION OF SERVICES

8.  The services provided by Piper Sandler will not be duplicative of the services rendered by other professionals to the Debtors during the pendency of the Chapter 11 Cases. Specifically, Piper Sandler will carry out unique functions directly related to a potential loan sale transaction and will use reasonable efforts to coordinate with the Debtors and their professionals retained in the Chapter 11 Cases to avoid the unnecessary duplication of services.

**PROFESSIONAL COMPENSATION**

9. Piper Sandler will seek the Court's approval of its compensation for professional services rendered and reimbursement of expenses incurred in connection with the Chapter 11 Cases in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the guidelines established by the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee Guidelines**"), and any other applicable procedures and orders of the Court, and consistent with the proposed compensation set forth in the Retention Agreement.

10. Brokers such as Piper Sandler do not charge for their services on an hourly basis. Instead, they customarily charge fees that are contingent upon the occurrence of a specified type of transaction. The Retention Agreement sets forth the transaction-based fees that are to be payable to Piper Sandler.

11. As set forth more fully in the Retention Agreement,[11] and subject thereto, Piper Sandler will be compensated as follows (the "**Fee Structure**"):

    d. <u>Monthly Fees</u>. The Debtors shall pay a monthly cash fee in the amount of $100,000 in advance of each month (the "**Monthly Fee**"), which shall be due and payable thirty (30) days from the date the Chapter 11 Cases are commenced and each month thereafter until such time as Piper Sandler's engagement is completed. One hundred percent (100%) of the Monthly Fees actually paid to Piper Sandler shall be credited to any Broker Fee or Restructuring Fee (each as defined below) becoming due and payable to Piper Sandler.

    e. <u>Broker Fee</u>. The Broker Fee is due and payable in immediately payable funds upon closing of the sale, assignment, or other transfer of Assets from the Debtors to the Third Party, subject to the following conditions. If (i) during the period Piper Sandler is retained by the Debtors, the Debtors enter into a Definitive Agreement with a Third Party or (ii) within eighteen (18) months after the termination of the Retention Agreement (the "**Tail Period**"), the Debtors enter into a Definitive

---

[11] Piper Sandler was also paid a $100,000 Retainer Fee on June 8, 2023, which will be credited against any Broker Fee or Restructuring Fee that is earned.

30228045.10                                            6

    Agreement with a Third Party identified by Piper Sandler on a schedule to be provided by Piper Sandler to the Debtors on a rolling basis through the completion of the first round bid process (and, to the extent this Agreement is terminated before the completion of such first round bid process, any additional parties identified within five business days of such termination), in each case, regarding a sale, assignment or other transfer of any Assets (pursuant to section 363 of the Bankruptcy Code, a chapter 11 plan, or otherwise), the Debtors agree to pay Piper Sandler a fee (the "**Broker Fee**") in an amount equal to (x) in the case of Assets that are loans that are performing, current, non-matured or delinquent thirty (30) days or less, 37.5 basis points (0.375%) multiplied by the aggregate unpaid principal balance of such Assets sold, assigned or otherwise transferred as of the cutoff date specified in the Definitive Agreement, (y) in the case of Assets that are scratch and dent loans or loans that are delinquent more than thirty (30) days, sub-performing, non-performing or matured, 150 basis points (1.50%) multiplied by the aggregate gross proceeds of such Assets sold, assigned or otherwise transferred as of the cutoff date specified in the Definitive Agreement and (z) in the case of Assets that are real property, 300 basis points (3.00%) multiplied by the aggregate sale value of such Assets sold, assigned or otherwise transferred.[12]

  f. <u>Restructuring Fee</u>.  If during the term of this Agreement or during the Tail Period, the Debtors pursue a transaction under a <u>chapter</u> 11 plan that results in the Debtors (or a successor to the Debtors created under a chapter 11 plan, such as a liquidating trust) owning all or substantially all of the Assets, the Debtors shall pay Piper Sandler a "**Restructuring Fee**" (in lieu of any Broker Fee) equal to $1 million upon the consummation of such transaction.

