IN THE CIRCUIT COURT OF THE
FOURTH JUDICIAL CIRCUIT, IN AND
FOR DUVAL COUNTY, FLORIDA

JAX SFH PROPERTIES, LLC, a Florida
limited liability company,

CASE NO.: 2020-CA-4441
DIVISION: CV-G

Plaintiff,

vs.

PS FUNDING, INC., a Delaware
Corporation, LAW OFFICES OF DAMIAN
G. WALDMAN, PA., a Florida corporation,
HIS CAPITAL FUNDING CORP. a/k/a
HIS CAPITAL FUNDING, a Florida
corporation,

Defendants.

_____/

## SECOND AMENDED COMPLAINT

Plaintiff, Jax SFH Properties, LLC, a Florida limited liability company ("Plaintiff" or "Jax SFH"), by and through its undersigned counsel, hereby sues defendants, PS FUNDING, INC., a Delaware corporation, (hereinafter "PS Funding"), THE LAW OFFICES OF DAMIAN G. WALDMAN, PA ("Waldman") and HIS CAPITAL FUNDING CORP. a/k/a HIS CAPITAL FUNDING, a Florida corporation ("HIS Capital"), and states as follows:

### General Allegations

1. This is an action for declaratory relief pursuant to Florida Statutes § 86.011 and to quiet title to the Plaintiff in and to lands located in Duval County, Florida.

2. This Court has jurisdiction over the subject matter of a quite title action pursuant to Florida Statutes section 65.011 and Florida Statutes § 65.021.

3. This Court has jurisdiction over a declaratory action pursuant to Florida Statutes § 86.011.

EXHIBIT "1"

4.    **PS Funding** is a Delaware corporation authorized to do business in the State of Florida.

5.    Waldman is, and at all times relevant to this action was, a corporation organized and existing under the laws of Florida, duly registered as a law firm.

6.    HIS Capital is a Florida corporation organized and existing under the laws of Florida.[1]

7.    Plaintiff owns the property in Duval County, Florida, described in the attached **Exhibit A** hereto, (hereafter the "Subject Properties").

8.    Plaintiff deraigns its title and the cloud placed on its title to the Subject Properties by the PS Funding, as follows:

    a.    Plaintiff, Jax SFH Properties, LLC, a Florida limited liability company, is the holder of those certain Deeds recorded in official records book and pages of the public records of Duval County, Florida, as follows:

        i.    Group 1:

            1)  Special Warranty Deed recorded at Book 17525, Page 303;
            2)  Special Warranty Deed recorded at Book 17556, Page 1162;
            3)  Warranty Deed recorded at Book 17625, Page 2285;
            4)  Special Warranty Deed recorded at Book 17636, Page 1934;
            5)  Warranty Deed recorded at Book 17541, Page 261;
            6)  Special Warranty Deed recorded at Book 17547, Page 1086;
            7)  Special Warranty Deed recorded at Book 17559, Page 836;
            8)  Special Warranty Deed recorded at Book 17540, Page 2024;
            9)  General Warranty Deed recorded at Book 17653, Page 1516;
            10) General Warranty Deed recorded at Book 17614, Page 2045; and
            11) Special Warranty Deed recorded at Book 17536, Page 2338.

        ii.    Group 2:

            1)  Special Warranty Deed recorded at Book 17547, Page 2085;

---

[1] HIS Capital acquired the California corporation with the same name.

2) Corporate Warranty Deed recorded at Book 17541, Page 2063;
3) Special Warranty Deed recorded at Book 17546, Page 352;
4) Special Warranty Deed recorded at Book 17557, Page 1294;
5) General Warranty Deed recorded at Book 17675, Page 1475 (although the property described in this deed was sold recently, and is no longer owned by Plaintiff);
6) Special Warranty Deed (Corporate) recorded at Book 17569, Page 61; and
7) Special Warranty Deed recorded at Book 17544, Page 2048.

All in the official public records of Duval County, Florida. A true and correct copy of the Deeds are attached hereto as composite **Exhibit B**.

9.    Without Jax SFH's knowledge or authorization, on November 22, 2016, Steven K. Hendrickson ("Hendrickson") signed a promissory note (the "2016 Note") in the principal amount of $368,225.00 and a mortgage (the "2016 Mortgage") securing payment of the 2016 Note to HIS Capital Funding ISAOA/ATIMA (the "2016 Mortgage Transaction") falsely representing he was acting on behalf of Jax SFH as its authorized agent. The 2016 Mortgage was subsequently recorded on February 14, 2017, in the official public records Book 17877, Page 222, of the public records of Duval County, Florida, and it contained the description of Group 1 of the Subject Properties.

10.    The 2016 Mortgage and 2016 Note were allegedly subsequently assigned by HIS Capital Funding to PS Funding pursuant to that certain Assignment of Mortgage recorded on March 7, 2017, in the official public records Book 17900, Page 1624, of the public records of Duval County, Florida. A copy of the recorded 2016 Mortgage is attached hereto as **Exhibit C**, the 2016 Note is attached hereto as **Exhibit D**, and the assignment of the 2016 Note and Mortgage is attached hereto as **Exhibit E**.

11.    Without Jax SFH's knowledge or authorization, on January 23, 2017, Hendrickson signed a promissory note (the "2017 Note") in the principal amount of $423,600.00 and a mortgage (the "2017 Mortgage") securing payment of the 2017 Note to HIS Capital Funding

ISAOA/ATIMA (the "2017 Mortgage Transaction") falsely representing he was acting on behalf of Jax SFH as its authorized agent. The 2017 Mortgage was subsequently recorded on February 14, 2017, in the official public records Book 17877, Page 222, of the public records of Duval County, Florida, and it contained the description of group 2 of the Subject Properties.

12.    The 2017 Mortgage and 2017 Note were allegedly subsequently assigned by HIS Capital Funding to PS Funding pursuant to that certain Assignment of Mortgage recorded on March 28, 2017, in the official public records Book 17924, Page 535, of the public records of Duval County, Florida. A copy of the recorded 2017 Mortgage is attached hereto as **Exhibit F**, the 2017 Note is attached hereto as **Exhibit G**, and the assignment of the 2017 Note and Mortgage is attached hereto as **Exhibit H**.

13.    On January 30, 2019, without Jax SFH's knowledge or authorization, a Loan Extension Agreement ("2016 Loan Extension Agreement") was entered into to extend the maturity date of the 2016 Mortgage Transaction to December 1, 2020.  The signature of Jinyi Shao on behalf of Jax SFH's Manager, Equity China, Inc., was forged. A copy of the forged 2016 Loan Extension Agreement is attached hereto as **Exhibit I**.

14.    On March 28, 2019, without Jax SFH's knowledge or authorization, a Loan Extension Agreement ("2017 Loan Extension Agreement") was entered into to extend the maturity date of the 2017 Mortgage Transaction to February 1, 2021. The signature of Jinyi Shao on behalf of Jax SFH's Manager, Equity China, Inc., was forged. A copy of the forged 2017 Loan Extension Agreement is attached hereto as **Exhibit J**.

15.    Jinyi Shao never signed the 2016 Loan Extension Agreement or 2017 Loan Extension Agreement and she had no knowledge of either until PS Funding sent a copy of them to Plaintiff's counsel.

16.     PS Funding did not make any effort to verify the identity of the person who purportedly signed the 2016 Loan Extension Agreement and 2017 Loan Extension Agreement on behalf of the Plaintiff, or otherwise have the signatures witnessed or notarized.

17.     At all times material hereto, Equity China, Inc. has been the sole manager of the Jax SFH.

18.     At all times material hereto, the operating agreement for Jax SFH reflected that Equity China, Inc. was the sole manager of Jax SFH, and did not grant any authority, actual or apparent, to Hendrickson or Keith D. Lenger ("Lenger") to serve as the Manager of Jax SFH or to enter into any loans on behalf of Jax SFH or Equity China, Inc. as the Manager of Jax SFH.

19.     At all times material hereto, Equity China, Inc. was listed as the sole manager of the Plaintiff in the records on file with the Florida Department of State, Division of Corporations ("Department").

20.     At all times material hereto, Hendrickson's and Lenger's titles with Jax SFH on record with the Department were each listed as "AMA"[2], and at no time did they reflect a title as "Manager", "M" or "MGR" or any other title resembling manager of Jax SFH.

21.     HIS Capital Funding knew or should have known that Hendrickson, with his title as AMA, and the inconsistency with the Operating Agreement, did not have the actual or apparent authority to sign any of the loan documents on behalf of the Plaintiff at the time of closing of each of the loans.

22.     PS Funding knew or should have known that that Hendrickson, with his title as AMA, did not have the authority to sign any of the loan documents on behalf of the Plaintiff when it took assignment of the loans.

---

[2] "AMA" is Asset Manager Advisor.

23.     The closing, escrow and title agent of the Mortgage Transactions was defendant, Waldman.  Waldman knew or should have known that that Hendrickson, with his title as AMA, and the inconsistency with the Operating Agreement did not have the authority to sign any of the loan documents on behalf of the Plaintiff when it took assignment of the loans.

24.     At or before closing, either Hendrickson or Lenger provided a bank account verification letter for a new bank account they opened at Regions Bank in Plaintiff's name on November 1, 2016, just days before the 2016 Mortgage was signed, indicating that they were each the only authorized signers for the account.

25.     At closing, Waldman disbursed the proceeds of the Mortgage Transactions to the new bank account at Regions Bank created and controlled by Lenger and Hendrickson, thereby allowing them to divert the funds for their own use.

26.     Neither Equity China, Inc. nor any of its directors, officers or representatives, including Jinyi Shao, approved of or were otherwise made aware of the Mortgage Transactions. Ms. Shao and Equity China, Inc. did not learn of the Mortgage Transactions and other related illegal activity until April, 2020.

27.     Hendrickson was never given any actual or apparent authority to sign any mortgage as an Authorized Representative of Jax SFH.

28.     Based on a review of the Department records for Jax SFH, the only party that had the actual or apparent authority to approve and sign a mortgage was Equity China, Inc.

29.     HIS Capital, Waldman and PS Funding knew or should have known that Hendrickson lacked the authority to sign the 2016 Mortgage, 2016 Note, the 2017 Mortgage, 2017 Note and the related closing documents for the Mortgage Transactions on behalf of Jax SFH.

30.     On August 6, 2020, Plaintiff sold one of its properties encumbered by the 2017 Mortgage and was forced to pay PS Funding $200,000 from the proceeds of the sale in order to

obtain a partial release of the 2017 Mortgage from that certain property known as 5134 Ricker Rd, Jacksonville, Florida.

## COUNT I - Declaratory Relief
### (against PS Funding)

31.   Plaintiff re-asserts and re-alleges the allegations contained in paragraphs numbers 1 through 29, above, as though folly set forth herein.

32.   The 2016 Mortgage and 2017 Mortgage have been recorded in the Public Records of Duval County, Florida and, consequently, constitutes a cloud on the title of Plaintiff's property.

33.   This is an action for declaratory relief judgment as to whether or not the 2016 Mortgage and 2017 Mortgage and the 2016 Note and 2017 Note are valid and enforceable.

34.   PS Funding has stated that it believes that the 2016 Mortgage and 2017 Mortgage and the 2016 Note and 2017 Note, as well as the 2016 Loan Extension Agreement and 2017 Loan Extension Agreement, remain valid and enforceable.

35.   Jax SFH believes that the 2016 Mortgage and 2017 Mortgage and the 2016 Note and 2017 Note, and the 2016 Loan Extension Agreement and 2017 Loan Extension Agreement are not enforceable because, at the time that the 2016 Mortgage and 2017 Mortgage and the 2016 Note and 2017 Note were executed, Hendrickson was not the Manager for Jax SFH, and he was not delegated any authority, actual or apparent, to serve as the Manager or convey, on behalf of Jax SFH, any interest in the Subject Properties, and it was apparent based on a review of the Department's records and operating agreement for Jax SFH. Additionally, the 2016 Loan Extension Agreement and 2017 Loan Extension Agreement are not enforceable because they are forgeries and were not signed by anyone with actual or apparent authority on behalf of Plaintiff.

36.   As a result of the foregoing, there is a present, ascertained or ascertainable state of facts or present controversy.

37.     The rights of the Plaintiff are dependent upon these facts and law relating thereto in that: the Plaintiff's rights to the Subject Properties are affected by any subsequent enforcement of the 2016 Mortgage and 2017 Mortgage and the 2016 Note and 2017 Note, and 2016 Loan Extension Agreement and 2017 Loan Extension Agreement as against Plaintiff and the Subject Properties.

38.     The relief sought is not merely giving of legal advice by the courts or the answer to questions propounded from curiosity.

39.     A judicial declaration of Plaintiff's and PS Funding's rights and duties, or simply the enforceability of the Mortgage and Note is necessary and appropriate at this time for the reasons stated above.

WHEREFORE Plaintiff demands the Court enter a declaration that the Mortgage and Note are not valid or enforceable against Plaintiff, enter a Final Judgment forever quieting title to the Property in favor of Plaintiff free and clear of any claims or interest of the PS Funding, to reserve jurisdiction for supplemental relief including recovery of Plaintiff s payment of $200,000 as proceeds from the sale of 5134 Ricker Rd, Jacksonville, Florida, awarding costs, interest and for such other and further relief as this Court deems just and proper.

## COUNT II – QuietTitle
### (against PS Funding)

40.     Plaintiff re-asserts and re-alleges the allegations contained in paragraphs numbers 1 through 29, above, as though fully set forth herein.

41.     The Plaintiff, since acquiring title to the lands involved in this suit, has continued to own the same down to the day of the institution of this suit.

42.     The Plaintiff seeks to quiet title for the benefit of the Plaintiff who is the owner of the Subject Properties.

43.     PS Funding is not the owner of the Subject Properties and does it have any other valid or enforceable rights with regard to the 2016 Mortgage, 2017 Mortgage, 2016 Note and 2017 Note, and 2016 Loan Extension Agreement and 2017 Loan Extension Agreement, and, as established above, has no right to seek foreclosure or any other recourse against the Plaintiff with regard to the Subject Properties, and PS Funding has no other interest therein.

44.     Plaintiff, who owns the Subject Properties, claims relief from such claims or potential claims and from such cloud on the title to the Subject Properties.

45.     Plaintiff is entitled to relief in this Quiet Title action to have any such cloud on the title to the Subject Properties removed.

WHEREFORE, Plaintiff respectfully requests this Honorable Court to grant the following relief: take jurisdiction of this cause and the parties hereto; determine that the 2016 Mortgage, 2017 Mortgage, 2016 Note and 2017 Note, and 2016 Loan Extension Agreement and 2017 Loan Extension Agreement, are null and void against Plaintiff, cancel the mortgages of record, quiet title to the Subject Properties owned by the Plaintiff and against the PS Funding and all persons or entities claiming under the PS Funding, as well as any of its successors and assigns and granting interest, costs in this action and such other relief as the Court may deem proper.

### COUNT III – Negligence
(against HIS Capital)

46.     Plaintiff re-asserts and re-alleges the allegations contained in paragraphs numbers 4 through 29, above, as though fully set forth herein.

47.     This is an action for negligence in excess of $30,000.00 against HIS Capital, and is within the jurisdiction of this Court.

48.     HIS Capital originated the 2016 and 2017 Mortgages and Notes and was the original lender.

49.    HIS Capital owed Plaintiff certain duties and to exercise reasonable care in their roles as the originating lender in the Mortgage Transactions and otherwise deal with Plaintiff in good faith.

50.    HIS Capital undertook the following duties, among others, to Plaintiff: to confirm the authority of the individual allegedly designated to bind the Plaintiff pursuant to Florida law in the subject action, namely, to enter into a mortgage loan on behalf of the entity Plaintiff, while also confirming that the authority has been legally delegated, to reconcile and resolve any conflicts in authority of the person allegedly designated to bind the Plaintiff pursuant to Florida law, and to use good faith and reasonable skill in performance of all duties.

51.    Thereafter, HIS Capital failed to exercise reasonable care and skill in undertaking to perform its duties for the Plaintiff, and negligently and carelessly - failed to identify and/or obtain the approval of anyone with either apparent or actual authority to bind the Plaintiff to the Mortgage Transactions, failed to reconcile and resolve the conflicts in the purported authority by Mr. Hendrickson to bind the Plaintiff.

52.    Had HIS Capital exercised proper care and skill in performing its lending services, the Mortgage Transactions never would have closed and the mortgages would not have been recorded against the subject properties, and funds of the Mortgage Transactions would not have been diverted.

53.    The Plaintiff has suffered losses as a direct and proximate result of HIS Capital's actions, omissions, and/or wrongful acts constituting breaches of their duties owed to the Plaintiff including, but not limited to, compensatory, special, consequential, and incidental damages, interest, and costs.

WHEREFORE, Plaintiff demands judgment for damages against HIS Capital for compensatory, special consequential, incidental, and resulting damages, together with interest, and costs, and for other relief this Court deems just and proper.

### COUNT IV - Negligence
(against Waldman)

54.    Plaintiff re-asserts and re-alleges the allegations contained in paragraphs numbers 4 through 29, above, as though fully set forth herein.

55.    This is an action for negligence in excess of $30,000.00 against Waldman, and is within the jurisdiction of this Court.

56.    Waldman owed Plaintiff certain duties and to exercise reasonable care in its role as the title agent, closing agent, and escrow agent, and to otherwise deal with Plaintiff in good faith.

57.    Waldman undertook the following duties, among others, to Plaintiff: to confirm the authority of the individual allegedly designated to bind the Plaintiff pursuant to Florida law in the subject action, namely, to enter into a mortgage loan on behalf of the entity Plaintiff, while also confirming that the authority has been legally delegated, to reconcile and resolve any conflicts in authority of the person allegedly designated to bind the Plaintiff pursuant to Florida law, and to use good faith and reasonable skill in performance of all duties.

58.    Thereafter, Waldman failed to exercise reasonable care and skill in undertaking to perform its duties for the Plaintiff, and negligently and carelessly - failed to identify and/or obtain the approval of anyone with either apparent or actual authority to bind the Plaintiff to the Mortgage Transactions, failed to reconcile and resolve the conflicts in the purported authority by Hendrickson to bind the Plaintiff.

59.    Had Waldman exercised proper care and skill in performing its title, escrow and closing services, the Mortgage Transactions never would have closed and the mortgages would

not have been recorded against the subject properties, and funds of the Mortgage Transactions would not have been diverted.

60.     The Plaintiff has suffered losses as a direct and proximate result of Waldman's actions, omissions, and/or wrongful acts constituting breaches of its duties owed to the Plaintiff including, but not limited to, compensatory, special, consequential, and incidental damages, interest, and costs.

WHEREFORE, Plaintiff demands judgment for damages against Waldman for compensatory, special consequential, incidental, and resulting damages, together with interest, and costs, and for other relief this Court deems just and proper.

Respectfully submitted this _____ day of July 2022.

FORD, MILLER & WAINER, P.A.

*/s/ P. Campbell Ford*
**P. CAMPBELL FORD, ESQUIRE**
Florida Bar No.: 0480495
**ALISON BLAKE, ESQUIRE**
Florida Bar No.: 0584967
1835 Third Street N.
Jacksonville Beach, Florida 32250
904-390-1970 (tel.); 904-595-5460 (fax)
cford@fordmiller.com
ablake@fordmiller.com
servicefmw@fordmiller.com
*Counsel For Jax SFH Properties, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing document has been provided this _____ day of July 2022 via email through the Florida Court E-Filing Portal to:

Ronald B. Cohn, Esq.
Patrick Ayers, Esq.
BURR & FORMAN, LLP
201 North Franklin Street, Suite 3200
Tampa, FL 33602
rcohn@burr.com
payers@burr.com
dmorse@burr.com
COUNSEL FOR PS FUNDING, INC.

Damian G. Waldman, Esq.
David J. Miller, Esq.
P.O. Box 5162
Largo, FL 33779
damian@dwaldmanlaw.com
david@dwaldmanlaw.com
service@dwaldmanlaw.com
COUNSEL FOR THE LAW OFFICES OF DAMIAN G. WALDMAN, P.A

Michael S. Drews, Esq.
Drews Law Firm
3603-1 Cardinal Point Dr
Jacksonville, FL 32257
mdrews@drewslaw.net
COUNSEL FOR PS FUNDING, INC.

Robert B. Worman, Esq.
Worman & Sheffler
2600 Lake Lucien Drive. Suite 405
Maitland, FL 32751
rworman@wormanlaw.com
COUNSEL FOR ARBOR CONTRACT CARPET, INC.

Jonathan Hackworth, Esq.
1818 N. 15th Street
Tampa, FL 33605-3642
jhack@bhtampa.com
COUNSEL FOR HIS CAPITAL FUNDING CORP. a/k/a HIS CAPITAL FUNDING

Cherry Shaw Pollock, Esq.
117 West Duval Street, Suite 480
Jacksonville, FL 32202
CPollock@coj.net
PRein@coj.net
COUNSEL FOR CITY OF JACKSONVILLE

*/s/ P. Campbell Ford*

# Exhibit A

**Group 1 – 2016 Mortgage – principal $368,225**

Parcel 1:

Lot 20, Block 18, CEDAR HILLS, UNIT 2, according to the plat thereof as recorded in Plat Book 25, Page(s) 32, of the current public records of Duval County, Florida.

Parcel ID no: 105149-0000
Address: 6308 Wilson Blvd, Jacksonville, Florida 32210

Parcel 2:

Lot 1, Block 8, HARBOR VIEW- UNIT TWO, according to the plat thereof as recorded in Plat Book 28, Page(s) 80, of the current public records of Duval County, Florida.

Parcel ID no: 039484-0000
Address: 4872 Clyde Dr, Jacksonville, Florida 32208

Parcel 3:

Lot 22, Block "AA", MELVIN PARK, according to the plat thereof as recorded in Plat Book 34, Page(s) 65, of the current public records of Duval County, Florida.

Parcel ID no: 014272-0260
Address: 7415 Jade Dr N, Jacksonville, Florida 32210

Parcel 5:

Lot 22, Block 12, GILLEN, according to the plat thereof as recorded in Plat Book 1, Page 121, of the former public records of Duval County, Florida.

Parcel ID no: 063403-0000
Address: 3113 Phyllis St, Jacksonville, Florida 32205

Parcel 7:

Lot 28, Block 3, ARLINGTON SHORES 1ST ADDITION, according to the plat thereof as recorded in Plat Book 25, Page(s) 86, of the current public records of Duval County, Florida.

Parcel ID no: 142326-0000
Address: 1020 Eastdale St, Jacksonville, Florida 32211

Parcel 8:

Lot 25, and the West 10 feet of Lot 26, Block 11, ROSE PARK, according to the plat thereof as recorded in Plat Book 5, Page(s) 63, of the current public records of Duval County, Florida.

Parcel ID no: 063665-0000
Address: 3021 Phyllis St, Jacksonville, Florida 32205

Parcel 9:

The North 85.03 feet of the South 170.06 feet of Lot 12, PANAMA GARDENS, according to the plat thereof as recorded in Plat Book 8, Page(s) 37, of the current public records of Duval County, Florida, LESS AND EXCEPT any part as recorded in O.R. Book 9598, Page 2236

Parcel ID no: 034111-0000
Address: 7118 Oakwood St, Jacksonville, Florida 32208

Parcel 10:

Lot 13, Block 10, LAURAL TERRACE, according to the plat thereof as recorded in Plat Book 22, Page(s) 34, of the current public records of Duval County, Florida.

Parcel ID no: 027568-0000
Address: 43 W 41st St, Jacksonville, Florida 32206

Parcel 11:

Lot 28, Block 25, HARBOR VIEW - UNIT EIGHT, according to the plat thereof as recorded in Plat Book 29, Page(s) 93, of the current public records of Duval County, Florida.

Parcel ID no: 039800-0000
Address: 4246 Clyde Dr, Jacksonville, Florida 32208

Parcel 12:

Lot 4, Block 2, BUFFALO GARDENS, according to the plat thereof as recorded in Plat Book 11, Page(s) 6, of the current public records of Duval County, Florida.

Parcel ID no: 033709-0000
Address: 594 60th St E, Jacksonville, Florida 32208

Parcel 13:

Lot 7, Block 2, PEARL CREST, according to the plat thereof as recorded in Plat Book 5, Page(s) 15, of the current public records of Duval County, Florida.

Parcel ID no: 027296-0000
Address: 225 W 40th St, Jacksonville, Florida 32206

## Group 2 – 2017 Mortgage – principal $423,600

Parcel 1:

Lot 23, INDIAN LAKES, according to the plat thereof as recorded in Plat Book 39, Pages 95, Public Records of Duval County, Florida.

Parcel ID no: 014273-4215
Address: 5134 Ricker Road, Jacksonville, FL 32210

Parcel 2:

The East 34 feet 8 inches of Lot 6, Block 129, SPRINGFIELD NORTHERN PORTION, according to the plat thereof as recorded in Plat Book 2, Pages 40, Public Records of Duval County, Florida.

Parcel ID no: 073167-0000
Address: 118-120 West 11th Street, Jacksonville, FL 32220

Parcel 3:

Lot 19, Block 2, LAKE FOREST HILLS UNIT 1, according to the plat thereof as recorded in Plat Book 21, Pages 77, Public Records of Duval County, Florida.

Parcel ID no: 024498-0010
Address: 1516 Ribault Scenic Drive, Jacksonville, FL 32208

Parcel 4:

Lot 25, Block 6, LAKE PARK ESTATES, UNIT 3, according to the plat thereof as recorded in Plat Book 31, Pages 64, Public Records of Duval County, Florida.

Parcel ID no: 025975-0000
Address: 2429 Saint Leger Drive, Jacksonville, FL 32208

Parcel 5:

Lot 3, Block 18, LAKE FOREST HILLS UNIT 2, according to the plat threrof as recorded in Plat Book 22, Pages 16, Public Records of Duval County, Florida.

Parcel ID no: 024784-0000
Address: 1824 Rugby Road, Jacksonville, FL 33208

Parcel 6:

Lot 7, Block 1, LINCOLN ESTATES UNIT 2, according to the plat thereof as recorded in Plat Book 30, Pages 33, Public Records of Duval County, Florida.

Parcel ID no: 040718-0000
Address: 6946 West Virginia Avenue, Jacksonville, FL 32209

Parcel 7:

Lots 36 and 37, TONI HEIGHTS, according to the plat thereof as recorded in Plat Book 23, Pages 11, Public Records of Duval County, Florida.

Parcel ID no: 025754-0000
Address: 6336 Toni Avenue, Jacksonville, FL 32208

# Exhibit B

Prepared by:

Estate Title, L.C. dba Estate Title & Trust
10450 San Jose Boulevard, Suite 3
Jacksonville, Florida 32257

File Number: ▮

Return toGrantee

$45,500.00

# General Warranty Deed

**THIS INDENTURE,** made this _JULY 6, 2016_ A.D. By BRUCE J. ORLANDI, whose address is: 223 George Wood Road, Somers, CT 06071 , hereinafter called the grantor, to JAX SFH Properties LLC, whose post office address is: _221 N Hogan St #405 Jacksonville, FL 32202_, hereinafter called the grantee:

(Whenever used herein the term "grantor" and "grantee" include all the parties to this instrument and the heirs, legal representatives and assigns of individuals, and the successors and assigns of corporations)

**Witnesseth,** that the grantor, for and in consideration of the sum of Ten Dollars, ($10.00) and other valuable considerations, receipt whereof is hereby acknowledged, hereby grants, bargains, sells, aliens, remises, releases, conveys and confirms unto the grantee, all that certain land situate in Duval County, Florida, viz:

Lot 20, Block 18, Cedar Hills Unit 2, according to plat thereof as recorded in Plat Book 25, pages 32, 32A, 32B & 32C, of the current public records of Duval County, Florida.

Parcel ID Number: 105149-0000

THE LAND DESCRIBED HEREIN IS NOT THE HOMESTEAD OF THE GRANTOR(S) AND NEITHER THE GRANTOR(S) NOR THE GRANTOR(S) SPOUSE, NOR ANYONE FOR WHOSE SUPPORT THE GRANTOR(S) IS RESPONSIBLE, RESIDES ON OR ADJACENT TO SAID LAND.

