Sean Thomas Quinn
10 Ridge Road
Succasunna, New Jersey 07876

United States Bankruptcy Court
District Of Delaware
824 Market Street North
3rd Floor
Wilmington, DE 19801

Re: *Peer Street, et. al., Case No. 23-10815 (LSS)*

*Motion To Appoint Counsel To Serve Interests Of Secured Note Holders And Delay Hearing On Debtors' Motion To Schedule A Hearing On The Approval Of Sale*

July 20, 2023

Dear Judge Silverstein:

Please accept this letter motion, as I am proceeding *pro se*.

The Court's record already contains Claims from at least 140 retail account holders to whom Peer Street Funding LLC ("PSF") promised that their money would be held in segregated accounts secured by payments from mortgagors of or foreclosures on specifically identified real estate ("Secured Note Holders" or "SNHs").

I ask, respectfully, that the Secured Note Holders be appointed Counsel assigned by the Court given the distinct position of these retail account holders. Debtors and their officers have shown that they have no interest in protecting the unique interests of the SNHs. The Debtors have ignored and undercut the interests of the SAHs.

PSF pledged the mortgage payments on specified real estate as the income stream, and the only income stream, from which the SNHs would and could be paid. PSF represented to the Secured Account Holders that if the mortgagors of that specific real estate did not pay, PSF would pursue repayment and, if necessary, foreclose on the real estate for the benefit of the SNHs. For these services, the Secured Note Holders agreed to allow PSF to take fees from the mortgage payments.

PSF promised the SNHs:

*"What investor protections does PeerStreet have in place?*

*Investments in loans are held in a bankruptcy-remote entity that is separate from our primary corporate entity. In the unlikely event PeerStreet no longer remains in business, a third-party "special member" will step in to manage pending loan investments and ensure that investors continue to receive interest and principal payments."*

The most equitable result for the SNHs would be to transfer PSF's right to receive its substantial fee income to another entity skilled in servicing loans, in exchange for a lump sum reflecting PSF's previous work in originating these loans. That payment could then become part of the bankruptcy estate, fulfilling all parties' reasonable expectations. Realty Shares, once a competitor of PSF, followed this approach when it could not find venture capital.

There exist many servicers who could add this work efficiently to their already scalable business. I stress that this motion only pertains to the "Fractional Shares" portion of PeerStreet's business, and not the other segments such as Pocket and Portfolio, which are not marketed as tied to specifically identified individual underlying mortgages. The approach, for which I request Counsel assigned to ensure procedural due process, is hereinafter referenced as the "Servicer Solution."

The record contains no indication that the Servicer Solution has even been considered. Debtors have done nothing to recognize the SNHs' reliance interest on the foregoing promise. In fact, Debtors have acted in derogation of those interests. The bid procedures attached to Debtors Motion call for a sale of notes only, and do not even contemplate the Servicer Solution, even though PSF already engaged a sub-servicer.

The so-called "Special Member" that Debtors appointed does not appear to have special expertise in mortgage servicing but, according to LinkedIn and CT's website, an employee of CT Corporation temporarily loaned to Debtors.

The record that the Debtors have so far created does not indicate that the "Special Member" did anything other than sign the bankruptcy petition let alone advocate for the the Servicer Solution. There is no record regarding any attempt by the Special Member or anyone else to take into account the SNHs' legitimate expectations in light of PSF's representations. Nor has the Special Member contacted any SNH to my knowledge.

I have attempted to contact The Special Member through his Counsel but have received no reply.

Indeed, in Debtors' hundreds of pages of filings with this Court, the above-quoted bankruptcy protection provision has not been brought to the Court's attention. Chief Restructuring Officer Dunn of Province has submitted a 21 page affidavit to this Court that neither mentions any interaction with the Special Member, consideration of the above-quoted promise, nor having considered the Servicer Solution, despite stating he engaged in a thorough review of the underlying documents.

The inference appropriately drawn from the Special Member's involvement on these facts, is one of facade, a straw man, not any real attempt to consider the representations made to the SNHs, in reliance on which the notes to be sold were created in the first place. In comparison to a "Potemkin" Special Member, PeerStreet has hired Piper and Province to run roughshod over the SNHs' reliance interest.

Moreover, the SNHs, in large part, consist of small investors such as myself, who are not in a position to have counsel like the other creditors. The entire "crowdfunding" industry relies on small investors as the name implies. Indeed, the point, as marketed, was to diversify among many small investors. Debtors' approach would signal to all investors that they should not consider investments in fractional loan participations, meaning that PeerStreet's approach to this proceeding will harm other players in the industry.

There appear to be significant legal questions that deserve another experienced voice. These include whether Mortgage Dependent Promissory Notes are in fact secured by the payment and REO sale streams from the Underlying Loans, which would require following the Servicer Solution.

Mr. Dunn's affidavit calls the Mortgage Dependent Promissory Notes "participation interests in certain of the Underlying Loans." Yet he simply declares them "unsecured" without any analysis or explanation as to why such "participation interests" should not be considered secured by the underlying mortgage payment or REO sale proceeds stream.

The Debtors cite the bankruptcy requirements of Section 363(f) in their Motion but do not identify which one they satisfy. There is a significant question as to whether they satisfy any including whether "applicable nonbankruptcy law permits sale of such property free and clear of such interest..."

The SNHs need a schooled voice on these questions and the only way to satisfy that is through an appointment of Counsel.

The Dunn Affidavit contains the following concerning statement: a PeerStreet affiliate "holds $1.2 million in cash and parcels of real estate that had previously secured approximately $37.1 million in Underlying Loans on the retail platform that have been foreclosed."

Dunn appears to state that the cash from foreclosed real estate and the value of REO, astonishingly, equals only 3.2% of the loans made. One would hope that Debtors do not intend to sell the Notes for 3.2 cents on the dollar. That this statement made its way into an Affidavit for this Court's consideration, even if Debtors can innocently amplify it, calls for an appointment of another set of trained eyes to protect the SNHs.

If the Court allows the Debtors to sack the SNHs accounts, without even giving the Servicer Solution for only part of the estate a proper review, no one would ever invest in fractional notes, and PeerStreet will thus be allowed to harm its competitors.

In light of the foregoing, given our special position in having been promised at least a voice before our accounts were sold in bankruptcy, and the Debtors' failure to even consider the Servicer Solution, the SNHs should have Counsel appointed and paid from the bankruptcy estate. I ask only that the Servicing Solution be considered and we need Counsel appointed to ensure that happens.

Respectfully,

*Sean Quinn*

Sean Quinn

Cc via PDF email

Debtors Co-Counsel
Magnetar Co-Counsel
Office Of The United States Trustee

Posted to Investor Reddit forum