## **EXHIBIT A**

**Proposed Redacted Declaration**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Peer Street, Inc., *et al.*,[1] | Case No. 23-10815 (LSS) |
| Debtors. | (Jointly Administered) |

### DECLARATION OF DAVID DUNN IN SUPPORT
### OF THE DEBTORS' NON-INSIDER KEY EMPLOYEE RETENTION PROGRAM

Pursuant to 28 U.S.C. § 1746, I, David Dunn, hereby declare under penalty of perjury that the following is true and correct to the best of my knowledge and belief:

1.    I am the Chief Restructuring Officer of Peer Street, Inc., a Delaware corporation ("**PSI**" and, together with the above-captioned affiliates as debtors and debtors in possession "**Peer Street**" or the "**Debtors**").  I am also a Principal of Province, LLC ("**Province**"), a nationally recognized financial advisory firm focusing on restructurings, growth opportunities, and fiduciary-related services.  I am duly authorized to make and submit this declaration (this "**Declaration**") in support of the *Motion of Debtors' for Entry of Interim and Final Orders (I) Authorizing Debtors to Pay Certain Prepetition Wages, Salaries, and Other Compensation, (II) Authorizing Continuation of Employee Benefit Programs, (III) Authorizing Banks to Honor and Process Checks and Transfers Related to Such Employee Obligations, and (IV) Granting Related*

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of their respective federal tax identification numbers, are:  Peer Street, Inc. (8584); PS Funding, Inc. (3268); PeerStreet Licensing, Inc. (9435); Peer Street Opportunity Fund GP, LLC (8491); Peer Street Funding LLC (9485); PSF REO LLC (1013); PS Options LLC (8584); PS Warehouse, LLC (5663); PS Warehouse II, LLC (9252); Peer Street Opportunity Investors II, LP (1586); PS Portfolio-ST1, LLC (1868); PSF Ohio, LLC (9485); PSF TX 1, LLC (9485); PSF TX 2, LLC (2415); PSF TX 4 LLC (9485).  The Debtors' service address is c/o Province, LLC 2360 Corporate Circle, Suite 340, Henderson, NV 89074, Attn:  David Dunn, Chief Restructuring Officer.

*Relief* [D.I. 9] (the "**Wages Motion**") and the key employee retention program (the "**Retention Plan**") referenced therein.[2]

2.    Except as otherwise indicated, all facts set forth in this Declaration are based on my personal knowledge, discussions with the Debtors' management and advisors, including Province, review of the relevant documents, or opinion based on my experience, knowledge, and information concerning the Debtors' operations and financial condition.  If called to testify, I would testify competently to the facts set forth in this Declaration.

## Background and Qualifications

3.    Province has extensive experience representing debtors, official creditors' committees, creditors, trustees, and others in a wide variety of bankruptcy cases, including, as (i) financial advisor to the debtors in 4E Brands, Basic Energy Services, Cherry Man Industries, Cinemex Holdings USA, Codiak BioSciences, Coin Cloud, Frontsight Management, Penthouse Global Media, Superior Linen, True Religion Apparel, Vesta Holdings, and Woodbridge Group of Companies; (ii) financial advisor to the official committees of unsecured creditors in the bankruptcy cases of A.B.C. Carpet, Alex and Ani, Armstrong Flooring, Aruze Gaming, Ascena Group, Avadim Health, BL Restaurants Holding, Carbonlite Holdings, Cherry Man Industries, Cyprus Mines, David's Bridal, DCL Holdings (USA), Destination Maternity, Eastern Outfitters EHT US1 (Eagle Hospitality), Endo International, Francesca's Holding Corporation, Honx, Insys Therapeutics, Independent Pet Partners, Invacare, J Crew, Lucky's Market, L'Occitane, Mallinckrodt, Mountain Express Oil Company, Nielsen & Bainbridge (NBD Home), Neopharma, One Web, Papyrus, Path Medical, Pier 1, PBS Brand Co. (Punch Bowl), Purdue Pharma, Reverse Mortgage, Revlon, SiO2 Medical Products, Stimwave Technologies, TECT Aerospace Group,

---

[2]    All capitalized terms not herein defined have the meanings ascribed to them in the Wages Motion.

