**EXHIBIT B**

IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT KANSAS CITY

| | |
|---|---|
| US REAL ESTATE EQUITY BUILDER LLC | |
| and | |
| 1 BIG RED LLC | |
| and | |
| SEAN TARPENNING | |
| and | |
| USREEB DAYTON, LLC | |
| and | Case No. 1916-CV31526 |
| 1 BIG BLUE LLC | Division: 8 |
| Plaintiffs | |
| v. | |
| ALOHA CAPITAL, LLC | |
| Serve: Harvard Business Services, Inc., 16192 Coastal Hwy., Lewes, Delaware 19958 | |
| and | |
| PS FUNDING, INC ISOA/ATIMA | |
| Serve: Incorporating Services, Ltd., 3500 S. Dupont Hwy., Dover, Delaware 19901 | |
| Defendants. | |

## VERIFIED PETITION

Plaintiffs US Real Estate Equity Builder LLC, ("USREEB") 1 Big Red LLC

("1BR"), Sean Tarpenning ("Tarpenning"), USREEB Dayton, LLC ("USREEB

Dayton"), and 1 Big Blue LLC ("1BB") (collectively "Plaintiffs" and/or the "Equity Parties") state:

1.      Made popular by HGTV shows such a "Flip or Flop", house flipping has spawned a real estate investor industry where many people buy houses, rehab those houses, and then sell them for a profit.

2.      The Equity Parties are one of these rehabbers.  The Equity Parties buy distressed single family and multi-family residential and commercial properties, rehab these properties, and then sell these properties.

3.      The Equity Parties require money to purchase and rehab the properties they sell.

4.      The Equity Parties attend seminars which have now become popular in the industry, and financers also attend these seminars, where they advertise the ability to provide capital to these new entrepreneurs.

5.      Defendant Aloha Capital, LLC ("Aloha") is one of these financers.

6.      Aloha is a self-described "hard money" lender that "provide[s] hard money loans throughout Missouri" and at least ten (10) other states.

7.      Defendant PS Funding, Inc. ("PeerStreet") also provides funding to these entrepreneurs.  PeerStreet also purchases loans held by hard-money lenders such as Aloha.

8.      PeerStreet is a self-described "group of cross-industry experts who quit [their] day jobs to transform real estate finance in a way that creates a better deal for everyone."

9.    PeerStreet and Aloha made representations to the Equity Parties regarding financing for the Equity Parties rehab projects.

10.    Before entering into agreements with PeerStreet and Aloha, the Equity Parties didn't realize that PeerStreet's and Aloha's business model preyed on small businesses such as the Equity Parties.

11.    PeerStreet and Aloha, in order to provide funding to purchase and rehab the properties, require deeds of trust and mortgages to secure the property being rehabbed.

12.    But PeerStreet and Aloha's promises of providing funding rings hollow. Once properties are purchased and mortgages recorded, PeerStreet and Aloha refuse to provide funds to rehab the properties, and then charge exorbitant fees not contemplated under the loan documents.

13.    And, when the properties are eventually ready to be sold, PeerStreet and Aloha make up additional fees and refuse to provide payoff amounts to satisfy the debt on the properties.

14.    In other words, PeerStreet and Aloha try to force these rehab entrepreneurs' hands and take properties through trustee's sales rather than receiving the amounts owed under the loan documents, because the properties often have substantial equity which far outweigh any debt owed.

### *Parties, Jurisdiction, and Venue*

15.    1BR is a Missouri limited liability company in good standing with its principal place of business at 120 S. Central Ave., Clayton, Missouri.

3

16.    USREEB is a Missouri limited liability company in good standing with its principal place of business at 440 E. 63rd St., Kansas City, Missouri.

17.    Sean Tarpenning is a Kansas resident.

18.    USREEB Dayton is a Delaware limited liability company in good standing with a principal place of business at 40 E 63rd St, Kansas City, Missouri 64110.

19.    1BB is a Missouri limited liability company. in good standing with its principal place of business at 120 S. Central Ave., Clayton, MO 63105.

20.    Aloha is a Delaware limited liability company which transacts business in Jackson County, Missouri and may be served at the above address.

21.    PeerStreet is a Delaware corporation which transacts business in Jackson County, Missouri and may be served at the above address.

22.    Venue is proper in this Court pursuant to R.S.Mo. 508.010 and 508.030, and jurisdiction is proper in this Court in that Defendants transact business in Jackson County, Missouri.

