**EXHIBIT A**

**Revised Master Loan Purchase and Interim Servicing Agreement**

<u>MORTGAGE LOAN PURCHASE AND INTERIM SERVICING AGREEMENT</u>

This Mortgage Loan Purchase and Interim Servicing Agreement (including all exhibits and supplements hereto, and all amendments hereof, this "Agreement") is dated and effective as of [DATE] (the "Effective Date"), between [BUYER], ("Buyer"), having an address at [ADDRESS], and PS Funding, Inc. ("Seller") having an address at c/o Province, LLC, 2360 Corporate Circle, Suite 340, Henderson, NV 89074.

<u>R E C I T A L S</u>

Seller desires to sell and transfer to Buyer, and Buyer desires to purchase from Seller, the mortgage loans identified on <u>Exhibit A</u> hereto, including all servicing rights relating thereto upon such terms as are set forth below.

In consideration of the promises and the mutual agreements and undertakings set forth herein, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

ARTICLE I

DEFINITIONS

Whenever used herein, the following words and phrases, unless the context otherwise requires, shall have the following meanings:

<u>Accrued Interest</u>:  With respect to each Mortgage Loan, accrued interest, due and payable in accordance with the terms of the respective Mortgage Note, owing to Seller on the unpaid principal balance of each Mortgage Loan at a rate equal to the related Mortgage Interest Rate of each such Mortgage Loan, from the date through which interest has last been paid through one (1) day prior to the Closing Date, up to a maximum of fifty-nine (59) days.  With respect to those Mortgage Loans that are sixty (60) or more days past due as of the Closing Date, no Accrued Interest shall be paid to Seller.

<u>Adjustable Rate Mortgage Loan</u>:  Any Mortgage Loan in which the related Mortgage Note contains a provision whereby the Mortgage Interest Rate is adjusted from time to time in accordance with the terms of such Mortgage Note.

<u>Assignment of Mortgage</u>:  An assignment of the Mortgage, notice of transfer or equivalent instrument in recordable form, sufficient under the laws of the jurisdiction wherein the related Mortgaged Property is located to reflect the sale of the Mortgage to Buyer.

<u>Bankruptcy Court Approval Date</u>:  The date the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") approves this Agreement.

Business Day:  Any day other than (i) a Saturday or Sunday, or (ii) a day on which banking and savings and loan institutions in the State of New York, are authorized or obligated by law or executive order to be closed.

Closing Date:  The date that is the first Business Day two (2) days after the Bankruptcy Court Approval Date, or such other date as may be mutually agreed upon by Seller and Buyer.

Cut-off Date:  [DATE], or such other date as may be mutually agreed upon by Seller and Buyer.

Due Date:  The day of the month on which a Monthly Payment is due on a Mortgage Loan, exclusive of any days of grace.

Escrow Account:  An account or accounts maintained by Seller, or Seller's predecessor in interest, maintained for the deposit of Escrow Payments received in respect of one or more Mortgage Loans.

Escrow Balances:  Escrow Payment balances remaining after advances by Seller for taxes and insurance to the extent documented under a written statement provided to Buyer.

Escrow Payments:  The amounts held in Escrow Accounts, which may include amounts being held for payment of taxes, assessments, water rates, mortgage insurance premiums, fire and hazard insurance premiums and other payments required to be escrowed by the Mortgagor pursuant to any Mortgage Loan.

Funding Schedule:  The schedule of Mortgage Loans set forth on Exhibit C hereto, which schedule shall include the following information with respect to each Mortgage Loan, as of the Cut-Off Date: (i) the Mortgage Loan identifying number; (ii) the Stated Principal Balance; (iii) the Mortgage Interest Rate; (iv) the Next Due Date; (v)  the amount of  the Accrued Interest due; (vi) the Purchase Price Percentage; (vii) the Purchase Price; (viii) the total funding amount (which is the sum of Accrued Interest due, if any, and the Purchase Price; (ix) price reductions, if any; and (x) the net funding amount (which is the total funding amount less any price reductions).

Interim Servicing Fee:  With respect to each Mortgage Loan, a non-refundable, non-pro-ratable servicing fee in the amount of $_____ payable in advance on the Closing Date.[1]

Interim Servicing Period:  The period commencing with the Closing Date and ending with the Servicing Transfer Date.

Loan Data:  Any and all information, retained by the Seller, whether in a printed format or an electronic format, pertaining to the Mortgage Loans and to the servicing of the Mortgage Loans, which information shall include, without limiting the foregoing, current information relating to the status of the Mortgage Loans, historical information relating past

---

[1] Please see fee schedule contained in Piper Sandler virtual data room.

activities regarding payments, balances, escrow items and such relating to the Mortgage Loans, and information relating to any and all payees, taxing authorities, loan balances, rates and payment amounts as to each individual Mortgage Loan.

<u>Monthly Payment</u>:  The scheduled monthly payment of principal and interest on a Mortgage Loan.

<u>Mortgage</u>:  The mortgage, deed of trust or other such instrument securing a Mortgage Note, which creates a first lien on an unsubordinated estate in fee simple in real property securing the Mortgage Note.

<u>Mortgage File</u>:  The file which contains the Mortgage Loan Documents.

<u>Mortgage Interest Rate</u>:  The annual rate at which interest accrues on any Mortgage Loan, as adjusted from time to time in accordance with the provisions of the related Mortgage Note, if applicable.

