Sean Thomas Quinn
10 Ridge Road
Succasunna, New Jersey 07876



FILED

2023 AUG -7 AM 10: 15

CLERK
US BANKRUPTCY COURT
DISTRICT OF DELAWARE

United States Bankruptcy Court
Chief Judge Laurie Selber Silverstein
District Of Delaware
824 Market Street North, 3rd Floor
Wilmington, DE 19801

Re: Peer Street, et. al., Case No. 23-10815

Motion To Appoint A Secured Creditor Committee Or, In The Alternative, Appoint Small Retail Investor Representatives To The Unsecured Creditor Committee

August 1, 2023

Dear Judge Silverstein:

Pursuant to Section 1102(a)(2) of the Bankruptcy Code, "the court may order the appointment of additional committees of creditors...if necessary to assure adequate representation of creditors...." 11 U.S.C. §1102(a)(2).

I respectfully request request that the Court appoint a Committee for small secured investors, for accounts under $100,000, on the ground that the existing Unsecured Creditors Committee cannot adequately represent a class of small retail Secured Note Holders, also known as Mortgage Dependent Note ("MPDN") Holders.

The Court's claim records indicate at least 400 MPDN Holders in this class so far.

1. The MPDN Holders Are Secured

The Debtors pledged the payment stream and REO proceeds from specific mortgages as collateral for the MPDNs.

According to represetations, still public on its platform, Peerstreet, as the word "peer" connotes, built its investor base from the ground up, with the lodestar concept lying in many small, often beginner, real estate investors chipping in to secure a fractional interests in specific mortgage payment streams or REO sale proceeds ("Segregated Funds.")

The Debtors identify on their site the Segregated Funds to each MPDN holder, right down to the name of the mortgagors, their credit rating and the address of the underlying property. Each

note record is replete with a property specific Fannie Mae Uniform Appraiser's Report, the purpose of the loan (*e.g.*, fix & flip or bridge), and its Loan To Value.

Debtors tied the Notes to specific mortgage payments and REO proceeds from identified property, in the text of the Notes: "payments of principal and interest on this Note shall be payable ... **only** to the extent of the amount of such payments received by the Company ..." (emphasis added).

Debtors took pains to repeat the above-quoted point three times in every Note, specifically stating not only that the MPDN holders that had an interest in the property specific Segregated Funds, but that cash stream represented the only source of repayment.

Debtors also reported to each MPDN holder at least once per month, on a property by property basis, on whether the underlying mortgages had performed, proceeded in various stages of foreclosure, or had become backed by REO. Debtors would not have gone into this level of detail had the Note holders not had a security interest in the Segregated Funds.

That the parties in their documents honed in on property specific and segregated income streams means they must have intended the Segregated Funds to serve as collateral for the MPDNs.

Debtors put a coda on this point by stating: "Investments in loans are held in a bankruptcy-remote entity that is **separate from** our primary corporate entity. In the unlikely event PeerStreet no longer remains in business, a third-party "special member" will step in to manage pending loan investments and ensure that investors continue to receive interest and principal payments." (emphasis added).

Merriam Webster's dictionary defines "security interest" as: "the rights that a creditor has in the personal property of a debtor that secures an obligation...." Specifically identified and segregated Funds constitute "personal property." Indeed, the entire Mortgage Backed Security industry, for which the United
States by statute maintains a secondary market, depends on that concept.

Because the MPDN Notes are secured, the Unsecured Creditors Committee cannot represent the interests of the MPDN holders. The interests of Secured and Unsecured Creditors conflict in that Secured Creditors have preference to the extent of the Segregated Funds.

2. Additional Reasons Exist To Have A Seperate Committee For MPDN Holders

The Code's preset is to select from the top 20 creditors, but the Peerstreet structure calls for an accommodation.

The filings in the Court record so far indicate that the small investor class rely on the Note income stream for living expenses. Excluding a representative of small investors in this situation

would be tantamount to having no representative of small depositors on a creditor committee to a bank insolvency.

In addition, the small MPDN Holder class needs to have considered the potential solution of simply selling the fee rights for servicing the notes, the Servicer Solution. The Creditor Committee has not staked this position out for consideration, now over a month into this proceeding.

That the small MDPN holders receive representation is particularly appropriate since the Special Member vacated the field *ab initio*, without an utterance on these points.

In light of the foregoing, a separate secured MPDN Committee is needed to adequately represent the largest creditor class. This would not include Pocket or Portfolio which were not tied to specifically identified properties.

In the alternative, I request three small investor Trustees be appointed to the existing Creditor Committee, one of which can be *ex officio* to keep the total number on that Committee as an odd number.

Respectfully,

Sean Quinn

Copy via PDF email to:

United States Trustee
Debtors Counsel
Unsecured Creditor Counsel
Magnetar Counsel