**EXHIBIT A**

**Proposed Final Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Peer Street, Inc., *et al.*,[1] | Case No. 23-10815 (LSS) |
| Debtors. | (Jointly Administered) |
| | **Re: Docket Nos. 11 & 41** |

**FINAL ORDER (A) AUTHORIZING THE PREPETITION BORROWERS' USE OF CASH COLLATERAL; (B) GRANTING ADEQUATE PROTECTION TO THE PREPETITION SECURED PARTIES; AND (C) GRANTING RELATED RELIEF**

Upon consideration of the motion (the "**Motion**") of the above-captioned debtors and debtors-in-possession Peer Street, Inc., PS Funding, Inc. and PeerStreet Licensing, Inc. (collectively, the "**Prepetition Borrowers**," and together with the other above-captioned debtors and debtors-in-possession, the "**Debtors**")[2] in the above-referenced chapter 11 cases (the "**Chapter 11 Cases**"), for entry of an interim order (the "**Interim Order**") and a final order (this "**Final Order**"), pursuant to sections 105, 361, 362, 363, 506(c), and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (as amended, the "**Bankruptcy Code**"), Rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "**Bankruptcy Rules**"), and Rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), seeking, *inter alia*:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their respective federal tax identification numbers, are:  Peer Street, Inc. (8584); PS Funding, Inc. (3268); PeerStreet Licensing, Inc. (9435); Peer Street Opportunity Fund GP, LLC (8491); Peer Street Funding LLC (9485); PSF REO LLC (1013); PS Options LLC (8584); PS Warehouse, LLC (5663); PS Warehouse II, LLC (9252); Peer Street Opportunity Investors II, LP (1586); PS Portfolio-ST1, LLC (1868); PSF Ohio, LLC (9485); PSF TX 1, LLC (9485); PSF TX 2, LLC (2415); PSF TX 4 LLC (9485).  The Debtors' service address is c/o Province, LLC 2360 Corporate Circle, Suite 340, Henderson, NV 89074, Attn:  David Dunn, Chief Restructuring Officer.

[2] The use of Cash Collateral pursuant to this Interim Order is limited to Debtors Peer Street, Inc., PS Funding, Inc. and PeerStreet Licensing, Inc.

a.  authorization for Prepetition Borrowers, pursuant to sections 105, 361, 362, 363, and 507 of the Bankruptcy Code to use cash collateral, as such term is defined in section 363(a) of the Bankruptcy Code ("**Cash Collateral**"), and all other Prepetition Collateral (as defined herein), in accordance with the terms of this Final Order and the Budget (as defined herein), as provided herein;

b.  to, subject to the Carve-Out (as defined herein) and any Permitted Prior Liens (as defined herein), provide Adequate Protection (as defined herein) of the liens and security interests (such liens and security interests, the "**Prepetition Secured Liens**") of the Prepetition Lenders (as defined below) under that certain Credit Agreement, dated as of October 12, 2021 (and as the same may be further amended, restated, amended and restated, supplemented or otherwise modified from time to time, the "**Prepetition Credit Agreement**," and together with all other related documents, guarantees, and agreements, including, without limitation, security agreements, mortgages, pledge agreements, assignments, financing statements, and other agreements, documents, instruments or certificates executed in connection with the Prepetition Credit Agreement, including, but not limited to, those certain Promissory Notes dated October 12, 2021 and that certain Pledge and Security Agreement dated October 12, 2021, collectively, the "**Prepetition Financing Documents**"), by and among the Prepetition Borrowers, Magnetar Structuring Credit Fund, L.P., Magnetar Longhorn Fund, LP, Purpose Alternative Credit Fund – F LLC, Purpose Alternative Credit Fund – T LLC and Magnetar Lake Credit Fund, LLC (such financial institutions in such capacities, the "**Prepetition Lenders**"), and Magnetar Financial LLC, as agent (in such capacity, the "**Agent**," and together with the Prepetition Lenders, the "**Prepetition Secured Parties**"), on the terms as more fully set forth in this Final Order;

c.  that this Court hold a final hearing (the "**Final Hearing**"), if necessary, to consider entry of this Final Order granting the relief requested in the Motion on a final basis; and

d.  waiver of any applicable stay with respect to the effectiveness and enforceability of this Interim Order or the Final Order (including a waiver pursuant to Bankruptcy Rule 6004(h)).

and the Interim Hearing having been held by this Court on June 28, 2023; this Court having entered the Interim Order on June 28, 2023 [Docket No. 41]; and pursuant to Bankruptcy Rule 4001 and Local Rule 4001-2, due and sufficient notice of the Motion and the relief sought at the Final Hearing having been given under the particular circumstances by the Debtors; this Court having

considered the Motion, the Interim Order, and all pleadings related thereto, including the record made by the Debtors at the Interim Hearing and Final Hearing; and all objections, if any, to the relief requested in the Motion on a final basis having been withdrawn, resolved, or overruled by this Court; and after due deliberation and consideration, and good and sufficient cause appearing therefor:

**THIS COURT HEREBY FINDS AS FOLLOWS:**

A.  On June 26, 2023 (the "**Petition Date**"), each Debtor filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are continuing to operate their respective businesses and manage their respective properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

B.  On July 10, 2023, the Office of the United States Trustee for Region III (the "**U.S. Trustee**") appointed an official committee of unsecured creditors ("**Committee**"), as provided for under section 1102 of the Bankruptcy Code.

C.  In requesting the use of Cash Collateral, and in exchange for and as a material inducement to the consent of the Prepetition Secured Parties to the use of their Cash Collateral, subject to Paragraph 9 below, the Prepetition Borrowers, for themselves, their estates, and all representatives of such estates, acknowledge, admit, stipulate, and agree that:

(1)    *Prepetition Secured Obligations*.  As of the Petition Date, the Prepetition Borrowers were indebted and liable, to the Prepetition Secured Parties under the Prepetition Financing Documents, for (a) an aggregate amount, including secured PIK interest at a rate of 6%, of $27,239,166.74 and (b) accrued and unpaid interest, fees (including, without limitation, Agency Fees (as defined herein)), and costs, expenses (including any attorneys' and financial advisors' fees), charges, indemnities, and all other obligations incurred or accrued with

respect to the foregoing pursuant to, and in accordance with, the Prepetition Financing Documents (collectively, the "**Prepetition Secured Obligations**.")

