FILED
2023 AUG 14  AM 10: 15
CLERK
US BANKRUPTCY COURT
DISTRICT OF DELAWARE

Regarding case 23-10815-LSS

From:
Per Tomas Larsson (PeerStreet account: ███████)
13952 Michele Dr
Glenelg MD 21737

To:
Chief Judge Laurie Silverstein
US Bankruptcy Court
824 North Market Street. 6th floor
Wilmington, DE 19801

**Subject: Safeguarding Secured Loan Investments in PeerStreet Bankruptcy Proceedings**

Honorable Chief Judge Laurie Seiber Silverstein,

I trust this letter finds you in good health and would greatly appreciate your attention to its contents.

I write to address a matter of concern arising from the recent chapter 11 filing by PeerStreet and its affiliated entities. Specifically, I respectfully request the preservation of secured loan investments throughout the course of these bankruptcy proceedings.

As individual retail investors, we were assured through the PeerStreet website that our investments would remain shielded even in the event of PeerStreet no longer being in operation. This assurance stemmed from the understanding that the loans in which we invested were held within a bankruptcy remote entity, effectively safeguarded against any claims from PeerStreet's creditors. Please refer to the screenshot in Figure 1 from the PeerStreet website.

Furthermore, our investment premise rested upon the belief that we were acquiring stakes in specific mortgages, affording us the opportunity to influence our investment outcomes by selecting mortgages judiciously. While I was fully aware of the inherent risks of loans not performing, at no point was it pointed out that the solvency of PeerStreet could impact our investment returns. To the contrary, investors were led to expect that even in the unlikely event of PeerStreet's closure, our returns would continue to align with the performance of the chosen mortgages.

Regrettably, PeerStreet has proposed a course of action involving the sale of loans and the subsequent distribution of proceeds among creditors. I respectfully outline my reservations regarding this proposition as I see it as not being likely to yield the best outcome for retail investors that put their trust in PeerStreet:

1. The identities of these "creditors" remain unclear. If these creditors extend beyond PeerStreet Funding's note holders, it raises serios concerns about Peerstreet's representation to investors.
2. Peerstreet funding appear solvent and should not even be part of the bankruptcy proceedings as it was created, according to PeerStreet, to serve the purpose of protecting investors from any financial problems PeerStreet itself might experience.
3. Pooled sales of mortgages present a formidable challenge in precisely apportioning returns to individual note holders. Even if the pools are constructed to hold notes similar to each other, each pool encompasses distinct notes, and performance outcomes upon maturity will not be the same across all the notes in each pool. My understanding is PeerStreet expects the buyer to price the loans individually. However, the buyer has no incentive in doing so accurately for individual loans. They care about getting the right price for the aggregate value of the pool. The buyer may even have an incentive to distort the valuation of individual loans to optimize the timing of recognizing capital gains.

4. A hasty asset sale, bereft of genuine ownership stakes on the part of PeerStreet, poses concerns over true alignment of interests. The paramount goal should prioritize maximal returns to the bona fide creditors—noteholders invested in the notes and indirectly in the underlying mortgages.

5. The suggested approach would likely result in the loans being sold at significant discounts at the retail investors' expense.

6. Prudent management often results in full principal recovery even from non-performing loans, underscoring the need to continue servicing the loans for the benefit of retail investors like I, who invested in the notes under the impression that the returns were dictated by the performance of the underlying assets.

7. These loans are short term and some will be paid off before the court decides on a final solution. I would request that any payments made towards the loans get treated as if they were now part of the investable cash held for the benefit of each investor.

To reinforce the last point, I draw your attention to a screenshot included im Figure 2 from my PeerStreet account. Remarkably, out of 240 loans that reached maturity or concluded via foreclosure, only two instances incurred nominal principal losses and in one those two cases the loss was merely around 1%. Notably, a considerable portion of the 238 fully recovered loans had at some point lapsed into non-performance status, emphasizing the potential for robust recovery for non-performing loans. In my portfolio, I have even had loans that gone into foreclosure and REO that resulted in not only getting all principal and interest paid, but in addition gotten a small gain of sale return as the property was sold for more than what was needed to cover the loan.

Considering the prevailing seller's market in the housing sector over recent years, full loan value recovery should remain a reasonable expectation, even for most non-performing loans, while selling the loans prematurely at fire sale would likely result in significant losses for the investors.

Beyond our immediate concerns, the implications of this case reverberate across the crowd-sourced investment community. As a transformative vehicle democratizing investing for the broader public, any outcome wherein crowdfunding entities seek redress from investor funds to cover their operational shortfalls could erode the trust imperative for this industry's expansion and realization of its potential.

In closing, I earnestly ask the court to carefully deliberate upon these considerations and act in the best interests of the investors as well as the enduring promise of crowd-sourced investing.

With sincerest gratitude for your attention and consideration,

Tomas Larsson
14952 Michele Dr
Glenelg MD 21737
248 719-6677

*Tomas Larsson* (signature)

Tomas Larsson          Date: 2023-08-04



T: Larssan
14952 Michele Dr
Glenelg, MD 21737

Chief Judge Laurie Silverstein
US Bankruptcy Court
824 North Market Street 6th Floor
Wilmington, DE 19801

