**APPENDIX – SUMMARY OF TRANSACTIONS RELATED TO RWNS, PDNS AND OPP FUND**

**I.    THE PEER STREET NOTES OFFERED ON THE PLATFORM**

1. The terms of the RWNs and PDNs are summarized below.

**A.    Redeemable Warehouse Notes Issued by Funding LLC**

2. Peer Street, through Funding LLC, issued redeemable warehouse notes (or RWNs) to Investors through the Platform. The terms of the RWNs are set forth in the 2019 PPM, Pocket 1 Month Supplement or Pocket 3 Month Supplement (as applicable), and RWN itself, which were each required to be accepted and agreed to as condition to the purchase of any RWN.[1]

3. The RWNs are associated with one of two loans – either (i) a loan made by Funding LLC to Warehouse I LLC for the Pocket 1 Month RWNs, or (ii) the loans made by Funding LLC to Warehouse II LLC for the Pocket 3 Month RWNs.[2] As noted above, the funds raised by Funding LLC through the issuance of RWNs was used by Funding LLC to make loans to the Warehouse Entities, who then provided warehouse financing to PSFI to acquire Underlying Loans. In economic terms, payment of principal and interest on the RWNs was dependent on the performance of the Warehouse Loan the RWN was associated with, and those Warehouse Loans were collateralized by interests in pools of Underlying Loans. This was in contrast to the MPDNs that were dependent on the performance of a singular Underlying Loan.[3] Payment of the RWNs was, however, dependent on Funding LLC receiving repayment of the applicable Warehouse Loan associated with the RWN, a fact that was clearly disclosed in the offering materials for the RWNs.[4]

---

[1] *See* Reply at note 34.

[2] *See generally* Exhibit 6, Warehouse I Participation Agreement; Exhibit 7, Warehouse II Participation Agreement.

[3] Exhibit 3, Pocket 1 Month RWN Suppl. at 3-5; Exhibit 24, Pocket 3 Month RWN Suppl. at 4-7.

[4] *See* Exhibit 3, Pocket 1 Month RWN Suppl. at 6 ("The RWNs represent a limited obligation of PSFLLC. Interest and principal distributions on the RWNs are dependent on Warehouse LLC's payment of principal and interest to PSFLLC."); Exhibit 24, Pocket 3 Month RWN Suppl. at 7 (same).

4. As with the MPDNs, the offering documents for the RWNs make clear that Investors purchasing RWNs were purchasing ***promissory notes*** from Funding LLC and that those notes are ***special***, ***limited***, ***unsecured*** obligations of Funding LLC ***only***.[5] Nothing in the offering documents for the RWNs purport to convey any property interest, as security or otherwise, in the applicable Warehouse Loans or the Underlying Loans that secured them.[6] To the contrary, the offering documents clearly state that holders of the RWNs will have no property interest in the Warehouse Loans, Underlying Loans (or any assets of any Peer Street entity).[7] Moreover, the form RWN makes clear that (x) Funding LLC can sell a corresponding Warehouse Loan or any

---

[5] *See* Exhibit 3, Pocket 1 Month RWN Suppl. at 7 ("RWNs will be unsecured special, limited obligations of PSFLLC.") and 19 (Form of Note, § 1) ("This Note represents a special limited obligation of the Company, and (1) no payments of principal and interest on this Note shall be payable unless the Company has received payments relating to the corresponding warehouse loan (the "Warehouse Loan") it has extended of PS Warehouse, LLC ("Warehouse LLC"), and then only to the extent of the amount of such payments received by the Company (as provided for in the RWN Supplement), and (2) no Investor of this Note shall have any recourse against the Company unless, and then only to the extent that, the Company has received payment relating to the corresponding Warehouse Loan and has failed to pay such Investor their pro rata share of the payments that the Company actually received thereunder when the Redemption (as defined in the RWN Supplement) was requested by the Investor."); Exhibit 24, Pocket 3 Month RWN Suppl. at 9 ("RWNs will be unsecured special, limited obligations of PSFLLC.") and 19 (Form of Note, § 1) ("This Note represents a special limited obligation of the Company, and (1) no payments of principal and interest on this Note shall be payable unless the Company has received payments relating to the corresponding warehouse loan (the "Warehouse Loan") it has extended to PS Warehouse II, LLC ("Warehouse II LLC"), and then only to the extent of the amount of such payments received by the Company (as provided for in the RWN Supplement), and (2) no Investor of this Note shall have any recourse against the Company unless, and then only to the extent that, the Company has received payment relating to the corresponding Warehouse Loan and has failed to pay such Investor their pro rata share of the payments that the Company actually received thereunder when due to the Investor pursuant to the terms of this Note and the RWN Supplement.").

