

Theo Dubourg
12116 117th Ave Ct E
Puyallup, WA 98374

United States Bankruptcy Court
District of Delaware
824 Market Street North
3rd Floor
Wilmington, DE 19801

Re: Peer Street, Inc., et al., Case No. 23-10815 (LSS)

## OMNIBUS OBJECTION TO THE MOTIONS OF THE DEBTORS TO (A) APPROVE A SALE OF THE DEBTORS' ASSETS AND BID PROCEDURES AND (B) APPROVE CASH MANAGEMENT AND RELATED RELIEF

Dear Judge Silverstein,

Please accept this letter objection, as I am proceeding *pro se*. This objection bears common elements to other objections to the same motions previously filed, but is not a simple copy.

As an investor in PeerStreet's Mortgage Dependent Promissory Notes ("MPDN) and holder of "investable cash" held by Peerstreet as a custodian, I am a creditor of PeerStreet in the bankruptcy case Case No. 23-10815 (LSS).

I respectfully object (this "Objection") to the Debtors' (1) *Motion for Entry of (A) an Order (I) Scheduling a Hearing on the Approval of the Sale of All or Substantially All of the Debtors' Assets Free and Clear of All Encumbrances, (II) Approving Certain Bid Procedures, and the Form and Manner of Notice Thereof, and (III) Granting Related Relief; and (B) an Order (I) Approving Asset Purchase Agreement, (II) Authorizing the Sale of All or Substantially All of the Debtors' Assets Free and Clear of All Encumbrances, and (III) Granting Related Relief* [Docket No. 18] (the "Bid Procedures Motion"), and (2) *Motion Regarding Chapter 11 First Day Motions Debtors Motion for Interim and Final Orders, Pursuant to Sections 105(a), 345, 363, 503(b), 1107(a) and 1 The Debtors in these chapter 11 cases, along with the last four digits of their respective federal tax identification numbers, are: Peer Street, Inc. (8584); PS Funding, Inc. (3268); PeerStreet Licensing, Inc. (9435); Peer Street Opportunity Fund GP, LLC (8491); Peer Street Funding LLC (9485); PSF REO LLC (1013); PS Options LLC (8584); PS Warehouse, LLC (5663); PS Warehouse II, LLC (9252); Peer Street Opportunity Investors II, LP (1586); PS Portfolio-ST1, LLC (1868); PSF Ohio, LLC (9485); PSF TX 1, LLC (9485); PSF TX 2, LLC (2415); PSF TX 4 LLC (9485). The Debtors' service address is c/o Province, LLC 2360 Corporate Circle, Suite 340, Henderson, NV 89074, Attn: David Dunn, Chief Restructuring Officer. Case 23-10815-LSS Doc 169 Filed 08/02/23 Page 1 of 19 {1397.001-W0071900.} 2 1108 of the Bankruptcy Code, Bankruptcy Rule 2015, and Local Rule 2015-2, (A) Authorizing*

*and Approving Continued Use of Cash Management System, (B) Authorizing Use of Prepetition Bank Accounts and Business Forms, (C) Authorizing Continued Performance of Intercompany Transactions in the Ordinary Course of Business and Granting Administrative Expense Status for Postpetition Intercompany Claims and Intercompany Loans, (D) Waiving the Requirements of Section 345(b) on an Interim Basis, and (E) Granting Certain Related Relief Filed By Peer Street, Inc.* [Docket No. 11] (the "Cash Management Motion") and state as follows:

## INTRODUCTION

1. The Bid Procedures Motion should be denied for the following reasons:
   a. Approval of the Bid Procedures Motion and Cash Management Motion in their current form at this early stage is effectively case dispositive and will inevitably lead to substantive consolidation of PSFLLC with some or all of the other Debtors.
   b. No considerations have been shown to alternatives to the sale of assets, in particular to the sale of the mortgage loans in which MDPN holders invested.
   c. In particular, no considerations have been given to the option of selling the rights to service those mortgages and notes to a competent third party which would take over PeerStreet's responsibilities in servicing those notes, for either the same, or a newly agreed-upon fee or share of the interest payments of the loans.
   d. The option of servicing the loans to their maturity in the normal course of business as PeerStreet was servicing them is guaranteed to yield overwhelmingly higher returns to investors and creditors who are MDPN holders in contrast to the sale of the loans, due to the large gap in interest rates between the time those loans were underwritten and funded, and the current credit markets environment.
   e. Transferring the rights to service of the loans to a third-party is part of the contract that investors made with PeerStreet when they chose to invest in the platform and this contract should be upheld.
   f. Allowing PeerStreet to dismiss its obligation to respect its contract with its investors regarding the transfer of the rights to service the loans to a third-party and allowing PeerStreet to proceed with a sale of the assets instead would directly lead financial and reputational damage much beyond PeerStreet's own creditors and investors, and significantly damage the business of PeerStreet's industry peers in the real-estate crowdfunding industry and in other asset-backed crowdfunding industries at large, as the "remote bankruptcy entity" is a central pillar of those industries and *no investors* would have participated and invested in PeerStreet's products in absence of this structure and protection.
   g. Investing the court's time as this point of the proceedings into reviewing the Bid Procedures Motion amounts to an inefficient use of taxpayers' fund as there is no ground to discuss the sale of assets until it has been rationally demonstrated that this would result in higher returns for creditors than upholding PeerStreet's contract with investors to transfer the rights to service the loans and MDPNs.

