**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Peer Street, Inc., *et al.*,[1] | Case No. 23-10815 (LSS) |
| | (Jointly Administered) |
| Debtors. | Re: Docket Nos. 11, 18, 169, and 257 |

**STATEMENT OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO THE PACIFIC CREDITORS' OMNIBUS OBJECTION TO THE DEBTORS' BID PROCEDURES AND CASH MANAGEMENT MOTIONS**

The Official Committee of Unsecured Creditors (the "Committee") of Peer Street, Inc., Inc., *et al.* (collectively, "PeerStreet" or the "Debtors"), by and through its proposed undersigned counsel, hereby files this statement (the "Statement") in response to the *Omnibus Objection of Pacific Funding Trust 1002 and Pacific RBLF Funding Trust to the Motions of the Debtors to (A) Approve a Sale of the Debtors' Assets and Bid Procedures and (B) Approve Cash Management and Related Relief* [Docket No. 169] (the "Objection"). In support of this Statement, the Committee respectfully represents as follows:

**STATEMENT**

1. The Committee is persuaded that the Debtors' proposed bidding procedures and continued use of their cash management system should be approved. However, the Committee remains laser-focused on ensuring that PeerStreet's investors are not shortchanged. As the Debtors are aware, the Committee reserves the right to object to any sale that it believes will result in lower

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their respective federal tax identification numbers, are: Peer Street, Inc. (8584); PS Funding, Inc. (3268); PeerStreet Licensing, Inc. (9435); Peer Street Opportunity Fund GP, LLC (8491); Peer Street Funding LLC (9485); PSF REO LLC (1013); PS Options LLC (8584); PS Warehouse, LLC (5663); PS Warehouse II, LLC (9252); Peer Street Opportunity Investors II, LP (1586); PS Portfolio-ST1, LLC (1868); PSF Ohio, LLC (9485); PSF TX 1, LLC (9485); PSF TX 2, LLC (2415); PSF TX 4 LLC (9485). The Debtors' service address is c/o Province, LLC 2360 Corporate Circle, Suite 340, Henderson, NV 89074, Attn: David Dunn, Chief Restructuring Officer.

ny-2608479

recoveries to PeerStreet investors as compared to a managed "run off" of the PeerStreet loan portfolio or other alternative restructuring transaction.

2.  Since its appointment just over one month ago, the Committee has been in near-constant communication with the retail investors that purchased fractional loan interests and made other investments on PeerStreet's platform. These investors are highly skeptical of the Debtors' sale process and almost uniformly believe that an alternative restructuring transaction (such as a managed "run off" of the underlying mortgage assets) would improve their recoveries. The Committee is sympathetic to their concerns. Five of the seven members of the Committee hold fractional loan interests and all seven members hold exposure to the loan portfolio that PeerStreet manages. Each member of the Committee is highly incentivized to ensure that the value of the underlying loan assets is maximized.

3.  In parallel with the sale process, the Committee has been diligencing alternative restructuring transactions, including different options for a "run off" of the PeerStreet loan portfolio. The Committee believes the bidding process has value because it will establish a useful comparison point for investor recoveries that the Committee can use to benchmark alternative transactions. This is important because a "run off" of the loan portfolio will not be free. PeerStreet will incur significant costs, including servicing fees, potential incentive fees demanded by servicers, and legal and other structuring fees. The time-value of money is also another critical factor.

4.  At this point, the Committee does not yet know which path will provide the highest recovery. The Committee intends to compare the bids received by the Debtors with potential alternative transactions and advocate strongly for the option that nets the highest recovery for

PeerStreet investors. To be sure, the Committee will be prepared to object to approval of any transaction that it believes falls short.

5.  In their objection, the Pacific Creditors argue that the fractional loan interests (the "MDPNs") are participations and, therefore, the underlying mortgage assets cannot be sold in a bankruptcy process. The Committee finds the Pacific Creditors' participation argument to be persuasive, but disagrees with their conclusion that the loans cannot be sold. Even if the MPDNs are loan participations, the MPDN investors expressly consented to the proposed sale. The "Master Mortgage Payment Dependent Note" issued to each MDPN investor contained a "sale clause," which authorized PeerStreet to sell the underlying loans:

> **Sale Clause**. Subject to compliance with the [Securities Act of 1933] and applicable securities laws and regulations, [PeerStreet] may sell, convey, assign or otherwise transfer (a) all or any part of the corresponding mortgage loan or (b) any interest in the corresponding mortgage loan, whether any such sale, conveyance, assignment or other transfer occurs directly or indirectly, voluntarily or involuntarily or by operation of law, without the prior written consent of the Investor.

