FILED
2023 AUG 22  AM 9:45
CLERK
U.S. BANKRUPTCY COURT
DISTRICT OF DELAWARE

August 8, 2023

Sean P. Drower
31 Katie Lane
Swanzey, New Hampshire
03446

Chief Judge Laurie Selber Silverstein
United States Bankruptcy Court
District of Delaware
824 Market Street North
6th floor
Wilmington, DE, 19801

RE: Case no: 23-10815, Peer Street *et al.*

Dear Honorable Chief Judge Selber Silverstein:

This is a brief letter to register my concerns as an Unsecured Creditor about the Peer Street, Inc bankruptcy case and, specifically, Peer Street's misrepresentation of the nature of their mortgage backed loan investments.

The attachment (1) enclosed, is from Peer Street's web page titled "Investor Agreement" (https://www.peerstreet.com/content/investor-agreement). Section 3, the Terms, clearly states that my particular investment will be held in my account, is not transferable, and is subject to default, and that I could lose my money if that particular property defaults on its loan.

This seems fair to me. This isn't what is happening - instead, Peer Street is attempting to co-mingle the mortgaged properties regardless of loan payment status and sell them to bidders.

Peer Street promised to preserve the loans with a bankruptcy remote entity. From the webpage titled "What Investor Protections Does Peer Street Have in Place?" Peer Street proclaims that "In the unlikely event Peer Street no longer remains in business, a third party "special member" will step in to manage pending loan investments and ensure that investors continue to receive interest and principal payments." (https://info.peerstreet.com/faqs/what-investor-protections-does-peerstreet-have-in-place/, attachment (2)).

Also, I had investable cash in my account which has been inaccessible. I do not want this money used to fund the related shell / funnel entity Peer Street Fundings LLC's operating costs or to fund Peer Street Inc's bankruptcy costs.

I invested in Peer Street, Inc. and never gave Peer Street Inc permission to use my funds for anything other than funding my chosen investments. I was promised that if I took the risk of choosing and investing in a particular property, Peer Street would continue in some form or name to manage that investment for me.

I respectfully ask that you consider these points in your ruling about disposition of the Peer Street Inc assets.

Sincerely,

*[signature]*

Sean P. Drower


Attachments:
    (1) Investor Agreement
    (2) Investor Protections
    (3) Peer Street Statement

# Investor Agreement

The following terms constitute a binding agreement ("Investor Agreement") between you and Peer Street, Inc., a Delaware corporation and Peer Street Funding, LLC, a Delaware limited liability company (collectively, "PeerStreet ", "we", or "us"). This Investor Agreement will govern all purchases of promissory notes of PeerStreet that are dependent for payment on payments that PeerStreet receives from specific loan investments (the "Notes") that you make from us. Please read this Investor Agreement and the PeerStreet Private Placement Memorandum dated October 26, 2014 (the "PPM") carefully and print and retain a copy of these documents for your records.

The Notes are further described in the PPM. We have elected to use the PeerStreet.com web platform ("PeerStreet Platform" or "Platform") to facilitate the marketing and purchase of Notes. Please read the PeerStreet.com Terms of Use available on the PeerStreet.com website. Each time you submit a purchase order through the PeerStreet Platform, you are (a) accepting and agreeing to the following terms, (b) accepting and agreeing to the PeerStreet.com Terms of Use and PPM, (c) agreeing to transact business with us and receive communications relating to the Notes electronically, and (d) agreeing to have any dispute with us resolved by binding arbitration.

You **acknowledge** that this Investor Agreement, along with the PPM has been delivered to you via the Platform, and that you have read and understood each document.

In consideration of the covenants, agreements, representations and warranties hereinafter set forth, and for other good and valuable consideration, receipt of which is hereby acknowledged, it is agreed as follows:

## 1. Purchase of Notes

Subject to the terms and conditions of this Investor Agreement, we will provide you the opportunity through the PeerStreet web platform:

- To review requests for loans or requests to participate or invest in loans that PeerStreet has received from borrowers or from lender partners (collectively, a "Loan Investment" in the singular and "Loan Investments" in the plural);

- To purchase Notes through the Platform, with each such Note associated with, and dependent on, a specific Loan Investment (the Notes will have a minimum

- denomination of $1,000, or such other amount as we may designate from time to time); and
- To instruct PeerStreet to apply the proceeds from the sale of each Note you purchase to the funding of a specific Loan Investment you have designated on the Platform.

