**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Peer Street, Inc., *et al.*,[1] | Case No. 23-10815 (LSS) |
| Debtors. | (Jointly Administered) |
| | **Ref. Nos. 11, 18, 31, 169, 257, 266**<br>**Reply Deadline: August 28, 2023** |

### RESPONSE OF THE PACIFIC CREDITORS TO (I) THE DEBTORS' OMNIBUS REPLY AND (II) STATEMENT OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS WITH RESPECT TO DEBTORS' BIDDING PROCEDURES AND CASH MANAGEMENT MOTIONS

Pacific Funding Trust 1002 and Pacific RBLF Funding Trust (the "Pacific Creditors") file this response (the "Response") (i) to the *Debtors' Omnibus Reply* (the "Reply") [Docket No. 257] *to Objections to Bidding Procedures and Cash Management Motions* [Docket Nos. 11 and 18] (collectively, the "Motions"), (ii) to the *Statement* (the "Statement") *of the Official Committee of Unsecured Creditors* (the "Committee") [Docket No. 266], and (iii) in further support of the Pacific Creditors' initial Objection to the Motions [Docket No. 169] (the "Objection"), and respectfully state as follows:[2]

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their respective federal tax identification numbers, are: Peer Street, Inc. (8584); PS Funding, Inc. (3268); PeerStreet Licensing, Inc. (9435); Peer Street Opportunity Fund GP, LLC (8491); Peer Street Funding LLC (9485); PSF REO LLC (1013); PS Options LLC (8584); PS Warehouse, LLC (5663); PS Warehouse II, LLC (9252); Peer Street Opportunity Investors II, LP (1586); PS Portfolio-ST1, LLC (1868); PSF Ohio, LLC (9485); PSF TX 1, LLC (9485); PSF TX 2, LLC (2415); PSF TX 4 LLC (9485). The Debtors' service address is c/o Province, LLC 2360 Corporate Circle, Suite 340, Henderson, NV 89074, Attn: David Dunn, Chief Restructuring Officer.

[2] Capitalized terms used in this Response not otherwise defined herein shall have the meanings ascribed to them in the Pacific Creditors' Objection.

{1397.001-W0072235.}

## INTRODUCTION

1.  Stripped of rhetoric, the Debtors' Reply confirms that the Motions should be denied, at least insofar as they seek to borrow and use cash from—and sell assets held by—PSFLLC's estate.[3]

2.  There are two principal transaction documents at play:

    - Step 1: A Participation Agreement executed by PSFI and PSFLLC, pursuant to which PSFI "irrevocably sells, assigns, transfers, and conveys" a 100% participation interest in **specific loans** to PSFLLC such that PSFLLC owns 100% of the equitable interests in the Loans, and PSFI retains only bare legal title (Reply Ex. 8 §2, Ex. A), and

    - Step 2: MPDNs executed by PSFLLC and each retail and institutional investor (each, an "MPDN Participant"). Under the MPDNs, PSFLLC's recourse is "only to the extent that, [PSFLLC] has received payment relating to the Corresponding Mortgage Loan and has failed to pay such [MPDN Participant] their *pro rata* share of the payments that [PSFLLC] actually received under the Corresponding Mortgage Loan." (Reply Ex. 16 at p. 1). Thus, under the express terms of the MPDNs and factors considered by courts when determining whether an instrument is a participation agreement, the MPDNs are, in fact, also participations as discussed further below.

    - Pursuant to the Step 1 Participation Agreement, amounts collected by PSFI on the *specific* Loans (or fractional interests thereof) that the MPDN Participants have purchased are required to be paid to PSFLLC, less reasonable fees and expenses incurred for the administration, collection, and enforcement of ***those specific Loans***; however, fees and expenses for the administration, collection, and enforcement of those ***specific Loans*** do ***not*** include the fees and expenses of the bankruptcy cases of the other Peer Street debtors. (Reply Ex. 8 §4.2).

    - The Step 1 Participation Agreement does not permit PSFI to sell specific Loans; rather PSFI is only permitted to take actions as it "may deem necessary or appropriate in its discretion to *satisfy the obligations, enforce the rights,*

---

[3] This Response addresses only the Step 1 Participation Agreement and the Step 2 Mortgage Dependent Notes ("MPDNs") (each as defined above) held by the Pacific Creditors and does not address other financial products discussed in the Debtors' Reply except for the RWNs. Only a very few of the exhibits attached to the Debtors' Reply are relevant to the relief sought in the Motions and the Objection. In addition, this response does address the *ad hominem* attacks contained in the Debtors' Reply.

- *exercise the remedies and pursue any other benefits available under the Loan Documents.*" (Reply Ex. 8 §3.2(b)) (emphasis added).

- Under the Step 2 MPDNs, payments are made by PSFLLC only if PSFLLC receives payments, and the principal and interest paid are limited to whatever is received with respect to the specific Loan, less certain permitted fees and expenses. (Reply Ex. 16 at p. 1). Indeed, Peer Street has specifically advised MPDN Participants that "*[i]nvestors in the associated MPDNs will have the right to payments received by PSFLLC under the participation.*" (Reply Ex. 13 at p. 4) (emphasis added).

