# EXHIBIT C

**Trustee Motion**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF KANSAS

In re: US Real Estate Equity Builder, LLC,

                                              Case No. 20-21358-11

    Debtor.

In re: US Real Estate Equity Builder
       Dayton, LLC,

                                              Case No. 20-21359-11

    Debtor.

## United States Trustee's Motion
## to Appoint Chapter 11 Trustee

Under 11 U.S.C. § 1104(a), the United States Trustee moves the Court for an order to remove the debtors' principal, Sean Tarpenning, and order the appointment of a chapter 11 trustee in these two cases for these reasons:

1. Before and since filing for bankruptcy, Tarpenning oversaw the commingling of debtors' funds with each other and with entities not in bankruptcy.

2. Under Tarpenning's post-petition management, the debtors have continued to use the cash collateral of their secured lenders without consent and without court authority.

3. Tarpenning may have misstated to other lenders or investors that they would receive security for their loans/investments, and the debtors are now facing federal and state securities investigations as listed on their schedules and statement of financial affairs.

4. Tarpenning's corporate connections and insider dealings cast doubt on his trustworthiness and capabilities as a fiduciary and manager. Relevant assets and items are not disclosed on the debtors' schedules, which Tarpenning signed under penalty of perjury. And at the § 341 meeting of creditors, Tarpenning was unable or unwilling to explain his interests in and dealings with other companies, some of which are owned or controlled by insiders or close associates.

The appointment of a trustee under § 1104(a)(1) for fraud, dishonesty, gross mismanagement, and other cause is warranted based on Tarpenning's pre- and post-petition mismanagement and conduct. The appointment is also justified under § 1104(a)(2) because it would serve the best interests of creditors.

## Background

**A. Pre-bankruptcy events**

Sean Tarpenning is the debtors' president. His parents work in real estate, and at 41, he has spent most of his adult life selling real properties—except for a five-year term in a federal

penitentiary. In 2006, Tarpenning was one of 16 defendants charged in a drug-trafficking conspiracy whose operations stretched to Mexico. Tarpenning pleaded guilty and was sentenced to five years in prison followed by five years of supervised release.[1] Tarpenning's criminal history also includes a 2018 guilty plea to battery stemming from a confrontation with a girlfriend's stepfather.[2]

In 2015, Tarpenning formed USREEB LLC as the president and sole member. The company specialized in "turnkey" or "cash flow" real estate transactions, where USREEB or one of its closely held subsidiaries such as 1 Big Red, LLC, or 1 Big Blue, LLC purchased a residential or commercial property, repaired and remodeled it, placed a tenant in it, and then sold the property. In 2017, Tarpenning formed the Dayton company with the same business model for properties throughout southern Ohio. The companies financed acquisitions both through hard-money lenders

---

[1] *United States v. Tarpenning*, Case No. 4:06-cr-00337-FJG-12 (W.D. Mo.).
[2] Case No. 17CR00778, Johnson County (Kan.) Dist. Ct.

such as Aloha, Anchor, and Peerstreet. Some of these entities received deeds of trust or mortgages on specific properties. If a given deal worked as intended, the lender would receive monthly interest payments, sometimes on rates exceeding 30 percent, and then receive repayment of its principal at closing on the sale of the property to a new owner. Tarpenning personally guaranteed the loans made by the companies' lenders.

By 2018, the debtors were operating largely out of two locations: Tarpenning's home in Leawood, Kansas, and an office building owned by USREEB at 440 E. 63rd in Kansas City, Missouri. He had a staff of three employees: C.J. McKinney, an office manager; Hunter Beach, who managed construction; and an accountant, Louis or Lewis.[3] Tarpenning also worked closely with Mackaylee Beach, Hunter's sister. Ms. Beach owns Guardians of Travel, LLC, a real estate sales and marketing company headquartered out the USREEB office building. Beach lives with

---

[3] At the § 341 meeting, Tarpenning testified that he could not remember the accountant's last name.

4

Tarpenning, and they have a child together. Beach signed important real estate and title documents as a "manager" for USREEB or its subsidiaries, and Tarpenning acknowledged at the § 341 meeting that Beach was an "authorized signer" for his companies.

