# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Peer Street, Inc., *et al.*,[1] | Case No. 23-10815 (LSS) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date:  November 14, 2023 at 10:00 a.m. (ET)**<br>**Obj. Deadline: November 7, 2023 at 4:00 p.m. (ET)** |

## DEBTORS' MOTION FOR AN ORDER
## AUTHORIZING AND APPROVING PROCEDURES FOR THE
## SALE, TRANSFER, OR ABANDONMENT OF DE MINIMIS ASSETS

The above-captioned debtors and debtors in possession (collectively, the "**Debtors**") hereby submit this motion (this "**Motion**") for the entry of an order, substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**"), pursuant to sections 105(a), 363, and 554(a) of title 11 of the United States Code, 11 U.S.C. § 101–1532 (the "**Bankruptcy Code**"), Rules 2002, 6004, 6007, and 9006 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 2002-1 and 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), authorizing and approving procedures enabling the Debtors to:  (a) negotiate, enter into, execute, consummate, and perform De Minimis Asset Sales (as defined below) (any asset sold or transferred pursuant to De Minimis Asset Sale, a "**Sale Asset**"); and (b) abandon

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of their respective federal tax identification numbers, are:  Peer Street, Inc. (8584); PS Funding, Inc. (3268); PeerStreet Licensing, Inc. (9435); Peer Street Opportunity Fund, GP, LLC (8491); Peer Street Funding LLC (9485); PSF REO, LLC (1013); PS Options LLC (8584); PS Warehouse, LLC (5663); PS Warehouse II, LLC (9252); Peer Street Opportunity Investors II, LP (1586); PS Portfolio-ST1, LLC (1868); PSF Ohio, LLC (9485); PSF TX 1, LLC (9485); PSF TX 2, LLC (2415); PSF TX 4, LLC (9485).  The Debtors' service address is c/o Province, LLC 2360 Corporate Circle, Suite 340, Henderson, NV 89074, Attn:  David Dunn, Chief Restructuring Officer.

certain other de minimis assets (together with the Sale Assets, the "**De Minimis Assets**").  In support of this Motion, the Debtors respectfully state as follows:

<u>**JURISDICTION AND VENUE**</u>

1.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012 (the "**Amended Standing Order**").  This is a core proceeding pursuant to 28 U.S.C. § 157(b), and the Debtors confirm their consent, pursuant to Local Rule 9013-1(f), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The legal and statutory predicates for the relief requested herein are sections 105(a), 363, and 554(a) of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6007, and 9006, and Local Rules 2002-1 and 6004-1.

<u>**BACKGROUND**</u>

**A.      General Background**

3.      On June 26, 2023, each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code.  These chapter 11 cases are being jointly administered pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1.  The Debtors continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  On September 12, 2023, the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") appointed an official committee of unsecured creditors (the "**Committee**").

4.      Additional information regarding the Debtors' business, their capital structure, and the circumstances leading to the filing of these chapter 11 cases is set forth in the *Declaration of David M. Dunn in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 3] (the "**First Day Declaration**").[2]

**B.      The Debtors' Sale Process**

5.      As set forth in the First Day Declaration, the Debtors initiated these chapter 11 cases to preserve and maximize the value of the Debtors' assets and to implement a comprehensive marketing process and sale of substantially all of the Debtors' businesses and assets.  To that end, on June 27, 2023, the Debtors filed the *Debtors' Motion for Entry of (A) An Order (I) Scheduling a Hearing on the Approval of the Sale of All or Substantially All of the Debtors' Assets Free and Clear of All Encumbrances, (II) Approving Certain Bid Procedures, and the Form and Manner of Notice Thereof, and (III) Granting Related Relief; and (B) An Order (I) Approving Asset Purchase Agreement, (II) Authorizing the Sale of All or Substantially All of the Debtors' Assets Free and Clear of All Encumbrances, and (III) Granting Related Relief* [D.I. 18] (the "**Bidding Procedures Motion**"), seeking, among other things, approval of: (i) certain bidding procedures and assumption and assignment procedures for a Court-approved sale of all or substantially all of their assets (the "**Sale**"); and (ii) entry into an asset purchase agreement (the "**Asset Purchase Agreement**") with the winning bidder (the "**Winning Bidder**") of the Sale Process.  However, since filing the Bidding Procedures Motion, the Debtors have engaged in negotiations with the Committee and Pacific Funding Trust 1002 and Pacific RBLF Funding Trust to establish an alternative course for

---

[2]      Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures Motion.

these chapter 11 cases.  Regardless of which path is selected, neither process contemplates the sale of the De Minimis Assets.

