**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Peer Street, Inc., *et al.*,[1] | Case No. 23-10815 (LSS) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date:  February 21, 2024 at 2:00 p.m.  (ET)[2]** |
| | **Obj. Deadline: February 14, 2024 at 4:00 p.m. (ET)** |

**DEBTORS' OMNIBUS OBJECTION TO MOTIONS TO CONVERT
THE CHAPTER 11 CASES TO CASES UNDER CHAPTER 7 OF THE
BANKRUPTCY CODE AND TO MOTIONS TO APPOINT A CHAPTER 11 TRUSTEE**

The above-captioned debtors and debtors in possession (collectively, the "**Debtors**") hereby object (this "**Objection**") to the:  (i) *Emergency Motion to Suspend Operations of Peer Street and Motion to Have This Case Converted to Ch. 7 – Stay Placed on All of it* [D.I. 432] (the "**Tibstra Motion**"), (ii) *Joinder in Emergency Motion to Suspend Operations of Peer Street and Motion to Have This Case Converted to Ch. 7 – Stay Placed on All of it* [D.I 471] and *Amended Petition in Support of Doc. 471 in Support of Conversion to Chapter 7* [D.I. 684] (together, the "**Tarpenning Motions**"), (iii) *Joinder in Emergency Motion to Suspend Operations of Peer Street and Motion to Have This Case Converted to Ch. 7 – Stay Placed on All of it* [D.I. 520 & 581] (the "**Often Joinder**"), (iv) *Joinder in Emergency Motion to Suspend Operations of Peer*

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of their respective federal tax identification numbers, are:  Peer Street, Inc. (8584); PS Funding, Inc. (3268); PeerStreet Licensing, Inc. (9435); Peer Street Opportunity Fund GP, LLC (8491); Peer Street Funding LLC (9485); PSF REO LLC (1013); PS Options LLC (8584); PS Warehouse, LLC (5663); PS Warehouse II, LLC (9252); Peer Street Opportunity Investors II, LP (1586); PS Portfolio-ST1, LLC (1868); PSF Ohio, LLC (9485); PSF TX 1, LLC (9485); PSF TX 2, LLC (2415); PSF TX 4 LLC (9485).  The Debtors' service address is c/o Province, LLC 2360 Corporate Circle, Suite 340, Henderson, NV 89074, Attn:  David Dunn, Chief Restructuring Officer.

[2]  At the November 14, 2023 hearing in these Chapter 11 Cases, the Court ordered the hearing on the Motions to Convert (defined below) to occur concurrently with the hearing to consider approval of the Debtors' disclosure statement.  *See* 11/14/23 Hr'g Tr. 29:5-13.

*Street and Motion to Have This Case Converted to Ch. 7 – Stay Placed on All of it* [D.I. 642 & 646] (the "**Nash Joinder**"), (v) *Joinder in Emergency Motion to Suspend Operations of Peer Street and Motion to have This Case Converted to Ch 7 – Stay Placed on All of it* [D.I. 670] (the "**Uzomba Joinder**"), and (vi) *Notice of Joinder in Emergency Motion to Suspend Operations of Peer Street and Motion to Have This Case Converted to Ch 7 – Stay Placed on All of it* [D.I. 776] (the "**Perrucci Joinder**" and, collectively with the Tibstra Motion, the Tarpenning Motions, the Often Joinder, the Nash Joinder, and the Uzomba Joinder, the "**Motions to Convert**"). Through the Motions to Convert, Stephen Tibstra, Sean Tarpenning, Heidi Often, Amelia Nash, Kennedy Uzomba, and Jacquelyn Perrucci (collectively, the "**Movants**"), seek entry of an order converting the Chapter 11 Cases to cases under chapter 7 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "**Bankruptcy Code**") or appointing a chapter 11 trustee. In support of their Objection, the Debtors respectfully represent as follows:

## PRELIMINARY STATEMENT[3]

1.      All of the Movants raise the same argument in support of the Motions to Convert: the Debtors should not be trusted because they allegedly misled investors and engaged in deceptive lending practices. The Movants offer sparse and unfounded assertions in support of the Motions to Convert, which do not approach satisfying the standards necessary for such extraordinary relief.[4] Unfortunately, aspersions have been cast on the Debtors and these Chapter 11 Cases through the inaccurate and unsubstantiated narrative that the Debtors misled investors and have hidden motives. To be clear, the Debtors' primary objective in the Chapter 11 Cases is to maximize value

---

[3]    Capitalized terms used but not otherwise defined in this Preliminary Statement have the meaning given to such terms below.

