**<u>EXHIBIT B</u>**

**Blackline**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Peer Street, Inc., *et al.*,[1] | Case No. 23-10815 (LSS) |
| Debtors. | (Jointly Administered) |
| | Ref. Docket No. |

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER APPROVING
AND CONFIRMING THE AMENDED COMBINED DISCLOSURE STATEMENT
AND JOINT CHAPTER 11 PLAN OF THE DEBTORS**

Upon consideration of (a) the *Amended Combined Disclosure Statement and Joint Chapter 11 Plan for Peer Street, Inc., and Its Affiliated Debtors* (as amended, modified, or supplemented, the "**Combined Disclosure Statement and Plan**" or the "**Plan**"),[2] attached hereto as **Exhibit A**, (b) the *Debtors' Motion for Entry of an Order (I) Approving the Combined Disclosure Statement and Plan on an Interim Basis for Solicitation Purposes Only; (II) Establishing Solicitation and Tabulation Procedures; (III) Approving the Form of Ballot and Solicitation Materials, (IV) Establishing the Voting Record Date; (V) Fixing the Date, Time, and Place for the Combined Hearing and the Deadline for Filing Objections Thereto; and (VI) Granting Related Relief* [D.I. 815] (the "**Solicitation Motion**") filed by the above-captioned

---

1   The Debtors in these chapter 11 cases, along with the last four digits of their respective federal tax identification numbers, are:  Peer Street, Inc. (8584); PS Funding, Inc. (3268); PeerStreet Licensing, Inc. (9435); Peer Street Opportunity Fund GP, LLC (8491); Peer Street Funding LLC (9485); PSF REO LLC (1013); PS Options LLC (8584); PS Warehouse, LLC (5663); PS Warehouse II, LLC (9252); Peer Street Opportunity Investors II, LP (1586); PS Portfolio-ST1, LLC (1868); PSF Ohio, LLC (9485); PSF TX 1, LLC (9485); PSF TX 2, LLC (2415); PSF TX 4 LLC (9485).  The Debtors' service address is c/o Province, LLC 2360 Corporate Circle, Suite 340, Henderson, NV 89074, Attn:  David Dunn, Chief Restructuring Officer.

2   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Combined Disclosure Statement and Plan, unless otherwise noted.

debtors and debtors in possession (collectively, the "**Debtors**"), (c) the *Declaration of David M. Dunn in Support of Entry of Order Confirming Amended Combined Disclosure Statement and Joint Chapter 11 Plan for Peer Street, Inc., and Its Affiliated Debtors* [D.I. [●]1050] (the "**Dunn Declaration**"), (d) the *Memorandum of Law in Support of the Amended Combined Disclosure Statement and Joint Chapter 11 Plan for Peer Street, Inc., and Its Affiliated Debtors* [D.I. [●]1052] (the "**Confirmation Memorandum**"), and (e) the *Declaration of [Angela Tsai]Jason Dombar on Behalf of Stretto, Inc. Regarding the Solicitation and Tabulation of Votes Cast on the Combined Disclosure Statement and Joint Chapter 11 Plan for Peer Street, Inc., and Its Affiliated Debtors* [D.I. [●]1051] (the "**Voting Declaration**"); and this Court, by order dated March 13, 2024 [D.I. 943] (the "**Interim Approval and Procedures Order**"), having conditionally approved the Combined Disclosure Statement and Plan for solicitation, and granted the Solicitation Motion thereby authorizing the Debtors to solicit acceptances for the Combined Disclosure Statement and Plan; and all objections and all reservations of rights that have not been withdrawn, waived, or settled pertaining to final approval and Confirmation of the Combined Disclosure Statement and Plan having been overruled on the merits; and a hearing having been held on April 2629, 2024 and May [•], 2024, regarding final approval and Confirmation of the Combined Disclosure Statement and Plan (the "**Confirmation Hearing**"); and upon the evidence adduced and proffered and the arguments of counsel made at or in connection with the Confirmation Hearing; and this Court having reviewed all documents in connection with Confirmation, and having heard all parties desiring to be heard with respect to Confirmation; and after due deliberation and consideration of all of the foregoing; and sufficient cause appearing therefor; this Court hereby makes the following

**FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

A.      The findings and conclusions set forth herein and on the record of the Confirmation Hearing constitute this Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.      This Court has jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. §§ 1334 and 157 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated as of February 29, 2012.  Venue of these proceedings and the Chapter 11 Cases in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. §157(b), and this Court may enter a final order hereon under Article III of the U.S. Constitution.

C.      On March 15, 2024, the Debtors filed the solicitation version of the Combined Disclosure Statement and Plan [D.I. 952].  The filing of the Combined Disclosure Statement and Plan satisfies Bankruptcy Rule 3016 and Local Rule 3017-2.

D.      As evidenced by the *Affidavit of Service* [D.I. 978], on or before March 20, 2024, the Debtors caused the Ballots to be distributed as required by sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, the Local Rules, all other applicable provisions of the Bankruptcy Code, the Interim Approval and Procedures Order, and all other rules, laws, and regulations applicable to such solicitation.  The Solicitation Packages (as defined

in the Interim Approval and Procedures Order)[3] were transmitted in accordance with the Interim Approval and Procedures Order.  Sufficient time was provided for the Voting Classes to vote to accept or reject the Combined Disclosure Statement and Plan.  Such transmittal and service was adequate and sufficient under the circumstances, and no other or further notice is or shall be required.

E.    As evidenced by the *Affidavit of Service* [D.I. 978], the Debtors have provided proper, adequate, and sufficient notice of the Combined Disclosure Statement and Plan and Confirmation Hearing, as required by Bankruptcy Rule 3017(d), to all Holders of Claims and Interests and other parties in interest, and no other or further notice is or shall be required. Sufficient time was provided to all Holders of Claims and Interests and all other parties in interest to object to Confirmation of the Combined Disclosure Statement and Plan.  Service was effectuated in accordance with the Interim Approval and Procedures Order and the Service Order.

F.    The solicitation of acceptance or rejection of the Combined Disclosure Statement and Plan has been conducted fairly, properly, in good faith, and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Interim Approval and Procedures Order, and all other rules, laws, and regulations applicable to such solicitation.

G.    The procedures by which the Ballots for acceptance or rejection of the Plan were distributed and tabulated, including as set forth in the Voting Declaration, under the circumstances of the Chapter 11 Cases were conducted fairly, properly, in good faith, and

---

[3]    By order dated June 28, 2023 [D.I. 35] (the "**Service Order**"), the Court approved certain service procedures applicable to the Chapter 11 Cases..

complied with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, applicable non-bankruptcy law, the Interim Approval and Procedures Order and the Service Order. As more fully set forth in the Confirmation Memorandum and the Voting Declaration, a summary of the Ballots cast on the Combined Disclosure Statement and Plan is as follows:

| VOTING CLASS | CLASS VOTING RESULT |
|---|---|
| Class 3 | PSI – Accepted<br>PSLI – Accepted<br>PSFI – Accepted |
| Class 4 | PSI – Rejected<br>OppFund GP – Accepted<br>PSFI – Accepted<br>PSFLLC – Accepted<br>OppFund – Accepted<br>PS Portfolio – Accepted |
| Class 8 | Accepted |
| Class 9 | Accepted |
| Class 10 | Accepted |
| Class 10-1 | Accepted |
| Class 11 | Accepted |
| Class 11-1 | Accepted |
| Class 12 | Accepted |
| Class 13 | Accepted |
| Class 14 | Accepted |

H.      Class 4 at Warehouse I, Warehouse II, PS Option and PSLI and Classes 6 at PSI, PSFI, OppFund, and PS Portfolio are vacant and eliminated from the Plan pursuant to Section 6.8 thereof.

I.       Classes 3, 4 (other than at PSI), 8, 9, 10, 10-1, 11, 11-1, 12, 13 and 14 voted to accept the Plan with respect to the applicable Debtor(s) where such Classes appear, in accordance with section 1129 of the Bankruptcy Code.

J.      Prior to the Confirmation Hearing, the Debtors filed the Plan Supplement [D.I. 1021 and ].  The Plan Supplement complies with the terms of the Plan, and the filing and notice of the Plan Supplement was, under the circumstances of the Chapter 11 Cases, appropriate and complied with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Interim Approval and Procedures Order and the Service Order, and no other or further notice is or shall be required.  The Debtors are authorized to modify the Plan Supplement documents following entry of this Confirmation Order in a manner consistent with this Confirmation Order, the Plan, or applicable law.