  12. Further, subject to the Retention Agreement, the Debtors shall reimburse Piper Sandler, upon its request from time to time, for all reasonable and documented expenses arising out of the Retention Agreement, including expenses related to a virtual data room, and in the event the Chapter 11 Cases are filed, the reasonable fees, disbursements and other charges of Piper Sandler's counsel, Paul, Weiss, Rifkind, Wharton & Garrison LLP (without the requirement that the retention of such counsel be, or such counsel's fees, disbursement or other charges be,

---

[12] In addition, if an Asset is sold, assigned or otherwise transferred to a Third Party identified by Piper Sandler during the period specified above, the Debtors agree to pay Piper Sandler the Broker Fee with respect to any additional Assets sold, assigned or otherwise transferred to such Third Party within eighteen (18) months from the closing of the first sale, assignment or other transfer of Assets to such Third Party.

approved by the Bankruptcy Court) incurred in connection with Piper Sandler's activities under the Retention Agreement, provided such expenses are pre-approved by the Debtors, in writing (such approval not to be unreasonably withheld), before such out-of-pocket expenses become reimbursable. The Debtors acknowledge such limitations on expense reimbursement in no way limit or impair the provisions contained in the Indemnification Provisions.

13. Piper Sandler's expertise and experience in sales of distressed mortgage assets, particularly its reputation for conducting efficient, fair and balanced marketing/transaction processes that maximize bidder participation, as well its relationships with an extensive number of depository and non-depository asset buyers, were important factors in determining the Fee Structure. The ultimate benefit to the Debtors of Piper Sandler's services could not be measured merely by reference to the number of hours to be expended by Piper Sandler's professionals in the performance of such services. Moreover, the Fee Structure takes into consideration Piper Sandler's anticipation that it will need to provide a substantial commitment of professional time and effort in order to perform its duties under the Retention Agreement, and in light of the fact that such commitment may foreclose other opportunities for Piper Sandler. Further, the actual time and commitment required of Piper Sandler and its professionals to render services to the Debtors may vary substantially from week to week or month to month, creating "peak load" issues for the firm.

## RECORDKEEPING

14. It is not the general practice of brokerage firms, including Piper Sandler, to keep detailed time records similar to those customarily kept by attorneys. Because Piper Sandler does not maintain contemporaneous time records in one-tenth hour increments or provide or conform to a schedule of hourly rates for its professionals, Piper Sandler respectfully requests,

pursuant to Local Rule 2016-2(h), that it be excused from compliance with such requirements. Instead, Piper Sandler requests that it be required only to maintain time records in one hour (1.0) increments setting forth, in a summary format, a description of the services rendered by each professional and the amount of time spent on each date by each such individual in rendering services on behalf of the Debtors.

15. Piper Sandler will also maintain detailed records of any actual and necessary costs and expenses incurred in connection with the aforementioned services. Piper Sandler's application for compensation and expenses will be paid by the Debtors pursuant to the terms of the Retention Agreement, in accordance with Local Rule 2016-2(e) and any procedures established by the Court.

**INDEMNIFICATION AND CONTRIBUTION PROVISIONS**

16. The Debtors have agreed, among other things, to indemnify and provide contribution and reimbursement to Piper Sandler and certain related parties in accordance with the Indemnification Provisions attached as Annex A to the Retention Agreement and within the Amendment.

17. I believe the Indemnification Provisions reflected in the Retention Agreement are customary and reasonable terms of consideration for brokerage firms such as Piper Sandler for engagements both out of court and in chapter 11. The terms of the Retention Agreement were fully negotiated between the Debtors and Piper Sandler at arm's length.