**Together** with all the tenements, hereditaments and appurtenances thereto belonging or in anywise appertaining.

**To Have and to Hold,** the same in fee simple forever.

**And** the grantor hereby covenants with said grantee that the grantor is lawfully seized of said land in fee simple; that the grantor has good right and lawful authority to sell and convey said land; that the grantor hereby fully warrants the title to said land and will defend the same against the lawful claims of all persons whomsoever; and that said land is free of all encumbrances except taxes accruing subsequent to December 31, 2015.

DEED Individual Warranty Deed - Legal on Face

Prepared by:

Estate Title, L.C. dba Estate Title & Trust
10450 San Jose Boulevard, Suite 3
Jacksonville, Florida 32257

File Number: ▓▓▓▓▓

Return to Grantee

**In Witness Whereof,** the said grantor has signed and sealed these presents the day and year first above written.

*Signed, sealed and delivered in our presence:*

Witness (#1)
Printed Name   _Annette Orlandi_

_Bruce J Orlandi_ _____ (Seal)
**BRUCE J. ORLANDI**

Witness (#2)
Printed Name   _Gary Sullivan_

_____ (Seal)

State of   _Connecticut_
County of   _Hartford_

The foregoing instrument was acknowledged before me this __6th__ day of __July__, 20_16_ by BRUCE J. ORLANDI, who is/are personally known to me or who has produced  drivers license  as identification.

Notary Public
Print Name:   _Gary L Sullivan_
My Commission Expires:   _Sept 30, 2016_

Gary L. Sullivan, Notary Public.
State of Connecticut
My Commission Expires
September 30, 2016

DEED Individual Warranty Deed - Legal on Face

This Instrument Prepared by:
Elizabeth Hammond for
Albertelli Law
5404 Cypress Center Drive, Suite 300
Tampa, FL 33609
Our File Number:

Property Appraisers Parcel I.D. (Folio) Number: 039484-0000

## SPECIAL WARRANTY DEED

$49,000.

This Special Warranty Deed, made this 25th day of April, 2016, between Fannie Mae a/k/a Federal National Mortgage Association, having its place of business at: P.O. Box 650043, Dallas, TX 75265-0043 here by called the grantor,

to JAX SFH Properties LLC, a Florida Limited Liability Company, whose Post Office address is: 5 W Forsyth Street, #200, Jacksonville, FL 32202, hereinafter called the grantee,

W I T N E S S E T H: That grantor, for and in consideration of the sum of $10.00 and other valuable considerations, receipt whereof is hereby acknowledged, by these presents does grant, bargain, sell, aliens, remis, releases, conveys and confirms unto grantee, all that certain land situate in Duval County, Florida, viz:

Lot 1, Block 8, Harbor View – Unit Two, according to the map or plat thereof, as recorded in Plat Book 28, Page(s) 80, of the Public Records of Duval County, Florida.

TOGETHER with all the tenements, hereditaments and appurtenances thereto belonging or in anywise appertaining.
TO HAVE AND TO HOLD the same in fee simple forever.

GRANTEE HEREIN SHALL BE PROHIBITED FROM CONVEYING CAPTIONED PROPERTY FOR A SALES PRICE OF GREATER THAN $58,800.00 FOR A PERIOD OF 3 MONTH(S) FROM THE DATE OF THE RECORDING OF THIS DEED. GRANTEE SHALL ALSO BE PROHIBITED FROM ENCUMBERING SUBJECT PROPERTY WITH A SECURITY INTEREST IN THE PRINCIPAL AMOUNT OF GREATER THAN $58,800.00 FOR A PERIOD OF 3 MONTHS (S) FROM THE DATE OF THE RECORDING OF THIS DEED. THESE RESTRICTIONS SHALL RUN WITH THE LAND AND ARE NOT PERSONAL TO GRANTEE

THIS RESTRICTION SHALL TERMINATE IMMEDIATELY UPON CONVEYANCE AT ANY FORECLOSURE SALE RELATED TO A MORTGAGE OR DEED OF TRUST.

GRANTOR'S WILL WARRANT AND the said party of the first part does hereby covenant with the said party of the second part that, except as above noted, that at the time of the delivery of this deed the premises were free from all encumbrances made by it, and that it will warrant and defend the same against the lawful claims and demands of all persons claiming by, through or under it, but against none other.

(wherever used herein the terms "grantor" and "grantee" included all the parties to this instrument, and the heirs, legal representatives and assigns of individuals, and the successors and assigns of corporations.)

**IN WITNESS WHEREOF,** the grantor has caused these presents to be executed in the name, and its corporate seal to be hereunto affixed, by its proper officers thereunto duly authorized, the day and year first above written.

Signed, sealed and delivered
in the presence of:

_____
Witness signature

Elizabeth Hammond
_____
Print witness name

_____
Witness signature

Jonathan Kasper
_____
Print witness name

Fannie Mae a/k/a Federal National Mortgage Association by Albertelli Law as Attorney in Fact, POA and Corp. Res. recorded in O.R. Book 22296, and Page 313 PGS 313-315 of the Public Records of Hillsborough County Florida.

By: _____
Print Name: Lacie Sinn, as authorized signatory for Albertelli Law as Attorney-in-Fact for FANNIE MAE a/k/a Federal National Mortgage Association.

(Corporate Seal)

State of FLORIDA
County of Hillsborough

The foregoing instrument was acknowledged before me this 25th day of April, 2016 by Lacie Sinn, as authorized signatory for Albertelli Law as Attorney-in-Fact for FANNIE MAE a/k/a Federal National Mortgage Association on behalf of the company. He/she is personally known to me or who has produced Drivers License as identification.

_____
Notary Public

Elizabeth Hammond
_____
Print Notary Name

My Commission Expires: ___9/9/18___

Notary Seal

ELIZABETH HAMMOND
MY COMMISSION # FF 156290
EXPIRES: September 9, 2018
Bonded Thru Budget Notary Services

Prepared by:
Vickie Yost
All Florida Title Services, Inc.
4417 Beach Boulevard, Suite 105
Jacksonville, Florida 32207

File Number▓▓▓▓▓
Contract Sales Price: $50,000.00

## Special Warranty Deed

Made this April 19, 2016 A.D., By  Denjie Sperling as trustee and individually, whose post office address is: P.O.
Box 817058, Hollywood, Florida 33081, hereinafter called the grantor, to Jax SFH Properties, LLC, whose post
office address is:  5 W. Forsyth St. Suite 200, Jacksonville, Florida 32202, hereinafter called the grantee:

(Whenever used herein the term "grantor" and "grantee" include all the parties to this instrument and the  heirs, legal
representatives and assigns of individuals, and  the  successors and assigns of corporations)

Witnesseth, that the grantor, for and in consideration of the sum of Ten Dollars, ($10.00) and other
valuable considerations, receipt whereof is hereby acknowledged, hereby grants, bargains, sells, aliens, remises,
releases, conveys and confirms unto the grantee, all that certain land situate in Duval County, Florida, viz:

Lot 22, Block AA, Melvin Park, according to plat thereof as recorded in Plat Book 34, pages 65 and 65A, of
the current public records of Duval County, Florida.

· Said property is not the homestead of the Grantor under the laws and constitution of the State of Florida in that
neither Grantor nor any members of the household of Grantor reside thereon.

Parcel ID Number: 014272-0260

Together with all the tenements, hereditaments and appurtenances thereto belonging, or in anywise  ·
appertaining.

To Have and to Hold, the same in fee simple forever.

And  the grantor hereby covenants with said grantee that the grantor is lawfully seized of said land in fee
simple; that the grantor has good right and lawful authority to sell and convey said land; that the grantor hereby fully
warrants the title to said land and will defend the same against the lawful claims arising by, through or under grantor;
and that said land is free of all encumbrances except taxes accruing subsequent to December 31, 2015.

**In Witness Whereof,** the said grantor has signed and sealed these presents the day and year first above written.

*Signed, sealed and delivered in our presence:*

_____
Witness Printed Name

_____
Witness Printed Name

_____ (Seal)
Benjio Sperling as trustee and individually
Address: P.O. Box 817058
Hollywood, Florida 33081

_____ (Seal)
Address:

State of Florida
County of Broward

The foregoing instrument was acknowledged before me this 13th day of April, 2016, by Benjie Sperling as trustee and individually, who is/are personally known to me or who has produced Florida driver licenses as identification.

Daniela Martinez
State of Florida
MY COMMISSION # FF 228612
Expires: May 7, 2019

Notary Public
Print Name: Daniela Martinez
My Commission Expires: May 7, 2019

This Instrument Was Prepared By and
Record and Return To:

Karen S. Leopold, Esq.
REO TITLE COMPANY OF FLORIDA, LLC
20801 Biscayne Boulevard, Suite 501
Aventura, FL 33180

Folio #

## SPECIAL WARRANTY DEED

This Special Warranty Deed is made this $\underset{\wedge}{26^{+}}$ day of $\underline{\text{April}}$ 2016, by FANNIE MAE a/k/a
FEDERAL NATIONAL MORTGAGE ASSOCIATION, organized and existing under the laws of United
States of America, whose mailing address is P.O. Box 650043, Dallas, TX 75265-0043 ("Grantor"), in
favor of JAX SFH Properties, LLC, a Florida limited liability company, whose mailing address is 5 W.
Forsyth Street, Jacksonville, FL 32202 ("Grantee"),

WITNESSETH: That Grantor, for and in consideration of the sum of $10.00 and other good and valuable
consideration, the receipt of which is hereby acknowledged, by these presents does grant, bargain, sell,
alien, remise, release, convey and confirm unto Grantee the parcel of real property situated in Duval County,
Florida, described as follows:

    Lot 22, Block 12, GILLEN, according to the Plat thereof recorded in Plat Book 1, Page
    121, of the Former Public Records of Duval County, Florida.

    a/k/a 3113 Phyllis Street, Jacksonville, FL 32205

TOGETHER with all tenements, hereditaments, appurtenances, rights, reversions or reservations belonging
thereto.

SUBJECT to taxes for the year 2016 and subsequent years; conditions, limitations, restrictions and
easements of record which are not reimposed by this instrument and zoning ordinances and government
regulations, if any.

GRANTEE HEREIN SHALL BE PROHIBITED FROM CONVEYING THE CAPTIONED PROPERTY
FOR A SALES PRICE OF GREATER THAN $66,000.00 FOR A PERIOD OF THREE (3) MONTH(S)
FROM THE DATE OF THE RECORDING OF THIS DEED. GRANTEE SHALL ALSO BE
PROHIBITED FROM ENCUMBERING SUBJECT PROPERTY WITH A SECURITY INTEREST IN
THE PRINCIPAL AMOUNT OF GREATER THAN $66,000.00 FOR A PERIOD OF THREE (3)
MONTH(S) FROM THE DATE OF THE RECORDING OF THIS DEED. THESE RESTRICTIONS
SHALL RUN WITH THE LAND AND ARE NOT PERSONAL TO GRANTEE. THIS RESTRICTION
SHALL TERMINATE IMMEDIATELY UPON CONVEYANCE AT ANY FORECLOSURE SALE
RELATED TO A MORTGAGE OR DEED OF TRUST.

1



TO HAVE AND TO HOLD the same in fee simple forever.

AND the Grantor hereby covenants with the Grantee that the Grantor is lawfully seized of the real property in fee simple, that the Grantor has good right and lawful authority to sell and convey the real property, that the Grantor hereby fully warrants the title to the real property and will defend the same against the lawful claims of all persons claiming by, through and under the Grantor, but none other.

**IN WITNESS WHEREOF**, this instrument has been executed by the Grantor as of the day and year first above written.

Witnesses as to Grantor:

FANNIE MAE a/k/a FEDERAL NATIONAL MORTGAGE ASSOCIATION

By:   REO Title Company of Florida, LLC, a Florida limited liability company, as attorney-in-fact, pursuant to Limited Power of Attorney recorded in O.R. Book 28950, Page 1846, Public Records of Miami-Dade County, Florida

Miriam Banks

Print name of Witness

By: _____
Name: Susan L. Horton
Title: Director of Operations

Kelly Diaz

Print name of Witness

STATE OF FLORIDA

COUNTY OF MIAMI-DADE

The foregoing instrument was acknowledged before me this 29th day of April, 2016, by Susan L. Horton, as Director of Operations of REO Title Company of Florida, LLC, a Florida limited liability company, as attorney-in-fact for FANNIE MAE a/k/a FEDERAL NATIONAL MORTGAGE ASSOCIATION, who is personally known to me.

My commission expires:

Notary Public
Print name: _____ Miriam Banks



2

Prepared by and Return to:
All Florida Title Services, Inc.
Vickie Yost
4417 Beach Boulevard, Suite 105
Jacksonville, Florida 32207
Our File Number:
Contract Sales Price: $41,500.00

---

### For official use by Clerk's office only

| STATE OF Florida | ) | **SPECIAL WARRANTY DEED** |
|---|---|---|
| COUNTY OF Duval | ) | (Corporate Seller) |
| | ) | |

THIS INDENTURE, made this July 13, 2016, between Duval Home Buyers, LLC, a Florida limited liability company, whose mailing address is: 1514 Felch Ave., Jacksonville, Florida 32207, party of the first part, and Jax SFH Properties, LLC, a Florida limited liability company, whose mailing address is: 221 N Hogan St #405, Jacksonville, Florida 32202, party/parties of the second part,

#### W I T N E S S E T H:

First party, for and in consideration of the sum of TEN AND NO/100 DOLLARS ($10.00) and other valuable considerations, receipt whereof is hereby acknowledged, does hereby grant, bargain, sell, aliens, remises, releases, conveys and confirms unto second party/parties, his/her/their heirs and assigns, the following described property, towit:

Lot 28, Block 3, Arlington Shores 1st Addition, according to plat thereof of as recorded in Plat Book 25, pages 86 and 86A, of the current public records of Duval County, Florida,

Subject, however, to all covenants, conditions, restrictions, reservations, limitations, easements and to all applicable zoning ordinances and/and restrictions and prohibitions imposed by governmental authorities, if any.

TOGETHER with all the tenements, hereditaments and appurtenances thereto belonging or in anywise appertaining.

TO HAVE AND TO HOLD the same in fee simple forever.

AND the party of the first part hereby covenants with said party of the second part, that it is lawfully seized of said land in fee simple; that it has good right and lawful authority to sell and convey said land; that it hereby fully warrants the title to said land and will defend the same against the lawful claims of all persons claiming by, through or under the party of the first part.

IN WITNESS WHEREOF, first party has signed and sealed these present the date set forth on July 13, 2016.

Signed, sealed and delivered
in the presence of:

Duval Home Buyers, LLC

Witness signature
Christy Highsmith
Print witness name

By:
Print Name: John W. Germaine
Title: Manager

Witness signature
LAURA RIEBSAME
Print witness name

State of Florida
County of Duval

THE FOREGOING INSTRUMENT was acknowledged before me this 13th day of July, 2016 by John W. Germaine, Manager on behalf of Duval Home Buyers, LLC, a Florida limited liability company who is personally known to me or who has produced _____ FL. DC _____ as identification.

Notary Public
LAURA RIEBSAME
Print Notary Name

My Commission Expires: 5|31|2017

Notary Seal

LAURA M. RIEBSAME
Commission # EE 670455
Expires May 31, 2017
Bonded Thru Troy Fain Insurance 800-385-7019

DEED - Special Warranty Deed - Corporate

AFTER RECORDING RETURN TO:

D. R. Repass, P.A.
111 Solana Road, Suite B
Ponte Vedra Beach, FL 32082



File

## WARRANTY DEED

THIS WARRANTY DEED is executed as of April 19, 2016, by James M. Lacour and
Rachel A. Lacour, husband and wife whose address is P.O. Box 50421, Jacksonville Beach,
FL 32240 (hereinafter called the "Grantor"), in favor of JAX SFH Properties, LLC, a Florida
limited liability company, whose address is: 5 W. Forsyth St. Ste 200, Jacksonville, FL 32202
(hereinafter called the "Grantee").

> [Wherever used herein, the terms "grantor" and "grantee" shall
> include the singular and plural, heirs, legal representatives,
> successors and assigns of individuals, and the successors and assigns
> of corporations, as the context requires.]

### WITNESSETH:

Grantor, for and in consideration of the sum of Ten and No/100 Dollars ($10.00) and other
valuable considerations, receipt whereof is hereby acknowledged, by these presents does grant,
bargain, sell, alien, remise, release, convey and confirm unto Grantee, all that certain land situated
in Duval County, Florida (the "Property"), as more particularly described as:

Lot 25, and West 10 feet of Lot 26, Block 11, ROSE PARK, as per plat thereof, recorded in Plat
Book 5, Page (s) 63, of the Public Records of Duval County, Florida.

Parcel Identification Number: 063665-0000

TOGETHER with all the tenements, hereditaments and appurtenances thereto belonging
or in anywise appertaining.

TO HAVE AND TO HOLD, the same in fee simple forever.

AND, Grantor hereby covenants with Grantee that it is lawfully seized of the Property in
fee simple; that it has good right and lawful authority to sell and convey the Property; and that
Grantor fully warrants the title to the Property, and will defend the same against the lawful claims
of all persons whomsoever.

The Property is subject to future taxes, easements, encumbrances and matters of record;
however, this reference shall not serve to reimpose same.

IN WITNESS WHEREOF, Grantor has caused these presents to be executed the day and year first above written.

Signed, sealed and delivered
in the presence of:

Sign: _____
Witness #1
Print: __Lori Walton__

Sign: _____
Witness #2
Print: __STEPHANIE EBELS__

_____
James M. Lacour

_____
Rachel A. Lacour

STATE OF FLORIDA
COUNTY OF ST JOHNS

I hereby certify that the foregoing instrument was acknowledged before me this 19th day of April, 2016, by James M. Lacour and Rachel A. Lacour.  They [ ] are personally known to me or [ ] have produced __Drivers License__ as identification.

*Affix Notary Stamp or Seal Below:*

LORI A. WALTON
MY COMMISSION # FF219463
EXPIRES: April 12, 2019

_____
NOTARY PUBLIC -- signature above

Printed Name: __Lori A Walton__

Prepared by:
Connie Mayzard
Watson Title Services of North FL, Inc.
11226 San Jose Blvd., Suite 2
Jacksonville, Florida 32223

File Number [redacted]

# General Warranty Deed

Made this June 9, 2016 A.D. By JVD Asset Management, LLC, a Delaware limited liability company, 11256 Buenado Plaza Dr., 5151, San Diego, California 92128, hereinafter called the grantor, to JAX SITE Properties, LLC, A Limited Liability Company, whose post office address is: 221 N. Hogan St. #405, Jacksonville, Florida 32202, hereinafter called the grantee:

(Whenever used herein the term "grantor" and "grantee" include all the parties to this instrument and the heirs, legal representatives and assigns of individuals, and the successors and assigns of corporations)

Witnesseth, that the grantor, for and in consideration of the sum of $27,500.00 and other valuable considerations, receipt whereof is hereby acknowledged, hereby grants, bargains, sells, aliens, remises, releases, conveys and confirms unto the grantee, all that certain land situate in Duval County, Florida, viz:

THE NORTH 85.03 FEET OF THE SOUTH 170.06 FEET OF LOT 12, PANAMA GARDENS, ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK 5, PAGE 37, OF THE CURRENT PUBLIC RECORDS OF DUVAL COUNTY, FLORIDA. LESS AND EXCEPT ANY PART IN OFFICIAL RECORDS BOOK 9598, PAGE 2236.

Said property is not the homestead of the Grantor(s) under the laws and constitution of the State of Florida in that neither Grantor(s) nor any members of the household of Grantor(s) reside thereon.

Parcel ID Number: 034111-0000

Together with all the tenements, hereditaments and appurtenances thereto belonging or in anywise appertaining.

**To Have and to Hold,** the same in fee simple forever.

And the grantor hereby covenants with said grantee that the grantor is lawfully seized of said land in fee simple; that the grantor has good right and lawful authority to sell and convey said land; that the grantor hereby fully warrants the title to said land and will defend the same against the lawful claims of all persons whomsoever; and that said land is free of all encumbrances except taxes accruing subsequent to December 31, 2015.

DEED Individual Warranty Deed With Non-Homestead-Legal on Face

Prepared by:
Carrie Mayrand
Watson Title Services of North FL, Inc.
11256 San Jose Blvd., Suite 2
Jacksonville, Florida 33223

File Number ███████

**In Witness Whereof,** the said grantor has signed and sealed these presents the day and year first above written.

*Signed, sealed and delivered in our presence:*

Witness Printed Name _Jennifer Warren_

_____ (Seal)
JVD Asset Management, LLC, a Delaware limited liability company
By: Victor P. Hester, Manager
Address: 11954 Bernardo Plaza Dr., #151, San Diego, California 92128

Witness Printed Name _Melissa Tolliver_

_____ (Seal)
Address:

~ State of
County of

The foregoing instrument was acknowledged before me this ____ day of June, 2016, by JVD Asset Management, LLC, a Delaware limited liability company, By Victor P. Hester, Manager who is/are personally known to me or who has produced _____ as identification.

Notary Public
Print Name
My Commission Expires

See attached California Certificate of Acknowledgment.
JW

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

# CALIFORNIA ALL-PURPOSE CERTIFICATE OF ACKNOWLEDGMENT

State of California )

County of San Diego )

On 9th June, 2016 before me, Jennifer Warren, Notary Public,
(here insert name and title of the officer)

personally appeared Victor P. Hester

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature Jennifer Warren, Notary Public    (Seal)
My commission expires: Mar. 29, 2017

JENNIFER WARREN
COMM. #2016138
Notary Public - California
San Diego County
My Comm. Expires Mar. 29, 2017

## OPTIONAL INFORMATION

Although the information in this section is not required by law, it could prevent fraudulent removal and reattachment of this acknowledgment to an unauthorized document and may prove useful to persons relying on the attached document.

### Description of Attached Document

The preceding Certificate of Acknowledgment is attached to a document titled/for the purpose of General Warranty Deed
containing 2 pages, and dated 6/9/16.

The signer(s) capacity or authority is/are as:
☐ Individual(s)
☐ Attorney-in-Fact
☑ Corporate Officer(s) Manager
☐ Guardian/Conservator
☐ Partner - Limited/General
☐ Trustee(s)
☐ Other

representing: JVD Asset Management, LLC
(Name(s) of Person(s) or Entity(ies) Signer(s) is/are Representing)

Method of Signer Identification
Proved to me on the basis of satisfactory evidence:
☑ form(s) of identification   ☐ credible witness(es)
Notarial event is detailed in notary journal page #_____ entry #_____
Notary contact:
Other
☐ Additional Signer(s)   ☐ Signer(s) Thumbprint(s)

7118 Oakwood St.

© Copyright 2007-2014 Notary Rotary, Inc. PO Box 41400, Des Moines, IA 50311 0407. All Rights Reserved. Item Number 101772. Please contact your Authorized Reseller to purchase copies of this form.

Prepared by and Return to:
L. Taing
Sunshine Title Corporation
8612 Old Kings Road South, Suite 100
Jacksonville, Florida 32217
Our File Number: ████

_____
For official use by Clerk's office only
_____

STATE OF Florida       )      **SPECIAL WARRANTY DEED**
COUNTY OF Duval     )
                    )

THIS INDENTURE, made this April 8, 2016, between Jacksonville Investment Properties, LLC, a Florida Limited Liability Company, whose mailing address is: 455 Cassat Avenue, Jacksonville, Florida 32254, party of the first part, and Jax SFH Properties, LLC, a Florida Limited Liability Company, whose mailing address is: 5 West Forsyth Street, Suite 200, Jacksonville, Florida 32202, party/parties of the second part,
WITNESSETH:
First party, for and in consideration of the sum of TEN AND NO/100 DOLLARS ($10.00) and other valuable considerations, receipt whereof is hereby acknowledged, does hereby grant, bargain, sell, aliens, remises, releases, conveys and confirms unto second party/parties, his/her/their heirs and assigns, the following described property, to-wit:

Lot 13, Block 10, Laurel Terrace, as per plat thereof, recorded in Plat Book 22, Page(s) 34 and 34A, of the Public Records of Duval County, Florida.

Subject, however, to all covenants, conditions, restrictions, reservations, limitations, easements and to all applicable zoning ordinances and/and restrictions and prohibitions imposed by governmental authorities, if any.
TOGETHER with all the tenements, hereditaments and appurtenances thereto belonging or in anywise appertaining.
TO HAVE AND TO HOLD the same in fee simple forever.
AND the party of the first part hereby covenants with said party of the second part, that it is lawfully seized of said land in fee simple; that it has good right and lawful authority to sell and convey said land; that it hereby fully warrants the title to said land and will defend the same against the lawful claims of all persons claiming by, through or under the party of the first part.
IN WITNESS WHEREOF, first party has signed and sealed these present the date set forth on April 8, 2016.

Signed, sealed and delivered                                   Jacksonville Investment Properties, LLC, a Florida Limited
In the presence of:                                        Liability Company

_____
Witness signature
Linda Taing
Print witness name                                   By: _____

_____                                    Print Name: Rachel Kern Baldwin
Witness signature                                         Title: Manager
Alex Bechman
Print witness name

State of Florida
County of Duval

THE FOREGOING INSTRUMENT was acknowledged before me this April 12, 2016 by Rachel Kern Baldwin, Manager of Jacksonville Investment Properties, LLC, a Florida Limited Liability Company who is personally known to me or who has produced a Driver's License as identification.



_____
Notary Public
Linda Taing
Print Notary Name

My Commission Expires: _____

Notary Seal

LINDA TAING
MY COMMISSION # FF 103115
EXPIRES: November 22, 2019
Bonded Thru Notary Public Underwriters

DEED - Special Warranty Deed
Closers' Choice

·

This Instrument Prepared by:
Brittany Cribbs for Albertelli Law
5404 Cypress Center Drive, Suite 300
Tampa, FL 33609
Our File Number:

Property Appraisers Parcel I.D. (Folio) Number:  039800-0000

## SPECIAL WARRANTY DEED

$21,000.

This Special Warranty Deed, made this _7th_ day of ___April___, 2016, between The Bank of New York
Mellon FKA The Bank of New York, as Trustee for the certificateholders of the CWABS, Inc., ASSET-BACKED
CERTIFICATES, SERIES 2007-4, having its place of business at 8742 Lucent Blvd. Suite 300 Highlands Ranch CO. 80129, here
by called the grantor,

to Jax SFH Properties LLC, a Florida Limited Liability Company, whose Post Office address is: 5 W Forsyth Street, #200,
Jacksonville, FL 32202, hereinafter called the grantee.

W I T N E S S E T H:  That grantor, for and in consideration of the sum of TEN AND NO/100 DOLLARS ($10.00) and other
valuable considerations, receipt whereof is hereby acknowledged, by these presents does grant, bargain, sell, aliens, remis, releases,
conveys and confirms unto grantee, all that certain land situate in Duval County, Florida, viz:

LOT 28, BLOCK 25, HARBOR VIEW, UNIT EIGHT, ACCORDING TO MAP OR PLAT THEREOF AS RECORDED IN
PLAT BOOK 29, PAGE 93, OF THE PUBLIC RECORDS OF DUVAL COUNTY, FLORIDA.

TOGETHER with all the tenements, hereditaments and appurtenances thereto belonging or in anywise appertaining.

TO HAVE AND TO HOLD the same in fee simple forever.          *SEE ATTACHED EXHIBIT(S)

GRANTORS WILL WARRANT AND the said party of the first part does hereby covenant with the said party of the second part
that, except as above noted, that at the time of the delivery of this deed the premises were free from all encumbrances made by it, and
that it will warrant and defend the same against the lawful claims and demands of all persons claiming by, through or under it, but
against none other.

(wherever used herein the terms "grantor" and "grantee" includes all the parties to this instrument, and the heirs, legal representatives and assigns of individuals, and
the successors and assigns of corporation.)

IN WITNESS WHEREOF, the grantor has caused these presents to be executed in the name, and its corporate seal to be hereunto
affixed, by its proper officers thereunto duly authorized, the day and year first above written.