True Religion Apparel, Tuesday Morning, Virgin Orbit and White Stallion Energy matters; and (iii) the trustee in Aegean Marine Petroleum, Advance Watch, American Apparel, Borden Dairy, CS Mining, Cycle Force, DCL, EBH Topco, Eclipse Berry Farms, Energy & Exploration (ENXP), Fieldwood, Gump's, Invacare, La Paloma Generating Company, Limetree Bay Services, Mallinckrodt, Maxus Energy, Neogenix, PBS Brand Co. (Punch Bowl), Promise Healthcare Group, RadioShack Corporation, RMIT (Reverse Mortgage), and Samson Resources, Stimwave Technologies, among others.

4.      Province is frequently involved in designing executive and employee incentive, retention, and severance plans for companies in chapter 11 and has access to extensive industry compensation data for these types of plans.  *See, e.g.*, *In re Vesta Holdings, LLC*, Case No. 22-11019 (LSS) (Bankr. D. Del. Oct. 30, 2022); *In re True Religion Apparel, Inc.*, Case No. 20-10941 (CSS) (Bankr. D. Del. June 9, 2020); *In re Cash Cloud, Inc.*, Case No. 23-10423 (MKN) (Bankr. D. Nev. Apr. 19, 2023).

5.      The Debtors have retained Province to provide interim management services in the Chapter 11 Cases.  Since being engaged by the Debtors, I, along with other professionals at Province, have assisted the Debtors with, among other things, all aspects of operating as debtors in possession, negotiating with the Debtors' creditors, and assisting the Debtors in meeting their obligations as debtors in possession.  As a result, I, along with other employees of Province, have significant knowledge of the Debtors and their businesses and are intimately familiar with the Debtors' financial affairs, debt structure, operations, and related matters.

6.      As the Debtors' CRO, I have been one of the people principally responsible for advising and overseeing the Debtors' chapter 11 efforts.  As such, I am generally familiar with

30596240.3

3

the Debtors' day-to-day business operations, their businesses and affairs, and the Chapter 11 Cases. I am personally familiar with the Debtors' proposed Retention Plan, the roles played by the Eligible Employees (as defined below) in the context of the Debtors' corporate and operational structure, and the critical functions and operational services that the Eligible Employees provide to the Debtors on a daily basis. I am also personally familiar with the development of the Retention Plan. I was personally involved, and employees at Province were involved at my direction, in the negotiation of the Retention Plan with advisors to or representatives of Magnetar Financial LLC, the Debtors' prepetition secured lender (the "**Lender**").

### Development of the Retention Plan

7. Before the commencement of the Chapter 11 Cases, following a series of reductions in workforce, the Debtors requested the assistance of Province to review the Debtors' existing employee compensation structure and to design a bonus program designed to retain certain key employees during the Chapter 11 Cases. Province assisted the Debtors in designing the Retention Plan consistent with the Debtors' goals of maximizing value and enhancing the Debtors' financial and operational condition. The Retention Plan was designed to be reasonable and cost-effective considering the Debtors' compensation structure as a whole, and to balance the costs of any incremental compensation while providing, respectively, the appropriate retention payments for the individuals essential to the success of the Chapter 11 Cases.

8. When the Debtors began developing the Retention Plan, there was a great deal of uncertainty regarding the paths to financial recovery, including the potential for filing these Chapter 11 Cases. One thing was clear: the success of any path, including a potential bankruptcy, was dependent upon the dedication and commitment of the Debtors' reduced, remaining workforce. Accordingly, the Debtors determined that a retention program would be necessary to

retain the Debtors' most essential non-insider employees who would enable the Debtors to navigate the business through their most demanding times, including the potential sale of their assets or other value maximizing transaction..

9.      The Retention Plan underwent numerous revisions as the Debtors, in connection with their advisors, determined an appropriate timeline for the Chapter 11 Cases.  The Retention Plan was also negotiated with the secured lender to certain of the Debtors, Magnetar Financial, LLC, which consented to the implementation of the Retention Plan pre-petition and supports approval of it post-petition.