*The Equity Parties' Lending Relationship with Defendants*

23.    In November and December of 2018, 1BR, Builder and Tarpenning entered into certain promissory notes, deeds of trust, guaranties, and other agreements (collectively the "Loan Agreements") relating to four (4) real properties located in Jackson County, Missouri with addresses of:

- 7410 Sni-A-Bar Rd., Kansas City, Missouri

- 3 Glen Arbor Rd., Kansas City, Missouri

4

- 440 East 63rd St., Kansas City, Missouri

- 1205 W. 75th Terrace, Kansas City, Missouri (collectively the "Properties")

24.     PeerStreet is identified as the lender for the Loan Agreements relating to the 3 Glen Arbor Rd. property.

25.     Aloha is identified as the lender for the Loan Agreements for the remaining three (3) Properties.

26.     The Equity Parties paid $40 service fees per property financed by Aloha, even though the Loan Agreements make no mention of service fees.

27.     In addition to the Loan Agreements regarding the Properties, the Equity Parties have an ongoing relationship with PeerStreet and Aloha.  The Equity Parties have financed at least thirteen (13) properties with Aloha with loans totaling over $900,000, and at least fifteen (15) properties with PeerStreet with loans totaling over $6,000,000.

28.     The Equity Parties made interest payments separately to Aloha and PeerStreet related to the Properties.

29.     Payments made to PeerStreet were directed to be made through FCI Lender Services, Inc. ("FCI"), an entity whose exact relationship with PeerStreet has never been fully disclosed.

30.     Throughout 2019, the Equity Parties noticed that certain invoices for properties where Aloha was the lender contained PeerStreet's letterhead, which instructed all future payments to be made through FCI.

31.     The Equity Parties received no notification in writing that any of the Loan Agreements were assigned from Aloha to PeerStreet.

32.     The Equity Parties continued to receive monthly invoices from Aloha for service fees of $40 per property, with no contractual provisions in any loan documents requiring such fees.

33.     During this time, the Equity Parties and PeerStreet also had an ongoing relationship where PeerStreet often claimed undocumented claims for late fees, default interest, and other fees, but then agreed with the Equity Parties to, among other things, reduce the claimed late fees and/or default interest by fifty (50) percent all in an apparent attempt to extract as much money from the Equity Parties as possible before closings on properties were finalized.

## *Aloha Refuses to Refinance to Fund Draw Requests*

34.     Throughout 2019, Aloha and PeerStreet refused to provide the Equity Parties funding regarding certain rehab projects.

35.     The Equity Parties negotiated refinancing regarding these properties in February of 2019, and Aloha ordered an appraisal on the properties.

36.     One of these properties, located at 1519 Smithville, Dayton Ohio, was secured by a loan to Aloha for $408,000.

37.     But Aloha refused to refinance the property to allow for rehab funds.

38.     In July on 2019, PeerStreet ordered an appraisal on the same property, which was appraised at $1,080,000.

6

39.    Aloha and PeerStreet learned of the substantial equity in the property, refused to re-finance to allow for draw requests to fund the property's rehab, and have attempted to squeeze the substantial equity in the property away from the Equity Parties by fabricating unfounded late fees, default interest, and other fees, and threatening to foreclose.

40.    As such, the Equity Parties were required to fund the rehab themselves.

41.    The Equity Parties continuously expressed to PeerStreet that funding these rehab projects themselves led to cash crunches, and that the properties should be refinanced to allow for draw requests related to the rehab projects.

### *The Equity Parties are Charged Unsubstantiated Default Interest and Late Fees*

42.    From August through November of 2019, the Equity Parties in good faith attempted to refinance the Properties, but PeerStreet refused to reclassify, reduce, and/or waive certain claimed late fees and default interest, the propriety of which the Equity Parties requested clarification on but which was never received from PeerStreet.

43.    On August 13, 2019, PeerStreet alleged that certain default interest and other fees were due.

44.    On August 19, 2019, Tarpenning requested clarification as to the basis of the default interest and other fees PeerStreet alleged were due under the Loan Agreements.

45.   PeerStreet never provided a written accounting to the Equity Parties substantiating the basis for the default interest and late fees being charged.

*The Equity Parties Attempt to Pay Off All Loans But are Stonewalled by PeerStreet*

46.   Frustrated with PeerStreet's obfuscation, on September 5, 2019, the Equity Parties requested payoffs for all properties financed by PeerStreet.

47.   On September 12, 2019, PeerStreet did not provide a payoff, but instead asked what the "exit plan" was for certain loans.

48.   That same day, the Equity Parties' representative informed PeerStreet that the Equity Parties were "working on getting all of these [loans] off [PeerStreet's] books" but that the Equity Parties were "upset that lenders [including PeerStreet and Aloha] have been in communication with each other squeezing [Tarpenning] into this position."