<u>Mortgage Loan</u>:  A mortgage loan identified in the Mortgage Loan Schedule that is sold pursuant to this Agreement, which Mortgage Loan includes, without limitation, the Mortgage File, and, after the Cut-off Date, the Monthly Payments, Principal Prepayments and all other rights, benefits, proceeds and obligations arising from or in connection with such Mortgage Loan.

<u>Mortgage Loan Documents</u>:  The documents pertaining to any Mortgage Loan, as set forth in <u>Exhibit B</u> hereto, but only to the extent such documents are in the Seller's possession.

<u>Mortgage Loan Schedule</u>:  The schedule of Mortgage Loans set forth on <u>Exhibit A</u> hereto, which schedule shall include the following information with respect to each Mortgage Loan: (i) the Mortgage Loan identifying number; (ii) the Mortgagor name; (iii) the address of the Mortgaged Property, including the city, state and zip code where the Mortgaged Property is located; (iv) the original loan amount and first due date; (v) the Stated Principal Balance; (vi) the Mortgage Interest Rate and Monthly Payment (P&I field) as of the Cut-off Date; (vii) MBA status; and (viii) type of mortgage insurance coverage, if any.

<u>Mortgage Note</u>:  The note or other evidence of the indebtedness of a Mortgagor secured by a Mortgage.

<u>Mortgaged Property</u>:  The real property, consisting of a fee simple interest in a single parcel of real property improved by (i) a detached one-family dwelling, (ii) a detached two- to four-family dwelling, (iii) a one-family dwelling unit in a condominium project, or (iv) a one-family dwelling in a planned unit development (none of which is a mobile home, manufactured housing, used for commercial purposes, or a cooperative), which secures repayment of the debt evidenced by the related Mortgage Note.

<u>Mortgagor</u>:  The obligor on a Mortgage Note.

Next Due Date:  The date for which the Mortgagor contractually owes the next Monthly Payment.

Principal Prepayment:  Any payment or other recovery of principal on a Mortgage Loan which is received in advance of its scheduled Due Date, including any prepayment penalty or premium thereon, which is not accompanied by an amount of interest representing scheduled interest due on any date or dates in any month or months subsequent to the month of prepayment.

Purchase Price:  The purchase price to be paid by Buyer for a Mortgage Loan (including the Servicing Rights relating thereto) which shall equal the product of (a) the Purchase Price Percentage, times (b) the Stated Principal Balance of such Mortgage Loan.

Purchase Price Percentage:  With respect to a Mortgage Loan, the purchase price percentage set forth on the Funding Schedule.

Purchase Proceeds:  An amount equal to the sum of the Purchase Price plus the Accrued Interest.

Servicing Advances:   With respect to each Mortgage Loan, the customary, reasonable and necessary documented "out of pocket" costs and expenses incurred by Seller in the performance of its servicing obligations (including, but not limited to, the cost of (i) the preservation, restoration and protection of the Mortgaged Property, (ii) any enforcement or judicial proceedings, including foreclosures) for which Seller has not been reimbursed.

Servicing Rights:   With respect to each Mortgage Loan, any and all of the following: (a) all rights to service the Mortgage Loans; (b) any payments or monies payable or received for servicing the Mortgage Loans; (c) any late fees, assumption fees, penalties or similar payments with respect to the Mortgage Loans; (d) all agreements or documents creating, defining or evidencing any such Servicing Rights and all rights of Seller thereunder, including, but not limited to, any clean-up calls and termination options; (e) Escrow Payments or other similar payments with respect to the Mortgage Loans and any amounts actually collected with respect thereto; (f) all accounts and other rights to payments related to any of the property described in this paragraph; (g) possession and use of any and all Mortgage Files pertaining to the Mortgage Loans or pertaining to the past, present, or prospective servicing of the Mortgage Loans; and (h) all rights, powers and privileges incident to any of the foregoing.

Servicing Transfer Date: The date on which the responsibility for the servicing of the Mortgage Loans transfers from Seller to Buyer, which date shall be the Closing Date, or such other date as the parties may agree, provided that such date shall not be greater than thirty (30) days following the Closing Date.

Stated Principal Balance:  The unpaid principal balance of the Mortgage Loans as of the Cut-off Date.

ARTICLE II

SALE OF THE MORTGAGE LOANS

2.1    Agreement of Sale.  Seller does hereby agree to sell, convey, transfer and assign to Buyer on the Closing Date all right, title and interest in and to the Mortgage Loans, including the related Servicing Rights, Mortgage Loan Documents, Mortgage Files and Escrow Accounts, all in accordance with the terms and conditions set forth herein.

2.2    Payment of the Purchase Proceeds.  On the Closing Date, Buyer shall pay to Seller, by wire transfer in immediately available funds to the account designated by Seller, an amount equal to the Purchase Proceeds.  Upon completion of the wire transfer to Seller's designated account pursuant to the preceding sentence, Buyer shall own the Mortgage Loans and the Servicing Rights, free and clear of any lien or encumbrance whatsoever.

2.3    Entitlement to Payments on the Mortgage Loans.  Buyer shall be entitled to all collections and recoveries of principal and interest received on account of or applied to any Mortgagor's account after the Cut-off Date and all other amounts payable to Buyer in accordance with Section 5.3(f) below.  All payments and remittances on the Mortgage Loans received by Seller after the Cut-off Date and payable to Buyer shall be paid promptly to Buyer in accordance with the terms set forth in Articles IV and V hereof, as applicable.