      (2)   *Liens and Collateral*.  Each Prepetition Borrower granted to the Agent, for the benefit of the Prepetition Secured Parties, to secure the Prepetition Secured Obligations, Prepetition Secured Liens on the Collateral (as defined in the Prepetition Credit Agreement), including assets of the Prepetition Borrowers as more fully described in the Prepetition Financing Documents, including all of the Prepetition Borrowers' right, title, and interest in the Collateral (such collateral, collectively, the "**Prepetition Collateral**"), and, as of the Petition Date, such Prepetition Secured Liens were senior in priority over any and all other liens on the Prepetition Collateral, subject only to liens senior by operation of law or otherwise permitted by the Prepetition Financing Documents (solely to the extent any such permitted liens were valid, properly perfected, non-avoidable, and senior in priority to the Prepetition Secured Liens as of the Petition Date, or valid, non-avoidable, senior priority liens in existence as of the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code, collectively, the "**Permitted Prior Liens**").  For the avoidance of doubt, any and all of the Prepetition Borrowers' cash, whether existing as of the Petition Date or thereafter, wherever located, constitutes Cash Collateral of the Prepetition Secured Parties within the meaning of section 363(a) of the Bankruptcy Code (including, without limitation, cash or cash equivalents generated by the sale or other disposition of Prepetition Collateral or on deposit or maintained by the Prepetition Borrowers in any account or accounts over which the Prepetition Secured Parties have control, and all income, proceeds, products, rents, or profits of any Prepetition Collateral).

      (3)   *Validity of Prepetition Secured Liens and Prepetition Secured Obligations*.  The Prepetition Secured Liens are (a) valid, binding, perfected, duly recorded, and

enforceable liens on, and security interests in, the Prepetition Collateral, and (b) not subject to, pursuant to the Bankruptcy Code or other applicable law (foreign or domestic), avoidance, disallowance, reduction, recharacterization, recovery, subordination (whether equitable, contractual, or otherwise), attachment, set-off, offset, recoupment, counterclaim, defense, "claim" (as defined in the Bankruptcy Code), impairment, or any other challenge of any kind by any person or entity.

(4)     *Adequate Protection for the Prepetition Secured Parties*.    The Prepetition Secured Parties are entitled to receive adequate protection pursuant to sections 361, 362, and 363 of the Bankruptcy Code for any diminution in the value, from and after the Petition Date, of their interests in the Prepetition Collateral (including the Cash Collateral) to the fullest extent permitted under the Bankruptcy Code (each such diminution value, a "**Diminution in Value**").

D. The Prepetition Borrowers have an immediate and critical need to use Cash Collateral to, among other things, pay the costs and expenses associated with administering the Chapter 11 Cases of the Prepetition Borrowers, continue the orderly operation of their business, maximize and preserve their going concern value, make payroll and satisfy other working capital and general corporate purposes, in each case, in accordance with the Budget.  Without access to the continued use of Cash Collateral to the extent authorized pursuant to this Final Order, the Prepetition Borrowers and their estates would suffer immediate and irreparable harm.  The Prepetition Borrowers do not have sufficient available sources of working capital and financing to operate their businesses or maintain their properties in the ordinary course of business without the authorized use of Cash Collateral.  The Prepetition Borrowers require the continued use of Cash Collateral under the terms of this Final Order to satisfy their postpetition liquidity needs.

E.   The Prepetition Secured Parties have consented to the Prepetition Borrowers' use of Cash Collateral solely on the terms and conditions set forth in this Final Order.  Accordingly, after considering all of their practical alternatives, the Prepetition Borrowers have concluded, in an exercise of their sound business judgment, that the consensual use of Cash Collateral represents the best source of funding currently available to the Prepetition Borrowers.

F.   Furthermore, the Prepetition Secured Parties agree that the Adequate Protection granted to the Prepetition Secured Parties in this Final Order is reasonable and calculated to protect the interests of the Prepetition Secured Parties.

G.   Good cause has been shown for entry of this Final Order pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2) and Local Rule 4001-2(b).  In particular, the authorization granted herein for the Prepetition Borrowers to continue using the Prepetition Collateral, including Cash Collateral, is necessary to avoid immediate and irreparable harm to the Debtors and their estates.  Entry of this Final Order is in the best interest of the Debtors, their estates, and their creditors.  The terms of the Prepetition Borrowers' continued use of the Prepetition Collateral (including Cash Collateral), the terms of Adequate Protection to be granted to the Prepetition Secured Parties hereunder, and the Cash Collateral arrangements described herein pursuant to this Final Order are fair and reasonable under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration for the Prepetition Secured Parties' consent thereto.

H.   The Prepetition Borrowers and the Prepetition Secured Parties have negotiated the terms and conditions of the Prepetition Borrowers' continued use of the Prepetition Collateral (including Cash Collateral) as contemplated by this Final Order in good faith and at arm's length, and the Prepetition Secured Parties' consent to the Prepetition Borrowers' use of Cash Collateral

shall be deemed to have been made in "good faith" within the meaning of section 364(e) of the Bankruptcy Code.

I.    Based on the foregoing, and upon the record made before this Court at the Interim Hearing and Final Hearing, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**[3]

1.    <u>Jurisdiction and Venue</u>. Consideration of the Motion constitutes a "core-proceeding" as defined in 28 U.S.C. § 157(b)(2). This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334. Venue for the Chapter 11 Cases and the proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2.    <u>Notice</u>. As evidenced by the Affidavit of Service appearing at Docket No. 56, on June 28, 2023, the Debtors provided notice of the Motion, entry of the Interim Order, and of the Final Hearing by electronic mail, facsimile, hand delivery, or overnight delivery to the following parties and/or to their counsel as indicated below: (a) the U.S. Trustee; (b) the Debtors' thirty (30) largest unsecured creditors on a consolidated basis; (c) counsel to the Agent; (d) all other known parties with liens of record on assets of the Debtors as of the Petition Date; (e) the local office for the Internal Revenue Service; and (f) any party having filed requests for notice in the Chapter 11 Cases (collectively, the "**Notice Parties**"). Given the nature of the relief sought in the Motion, the form, scope, and timing of the foregoing notice was due and adequate under the circumstances and complies with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable law, and no further notice relating to the Final Hearing, the Motion, or

---

[3]    Pursuant to Bankruptcy Rule 7052, findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact.