[6] *See* Exhibit 3, Pocket 1 Month RWN Suppl. at 7.

[7] *Id.* at 7 ("Investors in RWNs will have a claim to their share of funds held by PSFLLC, but will not have any security interest in the assets of PSFLLC, PSFI, PeerStreet, any borrower or lender, any Financed Loan, any proceeds from any Financed Loan or in the assets of any borrower or lender (including any PSI affiliate acting as lender) associated with any Financed Loan. RWNs will be unsecured special, limited obligations of PSFLLC."); Exhibit 24, Pocket 3 Month RWN Suppl. at 9 ("Investors in RWNs will have a claim to their share of funds held by PSFLLC, but will not have any security interest in the assets of PSFLLC, the Warehouse Entities, PSFI, PeerStreet, any borrower or lender, any Financed Loan or Non-Financed Loan, any proceeds from any Mortgage Loan or in the assets of any borrower or lender (including any PSI affiliate acting as lender) associated with any Mortgage Loan, or Servicing Advance Receivables. RWNs will be unsecured special, limited obligations of PSFLLC."); s*ee also* Exhibit 11, 2019 Investor Agreement ¶ 21.

30664905.11

2

interest in the underlying financed loans, and (y) Funding LLC need not seek any consent from an RWN holder to make such a sale.[8]

5. While the RWNs are interest bearing, the interest rate is variable and is not paid in cash and, instead, is capitalized at the end of each interest period.[9] A primary difference between the Pocket 1 Month RWN and Pocket 3 Month RWN was the fact that the interest rate for the Pocket 1 Month RWNs could be changed upon 30 days' notice,[10] whereas the interest rate for the Pocket 3 Month RWNs were fixed for 3-month periods.[11]

6. The RWNs had a maturity date of December 31, 2029,[12] but were also redeemable prior to maturity. The redemption mechanics were another area in which the RWNs differed: Pocket 1 Month RWNs could be redeemed by providing notice on the 15th day of the month prior to the date of redemption;[13] the Pocket 3 Month RWNs could only be redeemed at the end of each 3-month investment period by providing notice on the 1st day of the month in which the investment period expires.[14] As outlined in the applicable Supplement, Funding LLC would seek to collect the amount needed to satisfy redemption requests by calling due amounts owed under the applicable Warehouse Loans, however Funding LLC reserved the right to halt payouts on redemption requests if an applicable "Liquidation Trigger" occurred.[15]

---

[8] Exhibit 3, Pocket 1 Month RWN Suppl. at 20 (Form of Note, ¶ 6); Exhibit 24, Pocket 3 Month RWN Suppl. at 24 (Form of Note, ¶ 6).

[9] Exhibit 3, Pocket 1 Month RWN Suppl. at 7; Exhibit 24, Pocket 3 Month RWN Suppl. at 10.

[10] Exhibit 3, Pocket 1 Month RWN Suppl. at 7.

[11] Exhibit 24, Pocket 3 Month RWN Suppl. at 10.

[12] Exhibit 3, Pocket 1 Month RWN Suppl. at 8; Exhibit 24, Pocket 3 Month RWN Suppl. at 11.