h. The Debtor's argument to approve the bidding procedure at this early stage, claiming fears of "bidders losing interest" if not swiftly approved, is contradictory to ensuring that the bidding procedure would allow enough time for enough bidders to manifest, to aim at an optimal return to creditors, and lacks any substantial proof.

2. In addition, the Cash Management Motion should also be denied for the following reasons:

a. The Debtors propose to use cash from Peer Street Funding, LLC ("PSFLLC"), which the Debtors maintain is a bankruptcy remote special purpose entity, to fund the majority of costs for the chapter 11 cases for its affiliated Debtors that are not Magnetar borrowers. PSFLLC is a bankruptcy remote special purpose entity with no employees or operations that holds participations in the Mortgage Loans of the Debtors' customers. Because it has no employees or operations and is a cash flowing investment vehicle, it is solvent and has no reason to be in bankruptcy. The Debtors have not demonstrated why PSFLLC's investors should pay for the Debtors' chapter 11 cases when the Mortgage Loans can be serviced or sold outside of bankruptcy at far lower costs and with the prospect of far greater recoveries than in a bankruptcy fire sale.

b. The cash at PSFLLC consists in part of investor money that has yet to be invested by the applicable investor (the "Investable Cash"), and for which PeerStreet is acting as a custodian. Cash held by PeerStreet as a custodian should never be used for anything without an explicit request from the investor for whom PeerStreet is acting as a custodian, and investors have made no such requests for it to be used to fund the chapter 11 case of any Borrowing Debtor.

c. As a result of holding "Investable Cash" as a custodian, PeerStreet should allow investors to withdraw their cash even post-petition as this cash has no reasons to be part of the bankruptcy proceedings.

3. For these reasons and as more fully explained *infra*, the Bid Procedures Motion and the Cash Management Motion should be denied.

## BACKGROUND

### A. PeerStreet's Bankruptcy Remote Entity PSFLLC and the contract with investors

a. PSFLLC is a bankruptcy remote special purpose entity. "Although a 'bankruptcy remote entity' is not defined in the Bankruptcy Code or any other statute, it is commonly recognized in the business world and literature as a structure designed to hold a defined group of assets and to protect those assets from being administered as property of a bankruptcy estate in the event of a bankruptcy filing." Paloian v. LaSalle Bank Nat'l Ass'n (In re Doctors Hosp. of Hyde Park, Inc.), 2013 Bankr. LEXIS 3074, at *389 (Bankr. N.D. Ill. July 17, 2013) (citing, Comm. Bankr. & Corp. Reorganization of Ass'n of Bar of N.Y.C.,

Structured Financing Techniques, 50 Bus. Law. 527, 528-29 (1995)). The goal "is to separate the credit quality of identified assets upon which financing is based from the credit and bankruptcy risks of any entity involved in the financing." Paloian, 2013 Bankr. LEXIS, at *389. 12. PSFLLC was the Debtor entity that faced the more than 10,000 retail and institutional investors (the "Investors") who purchased MPDNs on the Peer Street platform, including the Pacific Creditors, which hold not less than $38 million in claims against PSFLLC on account of MPDNs they purchased from it. The Debtors' website (which is still operating as of the date of this Objection) includes a page called "[w]hat investor protections does PeerStreet have in place," that states:

**"Investments in loans are held in a bankruptcy-remote entity that is separate from our primary corporate entity. In the unlikely event PeerStreet no longer remains in business, a third-party "special member" will step in to manage pending loan investments and ensure that investors continue to receive interest and principal payments.**
Additionally, from the time funds are received in an investor account until an investment closes (but not while funds are invested), investor funds are held in an Investors Trust Account with Wells Fargo and FDIC insurance of up to $250,000."