*See Form Instrument Master Mortgage Payment Dependent Note* § 6.[2] The existence of the sale clause was also disclosed in the offering memorandum that PeerStreet provided to MPDN investors. *See PPM Supplement: Mortgage-Payment-Dependent Notes ("MPDN") Offered by Peer Street Funding, LLC* (the "MPDN Supplement") § 3.[3] Thus, even if the Pacific Creditors are correct on the participation issue, they have already consented to the bidding process. *See, e.g.*, *In*

---

[2] The forms of notes issued to investors for the Debtors' other products contain substantially similar clauses. *See Form Instrument Redeemable Warehouse Note* § 6 (providing that the issuing Debtor may sell the underlying loans without the prior written consent of the respective investors); *see also Form Instrument Payment-Dependent Note* § 7 (same). The various forms of notes are included in the supplements to the Debtors' private placement memorandum. *See Debtors' Omnibus Reply to Objections to Bidding Procedures and Cash Management Motions: Docket Numbers 11 and 18* [Docket No. 257] (the "Debtors' Reply"), Exhibits 3, 13, 21, and 24.

[3] A copy of the MPDN Supplement is attached to the Debtors' Reply as Exhibit 13.

*re Enron Corp. Sec., Derivative & ERISA Litig.*, 279 F.R.D. 395, 407 (S.D. Tex. 2011) ("[S]ince a participation is, by its nature, contractual, the parties to a participation agreement may choose whatever terms they wish and the agreement will generally be enforced as to its terms.") (internal quotations and citations omitted).

6. **The time to decide the participation issue—if it needs to be decided at all—is the plan confirmation stage.** Since the beginning of these cases, the Debtors have assured the Committee that their forthcoming chapter 11 plan will distribute the proceeds of each MPDN-related loan to the corresponding MPDN investors. As the Committee and the Debtors have discussed, this could be achieved if the Debtors propose a plan that leaves unimpaired the investor claims at PSFLLC. If the Debtors propose such a plan, then the participation issue will not need to be decided, because each MDPN investor will receive its ratable share of the proceeds (whether via sale, run off, or otherwise) of its underlying loan.

7. However, if the Debtors propose a chapter 11 plan that impairs creditors at PSFLLC, then the participation issue will take center stage. If the MPDN interests are participations, as the Pacific Creditors suggest, then each MPDN investor will remain entitled to its ratable share of the proceeds of its underlying loan. However, if the MPDN interests are unsecured promissory notes, as the Debtors suggest, then individual MPDN investors arguably could be required to share their recoveries with other PeerStreet investors or with holders of other claims that may arise at PSFLLC. **The Committee believes that the Court should hear from all investors at that juncture, and that the participation issue should not be decided prematurely just because it was raised incidentally in connection with the Debtors' bidding procedures.**

## **CONCLUSION**

The Committee believes that the bid procedures should be approved so that the Debtors are able to establish a useful comparison point for recoveries to PeerStreet investors. But the Committee will object to any sale that does not yield the highest possible recoveries for PeerStreet investors, as compared to other available options. The Committee also believes that the Debtors' continued use of their cash management system should be approved.

[*Remainder of this page intentionally left blank*]

| | |
|---|---|
| Dated: August 21, 2023<br>Wilmington, Delaware | Respectfully submitted,<br><br>*/s/ Kevin M. Capuzzi*<br>Jennifer R. Hoover (DE No. 5111)<br>Kevin M. Capuzzi (DE No. 5462)<br>John C. Gentile (DE No. 6159)<br>**BENESCH, FRIEDLANDER,**<br>**COPLAN & ARONOFF LLP**<br>1313 North Market Street, Suite 1201<br>Wilmington, DE 19801<br>Telephone: (302) 442-7010<br>Facsimile: (302) 442-7012<br>jhoover@beneschlaw.com<br>kcapuzzi@beneschlaw.com<br>jgentile@beneschlaw.com<br><br>-and-<br><br>Lorenzo Marinuzzi (admitted *pro hac vice*)<br>Benjamin Butterfield (admitted *pro hac vice*)<br>Raff Ferraioli (admitted *pro hac vice*)<br>**MORRISON & FOERSTER LLP**<br>250 West 55th Street<br>New York, NY 10019-9601<br>Telephone: (212) 468-8000<br>Facsimile: (212) 468-7900<br>lmarinuzzi@mofo.com<br>bbutterfield@mofo.com<br>rferraioli@mofo.com<br><br>*Proposed Counsel to the Official Committee of Unsecured Creditors* |