The purchase price for any Notes you purchase through the Platform will equal 100% of the principal amount of the Notes that you decide to purchase. The Notes, and your rights as an investor in the Notes, are at all times subject to this Investor Agreement, which will also be available on the Platform for your reference and review.

You must commit to purchase a Note through the Platform to fund a Loan Investment prior to the closing of that Loan Investment. At the time you commit to purchase a Note you must have sufficient funds in your account with PeerStreet to complete the purchase. Your account will be a non-interest bearing, commingled, custodial deposit account with a bank that is held by PeerStreet for the benefit of identified investors and administered in a manner intended to allow for "pass through" deposit insurance coverage for the interest of each investor. You may fund your account with PeerStreet at any point after you register on the Platform and provide PeerStreet the authority to open the account by electronic funds or wire transfer. You will not have access to any funds associated with a Loan Investment after you make a purchase commitment unless and until PeerStreet has notified you that the Loan Investment will not be funded. Once you make a funding commitment, it is irrevocable regardless of whether the full amount of the Loan Investment request is funded. If the Loan Investment does not close, then PeerStreet will inform you and release you from your purchase commitment.

Notes are issued in electronic form on the Platform as soon as practicable after completion of funding and due diligence, and you will not receive a physical instrument. Instead, the Notes you have purchased are visible through your account on the Platform. There, you can view the number of Notes you own, as well as other details, such as the interest rate and interest payment date.

## 2. Issuance

Each time you purchase a Note, it will be issued immediately following the closing of the Loan Investment that you have selected on the Platform. Loan Investments are anticipated to close no later than the end of their designated posting period unless (1) the borrower or lender partner declines the Loan Investment prior to closing, in which case PeerStreet will release you from your purchase commitment; (2) lender commitments for the entire amount of the Loan Investment request have been received earlier, in which case the Loan Investment may close

earlier; (3) the loan request is canceled by PeerStreet for reasons relating to the integrity of the Loan Investment that corresponds to the Note discovered by PeerStreet during the due diligence process; or (4) there are insufficient commitments from PeerStreet's investors to fully fund the loan. In the event of any of the foregoing, you will be notified via the Platform or email.

## 3. Terms of the Notes

The Notes shall have the terms and conditions described in this Investor Agreement, the PPM and the particular Note related to a specific loan. These documents will be available for you to review on the Platform. The interest rate, maturity date and other terms of the corresponding Loan Investments will be described in the loan requests on the Platform, and the corresponding Notes.

- **Electronic.** The Notes are held in electronic form. There is no physical certificate to represent the Note. The Notes you own are electronically represented in your account on the Platform.

- **Interest Rate.** For some Notes, the interest rate you will receive on your Notes may be different from the rate other investors receive on Notes corresponding to the same loan. For example, in some instances a Loan Investment may be divided into different categories based on risk. Those investors who agree to take the riskier portion of a particular Loan Investment may receive a higher rate of return. You will immediately see what interest rate your Notes will return and have discretion whether or not to buy a particular Note based on your analysis of the return as it relates to the risk.

- **Coupon.** The coupon payment represents the interest we will pay to you on the money you lend to us. It is calculated by multiplying your interest rate by the principal amount you invest. Coupon payment frequency can vary from Loan Investment to Loan Investment and may be monthly, quarterly, semi-annual, or annual. The frequency of coupon payments for a particular Loan Investment will be disclosed and described to you on the Platform. The final payment is expected to be paid at maturity; however, many loans will have no pre-payment penalty, meaning that if a borrower pays off the balance of their loan prior to the original maturity date, you will lose the opportunity to collect future interest payments relating to the original term of the Note. Notice will be given to you via the Platform as to the date of the coupon payment. Interest owed to you will begin accruing on the date a particular Loan Investment is closed by PeerStreet, which will likely not correspond with the date you commit your funds.