3. Because PSFI has no equitable interest in any of the Loans it has sold participation interests in, it does not "own" the Loans held by PSFLLC and cannot sell them. In fact, there does not even appear to be a formal servicing agreement between PSFI and PSFLLC in the 900+ pages of exhibits attached to the Debtors' Reply. Therefore, PSFI's rights as a "servicer" must be gleaned from the accompanying documents.[4]

4. The Participation Agreement permits the sharing of costs and expenses incurred by PSFI in connection with an "Enforcement Action" (which is defined in the Participation Agreement and paragraph 11 below) with respect to the Underlying Loans, and it PSFI acquires title to any Collateral. (Reply Ex. 8 §§4.2, 5). The Participation Agreement does not, however, permit PSFI to sell any of the specific Loans. (Reply Ex. 8 §4.2). Nor can PSFI reasonably claim that the bankruptcy cases of the other Peer Street entities are necessary for the "administration" of the specific Loans held by PSFLLC. Moreover, PSFLLC may terminate PSFI as servicer at any time without cause. (Reply Ex. 8 §8.3).

5. In addition, the Debtors admit that PSFLLC's "only third-party creditors are the holders of MPDNs and RWNs." (Reply ¶36). These third-party creditors—both the holders of the

---

[4] The Debtors assert in the Reply that PSFI is the "master servicer for all of the loans owned or participated in by the various Debtors." (Reply ¶12, fn 23). To support this statement with respect to the MPDN Participants, they rely upon the Limited Liability Company Agreement of Peer Street Funding LLC; however, no such authority is granted to PSFI in this document.

MPDNs and RWNs—have only non-recourse claims against PSFLLC, and only to the extent that a **specific** **payment** is made in which the MPDN or RWN holder has purchased an investment is paid to PSFLLC and PSFLLC does not remit that same specific payment to such MPDN or RWN holder. Thus, the MPDN and RWN holders are contingent creditors of PSFLLC. In such a circumstance, PSFLLC is a solvent entity that should not be in bankruptcy.[5]

## RESPONSE

6. As a gating issue, the Debtors readily concede that PSFI and PSFLLC are parties to the Participation Agreement. (Reply ¶30 Ex. 8 Recitals). Pursuant to the Participation Agreement, PSFLLC purchased 100% participation interests in the Loans from PSFI using cash

---

[5] While the Pacific Creditors do not own RWNs, the Debtors assert in their reply that PSFLLC is insolvent because (presumably on the Petition Date, although it is not clear from the Reply) "there were RWNs outstanding of $41.4 million and the cash assets associated with those RWNs were less than $40 million." (Reply Ex. 8 ¶40). In fact, as set forth above, the RWNs are a creature akin to the MPDNs. To obtain the capital to lend to the Warehouse Borrowers, much like it did with the MPDNs, PSFLLC sold the RWNs to Investors on the Peer Street on-line platform. See *Decl. of David M. Dunn* ¶20. PSFLLC loaned the proceeds to the Warehouse Borrowers, which, in turn, "advanced those funds as needed to PSFI to allow PSFI to close loans PSFI originated or purchased (the 'Pocket Underlying Loans'). In return, PSFI granted [each Warehouse Borrower], as applicable, ***a participation interest*** (the "Warehouse Participation Interests") in the Pocket Underlying Loans. [The Warehouse Borrowers] pledged the Warehouse Participation Interests to PSFLLC to secure the amounts PSFLLC advanced to [them] under the Warehouse Loan Agreements*." See Cash Collateral Motion*, ¶15 (emphasis added).

As set forth in the Debtors' Reply, the PPM for the Pocket 1-Month, and Pocket 3-Month RWN Supplement (Reply Ex. 24) provide: "The RWNs represent a limited obligation of PSFLLC. ***Interest and principal distributions on the RWNs are dependent on the Warehouse Entity's payment of principal and interest to PSFLLC***… ***Payment to Investors on any RWN is entirely dependent on PSFLLC receiving payment from the Warehouse Entity and PSFI or, in the event of the Warehouse Entity's default, on the performance and/or sale of the Financed Loans and Non-Financed Loans where Servicing Advances were made by PSFI.*** Investors are bound by PSFLLC's good faith decision-making regarding the management of the Warehouse Loan and the servicing, management, and disposition of any Mortgage Loan." Therefore, PSFLLC was under no obligation to make payments to RWC Participation Holders of cash that it had not received with respect to their specific RWN. For this reason, PSFLLC was not insolvent because it only was required to honor redemption requests on the RWNs up to the amount that it had received from the Warehouse Entity.

that it raised from retail and institutional investors, the MPDN Participants. (Reply Ex. 8 §2). Thus, PSFI holds only bare legal title to the Loans. The Participation Agreement makes several things plain and unambiguous. PSFLLC owns the loans, not PSFI. (Reply Ex. 8 §2). PSFI or its designee is obligated to maintain physical possession of the Loan documents and collect and distribute to PFSLLC all sums received on each Loan, net of certain enumerated PSFI fees and expenses.[6] (Reply Ex. 8 §§ 3.1, 3.3). PSFI also retains certain servicing rights regarding the Loans, many of which PSFI has assigned to a sub-servicer,[7] although such servicing rights can be terminated at any time by PSFLLC. (Reply Ex. 8 §§ 3.2, 8.3).