Beyond USREEB and the Dayton company, Tarpenning owns or controls interests in several other entities with operations that competed or overlapped with the debtors' operations. Several of the debtors' transactions were actually completed in the name of one or two subsidiaries, 1 Big Red or 1 Big Blue. Neither of these entities is in bankruptcy. At the § 341 meeting, Tarpenning was questioned about several other similar companies with integral connections to the debtors' business and to Tarpenning or other insiders, but he professed little knowledge of their operations or his interests in the companies, or said he thought they were defunct.

As Tarpenning testified at the § 341 meeting, the debtors' misfortunes began when some of the hard-money secured lenders, Aloha, Anchor, and Peerstreet, began refusing to issue payoff

5

statements and blocking the closings on multiple properties. The lenders then initiated foreclosures. Tarpenning alleges that these foreclosures were initiated wrongfully. By 2019, the debtors' finances relied heavily on smaller individual or self-directed investors who would loan back the proceeds of a deal just completed. In some of those transactions, Tarpenning promised security in the form of a deed of trust or mortgage, but he would then file either an "affidavit of equitable interest" or nothing at all.

In May 2020, as the debtors were sliding into bankruptcy, Tarpenning formed another company, Always Ready, LLC, with the same business model. Tarpenning testified that he funded Always Ready with his own money.

## B. Bankruptcy events

On October 2, 2020, USREEB and the Dayton entity filed separate chapter 11 petitions. The debtors' manager, Sean Tarpenning, signed, under oath, the bankruptcy petitions, schedules, and statements of financial affairs. As of the date of this

motion, there has been no motion for joint administration or substantive consolidation.

The schedules list several unsecured creditors mostly for lines of credit. Lenders such as Aloha, Anchor, and Peerstreet complete the list of secured creditors. The debtors listed none of their creditors' claims, secured or unsecured, as contingent, unliquidated, or disputed, except for a disputed $30,000 mechanic's lien and a disputed $5,000 debt to an individual for "alleged services," both in the Dayton case.

One notable omission from the schedules of the debtors is Guardians of Travel, an entity controlled by Mackaylee Beach and headquartered at the same building as the debtors. Guardians of Travel has filed a proof of claim alleging a $625,000 claim secured by a deed of trust on one of USREEB's properties. No transfers to Guardians of Travel were listed on the USREEB statement of financial affairs.

On October 27, USREEB amended its statement of financial affairs where it disclosed that the Securities and Exchange

7

Commission sent USREEB a request letter in August 2020. Based on that disclosure, Tarpenning was asked at the § 341 meeting about any underlying allegations in the SEC action but said he knew nothing about them.

The § 341 meetings of creditors were held telephonically on November 10, 2020. (The U.S. Trustee has requested transcripts of the § 341 meetings. Although the transcripts have not been completed as of the filing of this motion, the transcripts, and any supplemental papers, will be filed as soon as possible.) The meetings collectively lasted about four hours. Several creditors, or their attorneys, and the proposed counsel for the unsecured creditors' committee participated in asking questions at the meetings of crediotrs. During the meetings, and under oath, Tarpenning's testimony as manager of the debtors highlighted corporate operations in serious disarray. Among the things that were elicited from Tarpenning's testimony:

- Before bankruptcy and continuing throughout the bankruptcy, Tarpenning commingled and continues to commingle the funds of USREEB with the funds of the Dayton company. His testified that the rental proceeds

8

from the Dayton company, which have been deposited in its separate bank account, were used to pay USREEB expenses. In fact, Tarpenning said, "They're the same, more or less, is how I've always run it."

- Tarpenning admitted under oath that both companies are using cash collateral belonging to secured creditors. He further testified that he was taking the rental income, which is cash collateral without the consent of their respective secured lenders and without court authority. Tarpenning acknowledged the use of cash collateral without consent or court order and specifically testified, "I'm not sure where it says that I need consent."

- As part of the testimony Tarpenning was asked about the use of his common practice of recording an "affidavit of equitable interest" instead of granting a deed of trust or mortgage in favor of investors. In response to these questions, Tarpenning claimed no recollection of ever doing so and refused to give any meaningful answers.

- With respect to questions about other liens against real property assets of the debtors, Tarpenning testified he recorded mechanic's liens for "services" purportedly rendered by one of his other entities.

- When asked about a number of properties held in the names of the debtors, at least before bankruptcy, he testified that the properties were transferred to Guardians of Travel, which is owned by his girlfriend and business associate Mackaylee Beach. These transfers were made for no consideration. Tarpenning acknowledged that he did not cause any of these transfers to be included in the debtors' schedules or statement of financial affairs.