**C.      The De Minimis Assets**

6.      The Debtors have determined, and anticipate that throughout these chapter 11 cases they will continue to determine, that certain of their assets are low value, burdensome, or no longer used or necessary for the Debtors' operations or marketing and sales process.  Such assets may include, among other things, equipment, office furniture, fixtures, or other assets.  In particular, as of the date hereof, the Debtors have determined that they hold excess office equipment, furniture, and laptops.

7.      Accordingly, through this Motion, the Debtors seek authority to sell, transfer, or abandon the De Minimis Assets when appropriate, pursuant to the procedures described below. Given the relatively small monetary value of the De Minimis Assets relative to the magnitude of the Debtors' overall operations, the Debtors believe it would be an inefficient use of resources to seek the Court's approval each time the Debtors have an opportunity to sell, transfer, or abandon such assets.  Thus, the Debtors respectfully request that the Court enter the Proposed Order authorizing the Debtors to sell, transfer, or abandon the De Minimis Assets, without further hearing or order of the Court, subject to the procedures set forth in this Motion.

**RELIEF REQUESTED**

8.      By this Motion, the Debtors request entry of the Proposed Order authorizing and approving procedures enabling the Debtors to:  (a) negotiate, enter into, execute, consummate, and perform De Minimis Asset Transactions (as defined below); and (b) abandon certain other De Minimis Assets.

30858896.3

9.    In addition, the Debtors seek approval, through the Proposed Order, of the following sale of De Minimis Assets (the "**Laptop Sale**"):

     i.     Assets to be Sold:  84 laptops.

     ii.     Buyer:  Phobio, who is not an insider of the Debtors, but who has been used as a broker in the sale of other miscellaneous assets of the Debtors prior to the Petition Date.

     iii.     Purchase Price:  $45,279.00

     iv.     Other Terms of Sale:  The sale will be on an "as-is, where-is" basis.  The laptops will be "wiped" of all of the Debtors' data and files in accordance with the Debtors' ordinary course practices for disposing of similar technology assets.

## BASIS FOR RELIEF AND REQUESTED PROCEDURES

### I.    The De Minimis Asset Sale Procedures

10.    The Debtors propose to sell or transfer the De Minimis Assets for the highest or otherwise best offer received, taking into consideration the circumstances of each such sale or transfer, under the following procedures (the "**De Minimis Asset Sale Procedures**").  The Debtors propose that the following De Minimis Asset Sale Procedures apply to sales or transfers of the De Minimis Assets in any individual transaction or series of related transactions (a "**De Minimis Sale Transaction**") to a single buyer or group of related buyers (each a "**De Minimis Asset Purchaser**") with an aggregate selling price[3] equal to or less than $100,000; *provided*, *however*, that any De Minimis Sale Transaction to a De Minimis Asset Purchaser with an aggregate selling price equal to or less than $15,000 shall not be subject to the following procedures, and such transaction may be consummated without  notice and an opportunity for hearing following entry

---

[3]    For purposes of these De Minimis Asset Sale Procedures, "selling price" shall refer to the gross sale price or value set forth in the applicable purchase and sale agreement.

of the Proposed Order and, instead, shall only be subject to filing a notice of completed sale

containing the information required by sub-paragraph (iv):

      i. The Debtors are authorized to consummate De Minimis Asset Sale Transaction(s) if the Debtors determine in the reasonable exercise of their business judgment that such sales or transfers are in the best interest of their estates without further order of the Court or notice to any party (other than notice to, and an opportunity to object for, the De Minimis Asset Notice Parties as set forth below).