[4]    For the avoidance of doubt, the Debtors deny the allegations in the Motions to Convert and disagree with the Movants' characterizations of the Debtors and their businesses.

31012869.8

for their stakeholders, including retail investors, and to keep an open line of communication throughout the process.  The Debtors are executing on that goal, having substantially finalized their negotiations with the major creditor constituencies in the Chapter 11 Cases, including the Committee and Magnetar Financial LLC, the Debtors' secured lender, and filed a comprehensive combined disclosure statement and chapter 11 plan [D.I. 814] (the "**Combined Plan and Disclosure Statement**").  Notably, the Committee, which is comprised of retail investors, supports the Combined Plan and Disclosure Statement.

2.     The Debtors are at a pivotal stage in the Chapter 11 Cases, having made significant progress towards their exit from chapter 11 through a chapter 11 plan supported by the Committee, the Debtors' secured lenders, and other major case parties.  Conversion or the appointment of a trustee would fatally derail the progress made to date and would be value destructive.  The plan process is well progressed and is intended to maximize the value of the Debtors' estates for the benefit of all stakeholders.  Compared with this measurable progress, the Movants offer no basis to justify converting these Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code nor do they satisfy the standard necessary for the appointment of a chapter 11 trustee.  Accordingly, the Motions to Convert should be denied.

## JURISDICTION AND VENUE

3.     The United States Bankruptcy Court for the District of Delaware (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution.  Venue is

proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates

for the relief sought herein are sections 1104 and 1112 of the Bankruptcy Code.

## BACKGROUND

### I.      General Background

4.      On June 26, 2023, (the "**Petition Date**"), each of the Debtors commenced a

voluntary case (the "**Chapter 11 Cases**") under chapter 11 of the Bankruptcy Code.  The Debtors

are authorized to operate their business and manage their properties as debtors in possession

pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      On July 10, 202023, the Office of the United States Trustee for the District of

Delaware (the "**U.S. Trustee**") appointed an official committee of unsecured creditors [D.I. 84]

(the "**Committee**").

### II.     The Combined Plan and Disclosure Statement

6.      On January 31, 2024, the Debtors filed the Combined Plan and Disclosure

Statement.  Additional information regarding the Debtors' business, their capital structure, and the

circumstances leading to the filing of these Chapter 11 Cases is set forth in the Combined Plan and

Disclosure Statement.[5]   A hearing to consider interim approval of the Combined Plan and

Disclosure Statement is scheduled for February 21, 2024.

### III.    The Movants

#### A.  Stephen Tibstra

7.      In April 2018, a commercial loan was made to BLENDERS, LLC, as borrower, and

was guaranteed by Mr. Tibstra.  In 2020, this mortgage loan went into default.  As a result, on

---

[5]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Combined Plan and Disclosure Statement.

31012869.8

4

April 21, 2020, Debtor PS Funding, Inc. ("**PSFI**"), in its capacity as servicer of the loan, commenced foreclosure proceedings. The foreclosure sale was scheduled for January 11, 2022. On January 10, 2022, Mr. Tibstra commenced bankruptcy proceedings in the United States Bankruptcy Court for the Middle District of Florida (the "**Florida Bankruptcy Court**"). On August 17, 2022, the Florida Bankruptcy Court granted PSFI's motion for stay relief[6] and PSFI scheduled a foreclosure sale. Although Mr. Tibstra filed several objections and motions to halt the foreclosure sale, the property was sold to PSFI at a foreclosure sale on February 13, 2024.

### B. Sean Tarpenning

8.      As previously submitted to the Court, the Debtors and Mr. Tarpenning have a history. *See* D.I. 407.[7] That history has grown longer and more litigious since the filing of the Chapter 11 Cases.

9.      Mr. Tarpenning was the principal of certain entities (together, "**USREEB**"), who were borrowers under several mortgages owned and/or serviced by PSFI. Mr. Tarpenning personally guaranteed these loans. On or around August 19, 2019, USREEB defaulted on one such loan, secured by property located at 440 East 63rd Street, Kansas City, Missouri 64110 (the "**Property**"). In November 2019, Mr. Tarpenning filed suit against PSFI (the "**2019 Action**"),[8] among others, and, on October 2, 2020, filed voluntary petitions under chapter 11 of the Bankruptcy Code for USREEB in the United States Bankruptcy Court for the District of Kanas.