K.      The Combined Disclosure Statement and Plan complies with all of the applicable provisions of the Bankruptcy Code including, but not limited to: (a) the proper classification of Claims and Interests (sections 1122 and 1123(a)(1) of the Bankruptcy Code); (b) the specification of Unimpaired Classes (section 1123(a)(2) of the Bankruptcy Code); (c) the specification of treatment of Impaired Classes (section 1123(a)(3) of the Bankruptcy Code); (d) the provision for the equal treatment of each Claim or Interest within a particular Class (section 1123(a)(4) of the Bankruptcy Code); (e) the provision for adequate and proper means of implementation (section 1123(a)(5) of the Bankruptcy Code); (f) the prohibition against the

issuance of non-voting equity securities (section 1123(a)(6) of the Bankruptcy Code); and (g) the manner of selection of the Plan Administrator (section 1123(a)(7) of the Bankruptcy Code). Thus, the Combined Disclosure Statement and Plan satisfies section 1129(a)(1) of the Bankruptcy Code.

L.      Article III of the Plan provides for the appointment of the Plan Administrator, who, as of the Effective Date, will serve as the sole officer and director of each Debtor and as the sole representative of the Estates, as provided for in the Combined Disclosure Statement Plan and the Plan Administrator Agreement.  Subject to ultimate oversight by the Advisory Committee, the Plan Administrator will be empowered and directed to, among other things, implement the terms of the Combined Disclosure Statement and Plan in accordance with the terms of the Combined Disclosure Statement and Plan and the Wind Down Budget incorporated therein, this Confirmation Order, and the Plan Administrator Agreement.  The foregoing is consistent with the interests of Holders of Claims and Interests and with public policy, with respect to the manner of selection of the Plan Administrator, and therefore, section 1123(a)(7) of the Bankruptcy Code is satisfied.

M.      The Plan provides for the same treatment by the Debtors for each Claim or Interest in each respective Class or Sub-Class, unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest.  Thus, section 1123(a)(4) of the Bankruptcy Code is satisfied.

N.      The settlements and compromises pursuant to and in connection with the Combined Disclosure Statement and Plan comply with and satisfy the requirements of section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019.   Accordingly, except as

otherwise set forth in the Plan or herein, in consideration for the Distributions and other benefits provided for under the Plan, including, without limitation, the release and injunction provisions provided for in the Combined Disclosure Statement and Plan, which shall constitute a good faith compromise and settlement of all Claims and controversies resolved pursuant to the Combined Disclosure Statement and Plan.

O.    Based upon the arguments of counsel to the Debtors and other interested parties with respect to Confirmation, all other testimony either actually given or proffered in connection with Confirmation, including, without limitation, the Voting Declaration, the Dunn Declaration, and the Confirmation Memorandum, other evidence introduced at or in connection with the Confirmation Hearing, this Confirmation Order constitutes this Court's approval of the settlements contained in the Combined Disclosure Statement and Plan because, among other things:  (a) the settlements reflect a reasonable balance between the possible success of litigation with respect to each of the settled claims and disputes, on the one hand, and the benefits of consensually resolving such disputes and allowing the Debtors to liquidate and distribute their Assets and wind down the Chapter 11 Cases in a timely and efficient manner, as provided for in the Plan, on the other hand; (b) absent the settlements, there is a substantial likelihood of complex and protracted litigation over Confirmation, with the attendant risk, expense, inconvenience, and delay that has a possibility to impede or wholly prevent the Debtors' liquidation of Loan Assets and other wind-down efforts; (c) the settlements provide significant value to the Debtors' Estates, favorably resolve and avoid potential litigation at Confirmation that would otherwise pose a substantial risk of degradation and loss of the recoverable and distributable value of the Loan Assets; (d) the settlements are the product of arm's-length

bargaining and good-faith negotiations among the Debtors, the Committee, the Prepetition Lenders, and the Pacific Creditors; (f) the settlements are in the best interests of the Debtors, their Estates, Holders of Claims and Interests, and other parties in interest, and is fair, equitable, and reasonable; and (g) due notice and an opportunity to object and be heard with respect thereto has been given to Holders of Claims and Interests and other parties in interest.  Based on the foregoing, the settlements contained in the Combined Disclosure Statement and Plan satisfies the requirements of applicable Third Circuit law for approval of settlements and compromises pursuant to Bankruptcy Rule 9019 and in connection with Confirmation.

       P.      This Court has jurisdiction under 28 U.S.C. §§ 1334(a) and (b), and the *Amended Standing Order of Reference* dated as of February 29, 2012, from the United States District Court, to approve the releases and exculpations set forth in Article XIV of the Combined Disclosure Statement and Plan (the "**Releases**"), and the related injunctions provided for therein. Sections 105(a), 1123(a)(5) and 1123(b)(6) of the Bankruptcy Code permit approval of such releases, exculpations, and injunctions because, as has been established here, based upon the record in the Chapter 11 Cases and the evidence presented at or in connection with the Confirmation Hearing, such provisions set forth in Article XIV of the Combined Disclosure Statement and Plan are:  (a) within the jurisdiction of this Court; (b) an appropriate exercise of the Debtors' business judgment; (c) given in exchange for the good and valuable consideration provided or to be provided by the Debtors and the Estates, the Prepetition Lenders, and the Pacific Creditors, the Committee and its members, and with respect to each of the foregoing, their Related Parties (as defined in the Combined Disclosure Statement and Plan, the "**Released Parties**"); (d) a good faith settlement and compromise of the Claims and Causes of Action

released by Article XIV of the Combined Disclosure Statement and Plan; (e) in the best interests

of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made after due

notice and an opportunity to object and be heard with respect thereto, as the Combined

Disclosure Statement and Plan, the Confirmation Notice, and the Ballots each unambiguously

state that (i) the Plan contains certain release, exculpation, and injunction provisions, and (ii)

affected parties may object to such release, exculpation, and injunction provisions and opt out of

them; (h) are consistent with sections 105, 524, 1123, 1129, and 1141 of the Bankruptcy Code

and other applicable provisions of the Bankruptcy Code and applicable law; and (i) a bar to the

Debtors and the Releasing Parties asserting any Claim or Cause of Action released or exculpated

by Article XIV of the Combined Disclosure Statement and Plan, including a bar to any of the

Releasing Parties asserting any released Claims or Causes of Action against any of the Released

Parties, as and to the extent provided for in the Plan and this Confirmation Order.

      Q.     Consistent with sections 105(a), 1123(b)(3), and 1123(b)(6) of the

Bankruptcy Code, the Court has jurisdiction and constitutional adjudicatory authority to approve

the Releases.  The Releases are consensual with respect to the Releasing Parties, and are given

and made after due notice and opportunity for hearing.  The Ballots sent to all Holders of Claims

and Interests entitled to vote and the notice of the Confirmation Hearing sent to parties in interest

unambiguously provided in bold letters that the Plan contained the Releases.  Such parties in

interest were provided due and adequate notice of these Chapter 11 Cases, the Plan, the Releases,

the deadline to object to confirmation of the Plan, the opportunity to opt out of the Releases, the

opportunity to object to object to the Releases, and were properly informed that the Holders of

Claims against or Interests in the Debtors that did not check the "Opt-Out" box on the applicable

Ballot returned in advance of the deadline, would be deemed to consent to the Releases set forth in Section 14.1(c) of the Combined Plan and Disclosure Statement.  Thus, the Releases are consensual as to the Releasing Parties.

        R.      In accordance with Bankruptcy Rule 3016(a), the Combined Disclosure Statement and Plan is dated and identifies the Debtors as the proponents thereof.

        S.      As required by section 1129(a)(2) of the Bankruptcy Code, the Debtors, as proponents of the Combined Disclosure Statement and Plan, have complied with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Interim Approval and Procedures Order, and all other rules, laws, and regulations applicable to such solicitation.  The Debtors proper proponents of the Combined Disclosure Statement and Plan pursuant to section 1121(a) of the Bankruptcy Code.

        T.      The Combined Disclosure Statement and Plan has been proposed in good faith and in compliance with applicable provisions of the Bankruptcy Code, and not by any means forbidden by law, thus satisfying section 1129(a)(3) of the Bankruptcy Code.

        U.      Any payments made or promised by the Debtors for services or for costs and expenses in, or in connection with, the Chapter 11 Cases, or in connection with the Combined Disclosure Statement and Plan and incident to the Chapter 11 Cases, have been approved by, or are subject to approval of this Court as reasonable, thus satisfying section 1129(a)(4) of the Bankruptcy Code.

        V.      The identity of, and the terms of the proposed compensation to be paid to, the Plan Administrator (a) have been disclosed in the Combined Disclosure Statement and Plan and the Plan Supplement, and (b) are consistent with the interests of Holders of Claims and

Interests and with public policy, and thus, the Combined Disclosure Statement and Plan satisfies section 1129(a)(5) of the Bankruptcy Code.