**PIPER SANDLER'S DISINTERESTEDNESS**

A. The Piper Sandler Corporate Group

18. Piper Sandler is an affiliate of a securities broker-dealer registered with the Securities and Exchange Commission ("**SEC**") and a direct subsidiary of Piper Sandler Companies

("**Piper Holdings**"), a publicly listed company on the New York Stock Exchange. The Piper Sandler Corporate Group (defined below) conducts its loan strategies services, including the asset sales for the Debtors, out of Piper Sandler. Through Piper Holdings, Piper Sandler has affiliate relationships with dozens of other direct and indirect subsidiaries of Piper Holdings located worldwide (collectively, the "**Affiliated Entities**" and, together with Piper Holdings and Piper Sandler, the "**Piper Sandler Corporate Group**"). As a matter of policy, and as described more fully below, Piper Sandler generally does not share confidential information about its loan strategies clients, including the Debtors, beyond the loan strategies teams providing services to those clients and certain internal groups that support the loan strategies group (e.g., legal and compliance).

19. The Piper Sandler Corporate Group maintains robust policies and procedures that are reasonably designed to segment, detect and prevent the misuse of inside information. These policies and procedures are subject to regulatory oversight and audit by the SEC and Financial Industry Regulatory Authority. These policies apply to, and there are information barriers in place between, the loan strategies team rendering services to the Debtors, on the one hand, and each of the Affiliated Entities, on the other. These information barriers consist of physical and electronic barriers that restrict the flow of information among employees and business divisions, including confidential information. These policies and barriers have been reasonably designed to ensure, among other things, that no client confidential information held by Piper Sandler, including confidential or non-public information concerning the Debtors, is available to employees outside of the loan strategies group, and that client confidential information is shared within Piper Sandler only on a need-to-know basis. More specifically, these information barriers are intended to prevent professionals on the public side of the informational wall (i.e.,

sales, trading, research and asset management professionals) from having access to information on the private side of the wall (i.e., loan strategies and investment banking).

20. These policies also provide that Piper Sandler's team rendering services to the Debtors are prohibited from sharing the Debtors' confidential information with other employees of the Piper Sandler Corporate Group without prior review and approval by the relevant legal and compliance department, and they may only share such information internally within Piper Sandler with employees who need to know such information for purposes of advising the Debtors.

**B. Connections Disclosures**

21. In connection with its proposed retention by the Debtors in these Chapter 11 Cases, Piper Sandler undertook the process as described below to determine whether it had any conflicts or other relationships that might cause it not to be disinterested or to hold or represent an interest adverse to the Debtors. Specifically, Piper Sandler obtained from the Debtors and/or their representatives the names of individuals and entities that may be parties in interest in these Chapter 11 Cases (collectively, the "**Potential Parties in Interest**"), and such parties are listed on Schedule 1 attached hereto.

22. After receiving the names of the Potential Parties in Interest, Piper Sandler compared such names to the names in Piper Sandler's electronic client databases to identify any relationship Piper Sandler may have with any of the Potential Parties in Interest. In addition, Piper Sandler issued a general inquiry to its loan strategies employees as well as the investment banking employees within the Piper Sandler Corporate Group with respect to the Debtors and certain Parties in Interest.

23. To the best of my knowledge and belief, Piper Sandler has not, within the preceding two years, represented any Potential Parties in Interest in connection with matters relating to the Debtors, their estates, assets or businesses and has only represented Potential Parties in Interest in matters unrelated to these Chapter 11 Cases to the extent set forth herein and in Schedule 2 attached hereto.