Signed, sealed and delivered
in the presence of,

_____
Witness signature

Alexander Asinot
_____
Print witness name

_____
Witness signature

Adam  Hutchinson
_____
Print witness name


State of _____Colorado_____

County of _____Douglas_____

The foregoing instrument was acknowledged before me this 28 day of April_____, 2016, by, ___Jeff Harnish___, as, _____ of Specialized Loan Servicing LLC, as, it's attorney in fact for The Bank of New York Mellon FKA The Bank of New York, as Trustee for the certificateholders of the CWABS, Inc., ASSET-BACKED CERTIFICATES, SERIES 2007-4 on behalf of the company. He/She is personally known to me or who has produced Drivers License as identification.

_____
Notary Public

_____
Print Notary Name:

My Commission Expires: _____

Notary Seal


The Bank of New York Mellon FKA The Bank of New York, as Trustee for the certificateholders of the CWABS, Inc., ASSET-BACKED CERTIFICATES, SERIES 2007-4 By Specialized Loan Servicing LLC, it's Attorney In Fact

By: _____

_____
Print Name

_____
Title

Jeff Harnish, Assistant Vice President     (Corporate Seal)
Specialized Asset Management, LLC
as Attorney in Fact
For Specialized Loan Servicing, LLC

ALEXANDER S ASINOF
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20154034451
MY COMMISSION EXPIRES 08/31/2019

Prepared by and return to:
J. Riley Williams, P.L.C
2141 Park Street
Jacksonville, FL 32204
File Number: █████

_____ _____Space Above This Line For Recording Data]_____ _____

# Warranty Deed

This Warranty Deed made this 1st day of July, 2016 between Edward Elias, whose address is 10369 Crystal Springs Road, Jacksonville, Florida 32221, grantor, and JAX SFH Properties LLC, whose address is 221 N. Hogan Street, #405, Jacksonville, Florida 32202, grantee:

(Whenever used herein the terms "grantor" and "grantee" include all the parties to this instrument and the heirs, legal representatives, and assigns of individuals, and the successors and assigns of corporations, trusts and trustees)

Witnesseth, that said grantor, for and in consideration of the sum of TEN AND NO/100 DOLLARS ($10.00) and other good and valuable considerations to said grantor in hand paid by said grantee, the receipt whereof is hereby acknowledged, has granted, bargained, and sold to the said grantee, and grantee's heirs and assigns forever, the following described land, situate, lying and being in Duval County, Florida to-wit:

Lot 4, Block 2, Buffalo Gardens, according to the map or plat thereof, as recorded in Plat Book 11, Page(s) 6, of the Public Records of Duval County, Florida.

RE: 033709-0000

Subject to covenants, easements and restrictions of record, if any.

Together with all the tenements, hereditaments and appurtenances thereto belonging or in anywise appertaining.

To Have and to Hold, the same in fee simple forever.

And the grantor hereby covenants with said grantee that the grantor is lawfully seized of said land in fee simple; that the grantor has good right and lawful authority to sell and convey said land; that the grantor hereby fully warrants the title to said land and will defend the same against the lawful claims of all persons whomsoever; and that said land is free of all encumbrances, except taxes accruing subsequent to December 31st, 2015.

**In Witness Whereof,** grantor has hereunto set grantor's hand and seal the day and year first above written.

Signed, sealed and delivered in our presence:

Witness Name: Jessica Skidmore

Witness Name: S. Riley Williams

Edward Elias

State of Florida
County of Duval

    The foregoing instrument was acknowledged before me this 1st day of July, 2016 by **Edward Elias** who [   ] are personally known or     [ — ] have produced a driver's license as identification.

Notary Seal

Notary Public, State of Florida
Printed Name: _____
My Commission Expires: _____

J. RILEY WILLIAMS
Commission # FF 941159
Expires December 17, 2019
Bonded Thru Troy Fain Insurance 800-385-7019

Prepared by and Return to:
L. Taing
Sunshine Title Corporation
8613 Old Kings Road South, Suite 100
Jacksonville, Florida 32217
Our File Number

_____
For official use by Clerk's office only

STATE OF Florida　　　　　　　　　)　　　　　　　SPECIAL WARRANTY DEED
COUNTY OF Duval　　　　　　　　　)
　　　　　　　　　　　　　　　　　)

THIS INDENTURE, made this May 4, 2016, between Jacksonville Investment Properties, LLC, a Florida Limited
Liability Company, whose mailing address is: 45 Cassat Avenue, Jacksonville, Florida 32254, party of the first part, and JAX SFH
Properties, LLC, a Florida Limited Liability Company, whose mailing address is: 5 West Forsyth Street, Suite 200, Jacksonville,
Florida 32202, party/parties of the second part,

WITNESSETH:

First party, for and in consideration of the sum of TEN AND NO/100 DOLLARS ($10.00) and other valuable considerations,
receipt whereof is hereby acknowledged, does hereby grant, bargain, sell, aliens, remises, releases, conveys and confirms unto second
party/parties, his/her/their heirs and assigns, the following described property, towit:

Lot 7, Block 2, Pearl Crest, as per plat thereof, recorded in Plat Book 5, Page 15, of the
Public Records of Duval County, Florida.

Subject, however, to all covenants, conditions, restrictions, reservations, limitations, easements and to all applicable zoning
ordinances and/and restrictions and prohibitions imposed by governmental authorities, if any.
TOGETHER with all the tenements, hereditaments and appurtenances thereto belonging or in anywise appertaining.
TO HAVE AND TO HOLD the same in fee simple forever.
AND the party of the first part hereby covenants with said party of the second part, that it is lawfully seized of said land in fee
simple; that it has good right and lawful authority to sell and convey said land; that it hereby fully warrants the title to said land and
will defend the same against the lawful claims of all persons claiming by, through or under the party of the first part.
IN WITNESS WHEREOF, first party has signed and sealed these present the date set forth on May 4, 2016.

Signed, sealed and delivered　　　　　　　　　　　Jacksonville Investment Properties, LLC, a Florida Limited
in the presence of:　　　　　　　　　　　　　　　Liability Company

_____　　　　　　　　　　　By: _____
Witness signature　　　　　　　　　　　　　　　Print Name: Rachel Kern Baldwin
Print witness name　　　　　　　　　　　　　　　Title: Manager

Witness signature
DAWN GONZALES
Print witness name

State of Florida
County of Duval

THE FOREGOING INSTRUMENT was acknowledged before me this May 5, 2016 by Rachel Kern Baldwin, Manager of
Jacksonville Investment Properties, LLC, a Florida Limited Liability Company who is personally known to me or who has
produced a Driver's License as identification.

_____
Notary Public
_____
Print Notary Name

My Commission Expires: _____

Notary Seal



LINDA TANG
MY COMMISSION # FF 82910
EXPIRES: November 22, 2017
Bonded Thru Notary Public Underwriters

DEED - Special Warranty Deed - Corporate
Closers' Choice

Prepared by:

Crabtree Law Group, P.A.
8777 San Jose Boulevard, Building A, Suite 200
Jacksonville, Florida 32217

File Number: ████████
Contract Sales Price: $133,400.00

## General Warranty Deed

Made this August 15, 2016 A.D. By RE Indian Lakes, LLC, a Florida limited liability company, whose address is: 9805 Old St. Augustine Road #1, Jacksonville, Florida 32257, hereinafter called the grantor, to Jax SFH Properties, LLC, a Florida limited liability company, whose post office address is: 221 N. Hogan Street #405, Jacksonville, Florida 32202, hereinafter called the grantee:

(Whenever used herein the term "grantor" and "grantee" include all the parties to this instrument and the heirs, legal representatives and assigns of individuals, and the successors and assigns of corporations)

**Witnesseth,** that the grantor, for and in consideration of the sum of Ten Dollars, ($10.00) and other valuable considerations, receipt whereof is hereby acknowledged, hereby grants, bargains, sells, aliens, remises, releases, conveys and confirms unto the grantee, all that certain land situate in Duval County, Florida, viz:

Lot 23, INDIAN LAKES, a subdivision according to the plat thereof recorded at Plat Book 39, Pages 95 and 95A, in the Public Records of Duval County, Florida.

Parcel ID Number:

**Together** with all the tenements, hereditaments and appurtenances thereto belonging or in anywise appertaining.

**To Have and to Hold,** the same in fee simple forever.

**Subject** to covenants, restrictions and easements of record, if any; however this reference shall not operate to reimpose same.

**And** the grantor hereby covenants with said grantee that the grantor is lawfully seized of said land in fee simple; that the grantor has good right and lawful authority to sell and convey said land; that the grantor hereby fully warrants the title to said land and will defend the same against the lawful claims of all persons whomsoever; and that said land is free of all encumbrances except taxes accruing subsequent to December 31, 2015.

**Documentary Stamps in the amount of $933.80 have been paid.**

DEED Individual Warranty Deed - Legal on Face

Prepared by:

Crabtree Law Group, P.A.
8777 San Jose Boulevard, Building A, Suite 200
Jacksonville, Florida 32217

File Number: ▓▓▓▓▓▓
Contract Sales Price: ~~$135,000.00~~ **$133,400.00**

**In Witness Whereof,** the said grantor has signed and sealed these presents the day and year first above written.

*Signed, sealed and delivered in our presence:*

_____
Witness Printed Name __Denise Strange__

_____
Witness Printed Name __Zachary C. Crabtree__

RE Indian Lakes, LLC, a Florida limited liability company

By: _____ (Seal)
Marc Hassan, Manager
Address: 9803 Old St. Augustine Road #1, Jacksonville, Florida 32257

State of Florida
County of Duval

The foregoing instrument was acknowledged before me this 15th day of August, 2016, by Marc Hassan, Manager of RE Indian Lakes, LLC, a Florida limited liability company, who is/are personally known to me or who has produced drivers license as Identification.



ZACHARY C. CRABTREE
Commission # FF 205842
Expires March 9, 2019
Bonded Thru Troy Fain Insurance 800-385-7019

Notary Public
Print Name: _____

My Commission Expires: _____

DEED Individual Warranty Deed - Legal on Face

This Instrument Prepared by:
Albertelli Law
Sara L. Garcia
5404 Cypress Center Drive, Suite 300
Tampa, FL 33609
Our File Number
as a necessary incident to the fulfillment of conditions
contained in a title insurance commitment issued by it.

Property Appraisers Parcel I.D. (Folio) Number:  073167-0000

## SPECIAL WARRANTY DEED

$70,000.

This Special Warranty Deed, made this ___ day of _____ 2016 between Fannie Mae a/k/a Federal National Mortgage Association, having its place of business at: **P.O. Box 650043, Dallas, TX 75265-0043** here by called the grantor,

to Jax SFH Properties LLC, a Florida Limited Liability Company, whose Post Office address is:  5 W. Forshyth St #200, Jacksonville, FL 32202, hereinafter called the grantee,

W I T N E S S E T H: That grantor, for and in consideration of the sum of $10.00 and other valuable considerations, receipt whereof is hereby acknowledged, by these presents does grant, bargain, sell, aliens, remis, releases, conveys and confirms unto grantee, all that certain land situate in Duval County, Florida, viz:

The East 34 feet 8 Inches of Lot 6, Block 129, Springfield Northern Portion, according to the map or plat thereof, as recorded in Plat Book 2, Page(s) 40, of the Public Records of Duval County, Florida.

TOGETHER with all the tenements, hereditaments and appurtenances thereto belonging or in anywise appertaining.
TO HAVE AND TO HOLD the same in fee simple forever.

GRANTEE HEREIN SHALL BE PROHIBITED FROM CONVEYING CAPTIONED PROPERTY FOR A SALES PRICE OF GREATER THAN $84,000.00 FOR A PERIOD OF 3 MONTH(S) FROM THE DATE OF THE RECORDING OF THIS DEED. GRANTEE SHALL ALSO BE PROHIBITED FROM ENCUMBERING SUBJECT PROPERTY WITH A SECURITY INTEREST IN THE PRINCIPAL AMOUNT OF GREATER THAN $84,000.00 FOR A PERIOD OF 3 MONTHS (S) FROM THE DATE OF THE RECORDING OF THIS DEED. THESE RESTRICTIONS SHALL RUN WITH THE LAND AND ARE NOT PERSONAL TO GRANTEE

THIS RESTRICTION SHALL TERMINATE IMMEDIATELY UPON CONVEYANCE AT ANY FORECLOSURE SALE RELATED TO A MORTGAGE OR DEED OF TRUST.

GRANTOR'S WILL WARRANT AND the said party of the first part does hereby covenant with the said party of the second part that, except as above noted, that at the time of the delivery of this deed the premises were free from all encumbrances made by it, and that it will warrant and defend the same against the lawful claims and demands of all persons claiming by, through or under it, but against none other.

(wherever used herein the terms "grantor" and "grantee" included all the parties to this instrument, and the heirs, legal representatives and assigns of individuals, and the successors and assigns of corporation.)

DEED - Special Warranty Deed - Corporate

IN WITNESS WHEREOF, the grantor has caused these presents to be executed in the name, and its corporate seal to be hereunto affixed, by its proper officers thereunto duly authorized, the day and year first above written.

Signed, sealed and delivered
in the presence of

_____
Witness signature

_____
Print witness name

_____
Witness signature

Linda Bone
_____
Print witness name

Fannie Mae a/k/a Federal National Mortgage Association by Albertelli Law as Attorney in Fact, POA and Corp. Res. recorded in OR. Book 27296, and Page 313 PGS 313-315 of the Public Records of Hillsborough County Florida.

By _____
Print Name: Lacie Sinn, as authorized signatory for Albertelli Law as Attorney-In-Fact for FANNIE MAE a/k/a Federal National Mortgage Association.

(Corporate Seal)

State of FLORIDA
County of Hillsborough

The foregoing instrument was acknowledged before me this ____ day of _____ by Lacie Sinn, as authorized signatory for Albertelli Law as Attorney-in-Fact for FANNIE MAE a/k/a Federal National Mortgage Association on behalf of the company.  He/she is personally known to me or who has produced Drivers License as identification.

_____
Notary Public

_____
Print Notary Name

My Commission Expires: _____

Notary Seal

SARA L. GARCIA
MY COMMISSION FF 001151
EXPIRES: April 24, 2017
Bonded Thru Notary Public Underwriters

THIS INSTRUMENT PREPARED BY:

Crabtree Law Group, P.A.
8777 San Jose Boulevard, Building A, Suite 200
Jacksonville, Florida 32217

RECORD AND RETURN TO:
Crabtree Law Group, P.A.
8777 San Jose Boulevard, Building A, Suite 200
Jacksonville, Florida 32217

RE PARCEL ID #
CONTRACT SALES PRICE: $58,000.00

# CORPORATE
# WARRANTY DEED

THIS INDENTURE made this April 27, 2016 by Affordable Housing Group, LLC, a Florida Limited
Liability Company, hereinafter referred to us Grantor, whether one or more, and whose address is 10245
Centurion Parkway N., Jacksonville, Florida  32256 to JAX SFH Properties, LLC, a Florida Limited
Liability Company, hereinafter referred to as Grantee, whether one or more, and whose address is Post Office
Box 45479,Jacksonville, Florida 32203.

(Wherever used herein the term "grantor" and "grantee" include all the parties to this instrument and the heirs,
legal representatives and assigns of individuals, and the successors and assigns of corporations.)

## WITNESSETH:

THAT Grantor, for and in consideration of the sum of Ten and NO/100 Dollars and other valuable
considerations, in hand paid by Grantee, the receipt whereof is hereby acknowledged, has granted, bargained
and sold to Grantee the following described land situate, lying and being in the County of Duval, State of Florida
to wit:

Lot 19, Block 2, Lake Forest Hills Unit 1, a subdivision according to the plat thereof recorded at Plat Book 21, Pages 77
and 77A, in the Public Records of Duval County, Florida.

SUBJECT TO taxes accruing subsequent to December 31, 2015.
SUBJECT TO covenants, restrictions and easements of record, if any; however, this reference shall not
operate to reimpose same.
AND Grantor hereby covenants with Grantee that Grantor is lawfully seized of said land in fee simple
and fully warrants the title to said land, and will defend the same against the lawful claims of all persons
whomsoever.

IN WITNESS WHEREOF, Grantor has caused this instrument to be executed in its name by its duly
authorized officer(s) and caused its corporate seal to be hereto affixed the day and year first above written.

Signed, sealed and delivered in our presence:

R. R. Crabtree
Witness

Phyllis D. Vaccaro
Witness

Affordable Housing Group, LLC, a
Florida Limited Liability Company

BY: Vladimir Morozov
Its: Member

BY: Cedric D. Griffin
Its: Member

STATE OF Florida
COUNTY OF Duval
The foregoing instrument was acknowledged before me this 27th day of April, 2016 by Vladimir Morozov and
Cedric D. Griffin, Members of Affordable Housing Group, LLC.  They have produced Driver's License as
identification.

Notary Public, County and State Aforesaid

Notary Printed Signature
My commission expires:
Documentary Stamps in the amount of $406.00 have been paid.

R. R. CRABTREE
Commission # FF 226334
Expires May 18, 2019
Bonded Thru Troy Fain Insurance 800-385-7019

Prepared by:
Laura Riebsame
All Florida Title Services, Inc.
4417 Beach Boulevard, Suite 105
Jacksonville, Florida 32207

File Number: ▮▮▮▮
Contract Sales Price: $61,000.00

## Special Warranty Deed

Made this May 4, 2016 A.D., By Benjie Sperling, as trustee and individually, whose post office address is: PO Box 817058, Hollywood, Florida 33081, hereinafter called the grantor, to JAX SFH Properties, LLC, whose post office address is: PO Box 43479, Jacksonville, Florida 32203, hereinafter called the grantee:

(Whenever used herein the term "grantor" and "grantee" include all the parties to this instrument and the heirs, legal representatives and assigns of individuals, and the successors and assigns of corporations)

**Witnesseth,** that the grantor, for and in consideration of the sum of Ten Dollars, ($10.00) and other valuable considerations, receipt whereof is hereby acknowledged, hereby grants, bargains, sells, aliens, remises, releases, conveys and confirms unto the grantee, all that certain land situate in Duval County, Florida, viz:

Lot 25, Block 6, Lake Park Estates Unit 3, according to the plat thereof as recorded in Plat Book 31, pages 64 and 64A, of the current public records of Duval County, Florida.

Said property is not the homestead of the Grantor under the laws and constitution of the State of Florida in that neither Grantor nor any members of the household of Grantor reside thereon.

Parcel ID Number: 025975-0000

**Together** with all the tenements, hereditaments and appurtenances thereto belonging or in anywise appertaining.

**To Have and to Hold,** the same in fee simple forever.

**And** the grantor hereby covenants with said grantee that the grantor is lawfully seized of said land in fee simple; that the grantor has good right and lawful authority to sell and convey said land; that the grantor hereby fully warrants the title to said land and will defend the same against the lawful claims arising by, through or under grantor; and that said land is free of all encumbrances except taxes accruing subsequent to December 31, 2015.

DEED Individual Warranty Deed with Non-Homestead-Legal on Schedule A

**In Witness Whereof,** the said grantor has signed and sealed these presents the day and year first above written.

*Signed, sealed and delivered in our presence:*

_____

Daniela Martinez
Witness Printed Name

_____

Witness Printed Name

_____ (Seal)
Benjie Sperling, as trustee and individually
Address: PO Box 817058
Hollywood, Florida 33081

_____ (Seal)
Address:

State of Florida
County of Broward

The foregoing instrument was acknowledged before me this 3 day of May, 2016, by Benjie Sperling, as trustee and individually, who is/are personally known to me or who has produced ~~Florida drivers license~~ as identification.

Daniela Martinez
State of Florida
MY COMMISSION # FF 228612
Expires: May 7, 2019

Notary Public
Print Name: Daniela Martinez
My Commission Expires: May 7, 2019

DEED Individual Warranty Deed with Non-Homestead-Legal on Schedule A

Case 23-10815-LSS Doc 671 Filed 09/11/23 Page 48 of 138

This document prepared by (and after recording return to):

| | |
|---|---|
| Name: | David Jenkins |
| Firm | Premium Title Services, Inc<br>1000 Abernathy Road NE, Suite 200<br>Atlanta, GA 30328 |
| Phone: | (855)339-6325 |
| After recording return to | 1824 Rugby Rd, Jacksonville, FL 32208 |
| Asset No. | ▮▮▮▮▮ |
| File No. | CE1509-FL-2757267 |

Above This Line Reserved
For Official Use Only

## SPECIAL WARRANTY DEED

**STATE OF FLORIDA**
**COUNTY OF Duval**

THIS DEED, made this **27** day of **April**_____, 2016 by and between Wells Fargo Bank, N.A. as Trustee for Bear Stearns Asset Backed Securities I Trust 2004-BO1, a national banking association, organized and existing under the laws of The United States of America; hereinafter called the Grantor, whose mailing address is: c/o Ocwen Loan Servicing, LLC, 1661 Worthington Road, Suite 100, West Palm Beach, FL 33409; and JAX SFH Properties LLC , a Florida Limited Liability Company hereinafter called the Grantee, whose mailing address is:

    1824 Rugby Rd, Jacksonville, FL 32208

WITNESSETH, that the Grantor, for and in consideration for the sum of: $37,099.00 and other valuable consideration, the receipt whereof is hereby acknowledged, hereby grants, bargains, and sells unto the Grantee, and Grantee's successors, heirs, and assigns forever, all that certain parcel of land in the County of Duval, State of Florida, to wit:

**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF**

**PARCEL ID #: 024784-0000**
Located at 1824 Rugby Rd, Jacksonville, FL 32208

TOGETHER, with all of the tenements, hereditaments and appurtenances thereto, belonging or in anywise appertaining.

TO HAVE AND TO HOLD, the same in fee simple forever.

AND the grantor does hereby fully warrant the title to said land, and will defend the same against lawful claims of all persons claiming by, through or under said Grantor but against none other.

In Witness Whereof, the grantor has hereunto set his hand and seal the day and year first above written.

Signed, sealed and delivered in our presence:

Witness

Chris Heinichen

Print Name

Witness

Jon King

Print Name

Wells Fargo Bank, N.A. as Trustee for Bear Stearns Asset Backed Securities I Trust 2004-BO1
by Ocwen Loan Servicing, LLC as Attorney-In-Fact

Moraima Medina
Contract Management Coordinator

BY Moraima Medina

of Ocwen Loan Servicing, LLC, as Attorney-In-Fact
Address: C/O Ocwen Loan Servicing, LLC,
1661 Worthington Road, Suite 100, West Palm Beach, FL 33409

STATE OF FLORIDA
COUNTY OF PALM BEACH .

The foregoing instrument was acknowledged before me this __23__ day of ____April____,
2016 by ____Moraima Medina____ as ____Contract Management Coordinator____ of Ocwen Loan
Servicing, LLC as Attorney-in-Fact for Wells Fargo Bank, N.A. as Trustee for Bear Stearns Asset Backed
Securities I Trust 2004-BO1, who is (personally known to me) or who has
produced_____ as identification and who (did) (did not) take an
oath.

Notary Public

Guirlene Dolcine

(Notarial Seal)

GUIRLENE DOLCINE
MY COMMISSION # FF 015064
EXPIRES: November 16, 2017
Bonded Thru Notary Public Underwriters

Printed Name
My Commission Expires:_____

POA recorded simultaneously herewith

**EXHIBIT "A"**

CE1509-FL-2757267

LOT 3, BLOCK 18, UNIT NO 2, OF LAKE FOREST HILLS AS PER PLAT THEREOF RECORDED IN PLAT BOOK 22 PAGES 16 THROUGH 16A OF THE CURRENT PUBLIC RECORDS OF DUVAL COUNTY FLORIDA.

Parcel ID No.: 024784-0000

Prepared by and Return to:
All Florida Title Services, Inc.
Laura Riebsame
4417 Beach Boulevard, Suite 105
Jacksonville, Florida 32207
Our File Number:
Contract Sales Price: $28,000.00

## For official use by Clerk's office only

STATE OF Florida      )      **SPECIAL WARRANTY DEED**
COUNTY OF Duval    )      (Corporate Seller)
                      )

THIS INDENTURE, made this April 27, 2016, between Duval Home Buyers, LLC, a Florida limited liability company, whose mailing address is: 1514 Felch Avenue, Jacksonville, Florida 32207, party of the first part, and JAX SFH Properties, LLC, a Florida limited liability company, whose mailing address is: PO Box 43479, Jacksonville, Florida 32203, party/parties of the second part,

### WITNESSETH:

First party, for and in consideration of the sum of TEN AND NO/100 DOLLARS ($10.00) and other valuable considerations, receipt whereof is hereby acknowledged, does hereby grant, bargain, sell, aliens, remises, releases, conveys and confirms unto second party/parties, his/her/their heirs and assigns, the following described property, to wit:

Lot 7, Block 1, Lincoln Estates Unit 2, according to the plat thereof as recorded in Plat Book 30, pages 33 and 33A, of the current public records of Duval County, Florida.

Subject, however, to all covenants, conditions, restrictions, reservations, limitations, easements and to all applicable zoning ordinances and/and restrictions and prohibitions imposed by governmental authorities, if any.

TOGETHER with all the tenements, hereditaments and appurtenances thereto belonging or in anywise appertaining.

TO HAVE AND TO HOLD the same in fee simple forever.

AND the party of the first part hereby covenants with said party of the second part, that it is lawfully seized of said land in fee simple; that it has good right and lawful authority to sell and convey said land; that it hereby fully warrants the title to said land and will defend the same against the lawful claims of all persons claiming by, through or under the party of the first part.

DEED - Special Warranty Deed - Corporate

IN WITNESS WHEREOF, first party has signed and sealed these present the date set forth on April 27, 2016.

Signed, sealed and delivered
in the presence of:

Duval Home Buyers, LLC

Witness signature
Edward Bachmann
Print witness name

By:
Print Name: John Germaine
Title: manager

Witness signature
Christyann Alix Burgoyne
Print witness name

State of Florida
County of Duval

THE FOREGOING INSTRUMENT was acknowledged before me this 27th day of April, 2016 by John Germaine, manager on behalf of Duval Home Buyers, LLC who is personally known to me or who has produced Drivers License as identification.

Christyann Alix Burgoyne
Notary Public
Christyann Alix Burgoyne
Print Notary Name

My Commission Expires: 11/13/16

Notary Seal

CHRISTYANN ALIX-BURGOYNE
MY COMMISSION #EE851218
EXPIRES: NOV 13, 2016
Bonded Through 1st State Insurance

DEED - Special Warranty Deed - Corporate

Prepared by & Return to:
Stewart Lender Services
Closer: KEVIN NIMS
2002 N. Lois Ave., Suite 700
Tampa, FL 33607
as a necessary incident to the fulfillment of conditions
contained in a title insurance commitment issued by it.

Property Appraisers Parcel I.D. (Folio) Number(s): 025754-0000

## SPECIAL WARRANTY DEED
### (CORPORATE)

This Special Warranty Deed Made the 26th day of MAY ; 2016, by Fannie
Mae a/k/a Federal National Mortgage Association ; and having its place of business at P.O. Box
650043 Dallas, TX 75265-0043, hereinafter called the grantor, to JAX SFH PROPERTIES LLC, a
Florida Limited Liability Company, whose post office address is: 5 West Forsyth Street, Suite 200,
Jacksonville, Fl. 32202, hereinafter called the grantee.

WITNESSETH: That grantor, for and in consideration of the sum of $57,000.00 Dollars and other
valuable considerations; receipt whereof is hereby acknowledged, by these presents does grant,
bargain, sell, alien, remise, release, convey and confirm unto the grantee, all that certain land
situate in DUVAL County, Florida, viz:

Lots 36 and 37, Toni Heights, being a subdivision of Lot 15, Isabell Picketts Subdivision, according to the plat thereof
as recorded in Plat Book 23, Page 11, of the Public Records of Duval County, Florida.