**<u>The Retention Plan</u>**

10.      As set forth in the Wages Motion, the Retention Plan is designed to promote continued optimal performance and encourage the retention of the Debtors valuable, hard-to-replace, non-insider employees (collectively, the "**Eligible Employees**").  There are currently 26 Eligible Employees, and the total potential aggregate payout under the Retention Plan is approximately $880,000.  The Retention Plan covers the period from March 15, 2023 through and including an outside date of November 30, 2023 (with certain employee's retention period being earlier than November 30th).  With one exception, the amount available to each Eligible Employee is tied to their semi-monthly payroll amount.  For each month an Eligible Employee remains employed by the Debtors after March 15, 2023, the Eligible Employee accrues a bonus payment under the Retention Plan equal to one pay period.  With respect to the Debtors' ██████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████.

11.    The Eligible Employees include Employees from various functions across the Debtors' enterprise, including, but not limited to finance, sales, human resources, legal, operations, and customer service.  Put simply, they are essential to the success of the Debtors' enterprise and the success of these Chapter 11 Cases.[3]  The Debtors' senior management team and board of directors has deemed the Eligible Employees critical to the Debtors' ability to maximize value for the benefit of all interested parties.

12.    None of the Eligible Employees are "insiders" as I understand that term. More specifically, none of the Eligible Employees is a member of the Board of Directors of Peer Street, Inc., (the "**Board**") or reports directly to the Board.  None of the Eligible Employees has the authority to make company-wide decisions for the Debtors.   Furthermore, the Eligible Employees do not control the Debtors' reorganization efforts, nor do the Eligible Employees manage the Chapter 11 Cases.  Each of the Eligible Employees' duties is limited to specific and discreet areas of the Debtors' operations, and each of the Eligible Employees reports to a more senior member of the Debtors' workforce.  Moreover, none of the Eligible Employees had any role in, or provided any input with respect to, the development or proposed implementation of the Retention Plan.

13.    The Debtors have allocated a higher bonus under the Retention Plan for their ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████  As such,

---

[3]    A list of the Eligible Employees, including their name, title, target end date, and total remaining amount avialable under the Retention Plan is attached hereto as **Exhibit A**.

the Debtors' board of directors – which includes three (3) independent directors – approved an enhanced bonus structure for this person.

14.     It is essential that the Eligible Employees remain employed by the Debtors throughout the Chapter 11 Cases to facilitate the most value-maximizing exit scenario for the Debtors and all interested parties, as well as to assist in the operation of the Debtors' ongoing business and the administration of the Debtors' estates during the Chapter 11 Cases.  The Debtors' current workforce is comprised of a very lean 28 people (from a peak high of approximately 280). It cannot be understated that each Eligible Employee  is crucial to these efforts.  Payment of the Retention Plan payments permits the Debtors to avoid the likelihood that the Eligible Employees may pursue alternative employment opportunities, especially in light of the increased workload, administrative burdens, and general uncertainty imposed by the bankruptcy process.

15.     Furthermore, failure to make the Retention Plan payments increases the likelihood of additional attrition, harming the value of the Debtors' estates and undermining the success of the Chapter 11 Cases.  Further losses of key employees will create transition issues for the business. In fact, retaining the Eligible Employees will avoid the need for the Debtors to incur significant time and expense to hire and train replacement employees, which would, in turn, divert their attention and efforts from running their sale and plan processes.

[Remainder of page intentionally left blank.]

## **Conclusion**

16.     In light of the foregoing, for the reasons stated herein and in the Wages

Motion, the relief sought in the Wages Motion with respect to the Retention Plan is a sound

exercise of the Debtors' business judgment and will permit the Debtors to efficiently and

successfully administer the restructuring process and maximize value in the Debtors' chapter 11

cases.

Executed on July 26, 2023

/s/ David Dunn
_____
David Dunn
Principal
Province, LLC

**EXHIBIT A**

**Schedule of Retention Plan Participants**



| Eligible Employee | Title | Target End Date | Total Remaining Entitlement |
|---|---|---|---|