49.   Upon information and belief, PeerStreet and Aloha had been in communication regarding the Equity Parties' financing arrangements, and refused to provide rehab funding in order to force the Equity Parties to fund the projects themselves, thereby increasing Defendants' equity position regarding the Properties if the Defendants attempted to foreclose.

50.   On September 16, 2019, PeerStreet only provided payoffs for four (4) different properties and did not provide payoffs for the remaining properties, including the Properties financed by the Loan Agreements.

51.   The four (4) payoff letters called for an unsubstantiated $25,000 in default interest and $7,000 in extension fees relating to the four properties.

*PeerStreet Declares Default on Aloha's Loans*

52.    On September 24, 2019, the Equity Parties received letters (the "Letters") from Sandberg Phoenix relating to the Properties, demanding payments for the "outstanding balance[s] due and owing on the Note[s]. . . ."

53.    On September 25, 2019, the Equity Parties attempted to refinance a loan held by PeerStreet, but PeerStreet required a term sheet from the take-out lender.

54.    Upon information and belief, PeerStreet only required term sheets to dissuade refinancing effort by the Equity Parties, in an attempt to force the Equity Parties to sell properties and pay late fees and default interest which Defendants had no right to charge.

55.    The Letters purport that Sandberg Phoenix represents PeerStreet, not Aloha

56.    Nevertheless, PeerStreet's lawyers were demanding payments on loans made by Aloha.

57.    Upon information or belief, Defendant PeerStreet claims it is the assignee in connection with the Loan Agreements between Aloha and the Equity Parties.

58.    That is, PeerStreet and Aloha, in order to induce the Equity Parties to take actions as more fully set out herein, either falsely represented or failed to disclose material information to the Equity Parties including without limitation, the following: (1) that Defendants PeerStreet and Aloha made false statements to the

Equity Parties regarding the Loan Agreements and the PeerStreet Agreement, when PeerStreet's and Aloha's true intent was to improve their collateral positions due to the substantial equity in the Properties;  (2) that PeerStreet and Aloha failed and refused to comply with the Loan Agreements and the PeerStreet Agreement; (3) that PeerStreet and Aloha failed to inform the Equity Parties as to the relationship between PeerStreet and Aloha regarding the Loan Agreements including whether any agreements were assigned from Aloha to PeerStreet.

59.    Upon information or belief, PeerStreet and Aloha are working in concert to charge fees not described in the Loan Agreements in order to maximize fees collected in the eventual payoffs related to the Properties.

60.    Aloha and PeerStreet have shared Plaintiffs' loan information with other individuals and third-parties without Plaintiffs' permission.

### COUNT I- Breach of Contract
**(1BR, USREEB and Tarpenning against PeerStreet and Aloha)**

61.    The Equity Parties incorporate the above allegations.

62.    The Equity Parties and Defendants PeerStreet and Aloha, entered into the Loan Agreements and the PeerStreet Agreement.

63.    The Equity Parties performed and are prepared to perform under the terms of the Loan Agreements and the PeerStreet Agreement.

64.    PeerStreet and Aloha have failed to perform under the terms of the Loan Agreements and the PeerStreet Agreement.

65.    The Equity Parties have been damaged by Defendants breach of the agreements.

10

WHEREFORE, the Equity Parties pray this Court for a judgment against PeerStreet and Aloha in an amount in excess of $75,000, the exact amount to be proved at trial; for prejudgment interest and post-judgment interest as provided by law; for the Equity Parties' costs and expenses incurred herein including attorneys fees; and for any and all other relief that this Court deems just and proper.

### COUNT II - Breach of the Duty of Good Faith and Fair Dealing
### (1BR, USREEB and Tarpenning against PeerStreet and Aloha)

66.    The Equity Parties incorporate the above allegations

67.    The Equity Parties entered into certain agreements with PeerStreet and Aloha as more fully set out herein.

68.    In connection with said agreements entered into by the Equity Parties and PeerStreet and Aloha, Defendants PeerStreet and Aloha had a duty to act in good faith and deal fairly in the performance and enforcement of all said agreements.

69.    Among other things, PeerStreet and Aloha engaged in the following actions: (a) that PeerStreet and Aloha made false statements to the Equity Parties regarding the Loan Agreements and the PeerStreet Agreement when PeerStreet's and Aloha's true intent was to improve their collateral positions; (b) that PeerStreet and Aloha failed and refused to comply with the Loan Agreement and the PeerStreet Agreement; (c) that PeerStreet and Aloha failed to inform the Equity Parties as to the relationship between PeerStreet and Aloha regarding the Loan Agreements including whether any agreements were assigned from Aloha to PeerStreet.