2.4    Delivery of Mortgage Loan Documents.  At least three (3) Business Days prior to the Closing Date, Seller shall deliver to a bonded third party custodian (the "Custodian"), pursuant to the terms of a bailment agreement/letter mutually agreed upon by Buyer and Seller, the Mortgage Loan Documents with respect to each Mortgage Loan.  Seller shall cause Custodian to deliver to Buyer a custodian's certification pursuant to which the Custodian certifies to Buyer that (i) with respect to each Mortgage Loan, it has in its possession originals of each of the Mortgage Loan Documents, (ii) all of the Mortgage Loan Documents appear on their face to be genuine originals or copies, as applicable, and (iii) upon Buyer's wiring of the Purchase Proceeds to Seller, the Custodian shall hold the Mortgage Loan Documents with respect to each Mortgage Loan in trust for Buyer and will, subsequent thereto, act only in a manner consistent with Buyer's instructions with respect thereto.

2.5    Conditions to Closing.  Buyer's obligations hereunder are subject to the fulfillment of the following conditions precedent.  In the event that any of the conditions set forth below are not satisfied, Buyer shall not have any obligation to purchase any of the affected Mortgage Loans or to pay the Purchase Proceeds for the affected Mortgage Loans as contemplated hereunder and shall instead be entitled, in its sole discretion, to terminate this Agreement in its entirety.

(a)    Each of the representations and warranties made by Seller hereunder shall be true and correct as of the Closing Date and no event shall have occurred which, with notice or the passage of time, would constitute a default under this Agreement.

(b)     Seller shall have delivered to Buyer or the Custodian, as applicable, all of the Mortgage Loan Documents in accordance with <u>Section 2.4</u> hereof, with respect to each Mortgage Loan.

(c)     Each of the terms and conditions set forth herein that are required to be satisfied on or before the Closing Date shall have been satisfied unless waived, in writing, by the prejudiced party.

(d)     Seller shall have delivered to Buyer on or before the Closing Date the following items or documents:

(i)  a fully executed Agreement;

(ii) the Mortgage Loan Schedule;

(iii) an executed Funding Schedule, in the form of <u>Exhibit C</u> hereto; and

(iv) such other documents related to the purchase and sale of the Mortgage Loans and the Servicing Rights, as Buyer may reasonably request.

## ARTICLE III

## <u>REPRESENTATIONS AND WARRANTIES</u>

3.1     <u>Representations and Warranties Respecting Seller</u>.    Seller represents, warrants and covenants to Buyer that, as of the Closing Date:

(a)     <u>Organization and Standing; Due Authority</u>.    Seller is duly organized, validly existing and in good standing under the laws of the State of its organization with full power and, subject to the occurrence of the Bankruptcy Court Approval Date, authority to execute, deliver, and perform this Agreement and to enter into and consummate the transactions contemplated by this Agreement.   Seller is duly qualified and in good standing in all jurisdictions where it is required to be qualified, except where the failure to be qualified is not material.   Seller has taken all action required to authorize its execution, delivery and performance of this Agreement;

(b)     <u>No Conflict</u>.   The execution and delivery of this Agreement by Seller and the performance of its obligations hereunder will not (i) conflict with or violate (A) the organizational documents of Seller or (B) any provision of any law or regulation to which Seller is subject or (ii) conflict with or result in a breach of any of the terms, conditions, or provisions of any agreement or instrument to which Seller is a party or by which it is bound or any order or decree applicable to Seller or result in the creation or imposition of any lien on any of its assets or property.   Seller has obtained all consents, approvals, authorizations or orders of any court or

governmental agency or body, if any, required for the execution, delivery and performance by Seller of this Agreement;

(c)    No Pending Litigation.  There is no action, suit or proceeding pending or, to the best of Seller's knowledge, threatened against Seller in any court or by or before any other governmental agency or instrumentality which would prohibit its entering into this Agreement or performing any of its obligations under or pursuant to this Agreement; and

(d)    Enforceability.  Subject to the occurrence of the Bankruptcy Court Approval Date, this Agreement constitutes the valid, binding and legal obligation of Seller, enforceable against Seller in accordance with the terms hereof, except as such enforcement may be limited by bankruptcy, insolvency, reorganization, moratorium and other similar laws affecting the enforcement of creditors' rights in general and by general equity principles (regardless of whether such enforcement is considered in a proceeding in equity or at law).

3.2    Representations and Warranties Regarding Individual Mortgage Loans.  With respect to each Mortgage Loan, Seller represents and warrants to Buyer that, as of the Closing Date:

(a)    Mortgage Loan Schedule. The information set forth in the Mortgage Loan Schedule is true and correct in all material respects;

(b)    Validity of Mortgage.  The Mortgage is a valid, existing and enforceable first lien on the Mortgaged Property, including all improvements on the Mortgaged Property, if any, subject to (i) the lien of current real property taxes and assessments not yet due and payable, (ii) covenants, conditions and restrictions, rights of way, easements and other matters of the public record as of the date of recording acceptable to mortgage lending institutions generally, (iii) zoning and other land use restrictions and ordinances, and (iv) other matters to which like properties are commonly subject that do not materially interfere with the benefits of the security intended to be provided by the Mortgage or the use, enjoyment, value or marketability of the related Mortgaged Property.  Seller has full right to sell and assign the Mortgage to Buyer.