30192987.13

entry of this Final Order is necessary or required.

        3.     <u>The Budget</u>.

        (a)     The use of proceeds of the Prepetition Collateral (including Cash Collateral), is subject to a 13-week operating budget for the Prepetition Borrowers setting forth the projected financial operations of the Debtors, substantially in the form of the initial budget annexed hereto as <u>Exhibit A</u> (the "**Initial Budget**," and as may be amended and extended from time to time as set forth herein, the "**Budget**") subject to the following permitted variances (collectively, the "**Permitted Variances**"):  unless waived in writing by the Agent (i) an unfavorable variance of no more than 20% with respect to cumulative cash receipts on a rolling four (4)-week basis, tested weekly based upon the prior Budget, provided that, in the event any cash receipts budgeted to be received in a cumulative period are not actually received during such period, such cash receipts shall be deemed, for purposes of testing, to have been received during such period if received within one (1)-calendar week after the end of such period, and (ii) an unfavorable variance of no more than 20% with respect to cumulative cash disbursements (other than restructuring professional fees and payments to the U.S. Trustee set forth in the Budget), tested weekly based upon the prior Budget, provided that, in any four (4)-week period that cumulative cash disbursements (other than restructuring professional fees and payments to the U.S. Trustee set forth in the Budget) are less than the budgeted amount for such period, the amount by which cumulative cash disbursements (other than restructuring professional fees and payments to the U.S. Trustee set forth in the Budget) are less may be carried forward and added to the subsequent period.

        (b)     The Prepetition Borrowers shall provide the Prepetition Secured Parties with an updated budget not less than every four (4)-calendar weeks (the "**Updated**

**Budget**").  As soon as practicable, and in any event within three (3) business days of receiving such Updated Budget, the Agent shall notify the Prepetition Borrowers in writing whether or not such Updated Budget is objectionable.  If the Agent does not object to such Updated Budget in writing within such time, such Updated Budget shall be the Budget.  If, within such time the Agent objects to such Updated Budget, the Budget that is then in effect shall remain in place.

(c)    The Prepetition Borrowers will provide the Prepetition Secured Parties with a variance report no more than one (1) calendar week after the entry of this Final Order, and will provide a subsequent variance report every Friday thereafter (each such report, the "**Variance Report**").  The Prepetition Borrowers may, in their discretion, prepare the Variance Report on a consolidated basis across all of the Debtors' bank accounts; *provided, however*, that upon the request from the Prepetition Secured Parties, the Debtors shall provide detail to the Prepetition Secured Parties showing the variance attributable solely to the Prepetition Borrowers.

(d)    Because the Debtors that are not Prepetition Borrowers do not have the banking capability to pay third party payees, the Prepetition Borrowers shall be, and hereby are, authorized to utilize Cash Collateral to satisfy the ordinary operating expenses and administrative claims of the Debtors that are not Prepetition Borrowers in the ordinary course of business, *provided, however*, that any such payments shall only occur once per week on a single day and upon such disbursements being made, the Prepetition Borrowers shall be immediately reimbursed for such amounts by an intercompany transfer from the applicable Debtor that is not a Prepetition Borrower to a bank account held by the Prepetition Borrowers.

4.    Use of Prepetition Collateral (including Cash Collateral).  Immediately upon entry of this Final Order, the Prepetition Borrowers are authorized to use Cash Collateral to fund working capital requirements and operating and administrative expenses of the Prepetition

Borrowers, including the fees and expenses of the Retained Professionals (as defined herein), during the Chapter 11 Cases of the Prepetition Borrowers. The Prepetition Borrowers are further authorized to use the Prepetition Collateral during the period from the Petition Date through and including the Termination Date (as defined herein) in accordance with the terms and conditions of this Final Order.

5. <u>Amendments</u>. Each of the Prepetition Borrowers is expressly authorized and empowered to enter into amendments, supplements, extensions, or other modifications from time to time in any manner as to which Prepetition Borrowers and the Prepetition Secured Parties mutually agree in writing without further order of this Court; *provided*, that notice of any material modification or amendment shall be provided by the Prepetition Borrowers to the U.S. Trustee and counsel to the Committee, which parties may object to such modification or amendment, in writing, within five (5) business days from the date of the transmittal of such notice (which, to the extent such contact information for such parties is known to the Prepetition Borrowers, shall be transmitted by fax or e-mail, and, if not known, by overnight mail); *provided, further*, that if such objection is timely provided, then such modification or amendment shall be permitted only pursuant to an order of this Court, the entry of which may be sought on an expedited basis.

6. <u>Carve-Out</u>.

(a) <u>Generally</u>. The Prepetition Secured Liens, the Adequate Protection Liens, and the Section 507(b) Claims (as defined herein) of the Prepetition Secured Parties, shall be subject to the payment in full, without duplication, of the following fees and expenses (the amounts set forth below, together with the limitations set forth therein, as well as any funds in the Professional Fee Reserve (as defined below), collectively, the "**Carve-Out**") from, at the

Prepetition Borrowers' discretion, the Cash Collateral or proceeds resulting from liquidation of Prepetition Collateral or Postpetition Collateral:

(i)       the fee and expense claims of the respective retained professionals of the Prepetition Borrowers and the Committee, as to matters pertinent to the Prepetition Borrowers, that have been approved by this Court at any time during the Chapter 11 Cases pursuant to sections 330 and 331 of the Bankruptcy Code including any interim approval as set forth in any procedures approved by this Court relating to the interim approval of fees and expenses of the Retained Professionals (this Court approved professionals of the Prepetition Borrowers and the Committee are collectively referred to as the "**Retained Professionals**"), the reasonable expenses of members of the Committee (the "**Committee Member Expenses**," which shall not include legal fees and expenses of Committee members) which were incurred in connection with matters pertinent to the Prepetition Borrowers (A) on and after the Petition Date and before the Carve-Out Trigger Date (as defined herein), provided that the Carve-Out shall be reduced dollar-for-dollar by any payments of fees and expenses to the applicable Retained Professional, and (B) on and after the Carve-Out Trigger Date in an aggregate amount not exceeding $200,000.00 for all Retained Professionals, to the extent allowed at any time, whether by final order, interim order, procedural order, or otherwise.  On the last business day of each week, the Prepetition Borrowers shall fund a professional fee reserve (the "**Professional Fee Reserve**") in an amount equal to the professional fees for the Retained Professionals as set forth in the Budget for the week then ended that relates solely to the Prepetition Borrowers.  All funds in the Professional Fee Reserve shall be used first to pay the Carve-Out (whether such fees are allowed on an interim or final basis) for allowed fees and expenses of the Retained Professionals, and all Retained Professionals shall have all professional fees and expenses paid from the