[13] Exhibit 3, Pocket 1 Month RWN Suppl. at 8-9.

[14] Exhibit 24, Pocket 3 Month RWN Suppl. at 11.

[15] Exhibit 3, Pocket 1 Month RWN Suppl. at 9-10; Exhibit 24, Pocket 3 Month RWN Suppl. at 11-12.

7.  As stated in the Dunn Decl., Funding LLC exercised a Liquidation Trigger on January 31, 2023.[16] Following a "Liquidation Trigger," Funding LLC was authorized to "incur fees, costs, and charges, in connection with the servicing or liquidation of Financed Loans, the enforcement of its rights against [the Warehouse Entities] and PSFI, and other similar circumstances . . . when, in its sole and absolute discretion, it determines in good faith that making these advances will ultimately be the most effective course of action . . . [and] it shall be entitled to recover such advances prior to any payments being made to Investors."[17]

### B. Payment Dependent Notes issued by Portfolio LLC

8.  Peer Street, through Portfolio LLC, issued payment dependent notes (or PDNs) to Investors through the Platform. The terms of the PDNs are set forth in the 2019 PPM, PDN Supplement, and PDN itself, which were each required to be accepted and agreed to as condition to the purchase of any PDN.[18]

9.  The PDNs are associated with a portfolio of Underlying Loans, either acquired or participated in by Portfolio LLC, that meet specific baseline Credit Guidelines, as

---

[16] *See* Exhibit 1, Dunn Decl. ¶ 22.

[17] *See* Exhibit 3, Pocket 1 Month RWN Suppl. at 11; Exhibit 24, Pocket 3 Month RWN Suppl. at 13-14; *see also* Pocket 1 Month RWN Suppl. at 20 (Form of Note § 3.2) ("[Funding LLC] may, at its sole discretion, advance any and all amounts necessary to protect its interest in the Warehouse Loan or the Financed Loans, including (without limitation) foreclosure fees and related costs as well as payments necessary to pay property taxes, senior liens, junior liens, and other fees and costs Company deems necessary to protect its position in the corresponding mortgage loan (the "Company's Advances"). Any amounts paid to the Company under the Warehouse Loan or from the liquidation of the Financed Loans shall be payable as follows: (1) to the Company, to recoup the Company's Advances, (2) to the Company or third parties for any fees and costs allowed to be charged under the Memorandum and the RWN Supplement and (3) the balance, if any, pro rata to the Investors of the Notes."); Exhibit 24, Pocket 3 Month RWN Suppl. at 23-24 (Form of Note § 3.2) ("[Funding LLC] may, at its sole discretion, advance any and all amounts necessary to protect its interest in the Warehouse Loan or the Financed Loans Warehouse Loan or the Financed Loans, including (without limitation) foreclosure fees and related costs as well as payments necessary to pay property taxes, senior liens, junior liens, and other fees and costs the Company deems necessary to protect its position in the corresponding mortgage loan (the "Company's Advances"). Any amounts paid to the Company under the Warehouse Loan or from the liquidation of the Financed Loans shall be payable as follows: (1) to the Company, to recoup the Company's Advances, (2) to the Company or third parties for any fees and costs allowed to be charged under the Memorandum and the RWN Supplement and (3) the balance, if any, pro rata to the Investors of the RWNs.").

[18] *See* Reply, *supra* note 8.

30664905.11

identified in Schedule I to the PDN Supplement, and may include other criteria selected by Portfolio LLC.[19] In economic terms, while the PDNs are interest bearing, the interest rate is variable. The interest rate paid is a function of the collections across the entire portfolio of loans, as opposed to any specific Underlying Loan or set rate.[20] This was in contrast to the MPDNs, whose payment was dependent on the performance of a singular Underlying Loan.[21] And while the PDNs were similar to the RWNs, in that performance of multiple Underlying Loans impacted the cash flow available to pay interest on both the RWNs and PDNs, the PDNs differed from the RWNs, because the RWNs had a specific interest rate, and the PDNs had an entirely variable interest rate.