See
https://info.peerstreet.com/faqs/what-investor-protections-does-peerstreet-have-i n-place/(emphasis added).

b. As evidenced by the Debtors' website, Investors have every reason to believe that they were investing their money in an entity (PSFLLC) that had no likelihood of filing for bankruptcy. Even if PSI filed for bankruptcy, Investors were expressly advised that there was no risk that PSFLLC's assets would be substantively consolidated or otherwise used to satisfy the claims of its parent company.

c. PeerStreet's bankruptcy remote structure is not to be seen as a simple legal structure made as part of general management of its business. The concept of "bankruptcy remote" structures was at the forefront of PeerStreet's advertised products to investors and I ask the court to consider that PeerStreet's business would have never gained any traction had this investor protection not been in place, it is a core part of PeerStreet's contract with investors. It is commonly *required* in the industry for this type of protection to be in place for investors and not doing so would have placed PeerStreet in a position where its products would have had absolutely no chances to compete with any of its peers. PeerStreet is not the first company of its industry to file for bankruptcy and be forced to wind its business down and investors require bankruptcy-remote protections from companies in this industry for this reason.

d. The central role and explicit contract with investors regarding the usage of a "bankruptcy-remote" structure as investors protection is also evidenced by the

number of "Letters regarding investments" notes from "retail" investors which mention the "bankruptcy-remote" protection. Intricate corporate structures details of a private company would not have such visibility with retail investors, but an explicit contract widely advertised and touted by PeerStreet to its retail investors, would.

e.  The central role and explicit contract with investors regarding the usage of a "bankruptcy-remote" structure as investors protection is also evidenced by this matter being central to two other objections by PACIFIC FUNDING TRUST 1002 AND PACIFIC RBLF FUNDING TRUST  [Docket No 169] and SEAN QUINN [Docket No 107].

## B.  PeerStreet's role as a custodian of investors' "Investable Cash"

a.  In addition to PeerStreet's 4 products (MDPNs ("loans"), "Pocket" (Warehouse financing), "Portfolio", and "Opportunity Fund"), PeerStreet also acts as a custodian for investors with respect to their "Investable Cash". PeerStreet markets and names this cash "Investable Cash" themselves on their website:



b.  "Investable cash" is the cash investors deposit into their PeerStreet account, the same way they would deposit cash into a stock broker, to then be used to invest into PeerStreet products as the investors see fit.

c.  "Investable Cash" is/was marketed to investors as being always-available cash that investors had 100% control over, this included immediately and at any time investing this cash into MDPNs, or requesting a withdrawal at any time.

d.  As a result, PeerStreet marketed itself as acting as a custodian to investors' funds while the funds were "Investable Cash".

e.  To reinforced its marketing as a custodian regarding "Investable Cash", PeerStreet advertised the "Investable Cash" as being held insured by the FDIC, a typical practice of custodians:

Investments in loans are held in a bankruptcy-remote entity that is separate from our primary corporate entity. In the unlikely event PeerStreet no longer remains in business, a third-party "special member" will step in to manage pending loan investments and ensure that investors

continue to receive interest and principal payments. Additionally, from the time funds are received in an investor account until an investment closes (but not while funds are invested), investor funds are held in an Investors Trust Account with Wells Fargo and FDIC insurance of up to $250,000.

f.  As a custodian, PeerStreet should as such be able, and allowed, to let investors withdraw their "Investable Cash" held as a custodian by PeerStreet even during the proceedings of the bankruptcy case, as this cash is only held by PeerStreet as a custodian and has no reasons to be required for the funding of anything other than as explicitly directly by investors.

## RESERVATION OF RIGHTS

I reserve the right to amend this Objection and to make additional arguments at future hearings.

**WHEREFORE**, I respectfully request that the Court deny the Bid Procedures Motion and Cash Management Motion, and grant such other relief as the Court deems appropriate under the circumstances.

Respectfully,

Theo Dubourg

Date August 15, 2023
Puyallup, Washington

Misuses may be a violation of federal law. This package is not for resale. EP14F © U.S. Postal Service; July 2022. All rights reserved.
This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® and Priority Mail International® shipments.

PRIORITY MAIL
FLAT RATE ENVELOPE
POSTAGE REQUIRED

9405 8301 0935 5016 3356 20 0080 5001 0001 9801

usps.com
$8.05
US POSTAGE
Insured


U.S. POSTAGE PAID

08/16/2023          Mailed from 98374

# PRIORITY MAIL®

08/18/2023

RDC 02

C012

THEO DUBOURG
12116 117TH AVENUE CT E
PUYALLUP WA 98374-4048

U.S. Bankruptcy Court District of Delaware
Judge Silverstein
824 N MARKET ST # 3
WILMINGTON DE 19801-3024



USPS TRACKING #

9405 8301 0935 5016 3356 20



# UNITED STATES
# POSTAL SERVICE®

# PRIORITY®
# MAIL

d delivery date specified for domestic use.

c shipments include $100 of insurance (restrictions apply).*

acking® service included for domestic and many international destination

international insurance.**

ed internationally, a customs declaration form is required.

es not cover certain items. For details regarding claims exclusions see the
il Manual at *http://pe.usps.com.*

ational Mail Manual at *http://pe.usps.com* for availability and limitations of coverage.

RATE ENVELOPE
E  ■ ANY WEIGHT

CKED ■ INSURED

To schedule free Package Pickup,
scan the QR code.



USPS.COM/PICKUP

EP14F July 2022
OD: 12 1/2 x 9 1/2

S00001000014