- **Term.** The term of the Notes for a corresponding Loan Investment will be disclosed and described to you on the Platform.
- **Transferability.** Notes must stay in your account on the Platform, and cannot be resold or transferred to others, except as described in the PPM.
- **Notes May Lose Value.** The Notes you purchase are not guaranteed investments. They represent a claim on the repayment and interest of a loan that we, or a third party partner, will issue to a borrower. If the borrower or lender partner defaults on its repayment obligation to us, we may not be able to repay the Note you hold. Because of our agreement with the borrower or lender partner, we have the authority to attempt to resolve the default, and in extreme cases foreclose on an underlying asset the borrower has pledged as collateral for its loan, if any exists. Depending on our ability to resolve the default or dispose of the underlying asset, we may only be able to return a portion of the amount you have invested and in some cases, you may lose the entire value of your investment. If the borrower or lender partner meets its entire obligation, we will be able to return the full amount of your investment plus interest owed.

## 4. Default

The Notes we issue are dependent on payments we receive from loans we provide to borrowers or agreements we have with third party lenders. If a borrower or third party lender fails to meet its obligations under the agreement we have with them, that party will be in default. We will endeavor to resolve the default condition so the borrower or third party lender can continue paying its obligation and will notify you via the Platform or by email of any material default. In some circumstances, we may not be able to resolve a default. In those circumstances, we will use our discretion to act in a manner that we believe will recover as much money as possible, which may include, without limitation, foreclosing on the property, receiving a deed in lieu of foreclosure, pursuing other legal action, or pursuing a work-out. Our goal at that point will be to dispose of the asset and recover as much money as possible, distributing what we recover to you in the form of Note repayment. This may be less than what you initially invested and you may lose your entire investment (see Notes May Lose Value, above). In attempting to resolve a default scenario, we will make commercially reasonable efforts. In the foregoing cases, we will return what we recover to you (less fees and expenses), to the extent we recover anything. We are not under any obligation to return the full amount of your investment, but have outlined in this Investor Agreement, processes we have in place to attempt recovery of funds, if such recovery is possible.

## 5. Relationship with Borrower

You do not have a legal relationship with the borrower or PeerStreet's lender partners and hereby acknowledge this. A borrower or lender partner who receives a loan or funds from PeerStreet only has a legal relationship with PeerStreet and is obligated only to us. There is no privity of contract between you or the borrower or lender partner. PeerStreet is the only entity you have a legal relationship with and is the only entity with which you have any contractual privity.

## 6. Your Covenants and Acknowledgements

You agree that you have no right to, and shall not, make any attempt, directly or through any third party, to collect from a borrower or lender partner on your Notes or the corresponding Loan Investments. YOU UNDERSTAND AND ACKNOWLEDGE THAT BORROWERS OR LENDER PARTNERS MAY DEFAULT ON THEIR PAYMENT OBLIGATIONS UNDER THE LOANS AND THAT SUCH DEFAULTS WILL REDUCE THE AMOUNTS, IF ANY, YOU MAY RECEIVE UNDER THE TERMS OF ANY NOTES YOU HOLD ASSOCIATED WITH SUCH LOANS. You and PeerStreet agree that the Notes are intended to be indebtedness of PeerStreet for U.S. federal income tax purposes. You agree that you will not take any position inconsistent with such treatment of the Notes for tax, accounting, or other purposes, unless required by law. You further acknowledge that the Notes may be subject to the original issue discount rules of the Internal Revenue Code of 1986, as amended, as described in the PPM. You acknowledge that you are prepared to bear the risk of loss of your entire purchase price for any Notes you purchase.

## 7. Your Financial Suitability Acknowledgments, Representations, Warranties, and Covenants

You represent and warrant that you satisfy the minimum financial suitability standards applicable to the state in which you reside; and you covenant that you will abide by the maximum investment limits, each as set forth below or as may be set forth in the PPM or any prospectus supplement on the Platform. You agree to provide any additional documentation reasonably requested by us, as may be required by the securities administrators or regulators of any state, to confirm that you meet such minimum financial suitability standards and have satisfied any maximum investment limits. You understand and acknowledge that: you are an "Accredited Investor" as determined pursuant to Rule 501(a) of Regulation D under the Securities Act of 1933. You understand that the Notes will not be listed on any securities exchange, that there may be no trading platform for the Notes, that any trading of Notes must

be conducted in accordance with federal and applicable state securities laws and that Note purchasers should be prepared to hold the Notes they purchase until the Notes mature.