7. PSFI's only right under the Participation Agreement is with respect to advancing certain servicing and collection fees and expenses. Other than reimbursement of those fees and expenses, the amounts received by PSFI are owed to, and held in trust for, PSFLLC. The Participation Agreement provides:

> Subject to Section 7.3 [*sic*] below, [PSFI] shall receive all sums due or received from Borrower under the Note and the other Loan Documents and *hold the same in trust for the ratable benefit of all Participants*. Subject to Section 7.3 [*sic*] hereof, to the extent such payments are made by Borrower, [PSFI] shall accept and distribute such payments in accordance with Section 3.3 of this Agreement.

Reply §3.2(a) (references to §7.3 should be to §8.3) (emphasis added).

---

[6] The Debtors' Reply makes much of the fact that the Participation Agreement provides that PSFI "shall hold" the Loan Documents." (Reply ¶¶ 32, 70). However, the Participation Agreement makes clear that this provision does not confer any interest in the Loans themselves, but rather is an obligation on the part of PFSI, as servicer, or its designee, to maintain physical possession of the Loan Documents. (Reply Ex. 8 § 3.1). A servicer maintaining loan documents is not unusual at all, and certainly does not confer an ownership interest in the loans to the servicer.

[7] *See* Reply Ex. 1 (Declaration of David M. Dunn in Support of the Chapter 11 Filing and First Day Pleadings) ¶ 17 ("PSFLLC transfers funds sufficient to PSFI in return for a 100% participation interest in a specified Underlying Loan, entitling PSFLLC to all payments of principal and interest (net of fees, expenses, charges, and other amounts) collected on the Underlying Loan. Under the terms of the participation agreement, PSFI performs the functions of the lender on the Underlying Loan, among other things, collecting payments (through a subservicer), making distributions, and enforcing the Lender's rights and remedies.").

8. The Participation Agreement provides that upon a Borrower's Event of Default under a Loan Document, PSFI has the sole discretion to forbear or exercise remedies against the Borrower. (Reply Ex. 8 §3.2(b)(ii)).

9. Under the Participation Agreement, if a specific Loan is in default, PSFI may make certain advances to protect that Loan collateral, including:

> (i) foreclosure related fees and costs (such as attorneys' and property management fees), (ii) property taxes, (iii) property maintenance and/or repairs, (iv) broker fees, (v) miscellaneous legal or other professional fees and expenses, (vi) other encumbrances, etc. In order to make advances, PSFI may need to take loans from third parties or related entities….

(Reply Ex. 13 at p. 7).

10. PSFI is also entitled to payment or to deduct from a specific defaulted Loan amounts that would otherwise be payable to PSFLLC in respect of the following fees and expenses:

> All losses, costs and expenses incurred by [PSFI] (including, without limitation, attorneys' fees and expenses) in connection with (a) the purchase of the Loans, (b) the administration (including any servicing fees or costs paid to any third party) or collection of the Loans, (c) enforcement of any obligations of Borrower or rights or remedies of [PSFI] under the Loan Documents, (d) any claim on any insurance policy, lawsuit, collection activity, receivership action, foreclosure, acceptance of a conveyance in lieu thereof, or (e) any other exercise of any of its rights or remedies under the Loan Documents (individually, an "**Enforcement Action**"), and all amounts advanced by [PSFI] (except [PSFI]'s Proportionate Share of any such advances) in accordance with this Agreement, the Loan Documents or any Enforcement Action[.]

Reply Ex. 8 §4.2.

11. Unsurprisingly, the MPDNs effectively mirror the same terms between PSFLLC, as seller, and the MPDN Participants, as purchasers, as the terms set forth in the Participation

Agreement between PSFI, as seller, and PSFLCC, as buyer.[8] The MPDNs relate to <u>specific</u> Loans that were selected by, and sold to, retail and institutional investors. (Reply Exs. 15, 16).

12. The Debtors argue that the Participation Agreement effectively provides them with a blank check by PSFLLC to fund these bankruptcy cases. The Debtors hang their hat on Section 4.2 of the Participation Agreement that provides PSFLLC is liable for "[a]ll losses, costs and expenses incurred by [PSFI] (including, without limitation, attorneys' fees and expenses) **in connection with… the administration (including any servicing fees or costs paid to any third party)**" or the collection of any specific Loan sold to PSFLLC. (Reply ¶35; Ex. 8 §4.2) (emphasis added).