- Guardians of Travel has filed a proof of claim for $625,000 that it claims is secured by a deed of trust from June 2020. Tarpenning testified that the debt arose from a loan to

9

- help fund USREEB operations. Tarpenning did not sign the deed of trust on behalf of USREEB and 1 Big Red. Rather, Mackaylee Beach, who is not an officer or interest holder in either of the debtors or their related entities, signed the deed of trust in favor of Guardians of Travel. She is also the person who signed the Guardians of Travel secured proof of claim.

- At the meeting of creditors, Tarpenning testified that in May 2020, as the debtors were sliding into bankruptcy, Tarpenning formed a new company, Always Ready, LLC, which does the same type of business as the debtors and is essentially a competitor of the debtors. He testified that it has the same business model as the debtors' but is funded by his own money.

On November 19, the Court conducted a hearing on, among other things, the debtors' motion to use cash collateral and their motion to sell several properties. Based on a lack of disclosure of the terms of use, the Court set the cash-collateral motion for pretrial conference on December 1 and declined to authorize the use of cash collateral in the meantime. The Court continued the motion to sell subject to call to give the debtors time to provide sale paperwork to the lenders whose collateral would be sold.

10

## Law and Argument

Under 11 U.S.C. § 1104(a), the United States Trustee may seek the appointment of a Chapter 11 trustee to manage the financial affairs of a chapter 11 debtor. The statute provides:

> At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States Trustee, and after notice and a hearing, the court shall order the appointment of a trustee—
>
> (1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or
>
> (2) if such appointment is in the interest of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets and liabilities of the debtor.

The appointment of a chapter 11 trustee is an extraordinary remedy based on a strong presumption in favor of leaving the debtor in possession. Nevertheless, in an appropriate case, "the

11

appointment of a trustee is a power which is critical for the Court to exercise in order to preserve the integrity of the bankruptcy process and to insure that the interests of creditors are preserved.[4] The appointment of a chapter 11 trustee should better serve creditors, shareholders, and the public interest by promoting efficiency, effectiveness, and transparency, traits which may have been lost by current management.

Courts are divided on the burden of proof that a party moving for the appointment of chapter 11 trustee must carry. The majority of courts cite a clear and convincing burden, yet with little support in the language of the Code or in legislative history.[5] The Tenth Circuit, for its part, has not adopted that burden over the lower "preponderance of the evidence" standard.[6] But as this Court has observed, in practice, the appointment of a chapter 11 trustee "is

---

[4] *In re Celeritas Technologies, LLC, et al.*, 446 B.R. 514, 518 (Bankr. D. Kan. 2011) (citing *In the Matter of Intercat, Inc.*, 247 B.R. 911, 920 (Bankr. S.D. Ga. 2000)).

[5] *Id.* at 518–19.

[6] *Id.* at 519 (citing *In re Plaza de Retiro, Inc.*, 417 B.R. 632, 640 n.8 (Bankr. D.N.M. 2009)).

not a close call," with courts in several instances holding that even if the lower burden applied, the movants satisfied the higher burden anyway.[7] That is exactly the case here. Tarpenning's conduct as the debtors' manager is so egregious that replacing him with a chapter 11 trustee should not be a close call.

### A.  Under § 1104(a)(1), cause exists for the appointment.

Although § 1104(a)(1) provides fraud, dishonesty, incompetence, and gross mismanagement as specific examples of cause, but is not an exhaustive definition. Rather, the Code recognizes that what constitutes sufficient cause for the appointment of a chapter 11 trustee is a question of fact.[8] Once the court determines that the facts as presented establish cause, the statute mandates that the court "shall" appoint a trustee.[9] Thus, the Court may order the appointment of a chapter 11 trustee

---

[7] *Id.*

[8] *In re Sharon Steel Corp.*, 871 F.2d 1217, 1226 (3d Cir. 1989), 7 *Collier on Bankruptcy* ¶ 1104.02[3][a] (16th Ed. Rev.).

[9] *In re Oklahoma Refining Co.,* 838 F.2d 1133, 1136 (10th Cir. 1988). *See also Escoe v. Zerbst*, 295 U.S. 490, 493 (1935) (stating that "shall" is the language of command and its use in a statute indicates intent that the statute should be mandatory).

without a finding of fraud, dishonesty, incompetence, or gross mismanagement.[10]

These bankruptcies present ample evidence to support a finding of cause under § 1104(a)(1). Tarpenning fueled the debtors' pre-petition growth by promising substantial returns to investors over relatively short periods. But this financing model devolved into, at best, musical chairs, or, at worst, a Ponzi scheme. He also misled investors by promising security that he never effectively formalized. And to avoid the repercussions from his own actions, he started a new company, Always Ready, LLC, as a competitior.