      ii. Any such transaction(s) shall be free and clear of all liens, with such liens attaching only to the sale or transfer proceeds, if any, pursuant to section 363 of the Bankruptcy Code, with the same validity, extent, and priority as had attached to the De Minimis Assets immediately prior to such sale or transfer.

      iii. At least five (5) business days prior to the proposed closing of any De Minimis Asset Sale, the Debtors shall give written notice of each sale substantially in the form attached to the Proposed Order as <u>Exhibit 1</u> (the "**De Minimis Asset Sale Notice**") by email, if available, or otherwise by overnight delivery to: (a) counsel to Magnetar Financial LLC, (i) Royer Cooper Cohen Braunfeld LLC, 1120 Avenue of the Americas, 4th Floor, New York, NY 10036, (Attn: Marc E. Hirschfield (mhirschfield@rccblaw.com) and (ii) Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, DE 19801 (Attn: Russell C. Silberglied (silberglied@rlf.com)) as agent for the prepetition secured lenders; (b) counsel to the Committee, (i) Morrison & Foerster LLP, 250 West 55th Street, New York, NY 10019, (Attn: Lorenzo Marinuzzi (lmarinuzzi@mofo.com)), and (ii) Benesch, Friedlander, Coplan, & Aronoff LLP, 1313 North Market Street, Suite 1201, Wilmington, DE 19801 (Attn: Jennifer R. Hoover (jhoover@beneschlaw.com)); (c) the U.S. Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801 (Attn: Joseph Cudia (joseph.cudia@usdoj.gov)); and (d) any known affected creditor(s) asserting a lien, claim, or encumbrance on the relevant property (collectively, the "**De Minimis Asset Notice Parties**").

      iv. The contents of the De Minimis Asset Sale Notice shall consist of (i) reasonably specific identification of the proposed De Minimis Assets being sold or transferred; (ii) identification of the proposed De Minimis Asset Purchaser and their relationship (if any) to the Debtors; (iii) the proposed selling price; and (iv) the material terms of the sale or transfer agreement, including, but not limited to, any payments to be made by the Debtors on account of commissions or other fees to agents, brokers, auctioneers, and liquidators.

v.      If no written objections from the De Minimis Asset Notice Parties are filed with the Court within five (5) business days after service of such De Minimis Asset Sale Notice (or such longer period as agreed to by the Debtors), then the Debtors shall be authorized to immediately consummate such sale or transfer.

vi.     If any De Minimis Asset Notice Party files a written objection to any such sale or transfer with the Court within five (5) business days after service of such De Minimis Asset Sale Notice (or such longer period as agreed to by the Debtors), then the relevant De Minimis Asset shall be sold or transferred only upon submission of a consensual form of order resolving the objection as between the Debtors and the objecting party or further order of the Court after notice and a hearing.  Any such objections shall be served on the De Minimis Asset Notice Parties.

vii.    In the event a hearing is required to resolve an objection, such objection shall be heard at the next scheduled omnibus hearing date that is at least seven (7) calendar days from the date of the filing of such notice or such other date set by the Court based upon the exigencies of the circumstances surrounding such assignment.

11.     During these chapter 11 cases, the Debtors will provide a written report or reports, within thirty (30) days after the last day of each calendar month (to the extent De Minimis Asset Sales were consummated for the relevant month), concerning any such sales or transfers made in accordance with the relief granted pursuant to the Proposed Order (including the names of the purchasing parties and the types of amounts of the sales) to the De Minimis Notice Parties and those parties requesting notice under Bankruptcy Rule 2002.

12.     The Debtors submit that any De Minimis Asset Sales will be desirable and in the best interests of the Debtors' estates, their creditors, and other parties in interest in these chapter 11 cases, subject to compliance with the De Minimis Asset Sale Procedures.