---

[6]     *See In re Stephen George Tibstra and Elizabeth Zveibel Tibstra*, Case No. 6:22-bk-00103-LVV, ECF No. 95 (Bankr. M.D.Fla. Aug. 17, 2022).

[7]     Additional details about the Debtors' history with Mr. Tarpenning is set forth in the *Debtors' Motion for Entry of an Order (I) Enforcing the Protections of 11 U.S.C. § 362; (II) Deeming Lis Pendens Void Ab Initio; and (III) Granting Related Relief* [Docket No. 407] (the "**Stay Enforcement Motion**").

[8]     PSFI settled the 2019 Action with the chapter 11 trustee and obtained a full release from USREEB.

31012869.8

Shortly thereafter, on December 1, 2020, Mr. Tarpenning was removed as principal of USREEB and a chapter 11 trustee was appointed for cause.

10.     After the chapter 11 trustee was appointed, on July 27, 2022, PSFI purchased the Property through a credit bid pursuant to a sale under section 363 of the Bankruptcy Code, free and clear of all liens, claims, and encumbrances, including those asserted in Mr. Tarpenning's 2019 Action.  Notwithstanding, after the Debtors filed the Chapter 11 Cases and entered into an agreement to sell the Property, Mr. Tarpenning filed a facially invalid *lis pendens*, in violation of the Debtors' automatic stay, to cloud the Property's title and to stall the sale.  On September 15, 2023, the Debtors filed the Stay Enforcement Motion, seeking to declare the *lis pendens* void *ab initio*.

11.     Days before his response to the Stay Enforcement Motion was due, Mr. Tarpenning filed for bankruptcy protection in the United States Bankruptcy Court for the Southern District of Ohio (the "**Ohio Bankruptcy Court**"), thereby staying the Stay Enforcement Motion.  On December 6, 2023, the Ohio Bankruptcy Court granted the Debtors' motion for stay relief to pursue the Stay Enforcement Motion in this Court.[9]  On January 17, 2024, this Court entered an order deeming the *Lis Pendens* void *ab initio*, *see* D.I. 770, and Mr. Tarpenning appealed the Court's ruling.  *See* D.I. 810.

### C.  Heidi Often

12.     Ms. Often is an investor in certain of the Debtors' mortgage loan products. *See* D.I. 339 at 3.4342.  Ms. Often has been an active participant in the Chapter 11 Cases.  In addition to filing the Often Joinder, Ms. Often objected to all of the professionals' fees [D.I. 773],

---

[9]     The Ohio Bankruptcy Court also transferred the case to the United States Bankruptcy Court for the District of Kansas (the "**Kansas Bankruptcy Court**").

31012869.8

submitted three (3) letters to the Court, dated September 15, 2023 [D.I. 405] (the "**First Letter**") September 26, 2023 [D.I. 437], and November 15, 2023 [D.I. 581], and appeared at a November 14, 2023 hearing before the Court.

13.     Mrs. Often has a negative perception and is skeptical of the Debtors, their businesses, and their reasons for filing the Chapter 11 Cases.  Mrs. Often perceives the Debtors to be "a very unprofessional company[,]" the Debtors' management and employees to "show criminal behavior[,]" and the Debtors' operations to be "another Bernie Madoff situation."  First Letter at p. 1.

### D.  Amelia Nash

14.     Ms. Nash is an investor in certain of the Debtors' mortgage loan products.  *See* D.I. 339 at 3.471–4.473.  Pursuant to the Nash Joinder, Ms. Nash believes that it is in the best interests of the investors to have the Chapter 11 Cases converted to cases under chapter 7 of the Bankruptcy Code, and that the Debtors have not prioritized investor money.

### E.  Kennedy Uzomba

15.     Mr. Uzomba is an investor in certain of the Debtors' mortgage loan products. *See* D.I. 339 at 3.6637–3.6639.  The Uzomba Joinder raises arguments identical to those found in the Tarpenning Motions and does not provide an independent or additional basis for why the relief sought is justified under the circumstances.

### F.  Jacqueline Perrucci

16.     Ms. Perrucci is also an investor in certain of the Debtors' mortgage loan products. *See* D.I. 339 at 3.4680–3.4685.  The Perrucci Joinder does not raise arguments independent from those raised in the other Motions to Convert and does not provide a basis for why conversion or the appointment of a chapter 11 trustee is justified.