W.      The provisions of section 1129(a)(6) of the Bankruptcy Code are inapplicable to the Chapter 11 Cases.

X.      As evidenced by the Combined Disclosure Statement and Plan, the Liquidation Analysis, the Dunn Declaration, and the Voting Declaration and as established at or in connection with the Confirmation Hearing, each holder of a Claim or Interest in each Impaired Class has either accepted the Combined Disclosure Statement and Plan or will receive or retain under the Combined Disclosure Statement and Plan property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Debtors liquidated under chapter 7 of the Bankruptcy Code on such date.  Thus, the Combined Disclosure Statement and Plan satisfies section 1129(a)(7) of the Bankruptcy Code.

Y.      As evidenced by the Voting Declaration, Classes 3, 4 (other than at PSI), 8-12, 13, and 14 at the applicable Debtor(s) voted in favor of the Combined Disclosure Statement and Plan.  Classes 1, 2, and 15 are Unimpaired under the Combined Disclosure Statement and Plan and are, therefore, deemed to have accepted the Combined Disclosure Statement and Plan under section 1126(f) of the Bankruptcy Code, thus satisfying section 1129(a)(8) of the Bankruptcy Code.  As a proposed on the Plan, Class 5 (consisting of Claims and Interests held entirely by Debtors) was deemed to accept the Plan.  Class 4 at PSI rejected the Plan.  Class 6 at PSFI and Class 7 at PSI are Impaired by the Combined Disclosure Statement and Plan and are not entitled to receive or retain any property under the Combined Disclosure Statement and Plan and, therefore, are deemed to have rejected the Combined Disclosure

Statement and Plan pursuant to section 1126(g) of the Bankruptcy Code.    As found and determined below, pursuant to section 1129(b)(1) of the Bankruptcy Code, the Combined Disclosure Statement and Plan may be confirmed notwithstanding the fact that Classes 4 and 7 at PSI and Class 6 at PSFLLC are Impaired and rejected or are deemed to have rejected the Combined Disclosure Statement and Plan.

Z.    Except to the extent that the Holder of a particular Claim has agreed to a different treatment of such Claim, the treatment of Claims under the Combined Disclosure Statement and Plan of the type specified in sections 507(a)(1) and 507(a)(3)-(8) of the Bankruptcy Code, if any, complies with the provisions of section 1129(a)(9) of the Bankruptcy Code.

AA.    The following Impaired Classes of Claims sat~~at~~ each Debtor have accepted the Combined Disclosure Statement and Plan, determined without including any acceptances of the Combined Disclosure Statement and Plan by any insider:

| Debtor Name | Accepting Impaired Classes |
|---|---|
| PSI | • Class 3 |
| PSFI | • Classes 3 and 4 |
| PSFLLC | • Classes 4, 8, 9, 10, 10-1, 11, 11-1, 12 |
| PS Portfolio | • Classes 4 and 13 |
| OppFund GP | • Class 4 |
| OppFund | • Class 4 |
| PSLI | • Class 3 |

Thus, the Combined Disclosure Statement and Plan satisfies section 1129(a)(10) of the Bankruptcy Code for these Debtors.    Debtors PS Options, Warehouse I and Warehouse II, and the REO Debtors do not have any Impaired Classes of non-insider Claims so section 1129(a)(10) is not applicable to them.

BB.    The Combined Disclosure Statement and Plan provides for adequate means for its implementation and, thus, satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code.  Because the Combined Disclosure Statement and Plan is a plan of liquidation of certain Assets for the Debtors, Confirmation is not likely to be followed by the need for further financial reorganization of the Debtors.

CC.    All fees payable on or before the Effective Date, pursuant to United States Code title 28 section 1930, shall be paid in full in Cash by the Debtors on or before the Effective Date.  All such fees payable after the Effective Date shall be paid by the Debtors and the Reorganized Debtors until the cases are converted, dismissed, or closed, whichever occurs first. Notwithstanding anything to the contrary in the Combined Disclosure Statement and Plan or this Confirmation Order, the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") shall not be required to file a request for allowance of any Administrative Claims on account of such fees.  Thus, section 1129(a)(12) of the Bankruptcy Code is satisfied.

DD.    No Debtor offered "retiree benefits," as that term is used in the Bankruptcy Code, was required to pay a domestic support obligation, or is an individual. Accordingly, sections 1129(a)(13)-(15) of the Bankruptcy Code are inapplicable.

EE.    The Debtors are moneyed, business, or commercial corporations. Accordingly, section 1129(a)(16) of the Bankruptcy Code is inapplicable.

FF.    No other chapter 11 plan has been filed and proposed for Confirmation.

GG.    The primary purpose of the Combined Disclosure Statement and Plan is not the avoidance of taxes or the requirements of section 5 of the Securities Act of 1933.

HH.    The Debtors and their officers, directors, employees, advisors, professionals, and other agents and representatives have acted in good faith within the meaning of section 1125(e) of the Bankruptcy Code, and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Interim Approval and Procedures Order, in connection with all of their respective activities relating to the solicitation of the Plan and their participation in the activities described in section 1125(e) of the Bankruptcy Code, and they are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the injunction, exculpation, and release provisions set forth in Article XIV of the Combined Disclosure Statement and Plan and in this Confirmation Order to the extent provided in the Combined Disclosure Statement and Plan and this Confirmation Order.

II.    Holders of Claims and Interests in Classes 6 (which only exists at PSFLLC, if at all) and 7 are deemed to have not accepted the Combined Disclosure Statement and Plan, and holders of Claims against PSI in Class 4 have voted to reject the Plan as to PSI. Based upon the evidence proffered, adduced, and presented by the Debtors at or in connection with the Confirmation Hearing, the Combined Disclosure Statement and Plan does not discriminate unfairly and is fair and equitable with respect to the aforementioned Classes, as required by sections 1129(b)(1)-(2) of the Bankruptcy Code.  Thus, the Combined Disclosure Statement and Plan may be confirmed at PSI and PSFLLC notwithstanding the rejection or deemed rejection of the Combined Disclosure Statement and Plan by the Holders of Claims and Interests in Classes 4 and 7 at PSI and Class 6 at PSFLLC.

JJ.    With respect to any and all Executory Contracts of the Debtors that have not been assumed or assumed and assigned by the Debtors as of the Effective Date, such

Executory Contracts are burdensome to the Estates, and rejection of such Executory Contracts pursuant to the Plan and this Confirmation Order is in the best interests of the Debtors and their Estates and is an appropriate exercise of the Debtors' business judgment; *provided, however,* that Executory Contracts for which a motion to assume is pending as of the Effective Date are not rejected.

KK.    The Debtors, as proponents of the Combined Disclosure Statement and Plan, have met their burden of proving the elements of sections 1129(a)-(b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard.  This Court also finds that the Debtors have satisfied the elements of sections 1129(a)-(b) of the Bankruptcy Code under the clear and convincing standard of proof.

LL.    Any modifications to the Combined Disclosure Statement and Plan from the version that was solicited comply with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.  The filing of the modifications and/or the description of them on the record at the Confirmation Hearing constitutes due and sufficient notice thereof under the circumstances of the Chapter 11 Cases.  Such modifications are either not material or do not adversely change the treatment of any Holders of Claims and Interests, do not require re-solicitation of the Voting Classes, and are approved pursuant to section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019.  No Holder of a Claim that has voted to accept the Combined Disclosure Statement and Plan shall be permitted to change its acceptance to a rejection as a consequence of such modifications.  As a result of the foregoing, the Combined Disclosure Statement and Plan satisfies all applicable requirements for Confirmation.

MM.    The other discretionary provisions of the Combined Disclosure Statement and Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1123(b)(6) of the Bankruptcy Code.

NN.    This Court properly may retain jurisdiction over the matters set forth in Article XV of the Combined Disclosure Statement and Plan.

OO.    Under the circumstances, it is appropriate that the 14-day stay imposed by Bankruptcy Rule 3020(e) be waived.

**ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS**:

1.    The Combined Disclosure Statement and Plan is approved and confirmed on a final basis pursuant to sections 1125 and 1129 of the Bankruptcy Code.

2.    The terms of the Combined Disclosure Statement and Plan are incorporated by reference into, and are an integral part of, this Confirmation Order.[4]    Any objections to final approval and Confirmation of the Combined Disclosure Statement and Plan, or any reservations of rights thereto, to the extent not withdrawn, waived, or resolved herein, are hereby overruled and denied on the merits.