24. To the best of my knowledge and belief, neither Piper Sandler, nor I, nor any other employee of Piper Sandler that will work on the Debtors' engagement, has any connection with or holds any interest adverse to the Debtors, their estates, or the Potential Parties in Interest, except (i) to the extent set forth in Schedule 2 and (ii) as otherwise set forth below:

    a. Piper Sandler and/or its affiliates likely have provided or are providing services unrelated to the Debtors for companies and individuals that have conducted business in the past and/or currently conduct and/or in the future may conduct business with the Debtors and who may be creditors of the Debtors. To the best of my knowledge, based on the process described herein, Piper Sandler's and/or its affiliates' services to these parties were and are wholly unrelated to the Debtors, their estates or these Chapter 11 Cases. Piper Sandler and/or its affiliates will continue to provide professional services to Potential Parties in Interest in these Chapter 11 Cases; provided that such services do not relate to, or have any direct connection with, these Chapter 11 Cases or the Debtors.

    b. In the ordinary course of their diverse businesses, Piper Sandler and its affiliates appear in numerous cases, proceedings and transactions involving many different banking and financial institutions and attorneys, accountants, investment bankers, financial advisors, financial consultants and other professional advisors, some of which may be or represent claimants and parties in interest in these Chapter 11 Cases. Furthermore, Piper Sandler and its affiliates have in the past and will likely in the future be working with or against other professionals involved in these cases in matters unrelated to these Chapter 11 Cases. To the best of my knowledge, based on the process described herein and my current knowledge of the banking and financial institutions and professionals involved, none of these connections represent an interest adverse to the Debtors or their estates.

    c. Piper Sandler provides loan strategies services to a wide variety of clients. As a result, Piper Sandler may have represented, and may in the

       future represent, certain parties in interest in matters unrelated to these Chapter 11 Cases, either individually or as part of representation of an ad hoc or official committee of creditors or interest holders. To the best of my knowledge, based on the process described herein, none of these connections represent an interest adverse to the Debtors or their estates.

d. Piper Sandler pays taxes to, and has other ordinary course interactions with, taxing authorities in a number of different jurisdictions, some of which may be among the parties in interest in these Chapter 11 Cases. To the best of my knowledge, based on the process described herein and my current knowledge of the taxing authorities involved, none of these connections represent an interest adverse to the Debtors or their estates.

e. Certain employees presently employed by Piper Sandler may have been formerly employed by other investment banking, financial services or other professional services firms that are among, or represent other parties that are among, certain of the parties in interest. While employed by other firms, certain professionals presently employed by Piper Sandler may have represented certain parties in interest in matters unrelated to these Chapter 11 Cases.

f. Members of Piper Sandler may be involved in litigation from time to time that may, or may in the future, involve entities that may be parties in interest. Certain of the parties in interest may also be vendors or insurers of members of Piper Sandler or have other non-loan strategies relationships with members of the Piper Sandler Corporate Group.

25. To the best of my knowledge, information and belief, insofar as I have been able to ascertain after reasonable inquiry, except as set forth above and subject to the information set forth herein and in the attached schedules, Piper Sandler has not been retained to assist any entity or person other than the Debtors on matters relating to, or in direct connection with, these Chapter 11 Cases. Piper Sandler will, however, continue to provide professional services to entities or persons that may be creditors or equity security holders of the Debtors or interested parties in these Chapter 11 Cases; provided that such services do not relate to, or have any direct connection with, these Chapter 11 Cases or the Debtors.

26. I am not related or connected to and, to the best of my knowledge, no other professional of Piper Sandler who will work on this engagement is related or connected to, any

United States Bankruptcy Judge for the District of Delaware or any employee in the Office of the United States Trustee for Region 3.

27. To the best of my knowledge, Piper Sandler has no agreement with any other entity to share with such entity any compensation received by Piper Sandler in connection with the Debtors' bankruptcy cases, other than as permitted by Bankruptcy Code section 504.