GRANTEE HEREIN SHALL BE PROHIBITED FROM CONVEYING THE CAPTIONED
PROPERTY FOR A SALES PRICE OF GREATER THAN $68,400.00 FOR A PERIOD OF 3
MONTH(S) FROM THE DATE OF THE RECORDING OF THIS DEED. GRANTEE SHALL
ALSO BE PROHIBITED FROM ENCUMBERING SUBJECT PROPERTY WITH A SECURITY
INTEREST IN THE PRINCIPAL AMOUNT OF GREATER THAN $68,400.00 FOR A PERIOD
OF 3 MONTH(S) FROM THE DATE OF THE RECORDING OF THIS DEED. THESE
RESTRICTIONS SHALL RUN WITH THE LAND AND ARE NOT PERSONAL TO
GRANTEE. THIS RESTRICTION SHALL TERMINATE IMMEDIATELY UPON
CONVEYANCE AT ANY FORECLOSURE SALE RELATED TO A MORTGAGE OR DEED
OF TRUST.

THIS RESTRICTION SHALL TERMINATE IMMEDIATELY UPON CONVEYANCE AT ANY
FORECLOSURE SALE RELATED TO A MORTGAGE OR DEED OF TRUST.

TOGETHER with all the tenements, hereditaments and appurtenances thereto belonging or in
anywise appertaining.

SUBJECT ALSO to taxes and assessments for the year 2016 and subsequent years.

To Have and to Hold, the same in fee simple forever.

A1600R2

GRANTOR'S WILL WARRANT and forever defend the right and title to the above-described real property unto the Grantees against the claims of all person, claiming by, through or under Grantor's, but not otherwise.

(Wherever used herein the terms "grantor" and "grantee" included all the parties to this instrument, and the heirs, legal representatives and assigns of individuals, and the successors and assigns of corporation.)

IN WITNESS WHEREOF, Grantor has caused these presents to be executed in its name, and its corporate seal to be hereunto affixed, by its proper officers thereunto duly authorized, the day and year first above written.

SIGNED IN THE PRESENCE OF THE FOLLOWING WITNESSES
(TWO SEPARATE DISINTERESTED WITNESSES REQUIRED)

Witness Signature: _____
Printed Name: Holly Tomlin

Fannie Mae a/k/a Federal National Mortgage Association   By Stewart Lender Services as Attorney in fact

Witness Signature: _____
Printed Name: Kevin Nims

BY: _____
Assistant Vice President Paula Huff

State of Florida
County of Hillsborough

The foregoing instrument was acknowledged before this ____ day of _____ 2016, by **Paula Huff** Assistant Vice President of Stewart Lender Services, Inc., as Attorney in Fact for Fannie Mae a/k/a Federal National Mortgage Association. She/He is personally known to me.

My Commission expires: _____

Notary Public Signature
Printed Name: _____
Serial Number _____

(SEAL)


HOLLY SUSAN TOMLIN
MY COMMISSION # FF 140410
EXPIRES: August 23, 2018
Bonded Thru Notary Public Underwriters

A1600R2

# Exhibit C

Prepared by:
Law Offices of Damian G. Waldman, P.A.
10333 Seminole Blvd., Units 1 and 2
Seminole, FL 33778

PO Box 5162
Largo, FL 33779

When recorded return to:
Law Offices of Damian G. Waldman, P.A.
PO Box 5162
. Largo, FL 33779

(Space above this line reserved for recording office use only)

Loan Number:

## MORTGAGE AND SECURITY AGREEMENT

**THIS MORTGAGE AND SECURITY AGREEMENT,** made on
_____ November, 2016, by JAX SFH Properties, LLC, whose address is 221 N. Hogan
Street, #405, Jacksonville, FL 32202, to HIS Capital Funding ISAOA/ATIMA, ("Mortgagee"),
whose office address is 250 N. Orange Ave., Suite 610, Orlando, FL 32801.

A. "Note" means the Interest Only Balloon Promissory Note signed by Borrower(s) and dated
November ___, 2016. The Note states that the Borrower owes the Lender Three Hundred Sixty-
Eight Thousand Two Hundred and Twenty-Five Dollars and 00/100 (US $368,225.00) plus
interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt
full no later than twenty-four (24) months from the execution of this Mortgage and corresponding
Note.

B. "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late
charges due under the Note, and all sums due under this Security Instrument, plus interest.

C. "Rider" means all Rider to this Security Instrument that are executed by the Borrower. The
following Rider are executed by the Borrower.

| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
|---|---|---|
| ☒ Balloon Rider | ☐ Planned Unit Development Rider ☐ I-4 Family Rider | |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☒ Other(s) [specify] |

Initials _____          Page 1 of 16          Initials _____

**E. DESCRIPTION OF PROPERTIES MORTGAGED** Property being mortgaged (the "Real Properties") is described as follows:

**SEE ATTACHED LEGAL DESCRIPTIONS AS EXHIBIT A**

### RECITALS

Mortgagor is justly indebted to Mortgagee, having executed and delivered to Mortgagee its Promissory Note (the "Note") bearing even date herewith, in the original principal sum of Three Hundred Sixty-Eight Thousand Two Hundred and Twenty-Five Dollars and 00/100 (US $368,225.00) or so much as has been advanced and remains outstanding, lawful money of the United States of America, and according to the terms and conditions specified in the corresponding Note;

In consideration of the indebtedness and to secure the payment to Mortgagee of the principal with interest and all other sums provided for in the Note and in this Mortgage, including, but not limited to, any future advances that may be made by Mortgagee to Mortgagor in accordance with the terms of this Mortgage, up to the maximum amount stated therein, and for performance of the agreements, conditions, covenants, provisions, and stipulations contained herein and therein, and in certain other agreements and instruments made and given by Mortgagor to Mortgagee in connection therewith, Mortgagor hereby mortgages to Mortgagee that tract or parcel of land in Polk County, Florida, more particularly described above;

TOGETHER with all the tenements, hereditaments, easements, appurtenances, passages, waters, water courses, riparian rights, other rights, liberties, and privileges thereof or in any way now or hereafter appertaining, including any other claim at law or in equity as well as any after-acquired title, franchise, or license and the reversions and remainders thereof; and

TOGETHER with all buildings and improvements of every kind and description now or hereafter erected or placed thereon and all materials intended for construction, reconstruction, alteration, and repairs of improvements now or hereafter erected thereon, all of which materials shall be considered to be included within the mortgaged premises immediately on the delivery thereof to the mortgaged premises, and all fixtures and articles of personal property now or hereafter owned by Mortgagor and attached to or contained in and used in connection with said premises, including but not limited to all apparatus, machinery, motors, elevators, fittings, radiators, gas ranges, ice boxes, mechanical refrigerators, awnings, shades, screens, venetian blinds, office equipment and other furnishings; all plumbing, heating, lighting, cooking, laundry, ventilating, refrigerating, incinerating, air-conditioning, hot-water-heating, and sprinkler equipment and fixtures and appurtenances thereto, and all built-in equipment and built-in furniture;

Initials _____    Page 2 of 16    Initials _____

and all renewals or replacements thereof or articles in substitution therefor, whether or not the same are or shall be attached to said land or building or buildings in any manner; it being mutually agreed that all the aforesaid property owned by Mortgagor and placed by it on the premises shall, so far as permitted by law, be considered to be affixed to the realty and covered by this Mortgage. Such tract or parcel of land and buildings, improvements, fixtures, machinery, equipment, tenements, personal property, and property interests being hereinafter collectively called the "mortgaged property."

TO HAVE AND TO HOLD the above-granted and described mortgaged property to Mortgagee, its successors, or assigns forever.

And Mortgagor hereby represents, warrants, and covenants with Mortgagee that Mortgagor is indefeasibly seized of the mortgaged property in fee simple; that Mortgagor has full power and lawful right to convey the same in fee simple as aforesaid; that the mortgaged property is free from all liens and encumbrances, except as set forth on HIS Capital Funding ISAOA/ATIMA that all property, fixtures, and equipment described herein will be fully paid for and free from all liens, encumbrances, title-retaining contracts, and security interests when delivered and/or installed on the mortgaged property; that such property, fixtures, and equipment shall be deemed to be realty and a part of the freehold; that Mortgagor will make such further assurances to prove the fee simple title to all and singular the mortgaged property in Mortgagee and to prove the lien and priority of this mortgage, as may be reasonably required, and that Mortgagor does hereby and will forever fully warrant and defend the lien and priority of this mortgage and the title to the mortgaged property and every part thereof against the lawful claims and demands of all persons whomsoever.

PROVIDED ALWAYS, and these presents are on the express condition that, if Mortgagor or the successors or assigns of Mortgagor shall pay unto Mortgagee, its successors, or assigns the sums of money secured hereby, and any renewals or extensions thereof in whatever form, and the interest thereon as it shall become due, according to the true intent and meaning thereof, together with all advances hereunder, costs, charges, and expenses, including a reasonable attorneys' fees, which Mortgagee may incur or be put to in collecting the same by foreclosure or otherwise; and shall duly, promptly, and fully perform, discharge, execute, effect, complete, comply with, and abide by each and every one of the stipulations, agreements, conditions, and covenants of the Note, this Mortgage, and other documents or instruments given by Mortgagor to Mortgagee in connection herewith,

THEN this mortgage and the estate hereby created shall cease and be NULL AND VOID and this instrument shall be released by Mortgagee at the cost and expense of Mortgagor.

MORTGAGOR COVENANTS AND AGREES to and with Mortgagee that, until the indebtedness secured hereby is fully repaid:

Initials _____    Page 3 of 16    Initials _____

1.    Payment and Performance.  Mortgagor shall pay Mortgagee, in accordance with the terms of the Note and this Mortgage, the principal, interest, and other sums therein set forth; and Mortgagor shall perform and comply with all of the agreements, conditions, covenants, provisions, and stipulations of the Note and this Mortgage, the terms of which are incorporated herein by reference.

2. ·    Interest Rate.  Notwithstanding any provision contained in this Mortgage or in the Note secured hereby, the total liability for payment of interest, which is set at 10.25 percent (10.25%) annually on the Note, or in the nature of interest, shall not exceed the limits now imposed by the applicable usury law, including the applicable choice-of-law rules.  In the event of the acceleration of the Note hereby secured, the total charges for interest and in the nature of interest shall not exceed the maximum amount allowed by law; any excess portion of such charges that may have been prepaid shall be refunded to the maker thereof.  Such refund may be made by application of the amount involved against the sums then due hereunder, but such crediting shall not cure or waive the default occasioning acceleration.  Nothing herein contained nor in any transaction related hereto shall be construed or shall so operate either presently or prospectively to require Mortgagor to make any payment or do any act contrary to law; however, if any clause or provision herein contained shall be determined by a court of competent jurisdiction to be invalid, illegal, or unenforceable in any respect, the remainder of this Mortgage shall be unaffected thereby and shall remain valid and in full force and effect.

3.    Maintenance of Mortgaged Property.  Mortgagor shall abstain from and shall not permit the commission of waste, impairment, or deterioration in or about the mortgaged property; Mortgagor shall not remove, demolish, or alter the structural character of any building erected at any time on the mortgaged property, without the prior written consent of Mortgagee; Mortgagor shall not permit the mortgaged property to become vacant, deserted, or unguarded; and Mortgagor shall maintain the mortgaged property in good condition and repair, reasonable wear and tear excepted.

4.    Escrow Fund.  The Mortgagor will, at the option of the Mortgagee, pay to the Mortgagee on the first day of each calendar month one-half of an amount (the "Escrow Fund") which would be sufficient to pay the Taxes payable, or estimated by the Mortgagee to be payable, during the ensuing twelve (12) months.  The Mortgagee will apply the Escrow Fund to the payment of Taxes which are required to be paid by the Mortgagor pursuant to the provisions of this Mortgage.  If the amount of the Escrow Fund shall exceed the amount of the Taxes payable by the Mortgagor pursuant to the provisions of this Mortgage, the Mortgagee shall, in its discretion, (a) return any excess to the Mortgagor, or (b) credit such excess against future payments to be made to the Escrow Fund.  In allocating such excess, the Mortgagee may deal with the person shown on the records of the Mortgagee to be the owner of the Mortgaged Property.  If the Escrow Fund is not sufficient to pay the Taxes, as the same become payable, the Mortgagor shall pay to the Mortgagee, upon request, an amount which the Mortgagee shall estimate as sufficient to make up the deficiency.  Until expended or applied as above provided, any amounts in the Escrow Fund

may be commingled with the general funds of the Mortgagee and shall constitute additional security for the Debt and shall not bear interest.

5.  Charges; Liens.  Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 5. Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

6.  Insurance.  Mortgagor shall keep the mortgaged properties continuously insured against loss or damage by fire, with extended coverage, and against other hazards as Mortgagee may reasonably require, with public liability insurance and property damage insurance, with an insurance company or companies satisfactory to Mortgagee, and in such total amounts as Mortgagee may require from time to time. Mortgagor shall keep the mortgaged property continuously insured against loss or damage by fire, with extended coverage, and against other hazards as Mortgagee may reasonably require, with public liability insurance and property damage insurance, with an insurance company or companies satisfactory to Mortgagee, and in such total amounts as Mortgagee may require from time to time.  All policies, including policies for any amounts carried in excess of the required minimum and policies not specifically required by Mortgagee, shall be in a form satisfactory to Mortgagee; shall be maintained in full force and effect; shall be assigned and delivered to Mortgagee at or prior to closing, with premiums prepaid, as collateral security for payment of the indebtedness secured hereby; shall be endorsed with a standard mortgagee clause in favor of Mortgagee as first Mortgagee, not subject to contribution; and shall provide for at least 30 days' notice of cancellation to Mortgagee.  If the insurance, or any part thereof, shall expire, be withdrawn, or become void or unsafe by Mortgagor's breach of any condition thereof, or become void or unsafe by reason of the failure or impairment of the capital of any company in which the insurance may then be carried, or, if for any reason whatever the insurance shall be unsatisfactory to Mortgagee, Mortgagor shall place new insurance on the mortgaged property satisfactory to Mortgagee.  All renewal policies, with premiums paid, shall be delivered to Mortgagee at least 30 days before expiration of the old policies.  In the event of loss, Mortgagor will give immediate notice thereof to Mortgagee, and Mortgagee may make proof of loss if not made promptly by Mortgagor.  Each insurance company concerned is hereby

Initials _____        Page 5 of 16        Initials _____

authorized and directed to make payment under such insurance, including return of unearned premiums, directly to Mortgagee instead of to Mortgagor and Mortgagee jointly, and Mortgagor appoints Mortgagee, irrevocably, as Mortgagor's attorney-in-fact to indorse any draft therefor. At its election, Mortgagee shall have the right to retain and apply the proceeds of any such insurance to reduction of the indebtedness secured hereby, or to restoration or repair of the property damaged. If Mortgagee becomes the owner of the mortgaged property or any part thereof by foreclosure or otherwise, such policies, including all right, title, and interest of Mortgagor thereunder, shall become the absolute property of Mortgagee. Mortgagor shall produce proof of any and all insurance premiums to Mortgagee upon Mortgagee's request and within ten (10) days of closing. Failure to provide proof of insurance or maintain insurance of the property shall constitute a default of the terms of the Mortgage and shall entitle the Mortgagee any and all rights it has under this Mortgage.

7.    Taxes and Other Charges.    Mortgagor shall be responsible for all taxes whether real or personal on the property.

8.    Installments for Insurance, Taxes, and Other Charges.    Without limiting the effect of Paragraphs 6 and 7 hereof, Mortgagor shall be responsible for any and all taxes, insurance, fees for remedy of any code enforcement liens, or otherwise on the property.

9.    Future Taxes.    Mortgagor shall be responsible for any and all future taxes on the property.

10.    Security Agreement.    This Mortgage constitutes a security agreement under the Uniform Commercial Code and creates a security interest in the personal property included in the mortgaged property.    Mortgagor shall execute, deliver, file, and refile any financing statements or other security agreements Mortgagee may require to confirm the lien of this mortgage with respect to such property.    Without limiting the foregoing, Mortgagor hereby irrevocably appoints Mortgagee attorney-in-fact for Mortgagor to execute, deliver, and file such instruments for and on behalf of Mortgagor.

11.    Limitation on Additional Financing.    Mortgagor shall not undertake additional financing secured by any lien or security interest on property encumbered in favor of Mortgagee to secure the loan without first obtaining Mortgagee's written consent.    Any violation of the foregoing limitation shall, at the option of Mortgagee, be deemed an event of default hereunder.

12.    Compliance with Law and Regulations.    Mortgagor shall comply with all laws, ordinances, regulations, and orders of all federal, state, municipal, and other governmental authorities relating to the mortgaged property.

13.    Inspection.    Mortgagee and any persons authorized by Mortgagee shall have the right at any time, on reasonable notice (twenty (20) days is deemed reasonable between the parties) to Mortgagor, to enter the mortgaged property at a reasonable hour to inspect and photograph its

condition and state of repair.

14. Declaration of No Setoff. Within one week after being requested to do so by Mortgagee, Mortgagor shall certify to Mortgagee or to any proposed assignee of this Mortgage, in a writing duly acknowledged, the amount of principal, interest, and other charges then owing on the obligation secured by this mortgage and whether there are any setoffs or defenses against it, and, if such setoffs or defenses are asserted, a detailed explanation thereof.

15. Required Notices. Mortgagor shall notify Mortgagee promptly of the occurrence of any of the following:

    (a) fire or other casualty causing damage to the mortgaged property;

    (b) receipt of notice of condemnation of the mortgaged property;

    (c) receipt of notice from any governmental authority relating to the structure, use, or occupancy of the mortgaged property;

    (d) substantial change in the occupancy of the mortgaged property; or

    (e) commencement of any litigation affecting the mortgaged property.

16. Condemnation.

    (a) In the event of any condemnation or taking of any part of the mortgaged property by eminent domain, alteration of the grade of any street, or other injury to, or decrease in the value of, the mortgaged property by any public or quasi-public authority or corporation, all proceeds (that is, the award or agreed compensation for the damages sustained) allocable to Mortgagor shall be applicable first to payment of the indebtedness secured hereby. No settlement for the damages sustained shall be made by Mortgagor without Mortgagee's prior written approval, which shall not be unreasonably withheld. Mortgagor shall continue to pay the installments of principal, interest, and other charges until payment of the proceeds shall have been received by Mortgagee in the full amount secured hereunder. All of the proceeds shall be applied in the order and in the amounts that Mortgagee, in Mortgagee's sole discretion, may elect to the payment of principal (whether or not then due and payable); to the payment of interest or any sums secured by this Mortgage; or toward payment to Mortgagor, on such reasonable terms as Mortgagee may specify, to be used for the sole purpose of altering, restoring, or rebuilding any part of the mortgaged property that may have been altered, damaged, or destroyed as a result of the taking, alteration of grade, or other injury to the mortgaged property.

    (b) If, prior to the receipt of the proceeds by Mortgagee, the mortgaged property is sold on foreclosure of this Mortgage, Mortgagee shall have the right to receive the

Initials _____          Page 7 of 16          Initials _____

proceeds to the extent of:

(i)    any deficiency found to be due to Mortgagee in connection with the foreclosure sale with legal interest thereon; and

(ii)    reasonable counsel fees, costs, and disbursements incurred by Mortgagee in connection with collection of the proceeds and the proceedings to establish the deficiency.

(c)    If the amount of the initial award of damages for the condemnation is insufficient to pay in full the indebtedness secured hereby with interest and other appropriate charges, Mortgagee shall have the right to prosecute to final determination or settlement an appeal or other appropriate proceedings in the name of Mortgagee or Mortgagor, for which Mortgagee is hereby appointed irrevocably as attorney-in-fact for Mortgagor, which appointment, being for security, is irrevocable. In that event, the expenses of the proceedings, including reasonable counsel fees, shall be paid first out of the proceeds, and only the excess, if any, paid to Mortgagee shall be credited against the amounts due under this Mortgage.

(d)    Nothing herein shall limit the rights otherwise available to Mortgagee, at law or in equity, including the right to intervene as a party to any condemnation proceeding.

17.    Conveyance.  Without the prior written consent of Mortgagee, Mortgagor will abstain from and will not cause or permit any sale, exchange, transfer, or conveyance of any mortgaged property or any part thereof, voluntarily or by operation of law (other than by execution on the Note or foreclosure under this Mortgage), or any transfer of shares of stock or control in Mortgagor, whether by sale, exchange, conveyance, merger, consolidation, or otherwise. Any violation of the foregoing limitations shall, at the option of Mortgagee, be deemed an event of default hereunder. If any property secured by this Mortgage is sold without Mortgagee's consent, then the sale constitutes a default under this Mortgage and the Note and the Mortgagee at its option can declare the entire amount due and payable to Mortgagee.

18.    Right to Remedy Defaults.  If Mortgagor fails to pay real estate or other taxes, assessments, water and sewer rents, charges and claims, or sums due under any prior lien or insurance premiums; fails to make necessary repairs; or permits waste, Mortgagee, at its election and without notice to Mortgagor, shall have the right to make any payment or expenditure and take any action that Mortgagor should have made or taken or which Mortgagee deems advisable to protect the security of this Mortgage or the mortgaged property, without prejudice to any of Mortgagee's rights or remedies available hereunder or otherwise at law or in equity.  All such sums and costs advanced by Mortgagee under this Mortgage shall be due immediately from Mortgagor to Mortgagee, shall be secured hereby, and shall bear interest at a rate that shall be eight percent (8%) higher than the then-effective rate specified by the Note from the date of payment by Mortgagee until the date of repayment.  Mortgagee shall be subrogated to any rights, equities, and

Initials _____    Page 8 of 16    Initials _____

liens so discharged.

19. Events of Default. The following shall constitute events of default hereunder:

(a) Failure of Mortgagor to pay any installment of principal or interest, or any other sum, within 5 days after the date it is due under the Note or this Mortgage.

(b) Mortgagor's nonperformance of, or noncompliance with, any other agreements, conditions, covenants, provisions, or stipulations contained in the Note or in this Mortgage, or in any other document securing such note, and the continuation of such nonperformance or noncompliance for 30 days after notice thereof from Mortgagee to Mortgagor.

(c) Any assignment for the benefit of creditors made by Mortgagor, any shareholder of Mortgagor, or the person executing the guaranty of even date herewith given to Mortgagee in connection with the loan.

(d) Appointment of a receiver, liquidator, or trustee of Mortgagor (which term for the purposes of this subparagraph (d) shall be deemed to include any shareholder of Mortgagor) or of any of the property of Mortgagor; insolvency of Mortgagor or the adjudication of Mortgagor as bankrupt; the filing by Mortgagor of any petition for the bankruptcy, reorganization, or arrangement of Mortgagor under the Federal Bankruptcy Act or any similar statute; the institution by Mortgagor of any proceeding for the dissolution or liquidation of Mortgagor; or the filing against Mortgagor of any such petition or institution, unless the same be discharged within 30 days after the filing or institution.

(e) The rendering by any court of last resort of a decision that an undertaking by Mortgagor (as herein provided) to pay any tax, assessment, levy, liability, obligation, or encumbrance is legally inoperative or cannot be enforced, or the passage of any law changing in any way or respect the laws now in force for the taxation of mortgages or debts secured thereby for any purpose, or the manner of collection of any such tax, so as to affect this Mortgage or the debt secured hereby.

20. Remedies.

(a) On the happening of any event of default, this conveyance shall become absolute, and the entire unpaid balance of the principal, the accrued interest, and all other sums secured by this Mortgage shall become immediately due and payable, at the option of Mortgagee, without notice or demand.

(b) When the entire indebtedness shall become due and payable because of maturity, the occurrence of any event of default, or otherwise, then forthwith:

Initials _____      Page 9 of 16      Initials _____

(i)   Foreclosure.   Mortgagee may institute an action to foreclose this mortgage against the mortgaged property or take such other action at law or in equity for the enforcement of this Mortgage and realization on the mortgage security or any other security herein or elsewhere provided for, as the law may allow, and may proceed therein to final judgment and execution for the entire unpaid balance of the principal debt, with interest at the rate stipulated in the Note to the date of default; and, thereafter, at a rate that shall be 7.75% higher than the then-effective rate specified in the Note at the time of default, together with all other sums due by Mortgagor in accordance with the provisions of the Note and this Mortgage, including all sums that may have been lent by Mortgagee to Mortgagor after the date of this Mortgage, and all sums that may have been advanced by Mortgagee for taxes, water or sewer rents, charges or claims, payments on prior liens, or insurance or repairs to the mortgaged property, and all costs of legal action, together with interest at such rate, on any judgment obtained by Mortgagee from and after the date of any foreclosure sale until actual payment is made of the full amount due Mortgagee, and of an attorney's commission for collection that shall be 30% of the total of the foregoing sums but not less than $39,900.00; or Mortgagee may foreclose only as to the sum past due with interest and costs, as provided above, without injury to this Mortgage or the displacement or impairment of the remainder of the lien thereof, and, at such foreclosure sale, the mortgaged property shall be sold subject to all remaining items of indebtedness; and Mortgagee may again foreclose, in the same manner, as often as there may be any sum past due; or

(ii)   Possession.   Mortgagee may enter into possession of the mortgaged property with or without legal action and by force if necessary. Mortgagee may then collect therefrom all rentals (which term shall also include sums payable for use and occupation) and, after deducting all costs of collection and administration expenses, apply the net rentals to any or all of the following in such order and amounts as Mortgagee, in Mortgagee's sole discretion, may elect: the payment of taxes, water and sewer rents, charges and claims, insurance premiums, and all other carrying charges; the maintenance, repair, or restoration of the mortgaged property; and on account and in reduction of the principal or interest, or both, hereby secured. In and for that purpose, Mortgagor hereby assigns to Mortgagee all rentals due and to become due under any lease or leases or rights to use and occupation of the mortgaged property hereafter created, as well as all rights and remedies provided in such lease or leases or at law or in equity for the collection of the rentals. Mortgagee shall be entitled to the appointment of a receiver of all the rents, issues, and profits, as a matter of strict right, regardless of the value of the mortgaged property and the solvency or insolvency of Mortgagor and other persons liable to pay such indebtedness. Mortgagor hereby specifically waives the right to object to the appointment of a receiver as aforesaid and hereby expressly consents that such appointment shall be made as an admitted equity and that the same may be done without notice to Mortgagor.

Initials _____          Page 10 of 16          Initials _____

(c)     Mortgagee shall have the right to bring an appropriate action to recover any sums required to be paid by Mortgagor under the terms of this Mortgage, as they become due, without regard to whether the principal indebtedness or any other sums secured by the Note and this Mortgage shall be due, and without prejudice to the right of Mortgagee thereafter to bring an action to foreclose this Mortgage, or any other action, for any default by Mortgagor existing at the time the earlier action was commenced.

(d)     Any real estate sold under any action to foreclose this mortgage or under any other judicial proceedings under this Mortgage or the Note may be sold in one parcel, as an entirety, or in such parcels or condominium units and in such manner or order as Mortgagee, in its sole discretion, may elect.

21.     Rights and Remedies Cumulative.

(a)     The rights and remedies of Mortgagee as provided in the Note and in this Mortgage shall be cumulative and concurrent; may be pursued separately, successively, or together against Mortgagor, the mortgaged property, or both, at the sole discretion of Mortgagee; and may be exercised as often as occasion therefor shall arise. The failure to exercise any such right or remedy shall in no event be construed as a waiver or release thereof.

(b)     Any failure by Mortgagee to insist on strict performance by Mortgagor of any of the terms and provisions of this Mortgage or the Note shall not be deemed to be a waiver of any of the terms or provisions thereof, and Mortgagee shall have the right thereafter to insist on strict performance by Mortgagor of any and all of them.

(c)     Neither Mortgagor nor any other person now or hereafter obligated for payment of all or any part of the sums now or hereafter secured by this Mortgage shall be relieved of such obligation by reason of the failure of Mortgagee to comply with any request of Mortgagor or of any other person so obligated to take action to foreclose on this mortgage or otherwise enforce any provisions of the Mortgage or the Note; by reason of the release, regardless of consideration, of all or any part of the security held for the indebtedness secured by this Mortgage; or by reason of any agreement or stipulation between any subsequent owner of the mortgaged property and Mortgagee extending the time of payment or modifying the terms of the Mortgage or Note without first having obtained the consent of Mortgagor or such other person. In the latter event, Mortgagor and all such other persons shall continue to be liable to make payments according to the terms of any such extension or modification agreement unless expressly released and discharged in writing by Mortgagee.