11

70.    PeerStreet and Aloha breached their duty of good faith and fair dealing by, among other things, engaging in the conduct described herein.

71.    As a direct result of PeerStreet's and Aloha's breach of the duty of good faith and fair dealing, the Equity Parties have been damaged.

72.    Defendants' conduct set forth above was willful, wanton, and outrageous and evidences an evil motive and/or reckless indifference to the Equity Parties' rights.   Accordingly, the Equity Parties request punitive damages in an amount which is fair and reasonable.

WHEREFORE, the Equity Parties respectfully requests that the Court enter judgment in favor of the Equity Parties and against PeerStreet and Aloha for such damages as are fair and reasonable in excess of $75,000, the exact amount to be proved at trial; for prejudgment and post-judgment interest as provided by law; for punitive damages in an amount that is fair and reasonable; for the Equity Parties' costs and expenses incurred herein; and for any and all other relief that this Court deems just and proper.

## COUNT III- Accounting
### (1BR, 1BB, USREEB and Tarpenning against PeerStreet and Aloha)

73.    The Equity Parties incorporate the above allegations.

74.    A dispute exists between the Equity Parties and PeerStreet and Aloha concerning the amount, if any, allegedly due from the Equity Parties to PeerStreet and Aloha.

12

75.    A dispute exists between the Equity Parties and PeerStreet and Aloha concerning whether the Equity Parties are in default under the Loan Agreements which PeerStreet seeks to foreclose.

76.    PeerStreet and Aloha possesses the records and other information necessary to make a determination as to how payments submitted by the Equity Parties to PeerStreet and Aloha were credited or otherwise applied by PeerStreet and Aloha.

77.    An accounting is necessary to determine (1) what amount, if any, is due from the Equity Parties to PeerStreet and/or Aloha, and (2) whether the Equity Parties are in default under the applicable deeds of trust and/or mortgages which PeerStreet seeks to foreclose prior to any foreclosure sale of any projects owned by the Equity Parties in which PeerStreet claims to have a valid, perfected security interest.

WHEREFORE, the Equity Parties respectfully request that this Court enter its order requiring an accounting by PeerStreet and Aloha of all accounts and or loans of the Equity Parties with PeerStreet and Aloha including, without limitation, all monies allegedly loaned by PeerStreet and Aloha, application of all monies received by PeerStreet and Aloha from the Equity Parties, interest budgets of the Equity Parties with PeerStreet and Aloha, and payments of principal and interest by the Equity Parties to PeerStreet and Aloha on all accounts or loans of the Equity Parties with PeerStreet and Aloha; and for such other and further relief as this court deems just and proper.

13

## COUNT IV - Quiet Title
### (1BR, USREEB and Tarpenning against PeerStreet)

78.    The Equity Parties incorporate the above allegations.

79.    The Equity Parties are the owners of the Properties.

80.    PeerStreet claims a right in the Properties located in this county by virtue of certain deed of trusts.

81.    A dispute exists as to the enforceability of the deed of trusts and other alleged security agreements which PeerStreet seeks to enforce against the Equity Parties.

82.    PeerStreet's claim to the Properties is adverse and prejudicial to the Equity Parties.

83.    The Equity Parties have been damaged by the actions of PeerStreet and the Equity Parties' damages should be set off against amounts adjudged due, if any, from the Equity Parties to PeerStreet under the various notes, deeds of trust, mortgages, and other agreements such that the deed of trust should be ordered released of record and title to the property described in the deed of trusts quieted to the Equity Parties.

WHEREFORE, the Equity Parties pray this Court for judgment in favor of the Equity Parties and against PeerStreet LLC releasing of record the deed of trusts claimed by PeerStreet of said the Equity Parties' property and quieting title in such property in favor of the Equity Parties; for the Equity Parties' costs and expenses incurred herein; and for any and all other relief that this Court deems just and proper.

14

### Count V - Negligent Misrepresentation
### (against PeerStreet and Aloha)

84.    The Equity Parties incorporate the above allegations.

85.    Defendants negligently supplied or failed to disclose the following false information to the Equity Parties, including without limitation the information set forth herein.

86.    Defendants had a financial interest in supplying and/or withholding the information.

87.    Defendants supplied the false information to influence the transactions for which the information was supplied; and Defendants knew the Equity Parties who received the information intended the information to influence the transactions for which the information was supplied.

88.    Defendants provided the information to the Equity Parties concerning the Defendants' financing of the transactions for which the information was supplied in the course of Defendants' business.