(c)    No Release of Mortgage.  The Mortgage has not been satisfied, canceled, subordinated, or rescinded, in whole or in part, and the Mortgaged Property has not been released from the lien of the Mortgage, in whole or in part, nor has any instrument been executed that would effect any such release, cancellation, subordination or rescission;

(d)    Enforceability of Mortgage Documents.  The Mortgage Note and the related Mortgage, and any modification agreement thereof, are genuine and each is the legal, valid and binding obligation of the maker thereof, enforceable in accordance with its terms in all material respects, except as such enforcement may be limited by bankruptcy, insolvency, reorganization or other similar laws affecting the

enforcement of creditors' rights generally and except that the equitable remedy of specific performance and other equitable remedies are subject to the discretion of the courts;

(e)     <u>Sole Owner</u>.  Immediately prior to the sale of the Mortgage Loan to the Buyer, the Seller is the sole owner and holder of each Mortgage Loan and the related servicing rights, and the Seller has good and marketable title thereto and the full right to transfer and sell each Mortgage Loan and the related servicing rights to the Purchaser;

(f)     <u>No Modifications</u>.     With respect to each Mortgage Loan, the Seller has provided prior written notice to Buyer of any ongoing loan modification, loss mitigation, or foreclosure alternative process initiated by the Seller (or its servicer) or by any prior owner (or its servicer), including, without limitation, the offer of a modification by the Seller (or it servicer) or by any prior owner (or its servicer) to, or a request by, the Mortgagor, to modify the related Mortgage Loan; and

(g)     <u>Litigation</u>.  To the best of Seller's knowledge, none of the Mortgage Loans are subject to any actual threatened litigation, including, without limitation, any foreclosure or bankruptcy proceedings, except as set forth on the Mortgage Loan Schedule, Mortgage Loan File or any other offering documents relating to the sales transaction contemplated herein.

3.3     <u>Remedies for Breach of Representations and Warranties by Seller</u>.

(a)     <u>Notice of Breach</u>.  The representations and warranties set forth in <u>Sections 3.1</u> and <u>3.2</u> shall survive the sale of the Mortgage Loans to Buyer and shall inure to the benefit of Buyer for a period of forty-five (45) days from the Closing Date (the "<u>Sunset Period</u>"), notwithstanding any restrictive or qualified endorsement on any Mortgage Note or Assignment of Mortgage or the examination or failure to examine any Mortgage File.  Upon discovery by the Buyer of a breach of any of the foregoing representations and warranties that materially and adversely affects the value of one or more of the Mortgage Loans or Buyer's interests therein, the Buyer shall give prompt written notice to the Seller.

(b)     <u>Cure</u>.  Seller shall have a period of sixty (60) days from its receipt of a notice of a breach from the Buyer within which to correct or cure such breach; provided that such notice of breach must be sent by the Buyer during the Sunset Period.

3.4     <u>Representations, Warranties, and Covenants of Buyer</u>.

Buyer represents and warrants, and covenants, to Seller, as of the Closing Date:

(a)     Buyer is duly organized, validly existing and in good standing under the laws of the State of its organization with full power and authority to execute, deliver and perform this Agreement and to enter into and consummate the transactions contemplated by this Agreement.  Buyer is duly qualified and in good standing in

30439169.3

all jurisdictions where it is required to be qualified, except where the failure to be qualified is not material.  Buyer has taken all action required to authorize its execution, delivery and performance of this Agreement;

(b)     The execution and delivery of this Agreement by Buyer and the performance of its obligations hereunder will not (i) conflict with or violate (A) the organizational documents of Buyer, or (B) any provision of any law or regulation to which Buyer is subject, or (ii) conflict with or result in a breach of any of the terms, conditions or provisions of any agreement or instrument to which Buyer is a party or by which it is bound or any order or decree applicable to Buyer or result in the creation or imposition of any lien on any of its assets or property.  Buyer has obtained all consents, approvals, authorizations or orders of any court or governmental agency or body, if any, required for the execution, delivery and performance by Buyer of this Agreement;

(c)     There is no action, suit or proceeding pending or, to the best of Buyer's knowledge, threatened against Buyer in any court or by or before any other governmental agency or instrumentality which would prohibit its entering into this Agreement or performing any of its obligations under or pursuant to this Agreement;

(d)     This Agreement constitutes the valid, binding and legal obligation of Buyer, enforceable against Buyer in accordance with the terms hereof, except as such enforcement may be limited by bankruptcy, insolvency, reorganization, moratorium and other similar laws affecting the enforcement of creditors' rights in general and by general equity principles (regardless of whether such enforcement is considered in a proceeding in equity or at law);