Professional Fee Reserve prior to seeking payment from any other Cash Collateral. If, after payment in full of the Carve-Out for allowed fees and expenses of the Retained Professionals, the Professional Fee Reserve has not been reduced to zero, all remaining funds shall be returned to the Agent on behalf of the Prepetition Secured Parties;[4]

(ii)    the unpaid fees payable to the U.S. Trustee and Clerk of the Bankruptcy Court pursuant to section 1930 of Title 28 of the United States Code plus statutory interest, if any, imposed under 31 U.S.C. § 3717 that relate to the Prepetition Borrowers. There is no limitation on the obligations of the Prepetition Borrowers and their estates with respect to unpaid fees payable to the U.S. Trustee and Clerk of the Bankruptcy Court pursuant to section 1930 of Title 28 of the United States Code.

(b)    Carve-Out Trigger Date. As used herein, the term "**Carve-Out Trigger Date**" means the date on which the Prepetition Secured Parties provide written notice to the Prepetition Borrowers, the U.S. Trustee, and counsel to the Committee, that the Carve-Out is invoked, which notice may be delivered only on or after the expiration of the EOD Notice Period (as defined herein) under this Final Order or upon the Termination Date.

7.    Waiver of Right to Surcharge. In light of (a) the consent of the Prepetition Secured Parties to the current payment of administrative expenses of the Prepetition Borrowers' estates in accordance with the Budget, (b) the agreement of the Prepetition Secured Parties to permit the Prepetition Secured Liens, the Adequate Protection Liens, and Section 507(b) Claims to be subordinated to the Carve-Out to the extent related to the Prepetition Borrowers'

---

[4] For the avoidance of doubt, the use of the Prepetition Secured Parties' Cash Collateral to fund and pay Retained Professionals shall be limited solely to the fees and expenses of such Retained Professionals that relate directly to the Prepetition Borrowers and no other debtors in these Chapter 11 Cases.

proportionate share of the Carve-Out, and (c) the agreement of the Prepetition Secured Parties to permit the use of Cash Collateral for payments made in accordance with the Budget as it related to the Prepetition Borrowers only, the Prepetition Secured Parties are entitled to a waiver of (i) the provisions of section 506(c) of the Bankruptcy Code and (ii) any "equities of the case" claims or other claims under sections 105(a) or 552(b) of the Bankruptcy Code.  No costs or expenses of administration or other charge, lien, assessment, or claim incurred at any time (including, without limitation, any expenses set forth in the Budget) by any Prepetition Borrower or any other person or entity shall be imposed or charged against any or all of the Postpetition Collateral, the Prepetition Collateral, and the Prepetition Secured Parties or their claims or recoveries under the Bankruptcy Code, including sections 506(c) or 552(b) thereof, otherwise, and the Prepetition Borrowers, on behalf of their estates, waive any such rights.

8.      <u>Automatic Perfection</u>.

(a)      The Adequate Protection Liens granted pursuant to this Final Order to the Prepetition Secured Parties shall be valid, enforceable, and perfected by operation of law upon entry of this Final Order by this Court without any further action by any party.  The Prepetition Secured Parties in respect of the Adequate Protection Liens shall not be required to enter into or to obtain any control agreements, landlord waivers (unless required by law or contract), mortgagee waivers, bailee waivers, or warehouseman waivers or to give, file, or record any UCC-1 financing statements, mortgages, deeds of trust, leasehold mortgages, notices to account debtors or other third parties, notices of lien or similar instruments in any jurisdiction (including filings with the United States Patent and Trademark Office, the United States Copyright Office, or any similar agency in respect of trademarks, copyrights, trade names, or patents with respect to intellectual property) (collectively, the "**Perfection Documents**"), or obtain consents

from any licensor or similarly situated party in interest, or take any other action to validate, record, or perfect the Adequate Protection Liens granted under this Final Order and approved hereby, all of which are automatically and immediately perfected by the entry of this Final Order.  If the Prepetition Secured Parties, in their reasonable discretion, choose to obtain, enter into, give, record, or file any Perfection Documents, (x) all such Perfection Documents shall be deemed to have been obtained, entered into, given, recorded, or filed, as the case may be, as of the Petition Date, (y) no defect in any such act shall affect or impair the validity, perfection, priority, or enforceability of the Adequate Protection Liens, and (z) such liens shall have the relative priority set forth herein notwithstanding the timing of filing of any such Perfection Documents.  In lieu of optional recording or filing any Perfection Documents, the Agent and the Prepetition Secured Parties may, in each of their reasonable discretion, choose to record or file a true and complete copy of this Final Order in any place that any Perfection Document would or could be recorded or filed (which may include a description of the collateral appropriate to be indicated in a recording or filing at such place of recording or filing), and such recording or filing by the Agent or the Prepetition Secured Parties shall have the same effect as if such Perfection Document had been filed or recorded as of the Petition Date.