      10.    Like each of the other Peer Street Note products, payment of interest on the PDNs was dependent on Portfolio LLC's actual receipt of interest payment from the Underlying Loans in its portfolio, a fact that was clearly disclosed in the offering materials for the PDNs.[22] Portfolio LLC made clear that interest was not guaranteed and may even not be paid at all.[23]

---

[19]  *See* Exhibit 21, PDN Suppl. at Cover Page 2.

[20]  *See id.* at Exhibit A (Form of Note, § 3.1) ("Interest will be payable. . . in an amount (the "Pro Rata Interest Payment") equal to the Investor's pro rata portion of any interest payments actually received by the Company in respect of the Underlying Loans Underlying Participations, less Standard Fees and Issuer Expense reimbursements.").

[21]  *See* Reply ¶ 25 (explaining MPDNs payment being dependent on performance of an Underlying Loan).

[22]  *See* Exhibit 21, PDN Suppl. at Cover Page 7 ("The Company has no obligation to make any interest payments on the Notes, unless, and only to the extent that, the Company has received interest payments from Borrowers in respect of the Underlying Loans and mortgage loans corresponding to the Underlying Participations in the aggregate in excess of Standard Fees and unreimbursed Issuer Expenses actually incurred by the Company."); *see also id.* at 16 ("[T]he Company may not be able to recover (i) any of the unpaid balance of an Underlying Loan even if such Underlying Loan is fully secured, or (ii) any of the unpaid balance of a mortgage loan corresponding to an Underlying Participant.").

[23]  *See* Exhibit 21, PDN Suppl. at Cover Page 9 (The Company has no obligation to make any interest payments on the Notes, unless, and only to the extent that, the Company has received interest payments from Borrowers . . . in the aggregate in excess of Standard Fees and unreimbursed Issuer Expenses actually incurred by the Company. Neither the Company, the Member, PSFI, nor any of their respective affiliates guarantees that Investors will receive any interest payments on any Note . . . "), 5 (same), 11 ("If a Borrower defaults on an Underlying Loan or on a mortgage loan corresponding to an Underlying Participation, interest payments to Investors in respect of the Notes may be reduced on a pro rata basis among all Investors holding outstanding Notes, and the Net Asset

11. The PDNs also differed from the MPDNs and RWNs in how the principal amount of the note was treated. The principal amount of a PDN at issuance is not necessarily equal to the amount invested. Instead, the PDNs were issued in a principal amount determined by comparing the Net Asset Value of Portfolio LLC to the principal amount of PDNs issued.[24] And the Net Asset Value, other that at the initial issuance,[25] was based on the fair market value of Portfolio LLC's assets as determined by a third party valuation firm, rather than the amounts invested in it by noteholders.[26] Likewise, when PDNs were redeemed, the price to be paid for the PDNs at redemption is not simply the principal amount, but instead a function of the Net Asset Value as compared to the overall principal amount of issued PDNs at such date.[27]

12. Portfolio LLC was also "entitled to reimbursement from any proceeds of the Underlying Loans and Underlying Participations for all fees, costs and expenses actually incurred by the Company or any of its affiliates in connection with the management of the Company's assets and its operations, except for the" servicing fee paid to PFSI, payroll, lease payments, and other ordinary overhead expenses.[28] Interest payments to holders of the PDNs were also subordinated to the payment of such amount incurred by Portfolio LLC (i.e., the Issuer Expenses).[29]

---

Value may be negatively impacted. ***There is no guarantee that the Company will be able to make payments on the Notes in any specific amount or at all***." (emphasis added)).

[24] See id. at Cover Page 5.

[25] See id. (The Net Asset Value of the Company as of the First Closing Date shall be equal to the principal amount of all Investors' Notes, taken as a whole, as of such First Closing Date.").