## 8. PeerStreet Acknowledgements, Representations and Warranties

PeerStreet represents and warrants to you, as of the date of this Investor Agreement and as of any date that you commit to purchase Notes, that: (a) it is duly organized and is validly existing as a corporation in good standing under the laws of Delaware and has corporate power to enter into and perform its obligations under this Investor Agreement; (b) this Investor Agreement has been duly authorized, executed and delivered by PeerStreet; (c) the Notes have been duly authorized and, following payment of the purchase price by you and electronic execution, authentication and delivery to you, will constitute valid and binding obligations of PeerStreet enforceable against us in accordance with their terms, except as the enforcement thereof may be limited by applicable bankruptcy, insolvency or similar laws; (d) it has complied in all material respects with applicable federal, state and local laws in connection with the offer and sale of the Notes; and (f) PeerStreet has made and will make commercially reasonable efforts to enforce its interest in the Loan Investments on your behalf.

YOU WILL ONLY RECEIVE PAYMENT ON ANY NOTES YOU PURCHASE IF PEERSTREET RECEIVES PAYMENTS ON THE UNDERLYING LOANS ASSOCIATED WITH THOSE NOTES. WE DO NOT WARRANT OR GUARANTEE IN ANY WAY THAT YOU WILL RECEIVE ALL OR ANY PORTION OF THE PRINCIPAL OR INTEREST YOU EXPECT TO RECEIVE ON ANY NOTE OR REALIZE ANY PARTICULAR OR EXPECTED RATE OF RETURN. PEERSTREET ALSO DOES NOT MAKE ANY REPRESENTATIONS REGARDING OUR ABILITY TO PAY THE NOTES.

## 9. Your Additional Representations and Warranties

You represent and warrant to PeerStreet, as of the date of this Investor Agreement and as of any date that you commit to purchase Notes, that: (a) you have the power to enter into and perform your obligations under this Investor Agreement; (b) this Investor Agreement has been duly authorized, executed and delivered by you; (c) you have received, read and understood the PPM; (d) in connection with this Investor Agreement, you have complied in all material respects with applicable federal, state and local laws; and (e) you have made your decisions in connection with your consideration of any risks which have been disclosed to you and any risks which may not have been disclosed to you but which may nevertheless impact our ability to meet our obligations to you.

## 10. No Advisory Relationship

You acknowledge and agree that the purchase and sale of the Notes pursuant to this Investor Agreement is an arms-length transaction between you and PeerStreet. In connection with the purchase and sale of the Notes, PeerStreet is not acting as your agent or fiduciary. We assume no advisory or fiduciary responsibility in your favor in connection with the purchase and sale of the Notes. We have not provided you with any legal, accounting, regulatory or tax advice with respect to the Notes. You have consulted your own legal, accounting, regulatory and tax advisors to the extent you have deemed appropriate.

## 11. Limitations on Damages

IN NO EVENT SHALL EITHER PARTY BE LIABLE TO THE OTHER PARTY FOR ANY LOST PROFITS OR SPECIAL, EXEMPLARY, CONSEQUENTIAL OR PUNITIVE DAMAGES, EVEN IF INFORMED OF THE POSSIBILITY OF SUCH DAMAGES. FURTHERMORE, NEITHER PARTY MAKES ANY REPRESENTATION OR WARRANTY TO THE OTHER REGARDING THE EFFECT THAT THIS AGREEMENT MAY HAVE UPON THE FOREIGN, FEDERAL, STATE OR LOCAL TAX LIABILITY OF THE OTHER.

## 12. Further Assurances

The parties agree to execute and deliver such further documents and information as may be reasonably required in order to effectuate the purposes of this Investor Agreement.

## 13. Entire Investor Agreement

In addition to the terms of this Investor Agreement, you are bound to the terms of each other agreement to which you agree as a user of the Platform, including, without limitation, each of the terms of the Terms of Use, the PPM, the Consent to Electronic Transactions and Disclosures, your Representations Regarding Use of the Platform, and any Series Note Listing (as defined in the PPM) for a series of Notes in which you invest.