13. The Debtors assert that this section means that, "[o]ther than a reasonableness requirements [*sic*], the participation agreements place **absolutely no limitation** on the amounts payable [by PSFLLC] to PSFI thereunder." (Reply ¶35) (emphasis added). The Debtors' remarkable reading of this single provision is, however, a bridge too far. Under the Debtors' expansive interpretation, PSFLLC would be responsible for any cost associated with *whatever* PSFI deemed to be an "Enforcement Action." This section, and the definition of "Enforcement Action," plainly do **not** provide for, or even contemplate, the use of PSFLLC's cash to fund bankruptcy cases. Rather, this provision is intended solely to address fees and expenses incurred

---

[8] Section 3.2 of each MPDN states that "…[PSFLLC] will, at its sole discretion, advance any and all amounts necessary to protect its interest in the Corresponding Borrower Loan, including (without limitation) foreclosure fees and related costs as well as payments necessary to pay property taxes, senior liens, junior liens, and other fees and costs [PSFLLC] deems necessary to protect its position in the Corresponding Borrower Loan (the "Company's Advances"). Any fees advanced by [PSFLLC] will earn interest at the interest rate applicable to the Corresponding Borrower Loan. Any amounts paid to [PSFLLC] under the Corresponding Borrower Loan shall be payable as follows: (i) to [PSFLLC], to recoup [PSFLLC]'s Advances, (ii) to [PSFLLC] or third parties for any fees and costs allowed to be charged under the Memorandum and (iii) the balance, if any, pro rata to the holders of each Note in the same series of Notes, which series of Notes is held in the aggregate by multiple holders." (Reply Ex. 16 at p. 2).

by PSFI with respect to any reasonable cost it incurs in connection with the administration or collection of a specific defaulted Loan or any Enforcement Action.  (Reply Ex. 8 §4.2).

### A.     PSFLLC is a Bankruptcy Remote Special Purpose Entity.

14.     In forming PSFLLC as a bankruptcy remote special purpose vehicle, as detailed in the Pacific Creditors' initial Objection, the Debtors were informing prospective MPDN Participants that PSFLLC's cash would be available solely to repay their MPDNs, net of certain typical servicing fees and expenses, and that cash would not be commingled or consolidated with the debts of the other Peer Street entities. (Objection ¶6).

### B.     The Debtors' Proposed Stipulations Regarding PSFLLC's Cash are Meaningless.

15.     The Debtors' first proposed stipulation in their Reply to remedy the Pacific Creditors' Objection is that they will agree that "no cash held in [PSFLLC's] bank accounts or held by PSFI from the collection of principal and interest associated with the Underlying Loans will be used absent further order of the Court."  (Reply ¶111(i)).

16.     When parsed, this proposed stipulation is meaningless and cold comfort to MPDN Participants.  Starting with the stipulation's promise not to use cash PSFI has collected on behalf of PSFLLC under the Participation Agreement, *even the Debtors* admit PSFI has sold 100% of the Participations to PSFLLC and has no equity in the Participations.  Therefore, any pre- or postpetition principal and interest payments or sale proceeds that PSFI has received in connection with those Participations are <u>not</u> property of PSFI's estate or the estate of any other Peer Street entities, other than PSFLLC.  Thus, the Debtors are simply proposing to offer PSFLLC ice in winter, namely, what PSFLLC and the MPDN Participants already have as a matter of law.

17.     Plainly, PSFI should be ordered to immediately transfer to PSFLLC's estate any payments and proceeds it is holding that are due to PSFLLC and should continue to do so for the

duration of these bankruptcy cases. In addition, as PSFLLC has no creditors, except MPDN Participants, who are contingent creditors, and PSFLLC is obligated to make all distributions to those MPDN Participants, those sums should be immediately distributed to MPDN Participants when received.[9]

18. Troublingly, the Debtors' first proposed stipulation is eviscerated by their second proposed stipulation that the allocation of the cost of liquidating the Debtors' estates will be determined at some point in the future. Effectively, the Debtors are saying that, on the one hand, they will stick to their word and not use cash due to the estate of PSFLLC to fund the expenses of the Chapter 11 cases, which include (a) millions of dollars to their professionals (including success fees to the Debtors' investment banker for selling performing Loans), (b) the wind-down of the Platform, (c) U.S. Trustee fees, (d) forming a liquidating trust, and (e) negotiations with the Committee and other constituencies on, among other things, a plan of reorganization. On the other hand, the Debtors are saying that when the cases are over, they will come back to this Court to determine the cost allocation likely asserting that the sale of the Loans was the costliest event in the cases, and therefore, the MPDN Participants should bear the brunt of the fees and expenses of these Chapter 11 cases.

---

[9] The Debtors claim that the RWNs constitute claims against PSFLLC. (Reply ¶40). Although the Pacific Creditors have no interest in the RWNs, the same set of facts appear to exist for both the MPDNs and RWNs. Because PSFLLC's obligation is only to pass through amounts received from the other Peer Street entities on account of the Loans (net of certain enumerated fees and expenses), PSFLLC has no creditors and the MPDN and RWN Participants have no recourse against PSFLLC except in the limited circumstance where PSFLLC receives payments and fails to pass through those payments to the MPDN and RWN Participants.