As manager, Tarpenning's disregard for bankruptcy code formalities presents numerous obstacles to a successful reorganization in these bankruptcy proceedings. Tarpenning treats the two companies as one, diverting the Dayton company's rental income to cover USREEB's costs. To the extent that constitutes use of cash collateral without consent or court authority, the appointment of a chapter 11 trustee is imperative. And he

---

[10] *Oklahoma Refining,* 838 F.2d at 1136.

14

delegated authority—at least over signatures of the debtors and their affiliates—to Mackaylee Beach, his girlfriend, who runs a company that has a significant claim against the debtors. At the same time, he abuses the notion of corporate formalities by starting other LLCs such as Always Ready with precisely the same business model as the debtors' businesses. If Tarpenning is effectively running a competitor, how can he be trusted with carrying out a reorganization of the debtors?

As a result of starting a competitor, commingling funds of the debtors, ignoring his fiduciary responsibilities under the Bankruptcy Code to preserve the assets of the bankruptcy estates, and his failure to protect the cash collateral of the secured creditors substantiates and requires the immediate appointment of a chapter 11 trustee under § 1104(a)(1).

## 2. Under § 1104(a)(2), the best interests of creditors support the appointment of a trustee.

Section § 1104(a)(2) also provides a basis for ordering the appointment of a chapter 11 trustee. The statute empowers the Court to consider the best interests of creditors as a reason for the

appointment. Among the factors a court typically considers in this analysis are (1) the trustworthiness of the debtor; (2) the debtor's past and present performance and prospects for the debtor's reorganization; (3) confidence, or lack thereof, of the business community and creditors in present management; and (4) the benefits derived by appointment of a trustee, balanced against the costs of appointment.[11]

All of those factors support the appointment of a chapter 11 trustee in these debtors' cases. First, Tarpenning is not a trustworthy steward of the debtors' businesses, in no small part because of his competing work for Always Ready. Second, the debtors' prospects of reorganization are uncertain; Tarpenning, as manager, has moved to liquidate the bulk of the debtors' real-estate assets and has already moved on to a new LLC with the same business model. A trustee would evaluate and marshal the assets, identify claims, and make sober-minded business decisions about

---

[11] *See In re Ionosphere Clubs, Inc.*, 113 B.R. 164, 168 (Bankr. S.D.N.Y. 1990); *In re Colorado-Ute Elec. Ass'n, Inc.*, 120 B.R. 164, 176 (Bankr. D.Colo. 1990).

whether the debtors can reorganize. Third, because of the unauthorized use of cash collateral, the debtors lack the confidence of their secured creditors. Fourth, the benefits of appointing a trustee outweigh the costs. Tarpenning is a cavalier manager who doesn't respect corporate boundaries or the restrictions attendant to bankruptcy, and a trustee would be far better positioned to administer these cases toward a fair result for all creditors. Under § 1104(a)(2), then, the best interests of creditors weigh in favor of an order directing the appointment of a chapter 11 trustee.

## Conclusion

Based on the foregoing, the U.S. Trustee submits that there is sufficient evidence to meet its burden of proof and requests that the Court remove Sean Tarpenning and order the appointment of a chapter 11 trustee.

>ILENE J. LASHINSKY
>UNITED STATES TRUSTEE
>
>By *Christopher T. Borniger*, No. 24692
>301 N. Main St., Suite 1150
>Wichita KS 67202
>202-603-5195 (phone)
>Christopher.T.Borniger@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that on November 23, 2020, a true and correct copy of the **United States Trustee's Motion to Appoint Chapter 11 Trustee** was electronically filed with the Court using the CM/ECF system, which sent notification to all interested parties participating in the CM/ECF system.

Further, I certify that copies of the **United States Trustee's Motion to Appoint Chapter 11 Trustee** were forwarded via U.S. Mail, first class, postage prepaid and properly addressed to the following:

US Real Estate Equity Builder, LLC
US Real Estate Equity Builder Dayton, LLC
440 E. 63rd St.
Kansas City, MO 64110

*Christopher T. Borniger*