### a.   The Sale of the De Minimis Assets Pursuant to the De Minimis Asset Sale Procedures is Within the Debtors' Sound Business Judgment

13.     The De Minimis Assets no longer offer any practical use to the Debtors' operations and are unnecessary for the administration of the chapter 11 cases.  In the exercise of the Debtors' sound business judgment, the Debtors have determined that the prompt sale of the De Minimis

Assets, without the need for further notice, motions, hearings, and subsequent Court approval, subject to the procedures set forth herein, is in the best interest of the Debtors' stakeholders, and will enable the Debtors to maximize the value of the De Minimis Assets. The Debtors desire to sell the De Minimis Assets and consummate the Laptop Sale to, among other things, eliminate any costs associated with maintaining and disposing of unnecessary assets, including possible administrative expense payments relating to storage, and to preserve and maximize the value of the estates.

14.     Section 363(c) of the Bankruptcy Code authorizes the Debtors to "enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing," unless the court orders otherwise. 11 U.S.C. § 363(c)(1). "In determining the meaning of the phrase "ordinary course of business," as used in 11 U.S.C. § 363(c)(1), some courts have focused upon the transaction both from the creditors' vantage point and from the debtor's perspective to ascertain if the transaction was the type that the creditors would expect to receive notice and whether it was ordinary for the particular type of business involved." *In re Baker*, 118 B.R. 24, 28 (Bankr. S.D.N.Y. 1990) (citations omitted). Under any definition, the Debtors submit that the sale of their obsolete laptops and excess furniture is in the ordinary course of their business, and does not need court approval.

15.     Furthermore, to the extent the sale of assets is outside of the ordinary course of the Debtors' business, such sales should be authorized pursuant to section 363(b)(1) of the Bankruptcy Code, which provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Courts in this district regularly authorize sales of a debtor's assets if there is a "sound business purpose" that justifies such use of estate property. *See, e.g.*, *In re Del. & Hudson Ry. Co.*,

124 B.R. 169, 175–76 (D. Del. 1991) (adopting the "sound business purpose" test to evaluate motions brought pursuant to section 363(b) of the Bankruptcy Code); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (same).

16.     In addition, the Court has the authority, pursuant to its equitable powers under section 105(a) of the Bankruptcy Code, to authorize the relief requested herein because such relief is consistent with the Debtors carrying out their fiduciary duties under section 1107(a) of the Bankruptcy Code.  Section 105(a) of the Bankruptcy Code empowers bankruptcy courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  Section 1107(a) of the Bankruptcy Code "contains an implied duty of the debtor-in-possession" to "protect and preserve the estate, including an operating business' going-concern value."  *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002)); *see also Unofficial Comm. of Equity Holders* v. *McManigle* (*In re Penick Pharm., Inc.*), 227 B.R. 229, 232-33 (Bankr. S.D.N.Y. 1998) ("[U]pon filing its petition, the Debtor became debtor in possession and, through its management . . . was burdened with the duties and responsibilities of a bankruptcy trustee.").

17.     The relief requested by this Motion represents a sound exercise of the Debtors' business judgment and, as set forth above, is justified under sections 363(b), 363(c), and 105(a) of the Bankruptcy Code.  The De Minimis Asset Sale Procedures will enable the Debtors to defray or avoid any operational, carrying, storage, or other expenses associated with the De Minimis Assets, protect the Debtors against the possible declining value of certain De Minimis Assets, and minimize the costs associated with delays in the sale or transfer of such assets.

18.     Courts in this district and other districts have approved similar procedures to permit the sale of such de minimis assets in other large chapter 11 cases.  *See, e.g.*, *In re 24 Hour Fitness*

*Worldwide, Inc.*, No. 20-11558 (KBO) (Bankr. D. Del. July 14, 2020) (approving de minimis asset

sales up to $2.5 million); *In re Southcross Energy Partners, L.P.*, No. 19-10702 (MFW) (Bankr.