31012869.8

**OBJECTION**

**I.      Messrs. Tibstra and Tarpenning Lack Standing**

17.      As a gating item, the Tibstra Motion should be denied because Mr. Tibstra is not a party in interest and, therefore, lacks standing to seek conversion.  Furthermore, because the Tibstra Motion was seemingly filed in an attempt to stop a foreclosure sale that has since occurred, the Tibstra Motion is also moot.

18.      To "appear and be heard in a bankruptcy case, a party must establish standing under either (i) Article III of the United States Constitution (which is required for litigants in all federal cases), or (ii) Bankruptcy Code § 1109." *In re New Century TRS Holdings, Inc.*, 505 B.R. 431, 438 (Bankr. D. Del. 2014).  Pursuant to 11 U.S.C. § 1109(b), "[a] party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter."  11 U.S.C. § 1109(b).  In the Third Circuit, a "party in interest" is one "who has a sufficient stake in the proceeding so as to require representation." *In re Global Indus. Tech.*, *Inc.*, 645 F.3d 201, 210 (3d Cir. 2011).  A party who lacks standing under Article III of the Constitution and section 1109 of the Bankruptcy Code cannot appear in a bankruptcy case.

19.      Mr. Tibstra has no stake in the Chapter 11 Cases and his alleged injury is not likely to be redressed by conversion of these Chapter 11 Cases.  He is neither a creditor nor an equity security holder.  Instead, the Debtors are creditors of Mr. Tibstra.  PSFI and PSF REO LLC, as PSFI's assignee, appeared in Mr. Tibstra's bankruptcy case as creditors because Mr. Tibstra was legally obligated to PSFI by virtue of his guarantee of the mortgage loan discussed above.  Mr. Tibstra has no cognizable interest to protect in the Chapter 11 Cases.[10]  Moreover, Mr. Tibstra's

---

[10]    Tibstra's reasons for filing the Tibstra Motion also appear to be moot.  The Tibstra Motion appears to be a last-ditch effort to prevent the Debtors from foreclosing on the subject property.  While the Debtors are certainly

alleged injury—the foreclosure sale—will not be redressed by conversion of the Chapter 11 Cases because the foreclosure sale already occurred.

20.    Additionally, Mr. Tarpenning—as a chapter 7 debtor in the Kansas Bankruptcy Court—lacks standing to protect any interests that he (now his estate) may have.  Upon filing his chapter 7 bankruptcy case, all of Mr. Tarpenning's assets became part of his bankruptcy estate.  *See* 11 U.S.C. § 541.  Mr. Tarpenning's chapter 7 case is being administered by a chapter 7 trustee who has sole authority to manage property of Mr. Tarpenning's chapter 7 estate.  *See* 11 U.S.C. § 704; *see also* Claim Nos. 1270 and 1271.  Accordingly, as Mr. Tarpenning's claim is property of his chapter 7 estate and is being administered by the appointed chapter 7 trustee, Mr. Tarpenning has no standing to seek the relief asserted in the Tarpenning Motions.  *See In re Rerisi*, 172 B.R. 525, 527 (Bankr. E.D.N.Y. 1994) ("As of the date of filing of a Chapter 7 petition, the Trustee is authorized to administer all of the property of the debtor's estate.  Once the estate is created, no interests in property of the estate remain in the debtor as the estate becomes vested with all of the property and property rights of the debtor.").

## II.    The Movants Have Not Met Their Burden of Proving Cause Exists to Convert the Chapter 11 Cases to Cases Under Chapter 7

21.    In relevant part, section 1112 of the Bankruptcy Code states:

> Except as provided in paragraph (2) of this subsection, subsection (c) of this section, and section 1104(a)(3), on request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause.

---

sympathetic to any individual in such a situation, the Debtors' business involves servicing loans—in part, for the benefit of investors—and if appropriate, the Debtors have a contractual obligation to foreclose on properties with mortgage loans that are in default.  However, being displeased with the Debtors for foreclosing on a property is not a basis for conversion of these cases, nor is it a basis for the appointment of an examiner.