3.    Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, upon the Effective Date, all settlements and compromises set forth in the Plan, including, without limitation, the settlement of the factual and legal issues raised by the Pacific Creditors' and the Committee's objection to the Loan Sale Motion and the Pacific Creditors'

---

[4]    If there is any conflict between the terms of the Combined Disclosure Statement and Plan or anything in the Plan Supplement, on the one hand, and the terms of this Confirmation Order, on the other hand, the terms of this Confirmation Order shall control.

objection to the Debtors' cash management motion [Docket No. 169] concerning, among other things, the nature of the Debtors' interests in the Underlying Loans and allocation and payment of fees, costs and expenses (including OpEx and Restructuring Costs), are approved in all respects, and constitute good faith compromises and settlements of such issues raised in the aforementioned objections.

4.     Subject to the provisions of the Combined Disclosure Statement and Plan, in accordance with section 1141(a) of the Bankruptcy Code, and notwithstanding any otherwise applicable law, upon the occurrence of the Effective Date, the terms of the Combined Disclosure Statement and Plan and this Confirmation Order shall be immediately binding upon, and inure to the benefit of:  (a) the Debtors; (b) any and all Holders of Claims or Interests (irrespective of whether any of such Claims or Interests are Impaired under the Combined Disclosure Statement and Plan or whether the Holders of such Claims or Interests accepted, rejected, or are deemed to have accepted or rejected the Combined Disclosure Statement and Plan, or whether such Holders filed a proof of claim or interest in the Chapter 11 Cases); (c) any other Entity giving, acquiring, or receiving property under the Combined Disclosure Statement and Plan; (d) the Plan Administrator (solely in her capacity as such); (e) any and all non-Debtor parties to any Executory Contract; and (f) the respective Affiliates, officers, directors, agents, representatives, attorneys, beneficiaries, successors, or assigns, if any, or any Entity claiming by, through, or in the right of such Entity, of any of the foregoing.  On the Effective Date, except as otherwise set forth in the Combined Disclosure Statement and Plan or the Plan Supplement: (i) all settlements, compromises, releases, waivers, exculpations, and injunctions set forth in the Combined Disclosure Statement and Plan shall be effective and binding on all Entities as provided for in the

Combined Disclosure Statement and Plan and this Confirmation Order; and (ii) pursuant to sections 1141(b)-(c) of the Bankruptcy Code, all Assets of the Estates, including all claims, rights and Causes of Action and any property acquired by the Debtors under or in connection with the Combined Disclosure Statement and Plan, shall vest in each respective Reorganized Debtor, in accordance with the Combined Disclosure Statement and Plan, on a free and clear basis as provided in the Combined Disclosure Statement and Plan, but subject to the Combined Disclosure Statement and Plan and this Confirmation Order.

5.      The Combined Disclosure Statement and Plan shall not become effective unless and until the conditions set forth in Section 13.1 of the Combined Disclosure Statement and Plan have been satisfied or waived pursuant to Section 13.3 thereof.

6.      In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all Holders of Claims who voted to accept the Combined Disclosure Statement and Plan, or who are conclusively presumed to have accepted, are deemed to accept the Combined Disclosure Statement and Plan.

7.      The Combined Disclosure Statement and Plan's classification scheme is approved.  The classifications set forth on the Ballots:  (a) were set forth solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims under the Plan for distribution purposes; (c) may not be relied upon by any Holder of a Claim as representing the actual classification of such Claim under the Plan for distribution purposes; and (d) shall not be binding on the Debtors or the Estates, except for Plan voting purposes.

8.      This Confirmation Order shall, and shall be deemed to, pursuant to sections 363, 1123, 1141 and 1142 of the Bankruptcy Code, authorize all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including, without limitation, the transactions provided for or required to implement in Articles 2, 3, and 4 of the Combined Disclosure Statement and Plan. Such authorization shall be effective notwithstanding any requirements under non-bankruptcy law or any organizational document of the Debtors.  Any corporate or company action required by the Debtors in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the Debtors' officers, directors, independent directors or independent managers, general partners or limited partners, members or shareholders ("**Authorizing Persons**").  No action of any Authorizing Persons is required to authorize the Debtors to effectuate the Combined Disclosure Statement and Plan or to enter into, file, execute and deliver any document, agreement or instrument issued in connection therewith.

9.      The Debtors and the Reorganized Debtors are authorized to take or cause to be taken all corporate or other actions necessary or appropriate to implement all provisions of, and to consummate, the Plan and to execute, enter into, or otherwise make effective all documents arising in connection therewith.  Such actions may be taken through: (i) prior to and on the Effective Date, David Dunn, the Debtors' Chief Restructuring Officer, and (ii) on and after the Effective Date, the Plan Administrator, Elizabeth A. LaPuma or any duly appointed successor thereto, and each such person hereby is authorized to do all things and to execute and deliver all agreements, documents, instruments, notices, and certificates as are contemplated by the Combined Disclosure Statement and Plan and to take all necessary or appropriate actions

required in connection therewith, in the name of and on behalf of the Debtors and the Reorganized Debtors.

10.    The approvals and authorizations specifically set forth in this Confirmation Order are not intended to limit the authority of the Debtors, the Reorganized Debtors, or the Combined Disclosure Statement and Plan Administrator to take any and all actions necessary or appropriate to implement, effectuate, and consummate any and all documents or transactions contemplated by the Combined Disclosure Statement and Plan or this Confirmation Order.

11.    The appointment of the Plan Administrator is hereby approved.  The Plan Administrator shall have such rights, powers, and duties as is provided for in the Combined Disclosure Statement and Plan, this Confirmation Order, the Plan Supplement, and the Plan Administrator Agreement.  The Plan Administrator shall be compensated in accordance with the terms of the Plan Administrator Agreement.

12.    The appointment of the Asset Manager is hereby approved. The Asset Manager shall have such rights, powers, and duties as is provided for the in the Combined Disclosure Statement and Plan, this Confirmation Order, the Plan Supplement, and the Asset Management Agreement.  The Asset Manager shall be compensated in accordance with the terms of the Asset Management Agreement.

13.    The Plan Administrator Agreement and the Asset Management Agreement, in the forms filed with the Plan Supplement as of the date hereof, are hereby approved and shall be controlling in the event of a conflict between the terms of such documents and the Combined Disclosure Statement and Plan.  Any amendments to such documents after the

date hereof, shall be made in accordance with the terms thereof and shall not conflict with any provision of the Combined Disclosure Statement and Plan and this Confirmation Order.

14.    If the Prepetition Agent is selected as the purchaser of an Excluded Loan, it shall (i) pay all amounts that are payable under Clauses (A) and (B) in the Waterfall with respect to that Excluded Loan, and (ii) reduce the Prepetition Loan Claim by the amount of Pre-Effective Date Servicing Fees and Pre-Effective Date Servicing Advances with respect to that Excluded Loan, which amounts shall be applied as a credit to the purchase price for that Excluded Loan.

15.    On the Effective Date, but subject to Section 16.13 of the Combined Disclosure Statement and Plan, all Executory Contracts that have not been assumed, assumed and assigned, or rejected, prior to the Effective Date, or are not subject to a motion to assume, assume and assign, or reject filed before the Effective Date, shall be deemed rejected pursuant to the Plan and this Confirmation Order, effective as of the Effective Date.

16.    Unless required to be filed by an earlier date by another order of this Court, any Creditor asserting a Claim arising from the rejection of an Executory Contract or unexpired lease pursuant to the Plan and this Confirmation Order (a "**Rejected Agreement**") shall file a proof of claim on account of such Claim with the Debtors' claims and noticing agent, Stretto, Inc. ("**Stretto**"), within thirty (30) days of the Effective Date, and shall also serve such proof of claim upon the Plan Administrator and its counsel.  Any Claim arising from a Rejected Agreement that is not timely filed may be forever disallowed and barred, and may forever prohibit the counterparty to a Rejected Agreement from asserting a Claim for damages arising from such rejection and from receiving any distribution on account of such Claim from the

Estates or otherwise.  Nothing herein shall impair, prejudice, waive or otherwise affect the rights of the Debtors, Reorganized Debtors, and the Plan Administrator to:  (a) assert that any Rejected Agreements (i) were terminated prior to the Effective Date, or (ii) are not executory contracts or unexpired leases under section 365 of the Bankruptcy Code; (b) assert that any Claim for damages arising from the rejection of any Rejected Agreements is limited to the remedies available under any applicable termination provisions of any Rejected Agreements; (c) assert that any such Claim is an obligation of a third party, and not that of the Debtors or the Estates; or (d) otherwise contest any Claims that may be asserted in connection with any Rejected Agreements. All rights, Claims, defenses, and Causes of Action that the Debtors and the Estates may have against the counterparties to any Rejected Agreements, whether or not such claims arise under, are related to the rejection of, or are independent of any Rejected Agreements, are reserved, and except as otherwise set forth herein or in the Plan, nothing herein is intended or shall be deemed to impair, prejudice, waive, or otherwise effect such rights, claims, defenses, and Causes of Action.