## **AFFIRMATIVE STATEMENT OF DISINTERESTEDNESS**

28. Accordingly, except as otherwise set forth herein, insofar as I have been able to determine, none of Piper Sandler, I, nor any employee of Piper Sandler who will work on the engagement, holds or represents any interest adverse to the Debtors or their estates, and Piper Sandler is a "disinterested person" as that term is defined in Bankruptcy Code section 101(14), as modified by Bankruptcy Code section 1107(b), in that Piper Sandler, and its professionals and employees who will work on the engagement:

    a. are not creditors, equity security holders or insiders of the Debtors;

    b. were not, within two years before the Petition Date, a director, officer or employee of the Debtors; and

    c. do not have an interest materially adverse to the interest of the Debtors' estates or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with or interest in the Debtors, or for any other reason.

29. If Piper Sandler discovers additional information that requires disclosure, Piper Sandler will use reasonable efforts to promptly file supplemental disclosure with the Court as required by Bankruptcy Rule 2014(a).

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated:  July 7, 2023

                                              /s/ Charles K. Smith
                                              Charles K. Smith
                                              Managing Director
                                              Piper Sandler Loan Strategies, LLC

**Schedule 1**

**Potential Parties in Interest**

**Debtors**
Peer Street Funding LLC
Peer Street Opportunity Fund, GP, LLC
Peer Street Opportunity Investors II, LP
Peer Street, Inc.
PeerStreet Licensing, Inc.
PS Funding, Inc.
PS Options LLC
PS Portfolio-ST1, LLC
PS Warehouse II, LLC
PS Warehouse, LLC
PSF Ohio, LLC
PSF REO, LLC
PSF TX 1, LLC
PSF TX 2, LLC
PSF TX 4 LLC

**Debtors' Advisors**
Kramer Levin Naftalis & Frankel LLP
Piper Sandler Companies
Province Firm
Stretto, Inc.
Wilson Sonsini Goodrich & Rosati
Young Conaway Stargatt & Taylor, LLP

**Banks**
Pacific Premier Bank
Wells Fargo & Company

**Lenders**
Magnetar Capital
Small Business Administration

**Material Vendors & Contract Counterparties**
Allied Universal Security Systems
Area Wide Realty Corp.
CDW
CES Limited LLC
CloudFlare, Inc.
Control Air Enterprises LLC
CoreLogic Credco LLC

Datasite LLC
DMS Facility Services
FCI Lender Services, Inc.
First American Data & Analytics
First American Mortgage Solutions, LLC
Fox & Roach, LP
Gibbs Realty & Auction Co., Inc.
Kirby Condominium Association, Inc.
Land Gorilla, Inc.
More Property Management Inc.
Surferside Villas HOA
The Wursta Corporation
Thomson Reuters
Trinity Inspection Services LLC
Trustpoint Technologies, Inc.

**Top 20 Unsecured Creditors**
The Debtors' Top 20 Unsecured Creditors on a Consolidated Basis. *See* Docket No. 1.

**Insurance Providers**
Chubb Group of Insurance Companies
Lloyd's of London
Lloyd's of London (K2 Financial Ltd)
North American Capacity Insurance Co./Arch Specialty Insurance Co.
The Hartford Insurance Co.
First Insurance Funding

**Landlords**
2121 Park Place Fee Owner CA, LLC
LiquidSpace, Inc.

**Utility Companies**
Baltimore Department of Public Works
East Bay Municipal Utility District
KC Water
Narragansett Bar Commission
NYC Department of Environmental Protection
Pawtucket Water Supply Board
PG&E
San Francisco Water Power Sewer