(d)     Mortgagee may release, regardless of consideration, any part of the security held for the indebtedness secured by this Mortgage without, as to the remainder of the

Initials _____        Page 11 of 16        Initials _____

security, in any way impairing or affecting the lien of this Mortgage or its priority over any subordinate lien.

(c)    For payment of the indebtedness secured hereby, Mortgagee may resort to any other security therefor held by Mortgagee in such order and manner as Mortgagee may elect.

22.    Breach/Acceleration of Note and Mortgage.    If Borrower is in default in accordance with Paragraph 19, but not limited to Paragraph 19, the Lender may send Borrower a written notice stating if Borrower does not pay the overdue amount by a date not less than 30 days from the date of the notice, then the Lender may require Borrower to pay the full amount of principal immediately upon acceleration. Notice is received when mailed to the Borrower via certified mail, return receipt requested.  Failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. Immediate payment in full may be required without further notice or demand.  Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in the Mortgage, including, but not limited to reasonable attorney's fees, court costs, costs of documentary evidence, abstracts, costs of title evidence and any other related costs in connection with the borrower's default.

Borrower has the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense to acceleration and foreclosure.  If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by the Mortgage and Note without further demand and may foreclose the Mortgage and Note.

23.    Mortgagor's Waivers.  Mortgagor hereby waives and releases

(a)    all errors, defects, and imperfections in any proceeding instituted by Mortgagee under the Note, this Mortgage, or both of them;

(b)    all benefit that might accrue to Mortgagor by virtue of any present or future law exempting the mortgaged property, or any part of the proceeds arising from any sale thereof from attachment, levy, sale on execution, or providing for any stay of execution, exemption from civil process, or extension of time for payment; and

(c)    unless specifically required herein, all notices of Mortgagor's default or of Mortgagee's election to exercise or Mortgagee's actual exercise of any option under the Note or this Mortgage.

(d)    any and all rights to a jury trial if the Borrower is in default of any of the terms and conditions of the Note and Mortgage.

Initials _____                    Page 12 of 16            Initials _____

24.    Assignment of Rents.    Borrower hereby agrees that in the event of the Borrower's default which is designated, but not limited in Paragraph 19 of this agreement to the assignment of any and all rents collected, from any and all properties described herein, and thereafter to be forever assigned, transferred, or designated to Lender or Lender's agents, employees, assigns, heirs or otherwise.    Upon default, Lender shall provide Borrower with written Demand for assignment of payment of rents to Lender.    Borrower further agrees to turn over any and all rents in his possession at the time of written demand or collected thereafter less payments of any expenses authorized by Lender in writing if applicable.    Lender shall hold a lien on any and all rents owed to the Borrower or collected by the Borrower upon the Borrower's default.    Upon Default, Borrower further agrees to provide Lender with an accounting of any and all rents paid, owed, and any and all amounts due in the future.    Borrower also agrees to the assignment and release of any and all rights pertaining to the rents collected, advanced or owed in the present and future to the Lender or Lender's agents, employees, assigns, heirs or otherwise upon the Borrower's default. In the event of foreclosure, the Borrower further agrees to relinquish any and all rents collected or owed thereafter to Lender or Lender's agents, employees, assigns, heirs, or otherwise without the necessity of court intervention upon reasonable notice as designated above.

25.    Attorneys' Fees.    If Mortgagee becomes a party to any suit or proceeding affecting the mortgaged property or title thereto, the lien created by this Mortgage or Mortgagee's interest therein, or, if Mortgagee engages counsel to collect any of the indebtedness or to enforce performance of the agreements, conditions, covenants, provisions, or stipulations of this Mortgage or the Note, Mortgagee's costs, expenses, and reasonable attorneys' fees, whether or not suit is instituted, shall be paid to Mortgagee by Mortgagor on demand with interest at the then-effective rate set forth in the Note, and, until paid, these amounts of money shall be deemed to be part of the indebtedness evidenced by the Note and secured by this Mortgage.

As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

26.    Future Advances.    Under section 697.04, Florida Statutes, this Mortgage shall secure not only the existing indebtedness evidenced by the Note, but also such future advances as may be made by Mortgagee to Mortgagor within 3 years or a later time as prescribed by Mortgagee from the date hereof to the same extent as if such future advances were made on the date of the execution of this Mortgage.    The total amount of indebtedness that shall be so secured by this Mortgage may decrease or increase from time to time, provided $1,500,000.00 (up to double the original principal amount of the loan) plus interest thereon and plus any disbursements made on the property covered by the lien of this Mortgage, together with interest on such disbursements.

27.    Communications.    All communications required under this Mortgage or the Note shall be in writing and shall be sent by registered or certified mail, postage prepaid, addressed to Mortgagor and Mortgagee at the address set forth in the heading of this Mortgage or in the Note or to such other address as either party may designate by notice to the other in the manner set forth

Initials _____                          Page 13 of 16                   Initials _____

herein.

28.    Amendment.   This Mortgage cannot be changed or amended except by agreement in writing signed by the party against whom enforcement of the change is sought.

29.    Construction.   Whenever used in this Mortgage, unless the context clearly indicates a contrary intent:

(a)    The word "Mortgagor" shall mean the person who executes this Mortgage and any subsequent owner of the mortgaged property and his or her respective heirs, executors, administrators, successors, and assigns.

(b)    The word "Mortgagee" shall mean the person specifically named herein as "Mortgagee", or any subsequent holder of this Mortgage.

(c)    The word "person" shall mean individual, corporation, partnership, or unincorporated association.

(d)    The use of any gender shall include all genders.

(e)    The singular number shall include the plural and the plural the singular, as the context may require.

(f)    If Mortgagor is more than one person, all agreements, conditions, covenants, provisions, stipulations, warrants of attorney, authorizations, waivers, releases, options, undertakings, rights, and benefits made or given by Mortgagor shall be joint and several and shall bind and affect all persons who are defined as Mortgagor as fully as though all of them were specifically named herein wherever the word "Mortgagor" is used.

30.    Severability.   If any of the provisions in this Mortgage is deemed to be unenforceable by law, then that specific provision will be stricken and the rest of the Mortgage will remain in full force and effect.

31.    Captions.   The captions preceding the text of the paragraphs or subparagraphs of this Mortgage are inserted only for convenience of reference and shall not constitute a part of this Mortgage, nor shall they in any way affect its meaning, construction, or effect.


REMAINDER OF PAGE IS LEFT INTENTIONALLY BLANK

**IN WITNESS WHEREOF,** Mortgagor has caused this Mortgage to be duly executed as of the day and year first written above.

Steven K. Hendrickson, _____AMA_____ (Title) and as
authorized agent on behalf of JAX SFH Properties, LLC
221 N. Hogan Street, #405, Jacksonville, FL 32202

Mortgagor          (Date)_11/22/16

Signed in the presence of:          Signed in the presence of:

_____          _____ (Date

Nov. 22, 2016     (Date          Nov. 22, 2016     (Date

TERRY D. WILKINS          Rupert Wilson
Witness                    Witness

STATE OF _FLORIDA_
COUNTY OF _DUVAL_

The foregoing Mortgage and Security Agreement was acknowledged before me this _22_ day of November, 2016, by Steven K. Hendrickson, _____AMA_____ (Title) and as authorized agent on behalf of JAX SFH Properties, LLC, who is personally known to me or has produced _Florida DRIV LIC._ as identification.

TERRY D. WILKINS
MY COMMISSION # FF208282
EXPIRES: March 10, 2019.

Notary Public
State of _FL_

Initials _____          Page 15 of 16          Initials _____

EXHIBIT "A"

Parcel 1:

Lot 20, Block 18, CEDAR HILLS, UNIT 2, according to the plat thereof as recorded in Plat Book 25, Page(s) 32, of the current public records of Duval County, Florida.

Parcel 2:

Lot 1, Block 8, HARBOR VIEW- UNIT TWO, according to the plat thereof as recorded in Plat Book 28, Page(s) 80, of the current public records of Duval County, Florida.

Parcel 3:

Lot 22, Block "AA", MELVIN PARK, according to the plat thereof as recorded in Plat Book 34, Page(s) 65, of the current public records of Duval County, Florida.

Parcel 5:

Lot 22, Block 12, GILLEN, according to the plat thereof as recorded in Plat Book 1, Page 121, of the former public records of Duval County, Florida.

Parcel 7:

Lot 28, Block 3, ARLINGTON SHORES 1ST ADDITION, according to the plat thereof as recorded in Plat Book 25, Page(s) 86, of the current public records of Duval County, Florida.

Parcel 8:

Lot 25, and the West 10 feet of Lot 26, Block 11, ROSE PARK, according to the plat thereof as recorded in Plat Book 5, Page(s) 63, of the current public records of Duval County, Florida.

Parcel 9:

The North 85.03 feet of the South 170.06 feet of Lot 12, PANAMA GARDENS, according to the plat thereof as recorded in Plat Book 8, Page(s) 37, of the current public records of Duval County, Florida, LESS AND EXCEPT any part as recorded in O.R. Book 9598, Page 2236

Parcel 10:

Lot 13, Block 10, LAURAL TERRACE, according to the plat thereof as recorded in Plat Book 22, Page(s) 34, of the current public records of Duval County, Florida.

Parcel 11:

Lot 28, Block 25, HARBOR VIEW – UNIT EIGHT, according to the plat thereof as recorded in Plat Book 29, Page(s) 93, of the current public records of Duval County, Florida.

Parcel 12:

Lot 4, Block 2, BUFFALO GARDENS, according to the plat thereof as recorded in Plat Book 11, Page(s) 6, of the current public records of Duval County, Florida.

Parcel 13:

Lot 7, Block 2, PEARL CREST, according to the plat thereof as recorded in Plat Book 5, Page(s) 15, of the current public records of Duval County, Florida.

Initials: _____          Page 16 of 16          Initials: _____

# Exhibit D

Loan Number: ███████

# INTEREST ONLY BALLOON PROMISSORY NOTE

**Property Addresses** with legal descriptions are attached hereto and incorporated herein as Exhibit "A"

1.    Principal.

FOR VALUE RECEIVED, the undersigned "Borrower" promises to pay to "Lender" or "Note Holder" the principal sum of Three Hundred Sixty-Eight Thousand Two Hundred and Twenty-Five Dollars and 00/100 (US $368,225.00), with annual interest thereon calculated in accordance with the terms and provisions provided below. All sums owing under this Note are payable in lawful money of the United States of America.

The Lender or anyone who take this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

Borrower name and address is:    JAX SFH Properties, LLC
221 N. Hogan Street, #405
Jacksonville, FL 32202

Note Holder name and address is:    HIS Capital Funding ISAOA/ATIMA
250 N. Orange Ave., Suite 610
Orlando, FL 32801

2.    Interest.

Interest accrued on this Note shall be payable at a annual rate of 10.25 percent (10.25%), until this N            in full

Initials:                    Page 1 of 8                    Initials:

All amounts required to be paid under Note Holder's Note shall be payable at Note Holder's Servicer, FCI Lender Services, Inc.'s office located at P.O. Box 27370, Anaheim Hills, CA 92809-0112, or at another place as designated in writing by Note Holder.

Interest calculations shall be based on a three-hundred and sixty-five (365) day year and charged on the basis of actual days elapsed.

If any required payment is not paid on or before the last business day of the month in which it becomes due, Borrower shall pay, at Note Holder's option, a late or collection charge not exceeding 20% of the amount of the unpaid amount. Furthermore, the amount of each payment that is not paid on or before the last business day of the month in which it became due shall bear interest from the last business day until paid at the rate or rates charged from time to time on the principal owing under this rate.

3.

. Interest shall be paid in equal successive monthly installments, each in the amount of Three Thousand One Hundred Forty-Five Dollars and 26/100 cents ($3,145.26), not including taxes and insurance, commencing on January 1, 2017, and continuing on the same day of each month thereafter based on a period of 24 months (2 years) to December 1, 2018 with a balloon payment of the entire balance owed due and payable on or before twenty-four (24) months from the execution of this Note. The Balloon payment amount consists of the entire unpaid principal balance minus applicable payments made prior to the maturity date, interest, any advances by Note Holder to protect its interest in the property, and any other related charges in accordance with the Note and Mortgage.

Escrow for Taxes.   The Mortgagor will, at the option of the Mortgagee, pay to the Mortgagee on the first day of each calendar month one-half of an amount (the "Escrow Fund") which would be sufficient to pay the Taxes payable, or estimated by the Mortgagee to be payable, during the ensuing twenty-four (24) months. The Mortgagee will apply the Escrow Fund to the payment of Taxes which are required to be paid by the Mortgagor pursuant to the provisions of this Mortgage.

4.   Maturity Date.

The entire principal balance of this Note, together with all accrued and unpaid interest, shall be due and payable on or before twenty-four (24) months from date of execution of this Note, also known as the ("maturity date"), unless otherwise prepaid in accordance with the terms of this Note.

Initials:                            Page 2 of 8                Initials _____

5.    Security

(a)    This Note is secured by, among other things, a Mortgage and Security Agreement ("Mortgage") bearing the date of this Note, executed and delivered by Borrower, as mortgagor, to Note Holder, as mortgagee, encumbering properties in Duval County, Florida as more fully described in the Mortgage.

(b)    This Note, is further secured by additional collateral documentation, including assignments and guarantees ("security documents"), which were executed and delivered to Note Holder on the date of this Note.

(c)    All of the agreements, conditions, covenants, provisions, and stipulations contained in the Mortgage and security documents that are to be kept and performed by Borrower and any guarantors of the Note are hereby made a part of this Note to the same extent and with the same force and effect as if they were set forth fully herein, and Borrower covenants and agrees to keep and perform them or cause them to be kept and performed strictly in accordance with their terms.

6.    Prepayment.

Borrower may prepay the whole or any portion of this Note on any date, upon thirty (30) days' notice to Note Holder, without any penalty. Any payments of the principal sum received by Note Holder under the terms of this Note shall be applied in the following order of priority: (a) first, to any accrued interest due and unpaid as of the date of payment; (b) second, to the outstanding principal sum; and (c) third, the balance, if any, to any accrued, but not yet due and payable, interest.

7.    Late Charge.

If any required payment, including the final payment due on the maturity date, is not paid within five (5) days from and including the date upon which it was due (whether by acceleration or otherwise), then, in each such event, all past due amounts shall be subject to a late penalty of ten (10) cents on every dollar owed (the "late penalty"). This late penalty shall be in addition to any other interest due as provided for in paragraph 2 and in addition to all other rights and remedies provided herein or by law for the benefit of the holder on a default. The acceptance of any payment by the holder of the Note shall not act to restrict the holder at all in exercising any other rights under the Note or the law, to waive or release Borrower from any obligations contained herein, or to extend the time for payments due under this Note.

8.    Default and Remedies.

If Borrower fails to pay principal and/or interest on the date on which it falls due or to perform any of the agreements, conditions, covenants, provisions, or stipulations contained in this Note, in the                    or in the security documents, then Note Holder, at its option and without

Initials:                          Page 3 of 8.                    Initials: _____

notice to Borrower, may declare immediately due and payable the entire unpaid balance of principal with interest from the date of default at the default interest rate of 18% per year (or the highest rate permitted by law if this rate is less than 18% per year) and all other sums due by Borrower hereunder or under the Mortgage, anything herein or in the Mortgage to the contrary notwithstanding. Payment of this sum may be enforced and recovered in whole or in part at any time by one or more of the remedies provided to Note Holder in this Note, in the Mortgage, or in the security documents. In that case, Note Holder may also recover all costs in connection with legal action, including, but not limited to reasonable attorneys' fees for collection, costs, title expenses, interest on any judgment obtained by Note Holder at the rate of 18% per year (or the highest legal rate if this rate is less than 18% per year) and any other related expenses.

The remedies of Note Holder and the warrants provided in this Note, the Mortgage, or the security documents shall be cumulative and concurrent, and they may be pursued singly, successively, or together at the sole discretion of Note Holder. They may be exercised as often as necessary, and failing to exercise one shall in no event be construed as a waiver or release of it.

9.    Notice of Default.

If Borrower is in default, the Note Holder may send Borrower a written notice stating if Borrower does not pay the overdue amount by a certain date, then the Note Holder may require Borrower to pay the full amount of principal immediately upon acceleration. The Notice of the Default must be in writing in accordance with Paragraph 12.

10.

If Note Holder engages any attorney to enforce or construe any provision of this Note or the Mortgage, or as a consequence of any default whether or not any legal action is filed, Borrower shall immediately pay on demand all reasonable attorneys' fees and other Note Holder's costs, together with interest from the date of demand until paid at the highest rate of interest then applicable to the unpaid principal, as if the unpaid attorneys' fees and costs had been added to the principal.

11.    Waivers.

(a).    Borrower hereby waives and releases all benefit that might accrue to Borrower by virtue of any present or future laws of exemption with regard to real or personal property or any part of the proceeds arising from any sale of that property, from attachment, levy, or sale under execution, or providing for any stay of execution, exemption from civil process, or extension of time for payment. Borrower agrees that any real estate that may be levied on under a judgment obtained by virtue hereof, on any writ of execution issued thereon, may be sold on any writ in whole or in part in any order desired by Note Holder.

Initials.                      Page 4 of 8                      Initials

(b)     Borrower and all indorsers, sureties, and guarantors jointly and severally waive presentment for payment, demand, notice of demand, notice of nonpayment or dishonor, protest, notice of protest of this Note, and all other notices in connection with the delivery, acceptance, performance, default, or enforcement of the payment of this Note. They agree that each shall have unconditional liability without regard to the liability of any other party and that they shall not be affected in any manner by any indulgence, extension of time, renewal, waiver, or modification granted or consented to by Note Holder. Borrower and all indorsers, sureties, and guarantors consent to any and all extensions of time, renewals, waivers, or modifications that may be granted by Note Holder with respect to the payment or other provisions of this Note, and to the release of any collateral or any part thereof, with or without substitution, and they agree that additional borrowers, indorsers, guarantors, or sureties may become parties hereto without notice to them or affecting their liability hereunder.

(c)     Note Holder shall not be considered by any act of omission or commission to have waived any of its rights or remedies hereunder, unless such waiver is in writing and signed by Note Holder, and then only to the extent specifically set forth in writing. A waiver on one event shall not be construed as continuing or as a bar to or waiver of any right or remedy to a subsequent event.

12.   Notices.

All notices required under or in connection with this Note shall be delivered or sent by certified or registered mail, return receipt requested, postage prepaid, to the addresses set forth in paragraph 1, or to another address that any party may designate by notice to the others, in the manner set forth herein. All notices shall be considered to have been given or made either at the time of delivery to an officer or employee or on the third business day following the time of mailing in the aforesaid manner. The Notice period must not be less than thirty (30) days from the date the notice was mailed to the Borrower.

13.   Costs and Expenses.

Borrower shall pay the cost of any revenue tax or other stamps now or hereafter required by law at any time to be affixed to this Note.

14.

Nothing contained in this Note or elsewhere shall be construed as creating a partnership or joint venture between Note Holder and Borrower or between Note Holder and any other person or as causing the holder of the Note to be responsible in any way for the debts or obligations of Borrower or any other person.

15. Interest Rate Limitation.

Notwithstanding anything contained herein to the contrary, the holder shall never be entitled to collect or apply as interest on this obligation any amount in excess of the maximum rate of interest permitted to be charged by applicable law. If the holder of this Note ever collects or applies as interest any such excess, the excess amount shall be applied to reduce the principal debt; and, if the principal debt is paid in full, any remaining excess shall be paid forthwith to Borrower. In determining whether the interest paid or payable in any specific case exceeds the highest lawful rate, the holder and Borrower shall to the maximum extent permitted under applicable law (a) characterize any non-principal payment as an expense, fee, or premium rather than as interest; (b) exclude voluntary prepayments and the effects of these; and (c) spread the total amount of interest throughout the entire contemplated term of the obligation so that the interest rate is uniform throughout the term. Nothing in this paragraph shall be considered to increase the total dollar amount of interest payable under this Note.

16. Modification.

In the event this Note is pledged or collaterally assigned by Note Holder at any time or from time to time before the maturity date, neither Borrower nor Note Holder shall permit any modification of this Note without the consent of the pledgee/assignee.

17. Number and Gender.

In this Note the singular shall include the plural and the masculine shall include the feminine and neuter genders, and vice versa, if the context so requires.

18. Headings.

Headings at the beginning of each numbered paragraph of this Note are intended solely for convenience of reference and are not to be construed as being a part of the Note.

19. Time of Essence.

Time is of the essence with respect to every provision of this Note.

20. Governing Law.

This Note shall be construed and enforced in accordance with the laws of the State of Florida, except to the extent that federal laws preempt the laws of the state of Florida.

Initials                        Page 6 of 8                        Initials:_____

IN WITNESS WHEREOF, Borrower has executed this promissory Note on the date set forth above

Steven K.                                    (Title)
and as authorized agent on behalf of JAX SFH
Properties, LLC
221 N. Hogan Street, #405, Jacksonville, FL
32202
Borrower:            (Date)            16

Signed in the presence of:                              ence of:

                                    (                    2016          (Date)

Witness

STATE OF

COUNTY OF  DUVAL

The          Interest Only Balloon Promiss          id before me this 22 day
of    O O.  2016, by Steven K. l              Am          (Title), and as
authorized    on        of JAX SFH Properties, LLC, who is personally known to me or has
produced                    as identification.

                              otary
                              State of    o

Initials        ___        Page 7 of 8        Initials        ___

## EXHIBIT "A"

Parcel 1

Lot 20, Block 18, CEDAR HILLS, UNIT 2, according to the plat thereof as recorded in Plat Book 25, Page(s) 32, of the current public records of Duval County, Florida.

Parcel 2

Lot 1, Block 8, HARBOR VIEW- UNIT TWO, according to the plat thereof as recorded in Plat Book 28, Page(s) 80, of the current public records of Duval County, Florida.

Parcel 3:

Lot 22, Block "AA", MELVIN PARK, according to the plat thereof as recorded in Plat Book 34, Page(s) 65, of the current public records of Duval County, Florida.

Parcel 5:

Lot 22, Block 12, GILLEN, according to the plat thereof as recorded in Plat Book 1, Page 121, of the former public records of Duval County, Florida.

Parcel 7:

Lot 28, Block 3, ARLINGTON SHORES 1ST ADDITION, according to the plat thereof as recorded in Plat Book 25, Page(s) 86, of the current public records of Duval County, Florida.

Parcel 8:

Lot 25, and the West 10 feet of Lot 26, Block 11, ROSE PARK, according to the plat thereof as recorded in Plat Book 5, Page(s) 63, of the current public records of Duval County, Florida.

Parcel 9:

The North 85.03 feet of the South 170.06 feet of Lot 12, PANAMA GARDENS, according to the plat thereof as recorded in Plat Book 8, Page(s) 37, of the current public records of Duval County, Florida, LESS AND EXCEPT any part as recorded in O.R. Book 9598, Page 2236

Parcel 10:

Lot 13, Block 10, LAURAL TERRACE, according to the plat thereof as recorded in Plat Book 22, Page(s) 34, of the current public records of Duval County, Florida.

Parcel 11:

Lot 28, Block 25, HARBOR VIEW – UNIT EIGHT, according to the plat thereof as recorded in Plat Book 29, Page(s) 93, of the current public records of Duval County, Florida.

Parcel 12:

Lot 4, Block 2, BUFFALO GARDENS, according to the plat thereof as recorded in Plat Book 11, Page(s) 6, of the current public records of Duval County, Florida.

Parcel 13:

Lot 7, Block 2, PEARL CREST, according to the plat thereof as recorded in Plat Book 5, Page(s) 15, of the current public records of Duval County, Florida.

Loan Number ████

## BALLOON PAYMENT ADDENDUM TO INTEREST ONLY NOTE

The BALLOON PAYMENT RIDER ("Rider") is made this 22 day of November 2016, and amends a NOTE in the amount of Three Hundred Sixty-Eight Thousand Two Hundred Twenty-Five Dollars and 00/100 (US $368,225.00) (the "Note") made by the person(s) who sign below ("Borrower") to HIS Capital Funding ISAOA/ATIMA, a California Corporation ("Lender").

"THIS LOAN IS PAYABLE IN FULL AT MATURITY OR LOAN IS PAYABLE IN FULL TWENTY-FOUR (24) MONTHS OF EXECUTION OF THE NOTE AND MORTGAGE, YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THIS LOAN AT THAT TIME. YOU WILL THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COST NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER."

At least ninety (90) days, but not more than one hundred twenty (120) days prior to the Maturity Date, Lender must send Borrower a notice which states the Maturity Date and the amount of the "balloon payment" (which is the entire unpaid principal balance of loan and interest then due) which will be due on the Maturity Date (assuming all scheduled payments due between the date of the notice and the Maturity Date are made on time). The loan will be payable in full, principal balance of the loan and interest, at Sale Closing.

_Rip lin IV_
**Witness**
Rupert Wilson IV

_Steven K. Hendrickson_
Steven K. Hendrickson
AmA    (Title) and as
authorized agent on behalf of
JAX SFH Properties, LLC

Initials: _____          Initials: _____

Loan Number ▮▮▮▮▮

## UM TO INTEREST ONLY NOTE.

The BALLOON PAYMENT RIDER ("Rider") is made this ___ day of November 2016, and amends a NOTE in the amount of Three Hundred Sixty-Eight Thousand Two Hundred Twenty-Five Dollars and 00/100 (US $368,225.00) (the "Note") made by the person(s) who sign below ("Borrower") to HIS Capital Funding ISAOA/ATIMA, a California Corporation ("Lender").

"THIS LOAN IS PAYABLE IN FULL AT MATURITY OR LOAN IS PAYABLE IN FULL TWENTY-FOUR (24) MONTHS OF EXECUTION OF THE NOTE AND MORTGAGE, YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN, AND UNPAID INTEREST THEN DUE, THE LENDERIS UNDER NO OBLIGATION TO REFINNCE THIS LOAN AT THAT TIME. YOU WILL THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COST NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER."

At least ninety (90) days, but not more than one hundred twenty (120) days prior to the Maturity Date, Lender must send Borrower a notice which states the Maturity Date and the amount of the "balloon payment" (which is the entire unpaid principal balance of loan and interest then due) which will be due on the Maturity Date (assuming all scheduled payments due between the date of the notice and the Maturity Date are made on time). The loan will be payable in full, principal balance of the loan and interest, at Sale Closing.

W
Rupert wilson IV

Steven K.

(Title) and as
authorized agent on behalf of
JAX SFH Properties, LLC

Initials: _____

Initials: _____

# INTEREST-ONLY ADDENDUM
## TO FIXED RATE NOTE

e. due.
ent, I
i.a
the

aymont
pal
o the
yment.
ere
ir

Borrowers initial

Page 2 of 2 Interest Only LOAN
NUMBER 

If the partial Prepayment is made during the Interest Only Period, the amount of the monthly payment will decrease for the remainder of the term when my payments consist only of interest as well as during the time that my payments consist of principal and interest.  If the partial Prepayment is made during the period when my payment consist of principal and interest, the amount of my monthly payment will not decrease; however, the principal and the interest required under this Note will be paid prior to the Maturity Date.

## 6.    BORROWER'S FAILURE TO PAY AS REQUIRED

### (A)    Late Charge for Overdue  Payments

If the Note Holder has not received the full amount of any monthly payment by the end of calendar 15 days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.00 % of my overdue payment of interest during the Interest Only Period. At the end of the Interest Only Period, it will be 5.00% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Interest Only Addendum to Fixed Rate Note.

**JAX SFH PROPERTIES, LLC, A FLORIDA LIMITED LIABILITY COMPANY**

| By Borrower:  K. HENDRICKSON/ | Date | By Borrower: | Date |
| AUTHORIZED SIGNER | | | |

| By Borrower: | Date: | Borrower: | Date |

| By Borrower: | Date: | B Borrower: | Date |

# Exhibit E

Case 3:23-cv-10815-TKW-ZCB Document 671-1 Filed 07/11/23 Page 86 of 138

RECORDING REQUESTED BY:

PS Funding, Inc.