89.    Due to Defendants' failure to exercise reasonable care, the information supplied by Defendants to induce the Equity Parties to enter into transactions with Defendant was false.

90.    The negligently supplied information was a proximate cause of the Equity Parties' damage.

91.    The Equity Parties acted in reliance on the truth of the information supplied and was justified in relying on the information.

92.    As a result of the Equity Parties' reliance on the information provided by Defendants, the Equity Parties have been damaged.

93.    Defendants' conduct set forth above was willful, wanton, and outrageous and evidences an evil motive and/or reckless indifference to the Equity Parties' rights.  Accordingly, the Equity Parties request punitive damages in an amount which is fair and reasonable.

WHEREFORE, the Equity Parties respectfully requests that the Court enter judgment in favor of the Equity Parties and against PeerStreet and Aloha for such damages as are fair and reasonable in excess of $75,000, the exact amount to be proved at trial; for prejudgment and post-judgment interest as provided by law; for punitive damages in an amount that is fair and reasonable; for the Equity Parties' costs and expenses incurred herein; and for any and all other relief that this Court deems just and proper.

### Count VI - Fraudulent Misrepresentation
(against PeerStreet and Aloha)

94.    The Equity Parties incorporate the above allegations.

95.    Defendants knowingly supplied and/or failed to disclose the following information to the Equity Parties, including without limitation the information set forth herein.

96.    The information supplied and/or failed to be disclosed to the Equity Parties was false.

97.    Defendants had a financial interest in supplying and/or withholding the information, which was material to the Equity Parties.

98.   Defendants knew or had reason to know that the information supplied to and/or concealed from the Equity Parties was false.

99.   Defendants supplied the false information to influence the transactions for which the information was supplied; and Defendants knew the Equity Parties who received the information intended the information to influence the transactions for which the information was supplied.

100.   Defendants provided the information to the Equity Parties concerning the Defendants' financing of the transactions for which the information was supplied in the course of Defendants' business.

101.   Due to Defendants' failure to exercise reasonable care, the information supplied by Defendants to induce the Equity Parties to enter into transactions with Defendant was false.

102.   The Equity Parties had no knowledge regarding the falsity of the representations.

103.   The Equity Parties acted in reliance on and had a right to rely on the truth of the information supplied to the Equity Parties.

104.   The fraudulently supplied information was a proximate cause of the Equity Parties' damage.

105.   As a result of The Equity Parties' reliance on the information provided by Defendants, the Equity Parties have been damaged.

106.   Defendants' conduct set forth above was willful, wanton, and outrageous and evidences an evil motive and/or reckless indifference to the Equity

17

Parties' rights.  Accordingly, the Equity Parties request punitive damages in an amount which is fair and reasonable.

WHEREFORE, the Equity Parties respectfully requests that the Court enter judgment in favor of the Equity Parties and against PeerStreet and Aloha for such damages as are fair and reasonable in excess of $75,000, the exact amount to be proved at trial; for prejudgment and post-judgment interest as provided by law; for punitive damages in an amount that is fair and reasonable; for the Equity Parties' costs and expenses incurred herein; and for any and all other relief that this Court deems just and proper.

### Count VII - Tortious Interference with Contracts and Business Expectancy)
### (against PeerStreet and Aloha)

107.    The Equity Parties incorporate the above allegations.

108.  Contracts or business relationships existed between the Equity Parties and PeerStreet/Aloha.

109.  PeerStreet interfered with the Equity Parties' contracts and business relations with Aloha, and Aloha interfered with the Equity Parties' contracts and business relations with PeerStreet.

110.  Defendants had knowledge of the Equity Parties' contracts, business relationships, and expectancy of profiting from the projects.

111.  Defendants' actions were intentional, improperly interfered with the Equity Parties' business relationships, contracts, and expectancy of profiting from the projects and were without justification or excuse.

112.  The Equity Parties have been damaged by Defendants' actions.

113. Defendants' conduct set forth above was willful, wanton, and outrageous and evidences an evil motive and/or reckless indifference to the Equity Parties' rights. Accordingly, the Equity Parties request punitive damages in an amount which is fair and reasonable.

WHEREFORE, the Equity Parties respectfully request that the Court enter judgment in favor of the Equity Parties and against PeerStreet and Aloha for such damages as are fair and reasonable in excess of $75,000, the exact amount to be proved at trial; for prejudgment and post-judgment interest as provided by law; for punitive damages in an amount that is fair and reasonable; for the Equity Parties' costs and expenses incurred herein; and for any and all other relief that this Court deems just and proper.

## JURY DEMAND

The Equity Parties demand a trial by jury as to all issues in the above-entitled matter so trials.

19