(e)     Buyer is a sophisticated investor that has knowledge and experience in financial and business matters that enable it to evaluate the merits and risks of the transaction contemplated by this Agreement and its bid and decision to purchase the Mortgage Loans are based upon its own independent expert evaluations of the Mortgage Files and other materials made available by Seller and deemed relevant by Buyer and its agents.  Buyer has not relied in entering into this Agreement upon any oral or written information from Seller, or any of its respective employees, affiliates, agents or representatives, other than the representations and warranties of Seller contained herein.  Buyer has had an opportunity to perform an examination of the Mortgage Loans and to become aware of the physical condition of the Mortgaged Properties.  Buyer further acknowledges that no employee or representative of Seller has been authorized to make, and that Buyer has not relied upon, any statements or representations other than those specifically contained in this Agreement.    WITHOUT  LIMITING  THE  FOREGOING,  BUYER ACKNOWLEDGES THAT, EXCEPT AS SPECIFICALLY SET FORTH IN THIS AGREEMENT,  SELLER  HAS  MADE  NO  REPRESENTATIONS  OR WARRANTIES AS TO THE MORTGAGE LOANS (INCLUDING WITHOUT LIMITATION, THE VALUE, MARKETABILITY, CONDITION OR FUTURE PERFORMANCE THEREOF, THE EXISTENCE OF LEASES OR THE STATUS OF ANY TENANCIES OR OCCUPANCIES WITH RESPECT THERETO, THE

APPLICABILITY OF ANY RENT CONTROL OR RENT STABILIZATION LAWS ON THE COMPLIANCE OR LACK OF COMPLIANCE THEREOF WITH ANY LAWS (INCLUDING WITHOUT LIMITATION, ENVIRONMENTAL, LAND USE OR OCCUPANCY LAWS));

ADDITIONALLY, BUYER ACKNOWLEDGES THAT SELLER MAKES NO WARRANTY OR REPRESENTATION, EXPRESS OR IMPLIED, OR ARISING BY OPERATION OF LAW, INCLUDING, BUT NOT LIMITED TO, ANY WARRANTY OF CONDITION, HABITABILITY, MERCHANTABILITY, OR FITNESS FOR A PARTICULAR PURPOSE OF THE MORTGAGED PROPERTIES OR ANY PORTION THEREOF, OR WITH RESPECT TO THE ENVIRONMENTAL OR PHYSICAL CONDITION OF SUCH MORTGAGED PROPERTIES. SELLER HEREBY SPECIFICALLY DISCLAIMS ANY WARRANTY, GUARANTY OR REPRESENTATION, ORAL OR WRITTEN, PAST, PRESENT OR FUTURE, OF, AS, TO, OR CONCERNING THE MANNER OF CONSTRUCTION OR CONDITION OR STATE OF REPAIR OR LACK OF REPAIR OF ANY IMPROVEMENTS LOCATED THEREON;

(f)     Buyer acknowledges and confirms that Buyer has had the opportunity to conduct such due diligence review and analysis of the Mortgage Loans as Buyer deemed necessary, proper or appropriate in order to make an informed decision with respect to the purchase and acquisition of the Mortgage Loans;

(g)     Buyer acknowledges that the Mortgage Loans (including the loan documents) may have limited or no liquidity and Buyer has the financial wherewithal to own the Mortgage Loans and the loan documents for an indefinite period of time and to bear the economic risk of an outright purchase of the Mortgage Loans and the loan documents and a total loss of the Purchase Price for the Mortgage Loans; and

(h)     Buyer acknowledges and agrees that Seller, except with respect to the representations, warranties, and covenants specifically set forth in Sections 3.1 and 3.2 herein, has not and does not represent, warrant or covenant the nature, accuracy, completeness, enforceability or validity of any of loan documents, Mortgage Laon Documents, Mortgage Loans, Mortgage Files, Mortgage Schedule, Mortgage Note, Servicing Rights, Loan Data, or any information or documents made available to Buyer or its counsel, accountants or advisors in connection with the Mortgage Loans and, all documentation, information, analysis and/or correspondence, if any, which is or may be sold, transferred, assigned and conveyed to Buyer with respect to any and all Mortgage Loans is sold, transferred, assigned and conveyed to Buyer on an "AS IS, WHERE IS" basis, WITH ALL FAULTS as of the Effective Date.

ARTICLE IV

INTERIM SERVICING OF THE MORTGAGE LOANS

4.1     <u>General</u>.  The Mortgage Loans will be purchased by Buyer and sold by Seller on a servicing-released basis and the purchase of the Mortgage Loans by Buyer shall, for all purposes, include all Servicing Rights relating thereto.  From the Closing Date to the Servicing Transfer Date, Seller represents and warrants that it shall interim service the Mortgage Loans in exchange for the Interim Servicing Fee in accordance with the terms of this Agreement and all applicable state or federal laws or regulations and, to the extent not inconsistent herewith, in accordance with the normal and usual standards of practice of prudent mortgage lenders in the respective states where the Mortgaged Properties are located, and in no event shall the Seller service the Mortgage Loans to a standard of care which is less than that which the Seller applies to the servicing of loans held for its own account. Seller may retain the services of a vetted and trusted sub-servicer to service the Mortgage Loans during the Interim Servicing Period.

4.2     <u>Payoff and Claim Reports</u>.  As to each Mortgage Loan for which the Seller receives funds sufficient to pay the Mortgage Loan in full, the Seller shall remit said funds to Buyer, by wire transfer, within five (5) Business Days of its receipt of said funds and shall concurrently provide a report, by facsimile, which includes information sufficient to uniquely identify the Mortgage Loan to which such funds are related, the name of the related Mortgagor, the due date of the related Mortgage Loan, the amount of such funds allocable to principal, and the amount of such funds allocable to interest, and a designation of the nature of the funds as "Payoff Proceeds".

4.3     <u>Remittances</u>.  Within five (5) Business Days following the Servicing Transfer Date, Seller shall remit to Buyer all collections, not previously remitted to Buyer, including collections received by the Seller through and including the Servicing Transfer Date.