9.    Effect of Stipulations on Third Parties.

(a)    Generally.  The admissions and stipulations set forth in Paragraph C above of this Final Order (collectively, the "**Prepetition Lien and Claim Matters**") are and shall be binding on the Prepetition Borrowers, their estates, and any successors thereto, any subsequent trustee (including any chapter 7 trustee), responsible person, examiner with expanded powers, any other estate representative, and all parties-in-interest and all of their successors-in-interest and assigns, including, without limitation, the Committee, *unless*, and solely to the extent that, a party-

in-interest with standing and requisite authority (i) has timely filed the appropriate pleadings, and timely commenced the appropriate proceeding required under the Bankruptcy Code and Bankruptcy Rules, including, without limitation, as required pursuant to Part VII of the Bankruptcy Rules challenging the Prepetition Lien and Claim Matters (each such proceeding or appropriate pleading commencing a proceeding or other contested matter, a "**Challenge**") 11:59 p.m. (ET) on Wednesday, September 11, 2023 (the "**Challenge Deadline**"), as such date may be extended in writing from time to time in the reasonable discretion of the Prepetition Secured Parties or by this Court for good cause shown pursuant to an application filed by a party in interest prior to the expiration of the Challenge Deadline, and (ii) this Court enters judgment in favor of the plaintiff or movant in any such timely and properly commenced Challenge proceeding and any such judgment has become a final judgment that is not subject to any further review or appeal; provided, that the timely filing of a motion seeking standing to file a Challenge before the Challenge Deadline, which attaches a draft complaint setting forth the legal and factual bases of the proposed Challenge, shall toll the Challenge Deadline only as to the party that timely filed such standing motion until such motion is resolved or adjudicated by the Court.  If a chapter 7 trustee or a chapter 11 trustee is appointed or elected prior to the expiration of the Challenge Deadline, then the Challenge Deadline with respect to such trustee only, shall be the later of (i) the Challenge Deadline and (ii) the date that is twenty (20) calendar days after the date on which such trustee is appointed or elected.

        (b)    <u>Binding Effect</u>.  To the extent any Prepetition Lien and Claim Matters are not subject to a Challenge timely and properly commenced by the Challenge Deadline, or to the extent any Challenge does not result in a final and non-appealable judgment or order of this Court that is inconsistent with the Prepetition Lien and Claim Matters, then, without further

notice, motion, or application to, order of, or hearing before, this Court and without the need or

requirement to file any proof of claim, the Prepetition Lien and Claim Matters shall pursuant to

this Final Order become binding, conclusive and final on the Prepetition Borrowers, their estates,

all creditors, any person, entity, or party-in-interest in the Chapter 11 Cases of the Prepetition

Borrowers, and their successors and assigns, and in any successor case for all purposes and shall

not be subject to challenge or objection by any party-in-interest, including, without limitation, a

trustee, responsible individual, examiner with expanded powers or other representative of the

Prepetition Borrowers' estates.  More specifically, as to (i) any parties in interest, including the

Committee, who fails to file a Challenge within the Challenge Deadline, or if any such Challenge

is filed and overruled, or (ii) any and all Prepetition Lien and Claim Matters that are not expressly

the subject of a timely Challenge: (A) any and all such Challenges by any party (including, without

limitation, the Committee, any chapter 11 trustee, any examiner, or any other estate representative

appointed in the Chapter 11 Cases of the Prepetition Borrowers, or any chapter 7 trustee, any

examiner or any other estate representative appointed in any successor cases), shall be deemed to

be forever waived and barred, and (B) all of the findings, Prepetition Borrowers' stipulations and

admissions hereunder with respect to the Prepetition Liens and Claim Matters, shall be of full force

and effect and forever binding upon the Prepetition Borrowers' estates and all creditors, interest

holders, and other parties in interest in the Chapter 11 Cases of the Prepetition Borrowers and any

successor cases.  Notwithstanding anything to the contrary herein, if any such proceeding is

properly and timely commenced, the Prepetition Lien and Claim Matters shall nonetheless remain

binding unless such Challenge is successful pursuant to an order or judgment that is final and no

longer subject to appeal or further review.

     (c)    <u>No Standing</u>.  Nothing in this Final Order vests or confers on any

person (as defined in the Bankruptcy Code), including the Committee, standing or authority to pursue any claim or cause of action belonging to the Prepetition Borrowers and/or their estates, including, without limitation, any Challenge with respect to the Prepetition Financing Documents, the Prepetition Secured Liens, and/or the Prepetition Secured Obligations.

10.      Limitation on Use of Proceeds.   Notwithstanding anything in this Final Order to the contrary, no portion or proceeds of the Prepetition Collateral, the Cash Collateral, or the Carve-Out, and no disbursements set forth in the Budget shall be used for the payment of professional fees, disbursements, costs, or expenses incurred in connection with:  (a) objecting, contesting or raising any defense to the validity, perfection, priority, or enforceability of, or any amount due under, the Prepetition Financing Documents or any security interests, liens or claims granted under this Final Order or the Prepetition Financing Documents to secure such amounts; (b) asserting any Challenges, claims, actions, or causes of action, including any Avoidance Actions, against any of the Prepetition Secured Parties or any of their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys, or advisors; or (c) contesting the Prepetition Lien and Claim Matters; *provided* that no more than $25,000 in the aggregate of the proceeds of the Postpetition Collateral, Prepetition Collateral, the Cash Collateral, and the Carve-Out may be used by the Committee, solely to investigate (but not prosecute or Challenge) Prepetition Lien and Claim Matters.

11.      Adequate Protection.   The Prepetition Secured Parties agree, and this Court finds, that the adequate protection provided in this Final Order (the "**Adequate Protection**"), including, without limitation, in this Paragraph 11, is reasonable and calculated to protect the interests of the Prepetition Secured Parties.  Notwithstanding any other provision hereof, the grant of Adequate Protection to the Prepetition Secured Parties pursuant hereto is without prejudice to

the right of the Prepetition Secured Parties to seek adequate protection or to seek modification of a grant of Adequate Protection provided in this Final Order so as to provide different or additional adequate protection, and without prejudice to the right of the Prepetition Borrowers or any other party in interest to contest any such request.