[26] See id. at Cover Page 7.

[27] See id. at Cover Pages 5-6.

[28] See Exhibit 21, PDN Suppl. at Cover Page 10.

[29] See id. at 2 ("'Issuer Expenses' means any fees, costs and expenses incurred by the Company or any of its affiliates in connection with the management of the Company's assets and operations, excluding the Standard Fee, payroll, lease payments, and other ordinary overhead expenses."), Exhibit A (Form of Note, § 2) ("The Company has no obligation to make any interest payments on this Note, unless, and only to the extent that, the Company has received interest payments from Borrowers in respect of the Underlying Loans and mortgage loans

13. The offering documents for the PDNs make clear that Investors purchasing PDNs were purchasing **_promissory notes_** from Portfolio LLC and that those notes are **_special_**, **_limited_**, **_unsecured_** obligations of Portfolio LLC **_only_**.[30] Nothing in the offering documents for the PDNs purport to convey any property interest in the Underlying Loans, as security or otherwise, to purchasers of PDNs.[31] To the contrary, the offering documents clearly state that no property interest in the Underlying Loans (or any assets of any Peer Street entity) are created by issuance of the PDNs.[32] Moreover, the form PDN makes clear that (x) Portfolio LLC can sell a corresponding Underlying Loan or any participation therein, and (y) Portfolio LLC need not seek any consent from a PDN holder to make such a sale.[33]

---

corresponding to the Underlying Participations in the aggregate in excess of Standard Fees and unreimbursed Issuer Expenses actually incurred by the Company"); *see also id.* at Exhibit A (Form of Note § 3.6) ("As set forth in the Memorandum and the PDN Supplement, the Company may, at its sole discretion, advance any and all amounts necessary to protect its interest in the Underlying Loans, including (without limitation) foreclosure fees and related costs as well as payments necessary to pay property taxes, senior liens, junior liens, and other fees and costs the Company deems necessary to protect its position in the Underlying Loans (the "Company's Advances"). . . . [a]ny amounts paid to the Company under the Underlying Loans shall be payable first to the Company to recoup the Company's Advances and any fees and costs allowed to be charged under the Memorandum and the PDN Supplement.").

[30] *See* Exhibit 21, PDN Suppl. at Cover Page 5 ("The Notes are unsecured, special, limited obligations of the Company.") and Exhibit A (Form of Note, § 1) ("This Note represents a special limited obligation of the Company, and entitles Investor the right to receive (i) on a monthly basis in arrears, its Pro Rata Interest Payment, and (ii) upon redemption of this Note in accordance with its terms, the Redemption Price, which payments are dependent upon performance of the Underlying Loans, performance of the Underlying Participations and other factors affecting Net Asset Value. The Company has no obligation to make any interest payments on this Note, unless, and only to the extent that, the Company has received interest payments from Borrowers in respect of the Underlying Loans and mortgage loans corresponding to the Underlying Participations in the aggregate in excess of Standard Fees and unreimbursed Issuer Expenses actually incurred by the Company. Payment of the Redemption Price to the Investor upon redemption of this Note shall be in full satisfaction of any of the Company's payment obligations in respect of the portion of the principal amount of this Note being redeemed, and there can be no guarantee that the Redemption Price will be equal to or greater than the portion of the original principal amount of this Note being redeemed."); *see also* Exhibit 21, PDN Suppl. at Cover Pages 6, 10-11.

[31] *Id.*

[32] Exhibit 21, PDN Suppl. at Cover Page 11 ("Investors will not have any security interest in any assets owned by the Company, the Member, PSFI, any of their respective affiliates, the Borrowers or any of their assets, the Underlying Loans, the Underlying Participations, or any proceeds of the Underlying Loans or Underlying Participations. The Notes will be unsecured special, limited obligations of the Company."); *see also id.* at Cover Pages 6, 10-11; *see also* Exhibit 11, 2019 Investor Agreement ¶ 21.