## 14. Miscellaneous

The terms of this Investor Agreement shall survive until the maturity of the Notes purchased by you. The parties acknowledge that there are no third party beneficiaries to this Investor Agreement. You may not assign, transfer, sublicense or otherwise delegate your rights or responsibilities under this Investor Agreement to any person without PeerStreet's prior written consent. Any such assignment, transfer, sublicense or delegation in violation of this section

shall be null and void. This Investor Agreement shall be governed by the laws of the State of Delaware without regard to any principle of conflict of laws that would require or permit the application of the laws of any other jurisdiction. Any waiver of a breach of any provision of this Investor Agreement will not be a waiver of any subsequent breach. Failure or delay by either party to enforce any term or condition of this Investor Agreement will not constitute a waiver of such term or condition. If at any time subsequent to the date hereof, any of the provisions of this Investor Agreement shall be held by any court of competent jurisdiction to be illegal, void or unenforceable, such provision shall be of no force and effect, but the illegality and unenforceability of such provision shall have no effect upon and shall not impair the enforceability of any other provisions of this Investor Agreement. The headings in this Investor Agreement are for reference purposes only and shall not affect the interpretation of this Investor Agreement in any way.

## 15. Arbitration

- Either party to this Investor Agreement may, at its sole election, require that the sole and exclusive forum and remedy for resolution of a Claim (as defined below) be final and binding arbitration pursuant to this section 17 (the "Arbitration Provision"), unless you opt out as provided in section 17(b) below. As used in this Arbitration Provision, "Claim" shall include any past, present, or future claim, dispute, or controversy involving you (or persons claiming through or connected with you), on the one hand, and PeerStreet (or persons claiming through or connected with PeerStreet ), on the other hand, relating to or arising out of this Investor Agreement, any Note, the Platform, and/or the activities or relationships that involve, lead to, or result from any of the foregoing, including (except to the extent provided otherwise in the last sentence of section 17(f) below) the validity or enforceability of this Arbitration Provision, any part thereof, or the entire Investor Agreement. Claims are subject to arbitration regardless of whether they arise from contract; tort (intentional or otherwise); a constitution, statute, common law, or principles of equity; or otherwise. Claims include matters arising as initial claims, counter-claims, cross-claims, third-party claims, or otherwise. The scope of this Arbitration Provision is to be given the broadest possible interpretation that is enforceable.

- You may opt out of this Arbitration Provision for all purposes by sending an arbitration opt out notice to PeerStreet that is received at the specified address within 30 days of the date of your electronic acceptance of the terms of this Investor Agreement. The opt

out notice must clearly state that you are rejecting arbitration; identify the Investor Agreement to which it applies by date; provide your name, address, and social security number; and be signed by you. You may send the opt out notice in any manner you see fit as long as it is received at the specified address within the specified time. No other methods can be used to opt out of this Arbitration Provision. If the opt out notice is sent on your behalf by a third party, such third party must include evidence of his or her authority to submit the opt out notice on your behalf.

- The party initiating arbitration shall do so with the American Arbitration Association (the "AAA") or JAMS. The arbitration shall be conducted according to, and the location of the arbitration shall be determined in accordance with, the rules and policies of the administrator selected, except to the extent the rules conflict with this Arbitration Provision or any countervailing law. In the case of a conflict between the rules and policies of the administrator and this Arbitration Provision, this Arbitration Provision shall control, subject to countervailing law, unless all parties to the arbitration consent to have the rules and policies of the administrator apply.

- If we elect arbitration, we shall pay all the administrator's filing costs and administrative fees (other than hearing fees). If you elect arbitration, filing costs and administrative fees (other than hearing fees) shall be paid in accordance with the rules of the administrator selected, or in accordance with countervailing law if contrary to the administrator's rules. We shall pay the administrator's hearing fees for one full day of arbitration hearings. Fees for hearings that exceed one day will be paid by the party requesting the hearing, unless the administrator's rules or applicable law require otherwise, or you request that we pay them and we agree to do so. Each party shall bear the expense of its own attorneys fees, except as otherwise provided by law. If a statute gives you the right to recover any of these fees, these statutory rights shall apply in the arbitration notwithstanding anything to the contrary herein.