C. *Compelling PSFLLC, a Bankruptcy Remote Special Purpose Vehicle, to Fund its Affiliates' Chapter 11 Cases is Akin to Substantive Consolidation without Due Process.*

19. Committing PSFLLC to effectively fund the vast majority of the Debtors' bankruptcy fees and expenses would be akin to substantively consolidating the Debtors. The Debtors point out that a bankruptcy remote entity such as PSFLLC is not a bankruptcy proof entity (Reply ¶36), but the Debtors ignore the fundamental purpose of a bankruptcy remote entity's existence. The goal of a bankruptcy remote entity "is to separate the credit quality of identified assets upon which financing is based from the credit and bankruptcy risks of any entity involved in the financing." *Paloian v. LaSalle Bank Nat'l Ass'n (In re Doctors Hosp. of Hyde Park, Inc.)*, 2013 Bankr. LEXIS 3074, at *389 (Bankr. N.D. Ill. July 17, 2013). Thus, the intent of making PSFLLC a bankruptcy remote entity was to ensure that PSFLLC's cash received from Loan payments would be used to pay the MPDN Participants and not to pay the creditors of—or fund the bankruptcy cases of—the other Peer Street entities.

20. In exchange for this, the Debtors obtained better pricing on the products PSFLLC sold than they would have had MPDN Participants thought that their investments would be subject to the credit risks of the other Peer Street entities.

21. To grant assurances that (a) PSFLLC would not be substantively consolidated with Peer Street, Inc. should it file for bankruptcy, and (b) the participation interests had been truly sold by PSFI to PSFLLC, counsel to Peer Street Inc., PSFI, and PSFLLC provided an opinion letter, dated December 21, 2020, a copy of which will be provided to the Court at the hearing on the Motions (the "True Sale/Non-Con Opinion").[10] While the True Sale/Non-Con Opinion letter is a

---

[10] It is true that the True Sale/Non-Con Opinion's analysis is limited to the substantive consolidation of Peer Street Inc. and PSFLLC. The same analysis, however, would plainly apply to each of Peer Street Inc.'s affiliates and PSFLLC. To say otherwise, one would have to ignore,

reasoned opinion, Peer Street's counsel opined that a bankruptcy court would not substantively consolidate the assets and liabilities of Peer Street Inc. with those of PSFLLC. The True Sale/Non-Con Opinion letter also opined that the transfer of the Participations by PSFI to PSFLLC would be deemed a true sale and an absolute transfer of such Participations, such that the Participations would not be considered property of PSFI's bankruptcy estate under Section 541(a) of the Bankruptcy Code, and that Section 362(a) of the Bankruptcy Code would not apply to stay payment to PSFLLC of the amounts collected on such Participations.

## THE DEBTORS' REMAINING ARGUMENTS

### A. PSFI's Role as Servicer is Immaterial to the Ownership of the Loans.

22. The Debtors' remaining arguments are easily addressed. The Debtors argue that the MPDNs permit PSFI to sell specific Loans purchased by specific retail investors without their consent. Therefore, the Debtors can sell all the Loans to fund the bankruptcy cases of all the Peer Street entities. (Reply ¶1). However, a servicer's ability to sell a loan is not indicative of ownership, and it is not unusual for servicers to sell the Loans, particularly non-performing loans and with respect to enforcement actions. Indeed, the Participation Agreement does not permit the sale of Loans, except, perhaps, with respect to Enforcement Actions (as defined in the Participation Agreement). (Reply Ex. 8 §4.2).

23. In addition, even assuming the sale of specific Loans is permitted, the point that the Debtors miss is what is supposed to happen to the proceeds of those Loans once they have been sold. The answer is simple. The proceeds are required to be paid (net of contractually agreed upon

---

among other things, the separateness and independent manager provisions set forth in PSFLLC's limited liability agreement, which apply up the chain to all of its affiliated entities.

expenses) to PSFLLC (Reply Ex. 8 §3.3(a)), which is immediately obligated to remit the proceeds to the applicable MPDN Participant. (Reply Ex. 16 at p. 1).

24. The Debtors make much of Section 6 of the MPDN that provides PSFLLC may sell, convey, assign, or otherwise transfer all or any part of the corresponding mortgage loan or any interest therein without the prior written consent of the Investor. (Reply ¶1). However, when parsed, this is really no different than the provision in the Participation Agreement that authorizes PSFI to take actions as it "may deem necessary or appropriate in its discretion to *satisfy the obligations, enforce the rights, exercise the remedies and pursue any other benefits available under the Loan Documents*." (Reply Ex. 8 §3.2(b)) (emphasis added). In other words, PSFLLC may have the ability under the MPDN to convey a mortgage loan, but, it would only do so if it were in the best interests of the MPDN Participants. Further, if it did convey a mortgage loan, it would be under an obligation to pay the MPDN Participant the proceeds. So, this provision does not stand in contravention to a participation, rather, it supports the existence of one.