D. Del. May 6, 2019) (authorizing de minimis asset sales up to $2 million); *Sears Holdings Corp.*,

No. 18-23538 (RDD) (Bankr. S.D.N.Y. Nov. 21, 2018) (approving de minimis asset sales

procedures for assets up to $15 million); *In re Nuverra Envtl. Sols., Inc.*, No. 17-0949 (KJC)

(Bankr. D. Del. June 5, 2017) (approving de minimis asset sales of up to $2 million); *In re Paragon

Offshore PLC*, No. 16-10386 (CSS) (Bankr. D. Del. Mar. 28, 2017) (authorizing de minimis asset

sales of $2.5 million); *In re Chaparral Energy, Inc.*, No. 16-11144 (Bankr. D. Del. August 15,

2016) (authorizing de minimis asset sales up to $4 million); *In re Energy Future Holdings Corp.*,

No. 14-10979 (Bankr. D. Del. June 3, 2016) (authorizing de minimis asset sales up to $5 million);

*In re Quicksilver Res. Inc.*, No. 15-10585 (Bankr. D. Del. April 14, 2015) (authorizing de minimis

asset sales up to $2.5 million).

19.     Finally, parties with an interest in the De Minimis Assets are fully protected by the

opportunity to object to any proposed sale and to attend a hearing, if desired.  Accordingly, the De

Minimis Asset Sale Procedures do not prejudice any party-in-interest while providing meaningful

potential benefits to the Debtors' estates and their creditors.

### b.   The De Minimis Asset Sale Procedures are Consistent with Section 363(m) of the Bankruptcy Code

20.     Bankruptcy Code section 363(m) provides, in relevant part, that the reversal or

modification on appeal of an authorization under section 363(b) of a sale or lease of property does

not affect the validity of a sale or lease under such authorization to a purchaser who bought or

leased such property in good faith, whether or not such entity knew of the pendency of the appeal,

unless such authorization and such sale or lease were stayed pending appeal.  *See* 11 U.S.C.

§ 363(m).  While the Bankruptcy Code does not define the meaning of "good faith purchaser,"

"most courts have adopted a traditional equitable definition: 'one who purchases the assets for value, in good faith and without notice of adverse claims.'" *Licensing by Paolo, Inc. v. Sinatra* (*In re Gucci*), 126 F.3d 380, 390 (2d Cir. 1997) (citations omitted). The requirement that a purchaser act in good faith "speaks to the integrity of [the purchaser's] conduct in the course of the sale proceedings.'" *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 147 (3d Cir. 1986) (citations omitted). Typically, the misconduct that would bar a finding of good faith involves "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *In re Vetter Corp.*, 724 F.2d 52, 56 (7th Cir. 1983) (citations omitted). The Debtors submit that the Laptop Sale is, and any agreement that results in a sale pursuant to the De Minimis Asset Sale Procedures will be, an arm's-length transaction entitled to the protections of section 363(m), and the Debtors request that section 363(m) be deemed to apply to the Laptop Sale and each sale of De Minimis Assets in accordance with the De Minimis Asset Sale Procedures.

### c. The De Minimis Asset Sale Procedures are Consistent with Section 363(f) of the Bankruptcy Code

21.     Bankruptcy Code section 363(f) permits a debtor to sell property free and clear of another party's interest in the property if: (a) applicable nonbankruptcy law permits such a free and clear sale; (b) the holder of the interest consents; (c) the interest is a lien and the sale price of the property exceeds the value of all liens on the property; (d) the interest is in bona fide dispute; or (e) the holder of the interest could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of its interest. 11 U.S.C. § 363(f). "[S]ection 363(f) is stated in the disjunctive, not the conjunctive, and if any of the five conditions are met, the debtor has the authority to conduct the sale free and clear of all liens." *In re Kellstrom Indus., Inc.*, 282 B.R. 787, 793 (Bankr. D. Del. 2002); *see also Scherer* v. *Fed. Nat'l Mortg. Ass'n* (*In re Terrace Chalet Apts.*,

*Ltd.*), 159 B.R. 821, 825 (N.D. Ill. 1993) (sale extinguishes liens under section 363(f) as long as one of the five specified exceptions applies); *In re Borders Grp., Inc.*, 453 B.R. 477, 483–84 (Bankr. S.D.N.Y. 2011).