31012869.8

9

11 U.S.C. § 1112(b)(1).

22.     Section 1112(b)(4) provides for an illustrative list of what constitutes "cause" for purposes of conversion. *See* 11 U.S.C. § 1112(b)(4)(A) – (P). The moving party bears the burden of demonstrating cause exists to convert a chapter 11 case to chapter 7. *See In re Dark Horse Tavern*, 189 B.R. 576, 580 (Bankr. N.D.N.Y. 1995). Conversion is a drastic measure that should only be granted upon a strong evidentiary showing. *Id.* The determination as to whether "cause" exists for purposes of converting a chapter 11 case to a chapter 7 case must be made on a case by case basis. *In re Halvajian*, 216 B.R. 502, 511 (Bankr. D.N.J. 1998), *aff'd*, 168 F.3d 478 (1998). Upon the finding of cause, the Court must determine whether conversion or dismissal best serves the interests of the creditors and the estate. *In re Am. Capital Equip., LLC*, 688 F.3d 145, 161 (3d Cir. 2012). Conversion is not mandatory if a debtor can prove the "existence of 'unusual circumstances specifically identified by the court' showing that dismissal or conversion is not in the best interests of the estate." *In re The SCO Group, Inc.,* No. 07-11337 (KG), 2009 WL 2425755 at *5 (Bankr. D. Del. Aug. 5, 2009).

23.     There is no cause to convert these Chapter 11 Cases and conversion is not in the best interests of creditors and the Debtors' estates. The Movants do not offer *any* evidence, let alone a "strong evidentiary showing," justifying conversion of the Chapter 11 Cases. The Movants do not explain which subsection of 1112(b)(4) supports the "cause" necessary for the Motions to Convert. Instead, the Movants offer the following bases for why the Chapter 11 Cases should be converted: (1) conversion is in the best interests of the investors because the Debtors misled investors and their "agenda" does not include protecting and preserving the investor's money;[11]

---

[11]     *See* Often Joinder at 1; Nash Joinder at 1; Tarpenning Motion at ¶ 8; Uzomba Joinder at ¶ 8; Tibstra Motion at 4.

(2) immediate action is necessary to prohibit use of cash collateral;[12] (3) there are little plans for reorganization;[13] and (4) the Debtors somehow committed multiple "acts of fraud, concealment, and deception[,]" by "falsely misrepresenting the status of a property located at 440 E. 63rd Street in Kansas City" as an REO property.[14]  These allegations are inaccurate, baseless, and do not constitute cause for conversion.

24.    *First*, there is no evidence to suggest that the Debtors misled investors or have an ulterior motive or agenda in the Chapter 11 Cases.  The Movants do not offer any and, therefore, fail to satisfy their burden of proving that that cause for conversion exists.  To the contrary, the Debtors and their advisors have spent countless hours and significant resources towards protecting and preserving the value of the estates.  The reality of these chapter 11 cases is simple—complex legal disputes and events required the Debtors to pivot from their initial strategy and formulate an alternative strategy.  Such issues are not uncommon in chapter 11 cases, and the Debtors have been transparent about their strategy regarding these issues throughout the Chapter 11 Cases.[15]  That the Debtors and investors differ in their views on the issue of case strategy does not warrant conversion.

25.    *Second*, Messrs. Tarpenning and Uzomba argue that cause for conversion exists because "[i]mmediate action is necessary to prohibit the use of cash collateral."  Tarpenning Mot. ¶ 8; Uzomba Joinder at ¶ 8.  The Debtors' use of cash collateral is subject in all respects to the

---

[12]    Tarpenning Motion at ¶ 8; Uzomba Motion at ¶ 8.

[13]    *Id.*

[14]    The Court has already considered Mr. Tarpenning's allegations that the Debtors misrepresented the status of the Property as one of their REO properties and found these allegations to be meritless. *See* 1/16/24 Hr'g Tr. 16:4-10 ("[A]s to the misrepresentation of REO property, the motion clearly sets forth how it is that . . . PSF TX 1, LLC obtained the property . . . . [T]here's been no misrepresentation.").  Accordingly, this allegation warrants no further response.

[15]    *See* D.I. 257.

*Final Order (A) Authorizing the Prepetition Borrowers' Use of Cash Collateral; (B) Granting Adequate Protection to the Prepetition Secured Parties; and (C) Granting Related Relief* [D.I. 293] (the "**Final Cash Collateral Order**").  The Final Cash Collateral Order was extensively negotiated with the Committee and the Debtors' prepetition secured lenders, entered by the Court after the Debtors gave parties in interest notice and an opportunity to be heard, and governs the Debtors' use of cash collateral.  Accordingly, Messrs. Tarpenning and Uzomba fail to establish cause for conversion.