17.     As of the Effective Date, all Parent Interests of any kind shall be deemed cancelled, and the Holders thereof shall not receive or retain any property, interest in property, or consideration under the Plan on account of such Parent Interests. OppFund LP Interest shall remain outstanding solely for purposes of evidencing the entitlement to distributions under the Combined Disclosure Statement and Plan.  All other Intercompany Interest shall be either reinstated or released and cancelled, in each case, as necessary to facilitate the implementation of the Plan, and the payments and distributions contemplated thereunder.

18.     Any insurance policies of the Debtors in which the Debtors are or were insured parties (including any policies covering directors' or officers' conduct), and any related insurance agreement, shall be treated in accordance with Section 16.13 of the Combined Disclosure Statement and Plan.

19.     On the Effective Date, the Committee shall dissolve, and the members thereof and the professionals retained by the Committee shall be released and discharged from .all rights and duties arising from, or related to, the Chapter 11 Cases; *provided, however,* that after the Effective Date, the Committee shall continue to exist and have standing and a right to be heard for the following purposes: (a) applications, and any relief related thereto, for payment of Professional Fee Claims and requests for allowance of Administrative Claims for substantial contribution pursuant to section 503(b)(3)(D) of the Bankruptcy Code; and (b) appeals of the Confirmation Order.

20.     As of the Effective Date, other than Stretto, the engagement of each Professional retained by the Debtors, including, without limitation, Young Conaway Stargatt & Taylor, LLP and Kramer Levin Naftalis & Frankel LLP, as counsel for the Debtors, Province, as restructuring advisor for the Debtors shall be terminated.

21.     Nothing herein shall prevent any of the Professionals retained by the Debtors or Committee from being compensated for actual and necessary fees and expenses incurred for work relating to preparation, filing, prosecuting, and objecting to Professional Fee Claims (or requests for allowance of Administrative Claims for substantial contribution pursuant to section 503(b)(3)(D) of the Bankruptcy Code) that would have also been compensable prior to the Effective Date.

22.     Unless required to be filed by an earlier date by another order of this Court, any Holder of an Administrative Claim that arose after January 16, 2024, but prior to the Effective Date, other than a Professional Fee Claim or, a claim for U.S. Trustee Fees, or a claim held by the Prepetition Agent, must file with this Court and serve on (a) the Plan Administrator and its counsel, (b) the U.S. Trustee, and (c) all parties requesting notice pursuant to Bankruptcy Rule 2002, a request for payment of such Administrative Claim so as to be received by the Final Administrative Claim Bar Date, which shall be 5:00 p.m. (prevailing Eastern Time) on the date that is thirty (30) days after the Effective Date Notice is filed and served.  Such request must include at a minimum:  (i) the name of the Debtor(s) that are purported to be liable for the Administrative Claim; (ii) the name of the Holder of the Administrative Claim; (iii) the amount of the Administrative Claim; (iv) the basis of the Administrative Claim; and (v) all supporting documentation for the Administrative Claim.  Any Administrative Claim that is not timely filed as set forth above may be forever barred, and holders of such Administrative Claims may not be able to assert such Claims in any manner against the Plan Administrator, the Debtors, or their Estates, or their respective successors or assigns or their respective property.

23.     Unless required to be filed by an earlier date by another order of this Court, all Professional Fee Claims must be filed with this Court and served on (a) the Plan Administrator and its counsel (to the extent filed after the Effective Date), (b) the U.S. Trustee, (c) counsel to the Debtors, (d) counsel to the Committee, and (e) counsel to the Prepetition Agent, so as to be received by the Professional Fee Claims Bar Date, which shall be the date that is thirty (30) days after the Effective Date Notice is filed; *provided,* that such deadline may be extended by up to thirty (30) days in the Debtors' discretion.  After notice and a hearing in

accordance with the procedures established by the Bankruptcy Code and prior orders of this Court in the Chapter 11 Cases, this Court shall determine the Allowed amounts of such Professional Fee Claims.  Any request for payment of a Professional Fee Claim that is not timely filed as set forth above will be forever barred, and holders of such Professional Fee Claims will not be able to assert such Claims in any manner against the Plan Administrator, the Debtors, or their Estates, or their respective successors or assigns or their respective property.

24.     This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or any other governmental authority with respect to the implementation or consummation of the Combined Disclosure Statement and Plan.  Each federal, state, commonwealth, local, or other governmental agency is hereby authorized to accept any and all documents and instruments necessary or appropriate to effectuate, implement, or consummate the transactions contemplated by the Combined Disclosure Statement and Plan and this Confirmation Order.

25.     The Debtors are hereby authorized to execute, deliver, file, or record such documents, contracts, instruments, releases, and other agreements, and to take such other actions, as may be necessary or appropriate to effectuate, implement, or further evidence the terms and conditions of the Combined Disclosure Statement and Plan.  On and after the Effective Date, the Plan Administrator is authorized and empowered to issue, execute, file, and deliver or record such documents, contracts, instruments, releases, and other agreements in the name of and on behalf of the Debtors.

26.     Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property under the Combined Disclosure Statement and Plan shall not be subject to any stamp

tax or similar tax. Upon entry of this Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax and may accept for filing and recordation this Confirmation Order without the payment of any such tax, recordation fee, or governmental assessment.

27. This Court hereby retains jurisdiction of the Chapter 11 Cases and all matters arising under, out of, or related to the Chapter 11 Cases and the Combined Disclosure Statement and Plan (a) as provided for in Article XV of the Combined Disclosure Statement and Plan, (b) as provided for in this Confirmation Order, and (c) for the purposes set forth in sections 1127 and 1142 of the Bankruptcy Code.

28. The release, exculpation, injunction, and indemnification provisions contained in the Combined Disclosure Statement and Plan including, without limitation, those set forth in Article XIV of the Combined Disclosure Statement and Plan, are expressly incorporated into this Confirmation Order as if set forth herein in full, and are hereby authorized and approved and shall be effective and binding on all persons or entities, to the extent provided therein.

29. No Entity holding a Claim against the Debtors may receive any payment from, or seek recourse against, any Assets that are to be distributed under the Combined Disclosure Statement and Plan other than Assets required to be distributed to that Entity under the Combined Disclosure Statement and Plan. All parties are precluded from asserting against any property to be distributed under the Combined Disclosure Statement and Plan any Claims, rights, Causes of Action, liabilities, or Interests based upon any act, omission, transaction, or

other activity that occurred before the Effective Date except as expressly provided in the Combined Disclosure Statement and Plan or this Confirmation Order.

30.    Except as otherwise expressly provided for in the Combined Disclosure Statement and Plan or in obligations issued pursuant to the Combined Disclosure Statement and Plan, all Entities are enjoined, on and after the Effective Date through and until the date upon which all remaining property of the Debtors' Estates has been liquidated and distributed to creditors or otherwise in accordance with the terms of the Plan and the Plan has been fully administered subject to further extension by motion on notice, with all parties rights to such extension reserved, on account of any Claim or Interest, from:  (a) commencing or continuing in any manner any action or other proceeding of any kind against the Debtors, the Reorganized Debtors, any of the Estates, their successors and assigns, and any of their Assets and properties; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against the Reorganized Debtors, any Estate, their successors and assigns, and any of their Assets and properties; (c) creating, perfecting, or enforcing any encumbrance of any kind against the Post-Reorganized Debtors, any Estate, their successors and assigns, and any of their Assets and properties; (d) asserting any right of setoff or subrogation of any kind against any obligation due from the Reorganized Debtors, any Estate, or their successors and assigns, or against any of their Assets and properties, except to the extent a right to setoff or subrogation is asserted with respect to a timely filed proof of claim; or (e) commencing or continuing in any manner any action or other proceeding of any kind in respect of any Claim or Interest or Cause of Action released under Article XIV of the Combined Disclosure Statement and Plan.

31.     All injunctions or stays provided for in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the closing of the Chapter 11 Cases.

32.     Any party submitting a Ballot voting in favor of the Plan, but opting-out of the releases set forth in Article XIV, shall be deemed not to have granted the releases in Section 14.1(c) of the Combined Disclosure Statement and Plan.

33.     The failure to reference or discuss any particular provision of the Combined Disclosure Statement and Plan in this Confirmation Order shall have no effect on the validity, binding effect, and enforceability or such provision, and such provision shall have the same validity, binding effect, and enforceability as every other provision of the Combined Disclosure Statement and Plan.

34.     The provisions of Rule 62 of the Federal Rules of Civil Procedure, as applicable pursuant to Bankruptcy Rule 7062, and Bankruptcy Rule 3020(e) shall not apply to this Confirmation Order.  The period in which an appeal with respect to this Confirmation Order must be filed shall commence immediately upon the entry of this Confirmation Order.