**Directors & Officers**
Brewster Johnson
David Dunn
David Eaton
Ellen Coleman
Ivona Smith
M. Freddie Reiss

**Equity Holders**
ACM Alamosa I LP
ACM Alamosa I-A LP
AH Parallel Fund IV, L.P., as nominee
Alpha Street Investment, LLC
Andreessen Horowitz Fund IV, L.P., as nominee
Ang-Chih Kao
Baileyana Investments, LLC
Banyan Tree Capital LLC
Bawag P.S.K. Bank Für Arbeit Und Wirtschaft Und Österreichische Postsparkasse Aktiengesellschaft
Brewster Johnson
Colchis Opportunities Master Fund, L.P.
Diplomat Property Holdings Corp.
Dividend Capital Group, Inc. Pension Trust
Dragonland Global Investments Limited
ERES Peer Street, LLC
Evan Petrie and Jessica Petrie as Community Property with the Right of Survivorship
Felicis Ventures IV, L.P.
GMO GFF Limited Partnership
Greenline Community Growth Fund LLC
Harris Family Trust, dated October 14, 2002
Hollencrest Bayview Partners, LP
J.R. Johnson
Jeff Wilson
Jessica Geraty
Joaquin Hartman
Kevin Marshall
LB2 LLC
LF Ventures LLC
Liberty Ship I LLC
Marc Heenan
Michael L. McHargue
Michael Loop
Montage Ventures Fund I, L.P.
Moore Family Trust dtd 12-29-2010
Navitas Capital II, LP
Rapelye Alden Trust
Rembrandt Venture Partners Fund Three L.P.
Robert P. Brennan Jr.
SCG Private Holdings, LLC
SM PeerStreet LLC
South Bay Financial Group II, LLC
The Campana Family Revocable Trust
The Joyce Family Trust dated February 25, 2004
The Kimberly and Amos Smith Trust
Thomas Fulton Scott Crosby
Thomvest Venture Capital SRL
Toba Capital Ventures Series of Toba Capital LLC
Two Guys on the Beach, LLC
Weber Family Trust
WiL Fund II, L.P.

**Government Agencies/Taxing Authorities**
BED/GMEI Utility
California Department of Financial Protection & Innovation / NMLS
California Secretary of State
City of El Segundo
FFEIC
Georgia Secretary of State
Illinois Secretary of State
Los Angeles County Tax Collector
Massachusetts Secretary of State
Missouri Secretary of State
New Jersey Department of Treasury
Rhode Island Secretary of State
State of Delaware - Division of Corporations
Surety Solutions, a Gallagher Company - Swiss Re Corporate Solutions
United States Securities and Exchange Commission (SEC)
United States Securities and Exchange Commission (SEC) - SEC's Investment Adviser Public Disclosure (IAPD)
Virginia State Corporation Commission

30228045.10

Washington Secretary of State

**Judges**
Dorsey, John T.
Goldblatt, Craig T.
Horan, Thomas M.
Owens, Karen B.
Shannon, Brendan L.
Silverstein, Laurie Selber
Stickles, J. Kate
Walrath, Mary F

**Office of the United States Trustee**
Andrew R. Vara
Benjamin Hackman
Christine Green
Denis Cooke
Diane Giordano
Dion Wynn

Edith A. Serrano
Hannah M. McCollum
Holly Dice
James R. O'Malley
Jane Leamy
Joseph Cudia
Joseph McMahon
Juliet Sarkessian
Lauren Attix
Linda Casey
Linda Richenderfer
Michael Panacio
Nyanquoi Jones
Ramona Harris
Richard Schepacarter
Rosa Sierra-Fox
Shakima L. Dortch
Timothy J. Fox, Jr.

30228045.10

3

**Schedule 2**

Piper Sandler or one of its affiliates has provided within the preceding two years or is currently providing financial advisory or other services to the following non-Debtor Potential Parties in Interest or related parties thereto, in each case, in matters unrelated to the Debtors and the Chapter 11 Cases:

| Potential Party in Interest | Interested Party List Category |
|---|---|
| Pacific Premier Bank | Banks |
| Wells Fargo & Company | Banks |
| Magnetar Capital | Lenders |
| CloudFlare, Inc. | Material Vendors & Contract Counterparties |
| Pacific Premier Bank (SBA PayCheck Protection Program) | Top 20 Unsecured Creditors |
| East Bay Municipal Utility District | Utility Companies |
| Andreessen Horowitz Fund IV, L.P., as nominee | Equity Holders |
| City of El Segundo | Government Agencies/Taxing Authority |