WHEN RECORDED RETURN TO:

PS Funding, Inc.
300 Manhattan Beach Blvd, Suite #206
Manhattan Beach, CA 90266
Attn: Legal Department

## ASSIGNMENT OF MORTGAGE

This ASSIGNMENT OF MORTGAGE ("Assignment") is made as of November 28, 2016, by HIS CAPITAL FUNDING, a California corporation ("Assignor"), to PS FUNDING, INC., a Delaware corporation("Assignee").

FOR VALUE RECEIVED, Assignor hereby sells, grants, assigns, and transfers to Assignee any and all of its right, title and interest in and to that certain Mortgage and Security Agreement, dated November 22, 2016, made by JAX SFH PROPERTIES LLC, a Florida limited liability company, for the benefit of Assignor ("Security Instrument"), and recorded on December 15, 2016 in the Official Records of Duval County, FL, as Instrument Number 2016286216, and as a lien on that certain real property described on Exhibit A, attached hereto and made a part hereof.

TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under the foregoing Security Instrument.

*[Signature On Following Page]*

1

IN WITNESS WHEREOF, this Assignment is made to be effective as of the date first above written.

ASSIGNOR:

HIS CAPITAL FUNDING,
a California Corporation

By: _____

Name: MONIQUE MALIONET

Title: PROCESSOR

2

## ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF _FL_    )
                 )  ss
COUNTY OF _ORANGE_    )

On _11/28/2016_ , before me, _MELISSA A POLLARD_ , a Notary Public, personally appeared _MONILQUE MAISONET_ , who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _FL_ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Notary Public   GG 030963

Melissa Ann Pollard
COMMISSION #GG030963
EXPIRES September 13, 2020
Bonded Thru Aaron Notary

3

EXHIBIT A TO
ASSIGNMENT OF MORTGAGE
LEGAL DESCRIPTION OF PROPERTY

4

Parcel 1:

Lot 20, Block 18, CEDAR HILLS, UNIT 2, according to the plat thereof as recorded in Plat Book 25, Page(s) 32, of the current public records of Duval County, Florida.

Parcel 2:

Lot 1, Block S, HARBOR VIEW- UNIT TWO, according to the plat thereof as recorded in Plat Book 28, Page(s) 80, of the current public records of Duval County, Florida.

Parcel 3:

Lot 22, Block "AA", MELVIN PARK, according to the plat thereof as recorded in Plat Book 34, Page(s) 65, of the current public records of Duval County, Florida.

Parcel 5:

Lot 22, Block 12, GILLEN, according to the plat thereof as recorded in Plat Book 1, Page 121, of the former public records of Duval County, Florida.

Parcel 7:

Lot 28, Block 3, ARLINGTON SHORES 1ST ADDITION, according to the plat thereof as recorded in Plat Book 25, Page(s) 86, of the current public records of Duval County, Florida.

Parcel 8:

Lot 25, and the West 10 feet of Lot 26, Block 11, ROSE PARK, according to the plat thereof as recorded in Plat Book 5, Page(s) 63, of the current public records of Duval County, Florida.

Parcel 9:

The North 85.03 feet of the South 170.06 feet of Lot 12, PANAMA GARDENS, according to the plat thereof as recorded in Plat Book 8, Page(s) 37, of the current public records of Duval County, Florida, LESS AND EXCEPT any part as recorded in O.R. Book 9598, Page 2236

Parcel 10:

Lot 13, Block 10, LAURAL TERRACE, according to the plat thereof as recorded in Plat Book 22, Page(s) 34, of the current public records of Duval County, Florida.

Parcel 11:

Lot 28, Block 25, HARBOR VIEW -- UNIT EIGHT, according to the plat thereof as recorded in Plat Book 29, Page(s) 93, of the current public records of Duval County, Florida.

Parcel 12:

Lot 4, Block 2, BUFFALO GARDENS, according to the plat thereof as recorded in Plat Book 11, Page(s) 6, of the current public records of Duval County, Florida.

Parcel 13:

Lot 7, Block 2, PEARL CREST, according to the plat thereof as recorded in Plat Book 5, Page(s) 15, of the current public records of Duval County, Florida.

5

# Exhibit F

:

Prepared by:
Law Offices of Damian G. Waldman, P.A.
10333 Seminole Blvd., Units 1 and 2
Seminole, FL 33778

PO Box 5162
Largo, FL 33779

When recorded return to:
Law Offices of Damian G. Waldman, P.A.
PO Box 5162
Largo, FL 33779

(Space above this line reserved for recording office use only)

Loan Number▮

## MORTGAGE AND SECURITY AGREEMENT

THIS MORTGAGE AND SECURITY AGREEMENT, made on this 23rd day of January, 2017, by JAX SFH Properties, LLC, whose address is 221 N. Hogan Street, #405, Jacksonville, FL 32202, to HIS Capital Funding ISAOA/ATIMA, ("Mortgagee"), whose office address is 250 N. Orange Ave., Suite 610, Orlando, FL 32801.

A. "Note" means the Interest Only Balloon Promissory Note signed by Borrower(s) and dated January 23, 2017. The Note states that the Borrower owes the Lender Four Hundred Twenty-Three Thousand Six Hundred Dollars and 00/100 (US $423,600.00) plus interest and any other charges or fees as defined under the promissory note and this Mortgage. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt full no later than twenty-four (24) months from the execution of this Mortgage and corresponding Note.

B. "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

C. "Rider" means all Rider to this Security Instrument that are executed by the Borrower. The following Rider are executed by the Borrower.

| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☒ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☒ Other(s) [specify] |

Initials SKH      Page 1 of 16      Initials _____

E. DESCRIPTION OF PROPERTIES MORTGAGED Property being mortgaged (the "Real Properties") is described as follows:

SEE ATTACHED LEGAL DESCRIPTIONS AS EXHIBIT A

## RECITALS

Mortgagor is justly indebted to Mortgagee, having executed and delivered to Mortgagee its Promissory Note (the "Note") bearing even date herewith, in the original principal sum of Four Hundred Twenty-Three Thousand Six Hundred Dollars and 00/100 (US $423,600.00) or so much as has been advanced and remains outstanding, lawful money of the United States of America, and according to the terms and conditions specified in the corresponding Note;

In consideration of the indebtedness and to secure the payment to Mortgagee of the principal with interest and all other sums provided for in the Note and in this Mortgage, including, but not limited to, any future advances that may be made by Mortgagee to Mortgagor in accordance with the terms of this Mortgage, up to the maximum amount stated therein, and for performance of the agreements, conditions, covenants, provisions, and stipulations contained herein and therein, and in certain other agreements and instruments made and given by Mortgagor to Mortgagee in connection therewith, Mortgagor hereby mortgages to Mortgagee that tracts or parcels of land in Duval County, Florida, more particularly described above;

TOGETHER with all the tenements, hereditaments, easements, appurtenances, passages, waters, water courses, riparian rights, other rights, liberties, and privileges thereof or in any way now or hereafter appertaining, including any other claim at law or in equity as well as any after-acquired title, franchise, or license and the reversions and remainders thereof; and

TOGETHER with all buildings and improvements of every kind and description now or hereafter erected or placed thereon and all materials intended for construction, reconstruction, alteration, and repairs of improvements now or hereafter erected thereon, all of which materials shall be considered to be included within the mortgaged premises immediately on the delivery thereof to the mortgaged premises, and all fixtures and articles of personal property now or hereafter owned by Mortgagor and attached to or contained in and used in connection with said premises, including but not limited to all apparatus, machinery, motors, elevators, fittings, radiators, gas ranges, ice boxes, mechanical refrigerators, awnings, shades, screens, venetian blinds, office equipment and other furnishings; all plumbing, heating, lighting, cooking, laundry, ventilating, refrigerating, incinerating, air-conditioning, hot-water-heating, and sprinkler equipment and fixtures and appurtenances thereto, and all built-in equipment and built-in furniture; and all renewals or replacements thereof or articles in substitution therefor, whether or not the

Initials ___SKH___          Page 2 of 16          Initials _____

same are or shall be attached to said land or building or buildings in any manner; it being mutually agreed that all the aforesaid property owned by Mortgagor and placed by it on the premises shall, so far as permitted by law, be considered to be affixed to the realty and covered by this Mortgage. Such tract or parcel of land and buildings, improvements, fixtures, machinery, equipment, tenements, personal property, and property interests being hereinafter collectively called the "mortgaged property."

TO HAVE AND TO HOLD the above-granted and described mortgaged property to Mortgagee, its successors, or assigns forever.

And Mortgagor hereby represents, warrants, and covenants with Mortgagee that Mortgagor is indefeasibly seized of the mortgaged property in fee simple; that Mortgagor has full power and lawful right to convey the same in fee simple as aforesaid; that the mortgaged property is free from all liens and encumbrances, except as set forth on HIS Capital Funding ISAOA/ATIMA that all property, fixtures, and equipment described herein will be fully paid for and free from all liens, encumbrances, title-retaining contracts, and security interests when delivered and/or installed on the mortgaged property; that such property, fixtures, and equipment shall be deemed to be realty and a part of the freehold; that Mortgagor will make such further assurances to prove the fee simple title to all and singular the mortgaged property in Mortgagee and to prove the lien and priority of this mortgage, as may be reasonably required, and that Mortgagor does hereby and will forever fully warrant and defend the lien and priority of this mortgage and the title to the mortgaged property and every part thereof against the lawful claims and demands of all persons whomsoever.

PROVIDED ALWAYS, and these presents are on the express condition that, if Mortgagor or the successors or assigns of Mortgagor shall pay unto Mortgagee, its successors, or assigns the sums of money secured hereby, and any renewals or extensions thereof in whatever form, and the interest thereon as it shall become due, according to the true intent and meaning thereof, together with all advances hereunder, costs, charges, and expenses, including a reasonable attorneys' fees, which Mortgagee may incur or be put to in collecting the same by foreclosure or otherwise; and shall duly, promptly, and fully perform, discharge, execute, effect, complete, comply with, and abide by each and every one of the stipulations, agreements, conditions, and covenants of the Note, this Mortgage, and other documents or instruments given by Mortgagor to Mortgagee in connection herewith,

THEN this mortgage and the estate hereby created shall cease and be NULL AND VOID and this instrument shall be released by Mortgagee at the cost and expense of Mortgagor.

MORTGAGOR COVENANTS AND AGREES to and with Mortgagee that, until the indebtedness secured hereby is fully repaid:

1.    **Payment and Performance.**  Mortgagor shall pay Mortgagee, in accordance with the terms of the Note and this Mortgage, the principal, interest, and other sums therein set forth; and Mortgagor shall perform and comply with all of the agreements, conditions, covenants,

Initials  SK4                    Page 3 of 16                    Initials _____

provisions, and stipulations of the Note and this Mortgage, the terms of which are incorporated herein by reference.

2.      Interest Rate.   Notwithstanding any provision contained in this Mortgage or in the Note secured hereby, the total liability for payment of interest, which is set at 10.25 percent (10.25%) annually on the Note, or in the nature of interest, shall not exceed the limits now imposed by the applicable usury law, including the applicable choice-of-law rules.  In the event of the acceleration of the Note hereby secured, the total charges for interest and in the nature of interest shall not exceed the maximum amount allowed by law; any excess portion of such charges that may have been prepaid shall be refunded to the maker thereof.  Such refund may be made by application of the amount involved against the sums then due hereunder, but such crediting shall not cure or waive the default occasioning acceleration.  Nothing herein contained nor in any transaction related hereto shall be construed or shall so operate either presently or prospectively to require Mortgagor to make any payment or do any act contrary to law; however, if any clause or provision herein contained shall be determined by a court of competent jurisdiction to be invalid, illegal, or unenforceable in any respect, the remainder of this Mortgage shall be unaffected thereby and shall remain valid and in full force and effect.

3.      Maintenance of Mortgaged Property.   Mortgagor shall abstain from and shall not permit the commission of waste, impairment, or deterioration in or about the mortgaged property; Mortgagor shall not remove, demolish, or alter the structural character of any building erected at any time on the mortgaged property, without the prior written consent of Mortgagee; Mortgagor shall not permit the mortgaged property to become vacant, deserted, or unguarded; and Mortgagor shall maintain the mortgaged property in good condition and repair, reasonable wear and tear excepted.

4.      Escrow Fund.   The Mortgagor will, at the option of the Mortgagee, pay to the Mortgagee on the first day of each calendar month one-half of an amount (the "Escrow Fund") which would be sufficient to pay the Taxes payable, or estimated by the Mortgagee to be payable, during the ensuing twenty-four (24) months.  The Mortgagee will apply the Escrow Fund to the payment of Taxes which are required to be paid by the Mortgagor pursuant to the provisions of this Mortgage.  If the amount of the Escrow Fund shall exceed the amount of the Taxes payable by the Mortgagor pursuant to the provisions of this Mortgage, the Mortgagee shall, in its discretion, (a) return any excess to the Mortgagor, or (b) credit such excess against future payments to be made to the Escrow Fund.  In allocating such excess, the Mortgagee may deal with the person shown on the records of the Mortgagee to be the owner of the Mortgaged Property.  If the Escrow Fund is not sufficient to pay the Taxes, as the same become payable, the Mortgagor shall pay to the Mortgagee, upon request, an amount which the Mortgagee shall estimate as sufficient to make up the deficiency.  Until expended or applied as above provided, any amounts in the Escrow Fund

may be commingled with the general funds of the Mortgagee and shall constitute additional security for the Debt and shall not bear interest.

5. **Charges: Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 5. Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

6. **Insurance.** Mortgagor shall keep the mortgaged properties continuously insured against loss or damage by fire, with extended coverage, and against other hazards as Mortgagee may reasonably require, with public liability insurance and property damage insurance, with an insurance company or companies satisfactory to Mortgagee, and in such total amounts as Mortgagee may require from time to time. Mortgagor shall keep the mortgaged property continuously insured against loss or damage by fire, with extended coverage, and against other hazards as Mortgagee may reasonably require, with public liability insurance and property damage insurance, with an insurance company or companies satisfactory to Mortgagee, and in such total amounts as Mortgagee may require from time to time. All policies, including policies for any amounts carried in excess of the required minimum and policies not specifically required by Mortgagee, shall be in a form satisfactory to Mortgagee; shall be maintained in full force and effect; shall be assigned and delivered to Mortgagee at or prior to closing, with premiums prepaid, as collateral security for payment of the indebtedness secured hereby; shall be endorsed with a standard mortgagee clause in favor of Mortgagee as first Mortgagee, not subject to contribution; and shall provide for at least 30 days' notice of cancellation to Mortgagee. If the insurance, or any part thereof, shall expire, be withdrawn, or become void or unsafe by Mortgagor's breach of any condition thereof, or become void or unsafe by reason of the failure or impairment of the capital of any company in which the insurance may then be carried, or, if for any reason whatever the insurance shall be unsatisfactory to Mortgagee, Mortgagor shall place new insurance on the mortgaged property satisfactory to Mortgagee. All renewal policies, with premiums paid, shall be delivered to Mortgagee at least 30 days before expiration of the old policies. In the event of loss, Mortgagor will give immediate notice thereof to Mortgagee, and Mortgagee may make proof of loss if not made promptly by Mortgagor. Each insurance company concerned is hereby

Initials SKH                    Page 5 of 16                    Initials _____

authorized and directed to make payment under such insurance, including return of unearned premiums, directly to Mortgagee instead of to Mortgagor and Mortgagee jointly, and Mortgagor appoints Mortgagee, irrevocably, as Mortgagor's attorney-in-fact to indorse any draft therefor. At its election, Mortgagee shall have the right to retain and apply the proceeds of any such insurance to reduction of the indebtedness secured hereby, or to restoration or repair of the property damaged. If Mortgagee becomes the owner of the mortgaged property or any part thereof by foreclosure or otherwise, such policies, including all right, title, and interest of Mortgagor thereunder, shall become the absolute property of Mortgagee. Mortgagor shall produce proof of any and all insurance premiums to Mortgagee upon Mortgagee's request and within ten (10) days of closing. Failure to provide proof of insurance or maintain insurance of the property shall constitute a default of the terms of the Mortgage and shall entitle the Mortgagee any and all rights it has under this Mortgage.

7. Taxes and Other Charges. Mortgagor shall be responsible for all taxes whether real or personal on the property.

8. Installments for Insurance, Taxes, and Other Charges. Without limiting the effect of Paragraphs 6 and 7 hereof, Mortgagor shall be responsible for any and all taxes, insurance, fees for remedy of any code enforcement liens, or otherwise on the property.

9. Future Taxes. Mortgagor shall be responsible for any and all future taxes on the property.

10. Security Agreement. This Mortgage constitutes a security agreement under the Uniform Commercial Code and creates a security interest in the personal property included in the mortgaged property. Mortgagor shall execute, deliver, file, and refile any financing statements or other security agreements Mortgagee may require to confirm the lien of this mortgage with respect to such property. Without limiting the foregoing, Mortgagor hereby irrevocably appoints Mortgagee attorney-in-fact for Mortgagor to execute, deliver, and file such instruments for and on behalf of Mortgagor.

11. Limitation on Additional Financing. Mortgagor shall not undertake additional financing secured by any lien or security interest on property encumbered in favor of Mortgagee to secure the loan without first obtaining Mortgagee's written consent. Any violation of the foregoing limitation shall, at the option of Mortgagee, be deemed an event of default hereunder.

12. Compliance with Law and Regulations. Mortgagor shall comply with all laws, ordinances, regulations, and orders of all federal, state, municipal, and other governmental authorities relating to the mortgaged property.

13. Inspection. Mortgagee and any persons authorized by Mortgagee shall have the right at any time, on reasonable notice (twenty (20) days is deemed reasonable between the parties) to Mortgagor, to enter the mortgaged property at a reasonable hour to inspect and photograph its

Initials SKH          Page 6 of 16          Initials _____

condition and state of repair.

14.    <u>Declaration of No Setoff.</u>  Within one week after being requested to do so by Mortgagee, Mortgagor shall certify to Mortgagee or to any proposed assignee of this Mortgage, in a writing duly acknowledged, the amount of principal, interest, and other charges then owing on the obligation secured by this mortgage and whether there are any setoffs or defenses against it, and, if such setoffs or defenses are asserted, a detailed explanation thereof.

15.    <u>Required Notices.</u>  Mortgagor shall notify Mortgagee promptly of the occurrence of any of the following:

(a)    fire or other casualty causing damage to the mortgaged property;

(b)    receipt of notice of condemnation of the mortgaged property;

(c)    receipt of notice from any governmental authority relating to the structure, use, or occupancy of the mortgaged property;

(d)    substantial change in the occupancy of the mortgaged property; or

(e)    commencement of any litigation affecting the mortgaged property.

16.    <u>Condemnation.</u>

(a)    In the event of any condemnation or taking of any part of the mortgaged property by eminent domain, alteration of the grade of any street, or other injury to, or decrease in the value of, the mortgaged property by any public or quasi-public authority or corporation, all proceeds (that is, the award or agreed compensation for the damages sustained) allocable to Mortgagor shall be applicable first to payment of the indebtedness secured hereby.  No settlement for the damages sustained shall be made by Mortgagor without Mortgagee's prior written approval, which shall not be unreasonably withheld. Mortgagor shall continue to pay the installments of principal, interest, and other charges until payment of the proceeds shall have been received by Mortgagee in the full amount secured hereunder.  All of the proceeds shall be applied in the order and in the amounts that Mortgagee, in Mortgagee's sole discretion, may elect to the payment of principal (whether or not then due and payable); to the payment of interest or any sums secured by this Mortgage; or toward payment to Mortgagor, on such reasonable terms as Mortgagee may specify, to be used for the sole purpose of altering, restoring, or rebuilding any part of the mortgaged property that may have been altered, damaged, or destroyed as a result of the taking, alteration of grade, or other injury to the mortgaged property.

(b)    If, prior to the receipt of the proceeds by Mortgagee, the mortgaged property is sold on foreclosure of this Mortgage, Mortgagee shall have the right to receive the

proceeds to the extent of:

        (i)     any deficiency found to be due to Mortgagee in connection with the foreclosure sale with legal interest thereon; and

        (ii)    reasonable counsel fees, costs, and disbursements incurred by Mortgagee in connection with collection of the proceeds and the proceedings to establish the deficiency.

    (c)    If the amount of the initial award of damages for the condemnation is insufficient to pay in full the indebtedness secured hereby with interest and other appropriate charges, Mortgagee shall have the right to prosecute to final determination or settlement an appeal or other appropriate proceedings in the name of Mortgagee or Mortgagor, for which Mortgagee is hereby appointed irrevocably as attorney-in-fact for Mortgagor, which appointment, being for security, is irrevocable. In that event, the expenses of the proceedings, including reasonable counsel fees, shall be paid first out of the proceeds, and only the excess, if any, paid to Mortgagee shall be credited against the amounts due under this Mortgage.

    (d)    Nothing herein shall limit the rights otherwise available to Mortgagee, at law or in equity, including the right to intervene as a party to any condemnation proceeding.

17.    <u>Conveyance</u>.  Without the prior written consent of Mortgagee, Mortgagor will abstain from and will not cause or permit any sale, exchange, transfer, or conveyance of any mortgaged property or any part thereof, voluntarily or by operation of law (other than by execution on the Note or foreclosure under this Mortgage), or any transfer of shares of stock or control in Mortgagor, whether by sale, exchange, conveyance, merger, consolidation, or otherwise. Any violation of the foregoing limitations shall, at the option of Mortgagee, be deemed an event of default hereunder. If any property secured by this Mortgage is sold without Mortgagee's consent, then the sale constitutes a default under this Mortgage and the Note and the Mortgagee at its option can declare the entire amount due and payable to Mortgagee.

18.    <u>Right to Remedy Defaults</u>.  If Mortgagor fails to pay real estate or other taxes, assessments, water and sewer rents, charges and claims, or sums due under any prior lien or insurance premiums; fails to make necessary repairs; or permits waste, Mortgagee, at its election and without notice to Mortgagor, shall have the right to make any payment or expenditure and take any action that Mortgagor should have made or taken or which Mortgagee deems advisable to protect the security of this Mortgage or the mortgaged property, without prejudice to any of Mortgagee's rights or remedies available hereunder or otherwise at law or in equity. All such sums and costs advanced by Mortgagee under this Mortgage shall be due immediately from Mortgagor to Mortgagee, shall be secured hereby, and shall bear interest at a rate that shall be eight percent (7.75%) higher than the then-effective rate specified by the Note from the date of payment by Mortgagee until the date of repayment. Mortgagee shall be subrogated to any rights, equities,

Initials _SKH_               Page 8 of 16           Initials_____

and liens so discharged.

19.    <u>Events of Default</u>.  The following shall constitute events of default hereunder:

(a)    Failure of Mortgagor to pay any installment of principal or interest, or any other sum, within 5 days after the date it is due under the Note or this Mortgage.

(b)    Mortgagor's nonperformance of, or noncompliance with, any other agreements, conditions, covenants, provisions, or stipulations contained in the Note or in this Mortgage, or in any other document securing such note, and the continuation of such nonperformance or noncompliance for 30 days after notice thereof from Mortgagee to Mortgagor.

(c)    Any assignment for the benefit of creditors made by Mortgagor, any shareholder of Mortgagor, or the person executing the guaranty of even date herewith given to Mortgagee in connection with the loan.

(d)    Appointment of a receiver, liquidator, or trustee of Mortgagor (which term for the purposes of this subparagraph (d) shall be deemed to include any shareholder of Mortgagor) or of any of the property of Mortgagor; insolvency of Mortgagor or the adjudication of Mortgagor as bankrupt; the filing by Mortgagor of any petition for the bankruptcy, reorganization, or arrangement of Mortgagor under the Federal Bankruptcy Act or any similar statute; the institution by Mortgagor of any proceeding for the dissolution or liquidation of Mortgagor; or the filing against Mortgagor of any such petition or institution, unless the same be discharged within 30 days after the filing or institution.

(e)    The rendering by any court of last resort of a decision that an undertaking by Mortgagor (as herein provided) to pay any tax, assessment, levy, liability, obligation, or encumbrance is legally inoperative or cannot be enforced, or the passage of any law changing in any way or respect the laws now in force for the taxation of mortgages or debts secured thereby for any purpose, or the manner of collection of any such tax, so as to affect this Mortgage or the debt secured hereby.

20.    <u>Remedies</u>.

(a)    On the happening of any event of default, this conveyance shall become absolute, and the entire unpaid balance of the principal, the accrued interest, and all other sums secured by this Mortgage shall become immediately due and payable, at the option of Mortgagee, without notice or demand.

(b)    When the entire indebtedness shall become due and payable because of maturity, the occurrence of any event of default, or otherwise, then forthwith:

Initials _SKH_              Page 9 of 16              Initials _____

(i)   Foreclosure.   Mortgagee may institute an action to foreclose this mortgage against the mortgaged property or take such other action at law or in equity for the enforcement of this Mortgage and realization on the mortgage security or any other security herein or elsewhere provided for, as the law may allow, and may proceed therein to final judgment and execution for the entire unpaid balance of the principal debt, with interest at the rate stipulated in the Note to the date of default, and, thereafter, at a rate that shall be 7.75% higher than the then-effective rate specified in the Note at the time of default, together with all other sums due by Mortgagor, in accordance with the provisions of the Note and this Mortgage, including all sums that may have been lent by Mortgagee to Mortgagor after the date of this Mortgage, and all sums that may have been advanced by Mortgagee for taxes, water or sewer rents, charges or claims, payments on prior liens, or insurance or repairs to the mortgaged property, and all costs of legal action, together with interest at such rate, on any judgment obtained by Mortgagee from and after the date of any foreclosure sale until actual payment is made of the full amount due Mortgagee, and of an attorney's commission for collection that shall be 30% of the total of the foregoing sums but not less than $127,080.00; or Mortgagee may foreclose only as to the sum past due with interest and costs, as provided above, without injury to this Mortgage or the displacement or impairment of the remainder of the lien thereof, and, at such foreclosure sale, the mortgaged property shall be sold subject to all remaining items of indebtedness; and Mortgagee may again foreclose, in the same manner, as often as there may be any sum past due; or

(ii)   Possession.   Mortgagee may enter into possession of the mortgaged property with or without legal action and by force if necessary. Mortgagee may then collect therefrom all rentals (which term shall also include sums payable for use and occupation) and, after deducting all costs of collection and administration expenses, apply the net rentals to any or all of the following in such order and amounts as Mortgagee, in Mortgagee's sole discretion, may elect: the payment of taxes, water and sewer rents, charges and claims, insurance premiums, and all other carrying charges; the maintenance, repair, or restoration of the mortgaged property; and on account and in reduction of the principal or interest, or both, hereby secured.   In and for that purpose, Mortgagor hereby assigns to Mortgagee all rentals due and to become due under any lease or leases or rights to use and occupation of the mortgaged property hereafter created, as well as all rights and remedies provided in such lease or leases or at law or in equity for the collection of the rentals.   Mortgagee shall be entitled to the appointment of a receiver of all the rents, issues, and profits, as a matter of strict right, regardless of the value of the mortgaged property and the solvency or insolvency of Mortgagor and other persons liable to pay such indebtedness.   Mortgagor hereby specifically waives the right to object to the appointment of a receiver as aforesaid and hereby expressly consents that such appointment shall be made as an admitted equity and that the same may be done without notice to Mortgagor.

(c)    Mortgagee shall have the right to bring an appropriate action to recover any sums required to be paid by Mortgagor under the terms of this Mortgage, as they become due, without regard to whether the principal indebtedness or any other sums secured by the Note and this Mortgage shall be due, and without prejudice to the right of Mortgagee thereafter to bring an action to foreclose this Mortgage, or any other action, for any default by Mortgagor existing at the time the earlier action was commenced.

(d)    Any real estate sold under any action to foreclose this mortgage or under any other judicial proceedings under this Mortgage or the Note may be sold in one parcel, as an entirety, or in such parcels or condominium units and in such manner or order as Mortgagee, in its sole discretion, may elect.