4.4     <u>Indemnification</u>.  To the fullest extent permitted by law, Buyer shall indemnify, defend and hold harmless Seller and its affiliates or any vendor performing interim servicing functions with respect to the Mortgage Loans on behalf of Seller, and their respective officers, directors, members, managers, partners, equityholders, representatives, agents and successors and assigns (collectively, the "<u>Indemnified Parties</u>") from and against any and all claims, actions, damages, expenses (including reasonable attorneys' fees), losses or liabilities incurred by or asserted against the Indemnified Parties that result from, arise out of, relate to, or are caused by, any damage or destruction to property and any and all fees, costs or penalties incurred by the Indemnified Parties, to the extent that such claims, actions, damages, expenses, losses, liabilities, fees, costs or penalties are caused by or arise out of the interim servicing of the Mortgage Loans provided by any of the Indemnified Parties, including, without limitation, any interim servicing or any other servicing obligations related to the Mortgage Loans that occur after the Closing Date or the Servicing Transfer Date; provided that Buyer shall not be required to indemnify the Indemnified Parties for any loss or claim to the extent such loss or claim is due to the negligence or willful misconduct of such Indemnified Parties.

ARTICLE V

<u>TRANSFER OF SERVICING RIGHTS</u>

5.1     Transfer of Servicing.  The Seller agrees to act reasonably, in good faith and in accordance with all applicable laws and regulations and to do all things necessary to effect the transfer of the Servicing Rights to Buyer, or Buyer's designated agent, on the Servicing Transfer Date.  Seller shall comply with all reasonable instructions provided by Buyer relating to the transfer of the Servicing Rights.

5.2     To effect the transfer of the Servicing Rights to the Buyer on the Servicing Transfer Date, Seller shall:

(a)     Notice to Hazard Insurers.  (i) inform, by written notice, all hazard insurance companies and their agents of the transfer and request a change in the loss payee mortgage endorsement clause to Buyer's name, and (ii) provide Buyer with a copy of the notification letter and an officer's certification that all hazard insurance companies have been notified by an identical letter; and

(b)     Notice to Mortgagors.  (i) no later than fifteen (15) days after the Closing Date, inform in writing all Mortgagors of the change in servicer from Seller to Buyer or Buyer's designated servicer, all in accordance with applicable law and (ii) provide Buyer with a copy of one notification letter and an officer's written certification that all Mortgagors have been notified by an identical letter.

5.3     Obligations of Seller after the Servicing Transfer Date.  Without limiting the generality of Section 5.1, Seller shall take, or cause to be taken, the following actions with respect to the Mortgage Loans within five (5) Business Days following the Servicing Transfer Date (or within such time as may otherwise be specified below):

(a)     Loan Data.  Seller shall furnish to Buyer all available records requested by Buyer reflecting the status of payments, balances and other pertinent information with respect to the Mortgage Loans as of the Servicing Transfer Date, with such records to include printed reports maintained on the Mortgage Loans and shall include hard copy trial balance reports as specifically requested by Buyer;

(b)     Mortgage File.  Seller shall deliver all other documents in its possession with respect to each Mortgage Loan;

(c)     Other Documentation.  Seller shall provide Buyer any and all further documents in its possession reasonably required by Buyer in order to fully transfer to Buyer possession of all tangible evidence of the Servicing Rights and escrow, impound and trust funds transferred hereunder;

(d)     Transfer of Escrow Funds and Other Proceeds.  Within five (5) Business Days following the Servicing Transfer Date, Seller shall transfer to Buyer, by wire transfer to the account designated by Buyer, an amount equal to the sum of (i) all collections received after the Cut-off Date not previously remitted pursuant to Section 4.4 above, plus (ii) either (a) the aggregate net amount of the Escrow

Balances for Mortgage Loans less than thirty (30) days past due as of the Closing Date or (b) the positive Escrow Balances only for Mortgage Loans that are thirty (30) or more days past due as of the Closing Date (both as determined on a loan level basis for each Mortgage Loan), plus (iii) all unapplied interest on Escrow Balances accrued through the Servicing Transfer Date, and (iv) any other amounts held by Seller with respect to the Mortgage Loans, including without limitation, any loss draft funds, suspense balances, or unapplied funds.  Buyer shall not be required to reimburse Seller or its servicing agent, if applicable, for (i) any negative Escrow Balances for any Mortgage Loan that is thirty (30) or more days past due as of the Closing Date, or (ii) any documented Servicing Advances on any Mortgage Loan incurred by Seller on or prior to the Cut-Off Date. Buyer and Seller agree to reconcile expeditiously any discrepancies in amounts transferred hereby or funded at closing and to transfer funds promptly as appropriate, as a result of the reconciliation of any such discrepancies; and

(e) <u>Mortgage Payments Received After Servicing Transfer Date</u>.  Seller shall cause its servicer to forward to Buyer within two (2) Business Days of its receipt, any payment received by it after the Servicing Transfer Date with respect to any of the Mortgage Loans, whether such payment is in the form of principal, interest, taxes, insurance, loss drafts, insurance refunds, as applicable, etc., in the original form received, unless such payment has been received in cash or by Seller's lock box facility, in which case Seller shall forward such payment in a form acceptable to Buyer.  Seller shall notify Buyer of the particulars of the payment, which notification shall set forth sufficient information to permit timely and appropriate processing of the payment by Buyer.