(a)    Prepetition Secured Party Adequate Protection Liens.  As adequate protection for the Prepetition Secured Parties for the Prepetition Secured Liens, the Agent, in accordance with sections 361 and 363(e) of the Bankruptcy Code, is hereby granted, for the benefit of the Prepetition Secured Parties, additional and replacement valid, binding, enforceable, non-avoidable, and perfected postpetition security interests and liens (the "**Adequate Protection Liens**") upon any and all repaid Servicing Advances (as defined in the Prepetition Credit Agreement)[5](collectively, the "**Postpetition Collateral**"), in each case to secure the Prepetition Secured Obligations against, without duplication, the aggregate Diminution in Value, if any, subsequent to the Petition Date, in the value of the Prepetition Collateral.  The Adequate Protection Liens are subject and subordinate only to (A) the Carve-Out and (B) the Permitted Prior Liens. The Adequate Protection Liens shall not (x) be subject to any lien or security interest that is avoided and preserved for the benefit of the Prepetition Borrowers' estates under section 551 of the Bankruptcy Code, (y) subject to any inter-company claim, whether secured or unsecured, of any Prepetition Borrower or any domestic or foreign subsidiary or affiliate of any Prepetition Borrower, or (z) hereafter be subordinated to or made *pari passu* with any other lien or security interest under sections 361 or 363 of the Bankruptcy Code or otherwise except as expressly

---

[5] "**Servicing Advances**" are defined in the Prepetition Credit Agreement as "the right of any [of the Prepetition Borrowers] to payment, reimbursement or indemnity in respect of any advances made or funded by such [Prepetition Borrower] in respect of Mortgage Loans with respect to which such [Prepetition Borrower] owns the Servicing Rights, whether such advances are made for out of pocket expenses incurred by a servicer, taxes, delinquent payments of principal or interest or other purposes."

provided in this Final Order, including, without limitation, with respect to the Carve-Out and Permitted Prior Liens. The Adequate Protection Liens shall be enforceable against and binding upon the Prepetition Borrowers, their estates, and any successors thereto, including, without limitation, any trustee or other estate representative appointed in the Chapter 11 Cases of the Prepetition Borrowers, or any successor cases.

(b)    Section 507(b) Claims. Notwithstanding the provision of Adequate Protection hereunder, the Prepetition Secured Parties and the Agent, for the benefit of the Prepetition Secured Parties, are hereby each granted an allowed administrative expense claim pursuant to section 507(b) of the Bankruptcy Code (each, a "**Section 507(b) Claim**") with super-priority over all other administrative expenses and all other claims against the Prepetition Borrowers or their estates or any kind or nature whatsoever, but in all cases subject and subordinate to the Carve-Out and the Permitted Prior Liens. The Section 507(b) Claims shall be against each Prepetition Borrower on a joint and several basis, and shall be payable from and have recourse to all Prepetition Collateral.

(c)    Adequate Protection Payments. The Prepetition Borrowers shall pay in cash (i) upon entry of this Final Order, the reasonable and documented fees and expenses of the attorneys and advisors of the Agent (the "**Agent Advisors**") arising under the Prepetition Financing Documents prior to the Petition Date and (ii) the reasonable and documented fees and expenses of the Agent Advisors arising under the Prepetition Financing Documents subsequent to the Petition Date, in all instances subject to the amounts allocated therefor in the Budget (payments under clauses (i) and (ii), collectively, the "**Adequate Protection Payments**"). The Agent Advisors shall not be required to file an application seeking compensation for services or reimbursement of expenses with this Court. The Agent Advisors seeking compensation for

30192987.13

services or reimbursement of expenses under the Prepetition Financing Documents, this Final

Order or the Final Order shall transmit twice a month (approximately every two (2) weeks) a

reasonably detailed invoice (which shall include the total number of hours billed by attorney or

other professional but shall not be required to comply with any particular format, and may be in

summary form only) to counsel to the Prepetition Borrowers, the U.S. Trustee, and the Committee;

*provided* that any such invoice may be reasonably redacted to protect from disclosure any

confidential information or information otherwise subject to a protective privilege such as

attorney-client privilege or attorney work-product privilege.  The Prepetition Borrowers, U.S.

Trustee, and the Committee, shall have ten (10) days in which to raise an objection to the payment

of any fees and expenses of such Agent Advisors.  Upon the expiration of such ten (10) day period,

the Prepetition Borrowers may pay any portion of such fees and expenses to which no objection

has been interposed.  To the extent any objection has been interposed and cannot be consensually

resolved, the dispute will be scheduled for adjudication at the next regularly-scheduled omnibus

hearing in the Chapter 11 Cases.  Any and all amounts paid by the Prepetition Borrowers under

this Paragraph 11 are deemed permitted uses of Cash Collateral hereunder.

(d)    Agency Fees.    The Agent shall receive from the Prepetition

Borrowers current cash payments of all reasonable and documented prepetition and postpetition

fees, including agency fees and administrative fees, and out-of-pocket expenses incurred by and

payable to the Agent under the Prepetition Financing Documents (the "**Agency Fees**") as disclosed

in the Budget.

(e)    Adequate Protection Reservation.    The receipt by the Prepetition

Secured Parties of the Adequate Protection provided herein shall not be deemed an admission that

the interests of the Prepetition Secured Parties are adequately protected.  Each of the Prepetition

{01484055.v2 }                          20

30192987.13

Borrowers shall be jointly and severally liable for the Adequate Protection provided for herein, and any amendment or modification to the Adequate Protection shall require the prior written consent of the Prepetition Secured Parties.

12.    <u>Modification of Automatic Stay</u>.  The automatic stay under section 362(a) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms and provisions of this Final Order, including, without limitation, to:  (a) permit the Prepetition Borrowers to grant Adequate Protection as set forth herein; (b) permit the Prepetition Borrowers to perform such acts as reasonably requested by the Prepetition Secured Parties to assure the perfection and priority of the Adequate Protection Liens granted herein; and (c) authorize the Prepetition Borrowers to make, and the Agent to retain and apply, payments in accordance with the terms of this Final Order.

13.    <u>Events of Default</u>.  The Prepetition Borrowers' right, and the right of any other representative of the estates, to use Cash Collateral under this Final Order shall terminate (other than in respect of the Carve-Out), (i) following ten (10) business days' notice (the "**EOD Notice Period**") from the Prepetition Secured Parties of (a) the Debtors' failure to meet or satisfy any Milestone (as defined herein), unless extended by agreement of the Prepetition Secured Parties or order of this Court, or (b) a final determination by this Court that a material violation or breach (other than by the Prepetition Secured Parties), of any of the provisions of this Final Order has occurred; or (ii) automatically without further notice or court proceeding following that the occurrence of one or more of the following: (a) the appointment of a chapter 11 trustee or of an examiner with expanded powers in the Chapter 11 Case (having powers beyond those set forth in sections 1106(a)(3) and (4) of the Bankruptcy Code); (b) the conversion of the Chapter 11 Cases of the Prepetition Borrowers to cases under chapter 7 of the Bankruptcy Code; (c) the dismissal of

the Chapter 11 Cases of the Prepetition Borrowers; (d) filing of a motion, application or other pleading to obtain postpetition financing that has not been consented to by the Prepetition Secured Parties; (e) entry of an order or a judgment by this Court or any other court staying, reversing, vacating, amending, rescinding or otherwise modifying any of the terms of this Final Order, or filing of a motion, application or other pleading by the Prepetition Borrowers seeking such entry, in each case without the consent of the Prepetition Secured Parties (each of the items in 13(i) and (ii), an "**Event of Default**," collectively, the "**Events of Default**").