[33] *Id.* at Exhibit A (Form of Note, § 6).

30664905.11

14. The PDNs had a fixed maturity date, which was supposed to be at least ten years from issuance, and would be extended automatically for successive ten year terms, unless notice of an intent to not to extend at maturity is provided by the holder to Portfolio LLC.[34] The PDNs, however, are redeemable on the first day of each calendar quarter, so long as the holder provides at least 60 days advance written notice.[35] Similar to the RWNs, Portfolio LLC had the ability to limit the amount and timing of redemptions.[36]

## II. THE PEER STREET ENTITIES' INTEREST IN UNDERLYING LOANS

15. The interests in the Underlying Loans associated with the RWNs/Warehouse Entities and PDNs are described below.

### A. Underlying Loans Associated with the RWNs

16. In contrast to the structure associated with the issuance of the MPDNs, Funding LLC did not acquire any participations in Underlying Loans in connection with issuing the RWNs. Instead, the funds raised from the sale of RWNs were used to fund advances made by Funding LLC to the Warehouse Entities pursuant to the Warehouse Loans. The Warehouse Entities used these funds to acquire 100% participation interests in Underlying Loans from PSFI.[37]

17. The Warehouse Entities acquired these interests pursuant to the terms of the Warehouse I Participation Agreement and Warehouse II Participation Agreement. Under these express participation agreements, PSFI and the applicable Warehouse Entity agreed that "each

---

[34] *See id.* at Cover Page 4.

[35] *See id.* at Cover Page 5.

[36] *See id.* at Cover Pages 6-7 (describing cut-back rights, compulsory redemptions and "Suspension Events", which could occur as Portfolio LLC "may determine in its sole discretion"). *Id.* at Cover Page 4 ("Investors in the Notes will have no right to control or direct the management of the Company or of the Underlying Loans and Underlying Participations.").

[37] *See* Exhibit 4, Warehouse I LSA § 2.4; Exhibit 7, Warehouse II LSA at Recitals (defining Eligible Activities) and § 2.4. While permitted uses were broader for Warehouse II than Warehouse I, Warehouse II limited the use of its borrowings to the purchase of participation interests in Underlying Loans.

30664905.11

Participant owns that portion of the Loans set forth in Exhibit A," and the applicable percentages were 100% for the Warehouse Entities and 0% for PSFI.[38]

18.  Under the Warehouse Loans, the Warehouse Entities pledged their assets – to PSFLLC to secure the Warehouse Entities' obligations to PSFLLC, thus making PSFLLC a secured creditor of the Warehouse Entities.[39]  PSFI also pledged its equity interests in the Warehouse entities to Funding LLC and guaranteed the Warehouse Entities' performance.[40]

### B.  Underlying Loans Associated with PDNs

19.  Portfolio LLC acquired Underlying Loans or participation interests in the Underlying Loans from PSFI.  The proceeds received from Portfolio LLC for these ownership or participation interests in Underlying Loans were used to fund the issuance or purchase of such loans, or to satisfy warehouse financing used to acquire these loans.

20.  The outright sale of loans to Portfolio LLC was made pursuant to a Master Loan and Sale Agreement.  The Portfolio LLC MLSA provides for PSFI's agreement "to sell and to assign" to Portfolio LLC and for Portfolio LLC's agreement to "purchase, accept, and assume from" PSFI Underlying Loans identified on a Loan Purchase Certificate, subject to the various closing conditions set forth in the Portfolio LLC MLSA and the applicable Loan Purchase Certificate.[41]

21.  If Portfolio LLC acquired participation interests in Underlying Loans, it did so pursuant to the terms of the Portfolio LLC Participation Agreement.  This express agreement

---

[38] *See* Exhibit 6, Warehouse I Participation Agreement § 2 and Exhibit A; Exhibit 7, Warehouse II Participation Agreement § 2 and Exhibit A.