- Within 30 days of a final award by the arbitrator, any party may appeal the award for reconsideration by a three-arbitrator panel selected according to the rules of the arbitrator administrator. In the event of such an appeal, any opposing party may cross-appeal within 30 days after notice of the appeal. The panel will reconsider de novo all aspects of the initial award that are appealed. Costs and conduct of any appeal shall be governed by this Arbitration Provision and the administrator's rules, in the same way as the initial arbitration proceeding. Any award by the individual arbitrator that is not subject to appeal, and any panel award on appeal, shall be final and binding, except for

any appeal right under the Federal Arbitration Act (FAA), and may be entered as a judgment in any court of competent jurisdiction.

- We agree not to invoke our right to arbitrate an individual Claim you may bring in Small Claims Court or an equivalent court, if any, so long as the Claim is pending only in that court. NO ARBITRATION SHALL PROCEED ON A CLASS, REPRESENTATIVE, OR COLLECTIVE BASIS (INCLUDING AS PRIVATE ATTORNEY GENERAL ON BEHALF OF OTHERS), EVEN IF THE CLAIM OR CLAIMS THAT ARE THE SUBJECT OF THE ARBITRATION HAD PREVIOUSLY BEEN ASSERTED (OR COULD HAVE BEEN ASSERTED) IN A COURT AS CLASS REPRESENTATIVE, OR COLLECTIVE ACTIONS IN A COURT. Unless consented to in writing by all parties to the arbitration, no party to the arbitration may join, consolidate, or otherwise bring claims for or on behalf of two or more individuals or unrelated corporate entities in the same arbitration unless those persons are parties to a single transaction. Unless consented to in writing by all parties to the arbitration, an award in arbitration shall determine the rights and obligations of the named parties only, and only with respect to the claims in arbitration, and shall not (a) determine the rights, obligations, or interests of anyone other than a named party, or resolve any Claim of anyone other than a named party; nor (b) make an award for the benefit of, or against, anyone other than a named party. No administrator or arbitrator shall have the power or authority to waive, modify, or fail to enforce this section 17(f), and any attempt to do so, whether by rule, policy, arbitration decision or otherwise, shall be invalid and unenforceable. Any challenge to the validity of this section 17(f) shall be determined exclusively by a court and not by the administrator or any arbitrator.

- This Arbitration Provision is made pursuant to a transaction involving interstate commerce and shall be governed by and enforceable under the FAA. The arbitrator will apply substantive law consistent with the FAA and applicable statutes of limitations. The arbitrator may award damages or other types of relief permitted by applicable substantive law, subject to the limitations set forth in this Arbitration Provision. The arbitrator will not be bound by judicial rules of procedure and evidence that would apply in a court. The arbitrator shall take steps to reasonably protect confidential information.

- This Arbitration Provision shall survive (i) suspension, termination, revocation, closure, or amendments to this Investor Agreement and the relationship of the parties; (ii) the bankruptcy or insolvency of any party or other person; and (iii) any transfer of any loan or Note or any other promissory note(s) which you owe, or any amounts owed on such loans or notes, to any other person or entity. If any portion of this Arbitration Provision

other than section 17(f) is deemed invalid or unenforceable, the remaining portions of this Arbitration Provision shall nevertheless remain valid and in force. If an arbitration is brought on a class, representative, or collective basis, and the limitations on such proceedings in section 17(f) are finally adjudicated pursuant to the last sentence of section 17(f) to be unenforceable, then no arbitration shall be had. In no event shall any invalidation be deemed to authorize an arbitrator to determine Claims or make awards beyond those authorized in this Arbitration Provision.

THE PARTIES ACKNOWLEDGE THAT THEY HAVE A RIGHT TO LITIGATE CLAIMS THROUGH A COURT BEFORE A JUDGE, BUT WILL NOT HAVE THAT RIGHT IF ANY PARTY ELECTS ARBITRATION PURSUANT TO THIS ARBITRATION PROVISION. THE PARTIES HEREBY KNOWINGLY AND VOLUNTARILY WAIVE THEIR RIGHTS TO LITIGATE SUCH CLAIMS IN A COURT UPON ELECTION OF ARBITRATION BY ANY PARTY.