### B. "Sub-Participation" is the Same as a "Participation."

25. Next, the Debtors argue that the Pacific Creditors have not set forth a legal criterion to create a "sub-participation." (Reply ¶51). The use of the term "sub-participation" in the Pacific Creditors' initial Objection (Objection ¶17) was colloquial and meant to differentiate between the initial participation from PSFI to PSFLCC, and the second participation from PSFLLC to each MPDN Participant. PSFI agreed that "*[i]nvestors in the associated MPDNs will have the right to payments received by PSFLLC under the participation*." (Reply Ex. 13 at p. 4) (emphasis added). Plainly, there is only one standard to determine if a participant has participated its interest to another participant.

26. The Debtors point out that the MPDN Participants do not have direct privity with PSFI; however, this is a red herring. (Reply ¶62). A participant only has privity with the party from which it purchased its participation. As the Sixth Circuit Court of Appeals stated:

> "A participation is not a loan. To the contrary, a participation is a contractual arrangement between a lender and a third party whereby the third party, labeled a participant, provides funds to the lender . . . ." *Natwest USA Credit Corp. v. Alco Standard Corp.*, 858 F. Supp. 401, 407-08 (S.D.N.Y. 1994). The lender, in turn, uses the funds from the participant to make loans to the borrower. *See id.* at 408. "The participant is not a lender to the borrower and has no contractual relationship with the borrower." *Ibid*. The participant's only contractual relationship is with the lender; the participant has no ability to seek legal recourse against the borrower. *See W. Crews Lott et al., Structuring Multiple Lender Transactions*, 112 Banking L.J. 734, 736 (1995); Patrick J. Ledwidge, *Loan Participations Among Commercial Banks*, 51 Tenn. L. Rev. 519, 528 (1984).

*Bayer Corp. v. MascoTech, Inc. (In re Autostyle Plastics, Inc.)*, 269 F.3d 726, 736 (6th Cir. 2001). That is precisely what happens in this case. MPDN Participants provide cash to PSFLLC to fund the purchase of **specific** **loans** from PSFI. Here, the MPDN Participants have privity with PSFLLC, which, in turn has privity with PSFI. Thus, this argument by the Debtors is much ado about nothing.

### C. The MPDN Participants Were Investing in Specific Loans.

27. The fact that MPDN Participants were making investments in specific loans cannot be lost and is a crucial reason that this case differs from other securitization bankruptcy cases. Critically, the Debtors acknowledge that, unlike a collateralized loan obligation or other securitization products in which loans are pooled and investors purchase tranches based on their risk appetite, here, each MPDN Participant was purchasing an interest in a **specific** **loan**. Each MPDN is a non-recourse instrument that has terms that virtually mirror the Loan (save for certain

typical fees and expenses).[11] As stated in each MPDN, should PSFLLC "not receive any payments relating to the Corresponding Mortgage Loan, [PSFLLC] will not owe anything to [MPDN] Holder." (Reply Ex. 16 at p. 3). The only potential recourse is when PSFLLC fails to pass on the proceeds of the Loans to MPDN Participants. (Reply Ex. 16 at p. 1). Otherwise, the MPDN Participant only gets paid if and to the extent that the Borrower pays the Loan. (Reply Ex. 16 at p. 1) (providing that "no payments of principal and interest on this [MPDN] Note shall be payable unless [PSFLLC] has received payments relating to the Corresponding Mortgage Loan, and then only to the extent of the amount of such payments received by [PSFLLC] (less any fees and costs allowed to be charged under the Memorandum)").

28.     The Private Placement Memorandum for the MPDNs ("PPM"), and the PPM Supplement: Mortgage Dependent Notes (the "PPM Supplement"), provide, among other things, what expenses and fees PSFLLC may charge the MPDN Participants. (Reply Ex. 12 and 13). The PPM Supplement provides that Peer Street will receive a fee of between 0-2% (annualized) on the loan amount, called the "Standard Fee." (Reply Ex. 13, at 6). In addition, Peer Street may retain any deferred origination fees from the Borrower. *Id*. "PSFI may hire affiliated entities to perform certain activities associated with MPDNs, and these affiliates may receive fair, market-rate compensation for those services. Such fees may be paid out of funds that would otherwise go to [MPDN Participants] and may affect returns on the Underlying Loan." *Id*. at 7. Finally, "[i]n the

---

[11] *See Declaration of David M. Dunn* ("The MPDNs are limited obligations of PSFLLC that entitle holders to payment of principal and interest from PSFLLC only to the extent that PSFLLC has received payments of principal and interest on the Underlying Loan from PSFI.") (Reply Ex. 1 ¶17); *see also* Private Placement Memorandum of PSFLLC (noting that PSFLLC's "obligation to make payments on a [MPDN] Note will be limited to an amount equal to the Investor's pro rata share of amounts we receive with respect to the corresponding mortgage loan for that Note, net of any applicable fees."). (Reply Ex. 10 at p. ii).

event of foreclosure, Peer Street may recover the aforementioned fees from the sale proceeds and will share equally with the Investors any net gain on sale." *Id*.