22.     The Laptop Sale and sales under the De Minimis Asset Sale Procedures are appropriate under section 363(f) of the Bankruptcy Code.  The Debtors propose to sell or transfer the De Minimis Assets in a commercially reasonable manner in an effort to obtain the highest purchase price for such assets and expect that the value of the proceeds from such sales or transfers will fairly reflect the value of the property sold.  The Debtors further propose that any party with a lien or encumbrance on De Minimis Assets sold or transferred pursuant to this Motion shall have a corresponding security interest in the proceeds of such sale or transfer, or such party could be compelled, in a legal or equitable proceeding, to accept a money judgment of such interest.  As such, the requirements of section 363(f) of the Bankruptcy Code would be satisfied for any proposed sales or transfers free and clear of liens, claims, and encumbrances.

### d.   Approval of the De Minimis Asset Sales According to the Notice Provisions Described Herein Is Appropriate

23.     Bankruptcy Rules 2002(a)(2) and 2002(i) require that a minimum of twenty-one (21) days' notice of proposed sales of property outside the ordinary course of business be provided by mail to "the debtor, the trustee, all creditors and indenture trustees" and any committee appointed under section 1102 of the Bankruptcy Code.  Ultimately, however, the notice and hearing requirements contained in section 363(b)(1) of the Bankruptcy Code are satisfied if appropriate notice and an opportunity for a hearing are provided in light of the particular circumstances.  *See* 11 U.S.C. § 102(1)(A) (defining "after notice and a hearing" to mean such notice and an opportunity for a hearing "as [are] appropriate in the particular circumstances").

24.    Accordingly, courts are authorized to shorten the twenty-one-day (21-day) notice period generally applicable to asset sales, or direct another method of giving notice, upon a showing of "cause."  *See* Fed. R. Bankr. P. 2002(a)(2).  Moreover, courts are authorized to limit notice of asset sales outside of the ordinary course of a debtor's business, even without a prior showing of cause, to any official committee appointed under Bankruptcy Code section 1102 and any creditor or equity holder requesting notice.  *See* Fed. R. Bankr. P. 2002(i).  Bankruptcy courts are guided by fundamental notions of procedural due process when determining whether notice is appropriate under the circumstances.  *See, e.g.*, *Morgan Olson L.L.C. v. Frederico* (*In re Grumman Olson Indus., Inc.*), 467 B.R. 694, 706 (S.D.N.Y. 2012); *In re Boomgarden*, 780 F.2d 657, 661 (7th Cir. 1985).  Due process requires that any notice is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

25.    Requiring twenty-one (21) days' notice and a hearing before each sale of De Minimis Assets would impose unnecessary costs and administrative burdens that may undermine or eliminate the economic benefits of the underlying de minimis transactions, and in some instances, may hinder the Debtors' ability to take advantage of sale opportunities that are available only for a limited time.  The Debtors, therefore, propose to streamline the process and shorten the applicable notice periods as described herein to maximize the net value realized from sales under the De Minimis Assets Sale Procedures.

26.    Further, with respect to De Minimis Asset Sales for consideration less than $15,000, the Debtors submit that no further notice, other than notice of this Motion, is necessary.  Such sales may take place on short notice with buyers unfamiliar with the bankruptcy process, and requiring

such buyers to wait for the passage of a notice period may chill bidding on the assets, which primarily consists of pillow casings. Additionally, the administrative costs incurred by the Debtors to comply with additional notice will decrease the economic benefit, if any, from such De Minimis Asset Sales.

27.     The De Minimis Asset Sale Procedures provide all interested parties appropriate notice and an opportunity to object to all Asset Sales other than Sales for less than $15,000. Because the De Minimis Asset Sale Procedures are reasonably calculated to provide interested parties notice, an opportunity to object and, if necessary, a hearing, the proposed procedures satisfy applicable due process standards.

## II.    The Abandonment Procedures

28.     The Debtors intend to take all commercially reasonable steps to sell property that is not needed in their operations. In certain cases, however, the costs associated with the sale of such property may exceed the proceeds that would be generated from such sales.