26.    *Third*, any argument concerning the Debtors' "very little plans for reorganization" is wholly without merit.  *See* Tarpenning Mot. ¶ 8.  Several months ago, the Debtors pivoted from pursuing a sale process to pursuing plan negotiations that would implement a run-off of the Debtors' loan portfolio.  Since the pivot, the Debtors and their key constituencies have been working tirelessly towards a responsible transition of the Debtors' servicing rights and management of the mortgage loan portfolio.  As counsel to the Committee stated at the November 14 hearing, this has been a taxing process that involved complex financial modeling, the input of several key stakeholders, extensive negotiations with servicers, among other things.  11/14/23 Hr'g Tr. 15:15-16:19.  Those efforts were successful, culminating in the Combined Plan and Disclosure Statement and the support of the major stakeholders in the Chapter 11 Cases.  At this juncture, the Chapter 11 Cases are well progressed, thereby weighing against conversion.

27.    *Fourth*, the Debtors submit that converting the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code would be value destructive and contrary to the best interests of the estates and creditors.  Conversion would require a chapter 7 trustee to step in, with zero historical knowledge about the Debtors' businesses and operations—which are more complicated

31012869.8

than most— to duplicate the work that has already been done by the estate professionals. Such a result would be fatal to the extensive efforts made thus far and cost prohibitive.

28.     For the foregoing reasons, the Debtors submit that the Movants have failed to prove that cause exists for conversion. Conversion would only result in additional layers of complexity, delay in creditor recoveries, and expenditures of fees and expenses to duplicate work that has already been done in the Chapter 11 Cases. Accordingly, the Motions to Convert should be denied.

**III.     The Movants Also Have Not Met Their Burden of Proving Cause Exists to Appoint a Chapter 11 Trustee**

29.     The United States Court of Appeals for the Third Circuit has held that the appointment of a chapter 11 trustee is an extraordinary remedy. *See In re Sharon Steel Corp.*, 871 F.2d 1217, 1225 (3d Cir. 1989). This is because of a fundamental principle governing chapter 11 cases – that a debtor must be afforded an opportunity for a fresh start, and the opportunity to analyze and correct, to the extent required, existing operations. *See, e.g.*, H.R. Rep. No. 595, 95th Cong., 1st Sess. 220 (1977) *reprinted in* 1978 U.S.C.C.A.N. 5787; *see also Comm. of Dalkon Shield Claimants v. A.H. Robins Co.*, 828 F.2d 239, 240-41 (4th Cir. 1987) (the policy behind chapter 11 is to afford a second chance to debtors).

30.     In complete accord with this principle is the tenet that a debtor should be permitted to continue operating its business during the period in which its reorganization is pending. It is well-settled in this jurisdiction that a strong presumption exists in chapter 11 cases that the debtor should continue in control and possession of the business. *See Official Committee of Asbsestos Claimants v. G-I Holdings, Inc. (In re G-I Holdings, Inc.)*, 385 F.3d 313, 320 (3d Cir. 2004) (hereinafter *G-I Holdings II*); *see also In re Marvel Entertainment Group, Inc.*, Civ. A. No. 97-638-RRM (D. Del. Dec. 16, 1997), slip op. at 9-10 (citing *In re Aardvark, Inc.*, 1997 WL 129346 at *3 (D. Del. Mar. 4, 1997)); *In re Sharon Steel Corp.*, 871 F.2d 1217, 1225 (3d Cir.

31012869.8

13

1989).  This strong presumption "finds its basis in the debtor-in-possession's usual familiarity with the business it had already been managing at the time of the bankruptcy filing, often making it the best party to conduct operations" during the bankruptcy case.  *See In re Marvel Entertainment Group, Inc.,* 140 F.3d 463, 471 (3d Cir. 1998) (citing *In re Sharon Steel Corp.*, 871 F.2d 1217, 1226 (3d Cir. 1989)).  Similarly, "the appointment of a trustee in a chapter 11 case is not the usual procedure because 11 U.S.C. § 1108 contemplates that the debtor will continue to manage its property and operate its business.  The court must weigh all of the factors and interests carefully because the appointment of a trustee is an extraordinary remedy which will cause additional expense to the estate." *In re Stein & Day, Inc.*, 87 B.R. 290, 294 (Bankr. S.D.N.Y. 1988).