35.     The Effective Date Notice, substantially in the form attached hereto as **Exhibit B**, is hereby approved.  Pursuant to Bankruptcy Rules 2002(f)(7) and 3020(c), the Plan Administrator shall serve the Effective Date Notice in accordance with Section 13.2 of the Combined Disclosure Statement and Plan, no later than five (5) Business Days after the Effective Date.

36.     Any party desiring to receive notice concerning these Chapter 11 Cases pursuant to Rule 2002 and Local Rule 2002-1, must file a renewed request for such notice

following the Effective Date, and the Plan Administrator shall not be required to provide any party notice in these chapter 11 cases unless (i) they request such notice or (ii) specific relief is directed at such party, in which case they shall be entitled to receive a copy of the applicable pleadings as required under the Bankruptcy Rules or Local Rules.

37.    The Plan Administrator is authorized and empowered to effect the dissolution of any of the Debtors as soon as practicable after the Effective Date (subject to the Plan and in furtherance of the wind-down of the loan portfolio contemplated thereby) without the need for any company action or approval, and the Debtors, the Reorganized Debtors, the Plan Administrator, or any of their successors or assigns, shall not be required to pay any taxes or fees to cause such dissolution.  All governance activities of a Debtor (including any "**Independent Director**" or "**Independent Manager**") shall be exercised by the Plan Administrator in accordance with the Combined Plan and Disclosure Statement, the Plan Administrator Agreement, and this Confirmation Order, and the Plan Administrator shall be authorized and empowered to take or cause to be taken all actions necessary or appropriate to implement and consummate the Plan in accordance with the Combined Plan and Disclosure Statement, the Plan Administrator Agreement, and this Confirmation Order.

38.    Subject to the occurrence of the Effective Date, and notwithstanding Bankruptcy Rules 3020(e), 6004(h), 8001, or otherwise, immediately upon the entry of this Confirmation Order, the terms of the Combined Disclosure Statement and Plan and this Confirmation Order shall be, and hereby are, immediately effective and enforceable and deemed binding upon the Debtors, the Plan Administrator, any and all other Holders of Claims or Interests (irrespective of whether such Claims or Interests are Impaired under the Combined

Disclosure Statement and Plan or whether the Holders of such Claims or Interests accepted, were deemed to have accepted, rejected, or were deemed to have rejected the Combined Disclosure Statement and Plan, or whether such Holders filed a proof of claim or interest in the Chapter 11 Cases), any trustees or examiners appointed in the Chapter 11 Cases, all Entities that are party to or subject to the settlements, compromises, releases, injunctions, stays, and exculpations described in the Combined Disclosure Statement and Plan or herein, each Entity acquiring property under the Combined Disclosure Statement and Plan, any and all non-Debtor parties to Executory Contracts, and all other parties-in-interest, and the respective heirs, executors, administrators, successors or assigns, affiliates, officers, directors, agents, representatives, attorneys, beneficiaries, or guardians, if any, or any Entity claiming by, through or in the right of such Entity, of any of the foregoing.

39.     The Debtors are authorized to consummate the Combined Disclosure Statement and Plan at any time after the entry of this Confirmation Order, subject to satisfaction or waiver of the conditions precedent to the occurrence of the Effective Date as set forth in Article XIII of the Combined Disclosure Statement and Plan.  On the Effective Date, the Plan shall be deemed to be substantially consummated within the meaning in section 1101 of the Bankruptcy Code and pursuant to section 1127(b) of the Bankruptcy Code.

40.     Notwithstanding anything to the contrary contained in the Combined Disclosure Statement and Plan or this Confirmation Order, neither the Combined Disclosure Statement and Plan nor the Confirmation Order shall ~~enjoin or otherwise affect any of FGL's rights to recover from the First Loss Deposit in respect of its claims or any of~~ extinguish Fidelity & Guaranty Life Mortgage Trust 2018-1 ("**FGL**")'s <u>rights, if any, in respect of the "First Loss</u>

Deposit" under that certain Settlement Agreement dated as of July 15, 2020, between PSFI and

FLG, or FGL's rights of setoff, if any; *provided* that FGL may not exercise any purported right of

setoff absent an order of the Court or the express written consent of the Plan Administrator, all of

which are preserved.  For the avoidance of doubt, the foregoing does not affect the Debtors'

rights and defenses, both legal and equitable, with respect to FGL's asserted claims or rights of

setoff, all of which are also preserved.

41.     Any injunction or stays contained in the Plan or this Confirmation Order

or in this Court's prior lift stay order [Docket No. 508] that would enjoin Rabbi Shlomo

Braun, 1567 56th Street, LLC and 1569 56th Street, LLC (collectively, the "**Braun Parties**")

from continuing to:  (a) prosecute the action captioned *1567 56th Street, LLC, 1569 56th Street,*

*LLC, and Shlomo Braun v. Arthur Spitzer, Josh Weinfeld, Isidore Bleier, BSD Realty Holdings*

*Inc., 1567 56 NY LLC, Dekel Abstract LLC, Abraham Teitelbaum, Rosa Funding LLC, PS*

*Funding, Inc., and Jehuda Weisz*, in the United States District Court for the Eastern District of

New York (Case No. 1:22-cv-04873-KAM-RML), (b) prosecute the action pending before the

Supreme Court of New York, for the County of New York, under the index number

158686/2023, against The Chartwell Law Offices, LLP, (c) defend the foreclosure actions

commenced by PSFI against the Braun Parties and other defendants in New York Supreme

Court, Kings County, under index nos. 503623/2021 and 503948/2021, and (d) prosecute or

defend any appeals or remanded proceedings arising from the proceedings listed in items (a)

through (c) of this paragraph, is deemed lifted solely as to the Braun Parties for the sole purpose

of allowing the Braun Parties to liquidate to final judgment (if any), but not collect, their claims

alleged against PSFI.  The foregoing sentence shall not prevent or prohibit the Braun Parties from prosecuting any claims against non-Debtors or third parties.

42.    The Texas Taxing Authorities[5] assert that they are holders of secured claims for ad valorem taxes for tax year 2023 (the "**Texas Taxing Authority Claims**"). Notwithstanding anything to the contrary in this Confirmation Order or the Plan, the Debtors shall pay the Allowed Texas Taxing Authority Claims, to the extent not otherwise paid, upon Allowance. The Debtors shall pay all Allowed post-petition ad valorem tax liabilities (tax year 2024 and subsequent tax years) owing to the Texas Taxing Authorities in the ordinary course of business pursuant to the Texas Tax Code without the need of the Texas Taxing Authorities to file an administrative expense claim and/or request for payment. To the extent the Texas Tax Code provides for interest with respect to any portion of the Texas Taxing Authority Claims, nothing in the Plan or this Confirmation Order prevents the inclusion of such interest with respect to the Texas Taxing Authority Claims, and the Debtors' defenses and rights to object to such claims or to the inclusion of interest in such claims on any grounds are fully reserved and preserved.  The claims of the Texas Taxing Authorities shall remain subject to any objections any party is entitled to raise as to the priority, validity, extent, or amount of such liens.  In the event the Debtors sell, convey, or transfer any property which is the collateral of the Texas Taxing Authorities, the Debtors shall remit such sales proceeds pursuant to the terms of the Plan and applicable state law.  Any lien held by The Texas Taxing Authorities shall not be primed or subordinated by any exit financing approved by the Court in conjunction with the confirmation

---

[5]    Texas Taxing Authorities is defined as all ad valorem taxing jurisdictions represented by the firms of Linebarger Goggan Blair and Sampson, LLP and Perdue Brandon Fielder Collins and Mott LLP, including but not limited to Cypress-Fairbanks Independent School District, Fort Bend County WCID #02, Fort Bend County, Harris County and Harris County MUD #501.

of this Plan or otherwise to the extent the Texas Taxing Authorities' liens arose in the ordinary course of business pursuant to applicable nonbankruptcy law, are valid, senior, properly-perfected, binding, enforceable and non-avoidable and are granted priority over a prior perfected security interest or lien under applicable non-bankruptcy law, and all parties' rights to challenge or dispute the foregoing are preserved. For the avoidance of doubt and notwithstanding anything herein or in the Plan to the contrary, the liens (if any) securing any ad valorem tax claims held by the Texas Taxing Authority, for both prepetition and postpetition taxes, shall not be discharged or extinguished on the Effective Date and shall continue in full force and effect until the Allowed Texas Taxing Authority Claims, including any postpetition ad valorem taxes, are Paid in Full.