21.    Rights and Remedies Cumulative.

(a)    The rights and remedies of Mortgagee as provided in the Note and in this Mortgage shall be cumulative and concurrent; may be pursued separately, successively, or together against Mortgagor, the mortgaged property, or both, at the sole discretion of Mortgagee; and may be exercised as often as occasion therefor shall arise. The failure to exercise any such right or remedy shall in no event be construed as a waiver or release thereof.

(b)    Any failure by Mortgagee to insist on strict performance by Mortgagor of any of the terms and provisions of this Mortgage or the Note shall not be deemed to be a waiver of any of the terms or provisions thereof, and Mortgagee shall have the right thereafter to insist on strict performance by Mortgagor of any and all of them.

(c)    Neither Mortgagor nor any other person now or hereafter obligated for payment of all or any part of the sums now or hereafter secured by this Mortgage shall be relieved of such obligation by reason of the failure of Mortgagee to comply with any request of Mortgagor or of any other person so obligated to take action to foreclose on this mortgage or otherwise enforce any provisions of the Mortgage or the Note; by reason of the release, regardless of consideration, of all or any part of the security held for the indebtedness secured by this Mortgage; or by reason of any agreement or stipulation between any subsequent owner of the mortgaged property and Mortgagee extending the time of payment or modifying the terms of the Mortgage or Note without first having obtained the consent of Mortgagor or such other person. In the latter event, Mortgagor and all such other persons shall continue to be liable to make payments according to the terms of any such extension or modification agreement unless expressly released and discharged in writing by Mortgagee.

(d)    Mortgagee may release, regardless of consideration, any part of the security held for the indebtedness secured by this Mortgage without, as to the remainder of the

security, in any way impairing or affecting the lien of this Mortgage or its priority over any subordinate lien.

(e)    For payment of the indebtedness secured hereby, Mortgagee may resort to any other security therefor held by Mortgagee in such order and manner as Mortgagee may elect.

22.    Breach/Acceleration of Note and Mortgage.    If Borrower is in default in accordance with Paragraph 19, but not limited to Paragraph 19, the Lender may send Borrower a written notice stating if Borrower does not pay the overdue amount by a date not less than 30 days from the date of the notice, then the Lender may require Borrower to pay the full amount of principal immediately upon acceleration. Notice is received when mailed to the Borrower via certified mail, return receipt requested. Failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. Immediate payment in full may be required without further notice or demand. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in the Mortgage, including, but not limited to reasonable attorney's fees, court costs, costs of documentary evidence, abstracts, costs of title evidence and any other related costs in connection with the borrower's default.

Borrower has the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by the Mortgage and Note without further demand and may foreclose the Mortgage and Note.

23.    Mortgagor's Waivers.    Mortgagor hereby waives and releases

(a)    all errors, defects, and imperfections in any proceeding instituted by Mortgagee under the Note, this Mortgage, or both of them;

(b)    all benefit that might accrue to Mortgagor by virtue of any present or future law exempting the mortgaged property, or any part of the proceeds arising from any sale thereof from attachment, levy, sale on execution, or providing for any stay of execution, exemption from civil process, or extension of time for payment; and

(c)    unless specifically required herein, all notices of Mortgagor's default or of Mortgagee's election to exercise or Mortgagee's actual exercise of any option under the Note or this Mortgage.

(d)    any and all rights to a jury trial if the Borrower is in default of any of the terms and conditions of the Note and Mortgage.

Initials __SKH__                Page 12 of 16            Initials _____

24. Assignment of Rents. Borrower hereby agrees that in the event of the Borrower's default which is designated, but not limited in Paragraph 19 of this agreement to the assignment of any and all rents collected, from any and all properties described herein, and thereafter to be forever assigned, transferred, or designated to Lender or Lender's agents, employees, assigns, heirs or otherwise. Upon default, Lender shall provide Borrower with written Demand for assignment of payment of rents to Lender. Borrower further agrees to turn over any and all rents in his possession at the time of written demand or collected thereafter less payments of any expenses authorized by Lender in writing if applicable. Lender shall hold a lien on any and all rents owed to the Borrower or collected by the Borrower upon the Borrower's default. Upon Default, Borrower further agrees to provide Lender with an accounting of any and all rents paid, owed, and any and all amounts due in the future. Borrower also agrees to the assignment and release of any and all rights pertaining to the rents collected, advanced or owed in the present and future to the Lender or Lender's agents, employees, assigns, heirs or otherwise upon the Borrower's default. In the event of foreclosure, the Borrower further agrees to relinquish any and all rents collected or owed thereafter to Lender or Lender's agents; employees, assigns, heirs, or otherwise without the necessity of court intervention upon reasonable notice as designated above.

25. Attorneys' Fees. If Mortgagee becomes a party to any suit or proceeding affecting the mortgaged property or title thereto, the lien created by this Mortgage or Mortgagee's interest therein, or, if Mortgagee engages counsel to collect any of the indebtedness or to enforce performance of the agreements, conditions, covenants, provisions, or stipulations of this Mortgage or the Note, Mortgagee's costs, expenses, and reasonable attorneys' fees, whether or not suit is instituted, shall be paid to Mortgagee by Mortgagor on demand with interest at the then-effective rate set forth in the Note, and, until paid, these amounts of money shall be deemed to be part of the indebtedness evidenced by the Note and secured by this Mortgage.

As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

26. Future Advances. Under section 697.04, Florida Statutes, this Mortgage shall secure not only the existing indebtedness evidenced by the Note, but also such future advances as may be made by Mortgagee to Mortgagor within 3 years or a later time as prescribed by Mortgagee from the date hereof to the same extent as if such future advances were made on the date of the execution of this Mortgage. The total amount of indebtedness that shall be so secured by this Mortgage may decrease or increase from time to time, provided $847,200.00 (up to double the original principal amount of the loan) plus interest thereon and plus any disbursements made on the property covered by the lien of this Mortgage, together with interest on such disbursements.

27. Communications. All communications required under this Mortgage or the Note shall be in writing and shall be sent by registered or certified mail, postage prepaid, addressed to Mortgagor and Mortgagee at the address set forth in the heading of this Mortgage or in the Note or to such other address as either party may designate by notice to the other in the manner set forth ·

Initials _Sk+_                          Page 13 of 16                   Initials _____

herein.

28. Amendment. This Mortgage cannot be changed or amended except by agreement in writing signed by the party against whom enforcement of the change is sought.

29. Construction. Whenever used in this Mortgage, unless the context clearly indicates a contrary intent:

(a) The word "Mortgagor" shall mean the person who executes this Mortgage and any subsequent owner of the mortgaged property and his or her respective heirs, executors, administrators, successors, and assigns.

(b) The word "Mortgagee" shall mean the person specifically named herein as "Mortgagee", or any subsequent holder of this Mortgage.

(c) The word "person" shall mean individual, corporation, partnership, or unincorporated association.

(d) The use of any gender shall include all genders.

(e) The singular number shall include the plural and the plural the singular, as the context may require.

(f) If Mortgagor is more than one person, all agreements, conditions, covenants, provisions, stipulations, warrants of attorney, authorizations, waivers, releases, options, undertakings, rights, and benefits made or given by Mortgagor shall be joint and several and shall bind and affect all persons who are defined as Mortgagor as fully as though all of them were specifically named herein wherever the word "Mortgagor" is used.

30. Severability. If any of the provisions in this Mortgage is deemed to be unenforceable by law, then that specific provision will be stricken and the rest of the Mortgage will remain in full force and effect.

31. Captions. The captions preceding the text of the paragraphs or subparagraphs of this Mortgage are inserted only for convenience of reference and shall not constitute a part of this Mortgage, nor shall they in any way affect its meaning, construction, or effect.

REMAINDER OF PAGE IS LEFT INTENTIONALLY BLANK

Initials SKH            Page 14 of 16            Initials _____

**IN WITNESS WHEREOF,** Mortgagor has caused this Mortgage to be duly executed as of the day and year first written above.

Steven K. Hendrickson, _____AMA_____ (Title) and as
authorized agent on behalf of JAX SFH Properties, LLC
221 N. Hogan Street, #405, Jacksonville, FL 32202 . .

Mortgagor                    (Date) _1/23/2017_

Signed in the presence of:            Signed in the presence of:

_____            _____
_____1/23/2017_____                  _____1/23/2017_____
(Date)                               (Date)

_CARL McCall_                        _Terry McCall_
Witness                              Witness

STATE OF _FLORIDA_
COUNTY OF _DUVAL_ .

The foregoing Mortgage and Security Agreement was acknowledged before me this 23 day of
January, 2017, by Steven K. Hendrickson, _AMA_____ (Title) and as authorized
agent on behalf of JAX SFH Properties, LLC, who is personally known to me or has
produced _Drivers License_ as identification.

CARL McCALL
Notary Public - State of Florida
Commission # FF 238731
My Comm. Expires Jul 6, 2019

_____
Notary Public
State of _FL_ .

Initials _SKH_          Page 15 of 16          Initials _____

Loan Number: ██████

## EXHIBIT A

Parcel 1:

Lot 23, INDIAN LAKES, according to the plat thereof as recorded in Plat Book 39, Pages 95, Public Records of Duval County, Florida.
Property Address: 5134 Ricker Road, Jacksonville, FL 32210

Parcel 2:

The East 34 feet 8 inches of Lot 6, Block 129, SPRINGFIELD NORTHERN PORTION, according to the plat thereof as recorded in Plat Book 2, Pages 40, Public Records of Duval County, Florida.
Property Address: 118-120 West 11th Street, Jacksonville, FL 32220

Parcel 3:

Lot 19, Block 2, LAKE FOREST HILLS UNIT 1, according to the plat thereof as recorded in Plat Book 21, Pages 77, Public Records of Duval County, Florida.
Property Address: 1516 Ribault Scenic Drive, Jacksonville, FL 32208

Parcel 4:

Lot 25, Block 6, LAKE PARK ESTATES, UNIT 3, according to the plat thereof as recorded in Plat Book 31, Pages 64, Public Records of Duval County, Florida.
Property Address: 2429 Saint Leger Drive, Jacksonville, FL 32208

Parcel 5:

Lot 3, Block 18, LAKE FOREST HILLS UNIT 2, according to the plat threrof as recorded in Plat Book 22, Pages 16, Public Records of Duval County, Florida.
Property Address: 1824 Rugby Road, Jacksonville, FL 33208

Parcel 6:

Lot 7, Block 1, LINCOLN ESTATES UNIT 2, according to the plat thereof as recorded in Plat Book 30, Pages 33, Public Records of Duval County, Florida.
Property Address: 6946 West Virginia Avenue, Jacksonville, FL 32209

Parcel 7:

Lots 36 and 37, TONI HEIGHTS, according to the plat thereof as recorded in Plat Book 23, Pages 11, Public Records of Duval County, Florida.
Property Address: 6336 Toni Avenue, Jacksonville, FL 32208

Initials: SkH             Page 16 of 16             Initials: _____

# Exhibit G

Loan Number: ▮▮▮▮▮▮

## INTEREST ONLY BALLOON PROMISSORY NOTE

Dated: 1/23/2017

Property Addresses with legal descriptions are attached hereto and incorporated herein as Exhibit "A"

**1.  Principal.**

FOR VALUE RECEIVED, the undersigned "Borrower" promises to pay to "Lender" or "Note Holder" the principal sum of Four Hundred Twenty-Three Thousand Six Hundred Dollars and 00/100 (US $423,600.00), with annual interest thereon calculated in accordance with the terms and provisions provided below. All sums owing under this Note are payable in lawful money of the United States of America.

The Lender or anyone who take this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

Borrower name and address is:      JAX SFH Properties, LLC
221 N. Hogan Street, #405
Jacksonville, FL 32202.

Note Holder name and address is:      HIS Capital Funding ISAOA7ATIMA,
250 N. Orange Ave., Suite 610
Orlando, FL 32801

**2.  Interest.**

Interest accrued on this Note shall be payable at a annual rate of 10.25 percent (10.25%), until this Note is paid in full.

Initials: SK4                     Page 1 of 8                     Initials: _____

All amounts required to be paid under Note Holder's Note shall be payable at Note Holder's Servicer, FCI Lender Services, Inc.'s office located at P.O. Box 27370, Anaheim Hills, CA 92809-0112, or at another place as designated in writing by Note Holder.

Interest calculations shall be based on a three-hundred and sixty-five (365) day year and charged on the basis of actual days elapsed.

If any required payment is not paid on or before the last business day of the month in which it becomes due, Borrower shall pay, at Note Holder's option, a late or collection charge not exceeding 20% of the amount of the unpaid amount. Furthermore, the amount of each payment that is not paid on or before the last business day of the month in which it became due shall bear interest from the last business day until paid at the rate or rates charged from time to time on the principal owing under this rate.

3.    Monthly Installments.

Monthly Installments Including Interest only.    Interest shall be paid in equal successive monthly installments, each in the amount of Three Thousand Six Hundred, Eighteen Dollars and 25/100 cents ($3,618.25), not including taxes and insurance, commencing on March 1, 2017, and continuing on the same day of each month thereafter based on a period of 24 months (2 years) to February 1, 2019, with a balloon payment of the entire balance owed due and payable on or before twenty-four (24) months from the execution of this Note. The Balloon payment amount consists of the entire unpaid principal balance minus applicable payments made prior to the maturity date; interest; any advances by Note Holder to protect its interest in the property, and any other related charges in accordance with the Note and Mortgage.

Escrow for Taxes.    The Mortgagor will, at the option of the Mortgagee, pay to the Mortgagee on the first day of each calendar month one-half of an amount (the "Escrow Fund") which would be sufficient to pay the Taxes payable, or estimated by the Mortgagee to be payable, during the ensuing twenty-four (24) months.  The Mortgagee will apply the Escrow Fund to the payment of Taxes which are required to be paid by the Mortgagor pursuant to the provisions of this Mortgage.

4.    Maturity Date.

The entire principal balance of this Note, together with all accrued and unpaid interest, shall be due and payable on or before twenty-four (24) months from date of execution of this Note, also known as the ("maturity date"), unless otherwise prepaid in accordance with the terms of this Note.

Initials: __SKH__               Page 2 of 8               Initials: _____

5.    Security.

(a)    This Note is secured by, among other things, a Mortgage and Security Agreement ("Mortgage") bearing the date of this Note, executed and delivered by Borrower, as mortgagor, to Note Holder, as mortgagee, encumbering properties in Duval County, Florida as more fully described in the Mortgage.

(b)    This Note is further secured by additional collateral documentation, including assignments and guarantees ("security documents"), which were executed and delivered to Note Holder on the date of this Note.

(c)    All of the agreements, conditions, covenants, provisions, and stipulations contained in the Mortgage and security documents that are to be kept and performed by Borrower and any guarantors of the Note are hereby made a part of this Note to the same extent and with the same force and effect as if they were set forth fully herein, and Borrower covenants and agrees to keep and perform them or cause them to be kept and performed strictly in accordance with their terms.

6.    Prepayment.

Borrower may prepay the whole or any portion of this Note on any date, upon thirty (30) days' notice to Note Holder, without any penalty. Any payments of the principal sum received by Note Holder under the terms of this Note shall be applied in the following order of priority: (a) first, to any accrued interest due and unpaid as of the date of payment; (b) second, to the outstanding principal sum; and (c) third, the balance, if any, to any accrued, but not yet due and payable, interest.

7.    Late Charge.

If any required payment, including the final payment due on the maturity date, is not paid within five (5) days from and including the date upon which it was due (whether by acceleration or otherwise), then, in each such event, all past due amounts shall be subject to a late penalty of ten (10) cents on every dollar owed (the "late penalty"). This late penalty shall be in addition to any other interest due as provided for in paragraph 2 and in addition to all other rights and remedies provided herein or by law for the benefit of the holder on a default. The acceptance of any payment by the holder of the Note shall not act to restrict the holder at all in exercising any other rights under the Note or the law, to waive or release Borrower from any obligations contained herein, or to extend the time for payments due under this Note.

8.    Default and Remedies.

If Borrower fails to pay principal and/or interest on the date on which it falls due or to perform any of the agreements, conditions, covenants, provisions, or stipulations contained in this Note, in the Mortgage, or in the security documents, then Note Holder, at its option and without

Initials:  SKH                    Page 3 of 8                    Initials: _____

notice to Borrower, may declare immediately due and payable the entire, unpaid balance of principal with interest from the date of default at the default interest rate of 18% per year (or the highest rate permitted by law, if this rate is less than 18% per year) and all other sums due by Borrower hereunder or under the Mortgage, anything herein or in the Mortgage to the contrary notwithstanding. Payment of this sum may be enforced and recovered in whole or in part at any time by one or more of the remedies provided to Note Holder in this Note, in the Mortgage, or in the security documents. In that case, Note Holder may also recover all costs in connection with legal action, including, but not limited to reasonable attorneys' fees for collection, costs, title expenses, interest on any judgment obtained by Note Holder at the rate of 18% per year (or the highest legal rate if this rate is less than 18% per year) and any other related expenses.

The remedies of Note Holder and the warrants provided in this Note, the Mortgage, or the security documents shall be cumulative and concurrent, and they may be pursued singly, successively, or together at the sole discretion of Note Holder. They may be exercised as often as necessary, and failing to exercise one shall in no event be construed as a waiver or release of it.

9.    Notice of Default.

If Borrower is in default, the Note Holder may send Borrower a written notice stating if Borrower does not pay the overdue amount by a certain date, then the Note Holder may require Borrower to pay the full amount of principal immediately upon acceleration. The Notice of the Default must be in writing in accordance with Paragraph 12.

10.    Attorneys' Fees and Costs.

If Note Holder engages any attorney to enforce or construe any provision of this Note or the Mortgage, or as a consequence of any default whether or not any legal action is filed, Borrower shall immediately pay on demand all reasonable attorneys' fees and other Note Holder's costs, together with interest from the date of demand until paid, at the highest rate of interest then applicable to the unpaid principal, as if the unpaid attorneys' fees and costs had been added to the principal.

11.    Waivers.

(a)    Borrower hereby waives and releases all benefit that might accrue to Borrower by virtue of any present or future laws of exemption with regard to real or personal property or any part of the proceeds arising from any sale of that property, from attachment, levy, or sale under execution, or providing for any stay of execution, exemption from civil process, or extension of time for payment. Borrower agrees that any real estate that may be levied on under a judgment obtained by virtue hereof, on any writ of execution issued thereon, may be sold, on any writ in whole or in part in any order desired by Note Holder.

Initials: SKH    Page 4 of 8    Initials: ___ ___ __.

(b)    Borrower and all indorsers, sureties, and guarantors jointly and severally waive presentment for payment, demand, notice of demand, notice of nonpayment or dishonor, protest, notice of protest of this Note, and all other notices in connection with the delivery, acceptance, performance, default, or enforcement of the payment of this Note. They agree that each shall have unconditional liability without regard to the liability of any other party and that they shall not be affected in any manner by any indulgence, extension of time, renewal, waiver, or modification granted or consented to by Note Holder. Borrower and all indorsers, sureties, and guarantors consent to any and all extensions of time, renewals, waivers, or modifications that may be granted by Note Holder with respect to the payment or other provisions of this Note, and to the release of any collateral or any part thereof, with or without substitution, and they agree that additional borrowers, indorsers, guarantors, or sureties may become parties hereto without notice to them or affecting their liability hereunder.

(c)    Note Holder shall not be considered by any act of omission or commission to have waived any of its rights or remedies hereunder unless such waiver is in writing and signed by Note Holder, and then only to the extent specifically set forth in writing. A waiver on one event shall not be construed as continuing or as a bar to or waiver of any right or remedy to a subsequent event.

12.    Notices.

All notices required under or in connection with this Note shall be delivered or sent by certified or registered mail, return receipt requested, postage prepaid, to the addresses set forth in paragraph 1, or to another address that any party may designate by notice to the others in the manner set forth herein. All notices shall be considered to have been given or made either at the time of delivery to an officer or employee or on the third business day following the time of mailing in the aforesaid manner. The Notice period must not be less than thirty (30) days from the date the notice was mailed to the Borrower.

13.    Costs and Expenses.

Borrower shall pay the cost of any revenue tax or other stamps now or hereafter required by law at any time to be affixed to this Note.

14.    No Partnership or Joint Venture.

Nothing contained in this Note or elsewhere shall be construed as creating a partnership or joint venture between Note Holder and Borrower or between Note Holder and any other person or as causing the holder of the Note to be responsible in any way for the debts or obligations of Borrower or any other person.

Initials:  SKH          Page 5 of 8          Initials: _____

15.    Interest Rate Limitation.

Notwithstanding anything contained herein to the contrary, the holder shall never be entitled to collect or apply as interest on this obligation any amount in excess of the maximum rate of interest permitted to be charged by applicable law. If the holder of this Note ever collects or applies as interest any such excess, the excess amount shall be applied to reduce the principal debt; and, if the principal debt is paid in full, any remaining excess shall be paid forthwith to Borrower. In determining whether the interest paid or payable in any specific case exceeds the highest lawful rate, the holder and Borrower shall to the maximum extent permitted under applicable law (a) characterize any non-principal payment as an expense, fee, or premium rather than as interest; (b) exclude voluntary prepayments and the effects of these; and (c) spread the total amount of interest throughout the entire contemplated term of the obligation so that the interest rate is uniform throughout the term. Nothing in this paragraph shall be considered to increase the total dollar amount of interest payable under this Note.

16.    Modification.

In the event this Note is pledged or collaterally assigned by Note Holder at any time or from time to time before the maturity date, neither Borrower nor Note Holder shall permit any modification of this Note without the consent of the pledgee/assignee.

17.    Number and Gender.

In this Note the singular shall include the plural and the masculine shall include the feminine and neuter genders, and vice versa, if the context so requires.

18.    Headings.

Headings at the beginning of each numbered paragraph of this Note are intended solely for convenience of reference and are not to be construed as being a part of the Note.

19.    Time of Essence.

Time is of the essence with respect to every provision of this Note.

20.    Governing Law.

This Note shall be construed and enforced in accordance with the laws of the State of Florida, except to the extent that federal laws preempt the laws of the state of Florida.

Initials: SK    Page 6 of 8    Initials: ____

IN WITNESS WHEREOF, Borrower has executed this promissory Note on the date set forth above.


Steven K. Hendrickson,  _ AMA _  (Title)
and as authorized agent on behalf of JAX SFH
Properties, LLC
221 N. Hogan Street, #405, Jacksonville, FL
32202
Borrower        (Date): 1/23/2017


Signed in the presence of,                    Signed in the presence of:


_____                        _____
_____ (Date)                    _____ (Date)

_____                        _____
Witness                                         Witness


STATE OF Florida

COUNTY OF Dade

The foregoing Interest Only Balloon Promissory Note was acknowledged before me this 23 day of January, 2017, by Steven K. Hendrickson, _ AMA _ (Title), and as authorized agent on behalf of JAX SFH Properties, LLC, who is personally known to me or has produced _____ as identification.


CARL MCCALL
Notary Public - State of Florida
Commission # FF 238731
My Comm. Expires Jul 6, 2019

_____
Notary Public -
State of FL.


Initials: SKH          Page 7 of 8          Initials: _____

Loan Number: ▉▉▉▉▉▉▉▉

## EXHIBIT "A"

Parcel 1:

Lot 23, INDIAN LAKES, according to the plat thereof as recorded in Plat Book 39, Pages 95, Public Records of Duval County, Florida.
Property Address: 5134 Ricker Road, Jacksonville, FL 32210

Parcel 2:

The East 34 feet 8 inches of Lot 6, Block 129, SPRINGFIELD NORTHERN PORTION, according to the plat thereof as recorded in Plat Book 2, Pages 40, Public Records of Duval County, Florida.
Property Address: 118-120 West 11th Street, Jacksonville, FL 32220

Parcel 3:

Lot 19, Block 2, LAKE FOREST HILLS UNIT 1, according to the plat thereof as recorded in Plat Book 21, Pages 77, Public Records of Duval County, Florida.
Property Address: 1516 Ribault Scenic Drive, Jacksonville, FL 32208

Parcel 4:

Lot 25, Block 6, LAKE PARK ESTATES, UNIT 3, according to the plat thereof as recorded in Plat Book 31, Pages 64, Public Records of Duval County, Florida.
Property Address: 2429 Saint Leger Drive, Jacksonville, FL 32208

Parcel 5:

Lot 3, Block 18, LAKE FOREST HILLS UNIT 2, according to the plat thereof as recorded in Plat Book 22, Pages 16, Public Records of Duval County, Florida.
Property Address: 1824 Rugby Road, Jacksonville, FL 33208

Parcel 6:

Lot 7, Block 1, LINCOLN ESTATES UNIT 2, according to the plat thereof as recorded in Plat Book 30, Pages 33, Public Records of Duval County, Florida.
Property Address: 6946 West Virginia Avenue, Jacksonville, FL 32209

Parcel 7:

Lots 36 and 37, TONI HEIGHTS, according to the plat thereof as recorded in Plat Book 23, Pages 11, Public Records of Duval County, Florida.
Property Address: 6336 Toni Avenue, Jacksonville, FL 32208

Loan Number:████████

## BALLOON PAYMENT ADDENDUM TO INTEREST ONLY NOTE

The BALLOON PAYMENT RIDER ("Rider") is made this 23 day of January 2017, and amends a NOTE in the amount of Four Hundred Twenty-Three Thousand Six Hundred Dollars and 00/100 (US $423,600.00) (the "Note") made by the person(s) who sign below ("Borrower") to HIS Capital Funding ISAOA/ATIMA, a California Corporation ("Lender").

"THIS LOAN IS PAYABLE IN FULL AT MATURITY OR LOAN IS PAYABLE IN FULL TWENTY-FOUR (24) MONTHS OF EXECUTION OF THE NOTE, AND MORTGAGE, YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINNCE THIS LOAN AT THAT TIME. YOU WILL THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COST NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER."

At least ninety (90) days, but not more than one hundred twenty (120) days prior to the Maturity Date, Lender must send Borrower a notice which states the Maturity Date and the amount of the "balloon payment" (which is the entire unpaid principal balance of loan and interest then due) which will be due on the Maturity Date (assuming all scheduled payments due between the date of the notice and the Maturity Date are made on time). The loan will be payable in full, principal balance of the loan and interest, at Sale Closing.

Witness _____

Steven K. Hendrickson
_____ AMA _____ (Title) and as
authorized agent on behalf of
JAX SFH Properties, LLC

Initials: SKH

Initials: _____

# Exhibit H

Doc # 2017052591, OR BK 17900 Page 1624, Number Pages: 4, Recorded 03/07/2017 at 08:00AM, RONNIE FUSSELL CLERK CIRCUIT COURT DUVAL COUNTY RECORDING $35.50

RECORDING REQUESTED BY:

PS Funding, Inc.

WHEN RECORDED RETURN TO:

PS Funding, Inc.
300 Manhattan Beach Blvd, Suite #206
Manhattan Beach, CA 90266
Attn: Legal Department

## ASSIGNMENT OF MORTGAGE

This ASSIGNMENT OF MORTGAGE ("Assignment") is made as of January 31, 2017, by HIS CAPITAL FUNDING, a California Corporation ("Assignor"), to PS FUNDING, INC., a Delaware corporation ("Assignee").

FOR VALUE RECEIVED, Assignor hereby sells, grants, assigns, and transfers to Assignee any and all of its right, title and interest in and to that certain Mortgage and Security Agreement, dated January 23, 2017, made by JAX SFH PROPERTIES LLC, a Florida limited liability company, for the benefit of Assignor ("Security Instrument"), and recorded on 02/14/2017 , in the Official Records of Duval County, FL, as Instrument Number 2017035284 , and as a lien on that certain real property described on Exhibit A, attached hereto and made a part hereof.

TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under the foregoing Security Instrument.

*[Signature On Following Page]*

1

IN WITNESS WHEREOF, this Assignment is made to be effective as of the date first above written.