## ARTICLE VI

## <u>MISCELLANEOUS</u>

6.1 <u>Notices</u>.  All demands, notices and communications required to be provided hereunder shall be in writing and shall be deemed to have been duly given if mailed, by registered or certified mail, postage prepaid, and return receipt requested, or, if by other means, when received by the other party at the address as follows:

if to Buyer:

_____
_____
_____
_____
Email:_____
Telephone:_____

if to Seller:

PS Funding, Inc.
c/o Province, LLC
2360 Corporate Circle, Suite 340
Henderson, NV 89074
Attn:  David Dunn, Chief Restructuring Officer

With a copy (that will not constitute notice) to:

Young Conaway Stargatt & Taylor, LLP
1000 N. King Street
Wilmington, DE 19810
Attn:  Joseph Barry, Esquire

or such other address as may hereafter be furnished to the other party by like notice.  Any such demand, notice or communication hereunder shall be deemed to have been received on the date delivered to or received at the premises of the addressee (as evidenced, in the case of registered or certified mail, by the date noted on the return receipt).

6.2    <u>Intention of the Parties</u>.  Pursuant to this Agreement, Buyer is purchasing, and Seller is selling the Mortgage Loans and not a debt instrument of Seller or any other security.  Accordingly, Seller and Buyer shall each treat the transaction for federal income tax purposes as a sale by Seller, and a purchase by Buyer, of the Mortgage Loans and the Servicing Rights.

6.3    <u>Exhibits</u>.  The exhibits to this Agreement are hereby incorporated and made a part hereof and are an integral part of this Agreement.

6.4    <u>General Interpretive Principles</u>.  For purposes of this Agreement, except as otherwise expressly provided or unless the context otherwise requires:

(a)    the terms defined in this Agreement have the meanings assigned to them in this Agreement and include the plural as well as the singular, and the use of any gender herein shall be deemed to include the other gender;

(b)    accounting terms not otherwise defined herein have the meanings assigned to them in accordance with generally accepted accounting principles;

(c)    references herein to "Sections," "Subsections," "Paragraphs," and other Subdivisions without reference to a document are to designated Sections, Subsections, Paragraphs and other subdivisions of this Agreement;

(d)    reference to a Subsection without further reference to a Section is a reference to such Subsection as contained in the same Section in which the reference appears, and this rule shall also apply to Paragraphs and other subdivisions;

(e)     the words "herein," "hereof," "hereunder" and other words of similar import refer to this Agreement as a whole and not to any particular provision; and

(f)     the term "include" or "including" shall mean without limitation by reason of enumeration.

6.5     <u>Reproduction of Documents</u>.  This Agreement and all documents relating thereto, including, without limitation, (a) consents, waivers and modifications that may hereafter be executed, (b) documents received by any party at the closing, and (c) financial statements, certificates and other information previously or hereafter furnished, may be reproduced by any photographic, photostatic, microfilm, micro-card, miniature photographic or other similar process.  The parties agree that any such reproduction shall be admissible in evidence as the original itself in any judicial or administrative proceeding, whether or not the original is in existence and whether or not such reproduction was made by a party in the regular course of business, and that any enlargement, facsimile or further reproduction of such reproduction shall likewise be admissible in evidence.

6.6     <u>Further Assurances</u>.  The parties further agree that upon the request of the other party hereto, they shall do such further acts and deeds, and shall execute, acknowledge, deliver and record such other documents and instruments, as may be necessary from time to time to evidence, effectuate, confirm, or carry out the intent and purpose of this Agreement.

6.7     <u>Execution of Agreement</u>.  This Agreement may be executed simultaneously in any number of counterparts.  Each counterpart shall be deemed to be an original, and all such counterparts shall constitute one and the same instrument.  This Agreement shall be deemed binding when executed by both Buyer and Seller.  E-mail, .pdf, DocuSign, or other forms of electronic signatures shall be deemed valid and binding to the same extent as the original.

6.8     <u>Successors and Assigns</u>.  This Agreement shall bind and inure to the benefit of and be enforceable by Seller and Buyer and the respective permitted successors and assigns of Seller and the respective permitted successors and assigns of Buyer; provided that the Seller shall not be required to execute any reconstitution agreements in connection with any sale, transfer or participation of the Mortgage Loans.  This Agreement shall not be assigned, pledged or hypothecated by either party without the consent of the other party.

6.9     <u>Severability Clause</u>.  Any part, provision, representation or warranty of this Agreement that is prohibited or that is held to be void or unenforceable shall be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof.  Any part, provision, representation or warranty of this Agreement that is prohibited or unenforceable or is held to be void or unenforceable in any relevant jurisdiction shall be ineffective, as to such jurisdiction, to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction as to any Mortgage Loan shall not invalidate or render unenforceable such provision in any other jurisdiction.  To the extent permitted by

applicable law, the parties hereto waive any provision of law that prohibits or renders void or unenforceable any provision hereof.