14.    <u>Termination of Use of Cash Collateral</u>.  Notwithstanding anything in this Final Order to the contrary, the Prepetition Borrowers shall be permitted to use the Cash Collateral pursuant to this Final Order through the date that is the earliest of:  (a) an Event of Default following the applicable EOD Notice Period, if any; or (b) ninety (90) days after the date of consummation of a sale of substantially all of the Prepetition Borrowers' assets; or (c) twenty-five (25) days following the occurrence of the effective date of any confirmed plan of reorganization or liquidation in the Chapter 11 Cases of the Prepetition Borrowers (the "**Termination Date**").

15.    <u>Prepetition Secured Parties Remedies</u>.  Upon the occurrence of an Event of Default, and following the EOD Notice Period, if any, in each case without further notice, motion or application to, order of, or hearing before, this Court, subject to the full funding of the Carve-Out and the then-budgeted and incurred administrative expenses of the Prepetition Borrowers' estates, the Prepetition Secured Parties are granted leave to, including without limitation, cease making financial accommodations to the Prepetition Borrowers, accelerate any or all of the Prepetition Secured Obligations, and declare such Prepetition Secured Obligations to be immediately due and payable in full, in cash.  Upon the Termination Date, and after providing five (5) business days' prior notice (the "**Remedies Notice Period**") to this Court, the U.S. Trustee,

and counsel to the Committee, the Prepetition Secured Parties shall be entitled to exercise all of its rights and remedies under this Final Order and the Prepetition Financing Documents, including, without limitation, foreclose upon the Prepetition Collateral or Postpetition Collateral or otherwise enforce the Prepetition Secured Obligations, the Adequate Protection Liens, and any or all of the Prepetition Collateral, and/or to exercise any other default-related remedies under the Prepetition Financing Documents, this Final Order, or applicable law in seeking to recover payment of the Prepetition Secured Obligations.

16.     <u>Milestones</u>.  As a condition to the use of Cash Collateral, the Prepetition Borrowers shall comply with the milestones attached hereto as <u>Exhibit B</u> (the "**Milestones**").  For the avoidance of doubt, the failure of the Debtors to comply with any of the Milestones (a) shall constitute an Event of Default under this Final Order, (b) subject to the expiration of the Remedies Notice Period, result in the automatic termination of the Debtors' authority to use Cash Collateral under this Final Order, and (c) permit the Prepetition Secured Parties, subject to the terms of this Final Order, to exercise the rights and remedies provided for in this Final Order.

17.     <u>Successors and Assigns</u>.  This Final Order shall be binding upon all parties in interest in the Chapter 11 Cases of the Prepetition Borrowers, including any subsequently appointed trustee, responsible individual, examiner with expanded powers, or other estate representative.

18.     <u>Survival</u>.  The provisions of this Final Order and any actions taken pursuant hereto shall survive the entry of any subsequent order, and the rights, remedies, powers, privileges, liens and priorities of the Prepetition Secured Parties provided for in this Final Order and any Prepetition Financing Document shall not be modified, altered or impaired in any manner without their consent (which consent shall not be unreasonably withheld) by any order, including any order

30192987.13

(a) confirming any plan of reorganization or liquidation in any of the Chapter 11 Cases of the Prepetition Borrowers, (b) converting any of the Chapter 11 Cases of the Prepetition Borrowers to a chapter 7 case, (c) dismissing any of the Chapter 11 Cases of the Prepetition Borrowers, or (d) any superseding cases under the Bankruptcy Code.  The terms and provisions of this Final Order as well as the Adequate Protection granted pursuant to this Final Order shall continue in full force and effect notwithstanding the entry of any such order, and such rights, claims and liens shall maintain their priority as provided by this Final Order and the Prepetition Financing Documents and to the maximum extent permitted by law until all of the Prepetition Secured Obligations are indefeasibly paid in full, in cash.

19.     _Subsequent Reversal or Modification_.  If any or all of the provisions of this Final Order are hereafter reversed, modified, vacated or stayed, that action will not affect (a) the validity of any obligation, indebtedness or liability under this Final Order by the Prepetition Borrowers prior to the date of receipt of written notice to the Prepetition Secured Parties and Agent of the effective date of such action, or (b) the validity and enforceability of any lien, administrative expense, right, or priority authorized or created hereby or pursuant to this Final Order, including, without limitation, the Prepetition Secured Obligations, the Prepetition Secured Liens, the Adequate Protection Liens, the Adequate Protection Payments and the Section 507(b) Claims.

20.     _Order Governs_.  In the event of any conflict between the provisions of this Final Order, the Interim Order, and the Motion, or any supporting documents, the provisions of this Final Order shall control and govern to the extent of such conflicts.

21.     _No Marshaling_.  None of the Prepetition Secured Parties or Prepetition Collateral shall be subject to the doctrine of marshaling or any similar doctrine or law of any jurisdiction requiring the recovery upon or application to any indebtedness of any collateral or

{01484055.v2 }                           24

30192987.13

proceeds in any particular order or action.

22.    <u>Master Proof of Claim</u>.  The Prepetition Secured Parties will not be required to file proofs of claim in any of the Chapter 11 Cases of the Prepetition Borrowers or any successor cases, and the terms and provisions of this Final Order shall be deemed to constitute a timely filed proof of claim against the applicable Prepetition Borrowers; *provided, however*, that the Agent (on behalf of itself and the other Prepetition Secured Parties) is hereby authorized in its reasonable discretion to file (and amend and/or supplement, as it sees fit) a master proof of claim for the claims of the Prepetition Secured Parties arising from the applicable Prepetition Financing Documents in accordance with any order entered by this Court in relation to the establishment of a bar date in the Chapter 11 Cases of the Prepetition Borrowers; *provided further* that nothing herein shall waive the right of any Prepetition Secured Party to file its own proofs of claim against the Prepetition Borrowers.