[39] Exhibit 4, Warehouse I LSA § 9.1; Exhibit 5, Warehouse II LSA § 9.1.

[40] Exhibit 29, Warehouse I Guaranty §§ 2 and 3; Exhibit 30, Warehouse II Guaranty §§ 2 and 3.

[41] Exhibit 31, Portfolio LLC MLSA, § 2.3.

30664905.11

provided that the respective participation percentages between PSFI and Portfolio LLC would be agreed upon at the time of acquisition and maintained in a joint ledger between the parties.[42]

22. PSFI and Portfolio LLC were also parties to the Portfolio LLC Loan Management Agreement. This agreement provided for PSFI to act as Portfolio LLC's "loan manager to assist [Portfolio LLC] with providing certain loan monitoring and administration activities with respect to the Loans acquired by [Portfolio LLC] from [PSFI] (or one of its affiliates)."[43]

**III.     The Opp Fund Product Offering**

23. In addition to the investment offering on the Platform, Peer Street sponsors the Opp Fund, a partnership serving as a private investment fund. The Opp Fund is governed by a Private Placement Memorandum and the Opp Fund LP Agreement. The Opp Fund is now in dissolution[44] and is required to liquidate its assets and wind-up its business.[45]

24. Unlike the Peer Street Notes, the Opp Fund solicited investments in Opp Fund through the issuance of limited partnership interests.[46] The rights of investors in Opp Fund are governed by the Opp Fund LP Agreement. Investors in Opp Fund were only entitled to receive

---

[42] *See* Exhibit 9, Portfolio LLC Participation Agreement § 2 ("For each Loan whereby both PS Funding and PS Portfolio are Participants, pursuant to the terms of this Agreement, such ownership/participation interest shall be agreed upon by the Participants and confirmed in writing between the Participants through the use of a joint ledger with Loan-level information that shall be updated upon the Participants owning the Loan;").

[43] *See* Exhibit 2, Portfolio LLC Loan Mgmt. Agreement § 2.

[44] *See* Exhibit 32, Opp Fund LP Agreement §§ 9.01 and 9.02(b) (providing for dissolution to occur upon expiration of the June 30, 2023 Investment Period); *see also id.* §§ 9.02(c)-(d) (dissolutions events include bankruptcy of Opp Fund GP and PSI).

[45] *See id.* § 9.03.

[46] Exhibit 14, Opp Fund PPM at 4 (The Partnership is offering limited partnership interests (the "Limited Partnership Interests" or "Interests") to certain qualified investors as described herein and in the Subscription Document.")

30664905.11

distributions of their pro rata share of net investment income, as well as their return of their invested capital.[47]

25.     The investment strategy for Opp Fund focused on investing in participation interests in Underlying Loans originated or purchased by PSFI, providing warehouse financing to PSFI through a credit facility between PSFI and Opp Fund, and investing in so-called "B-Note Investments," which were subordinated, higher yielding interests in Underlying Loans that allowed the non-subordinated, senior interests in that Underlying Loan to achieve required loan-to-value ratios, although it was also permitted to pursue other real estate related strategies.[48] Opp Fund invested in participation interests through the Opp Fund Participation Agreement which included the same relative rights between itself and PSFI as set forth in the Participation Agreement PSFI had with Funding LLC, Portfolio LLC and the Warehouse Entities described above and in the Reply.[49]

---

[47]  *See* Exhibit 32, Opp Fund LP Agreement §§ 8.02 (withdrawal of capital contributions) and 8.05 (distributions); *see also* Exhibit 14, Opp Fund PPM at 33-35 (describing the same).

[48]  Exhibit 14, Opp Fund PPM at 2-3; Exhibit 32, Opp Fund LP Agreement § 1.03.

[49]  *See* Exhibit 33, Opp Fund Participation Agreement.

30664905.11