## 16. Waiver of Jury Trial

THE PARTIES HERETO WAIVE A TRIAL BY JURY IN ANY LITIGATION RELATING TO THIS AGREEMENT, THE CORRESPONDING MEMBER LOAN OR ANY OTHER AGREEMENTS RELATED THERETO.





Sean Drower
31 Katie Lane
Swanzey NH 03446

2023
Statement Date   June 01, 2023 - June 30,
Account Type   Individual
Account Number   [redacted]

**Total Account Value**
**$77,097.43**

**Earnings This Statement**
**$153.79**

### Account Summary

| | 06/01/23 | Net change | 06/30/23 |
|---|---|---|---|
| Investable Cash | $16,686.64 | $153.79 | $16,840.43 |
| Cash Awaiting Loan Closing | $0.00 | $0.00 | $0.00 |
| Invested Loan Principal | $60,257.00 | $0.00 | $60,257.00 |
| **Account Total** | **$76,943.64** | **$153.79** | **$77,097.43** |

### Earning Summary

| | This Period | Year to Date |
|---|---|---|
| Interest [2] | $153.79 | $2,009.58 |
| Fees [3] | $0.00 | $0.00 |
| Gain On Sale | $0.00 | $0.00 |
| Charge-Off | $0.00 | $0.00 |
| Other | $0.00 | $0.00 |
| **Total** | **$153.79** | **$2,009.58** |

[2] Interest includes all interest you earned from loans (i.e. regular, promotional, and default interest). Pocket Interest is separated out.

### Loan Positions

| Active Investments | Principal Investment | Payments This Period |
|---|---|---|

[3] Fees are your earnings from borrowers who paid extra fees on their loan (e.g. late fee, prepayment penalty, extension fee).

| Loan | Yield | Start Date | Maturity Date | Initial | Outstanding | Earnings | Principal |
|---|---|---|---|---|---|---|---|
| Alpharetta, GA Acquisition #13 (Series 2) | 9.250% | 09/02/22 | 01/01/24 | $4,343.00 | $4,343.00 | $33.48 | $0.00 |
| Springfield, MA Acquisition (Series 2) | 9.000% | 01/18/23 | 06/01/23 | $35,914.00 | $35,914.00 | $0.00 | $0.00 |
| Cedarpines Park, CA Acquisition (Series 1) | 10.000% | 01/20/23 | 09/01/23 | $5,000.00 | $5,000.00 | $41.67 | $0.00 |
| San Jose, CA Acquisition #137 (Series 2) | 8.000% | 01/30/23 | 12/01/23 | $5,000.00 | $5,000.00 | $0.00 | $0.00 |
| Lubbock, TX Acquisition | 9.500% | 01/31/23 | 02/01/24 | $5,000.00 | $5,000.00 | $0.00 | $0.00 |
| Los Angeles, CA Acquisition #617 (Series 3) | 9.375% | 02/09/23 | 07/01/23 | $5,000.00 | $5,000.00 | $78.64 | $0.00 |
| Total | | | | $60,257.00 | $60,257.00 | $153.79 | $0.00 |

**Pending Investments**

None

**Past Investments**

None

### Transaction History

| Date | Transaction | Amount | Account Total |
|---|---|---|---|
| 06/01/23 | Beginning Balance | — | $76,943.64 |
| 06/13/23 | Interest from Los Angeles, CA Acquisition #617 (Series 3) | $39.06 | $76,982.70 |
| 06/13/23 | Default Interest from Los Angeles, CA Acquisition #617 (Series 3) | $0.26 | $76,982.96 |
| 06/13/23 | Interest from Cedarpines Park, CA Acquisition (Series 1) | $41.67 | $77,024.63 |
| 06/13/23 | Interest from Alpharetta, GA Acquisition #13 (Series 2) | $29.86 | $77,054.49 |
| 06/13/23 | Promotional Interest from Alpharetta, GA Acquisition #13 (Series 2) | $3.62 | $77,058.11 |
| 06/20/23 | Interest from Los Angeles, CA Acquisition #617 (Series 3) | $39.06 | $77,097.17 |
| 06/20/23 | Default Interest from Los Angeles, CA Acquisition #617 (Series 3) | $0.26 | $77,097.43 |
| 06/30/23 | Ending Balance | — | $77,097.43 |