29. Significantly, no where in the PPM or the PPM Supplement does it provide that MPDN Participants will be responsible for paying the costs associated with the Debtors' potential chapter 11 cases.

> **D.    *The Participation Agreement and the MPDNs Operate Virtually Identically.***

30. The Debtors make the bald statement that the MPDNs contain vastly different terms than a participation interest (Reply ¶47); however, that is contrary to the facts and the law. The MPDNs mirror the factors courts have set forth to determine what constitutes the sale of a participation.

> (1) whether there is a guarantee of repayment by the seller to a participant or any other recourse inconsistent with a sale;
>
> (2) whether the participation lasts for the same period of time as the underlying obligation;
>
> (3) whether the participation provides for pure pass-through of amounts paid by the obligor, less any spread representing servicing or other compensation or a retained interest;
>
> (4) whether the participation purports to be a sale of a property interest;
>
> (5) whether the seller is permitted to commingle for any significant period of time collections on the underlying obligations;
>
> (6) whether the seller agrees to act on behalf of the participant with respect to collections on the underlying obligations; and
>
> (7) whether the seller agrees to service the loans for the benefit of the Purchasers.

*McVay v. Western Plains Serv. Corp.*, 823 F.2d 1395 (10th Cir. 1987).

31.     The *McVay* factors demonstrate that the MPDNs are indeed participations:

(1) there is no guarantee of repayment by PSFLLC to the MPDN Participant and there is no recourse against PSFLLC by the MPDN Participant for non-payment (Reply ¶26 n. 51; Ex. 13 at pp. 3, 13);[12]

(2) the Loan, PSFLLC's participation in the Loan, and the MPDN all last for the same period of time (Reply Ex. 13 at p. 5-6; Ex. 11 ¶11);

(3) the proceeds from the Loans are passed through to MPDN Participants net of certain fees for origination and servicing (Reply ¶26 n.51; Ex. 13 at pp. 4, 13);[13]

(4) the MPDNs are not a sale of a property interest (Reply ¶26; Ex. 13 at p. 4);

(5) Neither PSFI under the Participation Agreement, nor PSFLLC under the MPDNs is permitted to commingle collections on the underlying assets for any significant period, are required to maintain proper books and records and are obligated to provide an accounting (Reply Ex. 8 §3; Ex. 13 at p. 4);

(6) PFSI has agreed to act on behalf of PSFLLC, and each of the MPDN Participants in servicing and collections with respect to the Loans (Reply Ex. 8; Ex. 13 at p. 4); and

(7) PSFI remains the servicer of the loans and has agreed to service the Loans for PSFLLC and the MPDN Participants. (Reply Exs. 8, 13).

---

[12] The Debtors argue that because the MPDNs are to be treated for ***tax purposes*** as debt of PSFLLC, this somehow indicates that the MPDNs are debt and not participations. (Reply ¶¶ 55, 61). This argument is without merit. As the Debtors themselves acknowledge, the MPDNs expressly provide there is nothing owed unless the Loans are paid (Reply ¶26 n. 51), and, indeed, admit that the MPDNs "clearly and repeatedly described the limited recourse, unsecured nature of the liability." (Reply ¶63). *See also Declaration of David M. Dunn* ("The MPDNs are limited obligations of PSFLLC that entitle holders to payment of principal and interest from PSFLLC only to the extent that PSFLLC has received payments of principal and interest on the Underlying Loan from PSFI.") (Reply Ex. 1 ¶17).

[13] *See also Declaration of David M. Dunn*: ("PSFLLC transfers funds sufficient to PSFI in return for a 100% participation interest in a specified Underlying Loan, entitling PSFLLC to all payments of principal and interest (net of fees, expenses, charges, and other amounts) collected on the Underlying Loan." (Reply Ex. 1 ¶17).

32. The Debtors also miss the mark with their analysis of the *Coronet* factors set forth in the Pacific Creditors' Objection in which they assert that three fail on the face of the MPDNs. (Reply ¶78). First, the Debtors argue that the MPDN Participants did not directly advance funds to PSFI to make loans. The Debtor's interpretation of the first *Coronet* factor would require that there could only ever be one level of loan participation, which, plainly, is incorrect. Participants in loans routinely assign their participations to other financial institutions and there is an entire secondary market based on this practice. The fact the MPDN Participants indirectly, through PSFLLC, provided funds to PSFI to make the Loans does not preclude them from owning participations. That the MPDN Participants have only an indirect relationship with PSFI is not a factor that courts have identified as being dispositive of whether a participation fails. Were the Debtors' analysis correct, then no participant would ever be able to assign some or all of its participation to another individual or institution, which is ridiculous.