29.     Accordingly, the Debtors seek authority to abandon such property pursuant to the following procedures (the "**Abandonment Procedures**") where, in the exercise of their reasonable business judgment, the Debtors determine that the cost of selling such property outweighs any potential recovery from its sale:

      i.    <u>Abandonment</u>. For personal property for which the Debtors are unable to find purchasers and the Debtors determine, after consultation with the Consultation Parties, that the cost to maintain, relocate, and/or store such personal property outweighs any potential recovery from a future sale:

            i.    <u>Business Judgment Standard</u>. The Debtors shall be authorized to abandon such property, subject to the procedures set forth herein, if the Debtors determine in the reasonable exercise of their business judgment that such abandonment is in the best interest of the Debtors' estates, without further order of the Court; provided, however, that nothing in the Proposed Order shall authorize the Debtors to abandon any personally identifiable information of any person (including any of the Debtors' employees) or any business

records necessary for the prosecution of the Debtors' chapter 11 cases and not otherwise available to the Debtors.

ii.    <u>Abandonment Notice</u>. The Debtors shall, at least five (5) business days prior to abandoning such property, file on the Court's docket and serve a written notice of such abandonment by e-mail, facsimile, or overnight delivery service (each notice, an "**Abandonment Notice**") on: (a) counsel to Magnetar Financial LLC, (i) Royer Cooper Cohen Braunfeld LLC, 1120 Avenue of the Americas, 4th Floor, New York, NY 10036, (Attn: Marc E. Hirschfield (mhirschfield@rccblaw.com)) and (ii) Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, DE 19801 (Attn: Russell C. Silberglied (silberglied@rlf.com)) as agent for the prepetition secured lenders; (b) counsel to the Committee, (i) Morrison & Foerster LLP, 250 West 55th Street, New York, NY 10019, (Attn: Lorenzo Marinuzzi (lmarinuzzi@mofo.com)), and (ii) Benesch, Friedlander, Coplan, & Aronoff LLP, 1313 North Market Street, Suite 1201, Wilmington, DE 19801 (Attn: Jennifer R. Hoover (jhoover@beneschlaw.com)); (c) the U.S. Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801 (Attn: Joseph Cudia (joseph.cudia@usdoj.gov)); (d) any known affected creditor(s) asserting a lien, claim, or encumbrance on the relevant property (the "**Abandonment Notice Parties**"), which Abandonment Notice shall consist of: (i) identification of the property being abandoned and its location; (ii) a summary of the reasons for abandoning such property; (iii) the entity to whom the property is proposed to be abandoned, if any; and (iv) the date and time within which objections must be filed and served on the Debtors (as set forth below).

iii.    <u>Objection Procedures</u>. Parties objecting to an Abandonment Notice must file and serve a written objection so that such objection is filed with the Court and is actually received by counsel to the Debtors no later than five (5) business days after the date the Debtors serve the relevant Abandonment Notice.

iv.    <u>No Objection</u>. If no objection to an Abandonment Notice is timely filed by any of the Abandonment Notice Parties within five (5) business days of service of such Abandonment Notice, the Debtors shall be authorized to immediately abandon the relevant property.

v.    <u>Unresolved Objections</u>. If a timely objection is filed and not withdrawn or resolved, the Debtors shall file a notice of hearing to consider the unresolved objection. If such objection is overruled or withdrawn, or if the abandonment of the property is specifically approved by further order of the Court, the Debtors shall be authorized to immediately abandon such property.

30858896.3

### a. The Proposed Abandonment Procedures Satisfy Section 554 of the Bankruptcy Code

30.     The Debtors respectfully submit that the proposed Abandonment Procedures represent the exercise of sound business judgment, are fair and appropriate, and balance the need for an expeditious reduction of burdensome costs to the Debtors' estates with the provision of advance notice of proposed dispositions of property.