31.     While the strong presumption for continuing current management exists, section 1104 of the Bankruptcy Code provides a mechanism for replacement of management with a chapter 11 trustee.  Section 1104 states:

(a)     At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee –

(1)     for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or

(2)     if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.

11 U.S.C. § 1104(a).  It is well accepted in this Circuit that while "the appointment of a trustee is mandatory upon a determination of cause," such determination "is within the discretion of the court." *In re Marvel Entertainment Group, Inc.*, 140 F.3d at 471 (citation omitted).  Specifically, a court must determine whether the "conduct shown rises to a level sufficient to warrant the

appointment of a trustee.  This discretionary authority is consistent with a 'policy of flexibility' permeating the Bankruptcy Code's overall aim of protecting creditors while giving the debtors a second chance." *Id.* (citations omitted).   As such, the Court must balance the conduct alleged against the drastic effects of appointing a trustee in determining whether sufficient cause has been alleged.

32.    Given that the appointment of a chapter 11 trustee is an exceptional remedy under the Bankruptcy Code, a movant must prove by clear and convincing evidence the need for the appointment of a trustee pursuant to 11 U.S.C. § 1104(a) or (b).  *See In re G-I Holdings, Inc. II*, 385 F.3d at 320 (the burden of persuasion by clear and convincing evidence "does not shrink or shift"); *see also Sharon Steel*, 871 F.2d at 1226 (stating that the burden of proof in this Circuit is by clear and convincing evidence); *see also United States v. Bertoli*, 40 F.3d 1384, 1411 (3d Cir. 1994) (noting that certain speculation might satisfy the preponderance of the evidence standard, but could not withstand scrutiny under the clear and convincing evidence standard).

33.    The Movants fail to meet their burden to show, by any evidence, much less by clear and convincing evidence, that the appointment of a chapter 11 trustee is warranted.  The Movants offer nothing but hearsay and conjecture to support their brazen and unfounded allegations.[16] *See* Tarpenning Mot ¶ 2.  The focus under section 1104(a)(1) of the Bankruptcy Code is on a debtors' current activities, not past misconduct.  *See e.g., In re Worldcom, Inc.*, Case No. 02-13533 (AJG), 2003 Bankr. LEXIS 2192 at *17-*18, (Bankr. S.D.N.Y. May 16, 2003).  At present, the Debtors' management team includes a disinterested chief restructuring officer and the Debtors' board consists of a supermajority of independent directors.  There is also additional oversight in the form of the Committee and the U.S. Trustee.  The Debtors' actions are being supervised by

---

[16]    The hearsay statement in the Tarpenning Motion is inadmissible and should be disregarded in its entirety.

31012869.8

independent individuals and stakeholders at every level, and each director has a fiduciary obligation to address and/or report any wrongdoing.  Accordingly, any alleged prepetition dealings between the Debtors and the Movants do not factor into the Court's analysis of whether to appoint a chapter 11 trustee.

34.     Lastly, the Movants argue that there are little plans for reorganization as another basis for why a chapter 11 trustee should be appointed.  As discussed above, the Debtors filed the Combined Plan and Disclosure Statement and the Chapter 11 Cases are in advanced stages.  For the reasons discussed above, this last point is also without merit.

35.     For all of the foregoing reasons, there is no basis or justification for the appointment of a chapter 11 trustee and the Motions to Convert should be denied.

## NOTICE

36.     Notice of this Objection has been provided to: (a) the U.S. Trustee; (b) the Committee; (c) counsel to Magnetar Financial LLC, as agent for the prepetition secured lenders; (d) the Movants; and (e) all parties that have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

*[Remainder of Page Intentionally Left Blank]*

31012869.8

WHEREFORE, the Debtors request that the Court enter the proposed order attached hereto as **Exhibit A**, (i) denying the Motions to Convert; and (ii) entering any such order and further relief as is just and proper.