43.    The proceeds of each Corporate Loan shall be applied in accordance with Section 2.6 of the Plan; provided, however, that (a) the balance of the proceeds of the Corporate Loans remaining after the funding of items (A) through (I) in Section 2.6 of the Plan, and (b) the proceeds of any Funding Pool Units and Funding Pool Incremental Units, if any, issued on account of the Corporate Loans, in each case, shall be held by the Plan Administrator in escrow and shall not be used for any purpose without (x) the prior written consent of the Prepetition Agent (which consent shall not be required if the obligations arising under the Prepetition Credit Agreement have been paid in full) and the Advisory Committee, or (y) a further order of the Court (obtained after notice and a hearing).

**Authorizations and Approvals with respect to Exit Facility**

44.    Subject to the Plan, including the Controlling Waterfall (as defined herein), as of the Effective Date, the Debtors' interest in the Pre-Effective Date Servicing

Advances and Pre-Effective Date Servicing Fees shall be absolutely conveyed, transferred, and assigned to the Prepetition Agent or its designee; *provided* that the Prepetition Agent or its designee shall not have any independent right or ability to bring any claim or cause of action with respect to such interest against any Loan Asset (and such right shall remain with the Debtors and the Plan Administrator) or the Debtors or any other Person except with respect to receiving such amounts as and when required to be paid pursuant to the Plan and the Controlling Waterfall and enforcing the terms of the Plan.  Notwithstanding anything in the Exit Financing Documents or any other document to the contrary, from and after the Effective Date, all amounts collected, and solely to the extent collected, by the applicable Exit Facility agent, Asset Manager, Debtors and Plan Administrator that are payable under the Plan and Waterfall in respect of the Pre-Effective Date Servicing Advances and Pre-Effective Date Servicing Fees shall be held in trust by the applicable Exit Facility agent, Asset Manager, Debtors and the Plan Administrator (as applicable) for the benefit of the Prepetition Agent or its designee and used exclusively to satisfy the Prepetition Loan Claim in accordance with the Plan and the Controlling Waterfall.  In the event of a conflict between the terms of the Plan and this Confirmation Order on the one hand, and the Exit Financing Documents on the other hand, the terms of the Plan and this Confirmation Order shall control.  For purposes of this Paragraph, "**Controlling Waterfall**" shall mean the Waterfall set forth in Section 2.6 of the Plan as it relates to the first priority of Clauses (A) through (D) relative to all other amounts in the Waterfall (or any other amounts that may be payable from the proceeds of an Underlying Loan) and the priority of Clauses (A) through (D) relative to each other, which shall not be modified by the Exit Facility absent the express written consent of the Prepetition Agent (except that amounts payable under clauses (A)

and (B) shall be paid to the "Lender" under the Exit Facility with respect to the "Term Loan" under the Exit Facility and amounts payable under clauses (C) and (D) shall be paid to the Prepetition Agent).  Under the Controlling Waterfall, the Exit Facility may direct funds payable in Clauses (A) and (B) of the Waterfall to an account other than the Funding Pool, and may modify the treatment of loan proceeds that are available after the applicable amounts in Clauses (A) through (D) have been paid in full (except that amounts payable under clauses (A) and (B) shall be paid to the "Lender" under the Exit Facility with respect to the "Term Loan" under the Exit Facility and amounts payable under clauses (C) and (D) shall be paid to the Prepetition Agent).

45.     As a condition to the occurrence of the Effective Date, the Debtors and the Prepetition Agent shall be reasonably satisfied that the Exit Facility Documents are consistent in all respects with the Plan's treatment of the Pre-Effective Date Servicing Advances and Pre-Effective Date Servicing Fees.

46.     On the Effective Date, the Reorganized Debtors shall be authorized to execute, deliver, and enter into the Exit Facility Documents without further (i) notice to or order or other approval of the Bankruptcy Court, (ii) act or omission under applicable law, regulation, order, or rule, (iii) vote, consent, authorization, or approval of any Person, or (iv) action by the Holders of Claims or Interests.  The Exit Facility Documents shall constitute legal, valid, binding and authorized joint and several obligations of the applicable Reorganized Debtors, enforceable in accordance with its terms and such obligations shall not be enjoined or subject to discharge, impairment, release, avoidance, recharacterization, or subordination under applicable law, the Plan, or this Confirmation Order.  The financial accommodations to be extended pursuant to the

Exit Facility Documents (and other definitive documentation related thereto) are reasonable and are being extended, and shall be deemed to have been extended, in good faith and for legitimate business purposes.

47.    This Confirmation Order approves the Exit Facility and the Exit Facility Documents, all transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred by the Reorganized Debtors in connection therewith, and authorization of the Reorganized Debtors to enter into, execute, and deliver the Exit Facility Documents and such other documents as may be required to effectuate the treatment afforded by the Exit Facility.

48.    The Reorganized Debtors and the Persons granted Liens and security interests under the Exit Facility Documents are authorized to make all filings and recordings and to obtain all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, provincial, federal, or other law (whether domestic or foreign) that would be applicable in the absence of the Plan and this Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of this Confirmation Order without the need for any filings or recordings) and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties.

49.    If on the Effective Date the Exit Facility does close: (a) the Funding Pool will not be implemented, (b) any "cash-out" election made under Section 4.4 of the Plan shall be nullified, and (c) Section 2.6 of the Plan is hereby amended and restated in full as set forth on **Exhibit C** hereto.

50.    If on the Effective Date the Exit Facility does not close, then the Debtors shall effectuate the Plan using the Funding Pool without further order from the Court.

## EXHIBIT A

**Combined Disclosure Statement and Plan**

**EXHIBIT B**

**Effective Date Notice**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Peer Street, Inc., *et al.*,[1] | Case No. 23-10815 (LSS) |
| Debtors. | (Jointly Administered) |
| | **Ref. Docket No.** |

## NOTICE OF (I) ENTRY OF CONFIRMATION ORDER,
## (II) OCCURRENCE OF EFFECTIVE DATE, AND (III) RELATED BAR DATES

**TO:    ALL PARTIES IN INTEREST**

**PLEASE TAKE NOTICE THAT:**

**Confirmation of Plan**. On [_____], the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") entered its *Findings of Fact, Conclusions of Law, and Order Approving and Confirming the Combined Disclosure Statement and Joint Chapter 11 Plan of the Debtors* [D.I. ___] (the "**Confirmation Order**"). Unless otherwise defined herein, capitalized terms used in this Notice shall have the meanings ascribed to such terms in the *Combined Disclosure Statement and Joint Chapter 11 Plan for Peer Street, Inc., and Its Affiliated Debtors* [D.I. 952] (the "**Plan**").[2] Copies of the Confirmation Order and the Plan may be obtained by accessing: https://cases.stretto.com/peerstreet.

**Effective Date**. The Effective Date of the Plan occurred on [2024]. Each of the conditions precedent to consummation of the Plan enumerated in Section 13.1 of the Plan have been satisfied and/or waived as provided in Section 13.3 of the Plan.

**Release, Exculpation, and Injunction**. Pursuant to the Confirmation Order, the release, injunction, and exculpation provisions in Article XIV of the Plan are now in full force and effect.

**Bar Date for Administrative Expense Claims**. In accordance with Article XI, Section 9.1 of the Plan, unless required to be filed by an earlier date by another order of this

---

1   The Debtors in these chapter 11 cases, along with the last four digits of their respective federal tax identification numbers, are: Peer Street, Inc. (8584); PS Funding, Inc. (3268); PeerStreet Licensing, Inc. (9435); Peer Street Opportunity Fund GP, LLC (8491); Peer Street Funding LLC (9485); PSF REO LLC (1013); PS Options LLC (8584); PS Warehouse, LLC (5663); PS Warehouse II, LLC (9252); Peer Street Opportunity Investors II, LP (1586); PS Portfolio-ST1, LLC (1868); PSF Ohio, LLC (9485); PSF TX 1, LLC (9485); PSF TX 2, LLC (2415); PSF TX 4 LLC (9485). The Debtors' service address is c/o Province, LLC 2360 Corporate Circle, Suite 340, Henderson, NV 89074, Attn: David Dunn, Chief Restructuring Officer.

2   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Combined Disclosure Statement and Plan or the Confirmation Order, as applicable.

31482215.6

Court, any Holder of an Administrative Claim that arose after 5:00 p.m. (prevailing Eastern Time) on [ ], but prior to the Effective Date, other than a Professional Fee Claim or a claim for U.S. Trustee Fees, must file with this Court and serve on (a) the Plan Administrator and its counsel, (b) the U.S. Trustee, and (c) all parties requesting notice pursuant to Bankruptcy Rule 2002, a request for payment of such Administrative Claim so as to be received by **5:00 p.m. (ET) on [_____]** (the "**Administrative Claims Bar Date**").  Such request must include at a minimum:  (i) the name of the Debtor(s) that are purported to be liable for the Administrative Claim; (ii) the name of the Holder of the Administrative Claim; (iii) the amount of the Administrative Claim; (iv) the basis of the Administrative Claim; and (v) all supporting documentation for the Administrative Claim.  Any Administrative Claim that is not timely filed as set forth above will be forever barred, and holders of such Administrative Claims will not be able to assert such Claims in any manner against the Plan Administrator, the Debtors, or their Estates, or their respective successors or assigns or their respective property.