ASSIGNOR:

HIS CAPITAL FUNDING,
a California Corporation

By: _____

Name: MONIQUE MAISONET

Title: PROCESSING MANAGER

2

## ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF [ FL ] )
) ss
COUNTY OF ORANGE )

On 2/16/17 , before me, MELISSA ANN COURCH Notary Public, personally appeared MONIQUE MAISONET , who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of [ FL ] that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public  GG 030863

Malissa Ann Pollard
Commission FG030863
Expires September 16, 2020
Bonded Thru Aaron Notary

3

EXHIBIT A TO
ASSIGNMENT OF MORTGAGE
LEGAL DESCRIPTION OF PROPERTY

Parcel 1:

Lot 23, INDIAN LAKES, according to the plat thereof as recorded in Plat Book 39,
Pages 95, Public Records of Duval County, Florida,
Property Address: 5134 Ricker Road, Jacksonville, FL 32210

Parcel 2:

The East 34 feet 8 inches of Lot 6, Block 129, SPRINGFIELD NORTHERN
PORTION, according to the plat thereof as recorded in Plat Book 2, Pages 40,
Public Records of Duval County, Florida,
Property Address: 118-120 West 14th Street, Jacksonville, FL 32220

Parcel 3:

Lot 19, Block 2, LAKE FOREST HILLS UNIT 1, according to the plat thereof as
recorded in Plat Book 21, Pages 77, Public Records of Duval County, Florida,
Property Address: 1516 Ribault Scenic Drive, Jacksonville, FL 32208

Parcel 4:

Lot 25, Block 6, LAKE PARK ESTATES, UNIT 3, according to the plat thereof as
recorded in Plat Book 31, Pages 64, Public Records of Duval County, Florida,
Property Address: 2429 Saint Leger Drive, Jacksonville, FL 32208

Parcel 5:

Lot 3, Block 18, LAKE FOREST HILLS UNIT 2, according to the plat thereof as
recorded in Plat Book 22, Pages 16, Public Records of Duval County, Florida,
Property Address: 1824 Rugby Road, Jacksonville, FL 33208

Parcel 6:

Lot 7, Block 1, LINCOLN ESTATES UNIT 2, according to the plat thereof as
recorded in Plat Book 30, Pages 33, Public Records of Duval County, Florida,
Property Address: 6946 West Virginia Avenue, Jacksonville, FL 32209

Parcel 7:

Lots 36 and 37, TONI HEIGHTS, according to the plat thereof as recorded in Plat
Book 23, Pages 11, Public Records of Duval County, Florida,
Property Address: 6336 Toni Avenue, Jacksonville, FL 32208

4

# Exhibit I

Portfolio Deal of 11 Properties, Jacksonville, FL 90042 (the "Property")

## LOAN EXTENSION AGREEMENT

THIS LOAN EXTENSION AGREEMENT ("Agreement") is made as of January 20, 2019, by and between PS FUNDING, INC., a Delaware corporation (the "Lender"), JAX SFH PROPERTIES LLC, a Florida limited liability company (the "Borrower"), and STEVEN K. HENDRICKSON, an individual (the "Guarantor").

### RECITALS

A.  HIS CAPITAL FUNDING, a California Corporation ("Originator"), has made a loan (the "Loan") to Borrower evidenced by that certain Interest Only Balloon Promissory Note, dated November 22, 2016 (the "Note"), which is secured by that certain Mortgage and Security Agreement, dated November 22, 2016, and recorded in the Official Records of Duval County, FL on December 15, 2016, as Document Number 2016286216 (the "Mortgage", together with the Note are hereinafter referred to as the "Loan Documents").

B.  On November 28, 2016, Originator assigned to Lender all of its rights, interests, and remedies under the Loan Documents.

C.  By its terms, the principal amount due under the Note is $368,225.00.

D.  By its terms, the Note became due on December 1, 2018 (the "Maturity Date").

E.  Borrower desires to extend the Maturity Date of the Note and/or modify the terms of the Note and Lender is willing to accommodate Borrower's desire, on the terms and conditions contained herein.

NOW THEREFORE, for valuable consideration receipt of which is hereby acknowledged, the parties agree as follows:

1.  **Confirmation of Loan Amount.** As of the date of this Agreement, Borrower represents and warrants to Lender that the principal due on the Loan is $368,225.00.

2.  **Reaffirmation of Business Purpose of Loan.** Borrower (and Guarantor, if any) represents and warrants to Lender that the proceeds of the Note have been and shall continue to be used solely for business, commercial, investment, or similar purposes, and that no portion of the proceeds will be used for personal, family, or household purposes.

Borrower's Initials: _____    Guarantor's Initials: _____

3.  **Reaffirmation of Non-Owner Occupancy.** Borrower (and Guarantor, if any) represents and warrants to Lender that the Property is not their principal address, they do not reside at the Property, and they have no intention of ever making the Property their principal residence.

Borrower's Initials: _____    Guarantor's Initials: _____

Portfolio Deal of 11 Properties, Jacksonville, FL 90042 (the "Property")

4.    **Description of Modifications.**

    a.  **Interest Rate.** The interest rate shall be unchanged.

    b.  **Extended Maturity Date.** The maturity date is extended to December 1, 2020 (the "Extended Maturity Date"), at which time all sums remaining unpaid under the Loan Documents shall be due and payable in full.

5.    **Payments.** Monthly payments as described in the Note shall continue to be made by Borrower on the 1st day of each month until the Extended Maturity Date at which time all amounts of principal and interest shall be due and payable in full.

6.    **Conditions Precedent.** The following shall be conditions precedent to the effectiveness of this Agreement:

    a.  **Evidence of Payment of Property Taxes.** Borrower shall pay all real property taxes due and owing on the Property, and shall deliver to Lender written documentation confirming: (i) that the property taxes, including all installments of supplemental taxes, are current; (ii) that there are no outstanding property taxes due; and (iii) that all property taxes and supplemental taxes that have been billed, but are not yet due, have been paid.

    b.  **Insurance.** Borrower shall maintain at all times, at Borrower's sole cost and expense, fully paid policies of liability, property damage, course of construction, casualty, hazard, and all other insurance that may be required by Lender under the Loan Documents. All insurance shall be maintained with responsible and reputable insurance companies or associations satisfactory in all respects to Lender. Each policy of insurance shall name Lender as an additional insured, mortgagee, or loss payee, as appropriate, and shall include a mandatory 30-day written notice to Lender of any modification or cancellation of such policy. Borrower shall provide Lender with documentation confirming that the premiums for each policy of insurance has been paid.

    c.  **Good Standing.** Borrower shall provide Lender with documentation confirming that Borrower is in good standing in the state in which Borrower is incorporated or formed.

    d.  **Loan Brought Current.** Borrower shall pay Lender any and all amounts due and payable under the Note and/or the Loan Documents as of the date of this Agreement.

    e.  **Fees and Costs.** Borrower must fully satisfy any and all obligations provided in Section 10 below.

Portfolio Deal of 11 Properties, Jacksonville, FL 90042 (the "Property")

f.  **Deadline to Satisfy Conditions Precedent.**  Borrower must fully perform every condition precedent found in Sections 6 and 10 of this Agreement within seven (7) days of the date first written above. If Borrower fails to so timely perform, Lender may, in its sole and absolute discretion, without notice, declare this Agreement null and void.

7.  **Inducement.** As a material inducement to Lender to enter into this Agreement, Borrower hereby ratifies, reaffirms, and agrees that (a) the Loan Documents, as modified herein, represent valid, enforceable, and collectible obligations of Borrower, and that there are no existing claims, defenses, personal or otherwise, or rights of set off with respect to any of these Loan Documents, (b) the liens, security interests, assignments, and rights created by the Loan Documents, as modified herein, are valid, enforceable and existing liens, security interests, assignments, and rights, of the priority required by Lender, (c) this Agreement shall in no manner, waive, affect or impair the indebtedness, the Note or any liens and security interests, and (d) any and all rights or remedies of Lender previously limited, waived or diminished are hereby reinstated in full as if such limitation, waiver, or diminishment has not occurred.

8.  **No Further Commitments.** Borrower acknowledges that Lender's complete agreement with regard to modifying the Loan terms is contained herein and that there have been no other promises or commitments made concerning further modifications, advances, forbearances, waivers, extensions, or other agreements.

9.  **Title Insurance and Costs.** At Lender's option Borrower shall provide Lender at Borrower's cost a 110.5 endorsement to its title insurance policy assuring Lender that nothing contained herein shall affect or impair the lien of the Mortgage or its priority. Borrower shall pay all costs and expenses incurred by Lender in connection with this Agreement, including all title and recording fees.

10.  **Fees and Costs.** Borrower shall pay the following:

a.  An extension fee (the "Extension Fee") totaling $12,887.88 to be paid upfront as a condition precedent to this Agreement's effectiveness and to be distributed as follows:

i.  $8,590.69 to HIS CAPITAL FUNDING, and

ii.  $4,297.19 to PS FUNDING, INC.

11.  **Relief From Stay.** Borrower agrees that in consideration of the recitals and mutual covenants contained herein and other considerations, including Lender's forbearance, in the event Borrower, or any of them, shall file any petition with any Bankruptcy Court of competent jurisdiction under Title 11 of the U.S. Code as amended or be the subject of any order for relief issued under Title 11 of the U.S. Code as amended, Lender shall thereupon be entitled to relief from any automatic stay imposed by Section 362 of Title 11 of the U.S. Code as amended or otherwise on or against the exercise of the rights and remedies otherwise available to Lender as provided in the Loan Documents and as otherwise provided by law and Borrower fully, knowingly

Portfolio Deal of 11 Properties, Jacksonville, FL 90042 (the "Property")

and irrevocably hereby waives any and all rights to object to such relief from stay sought by Lender.

12.    **Representations and Warranties.** Borrower (a) represents, warrants and covenants to Lender that (i) there are no defaults which exist under the Loan Documents to which Borrower is a party and (ii) Borrower does not have any counterclaims or defenses against this Agreement and the other Loan Documents and (b) ratifies and confirms to Lender that (i) except as expressly and specifically modified by this Agreement, all of the terms, covenants, indemnifications, and provisions of the Loan Documents applicable to the Borrower are and will remain in full force and effect and (ii) all of the representations and warranties made by the Borrower in the Loan Documents to which they are a party are true and correct as if made on the Effective Date.

13.    Miscellaneous.

 a.    **No Waiver.** Any waivers of the rights of Lender occurring on or before the date hereof shall not, and do not, constitute the waiver of any rights of Lender to fully enforce the terms and conditions of any of the Loan Documents hereafter.

 b.    **Attorneys' Fees.** In the event of any dispute between the parties regarding this Agreement or the release contained herein, the prevailing party shall be entitled to attorneys' fees, costs, and expenses, whether or not litigation is commenced.

 c.    **Entire Agreement.** This Agreement constitutes and expresses the entire understanding between the parties hereto with respect to the subject matter hereof, and supersedes all prior and contemporaneous agreements and understandings, inducements or conditions, whether expressed or implied, oral, or written. This Agreement may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties hereto. Neither this Agreement nor any portion or provision hereof may be changed, waived, or amended orally or in any manner other than by an agreement in writing signed by all the parties hereto.

 d.    **Severability.** The provisions of this Agreement are independent of and separable from each other. If any provision hereof shall for any reason be held invalid or unenforceable, it is the intent of the parties that such invalidity or unenforceability shall not invalidate any other provision hereof, and that this Agreement shall be construed as if such invalid or unenforceable provision had never been contained herein.

 e.    **Further Assurances.** Borrower shall, upon the request of Lender, execute, acknowledge, and deliver such further instruments or documents and take such other action as may be necessary to perfect or continue any security interest and to effect the purposes and comply with the intent of the Agreement.

 f.    **Successors.** Except as otherwise provided in the Loan Documents or this Agreement, this Agreement shall be binding upon the heirs, executors,

Portfolio Deal of 11 Properties, Jacksonville, FL 90042 (the "Property")

administrators, successors, and assignees of the respective parties.

g. **Document References.** Except as otherwise defined herein or unless the context so requires, the capitalized terms used herein shall have the meanings given to them in the respective Loan Documents. Any reference in any of the Loan Documents to the Loan, or to the other Loan Documents, shall be deemed to refer to the Loan and the Loan Documents, as modified hereby. All the Loan Documents shall be deemed modified so as to be in accordance with the modifications contained herein.

14. **Remaining Terms Unmodified.** Except as modified herein, the Note, Mortgage and other Loan Documents shall remain unaffected, unchanged, and unimpaired by reason of this Agreement.

   a. **Applicable Law; Interpretation.** To the extent not preempted or controlled by the laws of the United States, this Agreement shall be governed by and construed in accordance with the internal and conflict laws of the State where the Property is located.

   b. **Effective Date.** This Agreement shall become effective after all conditions as required herein have been satisfied and Lender has received an executed copy of this Agreement along with any additional information or documentation regarding Borrower, the Property or the Loan, that Lender may reasonably require. Borrower hereby acknowledges and agrees that this Agreement will not be binding upon or enforceable against Lender until such time as each of the conditions precedent set forth above has been satisfied in Lender's sole and absolute determination, and then only after the Borrower has fully paid, performed, and complied with all of the terms and conditions set forth in this Agreement.

   c. **Time of the Essence.** Time is of the essence in performing each and all of the terms of this Agreement.

15. **Claims and Release.** Borrower acknowledges that Lender requires that as a condition of Lender entering into this Agreement that Borrower release any claim, action, dispute, or demand, including any claim concerning lender liability which Borrower has or may have against Lender. It is the intention that this Agreement shall resolve or waive all outstanding claims and disputes, if any, between Lender and Borrower.

In consideration of Lender's entering into this Agreement, and for other good and valuable consideration, the receipt of which is hereby acknowledged, Borrower agrees as follows:

   a. Borrower and its agents, employees, attorneys, affiliates, successors, and assignees, hereby, effective as of the date of this Agreement, absolutely release and forever discharge Lender and their agents, officers, directors, trustees, employees, successors, and assignees, and each of them, of and from any and all claims, demands, damages, liabilities, causes of action, attorney's fees, costs, and expenses of every nature, whether known or unknown or holds or at any time has owned or

Portfolio Deal of 11 Properties, Jacksonville, FL 90042 (the "Property")

held, by reason of any matter, fact or thing done, omitted, or suffered to be done prior to the date of this Agreement, either directly or indirectly, by reason of or arising out of (i) the making of or administration of the Loan; or (ii) any other transaction relating to the Loan or the Property.

b.  Borrower warrants and represents that the entire claims which are the subject of the release are owned by Borrower and that no claim or any part thereof, has been assigned to or is owned by anyone other than Borrower and there is no action or litigation pending or instituted involving such claims.

c.  Borrower acknowledges that this release is voluntary and without any duress or undue influence, and is given as part of the consideration for Lender's accommodation of Borrower's request for Loan modification.

16.     **Counterparts.** This Agreement may be signed in counterparts, including facsimile or .pdf, each of which shall be deemed an original and together shall constitute the same agreement.

*[signature page to follow]*

Portfolio Deal of 11 Properties, Jacksonville, FL 90042 (the "Property")

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date written above.

BORROWER:

JAX SFH PROPERTIES LLC,
a Florida limited liability company

By:     EQUITY CHINA, INC.,
        a British Virgin Islands corporation
Its:    Manager

        By:     _Junji Sheo_
        Name: Shoa Jhy
        Title:  Sole Director and Shareholder

LENDER:

PS FUNDING, INC.,
a Delaware corporation

By: _____
Name: Anthony Depalie
Title: _Authorized Signatory_

ACKNOLWEDGED AND AGREED:

GUARANTOR:

Name: STEVEN K. HENDRICKSON

# Exhibit J

Portfolio Deal of 7 Properties, Jacksonville, FL 32208 (the "Property")

## LOAN EXTENSION AGREEMENT

THIS LOAN EXTENSION AGREEMENT ("Agreement") is made as of March 25, 2019, by and between PS FUNDING, INC., a Delaware corporation (the "Lender"), JAX SFH PROPERTIES LLC, a Florida limited liability company (the "Borrower"), and STEVEN K. HENDRICKSON, an individual (the "Guarantor").

### RECITALS

A.   HIS CAPITAL FUNDING, a California corporation ("Originator"), has made a loan (the "Loan") to Borrower evidenced by that certain Interest Only Balloon Promissory Note, dated January 23, 2017 (the "Note"), which is secured by that certain Mortgage and Security Agreement, dated January 23, 2017, and recorded in the Official Records of Duval County, FL, on February 14, 2017, as Document Number 2017035284 (the "Mortgage", together with the Note are hereinafter referred to as the "Loan Documents").

B.   On January 31, 2017, Originator assigned to Lender all of its rights, interests, and remedies under the Loan Documents.

C.   By its terms, the principal amount due under the Note is $423,600.00.

D.   By its terms, the Note became due on February 1, 2019 (the "Maturity Date").

E.   Borrower desires to extend the Maturity Date of the Note and/or modify the terms of the Note and Lender is willing to accommodate Borrower's desire, on the terms and conditions contained herein.

NOW THEREFORE, for valuable consideration receipt of which is hereby acknowledged, the parties agree as follows:

1.   **Confirmation of Loan Amount.** As of the date of this Agreement, Borrower represents and warrants to Lender that the principal due on the Loan is $423,600.00.

2.   **Reaffirmation of Business Purpose of Loan.** Borrower Guarantor represent and warrant to Lender that the proceeds of the Note have been and shall continue to be used solely for business, commercial, investment, or similar purposes, and that no portion of the proceeds will be used for personal, family, or household purposes.

Borrower's Initials: _____   Guarantor's Initials: _____

3.   **Reaffirmation of Non-Owner Occupancy.** Borrower and Guarantor represent and warrant to Lender that the Property is not their principal address, they do not reside at the Property, and they have no intention of ever making the Property their principal residence.

Borrower's Initials: _____   Guarantor's Initials: _____

Portfolio Deal of 7 Properties, Jacksonville, FL 32208 (the "Property")

4.    Description of Modifications.

   a.  Interest Rate. The interest rate shall be unchanged.

   b.  Extended Maturity Date. The maturity date is extended to February 1, 2021 (the "Extended Maturity Date"), at which time all sums remaining unpaid under the Loan Documents shall be due and payable in full.

5.    Payments. Monthly payments as described in the Note shall continue to be made by Borrower on the 1st day of each month until the Extended Maturity Date at which time all amounts of principal and interest shall be due and payable in full.

6.    Conditions Precedent. The following shall be conditions precedent to the effectiveness of this Agreement:

   a.  Evidence of Payment of Property Taxes. Borrower shall pay all real property taxes due and owing on the Property, and shall deliver to Lender written documentation confirming: (i) that the property taxes, including all installments of supplemental taxes, are current; (ii) that there are no outstanding property taxes due; and (iii) that all property taxes and supplemental taxes that have been billed, but are not yet due, have been paid.

   b.  Insurance. Borrower shall maintain at all times, at Borrower's sole cost and expense, fully paid policies of liability, property damage, course of construction, casualty, hazard, and all other insurance that may be required by Lender under the Loan Documents. All insurance shall be maintained with responsible and reputable insurance companies or associations satisfactory in all respects to Lender. Each policy of insurance shall name Lender as an additional insured, mortgagee, or loss payee, as appropriate, and shall include a mandatory 30-day written notice to Lender of any modification or cancellation of such policy. Borrower shall provide Lender with documentation confirming that the premiums for each policy of insurance has been paid.

   c.  Good Standing. Borrower shall provide Lender with documentation confirming that Borrower is in good standing in the state in which Borrower is incorporated or formed.

   d.  Loan Brought Current. Borrower shall pay Lender any and all amounts due and payable under the Note and/or the Loan Documents as of the date of this Agreement.

   e.  Fees and Costs. Borrower must fully satisfy any and all obligations provided in Section 10 below.

Portfolio Deal of 7 Properties, Jacksonville, FL 32208 (the "Property")

    f.  **Deadline to Satisfy Conditions Precedent.** Borrower must fully perform every condition precedent found in Sections 6 and 10 of this Agreement within seven (7) days of the date first written above. If Borrower fails to so timely perform, Lender may, in its sole and absolute discretion, without notice, declare this Agreement null and void.

    7.     **Inducement.** As a material inducement to Lender to enter into this Agreement, Borrower hereby ratifies, reaffirms, and agrees that (a) the Loan Documents, as modified herein, represent valid, enforceable, and collectible obligations of Borrower, and that there are no existing claims, defenses, personal or otherwise, or rights of set off with respect to any of these Loan Documents, (b) the liens, security interests, assignments, and rights created by the Loan Documents, as modified herein, are valid, enforceable and existing liens, security interests, assignments, and rights, of the priority required by Lender, (c) this Agreement shall in no manner, waive, affect or impair the indebtedness, the Note or any liens and security interests, and (d) any and all rights or remedies of Lender previously limited, waived or diminished are hereby reinstated in full as if such limitation, waiver, or diminishment has not occurred.

    8.     **No Further Commitments.** Borrower acknowledges that Lender's complete agreement with regard to modifying the Loan terms is contained herein and that there have been no other promises or commitments made concerning further modifications, advances, forbearances, waivers, extensions, or other agreements.

    9.     **Title Insurance and Costs.** At Lender's option Borrower shall provide Lender at Borrower's cost a 110.5 endorsement to its title insurance policy assuring Lender that nothing contained herein shall affect or impair the lien of the Mortgage or its priority. Borrower shall pay all costs and expenses incurred by Lender in connection with this Agreement, including all title and recording fees.

    10.    **Fees and Costs.** Borrower shall pay the following:

    a.  An extension fee (the "Extension Fee") totaling $14,826.00 to be paid upfront as a condition precedent to this Agreement's effectiveness and to be distributed as follows:

        i.  $9,882.59 to HIS CAPITAL FUNDING, and

        ii.  $4,943.41 to PS FUNDING, INC.

    11.    **Relief From Stay.** Borrower agrees that in consideration of the recitals and mutual covenants contained herein and other considerations, including Lender's forbearance, in the event Borrower, or any of them, shall file any petition with any Bankruptcy Court of competent jurisdiction under Title 11 of the U.S. Code as amended or be the subject of any order for relief issued under Title 11 of the U.S. Code as amended, Lender shall thereupon be entitled to relief from any automatic stay imposed by Section 362 of Title 11 of the U.S. Code as amended or otherwise on or against the exercise of the rights and remedies otherwise available to Lender as provided in the Loan Documents and as otherwise provided by law and Borrower fully, knowingly

Portfolio Deal of 7 Properties, Jacksonville, FL 32208 (the "Property")

and irrevocably hereby waives any and all rights to object to such relief from stay sought by Lender.

      12.    **Representations and Warranties.** Borrower (a) represents, warrants and covenants to Lender that (i) there are no defaults which exist under the Loan Documents to which Borrower is a party and (ii) Borrower does not have any counterclaims or defenses against this Agreement and the other Loan Documents and (b) ratifies and confirms to Lender that (i) except as expressly and specifically modified by this Agreement, all of the terms, covenants, indemnifications, and provisions of the Loan Documents applicable to the Borrower are and will remain in full force and effect and (ii) all of the representations and warranties made by the Borrower in the Loan Documents to which they are a party are true and correct as if made on the Effective Date.

      13.    **Miscellaneous.**

      a.   **No Waiver.** Any waivers of the rights of Lender occurring on or before the date hereof shall not, and do not, constitute the waiver of any rights of Lender to fully enforce the terms and conditions of any of the Loan Documents hereafter.

      b.   **Attorneys' Fees.** In the event of any dispute between the parties regarding this Agreement or the release contained herein, the prevailing party shall be entitled to attorneys' fees, costs, and expenses, whether or not litigation is commenced.

      c.   **Entire Agreement.** This Agreement constitutes and expresses the entire understanding between the parties hereto with respect to the subject matter hereof, and supersedes all prior and contemporaneous agreements and understandings, inducements or conditions, whether expressed or implied, oral, or written. This Agreement may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties hereto. Neither this Agreement nor any portion or provision hereof may be changed, waived, or amended orally or in any manner other than by an agreement in writing signed by all the parties hereto.

      d.   **Severability.** The provisions of this Agreement are independent of and separable from each other. If any provision hereof shall for any reason be held invalid or unenforceable, it is the intent of the parties that such invalidity or unenforceability shall not invalidate any other provision hereof, and that this Agreement shall be construed as if such invalid or unenforceable provision had never been contained herein.

      e.   **Further Assurances.** Borrower shall, upon the request of Lender, execute, acknowledge, and deliver such further instruments or documents and take such other action as may be necessary to perfect or continue any security interest and to effect the purposes and comply with the intent of the Agreement.

      f.   **Successors.** Except as otherwise provided in the Loan Documents or this Agreement, this Agreement shall be binding upon the heirs, executors,

Portfolio Deal of 7 Properties, Jacksonville, FL 32208 (the "Property")

administrators, successors, and assignees of the respective parties.

g.  Document References. Except as otherwise defined herein or unless the context so requires, the capitalized terms used herein shall have the meanings given to them in the respective Loan Documents. Any reference in any of the Loan Documents to the Loan, or to the other Loan Documents, shall be deemed to refer to the Loan and the Loan Documents, as modified hereby. All the Loan Documents shall be deemed modified so as to be in accordance with the modifications contained herein.

14. Remaining Terms Unmodified. Except as modified herein, the Note, Mortgage and other Loan Documents shall remain unaffected, unchanged, and unimpaired by reason of this Agreement.

a.  Applicable Law; Interpretation. To the extent not preempted or controlled by the laws of the United States, this Agreement shall be governed by and construed in accordance with the internal and conflict laws of the State where the Property is located.

b.  Effective Date. This Agreement shall become effective after all conditions as required herein have been satisfied and Lender has received an executed copy of this Agreement along with any additional information or documentation regarding Borrower, the Property or the Loan, that Lender may reasonably require. Borrower hereby acknowledges and agrees that this Agreement will not be binding upon or enforceable against Lender until such time as each of the conditions precedent set forth above has been satisfied in Lender's sole and absolute determination, and then only after the Borrower has fully paid, performed, and complied with all of the terms and conditions set forth in this Agreement.

c.  Time of the Essence. Time is of the essence in performing each and all of the terms of this Agreement.

15.    Claims and Release. Borrower acknowledges that Lender requires that as a condition of Lender entering into this Agreement that Borrower release any claim, action, dispute, or demand, including any claim concerning lender liability which Borrower has or may have against Lender. It is the intention that this Agreement shall resolve or waive all outstanding claims and disputes, if any, between Lender and Borrower.

In consideration of Lender's entering into this Agreement, and for other good and valuable consideration, the receipt of which is hereby acknowledged, Borrower agrees as follows:

a.  Borrower and its agents, employees, attorneys, affiliates, successors, and assignees, hereby, effective as of the date of this Agreement, absolutely release and forever discharge Lender and their agents, officers, directors, trustees, employees, successors, and assignees, and each of them, of and from any and all claims, demands, damages, liabilities, causes of action, attorney's fees, costs, and expenses of every nature, whether known or unknown or holds or at any time has owned or

Portfolio Deal of 7 Properties, Jacksonville, FL 32208 (the "Property")

held, by reason of any matter, fact or thing done, omitted, or suffered to be done prior to the date of this Agreement, either directly or indirectly, by reason of or arising out of (i) the making of or administration of the Loan; or (ii) any other transaction relating to the Loan or the Property.

b. Borrower warrants and represents that the entire claims which are the subject of the release are owned by Borrower and that no claim or any part thereof, has been assigned to or is owned by anyone other than Borrower and there is no action or litigation pending or instituted involving such claims.

c. Borrower acknowledges that this release is voluntary and without any duress or undue influence, and is given as part of the consideration for Lender's accommodation of Borrower's request for Loan modification.

16.     **Counterparts.** This Agreement may be signed in counterparts, including facsimile or .pdf, each of which shall be deemed an original and together shall constitute the same agreement.

*[signature page to follow]*

Portfolio Deal of 7 Properties, Jacksonville, FL 32208 (the "Property")

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date written above.

BORROWER:

JAX SFH PROPERTIES LLC,
a Florida limited liability company

By:     EQUITY CHINA, INC.,
        a British Virgin Islands corporation
Its:    Manager

        By: _____
        Name: Shoa Jiny
        Title:  Sole Director and Shareholder

LENDER:

PS FUNDING, INC.,
a Delaware corporation

By: _____
Name:  Daniel Graham
Title:  Vice President

ACKNOLWEDGED AND AGREED:

GUARANTOR:

_____
STEVEN K. HENDRICKSON