6.10    Costs.  Buyer shall pay any commissions due its salesmen, the legal fees and expenses of its attorneys and custodian, and all other costs and expenses incurred in connection with the transfer and delivery of the Mortgage Loans, including fees for title policy endorsements and continuations, any deboarding fees payable to any servicer or sub-servicer, and assignment recording fees.  Buyer has not used the services of any broker and Buyer has not taken any action that would be a basis for a broker claiming a commission or similar fee in connection with the transaction described in and contemplated by this Agreement. Seller shall pay the legal fees and expenses of its attorneys. No later than thirty (30) days following the Closing Date, Seller shall prepare and provide Buyer with an Assignment of Mortgage for each Mortgage Loan, and Buyer shall be responsible for recording each such Assignment of Mortgage following its receipt thereof.

6.11    Attorneys' Fees.  If any claim, legal action or any arbitration or other proceeding is brought for the enforcement of this Agreement or because of a dispute, breach, default or misrepresentation in connection with any of the provisions of this Agreement, the successful or prevailing party shall be entitled to recover reasonable attorneys' fees and other costs incurred in that claim, action or proceeding, in addition to any other relief to which such party may be entitled.

6.12    GOVERNING LAW; CHOICE OF FORUM; WAIVER OF JURY TRIAL.  EXCEPT TO THE EXTENT PREEMPTED BY FEDERAL LAW, THIS AGREEMENT AND ANY CLAIM, CONTROVERSY OR DISPUTE ARISING UNDER OR RELATED TO THIS AGREEMENT, THE RELATIONSHIP OF THE PARTIES TO THIS AGREEMENT, AND/OR THE INTERPRETATION AND ENFORCEMENT OF THE RIGHTS AND DUTIES OF THE PARTIES TO THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE INTERNAL LAWS AND DECISIONS OF THE STATE OF NEW YORK, WITHOUT REGARD TO THE CHOICE OF LAW RULES THEREOF.  THE PARTIES HERETO INTEND THAT THE PROVISIONS OF SECTIONS 5-1401 AND 5-1402 OF THE NEW YORK GENERAL OBLIGATIONS LAW SHALL APPLY TO THIS AGREEMENT.

EACH PARTY HERETO KNOWINGLY, INTENTIONALLY AND IRREVOCABLY WAIVES ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY SUIT, ACTION OR PROCEEDING ARISING OUT OF IN ANY WAY RELATED TO THIS AGREEMENT AND THE TRANSACTIONS CONTEMPLATED HEREBY.

With respect to any claim or action arising hereunder, the parties (a) irrevocably submit to the exclusive jurisdiction of the United States Bankruptcy Court for the District of Delaware and appellate courts thereof (provided, however, that if at any time such courts shall not have jurisdiction, then to the nonexclusive jurisdiction of the courts of the State of Delaware and the United States District Court for the District of Delaware, and appellate courts from any thereof), and (b) irrevocably waive any objection which such party may have at any time to the laying of venue of any suit, action or proceeding arising out of or

30439169.3

relating to this Agreement brought in any such court, and irrevocably waive any claim that any such suit action or proceeding brought in any such court has been brought in an inconvenient forum.

6.13  <u>Entire Agreement</u>.  This Agreement constitutes the entire understanding between the parties hereto and supersedes any and all prior or contemporaneous oral or written communications with respect to the subject matter hereof, all of which communications are merged herein.  It is expressly understood and agreed that no employee, agent or other representative of Seller or Buyer has any authority to bind such party with regard to any statement, representation, warranty or other expression unless said statement, representation, warranty or other expression is specifically included within the express terms of this Agreement.  This Agreement shall not be modified, amended or in any way altered except by an instrument in writing signed by both the parties hereto.

6.14  <u>Construction</u>.  The parties agree that each party and its attorneys have reviewed and revised this Agreement and that the normal rule of construction to the effect that any ambiguities are resolved against the drafting party shall not be employed in the interpretation of this Agreement.

6.15  <u>Time of the Essence</u>.  Time is of the essence in the performance of each parties' respective obligations hereunder.

[SIGNATURE PAGE FOLLOWS]

30439169.3

IN WITNESS WHEREOF, Seller and Buyer have caused their names to be signed hereto by their respective officers thereunto duly authorized as of the Effective Date first above written.

**[BUYER],** as Purchaser

By:


By: _____
   Name:
   Title:



**PS FUNDING, INC.,**
**a Delaware corporation,** as Seller


By: _____
   Name: David Dunn
   Title: Chief Restructuring Officer

30439169.3

EXHIBIT A

MORTGAGE LOAN SCHEDULE

(attached)

EXHIBIT B

MORTGAGE LOAN DOCUMENTS

1.     The original Mortgage Note bearing all intervening endorsements, endorsed "Pay to the order of_____, without recourse." and signed in the name of Seller by an authorized officer.

2.     The original Mortgage or a copy with evidence of recording thereon.

3.     The originals or copies of all intervening assignments of mortgage with evidence of recording thereon.

4.     The original or a copy of the mortgagee title insurance policy.

5.     As to any Mortgage Loan which has been the subject of an assumption, the original assumption agreement with evidence of recording thereon.

6.     As to any Mortgage Loan Document, described on this Exhibit B, which is unavailable for delivery on the Closing Date because such document has been delivered to an Attorney for the purpose of handling foreclosure or bankruptcy matters relating to the servicing of the related Mortgage Loan and pursuant to a valid trust receipt or bailee letter therefor, then as to each such Mortgage Loan Document a true and correct copy of the trust receipt together with a complete and true and correct copy of the Mortgage Loan Document(s) subject thereto, with recording evidence indicated thereon as applicable.

EXHIBIT C

FUNDING SCHEDULE

(attached)