23.    <u>Immediate Effect of Order</u>.  This Final Order shall take effect immediately upon execution hereof, and, notwithstanding anything to the contrary contained in Bankruptcy Rules, including Bankruptcy Rule 4001(a)(3), there shall be no stay of execution of effectiveness of this Order.  All objections to the entry of this Final Order have been withdrawn or overruled, and the Motion is approved on a final basis on the terms and conditions set forth herein.  The Prepetition Borrowers shall promptly mail copies of this Final Order to the Notice Parties and to counsel to the Committee.

# **EXHIBIT A**

**Budget**

**Peer Street, Inc., et al.**
**Cash Collateral Budget**
*$000s*

Privileged & Confidential
Working Draft / Subject to Change

| Week Number | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Forecast / Actual | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast |
| Week Ending | 08/13/23 | 08/20/23 | 08/27/23 | 09/03/23 | 09/10/23 | 09/17/23 | 09/24/23 | 10/01/23 | 10/08/23 | 10/15/23 | 10/22/23 | 10/29/23 | 11/05/23 | |
| **Cash Receipts** | | | | | | | | | | | | | | |
| PeerStreet Spread | $ 47 | $ 47 | $ 47 | $ 47 | $ 47 | $ 47 | $ 47 | $ 47 | $ 47 | $ 47 | $ 31 | $ 15 | $ 3,000 | $ 3,513 |
| DocGen | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 61 |
| Draw & Other Receipts | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 14 |
| Interest on Bank Balance | 176 | - | - | - | 175 | - | - | - | - | 175 | - | - | 142 | 668 |
| Servicing Recoveries | 143 | 143 | 143 | 143 | 143 | 143 | 143 | 143 | 143 | 143 | 3,777 | 3,844 | 5,814 | 14,864 |
| Total Other Receipts | - | - | - | - | - | 100 | - | - | - | 80 | - | - | 1,155 | 1,335 |
| **Total Cash Receipts** | $ 372 | $ 195 | $ 195 | $ 195 | $ 371 | $ 295 | $ 195 | $ 195 | $ 195 | $ 450 | $ 3,813 | $ 3,865 | $ 10,117 | $ 20,457 |
| | | | | | | | | | | | | | | |
| *Operating Disbursements* | | | | | | | | | | | | | | |
| Total Payroll | - | (103) | - | (69) | - | (69) | - | (130) | - | (92) | - | - | (242) | (704) |
| Rent & Occupancy | - | - | - | (10) | - | - | - | (10) | - | - | - | - | (10) | (30) |
| Insurance | - | - | - | (39) | - | - | - | (39) | - | - | - | - | (39) | (118) |
| Servicing Advances | (172) | (172) | (172) | (172) | (172) | (172) | (172) | (172) | (172) | (172) | (172) | (172) | (172) | (2,231) |
| Vendors | (61) | (61) | (61) | (61) | (61) | (61) | (61) | (49) | (49) | (49) | (49) | (49) | (61) | (736) |
| **Total Operating Disbursements** | $ (233) | $ (336) | $ (233) | $ (351) | $ (233) | $ (301) | $ (233) | $ (400) | $ (221) | $ (313) | $ (221) | $ (221) | $ (525) | $ (3,819) |
| | | | | | | | | | | | | | | |
| *Restructuring Disbursements* | | | | | | | | | | | | | | |
| Restructuring Fees | (83) | (83) | (83) | (180) | (83) | (83) | (83) | (154) | (66) | (66) | (66) | (76) | (170) | (1,277) |
| Post-Effective Date Wind-Down Costs | - | - | - | - | - | - | - | - | - | - | - | - | (230) | (230) |
| **Total Restructuring Disbursements** | $ (83) | $ (83) | $ (83) | $ (180) | $ (83) | $ (83) | $ (83) | $ (154) | $ (66) | $ (66) | $ (66) | $ (76) | $ (401) | $ (1,508) |
| **Net Cash Flow** | $ 56 | $ (223) | $ (120) | $ (336) | $ 55 | $ (89) | $ (120) | $ (358) | $ (91) | $ 71 | $ 3,526 | $ 3,568 | $ 9,191 | $ 15,130 |
| | | | | | | | | | | | | | | |
| *Cash (Magnetar)* | | | | | | | | | | | | | | |
| Beginning Balance | $ 12,333 | $ 12,389 | $ 12,166 | $ 12,045 | $ 11,710 | $ 11,765 | $ 11,676 | $ 11,555 | $ 11,197 | $ 11,106 | $ 11,177 | $ 14,704 | $ 18,272 | 12,333 |
| (+) Net Cash Flow | 56 | (223) | (120) | (336) | 55 | (89) | (120) | (358) | (91) | 71 | 3,526 | 3,568 | 9,191 | 15,130 |
| **Ending Cash Balance** | $ 12,389 | $ 12,166 | $ 12,045 | $ 11,710 | $ 11,765 | $ 11,676 | $ 11,555 | $ 11,197 | $ 11,106 | $ 11,177 | $ 14,704 | $ 18,272 | $ 27,463 | $ 27,463 |

<u>**EXHIBIT B**</u>

**Milestones**

1. Within twenty-one (21) days of entry of this Final Order, the Debtors, Prepetition Secured Parties and the Committee shall have conferred and agreed upon milestones and deadlines relating to the following:

   a.  Entry of an order approving the Bid Procedures Motion (the "**Bid Procedures Order**")
   b.  The submission of Second Round Bids (as defined in the Bid Procedures Order).
   c.  Entry of a sale order(s).
   d.  Closing of sale(s).
   e.  Filing of a disclosure statement and chapter 11 plan.
   f.  Hearing to consider approval of the disclosure statement.
   g.  Hearing to consider confirmation of a plan.
   h.  Effective date of a plan.

The Prepetition Secured Parties reserve all rights in the event they, the Debtors and the Committee are unable to agree on such milestones and deadlines including, without limitation, seeking appropriate relief from the Court.