33. The Debtors argue that the MPDN Participants do not have a right to payment when a Borrower repays PSFI because that right belongs to PSFLLC. (Reply ¶27). This is another failed attempt by the Debtors to use a lack of privity between PSFI and the MPDN Participant as proof a participation does not exist, when, in fact, it supports the existence of a participation. PSFI has an obligation to pay PSFLLC when it receives a payment from a Borrower on a Loan. (Reply Ex. 8 §3.3). PSFLLC has a mirror obligation to make that same payment—related to that very same Loan—to the MPDN Holder. (Reply Ex. 13 at p. 4). The entities are affiliates who share common officers and directors, so there is no reason to believe that one payment would be made and not the second.

34. Significantly, PSFI need only make a payment to PSFLLC if the borrower makes its payment on the Loan to PSFI. Similarly, PSFLLC's obligation to make a payment on the Loan

to the MPDN Participant is the **same**; the MPDN Participant is paid only when there is a payment made on the Loan. (Reply Ex. 8 §3.3; Ex. 13 at p. 4). This is how participations work.

### E. Participants Rarely Have a Right to Compel a Servicer to Act Against a Borrower.

35. The Debtors also contend that the MPDN Participants cannot compel PSFI to act against a defaulted Borrower. Putting aside why PSFI, as servicer, would not act against a defaulted Borrower in violation of its duties as a servicer, this does not mean that the MPDN Participants are not participants. The *Coronet* factor specifically provides: "only the lead lender can seek legal recourse against the borrower." *In re Coronet Capital Co.*, 142 B.R. 78, 82 (Bankr. S.D.N.Y. 1992). The factor does not provide that the participant must have the ability to compel the lead lender to seek legal recourse against the borrower. The Debtors have simply read words into the standard that do not exist to make a false point. Indeed, servicers often reserve the right to take action to collect on defaulted loans and may instead forbear . These are the functions that a servicer is retained for (otherwise, why would participants pay fees for a servicer?).

36. With respect to the Bid Procedures Motion, the issues set forth in the Pacific Creditors' initial Objection remain. The Debtors acknowledge their bid procedures will (i) prevent bidders from submitting bids with respect to the Loans they have interests in (Reply ¶91); (ii) allow bidders to allocate their pool bids solely on loan pools pre-determined by the Debtors' professionals with no apparent input from important constituencies, to the detriment of the MPDN Participants, particularly those MPDN Participants whose MPDNs are performing (*Id.*); and (iii) require the payment of up to 12 expense reimbursements to *losing* bidders. (*Id*. ¶94). None of these provisions should be approved.

### F. The Court Should Ignore the Debtors' Rhetoric and Hyperbole Aimed at the Pacific Creditors.

37. Finally, the Debtors make the unsupported assertion that the Pacific Creditors are objecting to the Motions as part of some conspiracy to deflate the sale prices of the Loans (even though the Pacific Creditors, as the largest holder of MPDNs, benefit from ***higher*** sale prices), as a means of scurrilously making themselves extra money. This absurd accusation is meritless. The Debtors have thrown PSFLLC into a needless and expensive bankruptcy, and the Debtors' board apparently seeks to drain the Debtors' cash through a flawed fire sale that will needlessly harm MPDN Participants, including the Pacific Creditors.[14]

38. Moreover, the Debtors' discussion of "on-again, off-again" discussions regarding a potential transaction that would be an alternative to the pending marketing and sale of the underlying mortgages" were not mentioned by the Pacific Creditors' because they are the subject of non-disclosure agreements. (Reply ¶4). The Pacific Creditors specifically stated that they would not disclose the terms of those communications, whereas the Debtors started their Reply off by twisting those confidential communications into a fabrication that attempts to make the Pacific Creditors look "disingenuous." In fact, nothing could be further from the truth. The Pacific Creditors (and, upon information and belief, other parties) have provided alternatives to the Debtors' flawed fire sale process that would provide a significantly higher return to unsecured creditors than the Plan the Debtors' presently have on the table.

---

[14] The Debtors spend many pages and attach many exhibits discussing prior transactions between the Pacific Creditors' parent entity and the Debtors. None of it is relevant to the issues before the Court related to the Debtors' pending Motions.

## RESERVATION OF RIGHTS

39. The Pacific Creditors reserve the right to amend this Response and to make additional arguments at the hearing.

**WHEREFORE**, the Pacific Creditors respectfully request that the Court (A) deny the Motions insofar as those motions seek authority (i) for the other Peer Street entities to borrow funds from and use the cash of the estate of PSFLLC, and (ii) to sell assets owned by the estate of PSFLLC, and (B) grant such other relief as the Court deems just and appropriate under the circumstances.

Dated: August 28, 2023
Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Kimberly A. Brown*
Adam G. Landis (No. 3407)
Kimberly A. Brown (No. 5138)
Howard W. Robertson IV (No. 6903)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
Email:  landis@lrclaw.com
            brown@lrclaw.com
            robertson@lrclaw.com

and

**WINSTON & STRAWN LLP**
David Neier (admitted *pro hac vice*)
James T. Bentley (admitted *pro hac vice*)
200 Park Avenue
New York, NY 10166-4193
Telephone: (212) 294-6700
Facsimile: (212) 294-4700
Email:  dneier@winston.com
            jbentley@winston.com

*Counsel to the Pacific Creditors*