31.     The proposed Abandonment Procedures satisfy the requirements of section 554 of the Bankruptcy Code.  Section 554(a) of the Bankruptcy Code provides that a debtor in possession "after a notice and hearing . . . may abandon any property of the estate that . . . is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a).  In abandoning property under section 554, "the debtor 'need only demonstrate that [it] has exercised sound business judgment in making the determination to abandon." *In re Contract Rsch. Sols., Inc.*, Case No. 12-11004 (KJC), 2013 Bankr. LEXIS 1784, at *11 (Bankr. D. Del. May 1, 2013).  Although there are certain exceptions to this rule, none are applicable in the present case.  *See Midlantic Nat'l Bank* v. *N.J. Dep't of Envtl. Prot.*, 474 U.S. 494, 506-07 (1986) (noting one such exception and holding that section 554(a) does not preempt state laws aimed at protecting public's health and safety).  Further, section 105(a) provides, in part, that the court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

32.     The Debtors will take reasonable steps to sell De Minimis Assets not needed in their operations for the benefit of their estates.  The costs associated with sales of certain De Minimis Assets, however, may exceed any possible proceeds thereof.  The inability to consummate a commercially reasonable sale of De Minimis Assets would indicate that these assets have no meaningful monetary value to the Debtors' estates.  Further, the costs of storing and maintaining

such De Minimis Assets may burden the Debtors' estates and weigh in favor of deserting such assets. Accordingly, the Debtors contend that, in such circumstances, the abandonment of De Minimis Assets pursuant to the Abandonment Procedures is in the best interest of the Debtors' estates.

## **WAIVER OF BANKRUPTCY RULE 6004(h)**

33.     Bankruptcy Rule 6004(h) provides that an order authorizing the use, sale, or lease of property is stayed until the expiration of fourteen (14) days after entry of the order, unless the court orders otherwise. The Debtors, however, request that the Proposed Order, and any sale consummated pursuant to the De Minimis Asset Sale Procedures, be effective immediately. It is in the best interests of the Debtors' estates to facilitate the closing of these transactions, thereby expediting the receipt of related sale proceeds into the estate. Moreover, the often difficult task of securing a buyer will be facilitated by the Debtors' ability to quickly consummate a sale transaction.

34.     Accordingly, the Debtors submit that the fourteen-day (14-day) stay set forth in Bankruptcy Rule 6004(h) should be waived in connection with the De Minimis Asset Sale Procedures and the Abandonment Procedures.

## **RESERVATION OF RIGHTS**

35.     Nothing contained in this motion or any order granting the relief requested in this motion, and no action taken pursuant to such relief requested or granted (including any payment made in accordance with any such order), is intended as or should be construed or deemed to be (a) an admission as to the amount of, basis for, or validity of any claim against any Debtor, under the Bankruptcy Code or other applicable nonbankruptcy law, (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds, (c) a promise or requirement to pay any particular claim, (d) an implication, admission or finding that any particular claim is an

administrative expense claim, other priority claim or otherwise of a type specified or defined in this motion or any order granting the relief requested by this motion, (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code, (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates, or (g) a waiver or limitation of any claims, causes of action or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law.

## **<u>NOTICE</u>**

36.     Notice of this Motion will be provided to (a) the U.S. Trustee; (b) counsel to the Committee; (c) counsel to Magnetar Financial LLC. as agent for the prepetition secured lenders; and (d) all parties that have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

*[Remainder of page intentionally left blank]*

WHEREFORE, the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and proper.

Dated: October 24, 2023

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ S. Alexander Faris*
Joseph Barry (Del. Bar No. 4221)
Ryan M. Bartley (Del. Bar No. 4985)
S. Alexander Faris (Del. Bar No. 6278)
Shella Borovinskaya (Del. Bar No. 6758)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253
Email:  jbarry@ycst.com
        rbartley@ycst.com
        afaris@ycst.com
        sborovinskaya@ycst.com

*Co-Counsel to the Debtors and Debtors in Possession*

**KRAMER LEVIN NAFTALIS & FRANKEL LLP**
P. Bradley O'Neill (*pro hac vice*)
Caroline Gange (*pro hac vice*)
1177 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 715-9511
Facsimile:  (212) 715-8000
Email:  boneill@kramerlevin.com
        cgange@kramerlevin.com

*Co-Counsel to the Debtors and Debtors in Possession*

30858896.3