Dated: February 14, 2024

**YOUNG CONAWAY STARGATT &
TAYLOR, LLP**

*/s/ Shella Borovinskaya*
Joseph Barry (Del. Bar No. 4221)
Ryan M. Bartley (Del. Bar No. 4985)
S. Alexander Faris (Del. Bar No. 6278)
Shella Borovinskaya (Del. Bar No. 6758)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253
Email:  jbarry@ycst.com
        rbartley@ycst.com
        afaris@ycst.com
        sborovinskaya@ycst.com

*Co-Counsel to the Debtors and
Debtors in Possession*

**KRAMER LEVIN NAFTALIS &
FRANKEL LLP**
P. Bradley O'Neill (admitted *pro hac vice*)
Caroline Gange (admitted *pro hac vice*)
1177 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 715-9511
Facsimile:  (212) 715-8000
Email:  boneill@kramerlevin.com
        cgange@kramerlevin.com

*Co-Counsel to the Debtors and
Debtors in Possession*

**<u>Exhibit A</u>**

**Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Peer Street, Inc., *et al.*,[1] | Case No. 23-10815 (LSS) |
| Debtors. | (Jointly Administered) |
| | **Ref. Docket No. _____** |

**ORDER DENYING MOTIONS TO CONVERT
THE CHAPTER 11 CASES TO CASES UNDER CHAPTER 7 OF THE
BANKRUPTCY CODE AND TO APPOINT A CHAPTER 11 TRUSTEE**

Upon the (i) *Emergency Motion to Suspend Operations of Peer Street and Motion to Have This Case Converted to Ch. 7 – Stay Placed on All of it* [D.I. 432] (the "**Tibstra Motion**"), (ii) *Joinder in Emergency Motion to Suspend Operations of Peer Street and Motion to Have This Case Converted to Ch. 7 – Stay Placed on All of it* [D.I 471] and *Amended Petition in Support of Doc. 471 in Support of Conversion to Chapter 7* [D.I. 684] (together, the "**Tarpenning Motions**"), (iii) *Joinder in Emergency Motion to Suspend Operations of Peer Street and Motion to Have This Case Converted to Ch. 7 – Stay Placed on All of it* [D.I. 520 & 581] (the "**Often Joinder**"), (iv) *Joinder in Emergency Motion to Suspend Operations of Peer Street and Motion to Have This Case Converted to Ch. 7 – Stay Placed on All of it* [D.I. 642 & 646] (the "**Nash Joinder**"), (v) *Joinder in Emergency Motion to Suspend Operations of Peer Street and Motion to have This Case Converted to Ch 7 – Stay Placed on All of it* [D.I. 670] (the "**Uzomba Joinder**"), and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their respective federal tax identification numbers, are:  Peer Street, Inc. (8584); PS Funding, Inc. (3268); PeerStreet Licensing, Inc. (9435); Peer Street Opportunity Fund GP, LLC (8491); Peer Street Funding LLC (9485); PSF REO LLC (1013); PS Options LLC (8584); PS Warehouse, LLC (5663); PS Warehouse II, LLC (9252); Peer Street Opportunity Investors II, LP (1586); PS Portfolio-ST1, LLC (1868); PSF Ohio, LLC (9485); PSF TX 1, LLC (9485); PSF TX 2, LLC (2415); PSF TX 4 LLC (9485).  The Debtors' service address is c/o Province, LLC 2360 Corporate Circle, Suite 340, Henderson, NV 89074, Attn:  David Dunn, Chief Restructuring Officer.

(vi) *Notice of Joinder in Emergency Motion to Suspend Operations of Peer Street and Motion to Have This Case Converted to Ch 7 – Stay Placed on All of it* [D.I. 776] (the "**Perrucci Joinder**" and, collectively with the Tibstra Motion, the Tarpenning Motions, the Often Joinder, the Nash Joinder, and the Uzomba Joinder, the "**Motions to Convert**") seeking entry of an order (i) converting the chapter 11 cases to cases under Chapter 7 of the Bankruptcy Code; and (ii) appointing a chapter 11 trustee; and upon the *Debtors' Omnibus Objection to Motions to Convert the Chapter 11 Cases to Cases Under Chapter 7 of the Bankruptcy Code and to Motions to Appoint a Chapter 11 Trustee* (the "**Objection**"); and the Court having jurisdiction to consider the Motions to Convert and the Objection pursuant to § 1334; and consideration of the Motions to Convert and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having determined that the relief sought in the Motions to Convert is not in the best interests of the Debtors' estates, their creditors, or other parties in interest; IT IS HEREBY ORDERED THAT:

1.  The Motions to Convert are DENIED.

2.  This order shall constitute a separate order denying each Motion to Convert.

3.  The terms and conditions of this order shall be immediately effective and enforceable upon its entry.

The Court shall retain jurisdiction to hear and determine all matters arising from the implementation and/or interpretation of this order.

31012869.8

2