       **Bar Date for Professional Fee Claims**.  In accordance with the Article XI, Section 9.1 of the Plan, Professionals asserting Professional Fee Claims for services rendered by Professionals in connection with the Chapter 11 Cases from the Petition Date through and including the Effective Date must file an application for allowance and payment of such Professional Fee Claim no later than **5:00 p.m. (ET) on [_____]** (the "**Professional Fee Claims Bar Date**").  Objections to any applications of Retained Professionals must be filed by no later than twenty-one (21) days after service of the applicable final application for allowance and payment of Professional Fee Claims.

       **Requests for Notice**.  From and after the Effective Date, notices in these Chapter 11 Cases will only be provided to parties who file a new request for notices and pleadings under Rule 2002 after the Effective Date, unless a specific Bankruptcy Rule, Local Rule or order of the Court requires that notice to be mailed to a party.

[SIGNATURE BLOCK]

*Counsel for the Plan Administrator*

**EXHIBIT C**

**Amended and Restated Section 2.6 of the Plan**

**2.6 Waterfall for Loan Proceeds; Amendment of Intercompany Loan-related Agreements**

The proceeds of each Underlying Loan shall be applied in the following order, to the extent of available funds and on a pro rata basis (determined by amount owed) within each payment priority if funds are not available to satisfy in full the amounts in such payment priority:

*First*, the following amounts will be paid:

A.    solely for Underlying Loans liquidated after the Effective Date, an amount equal to the Post-Effective Date Loan Administration Costs and Plan Administrator Expenses allocated to that Underlying Loan will be paid to the Exit Lender in satisfaction of the obligations arising under the Exit Credit Agreement;

B.    solely for Underlying Loans liquidated after the Effective Date, an amount equal to the Post-Effective Date Servicing Advances made for that Underlying Loan will be paid to the Exit Lender in satisfaction of the obligations arising under the Exit Credit Agreement;

C.    for all Underlying Loans, Pre-Effective Date Servicing Advances made for that Underlying Loan will be paid to the Prepetition Agent Account; and

D.    for all Underlying Loans, Pre-Effective Date Servicing Fees for that Underlying Loan will be paid to the Prepetition Agent Account;

*provided*, that items (A) and (B) shall be paid before Clauses (C) and (D) solely with respect to any Underlying Loan that is an Excluded Loan.  Otherwise, Clauses (A), (B), (C) and (D) will be paid *pari passu*.

*Second*, for each Underlying Loan, the following amounts shall be paid:

E.    for Liquidated Loan Assets, an amount equal to sum of the Pre-Effective Date Loan OpEx and Pre-Effective Date Loan Restructuring Costs, in each case, allocated to such Underlying Loan, shall be paid to the Plan Administrator and used to satisfy such costs;

F.    for Underlying Loans liquidated after the Effective Date, an amount equal to sum of the Pre-Effective Date Loan OpEx and Pre-Effective Date Loan Restructuring Costs, in each case, allocated to such Underlying Loan, will be paid to the Exit Lender in satisfaction of the obligations arising under the Exit Credit Agreement;

*Third*, and solely for an Underlying Loan liquidated after the Effective Date, the following amounts will be paid to the Exit Lender in satisfaction of the obligations arising under the Exit Credit Agreement:

G.    So long as no "Event of Default" under the Exit Credit Agreement and the other Exit Facility Documents has occurred or is continuing, an amount equal to the Distributable Lender Prepayment Amount (as defined in the Exit Credit Agreement), net of any amounts paid to the Lender pursuant to Clauses (A), (B), (E), and (F) above;

H.    If an "Event of Default" under the Exit Credit Agreement and the other Exit Facility Documents has occurred and is continuing, an amount sufficient to satisfy such obligation in full;

*Fourth*, the balance of the proceeds of the applicable Underlying Loans, if any, remaining after the funding of Clauses (A) through (H) above (such amounts, the "**Waterfall**") shall be made available to the Plan Administrator and subsequently distributed in accordance with the Plan; *provided, however*, that to the extent such remaining proceeds are not distributed, directly or indirectly, to holders of RWN Claims, MPDN Claims or PDN Claims or on account of the OppFund Loan, such proceeds shall be used by the Plan Administrator, at the direction of the Advisory Committee, to satisfy Post-Effective Date Loan Administration Costs.  In no instance may the Waterfall for any Underlying Loan be modified without the express consent of the Advisory Committee and (to the extent Pre-Effective Date Servicing Fees or Pre-Effective Date Servicing Advances are outstanding for the affected Underlying Loan) the Prepetition Agent.  For the avoidance of doubt, amounts made available to Holders of MPDN Claims may exceed the principal amount of the Holder's MPDN as a result of the distribution of interest, default interest, REO sales proceeds and other amounts received with respect to Underlying Loans through the Waterfall.

Notwithstanding anything to the contrary herein, once the obligations arising under the Exit Credit Agreement or other Exit Facility Documents have been paid in full, no further amounts shall be paid to the Exit Lender pursuant to the Waterfall.

Notwithstanding the foregoing, if a Loan Asset has collected proceeds as of the Effective Date, such amounts shall be applied first to Clauses (C) and (D), to the extent applicable, and thereafter in accordance with the Waterfall; *provided, however*, that all proceeds of Loan Assets collected after the Effective Date shall be applied in accordance with the Waterfall.

Notwithstanding the foregoing, the Plan Administrator shall, with the consent of the Advisory Committee, allocate the costs associated with the Exit Facility in an equitable manner among the Underlying Loans that are liquidated after the Effective Date.  The Plan Administrator shall be further authorized to hold back the proceeds of Underlying Loans, if any, after the funding of the Waterfall, to establish reserves, in her discretion and in consultation with the Advisory Committee, to ensure that sufficient funding is available to complete the wind-down of the Debtors' Estates (solely to the extent related to the Underlying Loans Assets) and to pay costs associated therewith; provided, that holdback shall not apply to any Underlying Loan sold or participated to Warehouse I, Warehouse II or PS Portfolio that was liquidated as of the Effective Date.  After obligations arising under the Exit Credit Agreement or other Exit Facility

Documents have been paid in full, the Plan Administrator shall impose holdbacks from Underlying Loans liquidated after such date to ensure that amounts previously withheld under Clauses (E) and (F) to repay the obligations arising under the Exit Credit Agreement or other Exit Facility Documents are allocated in an equitable manner to each Underlying Loan that is not yet liquidated as of the date thereof  and make appropriate distributions in furtherance of such equitable allocation.  The Plan Administrator's determination with respect to such holdbacks and equitable allocation shall be subject to approval of the Advisory Committee.   The Plan Administrator may, from time to time, release, and at the conclusion of the runoff shall release, any excess reserves, based on an equitable allocation of such excess amounts relative to the Unliquidated Loans from which such reserves were withheld, with the timing, amount and allocation, in all instances to be consented to by the Advisory Committee.

As part of the Plan, PSFI will amend its agreements with PSFLLC, Warehouse I and PS Portfolio, effective as of the Petition Date, to provide for the following:

- Pre-Effective Date Servicing Advances will be recovered from the proceeds of each Underlying Loan for which such advances were made;

- Pre-Effective Date Servicing Fees for that Underlying Loan will be recovered from each Underlying Loan for which such amounts are payable;

- Pre-Effective Date Loan OpEx will be charged to each Underlying Loan, including associated financing costs, as described herein;

- Pre-Effective Date Loan Restructuring Costs will be charged to each Underlying Loan, including any associated financing costs, as described herein;

- Post-Effective Date Loan Administration Costs will be charged to each Loan Asset as described herein, including any associated financing costs, as described herein;

- Post-Effective Date Servicing Advances will be recovered from the proceeds of each Loan Asset for which such advances were made, including any associated financing costs, as described herein.

The amended agreements will include such other terms and provisions as are necessary to be consistent with the Plan and the Plan Supplement, including the Asset Management Agreement included in the Plan Supplement.

| Summary report: Litera Compare for Word 11.4.0.111 Document comparison done on 5/1/2024 12:29:01 PM | |
|---|---|
| **Style name:** Default Style | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** iw://ycstwork.ycst.com/YCST01/31482215/4 | |
| **Modified DMS:** iw://ycstwork.ycst.com/YCST01/31482215/6 | |
| **Changes:** | |
| Add | 82 |
| Delete | 10 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 92 |